**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **CONSOLIDATED EDISON COMPANY OF NEW YORK, INC.,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **No. 04-0033 C** **(Judge Bruggink)** |
| **UNITED STATES OF AMERICA,** | ) | |
| **Defendant.** | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO STAY ALL PROCEEDINGS OR, IN THE ALTERNATIVE, FOR COORDINATED DISCOVERY REGARDING RATE AND SCHEDULE ISSUES**

Pursuant to Rule 7.2 of the Rules of the U.S. Court of Federal Claims ("RCFC"), Plaintiff Consolidated Edison Company of New York, Inc. ("Con Edison") hereby files this Response to Defendant's Motion To Stay All Proceedings Or, In The Alternative, For Coordinated Discovery Regarding Rate And Schedule Issues ("Motion"). The Government's Motion requests that all proceedings in this case be stayed pending final rulings in *Commonwealth Edison Co. v. United States*, No. 98-621C (Hewitt, J.) ("Com Ed"); *Yankee Atomic Electric Co. v. United States*, No. 98-126C (Merow, S.J.) ("Yankee"); *Indiana Michigan Power Co. v. United States*, No. 98-486C (Hodges, J.) ("Indiana Michigan"); and *Sacramento Municipal Utility District*, No. 98-488C (Braden, J.) ("SMUD").

As discussed below, the Government does not and cannot meet the standard for the extraordinary remedy of a stay of all proceedings. Moreover, unlike *Com Ed, Yankee, Indiana Michigan* and *SMUD,* which are owners/operators of nuclear facilities attempting to recover ongoing and future spent fuel costs, Con Edison is a seller of a nuclear facility that is seeking damages which have no discernible connection with

prospective rate of acceptance issues. For this very reason, there is no need for coordinated discovery regarding rate and schedule of acceptance issues in Con Edison's case.

## I. THE GOVERNMENT HAS FAILED TO MEET THE LEGAL STANDARD FOR ISSUING A STAY

"A stay of a civil case is an 'extraordinary remedy.'" *Walsh Securities, Inc. v. Cristo Property Management, LTD.*, 7 F.Supp. 2d. 523, 526 (*quoting Weil v. Markowitz*, 829 F.2d 166. 174 n. 17 (D.C. Cir. 1987)). A stay is disfavored because a litigant in one case should not be "compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." *Landis v. North American Co.*, 299 U.S. 248, 255 (1936). A party petitioning for a stay "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay . . . will work damage to someone else." *Coast Federal Bank v. United States*, 49 Fed. Cl. 11 (2001), *quoting Landis v. North American Co*., 299 U.S. at 254 (1936). The Federal Circuit has stated that in determining whether to issue a stay "the trial court must first identify a pressing need for the stay, the court must then balance interests favoring a stay against interests frustrated by the action, and overarching this balancing is the court's paramount obligation to exercise jurisdiction timely in cases properly before it." *Commonwealth Edison Co. v. United States*, 46 Fed. Cl. 29, 34 (*citing Cherokee Nation of Oklahoma v. United States*, 124 F.3d 1413, 1416 (Fed. Cir. 1997)).

The Government's Motion ignores the relevant standard for issuing a stay, focusing instead on a very different standard that is applied to a request for a stay in a civil case when there is an ongoing criminal matter. In *C3, Inc. v. United States*, 5 Cl. Ct. 659 (1984), upon which the Government primarily relies, the defendant requested a stay of the plaintiff's breach of contract action in light of a grand jury investigation. The U.S.

Claims Court granted the stay, finding that halting the civil proceeding to allow the criminal investigation to continue promoted the "public welfare." *C3, Inc.*, 5 Cl. Ct. at 662. As there is no ongoing criminal proceeding related to this case, *C3* and the standard set forth by the Government are therefore inapplicable. However, even assuming arguendo that the standard for a stay as presented by the Government were appropriate, the Government fails to meet that standard. As discussed below, *Con Edison* is not closely related to *Indiana Michigan, Commonwealth Edison, Yankee* and *SMUD*, there is no realistic possibility of inconsistent rulings that would cause a hardship to the Government, and the requested stay is not of a reasonable duration.

