IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| CONSOLIDATED EDISON COMPANY OF NEW YORK, INC. Plaintiff, | ) | |
| v. | ) | No. 04-0033C (Judge Bruggink) |
| UNITED STATES OF AMERICA, Defendant. | ) | |

DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO STAY ALL PROCEEDINGS OR, IN THE ALTERNATIVE, FOR COORDINATED DISCOVERY REGARDING RATE AND SCHEDULE ISSUES

Pursuant to Rule 7.2(b) of the Rules of the Court of Federal Claims ("RCFC"), defendant, the United States, respectfully submits this reply to the June 14, 2004 opposition that plaintiff, Consolidated Edison Company of New York, Inc. ("ConEd"), filed to the Government's motion for a limited stay of all proceedings or, in the alternative, for coordinated discovery regarding rate and schedule issues.

## DISCUSSION

### I. PLAINTIFF'S COMPLAINT RAISES MULTIPLE ISSUES COMMON TO ALL OF THE LEAD CASES

The heart of ConEd's objection to the Government's motion for a limited stay is its claim that none of the issues it raises in its complaint are at issue in four of the five lead cases which have been, or soon will be, proceeding to trial in the Court of Federal Claims. Specifically, ConEd claims that, as a seller of a nuclear utility that is not seeking future damages, issues related to the rate and schedule of spent nuclear fuel ("SNF") acceptance have no bearing upon its damages claims. *Resp.* at 1. Yet even a cursory reading of ConEd's complaint reveals the

fallacy of this argument.

For example, ConEd's complaint raises the following claims for relief:

- ConEd incurred significant costs associated with the interim storage of its SNF up to the closing date of its sale of Indian Point, including additional capital expenses, as well as related Operation and Management costs, *Compl.* at ¶¶ 67, 78;
- As a result of the Government's breach of the Standard Contract, ConEd's nuclear assets were substantially diminished, and therefore it realized significantly less value upon sale of such assets than it otherwise would have if the Department of Energy ("DOE") had timely performed, *Compl.* at ¶¶ 66-67;
- The amount that ConEd had to spend for funding the retirement, dismantlement, decontamination, decommissioning and SNF management of Indian Point for purposes of the sale to Entergy were greatly increased as a result of the Government's breach, *Compl.* at ¶ 72-73; and
- DOE's fee collection plan was in excess of what was authorized by the Nuclear Waste Policy Act, and such fees were considered by potential purchasers of Indian Point, *Compl.* at ¶ 76.[1]

ConEd's claims directly implicate issues raised in all of the lead cases. For example, ConEd's claim that it "made substantial pre-closing capital and operating/maintenance expenditures to store and maintain Indian Point SNF" as a direct result of the Government's breach directly implicates several issues common to all of the SNF cases. *Compl.* at ¶ 78. First, the issue of the minimum mandatory schedule for the acceptance of SNF and high-level radioactive waste ("HLW") has direct bearing on whether ConEd has a cognizable damages claim. For example, ConEd's claim for damages related to its operating and maintenance

[1] ConEd also raises a takings claim based upon DOE's failure to take custody of Con Ed's SNF by 1998 and its fee assessment practice. *Compl.* at ¶¶ 87-93. Similar takings claims have been raised in each of the lead cases, and were expressly rejected in Commonwealth Edison v. United States, 56 Fed. Cl. 652, 656 (2003), and Southern Nuclear Operating Co. v. United States, No. 98-614C, slip op. (Fed. Cl. Apr. 7, 2004).

expenditures necessarily assumes that DOE would have begun accepting ConEd's spent fuel prior to 2001, the year it claims it sold its interest in Indian Point to Entergy Nuclear Indian Point 2. It also assumes that DOE would have picked up a sufficient quantity of SNF by 2001 that ConEd would have been able to decrease its operation and management costs associated with storing SNF. Consequently, ConEd's argument is specifically tied to a particular schedule and rate of acceptance concerning DOE's obligation to accept ConEd's SNF, which is the precise issue that has been and currently is being litigated in each of the lead cases.

The issue of rate and schedule of acceptance also will play a critical role in determining whether ConEd has a cognizable damages claim based upon an alleged diminution in value of its nuclear power plants during its auction process. For example, ConEd claims that "DOE's failure to timely and completely fulfill its mandates under NWPA and its commitments under the Standard Contract directly resulted in such prospective purchasers, as were actually willing to entertain acquisition of nuclear electric generating facilities such as Indian Point, to account for the increased costs, risks, and uncertainties brought about by DOE in their respective valuations of the asset." *Compl.* at ¶ 66 (emphasis added). Again, this contention assumes that ConEd was in fact incurring increased costs as of the date of sale and, therefore, assumes a particular schedule and rate of acceptance.

