IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| ENTERGY NUCLEAR INDIAN POINT 2, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 03-2622C |
| | ) | (Judge Lettow) |
| UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S NOTICE OF DIRECTLY-RELATED CASES, DEFENDANT'S MOTION TO REASSIGN CONSOLIDATED EDISON AND ENTERGY NUCLEAR TO A SINGLE JUDGE, AND DEFENDANT'S MOTION TO CONSOLIDATE

Pursuant to Rules 40.1(b), 40.2(a)(3), and 42.1 of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, respectfully requests that the Court transfer two cases, Consolidated Edison Company of New York v. United States, No. 04-0033C, which is currently pending before Judge Bruggink, and Entergy Nuclear Indian Point 2, LLC, No. 03-2622C, which is currently pending before Judge Lettow, to a single judge, because both cases are "directly related" as defined by the RCFC.

The Government further requests that, following transfer and pursuant to RCFC 42(a), the Court consolidate these two cases, which involve the assignor and assignee of the same contract with the Department of Energy ("DOE"). Transfer and consolidation will promote the efficient administration of justice and prevent the potential for inconsistent rulings between the two cases.[1]

---

[1/] Copies of this motion are being filed in both the Consolidated Edison and Entergy Nuclear Indian Point 2 cases. Pursuant to RCFC 40.2(a)(3), we are filing this notice "in all related cases, captioned in the name of the earliest-filed case." We respectfully request that this notice and motion be deemed applicable to both the Consolidated Edison and Entergy Nuclear Indian Point 2 cases previously identified in this footnote. Additionally, copies of the complaints in both cases are being filed with this motion, as attachments 1 and 2.

BACKGROUND

Consolidated Edison Company of New York, Inc. ("ConEd") was the sole owner and operator of the Indian Point nuclear electric generating facilities ("Indian Point") from the 1960s through September 6, 2001. ConEd Compl. ¶ 2. On June 17, 1983, ConEd and DOE entered into the Standard Contract for Disposal Of Spent Nuclear Fuel And/Or High-Level Radioactive Waste ("Standard Contract"), 10 C.F.R. § 961.11 (1983). ConEd Compl. ¶ 32. The Standard Contract required DOE to begin "[t]he services to be provided by DOE" under the Standard Contract "not later than January 31, 1998." 10 C.F.R. Part 961, Art. II. Although the Standard Contract provided that the Government will begin its program of accepting SNF from the commercial industry by January 31, 1998, 10 C.F.R. § 961.11, Art. II, the Standard Contract did not specify any mandatory minimum "rate" at which DOE would be required to continue acceptance. Rather, the Standard Contract contained a contractual mechanism by which a queue for SNF acceptance would be developed that would determine the particular time in which DOE would accept SNF from each Standard Contract holder.[2]

ConEd sold Indian Point to Entergy Nuclear Indian Point 2, LLC ("ENIP") on September 6, 2001. ConEd Compl. ¶ 4; ENIP Compl. ¶ 2. As part of the sale, ConEd assigned its contract with DOE to ENIP, "subject to a reservation of certain rights and claims." ConEd Compl. ¶ 4; ENIP Compl. ¶ 2. Indeed, the letter ConEd provided to DOE notifying it of the assignment states: "Con Edison has, effective September 6, 2001, assigned Con Edison's rights and obligations under the Contract to Entergy, <u>with the exception of all claims and causes of action in</u>

[2/] All commercial nuclear power reactor owners entered into a Standard Contract with DOE, and the basic terms of each Standard Contract are virtually identical.

respect of damages to property or economic loss related to or pertaining to the Department of Energy's breaches or defaults under the Contract accrued as of September 6, 2001, whether relating to periods prior to or following September 6, 2001." Ex. 3 (emphasis supplied).

