# ATTACHMENT 3

Lester, H
Gardner, J

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

2004 DE[illegible] P 2:30
CASE [illegible]
CIVIL

| | | |
|---|---|---|
| CONSOLIDATED EDISON COMPANY OF NEW YORK | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 04-0033 C (Judge Bruggink) |
| UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

**CONSOLIDATED EDISON COMPANY OF NEW YORK'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS BY DEFENDANT UNITED STATES OF AMERICA**

PLEASE TAKE NOTICE that, pursuant to Court of Federal Claims Rule 34, Plaintiff Consolidated Edison Company of New York ("Con Edison") hereby request that Defendant United States of America ("Government") produce for inspection and copying the documents described below at the offices of Dickstein Shapiro Morin & Oshinsky, L.L.P., 2101 L. St. NW, Washington, D.C. 20037 or at such place as may be agreed upon by all counsel, within 30 days after service of this notice.

COPY



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
CR

## GENERAL DEFINITIONS

1. "Communication" means:

a. Any oral statement or utterance of any kind, whether in person, by telephone, by electronic mail, or by any other means of communication, and any gesture intended to convey information, including any nonverbal expressions of assent, denial, doubt, lack of knowledge, or the like; and

b. Any writing, document, or other graphic material of any kind and description, whether inscribed by hand or by mechanical, electronic, microfilm, photographic, or other means, including electronic mail, as well as phonic (such as tape recordings) or visual reproductions of oral communications.

2. "Document" means the original (or any copy when the original is not available) and, unless otherwise stated, any non-identical copy (whether different from the original because of notes made on such copy or otherwise), all drafts, modifications, and amendments thereto, all correspondence transmitting such documents or explaining or commenting upon the contents thereof, and all working or supporting papers of every kind and description, whether inscribed by hand or by mechanical, electronic, magnetic, microfilm, photographic, or other means, as well as phonic (such as tape recordings) or visual reproductions of oral statements, conversations, or events, and including, but not limited to, correspondence, telegrams, notes, minutes, address and telephone directories, agendas, computer or electronic mail (e-mail), internal messages and memoranda, diaries or desk pads, calendars, reports, estimates, invoices, compilations, studies, tables and tabulations, tallies, diagrams, plans, maps, photographs, computer-stored or computer-readable data, bulletins, computer printouts, audited and un-audited financial statements, accounting records, journals, answers to questionnaires, applications, check registers, checks, teletype, receipts,

messages, and any other memorandum, recordation, or communication of any type. The term "Document" includes each and every dissimilar version thereof, including all drafts and versions bearing marginal comments, and also includes the file and folder tabs associated with each original and copy.

3. "Relate(s) to," "relating to," and "referring to" mean to concern, mention, reference, pertain to, reflect, comment upon, discuss, rely upon, relate to, refer to, utilize as input data or source material, support, undermine, critique, or in any manner be connected with the given subject, action, communication, or matter.

4. "Government" means any agency or sub-agency of the Federal Government.

5. "You" and "your" means the United States of America, as well as any agency or sub-agency of the Government responsible for responding to the Document Requests.

## SPECIFIC DEFINITIONS

6. "DOE" means the Department of Energy, its sub-agencies, affiliates, contractors, consultants, and employees.

7. "NRC" means the Nuclear Regulatory Commission, its sub-agencies, affiliates, contractors, consultants, and employees.

8. "1 mil/kwh fee" means the fee collected by the DOE in accordance with the Nuclear Waste Policy Act of 1982.

9. "Nuclear Waste Fund" means the account established by the Nuclear Waste Policy Act of 1982, into which funds are paid by nuclear utilities to pay for the eventual disposal of spent nuclear fuel and high level waste by the DOE.

10. "Standard Contract" means the contract entered into between DOE, on behalf of the United States, and parties owning and/or operating commercial nuclear electric generating facilities which produce spent nuclear fuel.

11. "Fee adequacy report" means the annual report submitted by the Secretary of the DOE to Congress evaluating and addressing the adequacy of fees collected and to be collected from nuclear electric generating facility owners and/or operators for the Nuclear Waste Program.

12. "Temporary fuel storage" means any alternative to the removal and storage of spent nuclear fuel and high level nuclear waste by the federal government, including, but not limited to, dry cask storage facilities.

13. "SNF" means Spent Nuclear Fuel and High-Level Nuclear Waste.

