UNITED STATES COURT OF APPEALS
FOR DISTRICT OF COLUMBIA CIRCUIT
RECEIVED
JUL 30 1998
CLERK

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

| | |
|---|---|
| CONSOLIDATED EDISON COMPANY OF NEW YORK, INC., et al., Petitioners, vs. DEPARTMENT OF ENERGY, THE HONORABLE ELIZABETH ANNE MOLER, ACTING SECRETARY OF ENERGY AND UNITED STATES OF AMERICA Respondents. | No.: 98-1358 |

**MOTION FOR LEAVE TO FILE COMPLAINT FOR FAILURE TO ACT UNDER THE NUCLEAR WASTE POLICY ACT AND MEMORANDUM IN SUPPORT THEREOF**

Petitioners, Consolidated Edison of New York, Rochester Gas and Electric, Consumers Energy, and Pacific Gas and Electric, respectfully move for leave to file the attached complaint alleging respondents' failures to act under the Nuclear Waste Policy Act of 1982 ("NWPA"), 42 U.S.C. §§ 10131-10270 (1994), constitutional violations, and breach of contract. For the reasons stated in the following memorandum, this court has original and exclusive jurisdiction over this action under 42 U.S.C. § 10139. Accordingly, petitioners respectfully request that this court order that the attached complaint be filed.

PRELIMINARY STATEMENT

This court has "original and exclusive jurisdiction over any civil action" challenging an action or failure to act under the NWPA.[1/] 42 U.S.C. § 10139(a)(1). Congress enacted the NWPA in 1982 to establish a comprehensive mechanism for addressing the "'national problem' posed by the accumulation of spent nuclear fuel and radioactive waste produced by various domestic sources." Northern States Power Co. v. Department of Energy, 128 F.3d 754, 755 (D.C. Cir. 1997). Congress intended the federal government by a date certain to collect the spent fuel in federally operated, centralized locations to protect national security, public health and safety and the environment. 42 U.S.C. § 10131(b); see also 128 Cong. Rec., S4159 (April 28, 1982) (statement of Senator Johnson); id., Letter from

1/ Petitioners have this day filed a petition for review of action of the Secretary challenging failures to adjust the fees paid into the Nuclear Waste Fund and to publish criteria for acceptance of spent nuclear fuel under 42 U.S.C. §§ 10222(a)(4) and (a)(6). This motion seeks leave to file a complaint raising additional claims related to the statutory contract. This is an unusual proceeding for which this court has no rules. Where other appellate courts, including the Supreme Court, have original and exclusive jurisdiction, a motion for leave to file is required. See S. Ct. Rule 17.

President Reagan to President of the Senate (April 28, 1982).

Congress established a two-part statutory framework to accomplish its intent: (1) the federal government would assume ownership of and responsibility for disposing of spent nuclear fuel beginning January 31, 1998; and (2) the generators of such fuel would contribute to a trust fund to pay the costs of such timely disposal. Northern States Power, 128 F.3d at 755. Congress directed DOE to enter contracts with the nuclear utilities to administer this framework. The statute required the Secretary to enter contracts which provide "in return for the payment of fees . . . the Secretary, beginning not later than January 31, 1998, will dispose of . . . spent nuclear fuel." 42 U.S.C. § 10222(a)(5).

DOE and the Secretary entered into the contracts mandated by the Act. Respondents then failed to perform, among other things, their unconditional statutory and contractual obligation to dispose of spent fuel beginning January 31, 1998. The attached complaint challenges respondents' failures to act under the NWPA (Count I), and alleges that these failures violate the substantive due process and takings clauses of the fifth amendment to the

United States Constitution (Counts II through IV). The complaint further alleges that defendants failure to begin disposing of spent nuclear fuel by January 31, 1998, breached the contracts Congress directed DOE and petitioners to enter. 42 U.S.C. § 10222(a)(1) (Count V). This court has "original and exclusive" jurisdiction over these counts under 42 U.S.C. § 10139(a)(1).

By granting original and exclusive jurisdiction, Congress ensured that federal courts of appeals have the comprehensive authority and duty to effectuate Congressional intent. Indeed, only the courts of appeals can grant the prospective relief necessary to compel respondents' compliance with the NWPA's "unconditional obligation" to begin disposing of spent nuclear fuel by January 31, 1998. Northern States Power Co., 128 F.3d at 760; see also Indiana Michigan Power Co. v. Department of Energy, 88 F.3d 1272, 1376-77 (D.C. Cir. 1996) (DOE has an unconditional statutory obligation to begin accepting SNF by January 1998).

This court in Northern States Power denied a broad request for mandamus to enforce Indiana Michigan on grounds that the statutory contract offers potentially adequate remedies for respondents' failure to comply with the Act.

The court remitted those petitioners to traditional contract fora to pursue those remedies. Northern States Power, 128 F.3d 760, and subsequent Orders dated May 5, 1998 and July 2, 1998.

Transfer of this Complaint to another forum is not appropriate. Under the NWPA, this court has "original and exclusive" jurisdiction over "any civil action" challenging an action or failure to act under the NWPA, including a breach of contract. Moreover, no other forum can grant adequate relief.

Traditional contractual fora, including the Court of Federal Claims and the Energy Board of Contract of Appeals, can grant only money damages. Litigation before those fora would therefore leave spent nuclear fuel decentralized private facilities, under private control, and would at best resolve only whether the United States must pay damages relating to that storage. Congress intended a different result -- that by now spent nuclear fuel would be moving to the federally operated, centralized repository that utilities have already funded in an amount exceeding $8.7 billion. Congressional intent can be realized only if this court accepts jurisdiction over the attached complaint.

**ARGUMENT**

**I. THE NUCLEAR WASTE POLICY ACT REQUIRES THIS COURT TO ACCEPT JURISDICTION OVER ANY CIVIL ACTION CHALLENGING ACTIONS OR ALLEGING FAILURES TO ACT UNDER THE NWPA**

The NWPA contains a unique judicial review provision, vesting the courts of appeals with "original and exclusive jurisdiction over any civil action" seeking review of final actions or failures to act under the NWPA. The NWPA states, in pertinent part:

> Except for review in the Supreme Court of the United States, the United States courts of appeals shall have original and exclusive jurisdiction over any civil action –
>
> . . . .
>
> (B) alleging the failure of the Secretary, the President, or the Commission to make any decision, or take any action required under this part;
>
> (C) challenging the constitutionality of any decision made or action taken, under any provision of this part;

42 U.S.C. § 10139(a)(1) (emphasis added).

This provision means that the courts of appeals and only the courts of appeals have jurisdiction over any civil action challenging a final action or alleging a failure to act as required by the NWPA. Moreover, this section provides the courts of appeals with both subject matter jurisdiction and a waiver of sovereign immunity.