The Government's request for a stay should be denied because the Government has failed to meet its burden to demonstrate a "pressing need for a stay," let alone justify why a balance of the interests involved favors a stay. Indeed, the Government cannot meet this burden because a pressing need does not exist. Neither Con Edison nor this Court should be required to speculate as to the basis for the Government's assertion that this case is "substantially similar" to the *Indiana Michigan*, *Commonwealth Edison*, *Yankee*, or *SMUD* cases, the outcome of which would determine the duration of the proposed stay. The Government has not adequately or properly articulated specific elements of Con Edison's claim – other than the Government's breach – that are common to the other cases. In short, the Government's request for a stay rests entirely on the unsupported and unjustifiable premise that Con Edison's complaint is "substantially similar" to the other SNF cases.

At the very minimum, the Government is obligated to set forth the specific elements of how Con Edison's particular claims are so similar to the other cases identified that a stay is justified. Such an analysis requires the Government to address

Con Edison's specific theory of the case (including its theory of damages) as articulated in the Complaint, not a mere recitation of the Government's standard argument on rate of acceptance, an issue that Con Edison believes has no bearing on its case.[1] The Government's failure to do so precludes the issuance of a stay. Accordingly, the Government's request for a stay of all proceedings should be denied.

## II. A STAY OF ALL PROCEEDINGS IS NOT APPROPRIATE IN THIS CASE AND WOULD UNIQUELY HARM CON EDISON

The Government's Motion is predicated on the faulty assumption that "issues that are raised by the plaintiff in this case are being addressed in cases that are currently scheduled for trial in 2004 and early 2005" [Indiana Michigan, Commonwealth Edison, Yankee and SMUD]. Motion at 1. Based on this faulty premise, the Government raises the specter of inconsistent rulings by the court on purportedly similar cases and complains about the resources necessary for the Government to respond to the newly filed spent nuclear fuel cases, including *Con Edison*. Motion at 10-11. The Government's commonality of issues argument, which is the only suggested basis for a stay, is

---

[1] The Government's rate of acceptance argument, which it has made by motion in the majority of SNF cases, has been rejected by this Court (among others) in circumstances that would apply to Con Edison. In *Tennessee Valley Authority v. U.S.*, No. 01-249-C (June 2, 2004) (Lettow, J.), this Court ruled that the rate of acceptance issue would not be relevant for those nuclear facilities where mitigation costs were necessary to support the continued operations through 2010, the earliest date by which the Government has indicated it could initiate performance of its obligations under the Standard Contract. Reflecting the Court's rationale in *TVA*, Con Edison's complaint alleges that:

> Shortly after DOE failed to initiate disposal of SNF on January 31, 1998, and as a result of DOE's failure, Indian Point began to rapidly approach the date by which it would have to shut down because there was no place to store its SNF. At the time of the sale of Indian Point, the need to construct and then operate for an indefinite period a costly on-site dry cask storage facility as a pre-condition to continued commercial operation of Indian Point 2 was immediately apparent.

Complaint at ¶ 70.

confined to a single page of its brief. Motion at 9. Rather than set forth a plausible basis or ground of similarity, the Government offers only the unsupported and incorrect conclusion that "a cursory comparison of the complaint in this case" with the other four cases establishes substantial similarity. *Id.* As the party seeking a stay, it is incumbent upon the Government to provide more than a mere "cursory comparison" between Con Edison's complaint and the others referenced in the Motion. More importantly, however, no such similarity exists, nor can it.

According to the Government, the primary issues of overlap between *Con Edison* and the cases scheduled for trial relate to the rate and schedule of acceptance issues as they pertain to the damages caused by the Government's breach of the Standard Contract. Motion at 11. While the Government also claims that there is a commonality of issues related to the promulgation of the Standard Contract, those issues are relevant only as a function of the Government's arguments about the rate of acceptance. Motion at 9. A simple reading of Con Edison's complaint makes it clear that *Con Edison* is substantially different from the cases scheduled for trial and in which the Government has raised the rate of acceptance issue. Indeed, as Con Edison advised the Court in its Pre-Discovery Conference Report dated April 23, 2004, Con Edison as a seller of its nuclear facility subsequent to the Government's breach does not believe that the rate of acceptance issue is relevant to Con Edison's theories of liability or damages.