In fact, ConEd's diminished value claim is based, at least in large part, upon ConEd's belief that the owner of the reactor at issue in ConEd's case might have to shutdown that reactor because its wet storage pool would run out of space, allegedly "as a result of DOE's failure" to begin disposing of SNF under the Standard Contract. *Compl.* at ¶ 70. Yet, depending upon the rate at which DOE was contractually obligated to accept SNF from the contract holders

beginning on and continuing after January 31, 1998, that wet pool might have run out of space regardless of DOE's delay. Accordingly, the issue of the rate at which DOE was obligated to continue SNF acceptance after January 31, 1998, has to be a significant element of ConEd's diminished value claim. If its wet storage pool would have run out of space regardless of DOE's delay, ConEd cannot charge DOE with "diminished value" damages resulting from that fact.

Indeed, ConEd's complaint also implicates several other issues that have been or will be squarely addressed in the lead cases. For example, to the extent that ConEd seeks damages prior to the Government's breach, this issue is common to all the lead cases. ConEd claims that:

> Indian Point 1 ceased commercial operations on October 31, 1974, at which time the unit was placed into a safe-storage condition. As part of this safe-storage program, Con Edison was required to maintain the SNF produced at Indian Point 1 at an on-site storage facility at considerable costs, rather than being able to transfer the SNF to DOE as contemplated by NWPA.

*Compl.* at ¶ 47. To the extent that ConEd is seeking damages based upon actions it took in 1974 – 24 years before the Government was obligated to start performing under the Standard Contract – this issue of the appropriateness of damages incurred prior to the Government's breach is currently being addressed in each of the lead cases.

Finally, ConEd's claim also may implicate the issues of whether the Standard Contract creates an obligation on the part of the Department of Energy to accept and store a utility's Greater Than Class C Waste ("GTCC") and failed fuel, as well as the timing of that obligation, issues that are currently being raised and addressed in each of the four pending cases. The viability of ConEd's claim for interim storage costs and other capital costs associated with storage of SNF will turn, in part, on the resolution of whether the Government had an obligation

under the Standard Contract to accept and dispose of ConEd's GTCC and the timing of its obligation to accept failed fuel. If it did not have such an obligation on a particular time table, and ConEd stored its GTCC and failed fuel with its SNF, this obviously would affect any claim that ConEd has for damages associated with the dry storage of its SNF. Therefore, given the multiplicity of issues in common between this case and the lead cases, a stay in this case is appropriate because it would save scare judicial resources by avoiding duplicative litigation.

## II. THE GOVERNMENT'S STAY IS FOR A REASONABLE DURATION

ConEd next contends that the Government's request for a stay is unreasonable because it seeks to stay all proceedings until a final ruling has been made in four of the lead cases, and final rulings may not occur for many years. *Resp.* at 9. To be clear, the Government does not seek a stay until "final rulings," including appeals, have been made in four of the lead cases. Rather, the Government requests that the stay be entered until March 1, 2005. Such a stay is of a reasonable duration, and would allow for all of the currently scheduled SNF trials to be concluded. Indeed, it is likely that decisions may be issued in at least some of these cases, allowing for the efficient and consistent resolution of issues that will arise in this case. In the alternative, the Government respectfully requests that the case be stayed until December 31, 2004, the date in which the majority of the newly-filed SNF cases have been stayed.[2]

---

[2] The following cases have been stayed until December 31, 2004: Entergy Nuclear Fitzpatrick, No. 03-2627; Arizona Public Service Comm'n, No. 03-2832; Portland General Electric Co., No. 04-09; Energy Northwest, No. 04-10; Delmarva Power & Light Co., No. 04-34; Canal Electric Co., No. 04-35; Atlantic City Electric Co., No. 04-36; Interstate Power & Light Co., No. 04-67; Pacific Gas & Electric (Humbolt Bay), No. 04-74; Pacific Gas & Electric (Diablo Canyon), No. 04-75; DRI/Dominion Nuclear Connecticut; No. 04-83; DRI/Virginia Electric & Power Co.; No. 04-84; FPL Energy Seabrook, No. 04-88; Union Electric Co., No. 04-97; TXU Generation Co., No. 04-98; Kansas Gas & Electric Co., No. 04-99; Dairyland Power Cooperative, No. 04-106; Rochester Gas & Electric Co., No. 04-118; Niagra Mohawk