On November 5, 2003, ENIP filed a three-count complaint in the Court of Federal Claims. ENIP claimed that DOE breached the Standard Contract and sought damages for the costs it allegedly incurred to provide for on-site storage of SNF as a result of the breach. ENIP Compl. ¶ 21. ENIP also claimed that it had, and continues to incur, damages, "including but not limited to regulatory costs associated with efforts to ensure sufficient on-site storage capacity or alternatively off-site storage capacity to permit continued operation of its operating nuclear plant." Id. Based upon DOE's alleged breach of the Standard Contract, ENIP also claimed breach of the implied covenant of good faith and fair dealing and a taking without just compensation. Id. at ¶¶ 26-34.

On January 13, 2004, almost six years after DOE allegedly breached its Standard Contract with ConEd, ConEd filed a three-count complaint in the Court of Federal Claims. Like ENIP, ConEd asserted that DOE breached the Standard Contract and sought damages based upon the breach. ConEd's alleged damages as a result of the breach included capital and operation and maintenance costs associated with SNF storage, as well as a diminution in the value of Indian Point at the time of the sale to ENIP. ConEd Compl. ¶ 69; 77-78. Further, like ENIP, ConEd asserted a breach of the implied covenant of good faith and fair dealing and an uncompensated taking. Id. at ¶¶ 83-93. Despite its obligation to identify ENIP's case as "directly-related" pursuant to RCFC 40.2, and its obvious awareness of the existence of the ENIP lawsuit, ConEd failed to file an appropriate notice.

## DISCUSSION

### I. REASSIGNMENT OF THESE TWO CASES TO A SINGLE JUDGE IS APPROPRIATE BECAUSE BOTH CASES ARE "DIRECTLY RELATED"

RCFC 40.2(a) requires that a plaintiff filing a case that is directly related to another case pending before the Court of Federal Claims file a "Notice of Directly-Related Cases" upon all other parties and the Court. RCFC 40.2(a)(1)(B) expressly defines "directly-related" cases as cases that involve the same contract. This obligation to file a "Notice of Directly-Related Cases" remains even when it is discovered after the filing that the case is directly related to another case pending before the Court. See RCFC 40.2(a)(3).

In this case, based upon the assignment of the Standard Contract from ConEd to ENIP, it cannot be disputed that the two cases involve the same contract and, therefore, are directly related. Yet ConEd, as the plaintiff that filed the later suit, never filed a RCFC 40.2 notice with the Court or the Government. Indeed, even after the Government noted this omission in its reply brief concerning the appropriateness of a stay in ConEd, ConEd still declined to file such a notice.

Because both Entergy Nuclear and Consolidated Edison involve claims arising from a breach of the same contract, assignment of both cases to a single judge, and consolidation of the actions, is likely to conserve judicial resources, and promote an efficient determination of the actions, within the meaning of RCFC 40.2(a)(4). Accordingly, pursuant to RCFC 40.1(b) and 42.1, the Government respectfully request that the two cases be transferred to a single judge.

## II. CONSOLIDATION IS APPROPRIATE UNDER THE CIRCUMSTANCES BECAUSE BOTH CASES INVOLVE MULTIPLE COMMON FACTUAL AND LEGAL ISSUES, AND, IN THE ABSENCE OF CONSOLIDATION, THERE IS A SUBSTANTIAL RISK OF INCONSISTENT JUDGMENTS BETWEEN THE CASES

### A. Standards For Consolidation

Motions to consolidate are governed by RCFC 42, which provides:

> When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all matters in issue in the actions; it may order all the actions consolidated; and it may make any such orders concerning proceedings therein as may tend to avoid unnecessary costs or delays.

In determining whether consolidation is appropriate, the Court must weigh the interest of judicial economy against the potential for delay, confusion, and prejudice that may result from consolidation. See Karuk Tribe of California v. United States, 27 Fed. Cl. 429, 433 (1993). Indeed, "[o]ne of the primary objectives of consolidation is to prevent separate actions from producing conflicting results, which can occur when both cases require judicial determinations of the same facts." Id. (quoting Bank of Montreal v. Eagle Assocs., 117 F.R.D. 530, 532 (S.D.N.Y. 1987); see also Cable Belt Conveyors, Inc. v. Alumina Partners of Jamica, 669 F. Supp. 577, 581 (S.D.N.Y. 1987) (holding that consolidation was appropriate where different factual findings between the two cases could result in inconsistent damages awards).