14. "DCS" means the Delivery Commitment Schedule as established by DOE which established the date and rate upon which Spent Nuclear Fuel would be taken by the Federal Government from a particular nuclear generator.

## INSTRUCTIONS

1. In responding to the following requests, you are to produce all documents that are in your possession, custody, or control, or that are in the possession, custody, or control of any of your representatives, agents, predecessors-in-interest, successors, subsidiaries, parents, experts, attorneys, or persons consulted concerning any matters relating to the facts or issues involved in this case or any other case related to the Nuclear Waste Policy Act of 1982.

2. Each request for documents and the portions thereof is to be responded to separately, but responses to one request for documents, or portions thereof may be

incorporated by reference in responses to other requests for documents, or portions thereof.

3. If in responding to this Request for Production You discover any ambiguities when construing a request or definition, the response shall set forth the matter deemed ambiguous and the construction used in responding.

4. Whenever in this Request for Production, You are asked to produce a Document which is deemed by You to be properly withheld from production for inspection or copying:

a. If You are withholding the Document under claim of privilege (including, but not limited to, the work product doctrine), please provide the information set forth in Fed. R. Civ. P. 26(b)(5) and Discovery Guidelines 9(c)(ii)(b), including the type of Document, the general subject matter of the Document, the date of the Document, and such other information as is sufficient to identify the Document, including, where appropriate, the author addressee, custodian, and any other recipient of the Document, and where not apparent, the relationship of the author, addressee, custodian, and any other recipient to each other, in a manner that, without revealing the information claimed to be protected, will enable this party to assess, the applicability of the privilege or protection claimed by You;

b. If You are withholding the Document for any reason other than: (1) that it is beyond the scope of discovery, or (2) that a request is unduly burdensome, in addition to the information requested in paragraph 4(a), above, please state the reason for withholding the Document.

5. When a Document contains both privileged and non-privileged material, the non-privileged material must be disclosed to the fullest extent possible without thereby disclosing the privileged material. If a privilege is asserted with regard to part of the material contained in a Document, the party claiming the privilege must clearly indicate the portions as to which the privilege is claimed. When a Document has been redacted or altered in any fashion, identify as to each Document the reason for the redaction or alteration, the date of the redaction or alteration, and the person performing the redaction or alteration. Any redaction must be clearly visible on the redacted Document.

6. If production of any requested Document is objected to on the grounds that production is unduly burdensome, describe the burden or expense of the proposed discovery.

7. All Documents produced pursuant to these requests are to be produced in the form, order and manner in which they are maintained in Your files, or shall be organized and labeled to correspond with the categories in these requests. If the requested Documents are maintained in a file, the file folder is included in the Request for Production.

8. Any Document that bears any marks, including by way of illustration only and without limitation, initials, stamped indicia, comments or notations of any character, that are not a part of the original text or any reproduction thereof, is to be considered a separate Document.

9. Each Document production request is continuing in nature and is to be modified or supplemented to include any additional later discovered responsive information, knowledge, data or documents.

## DOCUMENT REQUESTS

10. Produce all documents relating to communications between DOE and NRC as to the possible or actual treatment of SNF storage and disposal costs.

11. Produce all documents relating to the transfer of nuclear power plant operating licenses pursuant to 10 C.F.R. § 50.80 that discuss pre-transfer or post-transfer accumulated nuclear power plan decommissioning funds for purposes of post-retirement SNF storage and disposal.

12. Produce all documents relating to former Secretary of Energy Frederico Pena's May 18, 1998 letter to Boston Edison as well as all documents relating to similar letters sent to other Standard Contract holders ("Pena Letters") regarding the proposed modifications to the Standard Contract and the continued collection of the 1 mil/kwh fee.

13. With respect to the Pena Letters, produce all documents relating to the referenced proposed modifications of the Standard Contract including any modifications to the payment of fees into the Nuclear Waste Fund.

14. With respect to that portion of the Attachment to the Pena Letters entitled "Settlement Proposal Details," produce all documents relating to the representation that the proposed settlement could provide between $2.8 to $5.0 billion in financial relief to Standard Contract holders.

15. With respect to that portion of the Attachment to the Pena Letters entitled "Estimate of Current Payment Factor – To Be Used In Assessing Value Of Settlement Offer, produce all documents relating to the estimated amounts or payment factors, including but not limited to all documents relating to the methods utilized and assumptions made for purposes of estimating such amounts as well as payment factors,

including but not limited to all documents relating to the methods utilized and assumptions made for purposes of estimating such amounts as well as payment factors.