### A. The NWPA's Use of "Original and Exclusive" Dictates That Only Courts of Appeal Hear Challenges to Agency Action

Congressional grants of "original and exclusive" jurisdiction are rare. The first statute to grant original and exclusive jurisdiction was the Judiciary Act of 1789 which granted "original" jurisdiction to the Supreme Court in some cases and "original and exclusive" jurisdiction in others. See 28 U.S.C. § 1251(a)&(b).

Under uniform case law since enactment of the Judiciary Act of 1789, "original" jurisdiction permits suit in the designated court, but also in any other court having the requisite jurisdiction. When the terms "original and exclusive" are used together to define jurisdiction, however, no such discretion exists, and the designated court is the only permissible forum. United States v. Ravara, 2 U.S. 297, 298 (1793) (original jurisdiction does not preclude the possibility of concurrent jurisdiction); Marbury v. Madison, 5 U.S. 137, 174 (1803) (language affirming exclusive jurisdiction in one court necessarily negates the possibility of jurisdiction in another); Ames v. Kansas ex rel. Johnson, 111 U.S. 449, 469 (1884) (distinguishing original and exclusive jurisdiction from original jurisdiction); Bors v. Preston, 111 U.S. 252

(1884) (same); California v. Arizona, 440 U.S. 59, 61 (1979) ("original and exclusive" designates the Supreme Court as the only permissible forum); Cayuga Indian Nation of New York v. Cuomo, 762 F. Supp. 30, 34 (N.D. N.Y. 1991) (original and exclusive jurisdiction means only the designated court is the appropriate court).

Under well-established rules of statutory construction, Congress is presumed to have known the meaning of "original and exclusive" when it passed the NWPA and to have intended that same meaning. Cannon v. University of Chicago, 441 U.S. 677, 696-97 (1979); Kepner v. United States, 195 U.S. 100, 124 (1904); National Wildlife Fed. v. Alexander, 613 F.2d 1054, 1062 (D.C. Cir. 1979); see also K-Mart Corp. v. Cartier, 485 U.S. 176, 958 (intent to convey exclusive jurisdiction "could have [been] expressed . . . clearly and simply by, for example, conveying to the specialized court 'exclusive jurisdiction . . . over all civil actions'") aff'd in pertinent part, 486 U.S. 281 (1988). Accordingly, by directing the courts of appeals to assume "original and exclusive" jurisdiction under the NWPA, Congress intended that courts of appeals and only courts of appeals hear cases challenging an action or alleging a failure to act under the NWPA.

The existence of original and exclusive jurisdiction in the courts of appeals under the NWPA divests any other court of jurisdiction over any action, including the breach of contract action alleged in the attached complaint. It is well established that a remedy furnished by a precisely drawn and detailed statute preempts a more general remedy provided by statute. Kepner v. United States, 195 U.S. at 125; Wabco Trade Co. v. SS Inger Skou, 663 F.2d 369, 371 (2nd Cir. 1981); Puget Sound Power & Light Co. v. United States, 23 Cl. Ct. 46, 56-57 (1991) (transferring contract case under Northwest Power Act from Court of Federal Claims to Ninth Circuit). The Tucker Act generally establishes original, but not exclusive, jurisdiction over contract actions and certain other claims for money damages. Muñoz v. Small Bus. Admin., 644 F.2d 1361, 1364-65 (9th Cir. 1981); Spectrum Leasing Corp. v. United States, 764 F.2d 891, 895 & n. 8 (D.C. Cir. 1985); see also Eastern Enter. v. Apfel, No. 97-42, 1998 U.S. Lexis 4213, at *39 (June 25, 1998). ("[A] claim for just compensation under the Takings Clause must be brought to the Court of Federal Claims in the first instance, unless Congress has withdrawn the Tucker Act grant of jurisdiction in the relevant statute.")

Therefore, the precisely drawn grant of "original and exclusive" jurisdiction in the NWPA divests the Court of Federal Claims of all jurisdiction it might otherwise have over the subject claims.[2/] See Pacificorp v. Federal Energy Regulatory Comm'n, 795 F.2d 816, 826 (9th Cir. 1986) (J. Wallace, concurring) (jurisdiction over contractual claim does not lie with Claims Court based on Tucker Act);[3/] see also Puget Sound Power, 23 Cl. Ct. at 60-61 (Court of Federal Claims found Ninth Circuit had exclusive jurisdiction over an action for a breach of contract entered under the Northwest Power Act).

2/ Had Congress wished to preserve Tucker Act jurisdiction over contract actions, while simultaneously providing for a remedy in the courts of appeals, it would have done so expressly. Puget Sound, 23 Cl. Ct. at 59 (citing as an example 28 U.S.C. § 1346(a) (tax refund claims)). While the Senate version of the nuclear waste bill contained an amendment vesting jurisdiction over actions for damages arising from DOE's failure to meet its obligations under the statutory contract in what is now the Court of Federal Claims, the NWPA contains no such language. See 128 Cong. Rec., S. 4311, April 29, 1982.

3/ The Ninth Circuit took jurisdiction over claims alleging breach of contracts entered under the Pacific Northwest Electric Power Planning and Conservation Act ("Northwest Power Act"), 16 U.S.C. §§ 839-839(h). Id. Although the majority opinion did not expressly address its jurisdiction, the court heard the case.

In sum, the Nuclear Waste Policy Act contains an extraordinary grant of "original and exclusive" jurisdiction to courts of appeals, reflecting Congress' unmistakable concern for judicial consistency and efficiency. General Elec. Uranium Mgmt. Corp. v. United States Dep't. of Energy, 764 F.2d 896, 900-03 (D.C. Cir. 1985); see also Tennessee v. Herrington, 806 F.2d 642 (6th Cir. 1986) (overall structure of NWPA reveals consistent concern for timely implementation of disposal provisions). This court must accept this Congressional mandate and take jurisdiction over the attached complaint, including the claim for breach of contract. See New Orleans Public Service, Inc. v. New Orleans, 491 U.S. 350, 358-359 (1989) ("federal courts lack the authority to abstain from the exercise of jurisdiction . . . conferred.")