While the Standard Contracts in all the Spent Nuclear Fuel cases are indeed virtually identical, this does not support issuance of a stay. Indeed, if it were, the Court would have stayed all but one of the SNF cases. The similarity of the Standard Contract aside, the *Indiana Michigan*, *Commonwealth Edison*, *Yankee*, and *SMUD* cases all seek recovery for future spent fuel management costs that will be incurred at each claimant's

respective nuclear facilities in light of the indeterminate time and circumstances of DOE's performance. There are no assertions as to these matters in Con Edison's complaint. Instead, Con Edison seeks damages for the injury to its nuclear enterprise, including lost profits and diminished value, caused by the DOE breach. Since these injuries occurred upon the sale of Con Edison's nuclear assets in 2001, the actual future DOE performance at the core of the other four cases referenced in the Motion is simply not relevant here. Thus, it is inaccurate and incorrect for the Government to assert that "[a]ll of the SNF plaintiffs are seeking damages allegedly caused by having to store SNF, either now or in the future, while a permanent repository is being built". *Id.* (emphasis added). In short, the Government's argument wholly mischaracterizes Con Edison's claim.

As a post-breach seller of a nuclear facility, Con Edison's damages are readily ascertainable as of the closing date of the sales transaction. Con Edison's breach damages include a claim for diminished value that is generally the difference between the value Con Edison received in the sale of its nuclear facilities and what it would have received had the Department of Energy ("DOE") not breached the Standard Contract.

By contrast, the cases scheduled for trial have been filed by the current owners of nuclear facilities that are necessarily grappling with on-going issues linked to DOE's actual future performance, the utilities' mitigation costs, and associated damages resulting from DOE's breach. In those cases, the plaintiffs are seeking to measure their damages at this time based on uncertain future events related to the starting date when DOE begins to accept SNF for disposal, and the pace with which disposal occurs. The Government's arguments in those cases concern the applicable rate of acceptance for the fuel as a means of quantifying these plaintiffs' damages, which will principally occur

well in the future. As the rate of acceptance is not relevant to Con Edison's claim of diminished value, there is no basis to conclude that *Con Edison* and the cases scheduled for trial are "substantially similar" or would result in inconsistent rulings by the court.

The Government's claim of "hardship" caused by the "unfair burden" of having to respond to the newly filed spent nuclear fuel cases (including *Con Edison)*, as well as the older cases, is misplaced. Motion at 9, 11. The Government's stated concern here is that it will be forced to divert or duplicate resources, such as Government witnesses and documents, from the older cases that are procedurally further along than the newly filed cases. This concern, however, is again premised on the faulty assumption that *Con Edison* raises the identical rate of acceptance issues as the cases scheduled for trial.

However, because Con Edison is a seller of a nuclear facility, as opposed to an owner, its case will involve significantly different proof than the cases that are scheduled for trial. Since Con Edison divested its nuclear assets, it is not concerned with (and does not seek damages based upon) DOE's actual future performance and the attendant rate of acceptance issues. Thus, the resources being allocated by the Government to the rate of acceptance issues in the older cases will not need to be diverted to or duplicated in *Con Edison* because those issues are not relevant to Con Edison's liability or damages theories. Moreover, it does not appear that the majority (if any) of SNF plaintiffs have raised claims relating to Nuclear Waste Fund fee overcharges, which is a major element of Con Edison's complaint.[2] Since such

---

[2] For instance, paragraph 76 of Con Edison's complaint alleges that:

> Under the Standard Contract, DOE was entitled to assess and collect and the Standard Contract holder was obligated to pay into the Nuclear Waste Fund, only such fees as were authorized by

allegations seem to be absent from the other cases, they cannot be viewed as common, much less "substantially similar."