Further, ConEd's contention that the Government has acted inconsistently in requesting a stay from filing an answer or other dispositive motion is incorrect. *Resp.* at 9-10. In fact, our review of the record reflects that, of the 21 newly-filed cases in which stays have been granted, the Government has filed an answer in only one case, Arizona Public Service Co., No. 03-2832C, and filed motions to dismiss in only three cases, Delmarva Power & Light Co., No. 04-34C; Canal Electric Co., No. 04-35C and Atlantic City Electric Co., No. 04-36C. The enormous burden of simultaneously litigating the Yankee cases, Nos. 98-126C, 98-154C and 98-474C, which are scheduled for seven weeks of trial beginning on July 12, 2004; engaging in cross-country discovery in Sacramento Municipal Utility District, No. 98-488C, which is currently scheduled for trial in January 2005; and completing discovery and expert witness reports in Commonwealth Edison, No. 98-621C, are creating significant strains upon the Government's limited resources. Requiring the Government to respond to ConEd's complaint where a stay is otherwise appropriate would unnecessarily expend limited Government resources while not serving to advance the case in any meaningful way.

In addition, ConEd's assertion that a stay of any duration would cause it "unique" harm because it is not entitled to prejudgment interest is without merit. Twenty-one other SNF plaintiffs currently have their cases stayed, and none of them are entitled to prejudgment interest. Any harm suffered by ConEd is hardly "unique," and is minimal compared to the enormous burden that the Government faces in responding to the 63 SNF cases currently pending before the Court.

---

Power Corp. (Nine Mile Point Unit 1), No. 04-125; Illinois Power Co., No. 04-133. General Atomics, No. 03-2505, is stayed until September 2, 2004.

## III. IF A STAY IS NOT GRANTED, COORDINATED DISCOVERY SHOULD BE ORDERED

Finally, should the Court deny the Government's request for a stay of limited duration, the Government respectfully respects that discovery be coordinated with the other newly-filed SNF cases. ConEd's opposition to coordinated discovery is predicated upon its incorrect premise that, as a seller of a nuclear facility, it has no issues in common with the other SNF cases. However, as stated above, because ConEd's complaint raises issues identical to those raised by plaintiffs in the other newly-filed cases – namely, schedule and rate of acceptance, the status of GTCC and failed fuel under the Standard Contract, and the appropriateness of damages prior to the Government's breach – consolidation of discovery would prevent duplication and save scare resources.

For example, without coordination, which would limit the number of hours that any potential deponent would have to sit for a deposition and the number of times that the deponent would have to appear, particular witnesses would likely be in repetitive and time-consuming depositions in numerous cases over a course of months or years. The coordinated proceedings also would require that the plaintiffs join together to formulate and serve written discovery requests upon the Government and that counsel for plaintiffs join together to take only one deposition of any Government witness. Absent coordination, the Government will be subject to written discovery requests and Government witnesses will have to sit for depositions in each of these new cases. Proceedings in such a manner will place substantial burdens on the same individuals who are charged with developing and opening a repository so that DOE can meet its obligations pursuant to the Standard Contract. Therefore, should the Court decline the

Government's request for a limited stay, then the Court should require ConEd to participate in coordinated discovery.[3]

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Harold D. Lester, Jr
HAROLD D. LESTER, JR.
Assistant Director

s/ Joshua E. Gardner
JOSHUA E. GARDNER
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 305-7562
Fax: (202) 307-2503

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585
Washington, D.C. 20585

July 7, 2004

Attorneys for Defendant

[3] For the Court's information, the Government anticipates that, during the pendency of or following any stay, we will file a separate motion to consolidate this case with Entergy Nuclear Indian Point 2, LLC, No. 03-2622C (Lettow, J.), which purchased Indian Point from ConEd. For reasons that we will explain in that motion, the damages that ConEd and Entergy claim are duplicative and/or inconsistent, and both claims arise directly out of the same contract. Even though the Entergy Nuclear case was filed more than two months before ConEd filed its complaint, ConEd did not file a notice identifying Entergy Nuclear as directly related to this one, as required by RCFC 40.2(a)(1). See RCFC 40.2(a)(1)(B) (identifying as directly-related cases those that "involve the same contract . . ."). The Government anticipates that it will file this motion with Judge Lettow in the Entergy Nuclear case, pursuant to RCFC 40.2(a)(3), with a copy filed in this case.

CERTIFICATE OF FILING

I hereby certify that on this 7th day of July 2004, a copy of foregoing "DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO STAY ALL PROCEEDINGS, OR IN THE ALTERNATIVE, FOR COORDINATED DISCOVERY REGARDING RATE AND SCHEDULE ISSUES" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Joshua E. Gardner