Courts have held that where two plaintiffs have sued the same defendant, alleging the same misconduct, and answered with the same defenses, the two cases share "common issues of law and fact," thereby justifying consolidation. Harris v. L&L Wings, Inc., 132 F.3d 978, 981 n.2 (4th Cir. 1997); see Allfirst Bank v. Progress Rail Serv. Corp., 178 F. Supp. 2d 513, 520 (D.

Md. 2001) (holding that where the parties are the same, the claims and defenses are identical and the same contract must be construed in each case, that consolidation is appropriate).

The decision whether to consolidate two cases is within the discretion of the Court. Karuk Tribe, 27 Fed. Cl. at 433. Moreover, the Court may order consolidation despite the opposition of the parties. See St. Bernard Gen. Hosp., Inc. v. Hospital Serv. Assoc., 712 F.2d 978, 989 (5th Cir. 1983).

### B. Entergy Nuclear And Consolidated Edison's Cases Satisfy The Criteria For Consolidation

#### 1. Entergy Nuclear And Consolidated Edison's Cases Share Common Issues Of Fact And Law

It is beyond dispute that ENIP's and ConEd's cases share common issues of fact and law. Indeed, these two cases involve the very same contract, the same nuclear power facility, and the same alleged breach of contract. As noted above, ConEd originally held the Standard Contract at issue in this case, but assigned that contract to ENIP on September 6, 2001. Now, both ConEd and ENIP are suing the Government for damages allegedly resulting from the same partial breach of that single contract.

In its response to the Government's motion to stay proceedings in ConEd, ConEd noted its opposition to consolidation of its case with ENIP, claiming that the two cases "involve markedly different issues regarding damages that reflect the critical distinction between ConEd, as the seller of nuclear assets, and Entergy as the post-breach purchaser and current owner of those assets." ConEd Resp. at 11, n.3. However, the fact that the plaintiffs assert different legal theories based upon the same facts does not justify the denial of a motion to consolidate. See Farrell v. American Flyers Airline Corp., 42 F.R.D. 341, 342 (S.D.N.Y. 1967).

In Mylan Pharmaceuticals Inc. v. Henney, 94 F. Supp. 2d 36 (D.D.C. 2000), rev'd on other grounds sub nom. Pharmachemie B.V. v. Barr Laboratories, Inc., 276 F.3d 627 (D.C. Cir. 2002), two generic drug manufacturers brought separate lawsuits challenging the Food and Drug Administration's ("FDA") exclusivity determination in favor of another generic drug manufacturer. One manufacturer sought to enjoin the FDA from imposing an "indefinite delay" on the effective date of a particular drug, while the other manufacturer, in addition to seeking to enjoin the FDA, also sought entitlement to an exclusivity incentive for marketing its drug. The FDA sought to consolidate the two drug manufacturers' cases into a single lawsuit, and the manufacturer's opposed the consolidation motion upon the grounds that they demanded different forms of relief. The court rejected this argument, concluding that consolidation was appropriate and noting that "plaintiffs' request for different forms of relief does not vitiate the propriety of consolidation, but rather, consolidation is proper to any or all matters in issue which are common." Id. at 44 (emphasis in original).

Similarly, in Karuk Tribe of California v. United States, 27 Fed. Cl. 429, 431 (1993), an Indian tribe and individual members of another Indian tribe each sued the Government, alleging a taking of a particular Indian reservation. The Court granted the Government's motion for consolidation, explaining as follows:

> Here, the plaintiffs in each case allege the same government acts created property interests in the same land, and both allege Fifth Amendment takings arising out of the enactment of the Settlement Act. These are common questions of mixed law and fact. It is true that the court will have to hear different evidence to decide factually whether each plaintiff had a vested right in the former Hoopa Valley Reservation, but these individual issues do not predominate over the common issues. There is no reason to believe that the individual issues will cause undue delay and prejudice. Because both cases present the same legal questions and arise out of substantially the same facts, this court grants defendant's motion to consolidate.

Id. at 433 (citations omitted).