16. Produce all DOE and NRC documents relating to those provisions of the Indian Point 1 & 2 Purchase and Sale Agreement which provided for retention by Consolidated Edison of Standard Contract claims.

17. Produce all DOE documents relating to the September 16, 2001 letter sent by Consolidated Edison to DOE.

18. Produce all NRC documents prepared on or before September 16, 2001 relating to anticipated or estimated SNF storage costs or SNF storage capacity at Indian Point.

19. Produce all documents relating to Requests for Additional Information ("RAIs") made by the NRC in connection with the December 12, 2000 application for transfer of the Indian Point operating license, together with all RAI responses submitted by any party to the NRC and all documents relating to such RAI responses.

20. Produce all documents relating to communication, held among DOE employees and between DOE and Standard Contract holders, regarding the transferability, trading or swapping of positions in the DCS schedule for acceptance of SNF.

21. Produce all documents relating to any studies or analyses performed regarding the transferability, trading or swapping of DCS scheduling, including any economic analyses of the financial impact of transferring, trading or swapping on DOE and Standard Contract holders.

22. Produce all discovery requests to which you have propounded or to which you have responded, including, but not limited to interrogatories, document

requests and requests for admissions, for any case to which you have been a party and the Plaintiff has alleged your breach of the Standard Contract.

23. Provide all responses which you have propounded or which you have received to discovery requests, including, but not limited to interrogatories, document requests and requests for admissions, for any case to which you have been a party and the Plaintiff has alleged your breach of the Standard Contract.

24. Provide all documents relating to all analyses prepared by or for the DOE, from 1987 to the present, regarding the availability, cost, and feasibility of SNF storage options (other than a central repository) potentially available to Standard Contract holders for SNF generated at commercial nuclear facilities.

25. Provide all documents relating to communications between DOE and any other federal agency regarding the interim or permanent storage of SNF by or on behalf of Standard Contract holders.

26. Produce all documents, including all reports or analyses, relating to the cost or feasibility of installing and maintaining a dry cask storage facility at commercial nuclear generating units subject to a Standard Contract with the Federal Government.

27. Produce all documents relating to communications within DOE which lead to the last Annual Capacity Report conclusion that only 900 MTU of SNF per year could be accepted for permanent disposal during the initial 10 years of repository operations.

28. Produce all documents relating to communications regarding the decision made by DOE not to furnish Standard Contract holders with SNF shipping casks by January 31, 1998.

Date: November 30, 2004

Respectfully submitted,

Richard J. Conway
DICKSTEIN SHAPIRO MORIN
& OSHINSKY LLP
2101 L Street, NW
Washington, DC 20037
(202) 785-9700
*Counsel of Record for*
*Consolidated Edison Company*
*Of New York, Inc.*

Of Counsel: David M. Nadler
Nicholas W. Mattia, Jr.
Bradley D. Wine
Jeffery P. Becherer
DICKSTEIN SHAPIRO MORIN
& OSHINSKY LLP
2101 L Street, NW
Washington, DC 20037
(202) 785-9700

Brent L. Brandenburg, Esq.
Assistant General Counsel
Consolidated Edison Company of New York, Inc.
4 Irving Place – Room 1830
New York, NY 10003

# ATTACHMENT 4

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| CONSOLIDATED EDISON COMPANY OF NEW YORK, INC.<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | No. 04-0033 C<br>(Judge Bruggink) |

CONSOLIDATED EDISON COMPANY OF NEW YORK'S FIRST SET OF INTERROGATORIES TO DEFENDANT UNITED STATES OF AMERICA

Pursuant to Rules 26 and 33 of the Rules of the United States Court of Federal Claims, Plaintiff Consolidated Edison Company of New York, ("Con Edison") by its counsel, hereby propounds the following interrogatories to Defendant United States of America. The interrogatories below shall be answered in writing and under oath according to applicable court rules and the following Definitions and Instructions, and the response shall be served upon Richard J. Conway, Esquire within 30 days of this request, at the offices of Dickstein Shapiro Morin & Oshinsky LLP , 2101 L Street, NW, Washington, DC 20037-1526.