**B. The Complaint Alleges Failures To Act Under The NWPA**

The NWPA and the statutory contract are inextricably intertwined. The central elements of the statutory framework are (1) the payment of fees into the Nuclear Waste Fund; and (2) in return for payment of those fees, the disposal of spent nuclear fuel beginning not later than January 31, 1998. 42 U.S.C. § 10222(a). Although both elements are implemented through contract, they were

dictated by statute. Moreover, utilities had no effective choice regarding whether to enter the contracts. Congress compelled them to do so by prohibiting the Nuclear Regulatory Commission from issuing or renewing a license for any utility that failed to enter a contract. 42 U.S.C. § 10222(b).

Now, having been compelled to enter the contract and having paid billions of dollars into the Nuclear Waste Fund for almost 15 years, the *quid pro quo* for those fees is not available. Whether respondents' obligation to dispose of spent nuclear fuel beginning January 31, 1998, is a breach of statute or contract, it is a failure to act under the NWPA, over which Congress directed courts of appeals to take original and exclusive jurisdiction.

1. The Essential Contract Terms Are Statutory Obligations

The requirement to pay the fee and the date by which the Secretary was to begin disposing of spent nuclear fuel are terms expressly set by Congress. Northern States Power Co., 128 F.3d at 759. Indeed, this court already has held that the fees utilities are to pay for disposal of spent nuclear fuel, while implemented in the statutory contract, arise under the NWPA and are thus within the court's jurisdiction. General Elec. Uranium Mgmt. Corp., 764 F.2d

896; see also Commonwealth Edison, Co., 877 F.2d 1042, 1045 (D.C. Cir. 1989) ("the fee [Commonwealth Edison was to pay] is fixed by statute").

The January 31, 1998 date upon which DOE was obligated to begin disposing of spent nuclear fuel, like the fee, is a creature of statute. See Northern States Power Co., 128 F.3d at 759 ("The NWPA imposes an unconditional obligation, memorialized in the Standard Contract, to begin disposing of the materials by January 31, 1998"); see also Tennessee v. Herrington, 806 F.2d 642, 648 (6th Cir. 1986) ("[t]he Act sets forth specific dates for . . . the initial acceptance of nuclear waste"); H.R. Rep. No. 97-785, Part I, 32, 78 (1982) (as of January 31, 1998, "Federal Government [becomes] statutorily and contractually obligated to begin to provide disposal capacity"); 133 Cong. Record at S15795 (daily ed. November 4, 1987) (legislature has created option to proceed with monitored retrievable storage (MRS) and "thereby meet the Government's statutory obligation to begin taking spent fuel by that date").

With regard to both the fee to be paid by utilities and the date by which DOE was to begin disposal, Congress established specific and unambiguous numerical values to be included in the contracts. 42 U.S.C. § 10222(a). Congress

then effectively compelled utilities to enter into those contracts. 42 U.S.C. § 10222(b). Moreover, the term of the statutory contract is from the time of execution until DOE has disposed of all spent nuclear fuel from civilian nuclear power reactors. 10 C.F.R. 961.11.[4] Accordingly, neither DOE nor petitioners had any discretion to change the fee or schedule terms. These reciprocal obligations are mandated by statute, and respondents' failure to comply with them constitutes a failure to act under the NWPA.

2. The Contract Is Treated As an Implementing Regulation of the NWPA

This court already has determined that the contract is to be treated as an implementing regulation promulgated under the Act and enforceable under the Administrative Procedure Act ("APA"). Commonwealth Edison, 877 F.2d at 1045. In Commonwealth Edison, this court acknowledged jurisdiction to review standard form contracts. The court

---

[4] While Congress granted DOE authority to terminate certain agreements under the NWPA, see Section 10173(c) (termination of benefit agreements), Congress granted DOE no authority to terminate its obligations under Section 10222 and the statutory contract. In contrast, a clause allowing the government to terminate contracts for its own convenience is required in standard government contracts. See G.L. Christian Assoc. v. United States, 312 F.2d 418, 426-27 (Ct. Cl. 1963).

stated that "[a]lthough the statute specifies that the Secretary must 'enter in contracts' . . . this is a matter of form rather than content." Id.; Wisconsin Elec. Power Co. v. Hodel, 626 F. Supp. 424, 426 (D.D.C. 1984) (jurisdiction to review Secretary's action under § 10222 is vested exclusively in courts of appeal), aff'd, 778 F.2d (D.C. Cir. 1981).

Because the contract is treated as a regulation the court has jurisdiction to review, this court also has jurisdiction to hear claims arising from DOE's failure to act in accordance with that regulation.[5/] 5 U.S.C. §§ 702, 706. Under well-established precedent, promulgation of regulations under statute and agency action in violation of those regulations are equally actionable under § 706 of the APA. Capital Legal Found. v. Commodity Credit Corp., 711 F.2d 253, 259 (D.C. Cir. 1983). Enactment of the

---

[5/] Under the APA, the United States has waived immunity from suit for declaratory and injunctive relief arising from agency failure to act in accordance with lawfully promulgated regulations. In addition, Congress, in the NWPA, has provided a more fullsome waiver of sovereign immunity, including all remedies for all civil actions including contract damages in contract actions arising under the Act. See Pacificorp,. 795 F.2d at 826 (substantive statute providing exclusive jurisdiction to court of appeals effectively waived sovereign immunity).

regulations as well as compliance with them are both actions under the Act.

3. Use of Contracts to Implement the Statutory Mandate Does Not Change the Forum for Relief

Congress' decision to mandate a contractual arrangement for DOE's acceptance of spent nuclear fuel does not modify the appropriate forum for relief. Where, as here, Congress has chosen to establish jurisdiction as a function of agency action and not type of claim, characterization of a claim as a "contract" claim does not affect the exclusive jurisdiction of the courts of appeals. Pacific Power & Light Co. v. BPA, 795 F.2d 810, 816 (9th Cir. 1986) (proper focus of jurisdictional provision is whether underlying conduct is agency action the Act requires); Puget Sound Power, 23 Cl. Ct. at 60-61. Accordingly, this court has jurisdiction over all of petitioners' claims, including those claims sounding in breach of contract.