The Government's hand wringing about the "hardship" it will endure by having to respond to Con Edison's case also rings hollow. Any "burden" that would be suffered by the Government is of its own making. It is now beyond serious dispute that the Government breached the Standard Contract and that breach "involved all the utilities that had signed the contract – *the entire nuclear electric industry*." *Maine Yankee Atomic Power Co. v. United States,* 225 F.3d 1336, 1342 (Fed. Cir. 2000). The U.S. Court of Federal Claims also has repeatedly found that the Government breached the Standard Contract. *See e.g,. Tennessee Valley Association v. United States*, No. 01-249-C (June 2, 2004). Having breached every Standard Contract with impunity, including Con

---

NWPA. By the time of the Indian Point sales transaction, it was evident to potential buyers that DOE intended, and had already begun, to disregard the fee provisions of the Standard Contract, and instead to assess and collect amounts in excess of those authorized by NWPA and the Standard Contract. The 1998 DOE Plan made it clear that DOE intended to continue the over-collection of fees essentially indefinitely. However, the Standard Contract does not authorize DOE: a) to collect amounts to support DOE's breach of its obligations well into the 21st Century, b) to anticipate its liability as would ultimately be determined by the COFC and to embark upon a program of pre-collecting such amounts from Standard Contract holders, c) to pre-collect funds to repay or support operations damaged by DOE's failure to remove SNF, or d) to collect from and assign to Standard Contract holders cost responsibility for DOE's cost overruns associated with a noncompliant and significantly delayed waste program. Notwithstanding this lack of authorization, DOE engaged in just such activities, which deprived Con Edison of the value of its assets and its entitlements under the Standard Contract, and, contrary to the provisions of the Standard Contract, improperly required Con Edison as the Indian Point Standard Contract holder to suffer the financial consequences of DOE's unauthorized actions."

Edison's contract, the Government should not now be heard to argue that *Con Edison* should be stayed to alleviate the resource burden on the Government.

Finally, contrary to the Government Motion, the requested stay is not of a reasonable duration, but rather, could last for many years. While the Government's Motion initially states that it seeks a stay until "completion of the trials" in the cases scheduled for trial, the Motion later makes it clear that the Government actually is seeking a stay until there has been a "final ruling" in all four of those cases. Motion at 1, 12.

Not only does the Government propose a stay of all proceedings in this case, but it also proposes an indefinite postponement of its "obligation to respond to the complaint." *Id.* at 1. The Government has not adequately offered a rationale for why it would be in the interests of justice to defer the identification of controverted issues of fact and the resolution of the Government's legal defenses, especially where the issues presented in the Con Edison case are so different than in any of the cases cited by the government as being "substantially similar" to Con Edison. The trial in *SMUD*, for example, is not scheduled to begin until January 2005. Thus, under the Government's plan, *Con Edison* would be stayed for six months before the trial in *SMUD* even begins. Assuming that any decision in that case (or any of the other cases scheduled for trial) is appealed to the Federal Circuit, it could potentially be remanded to this court for further proceedings and perhaps appealed again. This could result in *Con Edison* being stayed for years pending a final ruling in that case. An indefinite stay that could extend for years is not a reasonable duration and would be highly prejudicial to Con Edison.

Indeed, a stay of any duration would cause unique harm to Con Edison. The stay the Government proposes is at odds with what it is doing in virtually every other

spent nuclear fuel case where the plaintiff opposes the issuance of a stay. The Government has answered or otherwise responded to the complaints in the vast majority of SNF cases, including four other "sellers" cases – *Delmarva*, *Boston Edison*, *Canal*, and *Atlantic City*. These sellers' claims in those cases are substantially similar to Con Edison's, yet the Government has found it appropriate to respond to those claims rather than seek a stay. The Government obviously believes that the prompt joining of issue and resolution of legal defenses will actually facilitate the timely and efficient determination of those cases. In contrast, here the Government proposes to indefinitely delay its response to the Con Edison complaint. Not only is this plainly inconsistent with the handling of most other SNF cases, but the indefinite postponement proposed here is made without any justification whatsoever, let alone a cursory attempt to justify disparate treatment.

Moreover, while it is clear that the Government has breached Con Edison's Standard Contract*, see e.g. Maine Yankee, supra*, Con Edison is not entitled to pre-judgment interest on its breach claim. *See e.g., Library of Congress v. Shaw*, 478 U.S. 310, 321 (1986). Thus, every day that this matter is delayed is a windfall to the Government and translates to additional lost revenues on the damages incurred by Con Edison that cannot be recovered. Con Edison already has lost several years of potential revenues directly attributable to DOE's breach. Were the Government's requested stay granted, any recovery would likely be deferred into the next decade, compounding the windfall to the Government and the loss to Con Edison. With approximately sixty (60) pending spent nuclear fuel cases, and the limited resources of this court to hear and resolve those cases, a stay of any duration will inevitably push *Con Edison* further back in the queue for a trial date and a judgment.