Here, not only do these two cases share the exact same factual basis, but they share many of the same issues of law. For example, the Court will have to determine the scope and validity of ConEd's assignment of the Standard Contract to ENIP. Although contractors typically are prohibited by statute from assigning contracts or claims against the Government to a third party, see 31 U.S.C. § 3727 & 41 U.S.C. § 15 (2004), the Nuclear Waste Policy Act ("NWPA"), 41 U.S.C. §§ 10101-10270, contains a specific assignment provision providing that "[t]he rights and duties of a party to a contract entered into under this section may be assignable with transfer of title to the spent nuclear fuel or high-level radioactive waste involved." 42 U.S.C. § 10222(b)(3). Nevertheless, ConEd's assignment of its contract to ENIP contains some reservations that purportedly provide ConEd with various continuing rights. The Court will have to determine the scope and validity of this assignment and, specifically, will have to determine which claims, if any, belong to ConEd and which claims, if any, belong to Entergy.[3]

[3/] Although ConEd's letter notifying DOE of the assignment of the Standard Contract to ENIP indicates that ConEd is retaining "all claims and causes of action in respect of damages to property or economic loss related to or pertaining to the Department of Energy's breaches or defaults under the Contract accrued as of September 6, 2001," the letter also states, somewhat

Moreover, by defining the meaning of the statutory assignment provision (which was incorporated into the Standard Contract), and by defining the scope of the assignment, the Court will be able to ensure that the two plaintiffs' damages claims do not overlap; that no duplicative damages recovery occurs; that the two plaintiffs do not prevail (to the Government's prejudice) upon conflicting interpretations of the Government's obligations under the single contract at issue here; and that any "diminution in value" award to ConEd, which ConEd seeks in its complaint, is somehow accounted for and offest against any award to ENIP, which, if it received its own damages award, would be the ultimate beneficiary of that temporary "diminution in value."

In its complaint, ConEd alleges that "Entergy assured the NRC" when it was seeking approval of the license transfer from ConEd to ENIP for the reactor at issue in these two cases "that all future costs it would be required to bear as part of the decommissioning of Indian Point, including those costs related to the long term on-site maintenance of SNF, were being covered as part of the sales transaction." ConEd Compl. ¶ 72. ConEd further alleges that "[t]hese costs were significantly greater than would otherwise have been the case due to DOE's failure to perform its obligations under NWPA and the Standard Contract." Id. It asserts that "[t]he recognition that significant on-site SNF storage costs would be imminently necessary at Indian Point lowered the perceived value of the asset." Id. ¶ 73. ConEd alleges that, "[o]n information and belief, Entergy factored into its valuation and reduced the price for Indian Point to reflect all known and anticipated additional expenses associated with on-site storage of SNF and future

---

inconsistently, that it will retain claims and causes of actions in respect of damages "whether relating to periods prior to or following September 6, 2001." Ex. 3. Therefore, it is not entirely clear, based upon ConEd's letter to DOE and its complaint, whether ConEd is in fact seeking damages that accrued after the date of assignment. To the extent that ConEd is seeking such damages, this request plainly would overlap with ENIP's claimed damages.

Nuclear Waste Fund fees announced by DOE in the 1998 DOE Plan." Id. ¶ 75. ConEd then asserts that it should recover the diminished value that it received upon its sale of Indian Point as damages in this case.

Conversely, ENIP is seeking to recover as damages in its litigation all of the costs that it allegedly incurred and will incur in storing SNF as a result of DOE's delays. That is, even though (according to ConEd) it has received compensation from ConEd – in the form of a reduced purchase price – for DOE's delay in beginning SNF acceptance and was allegedly able to compensate itself, at least in part, for continuing additional SNF storage costs through that reduced purchase price, ENIP is seeking to recover all of those costs from DOE in its litigation. As a result, ConEd and ENIP are both claiming extensive damages from the United States based upon conflicting theories of recovery. If both plaintiffs' claims were granted, the United States would pay damages twice for the same partial breach of contract under the same Standard Contract, based upon inconsistent theories of recovery. That type of double liability would be inappropriate.