GENERAL DEFINITIONS

1. "Communication" means:

a. Any oral statement or utterance of any kind, whether in person, by telephone, by electronic mail, or by any other means of communication, and any gesture intended to convey information, including any nonverbal expressions of assent, denial, doubt, lack of knowledge, or the like; and

COPY

b. Any writing, document, or other graphic material of any kind and description, whether inscribed by hand or by mechanical, electronic, microfilm, photographic, or other means, including electronic mail, as well as phonic (such as tape recordings) or visual reproductions of oral communications.

2. "Document" means the original (or any copy when the original is not available) and, unless otherwise stated, any non-identical copy (whether different from the original because of notes made on such copy or otherwise), all drafts, modifications, and amendments thereto, all correspondence transmitting such documents or explaining or commenting upon the contents thereof, and all working or supporting papers of every kind and description, whether inscribed by hand or by mechanical, electronic, magnetic, microfilm, photographic, or other means, as well as phonic (such as tape recordings) or visual reproductions of oral statements, conversations, or events, and including, but not limited to, correspondence, telegrams, notes, minutes, address and telephone directories, agendas, computer or electronic mail (e-mail), internal messages and memoranda, diaries or desk pads, calendars, reports, estimates, invoices, compilations, studies, tables and tabulations, tallies, diagrams, plans, maps, photographs, computer-stored or computer-readable data, bulletins, computer printouts, audited and un-audited financial statements, accounting records, journals, answers to questionnaires, applications, check registers, checks, teletype, receipts, messages, and any other memorandum, recordation, or communication of any type. The term "document" also includes each and every version of the document, including all drafts and versions, and also includes the file and folder tabs associated with each original and copy.

3. "Identify" means:

a. When used in reference to a basis for a position, contention, assertion understanding, belief, or response, to state every fact, act, omission, incident, event, condition, and circumstance pertinent to the position, contention, assertion, understanding, belief, or response, and to identify all communications, company policies, analyses, and documents relating thereto and all persons with knowledge of the position, contention, assertion, understanding, belief, or response;

b. When used in reference to a person, to state the person's full name, the person's present home and business addresses and telephone numbers, if known, or if not known, the last known home and business addresses and telephone numbers, and the person's business position and title, if any;

c. When used in reference to a corporation, partnership, or other legal entity, to state the name, address, and telephone number of such entity, and the full name, address, and title of the person(s) who acted on behalf of such entity with respect to the subject matter of the interrogatory;

d. When used in reference to a document, to state the type of document, *e.g.*, letter, memorandum, telegram, chart, etc., its general subject matter, its date, author and all recipients, and its present location and custodian;

e. When used in reference to a communication, to state the names and positions of the parties to such communication and all witnesses to it, the medium of such communication, i.e., telephonic, letter, etc., the date of such communication, and the substance of such communication;

f. When used in reference to an analysis, to state the name of each person who created, performed, drafted, or reviewed the analysis, to state the date the

analysis was performed, to describe the content and conclusions of the analysis, and to identify all documents referring or relating to the analysis; and

g. When used in reference to a fact, to state each and every act, omission, incident, event, condition, or circumstance pertinent to the matter requested and to identify each person who has personal knowledge of the fact.

4. "Information" means all data, facts, or circumstances of any nature, including documents and communications, relating to the given subject matter.

5. "Person" means any natural person, contractor, corporation, partnership, proprietorship, association, venture, Governmental or public entity, or any other form of organization or legal entity and its officers, directors, employees, consultants, representatives, and agents.

6. "Relate(s) to," "relating to," and "referring to" mean to concern, mention, reference, pertain to, reflect, comment upon, discuss, rely upon, relate to, refer to, utilize as input or source material, support, undermine, critique, or in any manner be connected with the given subject, action, communication, or matter.

7. "Describe in detail" means to state every fact, act, omission, incident, event, condition, and circumstance pertinent to the statement, position, contention, calculation, assertion, understanding, or belief, and to identify all communications, company policies, methods, analyses, and documents relating thereto.

8. "Government" means any agency or sub-agency of the Federal Government.

9. "You" and "your" means the United States of America, as well as an agency or sub-agency of the Government responsible for responding to these Interrogatories.

## SPECIFIC DEFINITIONS

1. "DOE" means to the Department of Energy, its sub-agencies, affiliates, contractors, consultants, and employees.

2. "DCS" means the Delivery Commitment Schedule as established by DOE which established the date and rate upon which Spent Nuclear Fuel would be taken by the Federal Government from a particular nuclear generator.