## II. ONLY THIS COURT CAN GRANT ADEQUATE RELIEF

Adequate relief for respondents' failure to comply with the terms of the statute and the statutory contract will require a mix of declaratory relief, specific performance, and damages. Declaratory and injunctive

relief will be necessary to move DOE from its stated position that it will comply with the statute some day at its own pace, and the nature of that declaratory relief will dictate what damages the utilities may recover for the delay.

Only this court may grant all of the requested relief. The Court of Federal Claims cannot grant injunctive or declaratory relief except in limited circumstances not applicable here. Bowen v. Massachusetts, 487 U.S. 879, 905 (1988); United States v. King, 395 U.S. 1, 3-5 (1969). Moreover, the Court of Federal Claims is not empowered to grant the remedy of specific performance. National Ctr. for Mfg. Sciences v. United States, 114 F.3d 196, 198 (Fed. Cir. 1997).

The Energy Board of Contract Appeals' "remedy" is subject to even greater limitations. The board's jurisdiction, as DOE defined it in the standard contracts, does not include the power to award even damages for breach of contract, much less resolve the statutory and constitutional issues raised in the attached complaint. See United States v. Utah Constr. & Mining Co., 384 U.S. 394, 405 (1966). Its jurisdiction is limited to resolution of those factual issues "arising under" a specific clause

of the contract, such as the grant of an equitable adjustment of charges paid by the utilities. The board is entirely unable to resolve disputes alleging breach of contract, much less the statutory and constitutional issues raised in the attached complaint. This court, however, may grant declaratory and injunctive relief even when that relief is the equivalent of specific performance of the contract. See Transohio Sav. Bank v. Director, Office of Thrift Supervision, 967 F.2d 598, 611 (D.C. Cir. 1992).

Moreover, there is no requirement that parties seeking declaratory relief to remedy violations of the substantive due process and taking clauses of the Constitution first seek compensation in some other forum. Id. (district court has power to award injunctive relief on taking claim); see also Eastern Enter. v. Apfel, 1998 U.S. Lexis 4213, at *39-*42 (June 25, 1998) (declaratory judgment and injunction were appropriate remedy under alleged taking claim); Marshall Leasing, Inc. v. United States, 893 F.2d 1096, 1101 (9th Cir. 1990) (district court has jurisdiction to hear claims seeking equitable relief for denial of due process); Southern California Fin. Corp. v. United States, 634 F.2d 521, 526 n.8 (Cl. Ct. 1980) (an entity may seek an

injunction or declaratory judgment against unauthorized governmental taking).

Similarly, there is no requirement that the utilities seek money damages in lieu of seeking prospective relief under the Administrative Procedure Act. The Supreme Court held in Bowen that money damages are not an adequate substitute for wrongful agency action. Bowen, 487 U.S. at 905-908; see also Transohio, 967 F.2d at 607. In Bowen, the Court recognized that where the relationship between the parties seeking relief and the United States is a "complex ongoing relationship" and declaratory and injunctive relief to modify future practices may be appropriate, a "naked money judgment" may not be an adequate substitute for prospective relief. Bowen 487 U.S. at 905. Just as in Bowen, the utilities' interests in future planning require prompt equitable relief to address the myriad of issues surrounding the more than twelve-year anticipated delay in availability of a federally-operated spent fuel repository. Only this court may fashion such relief.

Congress passed the NWPA to ensure that spent nuclear fuel would be consolidated in centralized government repositories, controlled by the federal government. If

utilities are limited to seeking damages or monetary relief from other fora, spent nuclear fuel will remain indefinitely in numerous sites controlled by numerous parties, and DOE will have completely subverted Congressional intent. Only this court's exercise of its original and exclusive jurisdiction can avoid that result and ensure Congressional intent is effected.

**CONCLUSION**

For the foregoing reasons, petitioners respectfully request that the Motion for Leave to File be granted and that the court order the attached complaint lodged with this motion be filed.

Respectfully submitted,

Tami Lyn Azorsky*
David A. Churchill
Stephen E. Ruscus
MCKENNA & CUNEO, L.L.P.
1900 K Street, N.W.
Washington, DC 20006
202-496-7500

Attorneys for

Consolidated Edison Company of New York, Inc.
Consumers Energy f/k/a Consumers Power Company
Illinois Power Company
Pacific Gas and Electric Company

Rochester Gas and Electric
Corporation

Dated: July 30, 1998

*Counsel of Record

Of Counsel:

C. Stanley Dees, Esq.
Herbert L. Fenster, Esq.
John Bonello, Esq.
Suzanne Karbarz, Esq.

MCKENNA & CUNEO, L.L.P.
1900 K Street, N.W.
Washington, DC 20006
202-496-7500

COMPLAINT

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

CONSOLIDATED EDISON COMPANY OF NEW YORK, INC.
Four Irving Place
New York, NY 10003

CONSUMERS ENERGY COMPANY
f/k/a CONSUMERS POWER COMPANY
212 West Michigan Ave.
Jackson, Michigan 49201

PACIFIC GAS AND ELECTRIC COMPANY
77 Beale Street
San Francisco, CA 94177

AND

ROCHESTER GAS AND ELECTRIC CORORATION
89 East Avenue
Rochester, NY 14649

Plaintiffs,

v.

UNITED STATES DEPARTMENT OF ENERGY
1000 Independence Avenue, S.W.
Washington, DC 20585

THE HONORABLE ELIZABETH ANNE MOLER
ACTING SECRETARY OF ENERGY
1000 Independence Avenue, S.W.
Washington, DC 20585

AND

UNITED STATES OF AMERICA,

Defendants.

No.: ____________

**COMPLAINT FOR RELIEF CHALLENGING ACTIONS AND FAILURES TO ACT UNDER THE NUCLEAR WASTE POLICY ACT, IMPLEMENTING REGULATIONS AND CONTRACT**

Plaintiffs respectfully submit this Complaint For Relief challenging defendants' actions and failures to act under the Nuclear Waste Policy Act, 42 U.S.C. §§ 10131-10270, implementing regulations, and statutory contracts. Plaintiffs allege as follows:

**PARTIES**

1. Plaintiffs are public utility companies. Each company holds spent nuclear fuel as defined by the Nuclear Waste Policy Act of 1982 ("NWPA"), 42 U.S.C. § 10101(23).