It is counter-intuitive that the prolonged postponement the Government seeks will promote the efficient administration of justice. It is all the more surprising that such a procedure is proposed here, when there is no adequate legal basis to do so. In the absence of a legally adequate rationale for why Con Edison should be so uniquely disadvantaged, the Government's Motion should be denied.

## III. THERE IS NO NEED FOR COORDINATED DISCOVERY ON THE RATE AND SCHEDULE ISSUES

As an alternative to its request for a stay, the Government seeks coordinated discovery on the rate and schedule issues. Motion at 13. However, as discussed above, the acceptance rate issues are not relevant to *Con Edison* and Con Edison does not anticipate conducting discovery on these issues. Accordingly, the Government's request for coordinated discovery on the rate and schedule of acceptance issues should be denied.[3]

[3] Con Edison also opposes the Government's request that its case be consolidated with *Entergy Nuclear Indian Point 2, LLC v. United States,* No. 03-2622. Motion at 13, fn.7. *Con Edison* and *Entergy* do not involve common questions or law or fact that would warrant consolidation. RCFC 42(a). These cases involve markedly different issues regarding damages that reflect the critical distinction between Con Edison, as the seller of nuclear assets, and Entergy as the post-breach purchaser and current owner of those assets. The damages analyses for these cases will involve vastly different proof because Con Edison divested its nuclear assets and, thus, is not concerned with DOE's actual future performance and the related rate of acceptance and schedule issues. Moreover, on January 30, 2004, Chief Judge Damich denied the Government's motion to consolidate all of the spent nuclear fuel cases, the overwhelming majority of which involve owners of nuclear facilities and present common issues of rate and schedule of acceptance. Since *Con Edison* and *Entergy* are significantly less similar than the cases the court already has determined to not warrant consolidation, and present markedly different proofs and damages issues, *Con Edison* and *Entergy* also should not be consolidated.

WHEREFORE, for the reasons stated herein, plaintiff respectfully requests that the Government's Motion be denied.

Date: June 14, 2004

Respectfully submitted,

s/ Richard J. Conway
Richard J. Conway
DICKSTEIN SHAPIRO MORIN
& OSHINSKY LLP
2101 L Street, NW
Washington, DC 20037
(202) 785-9700

*Counsel of Record for*
*Consolidated Edison Company of New York, Inc.*

Of Counsel: David M. Nadler
Nicholas W. Mattia, Jr.
Bradley D. Wine
DICKSTEIN SHAPIRO MORIN
& OSHINSKY LLP
2101 L Street, NW
Washington, DC 20037
(202) 785-9700

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **CONSOLIDATED EDISON COMPANY OF NEW YORK, INC.,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **No. 04-0033 C** |
| | ) | **(Judge Bruggink)** |
| **UNITED STATES OF AMERICA,** | ) | |
| **Defendant.** | ) | |

**ORDER**

THIS MATTER having come before this Court on Defendant's Motion to Stay All Proceedings or, in the Alternative, for Coordinated Discovery Regarding Rate and Schedule Issues ("Motion"), Plaintiff's Response thereto, and the Court having reviewed the submissions of counsel and the record, it is hereby

ORDERED, that the Defendant's Motion is DENIED.

ORDERED this ___ day of _______________, 2004.

The Honorable Eric G. Bruggink
U.S. Court of Federal Claims Judge

COPIES TO:

Richard J. Conway
David M. Nadler
Nicholas W. Mattia, Jr.
Bradley D. Wine
DICKSTEIN SHAPIRO MORIN & OSHINSKY LLP
2101 L Street, N.W.
Washington, D.C. 20037
(202) 785-9700

*Attorneys for Plaintiff*

Harold D. Lester, Jr.
U.S. Department of Justice
Commercial Litigation Branch
1100 L Street, NW
Attn: Classification Unit, 8th Floor
Washington, DC 20530

*Attorney for Defendant*