Indeed, this factual overlap between the two cases is demonstrated in part by the fact that many of the witnesses in both cases will be the same. For example, with respect to ConEd's diminution in value claim, it is highly likely that it will be necessary to depose ENIP employees to determine whether the Government's breach played any role in the price that ENIP ultimately paid for the utility. Moreover, if discovery in the other SNF cases is any indication, it is probable that the Government witnesses will be the same in both cases. The Government's witnesses will have no knowledge concerning ConEd and ENIP's specific damages. However, Government witnesses have been deposed in the other SNF cases upon issues such as rate and schedule of

acceptance, and the status of Greater Than Class C radioactive waste ("GTCC"). Consequently, not only is there a factual overlap between the two cases, but it also is anticipated that many of the witnesses will be the same in both cases.

Moreover, many of the legal defenses raised by the Government apply with equal force to both ConEd and ENIP. For example, as noted above, both ConEd and ENIP are claiming damages for the costs associated with storing SNF. However, whether either of the plaintiffs have incurred damages associated with the cost of storing SNF turns in part upon the determination of the rate and schedule of SNF acceptance. Absent consolidation, there is the potential that the two judges currently assigned to these cases could determine different rates of acceptance, leading to inconsistent judgments in the two cases.

Similarly, it is anticipated that the Government will assert as a defense that the Standard Contract does not cover the disposal of GTCC, and consequently, that any costs associated with SNF storage would have been incurred anyway. Similarly, because DOE is not necessarily obligated to accept failed fuel under the same schedule as standard SNF, see 10 C.F.R. § 961.11, Art. VI.A.2(b), the plaintiffs cannot recover as damages costs that they would have incurred for storing failed fuel regardless of DOE's breach. Similarly, another likely defense that the Government will raise involves the canistering of the SNF. Under the Standard Contract, fuel that has been canistered may be removed from the approved acceptance schedule for standard SNF and characterized as non-standard fuel, see 10 C.F.R. § 961.11, Art. VI.A.2(b) & App. E, which could affect the schedule upon which DOE was obligated to accept ConEd/ENIP's SNF. Again, different assumptions and findings by different judges would create a risk of inconsistent judgments. Therefore, based upon the numerous common issues of fact and law, consolidation

of these two cases would greatly promote judicial efficiency.

2. Neither ConEd Nor ENIP Would Be Prejudiced By Consolidation

Not only would consolidation promote judicial efficiency under the circumstances, but consolidation would not prejudice either ConEd or ENIP. Both cases are in the same phase of pretrial procedure, and there is little, if any, risk of delay in either case should they be consolidated.

Moreover, consolidation of these two cases would not result in any confusion; indeed, consolidation would minimize potential confusion by allowing a single judge to consider the entire factual background of this contract, rather than have different judges consider truncated versions of the same facts. As mentioned above, it is anticipated that many of the same witnesses would be utilized in both cases. Therefore, there would be little, if any, prejudice to either ConEd or ENIP if consolidation is granted.

In fact, if consolidation is not granted, the Government would be prejudiced, as it would force the Government to expend significant judicial resources trying two substantially similar cases, and risk the possibility of inconsistent judgment based upon two cases that share the same factual predicate and same legal issues. Under these circumstances, consolidation of these two cases is appropriate.

CONCLUSION

For the foregoing reasons, we respectfully request that the Court grant the Government's motion to transfer Consolidated Edison and Entergy Nuclear to a single judge, and consolidate the two cases.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Harold D. Lester, Jr
HAROLD D. LESTER, JR.
Assistant Director

s/ Joshua E. Gardner
JOSHUA E. GARDNER
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 305-7583
Fax: (202) 307-2503

OF COUNSEL

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585
Washington, D.C. 20585

August 5, 2004

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that on August 5, 2004, a copy of the foregoing "DEFENDANT'S NOTICE OF DIRECTLY-RELATED CASES, DEFENDANT'S MOTION TO REASSIGN CONSOLIDATED EDISON AND ENTERGY NUCLEAR TO A SINGLE JUDGE, AND DEFENDANT'S MOTION TO CONSOLIDATE" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Joshua E. Gardner