3. "Standard Contract" means the contract entered into between DOE, on behalf of the United States, and parties owning and/or operating commercial nuclear electric generating facilities which produce spent nuclear fuel.

4. "Temporary fuel storage" means any alternative to the removal and storage of spent nuclear fuel and high level nuclear waste by the federal government, including, but not limited to, dry cask storage facilities.

5. "SNF" means Spent Nuclear Fuel and High-Level Nuclear Waste.

## INSTRUCTIONS

1. In responding to these interrogatories, you must provide all information within your possession, custody, or control, or that are in the possession, custody or control of any representatives, agents, predecessors-in-interest, successors, subsidiaries, parents, experts, attorneys, or persons consulted concerning any matters relating to the facts involved in this case or any other case related to the Nuclear Waste Policy Act of 1982.

2. Whenever reference is made to a person, such reference includes any and all of that person's employees, agents, partners, attorneys, accountants, consultants, contractors, and other representatives. Whenever reference is made to an entity, such reference includes any and all of that entity's parents, affiliates, subsidiaries, partners, principals, associates, directors, officers, employees, agents, attorneys (including inside

or house counsel and outside or retained counsel), accountants, consultants, and other representatives.

3. Any sentence or phrase formed in the disjunctive shall also be taken in the conjunctive and vice-versa. Any noun formed in the singular shall also be taken in the plural and vice-versa. Any verb formed in the present tense shall also be taken in the past, future, and imperfect tenses and vice-versa.

4. All information with respect to documents shall be given in sufficient detail to enable a party or person to whom a subpoena is directed to identify fully the document to be produced.

5. The time period for these interrogatories, unless otherwise stated, is January 1, 1980 through the present.

6. These interrogatories are continuing in nature through and including trial in this lawsuit. You are required immediately to supplement your answers and correct previous answers as further information, documents or things responsive to these interrogatories becomes available. Include in the supplemental response the date on and manner in which the additional or differing response became available to you.

7. If you are unable to respond fully to any interrogatory, you must answer it to the extent you are able, explain in detail why it cannot be answered fully, and provide all information or knowledge you have concerning the unanswered portion.

8. If any response is withheld under a claim of privilege or other exemption from discovery, you are to furnish a list, signed by your attorney of record, giving the following information with respect to each claim of privilege:

a. A statement of the specific privilege or exemption claimed;

b. The basis on which the privilege or exemption is claimed;

c. All unprivileged information that is related to or refers to the information over which the privilege or exemption is asserted;

d. The identity and position of each person or persons supplying the attorney signing the list with the information requested in subparagraphs above;

e. The date of the action that forms the basis of privilege or exemption asserted; and

f. The identity of each person or entity to which the information has been provided or disclosed.

**INTERROGATORIES**

1. Identify all persons with knowledge regarding the preparation of the May 18, 1998 letter sent from then Secretary of Energy Frederico Pena to Boston Edison.

2. Identify all persons with knowledge relating to the establishment of the projected first operational date for an SNF repository, as well as any and all subsequent changes.

3. Identify all persons with knowledge regarding the status of the "all full dates" for the nuclear plants as discussed in the Standard Contract.

4. Identify all persons within the DOE, both currently and formerly employed, with knowledge , or who expressed an opinion as to the availability, cost, benefits or feasibility of the transfer of a DCS scheduled position for SNF acceptance from one Standard Contract holder to another.

5. Identify all persons within the DOE, both currently and formerly employed, who communicated with individuals employed within other governmental agencies regarding the temporary or permanent storage of SNF.

6. Provide the names and job titles for all individuals employed by agencies of the Federal government outside of the DOE who communicated with individuals employed by the DOE regarding temporary or permanent storage of SNF.

Date: November 30, 2004

Respectfully submitted,

By: ______________________________

Richard J. Conway
Dickstein Shapiro Morin & Oshinsky LLP
2101 L Street, NW
Washington, DC 20037-1526
(202) 785-9700

*Counsel of Record for*
*Consolidated Edison Company of New York, Inc.*

Of Counsel:

David M. Nadler
Nicholas W. Mattia, Jr.
Bradley D. Wine
Jeffery P. Becherer
Dickstein Shapiro Morin &
Oshinsky LLP
2101 L Street, NW
Washington, DC 20037
(202) 785-9700

Brent L. Brandenburg, Esq.
Assistant General Counsel
Consolidated Edison
Company of New York, Inc.
4 Irving Place – Room 1830
New York, NY 10003