2. Petitioner Consolidated Edison Company of New York, Inc. ("Consolidated Edison") is the owner and operator of the Indian Point Unit Nos. 1 and 2 nuclear generating stations, located in Buchanan, New York. Indian Point Unit No. 1 commenced operation in 1962 and ceased operation in 1974. Indian Point Unit No. 2 received its operating license from the Atomic Energy Commission ("AEC") and commenced operation in 1973. Consolidated Edison's spent nuclear fuel inventory is currently stored at the Indian Point site in spent fuel pools. The current aggregate inventory is 1,077 fuel assemblies, or approximately 430 metric tons of uranium. Consolidated Edison executed its statutory contract with DOE in June 1883 and has paid over $113,213,450 into the Nuclear Waste Fund.

3. Rochester Gas and Electric Corporation ("RG&E") is the owner and operator of the R.P. Ginna Nuclear Power Plant, located in Wayne County, New York, for which an operating license was issued by the AEC in 1969. RG&E is also the owner of a 14% interest in the Nine Mile Point Unit 2 facility operated by NMPC. RG&E's current aggregate inventory is approximately 340 metric tons of uranium. RG&E executed its statutory contract with DOE in April 1983 and has paid over $50,000,000 into the Nuclear Waste Fund at a rate of approximately $3.4 million per year. RG&E also is obligated to pay into the fund approximately $83,000,000 for spent nuclear fuel generated prior to 1983.

4. Consumers Energy Company, f/k/a Consumers Power Company ("Consumers") is the owner and operator of the Big Rock Point Nuclear Plant, located in Charlevoix, Michigan, for which an operating license was issued by the AEC in 1962 and which ceased operations in 1997. Consumers is also the owner and operator of the Palisades Nuclear Plant, located near South Haven, Michigan, for which an operating license was issued by the AEC in 1971. Consumers' current aggregate inventory is approximately 1,400 fuel assemblies, or approximately 500 metric tons of uranium. Consumers executed its statutory contract with DOE in June 1983 and has paid approximately $57,000,000 into the Nuclear Waste Fund.

5. Pacific Gas & Electric Company ("PG&E") is the owner and operator of the Diablo Canyon Nuclear Power Plant, located in Avila Beach, California, which has two operating units, for which operating licenses were obtained from the Nuclear Regulatory Commission ("NRC") in 1981 and 1985 respectively. PG&E is also the owner and operator of the Humboldt Bay Power Plant, Unit 3, located in Humboldt County, California, for which an operating license was issued by the AEC in 1963. Unit 3 was retired from commercial operation in 1983, and received a possession-only license from the NRC in 1988. PG&E's current aggregate inventory of spent nuclear fuel is approximately 550 metric tons of uranium. PG&E executed its statutory contract with DOE in April 1983 and has paid over $180,000,000 into the Nuclear Waste Fund.

6. Defendants are the Secretary of Energy, the United States Department of Energy, and the United States.

**JURISDICTION AND VENUE**

7. This action arises out of defendants' acts and failures to act under the NWPA, its implementing regulations, and the contracts mandated by the Act.

8. This court has jurisdiction over this action under 42 U.S.C. § 10139(a)(1), which provides for "original and exclusive" jurisdiction over any civil action challenging an action or failure to act under the NWPA in the United States

courts of appeals. The government has waived sovereign immunity under 42 U.S.C. § 10139(a)(1) and the Administrative Procedure Act (5 U.S.C. §§ 702-706). This court also has authority to grant relief in this action under the All Writs Act (28 U.S.C. § 1651(a)) and the Declaratory Judgment Act (28 U.S.C. § 2201).

9. Venue is proper in this court under 42 U.S.C. § 10139(a)(2), which provides for venue of any proceeding under section 10139 in the United States Court of Appeals for the District of Columbia Circuit.

10. Plaintiffs have standing to bring this action and are proper parties before this court because they have suffered redressable injury in fact as a result of the defendants' conduct.

## NATURE OF THE ACTION

11. This action challenges defendants' failures to comply with the Nuclear Waste Policy Act.

12. Section 10222(a)(5) of the NWPA, its implementing regulations, and the contract with each plaintiff mandated by the statute, all require that DOE dispose of spent nuclear fuel beginning no later than January 31, 1998, and they create a constitutionally recognized property interest in timely commencement of this activity by the Secretary. Defendants have failed to dispose of spent fuel beginning

January 31, 1998. Defendants have stated an intention to delay disposing of spent fuel for at least 12 years and to force plaintiffs to pay for the costs of that delay. Count I seeks declaratory and injunctive relief to remedy DOE's violation of § 10222(a)(5) of the Act. Counts II through IV allege that defendants' conduct violates the substantive due process and taking clauses of the fifth amendment to the United States Constitution and results as well in inverse condemnation of plaintiffs' property. Count V seeks specific performance and damages for breach of contract.

**REQUIREMENTS OF THE NUCLEAR WASTE POLICY ACT**

13. In 1982, Congress enacted the Nuclear Waste Policy Act ("NWPA"). The purpose of the NWPA was, among other things, to establish a schedule for the siting, construction and operation of repositories for spent nuclear fuel and high level radioactive waste, to establish federal responsibility for the disposal of such waste and spent fuel, and to establish a Nuclear Waste Fund to ensure that the costs of such disposal would be borne by the persons responsible for generating the waste and spent fuel. 42 U.S.C. § 10131(b). Congress intended the federal government to collect the spent fuel in federally operated, centralized and permanent facilities to protect national security, public health and safety and the environment.

14. Section 302(a)(2) of the NWPA established a fee of 1 mil per kilowatt-hour for disposal of spent nuclear fuel used to generate electricity sold on or after the date 90 days after January 7, 1983. 42 U.S.C. § 302(a)(2). Section 302(a)(3) required that the Secretary establish a one-time per-kilogram fee for spent nuclear fuel used to generate electricity prior to the date on which the fee for prospective SNF became effective. 42 U.S.C. § 10222(a)(3).

15. Both the one-time fee and the continuing fees are paid into the "Nuclear Waste Fund", which is the sole source of funds to cover DOE's costs for disposing of the utilities' spent nuclear fuel. 42 U.S.C. §§ 10131(b)(4) and 10222. The Secretary of DOE is allowed to make expenditures from the Nuclear Waste Fund only for purposes of radioactive waste disposal activities under the Act. 42 U.S.C. § 10222(d).

16. For purposes of this Complaint, the NWPA mandates that DOE take three critical actions to fulfill its obligations under the Act. First, Section 302(a)(4) of the NWPA, 42 U.S.C. § 10222(a)(4), requires the Secretary to review annually the fees levied against the utilities to evaluate whether collection of those revenues will provide revenue sufficient to recover costs of radioactive waste disposal activities taken under the NWPA. In the event the Secretary determines that either insufficient or excess revenues are being collected, the Secretary is required to propose an adjustment in the fee to Congress. Under this

section, the Secretary's proposal automatically becomes effective if Congress does not reject the proposal within ninety (90) days.

17. Second, section 302(a)(5) of the NWPA, 42 U.S.C. § 10222(A)(5), requires the Secretary, acting through contracts, to dispose of spent nuclear fuel beginning not later than January 31, 1998. Upon acceptance of the high-level radioactive waste or spent fuel, title to such waste or spent nuclear fuel shall transfer to the Secretary. 42 U.S.C. § 10143.

18. Third, Sections 111(b)(1) and 302(a)(6) of the NWPA, 42 U.S.C. §§ 10131(b)(1) and 10222(a)(6), require the Secretary to establish a schedule for the siting, construction and operation of repositories accepting spent nuclear fuel for disposal, including the publication of written criteria setting forth the terms and conditions under which DOE will make disposal services available to the utilities.

**IMPLEMENTATION OF THE STATUTORY CONTRACT**

19. In 1983, DOE developed, through rulemaking procedures, the contract Congress required DOE and the nuclear utilities to execute (hereinafter "statutory

contract").1/ The contract contains the fee provisions which the Act required as well as the schedule provisions establishing the date upon which DOE is to begin disposing of spent nuclear fuel, also as required by the Act. See 10 C.F.R. Part 961.11.

20. Every one of the nation's utilities owning spent nuclear fuel, including each of the plaintiffs, executed an individual version of the statutory contract with DOE. See DOE Final Interpretation of Nuclear Waste Acceptance Issues ("Final Interpretation"), 60 Fed. Reg. 21793, 21794 (May 3, 1995).

21. Failure by a utility to execute a contract would subject the utility to denial of any subsequent request for issuance or renewal of a license to operate a nuclear power plant. The statute prohibits the Nuclear Regulatory Commission from issuing or renewing licenses to utilities that refuse to sign contracts. 42 U.S.C. § 10222(b)(1)(A). Without an operating license, no utility was or is permitted to operate a nuclear power plant in the United States.

---

1/ This court already has determined that the Standard Contract is to be treated as a regulation. Commonwealth Edison v. United States Dept. of Energy, 877 F.2d 1042, 1045 (D.C. Cir. 1989). Unlike many regulations, however, this regulation contains specific terms mandated by Congress as to which plaintiffs and DOE had no discretion.

22. The contract specifically implemented Section 302(a)(5)(B) of the NWPA, 42 U.S.C. § 10222(a)(5)(b), requiring that DOE dispose of spent nuclear fuel starting not later than January 31, 1998. 10 C.F.R. § 961.11, Article II (1996).

23. Under the contract, DOE is required to collect information from utilities regarding the age of the spent nuclear fuel and, using that data, establish a schedule by which DOE will dispose of spent nuclear fuel following the January 31, 1998 start date.

24. The Secretary delegated responsibility for establishing this schedule to DOE's Office of Civilian Radioactive Waste Management ("OCRWM"). That office published periodic reports setting forth the queue for acceptance of spent nuclear fuel by DOE. The most recent report published was the 1995 Acceptance Priority Ranking and Annual Capacity Report.

25. Since 1983, plaintiffs, and other nuclear utilities, have been paying the fees mandated by the NWPA, its implementing regulations, and the statutory contract. To date, plaintiffs and their customers have paid in excess of $400,000,000 in fees into the Nuclear Waste Fund. Total fees collected in the Nuclear Waste Fund, including principal payments, interest earned, and debt obligations incurred or accumulated, exceed $12 billion. In addition, fees for nuclear-generated electricity prior to April 7, 1983,

totaling more than $2.2 billion (including principal and interest), are obligated but not yet required to be paid.

26. Currently, the Nuclear Waste Fund contains funds substantially in excess of the amount necessary to fund DOE's yearly expenditures under the NWPA for the foreseeable future. The magnitude of this excess is such that the funds accumulated will pay DOE's estimated program costs at least through the year 2010.

27. Defendants have not, since the passage of the NWPA, adjusted the 1 mil per kilowatt-hour fee. Upon information and belief, defendants intend to continue collection of the 1 mil per kilowatt-hour fee despite defendants' failures to dispose of spent nuclear fuel as required by the NWPA and notwithstanding the excess amounts currently in the Nuclear Waste Fund.

## DOE FAILURE TO COMPLY WITH THE NWPA AND THE STATUTORY CONTRACT

28. In 1987, Congress designated the Yucca Mountain site in Nevada as the only candidate site for a permanent repository.

29. Defendants failed to complete a permanent repository at Yucca Mountain by January 31, 1998. Defendants have neither established a permanent repository nor determined a date certain by which a permanent repository will be established.

30. In 1993, various utilities and state agencies demanded that DOE reveal how it intended to perform its spent nuclear fuel disposal obligations by the 1998 deadline. Defendants took the position that they had no legal obligation to dispose of spent fuel absent an operational repository or other facility.

31. The utilities and states responded by filing petitions for review in this court. These petitions sought a declaration that the NWPA imposed an unconditional obligation on DOE to dispose of spent fuel beginning no later than January 31, 1998, a declaration that DOE's decision that it would not meet this obligation was contrary to the Act, and declaratory and injunctive relief. See, e.g., Petition of Indiana Michigan Power Company, dated May 30, 1995, at 5-6 (Case No. 95-1279).

32. The court held that the NWPA imposed an unconditional obligation on the Secretary to dispose of spent fuel beginning no later than January 31, 1998, noting that other relief was premature until DOE actually defaulted on its obligations. Indiana Michigan Power Co. v. Department of Energy, 88 F.3d. 1272, 1276-77 (D.C. Cir. 1996) The court further held that DOE's duty to dispose of spent fuel by January 31, 1998, was a "*quid pro quo*" for the payment of fees by utilities into the Nuclear Waste Fund. DOE neither sought rehearing of that decision nor petitioned the Supreme Court for further review.

33. On December 17, 1996, defendants advised the utilities that, the court's order notwithstanding, defendants would not honor the unconditional obligation to dispose of spent fuel beginning January 31, 1998. Letter of December 17, 1996. Moreover, defendants advised that they considered their own failures to act to be excusable under the statutory contract so that to them no adverse financial or legal consequences could accrue.

34. On January 31, 1997, various utilities and state agencies again petitioned this court. These petitioners sought: review of DOE's final decision not to dispose of spent fuel beginning January 31, 1998; a declaration that petitioners were entitled to withhold, without penalty or retaliation, payment into the Nuclear Waste Fund if DOE failed to begin disposing of spent nuclear fuel beginning January 31, 1998; and an order requiring DOE to develop and submit to the court milestones enabling it to dispose of spent fuel beginning no later than the required date. Joint Petition for Review, dated January 31, 1997, at 75-77 (Case No. 95-1279).

35. In Northern States Power Co. v. Department of Energy, 128 F.2d 754 (D.C. Cir. 1997), the court again confirmed that the NWPA imposed an unconditional obligation to dispose of the materials beginning no later than January 31, 1998, and issued a writ of mandamus precluding defendants from excusing their delay on the ground that DOE had not yet

constructed a permanent repository and had no authority to provide storage in the interim. 128 F.2d at 761. The court noted that DOE's position "would allow the Executive Branch to void an unequivocal obligation imposed by Congress." Id. at 760. The court declined to issue a writ of mandamus forcing DOE to dispose of spent fuel beginning January 31, 1998, on the grounds that mandamus was proper only upon a showing of inadequate remedy elsewhere, and that potentially adequate relief might exist under the statutory contract in contract-specific fora. Id. at 759.

36. On January 31, 1998, defendants failed to begin disposing of spent nuclear fuel. Defendants also failed to propose a plan for storage of that fuel, and have established no date by which they will commit to begin disposing of spent nuclear fuel. Letter from DOE General Counsel to Michigan Attorney General, dated January 13, 1997, at 1 (acknowledging uncertainty as to when DOE will begin disposing of spent fuel); 1996 Nuclear Waste Fund Fee Adequacy: an Assessment, at 6 (assuming DOE will dispose of spent fuel beginning in 2010).

37. DOE's failure to dispose of SNF beginning January 31, 1998, has required and will continue to require utilities to retain spent nuclear fuel at their facilities or otherwise arrange for storage at considerable expense. DOE's delay is

also likely to increase the costs of placing spent nuclear fuel in an operational repository.

38. Defendants' acts constitute a continuing violation of the NWPA, a breach of the statutory contract, and a violation of the taking and due process clauses of the fifth amendment to the U.S. Constitution.

**COUNT I (Violation Of Statutory Obligation To Begin Accepting Spent Nuclear Fuel By January 31, 1998)**

39. Plaintiffs reallege and incorporate by reference paragraphs 1 through 38 of this Complaint.

40. The NWPA, 42 U.S.C. § 10222(a)(5)(B), and its implementing regulations, 10 C.F.R. § 961.4, require the Secretary of Energy to dispose of spent fuel beginning January 31, 1998.

41. The Secretary's obligation to dispose of spent nuclear fuel beginning January 31, 1998, is an unconditional obligation.

42. Defendants have refused to dispose of spent nuclear fuel as required. Defendants predict that they will not begin to comply with the NWPA until some time after 2010. Defendants have offered no interim relief.

43. The Secretary's failure to dispose of spent nuclear fuel beginning January 31, 1998 is a violation of Section 10222(a)(5)(B) of the NWPA and 10 CFR § 961.11.

44. As a direct and proximate result of DOE's failure to comply with its statutory obligations, plaintiffs have been or will be required to retain possession of and title to spent nuclear fuel that the Secretary of Energy is obligated to accept.

45. Plaintiffs have or will suffer adverse consequences and financial injury as a result of that retention of possession and title, including but not limited to increased costs of storing the spent fuel, operational curtailment due to an inability to store spent fuel on site or efforts to reduce quantities of spent fuel produced, reduction in value of their property and assets, inability to use or sell their property and utility assets, potential liability to third-parties, and detrimental effect on their competitive position and on their relationships with investors, customers, and the state agencies that regulate them.

46. Plaintiffs' contract remedies in any other forum are inadequate. Anything less than specific performance of DOE's statutory and contractual obligations or contract remedies placing plaintiffs in the same legal and financial position as they would have been if defendants had timely performed will deprive plaintiffs and their customers of the only benefit Congress conferred upon plaintiffs in passing the NWPA -- centralization of SNF storage away from plaintiffs' facilities and under government control.

COUNT II (Deprivation Of Sustantive Due Process)

47. The plaintiffs reallege and incorporate by reference paragraphs 1 through 46 of this Complaint.

48. Plaintiffs' rights under the NWPA, section 10222(a)(5)(B), its implementing regulations, 10 C.F.R. § 961.4, and the statutory contract to have DOE dispose of spent nuclear fuel beginning January 31, 1998, are property interests protected by the fifth amendment to the United States Constitution. See U.S. Const. Amend. V.

49. Defendants' failure to dispose of spent nuclear fuel beginning January 31, 1998, and their failure to propose any reasonable accommodations to utilities, deprive plaintiffs of their protected property interests and fail to provide plaintiffs with the *quid pro quo* for their payments into the Nuclear Waste Fund.

50. Plaintiffs have been or will be required to retain possession of and title to spent nuclear fuel that the Secretary of Energy is obligated to accept. Plaintiffs have or will suffer adverse consequences and financial injury as a result of that retention of possession, including but not limited to increased costs of storing the spent fuel, operational curtailment due to an inability to store spent fuel on site or efforts to reduce quantities of spent fuel produced, reduction in value of their property and assets, inability to use or sell their property and utility assets,

potential liability to third-parties, and detrimental effect on their competitive position and on their relationships with investors, customers, and the state agencies that regulate them.

51. The actions of defendants are Executive actions not rationally related to the accomplishment of a legitimate government objective and, in fact, are contrary to the NWPA, its implementing regulations, and the statutory contracts entered under that Act.

52. Accordingly, Defendants' conduct constitutes a denial of plaintiffs' substantive due process rights.

**COUNT III (Taking)**

53. Plaintiffs reallege and incorporate by reference paragraphs 1 through 52 of this Complaint.

54. Plaintiffs' rights under the NWPA, section 10222(a)(5)(B), its implementing regulations, 10 C.F.R. § 961.4, and the statutory contract to have DOE dispose of spent nuclear fuel beginning January 31, 1998 are property interests within the meaning of the fifth amendment taking clause. See U.S. Const. Amend. V.

55. DOE's failure to dispose of SNF beginning January 31, 1998, and its refusal to accept the financial consequences of a projected delay of more than 12 years in performance of its statutory, regulatory and contractual

obligations, diminish the value of plaintiffs' investment-backed expectations and effect a taking of plaintiffs' property interests.

56. DOE's taking of plaintiffs' property interest is unauthorized. No statute permits DOE to deprive the plaintiffs of their property by failing to dispose of SNF beginning January 31, 1998. Indeed, DOE's failure is contrary to the NWPA, its implementing regulations, and the statutory contract.

**COUNT IV (Inverse Condemnation)**

57. Plaintiffs reallege and incorporate by reference paragraphs 1 through 56 of this Complaint.

58. Plaintiffs have a Constitutionally protected property interest in maintaining the value and use of their facilities which currently store spent fuel. *See* U.S. Const. Amend. V.

59. The NWPA, its implementing regulations and the statutory contract require DOE to dispose of spent fuel beginning January 31, 1998 at a rate of acceptance consistent with Congressional intent to remove spent nuclear fuel from utilities and collect it in a federally operated, centralized repository.

60. On acceptance of spent nuclear fuel, title to the spent nuclear fuel transfers, as a matter of law, to the Secretary of Energy. 42 U.S.C. § 10143.

61. By storing on plaintiffs' property spent nuclear fuel that defendants should have accepted, removed and taken title to, defendants are constructively condemning plaintiffs' property.

62. Defendants' conduct is wholly unauthorized. No statute permits the DOE to store property, to which it holds title as a matter of law, at plaintiffs' facilities. Indeed, defendants' failure to begin removing spent fuel from plaintiffs' facilities on January 31, 1998 is completely contrary to the NWPA, the implementing regulations, and the statutory contract.

**COUNT V (Breach Of Contract)**

63. Plaintiffs reallege and incorporate by reference paragraphs 1 through 62 of this Complaint.

64. DOE's statutory contract with plaintiffs requires DOE to accept title to the plaintiffs' spent nuclear fuel at their facilities, to transport that fuel, and to dispose of that fuel. These services were to begin not later than January 31, 1998.

65. DOE's failure to begin providing these services on January 31, 1998, constitutes a material breach of DOE's statutory contract with each plaintiff.

66. As a direct and proximate result of DOE's material breach, plaintiffs have been or will be required to retain possession of and title to spent nuclear fuel that the Department of Energy is obligated to accept. Plaintiffs have or will suffer adverse consequences and financial injury as a result of that retention of possession, including but not limited to increased costs of storing the spent fuel, operational curtailment due to an inability to store spent fuel on site or in an effort to reduce quantities of spent fuel produced, reduction in value of their property and assets, inability to use or sell their property and utility assets, potential liability to third-parties, and detrimental effect on their competitive position and on their relationships with investors, customers, and the state agencies that regulate them.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that the court enter judgment in favor of the companies, and grant the following relief:

(a) declare defendants in violation of their unconditional obligation to dispose of spent nuclear fuel beginning January 31, 1998;

(b) declare that DOE's refusal to dispose of spent fuel beginning January 31, 1998 is a violation of the substantive due process and taking clauses of the fifth amendment to the U.S. Constitution;

(c) enter an order requiring defendants to comply with their statutory and contractual obligations by accepting and taking title to spent nuclear fuel at a rate of acceptance consistent with Congressional intent that utilities not provide storage for increasing amounts of spent nuclear fuel at reactor sites;

(d) enter an order requiring defendants to provide storage for plaintiffs' spent nuclear fuel either at government facilities or at facilities procured for such storage;

(e) enter an order interpreting the statutory contract to require that defendants dispose of spent fuel beginning January 31, 1998, and/or to require that any costs relating to the delay in accepting spent nuclear fuel, including, *inter alia*, increased costs of storing spent fuel, costs of operational curtailment due to a need to reduce quantities of spent fuel produced, potential liability to third-

parties, and additional regulatory costs, be paid by the Department of Energy;

(f) enter an order directing the Department of Energy to prepare and execute a plan to reimburse plaintiffs, on an ongoing basis, for all costs incurred as a result of the delay in disposing of spent nuclear fuel;

(g) award all damages incurred as a result of defendants' material breach; and

(h) such other and further relief as the court deems just.

Respectfully submitted,

Tami Lyn Azorsky*
David A. Churchill
Stephen E. Ruscus
MCKENNA & CUNEO, L.L.P.
1900 K Street, N.W.
Washington, DC 20006
202-496-7500

Attorneys for

Consolidated Edison Company of New York, Inc.

Consumers Energy f/k/a Consumers Power Company

Pacific Gas and Electric Company

Rochester Gas and Electric Corporation

Dated: July 30, 1998 *Counsel of Record

Of Counsel:

C. Stanley Dees, Esq.
Herbert L. Fenster, Esq.
John Bonello, Esq.
Suzanne Karbarz, Esq.

MCKENNA & CUNEO, L.L.P.
1900 K Street, N.W.
Washington, DC 20006
202-496-7500

CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of July, 1998, a true copy of the foregoing was served by hand on:

Janet Reno, Esq.
Attorney General of the United States
Department of Justice
10th Street and Constitution Avenue, N.W.
Washington, DC 20530

Mary Anne Sullivan, Esq.
General Counsel
Department of Energy
Office of the General Counsel
Washington, DC 20585-0103