RECEIVED
SUPREME COURT, U.S.
POLICE DEPARTMENT

NOV 01 1999

A.M. P.M.
7|8|9|10|11|12|1|2|3|4|5|6

No. ____

IN THE

# SUPREME COURT OF THE UNITED STATES

---

CONSOLIDATED EDISON COMPANY OF NEW YORK, ET AL.,
*Petitioners,*

v.

UNITED STATES DEPARTMENT OF ENERGY, ET AL.,
*Respondents.*

**On Petition For A Writ Of Certiorari
To The United States Court Of Appeals
For The District Of Columbia Circuit**

---

## PETITION FOR WRIT OF CERTIORARI

---

TAMI LYN AZORSKY
*COUNSEL OF RECORD*
DAVID A. CHURCHILL
STEPHEN E. RUSCUS
MCKENNA & CUNEO, L.L.P.
1900 K STREET, N.W.
WASHINGTON, D.C. 20006
(202) 496-7500

*Of Counsel:*

C. STANLEY DEES
HERBERT L. FENSTER
MCKENNA & CUNEO, L.L.P.
1900 K STREET, N.W.
WASHINGTON, D.C. 20006
(202) 496-7500

Additional Counsel listed On
Inside Cover

Nov-02-99 10:22 From-MCKENNA&CUNEO 2024967756 T-458 P.02 F-002

BRENT L. BRANDENBURG
CONSOLIDATED EDISON COMPANY
OF NEW YORK, INC.
FOUR IRVING PLACE, RM. 1820
NEW YORK, NY 10003-3598
(212) 460-4333

JEFFREY R. CLARK
ROCHESTER GAS & ELECTRIC CORPORATION
89 EAST AVE.
ROCHESTER, NY 14649
(716) 771-2291

ARUNAS T. UDRYS
CONSUMERS ENERGY COMPANY
212 W. MICHIGAN AVE.
JACKSON, MI 49201
(517) 788-2513

CHRISTOPHER J. WARNER
PACIFIC GAS AND ELECTRIC COMPANY
P.O. BOX 7442
SAN FRANCISCO, CA 94120
(415) 973-6695

## QUESTIONS PRESENTED

Congress passed the Nuclear Waste Policy Act of 1982, 42 U.S.C. §§ 10101-10270, to address the pressing problems of spent nuclear fuel stored at commercial nuclear reactors around the country. In doing so, Congress directed courts of appeals to exercise "original and exclusive jurisdiction over any civil action" arising under the Act. 42 U.S.C. § 10139. This case arises out of the D.C. Circuit's dismissal of two separate actions directed at the refusal to address these problems as Congress required: (1) a petition alleging persistent over-collection of fees paid into the Nuclear Waste Fund, misuse of that fund and failure to establish terms and conditions for disposal of spent nuclear fuel, and (2) a complaint alleging breach of the statutory contract to begin disposing of spent nuclear fuel beginning January 31, 1998. The questions presented are:

1. Whether the D.C. Circuit's refusal to exercise the "original and exclusive" jurisdiction mandated by the NWPA to hear a petition alleging violations of the NWPA and the U.S. Constitution improperly deprives Petitioners of any forum for judicial interpretation of DOE's obligations under the NWPA other than the obligation to begin disposing of spent fuel on January 31, 1998.

2. Whether the NWPA requires courts of appeals to exercise "original and exclusive jurisdiction over any civil action" arising under the Act, including complaints for breach of the statutory contract that Congress required DOE to enter.

## RULE 29.6 LISTING

Pursuant to Supreme Court Rule 29.6, Petitioners list their respective parent companies and nonwholly owned subsidiaries as follows:

1. The parent company of Petitioner Rochester Gas & Electric Corporation is RGS Energy Group, Inc. Rochester Gas & Electric Corporation has no nonwholly-owned subsidiaries.

2. The parent company of Petitioner Consumers Energy Company is CMS Energy Corporation. Consumers Energy Company has the following nonwholly-owned subsidiaries: First Midland L.P., Midland Cogeneration Venture L.P., St. Clair Underground Storage Partnership, Marysville Fractionation Partnership, and Maxey Flats Site IRP, L.L.C.

3. The parent company of Petitioner Consolidated Edison Company of New York, Inc. ("Con Ed") is Consolidated Edison, Inc. Con Ed has no nonwholly-owned subsidiaries.

4. The parent company of Petitioner Pacific Gas and Electric Company is PG&E Corporation. Pacific Gas and Electric Company has the following nonwholly-owned subsidiaries: Alaska Gas Exploration Associates. Pacific Properties, and Standard Pacific Gas Line, Inc.

## TABLE OF CONTENTS

QUESTIONS PRESENTED .................................................. i

RULE 29.6 MOTION........................................................ ii

TABLE OF AUTHORITIES............................................. vi

OPINIONS BELOW ........................................................ 1

JURISDICTION................................................................ 1

STATUTORY AND CONSTITIONAL ISSUES .................. 1

STATEMENT OF THE CASE ........................................ 3

A. Congress Passed the NWPA to Create a National Program for Disposal Of Spent Nuclear Fuel ........... 4

B. Congress Vested Courts of Appeals with "Original and Exclusive" Jurisdiction to Review DOE's Performance of its Obligations Under the Act ............................................................. 5

C. Previous Litigation Addressed DOE's Failure to Move Spent Fuel by the Statutory Deadline ............. 5

D. Petitioners Raised New Statutory Violations with DOE in 1998............................................................. 7

E. The D.C. Circuit Refused To Hear This Case With No Substantive Explanation .............................. 9

REASONS FOR GRANTING THE WRIT ........................ 10

I. THE D.C. CIRCUIT'S FAILURE TO EXERCISE ITS ORIGINAL AND EXCLUSIVE JURISDICTION OVER DOE VIOLATIONS OF CRITICAL NWPA PROVISIONS FUNCTIONALLY DEPRIVES THE UTILITIES OF ANY CAPABILITY TO OBTAIN REVIEW OF DOE'S ACTIONS ..... 12

A. The Petition Alleges Persistent Misconduct Not Previously Addressed ..... 12

B. The Decision Below Allows DOE to Ignore Its Obligations Under the Act While Simultaneously Collecting Billion Dollar Fees from Utilities ..... 13

C. Since Only Courts of Appeals Have Authority to Review Claims that DOE Has Violated the Statute, the Decision Below Leaves No Available Forum to Bring Such Claims ..... 15

II. THE D.C. CIRCUIT'S DISMISSAL OF PETITIONERS' MOTION FOR LEAVE TO FILE COMPLAINT IGNORES CONGRESS'S DECISION TO VEST "ORIGINAL AND EXCLUSIVE" JURISDICTION IN COURTS OF APPEALS ..... 17

A. Congressional Directions Of Jurisdiction Essential to Implementation of a Major Federal Program Require Careful Compliance ..... 17

1. Federal Courts Must Comply with Congress's Decision to Vest Jurisdiction ..... 18

B. Refusal To Exercise Jurisdiction As Directed By Congress Undermines Enforcement Of The Act ..... 19

1. Utilities and the Government May Spend Millions of Dollars On Wasted Litigation ..... 20

2. Petitioners Will Be Deprived of Their Right To Relief Intended By Congress .......... 22

3. The Act Will Not Be Enforced As Written .......... 24

C. Courts of Appeals Must Be Required To Carry Out Congressional Intent .......... 23

CONCLUSION .......... 26


Nov-02-98 10:23 From-MCKENNA&CUNEO 2024867756 T-458 P.08 F-002

## TABLE OF AUTHORITIES

### CASES

*Ames v. Kansas ex rel. Johnson*, 111 U.S. 449 (1884) ........ 19

*Bors v. Preston*, 111 U.S. 252 (1884) .................................. 19

*Bowen v. Massachusetts*, 487 U.S. 879 (1988) ................... 22

*California v. Arizona*, 440 U.S. 59 (1979) ........................... 19

*Cohens v. Virginia*, 6 Wheat. 264 (1821) ............................ 17

*Florida Power & Light Co. v. Lorion*, 470 U.S. 729 (1985) ................................................................................ 25

*Hagans v. Lavine*, 415 U.S. 528 (1974) ................................ 25

*Harrison v. PPG Indus. Inc.*, 446 U.S. 578 (1980) ............. 25

*Indiana Michigan Power Co. v. Department of Energy*, 88 F.3d 1272 (D.C. Cir. 1996) ........................................ 6

*Kerr v. U.S. District Court*, 426 U.S. 394 (1976) ............... 25

*Kline v. Burke Constr. Co.*, 260 U.S. 226 (1922) ................ 17

*Marbury v. Madison*, 5 U.S. 137 (1803) ............................ 19

*National Ctr. for Mfg. Sciences v. United States*, 114 F.3d 196 (Fed. Cir. 1997) ....................................... 22

*New Orleans Public Serv., Inc. v. New Orleans*, 491 U.S. 350 (1989) ...................................................... 17

*Northern States Power Co. v. Department of Energy*, 128 F.3d 754 (D.C. Cir. 1997) .................................. 6, 10

*Northern States Power Co. v. United States*, No. 98-484C, 1999 WL 191174 (Fed. Cl. Apr. 6, 1999) .................................................. 20

*Pacificorp v. Federal Energy Regulatory Comm'n*, 795 F.2d 816 (9th Cir. 1986) .......................................... 19

*Puget Sound Power & Light Co. v. United States*, 23 Cl. Ct. 46 (1991).......................................................... 19

*Roche v. Evaporated Milk Ass'n*, 319 U.S. 21 (1943) ......... 25

*State of Nebraska*, 209 U.S. 436 (1908)............................... 25

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998) ..................................................................... 18

*Transohio Sav. Bank v. Director, Office of Thrift Supervision*, 967 F.2d 598 (D.C. Cir. 1992) .................. 22

*United States Shoe Corp. v. United States*, 114 F.3d 1564 (Fed. Cir. 1997), *aff'd*, 523 U.S. 360 (1998) ........ 15

*United States v. Erika, Inc.*, 456 U.S. 201 (1982) .............. 25

*United States v. King*, 395 U.S. 1 (1969) ........................... 22

*United States v. Utah Constr. & Mining Co.*, 384 U.S. 394 (1966) ................................................................ 22

*Wisconsin Elec. Power Co. v Department of Energy*, No. 99-1342 (D.D.C. Aug. 24, 1999) ............................ 20

Nov-02-99 10:27 From-MCKENNA&CUNEO 2024967756 T-459 P.10 F-003

*Yankee Atomic Elec. Co. v. United States*, 42 Fed. Cl. 223 (1998) .......... 20

## STATUTES & REGULATIONS

U.S. Const. art. I, § 8, cl. 1 .......... 2

U.S. Const. Amend. V .......... 2

28 U.S.C. § 1254(1) .......... 1

28 U.S.C. § 1491 .......... 3, 19

42 U.S.C. §§ 10101-10270 .......... 3, 5

42 U.S.C. §§ 10121, 10136, 10151, 10155, 10157, 10175, 10197 .......... 4

42 U.S.C. § 10131(b)(1) .......... 2, 4, 13, 24

42 U.S.C. § 10139 .......... *passim*

42 U.S.C. § 10222 .......... *passim*

60 Fed. Reg. 21,793 (1995) .......... 5

H.R. Rep. No. 97-491 (1982) .......... *passim*

128 Cong. Rec., S4159 (April 28, 1982) .......... 10

Nov-02-99 10:28 From-MCKENNA&CUNEO 2024967756 T-459 P.11 F-003

## OPINIONS BELOW

5. The unpublished Opinion of the United States Court of Appeals for the District of Columbia Circuit, granting Respondents' Motion to Dismiss Petition and dismissing Petitioners' Motion for Leave to File Complaint as moot was decided and filed on April 16, 1999 and is reprinted in the Appendix. (App. to Pet. 1a.)

6. The unpublished Orders of the United States Court of Appeals for the District of Columbia Circuit, denying the Petitions for Rehearing and Rehearing En Banc, were filed on August 2, 1999, and are reprinted in the Appendix. (App. to Pet. 2a, 3a.)

## JURISDICTION

The opinion of the United States Court of Appeals for the District of Columbia Circuit was decided and filed April 16, 1999. Timely Petitions for Rehearing and Rehearing *En Banc* were filed and denied by Orders of the D.C. Circuit, dated August 2, 1999. This Petition for Certiorari is filed within 90 days of that August 2, 1999 Order.

This Court has jurisdiction under 42 U.S.C. § 10139 and 28 U.S.C. § 1254(1) to review the final judgment or decree of the United States Court of Appeals for the District of Columbia Circuit.

## STATUTORY AND CONSTITUTIONAL PROVISIONS

This case concerns the interpretation and application of the following statutory and constitutional provisions, all of which are reproduced in the Appendix:

Nov-02-99 10:28 From-MCKENNA&CUNEO 2024967756 T-458 P.12 F-003

1. The Nuclear Waste Policy Act, § 119, as enacted, 42 U.S.C. § 10139. (App. to Pet. 4b.)

2. The Nuclear Waste Policy Act, § 111(b)(1), as enacted, 42 U.S.C. § 10131(b)(1). (App. to Pet. 1b.)

3. The Nuclear Waste Policy Act, § 302(a)(4), (a)(5), (a)(6) & (d), as enacted, 42 U.S.C. § 10222. (App. to Pet. 6b.)

4. U.S. Const. art. 1, § 8, cl. 1: "The Congress shall have Power To lay and collect Taxes, Duties, Imposts and Excises, to pay the Debts and provide for the common Defence and general Welfare of the United States; but all Duties, Imposts and Excises shall be uniform throughout the United States."

5. U.S. Const. Amend. V:

> No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger: nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall

private property be taken for
public use, without just
compensation.

6. 28 U.S.C. § 1491. (App. to Pet. 15b.)

## STATEMENT OF THE CASE

This case arises from the D.C. Circuit's dismissal of two separate actions directed at the Department of Energy's ("DOE's") refusal to address the pressing problem of spent nuclear fuel in accordance with the Nuclear Waste Policy Act of 1982, 42 U.S.C. §§ 10101-10270. First, the court dismissed a Petition alleging that DOE is over-collecting the fees utilities are required to pay under the Act and misusing the Nuclear Waste Fund, the trust fund that holds those fees. Under the Act, DOE has collected more than $13 billion in fees and interest to date. The Petition also alleged that DOE has failed to conduct the annual assessment of the adequacy of the fee required by 42 U.S.C. § 10222(a)(4), and has failed to establish terms and conditions necessary for government and industry to implement Congress' nuclear waste disposal program as required by 42 U.S.C. § 10222(a)(6).

Second, the D.C. Circuit dismissed Petitioners' Motion for Leave to File Complaint as moot. That motion sought leave to file a complaint alleging, among other things, breach of the contract the Act required DOE to enter with utilities in exchange for the payment of fees. The court refused to address on the merits Petitioners' claim that the Act requires courts of appeals to exercise "original and exclusive jurisdiction over any civil action" arising under the NWPA, including claims for breach of the statutory contract. *See* 42 U.S.C. § 10139.

### A. Congress Passed the NWPA to Create a National Program for Disposal Of Spent Nuclear Fuel

Congress passed the Nuclear Waste Policy Act to address the pressing problem of spent nuclear fuel stored at commercial nuclear reactors around the country. In passing the Act, Congress sought to remedy 30 years of inadequate federal efforts to resolve these problems, noting that spent nuclear fuel and high-level radioactive waste had become "major subjects of public concern." *See* 42 U.S.C. § 10131.

In the NWPA, Congress created a comprehensive program for resolution of the spent fuel problem. The Act required DOE to develop a federally controlled system for disposal of spent fuel, including design of disposal packaging, a permanent repository, interim storage capability, and a transportation system for movement of spent fuel. The Act included obligations for DOE to coordinate with both states and utilities as to the requirements of such a system. *See* 42 U.S.C. §§ 10121, 10131, 10136, 10151, 10155, 10157, 10175, 10197.

Congress also established a system for the collection of fees from both the utilities and government generators of spent fuel adequate to fund the nuclear waste disposal activities directed by Congress. 42 U.S.C. § 10222. Moreover, Congress required DOE to enter contracts with public utilities which provide that, in exchange for the payment of fees, DOE will take title to and dispose of spent nuclear fuel and high-level radioactive waste. 42 U.S.C. § 10222. The Act required DOE to begin disposing of fuel under these statutory contracts on January 31, 1998. *Id.*

Seventeen years after passage of the Act, DOE has taken no action in accordance with the timetable established by Congress to alleviate these problems. Currently, DOE

Nov-02-99 10:29 From-MCKENNA&CUNEO 2024867756 T-458 P.15/80 F-003

expects to begin disposing of spent fuel twelve years from now, if ever. Over these seventeen years, DOE has collected in excess of $13 billion in fees and interest from utilities. Industry-wide, nuclear utilities currently are required by DOE to pay over $600,000,000 per year in fees. DOE continues to collect this money despite its failure to implement the spent nuclear fuel program Congress mandated.

### B. Congress Vested Courts of Appeals with "Original and Exclusive" Jurisdiction to Review DOE's Performance of its Obligations Under the Act

To ensure implementation of its national waste program, Congress designated United States Courts of Appeals "special courts" to oversee DOE's reluctant implementation of Congressional direction on spent nuclear fuel disposal. H.R. Rep. No. 97-491 at 30 (1982). To this end, Congress vested courts of appeals with "original and exclusive jurisdiction over any civil action" relating to DOE's performance of the obligations Congress mandated, including claims for breach of the contracts mandated by the Act. *See* 42 U.S.C. § 10139. Congress believed that "expedited judicial review of court challenges to the program as it is implemented" by courts of appeals, alone, would be an essential element of that program. H.R. Rep. No. 97-491 at 30.

### C. Previous Litigation Addressed DOE's Failure to Move Spent Fuel by the Statutory Deadline

In 1996, DOE issued a Final Interpretation of Nuclear Waste Acceptance Issues. 60 Fed. Reg. 21,793 (1995), concluding that it had no obligation to comply with the January 31, 1998 deadline Congress had established.

Utilities, including Petitioners, challenged this interpretation in the D.C. Circuit which reversed DOE's Final Interpretation and held that DOE had an unconditional obligation to begin disposing of spent nuclear fuel no later than January 31, 1998. *Indiana Michigan Power Co. v. Department of Energy*, 88 F.3d 1272 (D.C. Cir. 1996).

DOE then took the position that its obligation to dispose of spent fuel as Congress required was only contractual, and that its anticipated failure to begin disposing of spent nuclear fuel on January 31, 1998, was unavoidable under the "Unavoidable Delay" clause of the statutory contract. DOE maintained that its failure would be without consequence to DOE. Utilities, including Petitioners, sought a writ of mandamus requiring DOE to comply with both the NWPA and the D.C. Circuit's order in *Indiana Michigan*.

The D.C. Circuit held that, under Section 302(a)(5)(B) of the NWPA, DOE had an unconditional obligation to begin disposing of spent nuclear fuel by January 31, 1998. The court also held that DOE could not rely on the unavoidable delay clause of the statutory contract to excuse its failure to meet the January 31, 1998 deadline. *Northern States Power Co. v. Department of Energy*, 128 F.3d 754, 756-58 (D.C. Cir. 1997). (App. to Pet. 1c.) In analyzing the utilities' entitlement to mandamus relief, however, the D.C. Circuit found that "the remedial scheme of the Standard Contract offers a potentially adequate remedy" for DOE's failure to meet its obligation. The court remanded the utilities to their remedies under the Standard Contract. *Id.* at 761.

DOE petitioned for rehearing, which the D.C. Circuit denied. DOE next petitioned this Court for writ of certiorari seeking a determination that the D.C. Circuit's decision in *Northern States Power* impermissibly intruded upon the Court of Federal Claims' Tucker Act jurisdiction. Utilities

Nov-02-98 10:28 From-MCKENNA&CUNEO 2024967756 T-458 P.17/80 F-003

including Petitioners opposed that petition on several grounds, including advising this Court that the utility Petitioners in this case had asked the D.C. Circuit to determine the scope of its "original and exclusive" jurisdiction under the NWPA. The utilities argued that there was no reason for this Court to conduct a review before the D.C. Circuit ruled on whether § 119(a) of the NWPA requires courts of appeals to exercise "original and exclusive jurisdiction over any civil action" arising under the Act, including claims for breach of the statutory contract. The Court declined DOE's request for review. Unfortunately, the D.C. Circuit has now declined to determine the scope of its "original and exclusive" jurisdiction.

No prior litigation has addressed DOE's violation of its non-contractual, statutory obligations under the Act, including its failure to establish terms and conditions governing the disposal of spent fuel and its over-collection and misuse of fees paid by the utilities. These issues were raised in court for the first time when Petitioners filed in the D.C. Circuit on July 30, 1998.

### D. Petitioners Raised New Statutory Violations with DOE in 1998

In June, 1998, Petitioners Consolidated Edison and Rochester Gas and Electric wrote to DOE seeking compliance with two sections of the statute neither interpreted nor litigated in any prior proceeding. The utilities asserted that DOE was over-collecting fees in violation of § 302(a)(4) of the NWPA and had failed to establish terms and conditions for disposal of spent fuel as required by § 302(a)(6) of that Act. DOE responded in July 1998, failing to provide assurances and instead suggesting, without supplying a basis, that (1) no adjustment of the fee was necessary, and (2) DOE had met all statutory obligations to

establish terms and conditions regarding disposal of spent fuel.

After receiving DOE's response, Petitioners filed a Petition for Review of Actions and Failure to Act of the Secretary of the Department of Energy, The Department of Energy, and the United States of America ("Petition"). First, Petitioners claimed that DOE had failed to conduct the annual assessments of the adequacy of the Nuclear Waste Fund required by Section 302(a)(4) of the NWPA and instead had engaged in persistent over-collection of fees. *See* 42 U.S.C. § 10222(a)(4). (*See also* Pet. for Leave to File at 20-22.) Second, Petitioners alleged that Sections 111(b)(1) and 302(a)(4) of the NWPA prohibited DOE from collecting any fees in excess of those that would be necessary to fund the construction and operation of a statutorily compliant repository. (Pet. for Leave to File at 20.) Third, Petitioners alleged that Respondents were using Nuclear Waste Fund monies for other than permitted radioactive waste disposal activities in violation of Section 302(d) of the NWPA and as general treasury funds (i.e., to fund federal highways, military construction, social security, and tobacco subsidies, etc.) in violation of Section 302(d) of the NWPA. (Pet. for Leave to File at 27.) Finally, Petitioners alleged that Respondents had failed to comply with Section 302(a)(6) of the NWPA, which requires DOE to establish binding terms and conditions for the disposal of spent nuclear fuel, including a schedule and rate of acceptance. (Pet. for Leave to File at 29-32.) None of the referenced statutory provisions has been interpreted in any prior proceeding, and none are implicated in disputes under the statutory contracts between DOE and utilities.

### E. The D.C. Circuit Refused to Hear This Case with No Substantive Explanation

On April 16, 1999, the D.C. Circuit granted Respondents' motion to dismiss the Petition, stating only that "Petitioners' arguments are precluded by the Court's holding in *Northern States Power v. Dep't of Energy, et al.*, 128 F.3d 754 (D.C. Cir. 1997) and the unpublished order issued May 5, 1998, denying rehearing in that case." The court provided no explanation as to why it believed Petitioners' arguments were precluded. Claims such as Petitioners' allegations of over-collection of fees and misuse of the Nuclear Trust Fund as general treasury funds clearly fall outside the scope of any prior litigation and remain violations of the Act which are unaddressed today.

The D.C. Circuit also dismissed as "moot" Petitioners' Motion for Leave to File Complaint for Failure to Act under the Nuclear Waste Policy Act ("Motion for Leave to File Complaint") (attaching complaint) that Petitioners had filed on July 30, 1998, pursuant to the D.C. Circuit's "original and exclusive" jurisdiction. The motion alleged that DOE had refused to implement the important national program Congress had directed and that the D.C. Circuit was the only forum with jurisdiction to provide the contractual remedies to which the court had directed Petitioners in *Northern States Power*. The underlying complaint alleged breach of the statutory contract, failure to act under Section 302(a)(5) of the NWPA, 42 U.S.C. § 10222(a)(5), and constitutional violations.[1] The D.C.

---

[1] In filing the Motion for Leave to File Complaint, Petitioners followed a procedure similar to the one set forth in this Court's Rule 17 which states that parties filing original actions under the Court's original and exclusive

*(Footnote cont'd on next page)*

Circuit did not address Petitioners' motion to file this wholly separate action on the merits; it dismissed the motion as moot without explanation.

Petitioners timely filed a Petition for Rehearing and Request for Rehearing *En Banc*. On August 2, 1999, the D.C. Circuit issued orders denying Petitioners' Petition for Rehearing and Request for Rehearing *En Banc* without opinion.

This Petition for Certiorari is filed within 90 days of the August 2, 1999 Orders denying rehearing and rehearing *en banc*.

## REASONS FOR GRANTING THE WRIT

Congress enacted the NWPA in 1982 to establish a comprehensive mechanism for addressing the pressing "'national problem' posed by the accumulation of spent nuclear fuel and radioactive waste produced by various domestic sources." *Northern States Power Co. v. Department of Energy*, 128 F.3d 754, 755 (D.C. Cir. 1997). Under the Act, Congress required the federal government by a date certain to collect spent fuel in federally operated, centralized locations to protect critical national security, public health and safety, and environmental interests. 42 U.S.C. § 10131(b); *see also* 128 Cong. Rec., S4159 (April 28, 1982) (statement of Senator Johnson); *id.*, Letter from

---

*(Footnote cont'd from previous page.)*

jurisdiction file a motion for leave to file with the complaint. *See* S. Ct. R. 17. The D.C. Circuit has no procedures for filing actions when that court has original and exclusive jurisdiction.

Nov-02-99 10:31 From-MCKENNA&CUNEO 2024967756 T-458 P.21/90 F-003

President Reagan to President of the Senate (April 28, 1982). Congress also required that generators of spent fuel pay only such fees as necessary to effectuate the Congressional purpose.

To ensure implementation of its national waste program, Congress designated United States Courts of Appeals "special courts" to oversee DOE's reluctant implementation of that program. H.R. Rep. No. 97-491 at 30 (identifying "expedited judicial review of court challenges to the program as it is implemented" as an essential element of that program). To this end, Congress vested courts of appeals with "original and exclusive jurisdiction" to hear "any civil action" challenging an action or failure to act under the NWPA, including claims for breach of the contracts mandated by that Act. *See* 42 U.S.C. § 10139.

The D.C. Circuit's refusal even to determine the scope of its "original and exclusive" jurisdiction and its refusal to determine whether DOE is over-collecting and misusing billions of dollars in fees collected from utilities leaves the nation's nuclear waste disposal program in disarray. Public utilities continue to pay hundreds of millions of dollars per quarter with no ability to challenge how that money is used or whether DOE is collecting too much. Certiorari review is necessary to ensure both the availability of the judicial remedy Congress intended and implementation of the program Congress intended.

Nov-02-99 10:31 From-MCKENNA&CUNEO 2024967756 T-458 P.22/80 F-003

## I. THE D.C. CIRCUIT'S FAILURE TO EXERCISE ITS ORIGINAL AND EXCLUSIVE JURISDICTION OVER DOE VIOLATIONS OF CRITICAL NWPA PROVISIONS FUNCTIONALLY DEPRIVES THE UTILITIES OF ANY CAPIBILITY TO OBTAIN REVIEW OF DOE'S ACTIONS

### A. The Petition Alleges Persistent Misconduct Not Previously Addressed

The Petition filed at the D.C. Circuit alleged statutory and constitutional misconduct by DOE. Petitioners alleged, among other things, that:

- DOE failed to conduct the annual assessments of the adequacy of the Nuclear Waste Fund required by § 302(a)(4) of the NWPA and instead has engaged in persistent over-collection of fees. *See* 42 U.S.C. § 10222(a)(4). (Pet. at 20-22.)

- DOE is over-collecting fees in violation of §§ 111(b)(1) and 302(a)(4) of the NWPA by collecting fees in excess of those necessary to fund the construction and operation of a statutorily compliant repository. (Pet. at 20.)

- Respondents are using Nuclear Waste Fund monies for other than authorized "radioactive waste disposal activities" in violation of § 302(d) and as general treasury funds (i.e., to fund federal highways. military construction, social security, and tobacco subsidies. etc.) in violation of § 302(d) of the NWPA. (Pet. at 27.)

- DOE has failed to establish binding terms and conditions governing its disposal of spent nuclear

> fuel, including schedule and rate of acceptance. as required by § 302(a)(6) of the NWPA.

The allegations that Respondents are violating statutory obligations relating to the collection and use of fees for the Nuclear Waste Fund are serious allegations relating to the very core of the federal program for nuclear waste disposal. These allegations could be raised whether or not DOE had begun accepting spent fuel on January 31, 1998. Accordingly, the claims in the Petition are neither reliant on that failure nor precluded by earlier decisions addressing that issue.

The D.C. Circuit's April 16, 1999 order summarily dismissed the Petition on grounds that "Petitioners' arguments are precluded by the Court's holding in *Northern States Power v. Dep't of Energy, et al.*, 128 F.3d 754 (D.C. Cir. 1997) and the unpublished order issued May 5, 1998, denying rehearing in that case." (Order of 4/16/99 (App. of Pet. 1a).) This decision denies utilities any forum for review of DOE's compliance with statutory obligations wholly separate from DOE's obligation to dispose of spent nuclear fuel beginning January 31, 1998, on the basis of a case that reviewed only that obligation. It also eliminates from the Act the explicit judicial review function created by Congress and permits DOE to operate without supervision, subject only to limitations that potentially could be provided by subsequent legislative action.

### B. The Decision Below Allows DOE to Ignore Its Obligations Under the Act While Simultaneously Collecting Billion Dollar Fees from Utilities

DOE already has collected over $13 billion in fees and interest from generators of spent fuel. Moreover, DOE's unlawful collection and use of fees is ongoing. Industry-

wide, DOE continues to collect approximately $600,000,000 per year and DOE has stated its intent to continue the collection of fees for at least the next 40 years. DOE never has adjusted the fees and has failed properly to perform the fee assessments required by § 302(a)(4). Moreover, as a result of its mismanagement and delay, DOE proposes to charge the utilities over $42 billion instead of the estimated $35 billion necessary to fund the program authorized by Congress. DOE's illegal exaction of fees is a serious ongoing violation of the United States Constitution that must not be permitted to continue unabated for the next 40 years or more.

The D.C. Circuit has refused to hear Petitioners' challenges to DOE's conduct, apparently determining that whatever relief is available under the statutory contract is sufficient to address all of DOE's failures. It is not. Absent judicial review of its actions relating to collection of fees, DOE has carte blanch to violate the Act, to impose fees unauthorized by Congress, and to require utilities to pay for the privilege of suffering the consequences of DOE's statutory violations.

DOE's conduct is not sanctioned by the Act or the Constitution. The NWPA imposes obligations on DOE that are separate and distinct from the obligation to begin disposing of spent fuel on January 31, 1998. The NWPA requires DOE annually to assess the adequacy of the fee to avoid over-collection. 42 U.S.C. § 10222(a)(4). The Act limits the uses of the Nuclear Waste Fund in which the fees are kept. 42 U.S.C. § 10222(d). DOE is not free to collect as much as it wants and to use that money in any manner it chooses. The Act also requires DOE to establish terms and conditions for disposal of spent nuclear fuel. 42 U.S.C. § 10222(a)(6). Utilities must have a forum available to challenge DOE's failure to honor these statutory obligations.

### C. Since Only Courts of Appeals Have Authority to Review Claims that DOE Has Violated the Statute, the Decision Below Leaves No Available Forum to Bring Such Claims

Congress designated courts of appeals as special courts to address DOE's failure to comply with the NWPA. 42 U.S.C. § 10139. No other forum has the authority to address the alleged failures to comply with the NWPA, nor to enjoin future violations of the Act. Claims for breach of the statutory contract cannot remedy DOE's failures to comply with statutory obligations. Only the courts of appeals and this Court in an appellate capacity have been designated by Congress to determine whether DOE is over-collecting the fees required by the Act and misusing the fees collected. If the D.C. Circuit will not decide whether DOE's continued fee collection complies with the statute, DOE's over-collection of fees will continue unabated.

Congress could not and did not intend such a result. Had it granted DOE unfettered discretion to collect fees regardless of costs and without a corresponding obligation to provide disposal services, collection of such fees would amount to an illegal exaction and an unconstitutional tax under Article I of the Constitution. *See United States Shoe Corp. v. United States*, 114 F.3d 1564, 1572-74 (Fed. Cir. 1997), *aff'd*, 523 U.S. 360 (1998). Instead, Congress established a detailed and specific program for the disposal of spent fuel, permitted DOE to collect and expend fees only for authorized nuclear waste disposal activities, and expressly provided for judicial interpretation of the Act by courts of appeals if the Executive Branch failed to meet the mandate of the Legislature.

Petitioners' allegations regarding DOE's failure to establish terms and conditions as required by 42 U.S.C.

Nov-02-99 10:32 From-MCKENNA&CUNEO 2024967756 T-459 P.26/80 F-003

§ 10222(a)(6) are equally important. The safety and security of the citizens of the United States depends on careful coordination between DOE and the nuclear utilities with regard to the handling of spent nuclear fuel. Because of DOE's delay in disposing of this fuel, utilities are faced with the immediate task of making interim arrangements for the storage of spent fuel that ultimately must dovetail with DOE's intended but undisclosed course of action. DOE's refusal to establish even the most rudimentary terms and conditions for this disposal places utilities in a difficult position. They must ensure safe storage of spent nuclear fuel until DOE finally meets its obligations to dispose of that fuel, but they may be required to do something completely different, at significant additional cost, when DOE finally determines its permanent disposal system. Moreover, absent DOE's compliance with its obligation to establish a schedule and rate of acceptance for spent fuel, utilities have no way of knowing how long and in what quantities ever-growing amounts of spent fuel must be stored. No courts except courts of appeals have been authorized to require DOE to comply with the statute. The Court of Federal Claims can grant damages for breach of the statutory contract, but it cannot hear allegations of statutory violations.

Congress has charged courts of appeals with responsibility for reviewing DOE's implementation of Congress's nuclear waste disposal program. H.R. Rep. No. 97-491 at 30. The D.C. Circuit's decision, if permitted to remain in effect, will allow DOE to ignore the direction of Congress in the NWPA, pursue an undisclosed nuclear waste disposal program of its own design, and force utilities to pay unlimited and unspecified costs incurred thereby. In dismissing the Petition (without analysis), the D.C. Circuit improperly refused to exercise its original and exclusive jurisdiction to consider DOE's systematic over-collection and misuse of fees in violation of the NWPA and DOE's failure

Nov-02-99 10:33 From-MCKENNA&CUNEO 2024967756 T-458 P.27/80 F-003

to comply with its statutory mandate to establish terms and conditions for nuclear waste disposal.

## II. <u>THE D.C. CIRCUIT'S DISMISSAL OF PETITIONERS' MOTION FOR LEAVE TO FILE COMPLAINT IGNORES CONGRESS'S DECISION TO VEST "ORIGINAL AND EXCLUSIVE" JURISDICTION IN COURTS OF APPEALS</u>

### A. Congressional Directions Of Jurisdiction Essential to Implementation of a Major Federal Program Require Careful Compliance

#### 1. Federal Courts Must Comply with Congress's Decision to Vest Jurisdiction

Congress, and not the Judiciary, defines the scope of federal jurisdiction within the constitutionally permissible bounds. *Kline v. Burke Constr. Co.*, 260 U.S. 226, 234 (1922). Federal courts may not abstain from the exercise of jurisdiction directed by Congress. *See New Orleans Public Serv., Inc. v. New Orleans*, 491 U.S. 350, 358-59 (1989); *Cohens v. Virginia*, 6 Wheat. 264, 404 (1821) (court "ha[s] no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given. The one or the other would be treason to the constitution").

Under the NWPA, Congress vested courts of appeals with "original and exclusive jurisdiction over any civil action" specifically because it wanted expedited and consistent judicial oversight over DOE's reluctant implementation of Congress' nuclear waste disposal program. *See* H.R. Rep. No. 97-491 at 30. The D.C. Circuit failed to address Petitioners' claim that courts of appeals had

NOV-02-89 10:33 From-MCKENNA&CUNEO 2024967756 T-459 P.28/80 F-003

jurisdiction over the complaint Petitioners sought leave to file, thus abdicating its obligation to address the scope of its own jurisdiction. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998).

The D.C. Circuit's failure to consider its own jurisdiction under the NWPA is particularly harmful and inappropriate because Congress took such an unusual step in naming courts of appeals as special courts. The NWPA's jurisdictional provision is extraordinary. Such grants of "original and exclusive" jurisdiction to non-trial courts are almost unprecedented (only the Judiciary Act of 1789 shares this distinction). By this grant, Congress intended the creation of a unique, comprehensive and expedited mechanism for resolving all disputes relating to DOE's failures to implement the national nuclear waste program. Failure of the D.C. Circuit to even consider the scope of the jurisdictional language eliminates entirely the system Congress intended to create.

Moreover, because "original and exclusive" jurisdiction lies in the courts of appeals, this Court is in turn the only court with appellate jurisdiction to ensure that Congress's intent is honored. Absent review by this Court, no court will have interpreted the "original and exclusive" jurisdiction provision in the NWPA. Congressional intent to consolidate all civil actions under the NWPA in courts of appeals will have been subverted. Only this Court can now require the D.C. Circuit to exercise its "original and exclusive" jurisdiction and address Petitioners' claims as Congress directed.

### B. Refusal To Exercise Jurisdiction As Directed By Congress Undermines Enforcement Of The Act

#### 1. Utilities and the Government May Spend Millions of Dollars On Wasted Litigation

When Congress granted "original and exclusive" jurisdiction to courts of appeals, it divested any other court, including the United States Court of Federal Claims, of jurisdiction over any action under the NWPA, including actions for breach of the statutory contract alleged in the complaint. *Marbury v. Madison*, 5 U.S. 137, 174 (1803) (exclusive jurisdiction in one court necessarily negates the possibility of jurisdiction in another); *Ames v. Kansas ex rel. Johnson*, 111 U.S. 449, 469 (1884) (distinguishing original and exclusive jurisdiction from original jurisdiction); *Bors v. Preston*, 111 U.S. 252 (1884) (same); *California v. Arizona*, 440 U.S. 59, 61 (1979) ("original and exclusive" designates the Supreme Court as the only permissible forum; *see also Puget Sound Power & Light Co. v. United States*, 23 Cl. Ct. 46, 56-57 (1991) (court held that Ninth Circuit had exclusive jurisdiction over action for breach of contract entered into under Northwest Power Act); *Pacificorp v. Federal Energy Regulatory Comm'n*, 795 F.2d 816, 826 (9th Cir. 1986) (J. Wallace, concurring) (jurisdiction over contractual claim does not lie with Claims Court based on Tucker Act).

Because the D.C. Circuit has refused to exercise its original and exclusive jurisdiction, multiple utilities are pursuing contractual relief in fora that may have been divested of jurisdiction over their claims. Eight utilities have filed breach of contract actions in the Court of Federal Claims under that court's Tucker Act jurisdiction. *See* 28 U.S.C. § 1491. (App. to Pet. 15b.) Two of those cases are before the Court of Appeals for the Federal Circuit because

NOV-02-98 10:34 From-MCKENNA&CUNEO 2024967756 T-458 P.30/80 F-003

of conflicting decisions on identical government motions to dismiss. The government argued that utilities are limited to relief available under the statutory contract which must be sought from the contracting officer. One judge denied the motion holding that a party is not so limited when the government materially breaches a contract and remedies under the contract do not afford the party complete relief. *Yankee Atomic Elec. Co. v. United States*, 42 Fed. Cl. 223, 230-31 (1998). Another judge granted the government's motion to dismiss. *Northern States Power Co. v. United States*, No. 98-484C, 1999 WL 191174 (Fed. Cl. Apr. 6, 1999).

Another utility has filed in the Court of Appeals for the D.C. Circuit after attempting to resolve its dispute with the contracting officer. *Wisconsin Elec. Power Co. v. Department of Energy*, No. 99-1342 (D.D.C. Aug. 24, 1999). Wisconsin Electric filed its petition pursuant to the D.C. Circuit's "original and exclusive" jurisdiction and, like Petitioners, requests both monetary and non-monetary relief under the statute and statutory contract, including an order requiring DOE to take title to spent fuel.

Both sets of litigants cannot be correct. If the NWPA grants original and exclusive jurisdiction to courts of appeals for cases involving the statutory contract, the Court of Federal Claims has been divested of its Tucker Act jurisdiction. Yet, in all ongoing proceedings, one issue remains unaddressed: whether the D.C. Circuit has "original and exclusive" jurisdiction over claims for breach of the statutory contract under 42 U.S.C. § 10139. As a result, utilities may spend several years and significant dollars litigating in courts that have no jurisdiction to hear the

Nov-02-99 10:34 From-MCKENNA&CUNEO 2024967756 T-458 P.31/90 F-003

underlying claims.[2] This confusion will be resolved if this Court reviews the D.C. Circuit's failure to address its own jurisdiction.

### 2. Petitioners Will Be Deprived of Their Right To Relief Intended By Congress

The D.C. Circuit's dismissal of Petitioners' complaint in breach of contract without any substantive consideration of whether the court has jurisdiction over that complaint has the effect of rewriting the NWPA. Congress passed the NWPA in 1982 after DOE and the Executive Branch had failed for more than 30 years to address the problem of management of spent nuclear fuel and high-level radioactive waste. *See* H.R. No. 97-491, Part 1, at 28. By placing responsibility for judicial review of DOE's implementation of Congress'

---

[2] The situation is especially confusing because the D.C. Circuit recognized in *Northern States Power* that certain types of contractual relief, if offered by DOE, might put the agency in violation of the Act again. Order of May 5, 1998 (App. to Pet. 19c.) Is it possible for a utility to pursue a breach of contract claim through appeal to the Federal Circuit, and then proceed to the D.C. Circuit to obtain additional relief? If a utility proceeds to the contracting officer, should that utility appeal an adverse decision through the normal contract route to a Board of Contract Appeals and then to the Federal Circuit, or should the Board of Contract Appeals decision be appealed to some other court of appeals? If the utility pursues litigation all the way through the Federal Circuit and is unsatisfied, does that utility then have the right to file a new action in another court of appeals? If the meaning of 42 U.S.C. § 10139 is not resolved, numerous courts will toil over the answers to these questions for years.

nuclear waste disposal program originally and exclusively in the courts of appeals, Congress provided aggrieved parties access to remedies against DOE that are not available in any other forum. These remedies, including equitable relief, provide utilities with effective tools to effectuate Congress's mandate that DOE take title to and dispose of spent fuel in a centralized repository under government control, and that the generators of spent fuel pay only for the related, Congressionally authorized costs.

The Court of Federal Claims cannot grant injunctive or declaratory relief except in limited circumstances not applicable here. *Bowen v. Massachusetts*, 487 U.S. 879, 905 (1988); *United States v. King*, 395 U.S. 1, 3-5 (1969). Moreover, the Court of Federal Claims is not empowered to grant the remedy of specific performance. *National Ctr. for Mfg. Sciences v. United States*, 114 F.3d 196, 198 (Fed. Cir. 1997).

The Energy Board of Contract Appeals' "remedy" is subject to even greater limitations. The board's jurisdiction, as DOE defined it in the statutory contracts, does not include the power to award even damages for breach of contract, much less resolve the statutory and constitutional issues raised in Petitioners' complaint. *See United States v. Utah Constr. & Mining Co.*, 384 U.S. 394, 405 (1966). The board's jurisdiction is limited to resolution of those factual issues "arising under" a specific clause of the contract, such as the grant of an equitable adjustment of charges paid by the utilities. Courts of appeals, on the other hand, may grant declaratory and injunctive relief even when that relief is the equivalent of specific performance of the contract. *See Transohio Sav. Bank v. Director, Office of Thrift Supervision*, 967 F.2d 598, 611 (D.C. Cir. 1992).

### 3. The Act Will Not Be Enforced As Written

The D.C. Circuit's decision not to determine its jurisdiction has the potential to turn the statutory scheme on its head. Currently, spent nuclear fuel is stored at approximately 72 sites around the country, under private control. One of the purposes of the NWPA was to protect the public by moving all fuel to a limited number of permanent repositories under federal control. 42 U.S.C. § 10131. Utilities were to pay the cost of this effort through the statutorily mandated fees. *Id.* The Court of Federal Claims under the Tucker Act cannot order specific performance of the statutory contract; the court may only grant damages. *See supra* at 19. Accordingly, even if Petitioners could bring suit in the United States Court of Federal Claims (which has no jurisdiction), this, at best, would result in the fuel remaining dispersed at 72 separate sites while DOE, through damage awards, will pay the costs for that storage. This ironic result is exactly the opposite of what Congress intended.

## C. Courts of Appeals Must Be Required To Carry Out Congressional Intent

The D.C. Circuit cursorily dismissed Petitioners' wholly separate and procedurally distinct Motion for Leave to File Complaint as one of several procedural motions pendant to the Petition.[3] The complaint was in no way

3 Petitioners, for example, filed pendant to the Petition a Motion for Appointment of a Special Master. This motion properly was included in the D.C. Circuit's broad dismissal of all "remaining motions" as moot. If the Petition was properly dismissed, there is no need for a special master.

pendant to the Petition. Petitioners' Motion for Leave to File Complaint leaves no doubt about its intended purpose, characterizing the Complaint as a separate "action" and stating:

> *This motion seeks leave to file a complaint raising additional claims related to the statutory contract.* This is an unusual proceeding for which this court has no rules. Where other appellate courts, including the Supreme Court, have original and exclusive jurisdiction, a motion for leave to file is required.

(Pet. Motion for Leave to File at 2 n.1 (citations omitted).) The result of the D.C. Circuit's dismissal, whether oversight or intentional avoidance of jurisdiction, is that Petitioners will lose an important right of redress, specifically granted them by Congress to aid in the implementation of a critical statutory scheme.

The will of Congress concerning both the substance of its nuclear waste disposal program and the vesting of jurisdiction should not be avoided by an unexplained refusal to address the Congressional directive that courts of appeals exercise "original and exclusive" jurisdiction. The NWPA is an important federal statute with a clear grant of jurisdiction that has been ignored by the D.C. Circuit with no explanation.[4] This Court should review that decision. *See,*

---

[4] Similar refusals to address jurisdiction have been redressed by this Court through mandamus. Mandamus has

*(Footnote cont'd on next page)*

Nov-02-99 10:35 From-MCKENNA&CUNEO 2024967756 T-458 P.35/90 F-003

*e.g.*, *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 735 (1985) (granting certiorari to decide whether court of appeals had exclusive jurisdiction over challenge to Atomic Energy Commission's denial of citizen petitions); *United States v. Erika, Inc.*, 456 U.S. 201, 205 (1982) (granting certiorari to determine whether precisely drawn Medicare statute precluded review in Claims Court pursuant to court's Tucker Act jurisdiction); *Harrison v. PPG Indus. Inc.*, 446 U.S. 578, 586 (1980) (granting certiorari because of importance of determining scope of court of appeals exclusive judicial review jurisdiction over actions of EPA); *Hagans v. Lavine*, 415 U.S. 528, 533 (1974) (granting certiorari because of "important" jurisdictional question regarding jurisdiction of district court over action attacking state welfare regulation).

---

*(Footnote cont'd from previous page.)*

long been held appropriate action to correct jurisdictional error on the part of lower courts. *Kerr v. U.S. District Court*, 426 U.S. 394 (1976); *Roche v. Evaporated Milk Ass'n*, 319 U.S. 21, 26 (1943) (mandamus traditionally used "to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so"). "Where the court refuses to take jurisdiction of a case and proceed to judgment therein, when it is its duty to do so, and there is no other remedy, mandamus will lie unless the authority to issue it has been taken away by statute." *Ex parte State of Nebraska*, 209 U.S. 436, 442 (1908) (quoting *In re Grossmayer, Petitioner*, 177 U.S. 48 (1900)).

Nov-02-89 10:36 From-MCKENNA&CUNEO 2024967756 T-458 P.36/90 F-003

## CONCLUSION

Congress took an extraordinary step when it vested courts of appeals with original and exclusive jurisdiction over all actions arising under the NWPA. The D.C. Circuit does not have the option to refuse to exercise any jurisdiction lawfully vested in it by Congress. Nonetheless, the D.C. Circuit dismissed a Petition alleging ongoing statutory violations of the NWPA and constitutional violations that are wholly separate from DOE's obligation to begin disposing of spent nuclear fuel on January 31, 1998. These separate violations involve DOE's collection and misuse of billions of dollars in fees, and they will continue to occur for many years if no court reviews DOE's conduct. Contractual relief cannot address these violations. Petitioners' Motion for Leave to File Complaint alleged that the D.C. Circuit must take jurisdiction over a claim for breach of the statutory contract because courts of appeals are the only courts vested with authority to do so by the NWPA. The D.C. Circuit dismissed this claim without explanation. Petitioners respectfully request that this Court grant certiorari and decide nuclear waste disposal issues of national importance to the health, safety and national security of all citizens in the United States.

Dated: November 1, 1999 Respectfully submitted,

Tami Lyn Azorsky
*Counsel of Record*
David A. Churchill
Stephen E. Ruscus
MCKENNA & CUNEO, L.L.P.
1900 K Street, N.W.
Washington, D.C. 20006
202-496-7500

Of Counsel:

C. Stanley Dees, Esq.
Herbert L. Fenster, Esq.
MCKENNA & CUNEO, L.L.P.
1900 K Street, N.W.
Washington, D.C. 20006
202-496-7500

Brent L. Brandenburg
Consolidated Edison Company
of New York, Inc.
Four Irving Place, Rm. 1820
New York, NY 10003-3598
(212) 460-4333

Jeffrey R. Clark
Rochester Gas & Electric Corporation
89 East Ave.
Rochester, NY 14649
(716) 771-2291

Arunas T. Udrys
Consumers Energy Company
212 W. Michigan Ave.
Jackson, MI 49201
(517) 788-2513

Christopher J. Warner
Pacific Gas and Electric Company
P.O. Box 7442
San Francisco, CA 94120
(415) 973-6695

Nov-02-99 10:37 From-MCKENNA&CUNEO 2024987756 T-459 P.39/90 F-003

# APPENDIX

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

**No. 98-1358** **September Term, 1998**

Consolidated Edison Company of New York, Inc., et al.,
Petitioners

v.

Department of Energy, et al.
Respondents

**BEFORE:** Wald, Ginsburg, and Sentelle, Circuit Judges

**ORDER**

Upon consideration of the motion to dismiss, the opposition thereto, and the reply; the motion for oral argument, and the opposition thereto: the motion for leave to file a complaint, the opposition thereto, and the reply; the motion for appointment of a special master, the opposition thereto, and the reply; and the motion for an order confirming the scope of the court's review, the opposition thereto, and the reply, it is

**ORDERED** that the motion for oral argument be denied. It is

**FURTHER ORDERED** that the motion to dismiss be granted. Petitioners' arguments are precluded by the court's holding in Northern States Power Co. v. Dep't. of

Nov-02-98 10:37 From-MCKENNA&CUNEO 2024967756 T-458 P.41/80 F-003

Energy, 128 F. 3d 754 (D.C. Cir. 1997), and the unpublished order issued May 5, 1998, denying rehearing in that case. It is

**FURTHER ORDERED** that the remaining motions be dismissed as moot.

The Clerk is directed to withhold issuance of the mandate herein until seven days after disposition of any timely petition for rehearing or petition for rehearing en banc. See Fed. R. App. P. 41(b); D.C. Cir. Rule 41.

Apr. 16, 1999

Per Curiam

Case 1:04-cv-00033-TCW Document 35-6 Filed 01/27/2005 Page 42 of 89



# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

**No. 98-1358** **September Term, 1998**

Consolidated Edison Company of New York, Inc., et al.,
Petitioners

v.

Department of Energy. et al.,
Respondents

**BEFORE:** Edwards, Chief Judge; Wald, Silberman, Williams, Ginsburg, Sentelle, Henderson, Randolph, Rogers, Tatel and Garland, Circuit Judges

## O R D E R

Upon consideration of petitioners' petition for rehearing en banc, and the absence of a request by any member of the court for a vote, it is

**ORDERED** that the petition be denied.

Aug. 2, 1999

Nov-02-99 10:38 From-MCKENNA&CUNEO 2024987756 T-458 P.43/90 F-003

**Per Curiam**

**FOR THE COURT:**
Mark J. Langer, Clerk

BY: Robert A. Bonner
Deputy Clerk

Nov-02-99 10:38 From-MCKENNA&CUNEO 2024967756 T-458 P.44/80 F-003

# United States Court of Appeals
FOR THE DISTRICT OF COLUMBIA CIRCUIT

**No. 98-1358**

**September Term, 1998**

Consolidated Edison Company of New York, Inc., et al.,
Petitioners

v.

Department of Energy, et al.,
Respondents

**BEFORE:** Wald, Ginsburg, and Sentelle, Circuit Judges

**<u>O R D E R</u>**

Upon consideration of petitioners' petition for rehearing filed June 1, 1999, it is

**ORDERED** that the petition be denied.

Aug. 2, 1999

**<u>Per Curiam</u>**

**FOR THE COURT:**
Mark J. Langer, Clerk

BY: Robert A. Bonner
Deputy Clerk

Nov-02-99 10:38 From-MCKENNA&CUNEO 2024967756 T-458 P.45/80 F-003

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

MANDATE
Pursuant to the Provisions of Fed. R. App. ~~Pro. 41(a)~~
ISSUED: 8/19/99
BY: E. Brown, Deputy Clerk

**No. 98-1358** **September Term, 1998**

Consolidated Edison Company of New York, Inc., et al.,
Petitioners

v.

Department of Energy, et al.
Respondents

**BEFORE:** Wald, Ginsburg, and Sentelle, Circuit Judges

## ORDER

Upon consideration of the motion to dismiss, the opposition thereto, and the reply; the motion for oral argument, and the opposition thereto; the motion for leave to file a complaint, the opposition thereto, and the reply ; the motion for appointment of a special master, the opposition thereto, and the reply; and the motion for an order confirming the scope of the court's review, the opposition thereto, and the reply, it is

**ORDERED** that the motion for oral argument be denied. It is

NOV-02-99 10:38 From-MCKENNA&CUNEO 2024967756 T-459 P.46/90 F-003

**FURTHER ORDERED** that the motion to dismiss be granted. Petitioners' arguments are precluded by the court's holding in Northern States Power Co. v. Dep't. of Energy, 128 F. 3d 754 (D.C. Cir. 1997), and the unpublished order issued May 5, 1998, denying rehearing in that case. It is

The Clerk is directed to withhold issuance of the mandate herein until seven days after disposition of any timely petition for rehearing or petition for rehearing en banc. See Fed. R. App. P. 41(b); D.C. Cir. Rule 41.

April 16, 1999

**Per Curiam**

Nov-02-99 10:39 From-MCKENNA&CUNEO 2024967756 T-459 P.47/90 F-003

UNITED STATES CODE ANNOTATED
TITLE 42. THE PUBLIC HEALTH AND WELFARE
CHAPTER 108--NUCLEAR WASTE POLICY
SUBCHAPTER I--DISPOSAL AND STORAGE OF HIGH-LEVEL RADIOACTIVE WASTE, SPENT NUCLEAR FUEL, AND LOW-LEVEL RADIOACTIVE WASTE
PART A--REPOSITORIES FOR DISPOSAL OF HIGH-LEVEL RADIOACTIVE WASTE AND SPENT NUCLEAR FUEL

Current through P.L. 106-55, approved 8-17-99

[1] UNITED STATES
§ 10131. Findings and purposes

*Findings*

The Congress finds that--

(1) radioactive waste creates potential risks and requires safe and environmentally acceptable methods of disposal;

(2) a national problem has been created by the accumulation of (A) spent nuclear fuel from nuclear reactors; and (B) radioactive waste from (i) reprocessing of spent nuclear fuel; (ii) activities related to medical research, diagnosis, and treatment; and (iii) other sources;

(3) Federal efforts during the past 30 years to devise a permanent solution to the problems of civilian radioactive waste disposal have not been adequate;

(4) while the Federal Government has the responsibility to provide for the permanent disposal of high-level

radioactive waste and such spent nuclear fuel as may be disposed of in order to protect the public health and safety and the environment, the costs of such disposal should be the responsibility of the generators and owners of such waste and spent fuel;

(5) the generators and owners of high-level radioactive waste and spent nuclear fuel have the primary responsibility to provide for, and the responsibility to pay the costs of, the interim storage of such waste and spent fuel until such waste and spent fuel is accepted by the Secretary of Energy in accordance with the provisions of this chapter;

(6) State and public participation in the planning and development of repositories is essential in order to promote public confidence in the safety of disposal of such waste and spent fuel; and

(7) high-level radioactive waste and spent nuclear fuel have become major subjects of public concern, and appropriate precautions must be taken to ensure that such waste and spent fuel do not adversely affect the public health and safety and the environment for this or future generations.

*Purposes*

The purposes of this part are--

(1) to establish a schedule for the siting, construction, and operation of repositories that will provide a reasonable assurance that the public and the environment will be adequately protected from the hazards posed by high-level radioactive waste and such spent nuclear fuel as may be disposed of in a repository;

(2) to establish the Federal responsibility, and a definite Federal policy, for the disposal of such waste and spent fuel;

(3) to define the relationship between the Federal Government and the State governments with respect to the disposal of such waste and spent fuel; and

(4) to establish a Nuclear Waste Fund, composed of payments made by the generators and owners of such waste and spent fuel, that will ensure that the costs of carrying out activities relating to the disposal of such waste and spent fuel will be borne by the persons responsible for generating such waste and spent fuel.

Nov-02-98 10:39 From-MCKENNA&CUNEO 2024967756 T-459 P.50/90 F-003

§ 10139. Judicial review of agency actions

(a) Jurisdiction of United States courts of appeals

(1) Except for review in the Supreme Court of the United States, the United States courts of appeals shall have original and exclusive jurisdiction over any civil action--

(A) for review of any final decision or action of the Secretary, the President, or the Commission under this part;

(B) alleging the failure of the Secretary, the President, or the Commission to make any decision, or take any action, required under this part;

(C) challenging the constitutionality of any decision made, or action taken, under any provision of this part;

(D) for review of any environmental impact statement prepared pursuant to the National Environmental Policy Act of 1969 (42 U.S.C. 4321 et seq.) with respect to any action under this subtitle, or as required under section 10155(c)(1) of this title, or alleging a failure to prepare such statement with respect to any such action;

(E) for review of any environmental assessment prepared under section 10132(b)(1) or 10155(c)(2) of this title; or

(F) for review of any research and development activity under subchapter II of this chapter.

(2) The venue of any proceeding under this section shall be in the judicial circuit in which the petitioner involved resides or has its principal office, or in the United States Court of Appeals for the District of Columbia.

(c) [FN1] Deadline for commencing action

A civil action for judicial review described under subsection (a)(1) of this section may be brought not later than the 180th day after the date of the decision or action or failure to act involved, as the case may be, except that if a party shows that he did not know of the decision or action complained of (or of the failure to act), and that a reasonable person acting under the circumstances would not have known, such party may bring a civil action not later than the 180th day after the date such party acquired actual or constructive knowledge of such decision, action, or failure to act.

[FN1] So in original. Section enacted without a subsec. (b).

Nov-02-04 10:40 From-MCKENNA&CUNEO 2024967755 T-459 P.52/90 F-003

42 USCA s 10222
42 U.S.C.A. § 10222

UNITED STATES CODE ANNOTATED
TITLE 42. THE PUBLIC HEALTH AND WELFARE
CHAPTER 108--NUCLEAR WASTE POLICY
SUBCHAPTER III--OTHER PROVISIONS RELATING TO RADIOACTIVE WASTE

Current through P.L. 106-55, approved 8-17-99

[ ] UNITED STATES
§ 10222. Nuclear Waste Fund

(a) Contracts

(1) In the performance of his functions under this chapter, the Secretary is authorized to enter into contracts with any person who generates or holds title to high-level radioactive waste, or spent nuclear fuel, of domestic origin for the acceptance of title, subsequent transportation, and disposal of such waste or spent fuel. Such contracts shall provide for payment to the Secretary of fees pursuant to paragraphs (2) and (3) sufficient to offset expenditures described in subsection (d) of this section.

(2) For electricity generated by a civilian nuclear power reactor and sold on or after the date 90 days after January 7, 1983, the fee under paragraph (1) shall be equal to 1.0 mil per kilowatt-hour.

(3) For spent nuclear fuel, or solidified high-level radioactive waste derived from spent nuclear fuel, which fuel was used to generate electricity in a civilian nuclear power

reactor prior to the application of the fee under paragraph (2) to such reactor, the Secretary shall, not later than 90 days after January 7, 1983, establish a 1 time fee per kilogram of heavy metal in spent nuclear fuel, or in solidified high-level radioactive waste. Such fee shall be in an amount equivalent to an average charge of 1.0 mil per kilowatt- hour for electricity generated by such spent nuclear fuel, or such solidified high-level waste derived therefrom, to be collected from any person delivering such spent nuclear fuel or high-level waste, pursuant to section 10143 of this title, to the Federal Government. Such fee shall be paid to the Treasury of the United States and shall be deposited in the separate fund established by subsection (c) of this section. In paying such a fee, the person delivering spent fuel, or solidified high-level radioactive wastes derived therefrom, to the Federal Government shall have no further financial obligation to the Federal Government for the long-term storage and permanent disposal of such spent fuel, or the solidified high-level radioactive waste derived therefrom.

(4) Not later than 180 days after January 7, 1983, the Secretary shall establish procedures for the collection and payment of the fees established by paragraph (2) and paragraph (3). The Secretary shall annually review the amount of the fees established by paragraphs (2) and (3) above to evaluate whether collection of the fee will provide sufficient revenues to offset the costs as defined in subsection (d) of this section. In the event the Secretary determines that either insufficient or excess revenues are being collected, in order to recover the costs incurred by the Federal Government that are specified in subsection (d) of this section, the Secretary shall propose an adjustment to the fee to insure full cost recovery. The Secretary shall immediately transmit this proposal for such an adjustment to Congress. The adjusted fee proposed by the Secretary shall be effective

after a period of 90 days of continuous session have elapsed following the receipt of such transmittal unless during such 90-day period either House of Congress adopts a resolution disapproving the Secretary's proposed adjustment in accordance with the procedures set forth for congressional review of an energy action under section 6421 of this title.

(5) Contracts entered into under this section shall provide that--

(A) following commencement of operation of a repository, the Secretary shall take title to the high-level radioactive waste or spent nuclear fuel involved as expeditiously as practicable upon the request of the generator or owner of such waste or spent fuel; and

(B) in return for the payment of fees established by this section, the Secretary, beginning not later than January 31, 1998, will dispose of the high-level radioactive waste or spent nuclear fuel involved as provided in this subchapter.

(6) The Secretary shall establish in writing criteria setting forth the terms and conditions under which such disposal services shall be made available.

(b) Advance contracting requirement

(1)(A) The Commission shall not issue or renew a license to any person to use a utilization or production facility under the authority of section 2133 or 2134 of this title unless--

(i) such person has entered into a contract with the Secretary under this section; or

(ii) the Secretary affirms in writing that such person is

actively and in good faith negotiating with the Secretary for a contract under this section.

(B) The Commission, as it deems necessary or appropriate, may require as a precondition to the issuance or renewal of a license under section 2133 or 2134 of this title that the applicant for such license shall have entered into an agreement with the Secretary for the disposal of high-level radioactive waste and spent nuclear fuel that may result from the use of such license.

(2) Except as provided in paragraph (1), no spent nuclear fuel or high-level radioactive waste generated or owned by any person (other than a department of the United States referred to in section 101 or 102 of Title 5) may be disposed of by the Secretary in any repository constructed under this chapter unless the generator or owner of such spent fuel or waste has entered into a contract with the Secretary under this section by not later than--

(A) June 30, 1983; or

(B) the date on which such generator or owner commences generation of. or takes title to, such spent fuel or waste; whichever occurs later.

(3) The rights and duties of a party to a contract entered into under this section may be assignable with transfer of title to the spent nuclear fuel or high-level radioactive waste involved.

(4) No high-level radioactive waste or spent nuclear fuel generated or owned by any department of the United States referred to in section 101 or 102 of Title 5 may be disposed of by the Secretary in any repository constructed under this

chapter unless such department transfers to the Secretary, for deposit in the Nuclear Waste Fund, amounts equivalent to the fees that would be paid to the Secretary under the contracts referred to in this section if such waste or spent fuel were generated by any other person.

(c) Establishment of Nuclear Waste Fund

There hereby is established in the Treasury of the United States a separate fund, to be known as the Nuclear Waste Fund. The Waste Fund shall consist of--

(1) all receipts, proceeds, and recoveries realized by the Secretary under subsections (a), (b), and (e) of this section, which shall be deposited in the Waste Fund immediately upon their realization;

(2) any appropriations made by the Congress to the Waste Fund; and

(3) any unexpended balances available on January 7, 1983, for functions or activities necessary or incident to the disposal of civilian high-level radioactive waste or civilian spent nuclear fuel, which shall automatically be transferred to the Waste Fund on such date.

(d) Use of Waste Fund

The Secretary may make expenditures from the Waste Fund, subject to subsection (e) of this section, only for purposes of radioactive waste disposal activities under subchapters I and II of this chapter, including--

(1) the identification, development, licensing, construction, operation, decommissioning, and

post-decommissioning maintenance and monitoring of any repository, monitored, retrievable storage facility or test and evaluation facility constructed under this chapter;

(2) the conducting of nongeneric research, development, and demonstration activities under this chapter;

(3) the administrative cost of the radioactive waste disposal program;

(4) any costs that may be incurred by the Secretary in connection with the transportation, treating, or packaging of spent nuclear fuel or high-level radioactive waste to be disposed of in a repository, to be stored in a monitored, retrievable storage site or to be used in a test and evaluation facility;

(5) the costs associated with acquisition, design, modification, replacement, operation, and construction of facilities at a repository site, a monitored, retrievable storage site or a test and evaluation facility site and necessary or incident to such repository, monitored, retrievable storage facility or test and evaluation facility; and

(6) the provision of assistance to States, units of general local government, and Indian tribes under sections 10136, 10138, and 10199 of this title.

No amount may be expended by the Secretary under this subchapter for the construction or expansion of any facility unless such construction or expansion is expressly authorized by this or subsequent legislation. The Secretary hereby is authorized to construct one repository and one test and evaluation facility.

(e) Administration of Waste Fund

(1) The Secretary of the Treasury shall hold the Waste Fund and, after consultation with the Secretary, annually report to the Congress on the financial condition and operations of the Waste Fund during the preceding fiscal year.

(2) The Secretary shall submit the budget of the Waste Fund to the Office of Management and Budget triennially along with the budget of the Department of Energy submitted at such time in accordance with chapter 11 of Title 31. The budget of the Waste Fund shall consist of the estimates made by the Secretary of expenditures from the Waste Fund and other relevant financial matters for the succeeding 3 fiscal years, and shall be included in the Budget of the United States Government. The Secretary may make expenditures from the Waste Fund, subject to appropriations which shall remain available until expended. Appropriations shall be subject to triennial authorization.

(3) If the Secretary determines that the Waste Fund contains at any time amounts in excess of current needs, the Secretary may request the Secretary of the Treasury to invest such amounts, or any portion of such amounts as the Secretary determines to be appropriate, in obligations of the United States--

(A) having maturities determined by the Secretary of the Treasury to be appropriate to the needs of the Waste Fund; and

(B) bearing interest at rates determined to be appropriate by the Secretary of the Treasury, taking into consideration the current average market yield on outstanding marketable

obligations of the United States with remaining periods to maturity comparable to the maturities of such investments, except that the interest rate on such investments shall not exceed the average interest rate applicable to existing borrowings.

(4) Receipts, proceeds, and recoveries realized by the Secretary under this section, and expenditures of amounts from the Waste Fund, shall be exempt from annual apportionment under the provisions of subchapter II of chapter 15 of Title 31.

(5) If at any time the moneys available in the Waste Fund are insufficient to enable the Secretary to discharge his responsibilities under this subchapter, the Secretary shall issue to the Secretary of the Treasury obligations in such forms and denominations, bearing such maturities, and subject to such terms and conditions as may be agreed to by the Secretary and the Secretary of the Treasury. The total of such obligations shall not exceed amounts provided in appropriation Acts. Redemption of such obligations shall be made by the Secretary from moneys available in the Waste Fund. Such obligations shall bear interest at a rate determined by the Secretary of the Treasury, which shall be not less than a rate determined by taking into consideration the average market yield on outstanding marketable obligations of the United States of comparable maturities during the month preceding the issuance of the obligations under this paragraph. The Secretary of the Treasury shall purchase any issued obligations, and for such purpose the Secretary of the Treasury is authorized to use as a public debt transaction the proceeds from the sale of any securities issued under chapter 31 of Title 31, and the purposes for which securities may be issued under such Act are extended to include any purchase of such obligations. The Secretary of

the Treasury may at any time sell any of the obligations acquired by him under this paragraph. All redemptions, purchases, and sales by the Secretary of the Treasury of obligations under this paragraph shall be treated as public debt transactions of the United States.

(6) Any appropriations made available to the Waste Fund for any purpose described in subsection (d) of this section shall be repaid into the general fund of the Treasury, together with interest from the date of availability of the appropriations until the date of repayment. Such interest shall be paid on the cumulative amount of appropriations available to the Waste Fund, less the average undisbursed cash balance in the Waste Fund account during the fiscal year involved. The rate of such interest shall be determined by the Secretary of the Treasury taking into consideration the average market yield during the month preceding each fiscal year on outstanding marketable obligations of the United States of comparable maturity. Interest payments may be deferred with the approval of the Secretary of the Treasury, but any interest payments so deferred shall themselves bear interest.

28 USCA s 1491
28 U.S.C.A. § 1491

**UNITED STATES CODE ANNOTATED**
**TITLE 28. JUDICIARY AND JUDICIAL PROCEDURE**
**PART IV--JURISDICTION AND VENUE**
**CHAPTER 91--UNITED STATES COURT OF FEDERAL CLAIMS**

Current through P.L. 106-55, approved 8-17-99

§ 1491. Claims against United States generally; actions involving Tennessee Valley Authority

(a)(1) The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort. For the purpose of this paragraph, an express or implied contract with the Army and Air Force Exchange Service, Navy Exchanges, Marine Corps Exchanges, Coast Guard Exchanges, or Exchange Councils of the National Aeronautics and Space Administration shall be considered an express or implied contract with the United States.

(2) To provide an entire remedy and to complete the relief afforded by the judgment, the court may, as an incident of and collateral to any such judgment, issue orders directing restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records, and such orders may be issued to any appropriate official of the United States. In any case within its

jurisdiction, the court shall have the power to remand appropriate matters to any administrative or executive body or official with such direction as it may deem proper and just. The Court of Federal Claims shall have jurisdiction to render judgment upon any claim by or against, or dispute with, a contractor arising under section 10(a)(1) of the Contract Disputes Act of 1978, including a dispute concerning termination of a contract, rights in tangible or intangible property, compliance with cost accounting standards, and other nonmonetary disputes on which a decision of the contracting officer has been issued under section 6 of that Act.

[(3) Repealed. Pub.L. 104-320, § 12(a)(2), Oct. 19, 1996, 110 Stat. 3874]

**(b)(1)** Both the Unites [FN1] States Court of Federal Claims and the district courts of the United States shall have jurisdiction to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement. Both the United States Court of Federal Claims and the district courts of the United States shall have jurisdiction to entertain such an action without regard to whether suit is instituted before or after the contract is awarded.

**(2)** To afford relief in such an action, the courts may award any relief that the court considers proper, including declaratory and injunctive relief except that any monetary relief shall be limited to bid preparation and proposal costs.

**(3)** In exercising jurisdiction under this subsection, the

courts shall give due regard to the interests of national defense and national security and the need for expeditious resolution of the action.

(4) In any action under this subsection, the courts shall review the agency's decision pursuant to the standards set forth in section 706 of title 5.

(c) Nothing herein shall be construed to give the United States Court of Federal Claims jurisdiction of any civil action within the exclusive jurisdiction of the Court of International Trade, or of any action against, or founded on conduct of, the Tennessee Valley Authority, or to amend or modify the provisions of the Tennessee Valley Authority Act of 1933 with respect to actions by or against the Authority.

[FN1] So in original.

Nov-02-99 10:43 From-MCKENNA&CUNEO 2024967756 T-458 P.64/80 F-003

USCA CONST Art. I s 8, cl. 1
U.S.C.A. Const. Art. I § 8, cl. 1

UNITED STATES CODE ANNOTATED
CONSTITUTION OF THE UNITED STATES
ARTICLE I--THE CONGRESS

Current through P.L. 106-55, approved 8-17-99

Section 8, Clause 1. Powers of Congress; Levy of Taxes for Common Defense and General Welfare; Uniformity of Taxation

The Congress shall have Power To lay and collect Taxes, Duties, Imposts and Excises, to pay the Debts and provide for the common Defence and general Welfare of the United States; but all Duties, Imposts and Excises shall be uniform throughout the United States;

USCA CONST Amend. V-Full Text
U.S.C.A. Const. Amend. V-Full Text

UNITED STATES CODE ANNOTATED
CONSTITUTION OF THE UNITED STATES
AMENDMENT V--GRAND JURY INDICTMENT FOR CAPITAL CRIMES; DOUBLE JEOPARDY; SELF-INCRIMINATION; DUE PROCESS OF LAW; JUST COMPENSATION FOR PROPERTY

Current through P.L. 106-55, approved 8-17-99

Amendment V. Grand Jury Indictment for Capital Crimes; Double Jeopardy; Self-Incrimination; Due Process of Law; Just Compensation for Property

No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

Nov-02-99 10:44 From-MCKENNA&CUNEO 2024967756 T-459 P.66/90 F-003

1c

NORTHERN STATES POWER COMPANY, et al.,
Petitioners,
v.
UNITED STATES DEPARTMENT OF ENERGY and
United States of America, Respondents,
IES Utilities, Inc., et al., Intervenors.

Nos. 97-1064, 97-1065, 97-1370 and 97-1398.

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 25, 1997.

Decided Nov. 14, 1997.

Utilities and state commissions which paid fees pursuant to Nuclear Waste Policy Act (NWPA) petitioned for writs of mandamus requiring Department of Energy (DOE) to begin disposing of high-level radioactive waste and spent nuclear fuel (SNF) by statutory deadline. The Court of Appeals, Sentelle, Circuit Judge, held that: (1) plaintiffs were not entitled to broad writs of mandamus, due to potentially adequate contractual remedy, but (2) writ would issue to preclude DOE from excusing its own delay on grounds that it had not yet prepared permanent repository or interim storage facility.

Granted in part.

[1] MANDAMUS k3(4)
250k3(4)

Utilities and state commissions which paid fees pursuant to Nuclear Waste Policy Act (NWPA) in exchange for

acceptance, by Department of Energy (DOE), of high-level radioactive waste and spent nuclear fuel (SNF) for disposal were not entitled to broad writs of mandamus requiring DOE to begin disposing of SNF by statutory deadline, although writ would issue for limited purpose of precluding DOE from excusing its own delay on grounds that it had not yet prepared permanent repository or interim storage facility; plaintiffs had potentially adequate contractual remedy for delay, but DOE could not use government's own acts to excuse delay in view of prior interpretation of its obligation by Court of Appeals. Nuclear Waste Policy Act of 1982, § 302(a)(5)(B), 42 U.S.C.A. § 10222(a)(5)(B); 10 C.F.R. § 961.11, Arts. II, IX.

[1] MANDAMUS k64
250k64

Utilities and state commissions which paid fees pursuant to Nuclear Waste Policy Act (NWPA) in exchange for acceptance, by Department of Energy (DOE), of high-level radioactive waste and spent nuclear fuel (SNF) for disposal were not entitled to broad writs of mandamus requiring DOE to begin disposing of SNF by statutory deadline, although writ would issue for limited purpose of precluding DOE from excusing its own delay on grounds that it had not yet prepared permanent repository or interim storage facility; plaintiffs had potentially adequate contractual remedy for delay, but DOE could not use government's own acts to excuse delay in view of prior interpretation of its obligation by Court of Appeals. Nuclear Waste Policy Act of 1982, § 302(a)(5)(B), 42 U.S.C.A. § 10222(a)(5)(B); 10 C.F.R. § 961.11, Arts. II, IX.

[2] MANDAMUS k1
250k1

Nov-02-99 10:44 From-MCKENNA&CUNEO 2024967756 T-459 P.68/90 F-003

Remedy of mandamus is drastic one, to be invoked only in extraordinary situations.

[3] MANDAMUS k1
250k1
Mandamus is proper only if plaintiff has clear right to relief, defendant has clear duty to act, and there is no other adequate remedy available to plaintiff.

[4] MANDAMUS k168(2)
250k168(2)
Party seeking mandamus has burden of showing that its right to issuance of writ is clear and indisputable.
*754 **20 On Petitions for Writs of Mandamus Directed to the United States Department of Energy.

Jay E. Silberg, Washington, DC, argued the cause for utility petitioners, with whom David J. Cynamon and Mindy A. Buren, were on the briefs.

Don L. Keskey, Assistant Attorney General, Lansing, MI, argued the cause for state petitioners, with whom Frank J. Kelley, Attorney General, Thomas L. Casey, Henry J. Boynton and Larry G. Watterworth, Assistant Attorneys General, Lansing, MI, Robert S. Golden, Jr., Assistant Attorney General, Hartford, CT, Robert D. VanDiver, General Counsel, Florida Public Service Commission, Tallahassee, FL, Judith S. Yogman and Leslie Greer, Assistant Attorneys General, Boston, MA, Rolayne Ailts Wiest, Assistant Attorney General, South Dakota. Greg Huwe, Assistant Attorney General, St. Paul, MN, Michael A. Gross, Assistant Attorney General, Florida, Mary W. Cochran, General Counsel, Arkansas Public Service Commission, Bryan G. Moorhouse, General Counsel, and

Susan S. Miller, Assistant General Counsel, Maryland Public Service Commission, Baltimore, MD, Roger W. Steiner, Assistant General Counsel, Missouri Public Service Commission, Jefferson City, MO, Charles F. *755 **21 Walker and Kevin P. Maloney, Deputy Attorneys General, Delaware, Wilmington, DE, Carla J. Stovall, Attorney General, and John W. Campbell, Deputy Attorney General, Kansas, Topeka, KS, Diane Munns, Acting General Counsel, Iowa Utilities Board, Des Moines, IA, Conrad Smith, Vermont, Lawrence F. Barth, Assistant Counsel, Veronica A. Smith, Deputy Chief Counsel, and John F. Povilaitis, Chief Counsel, Pennsylvania Public Utility Commission, Harrisburg, PA, Steven M. Schur, Chief Counsel, and David Ludwig, Attorney, Public Service Commission of Wisconsin, Madison, WI, Edward W. O'Neill, San Anselmo, CA, and Robert C. Cagen, Public Utilities Commission of California, Lawrence G. Malone, Solicitor, New York State Public Service Commission, Albany, NY, Lester M. Bridgeman, Alabama Public Service Commission, Mobile, AL, James J. Grawe, Assistant Attorney General, Kentucky, Frankfort, KY, M. Brent Hare, Assistant Attorney General, Maryland, Baltimore, MD, Caroline Vachier and Helene S. Wallenstein, Deputy Attorneys General, New Jersey, Newark, NJ, James R. Anderson, Assistant Consumer Advocate, New Hampshire, Concord, NH, Jeffrey B. Pine, Attorney General, Paul J. Roberti and Alan M. Schoer, Special Assistant Attorneys General, Rhode Island, Providence, RI, Shirley E. Guntharp, Deputy Attorney General, and Charles L. Moulton, Assistant Attorney General, Arkansas, Little Rock, AR, George M. Fleming, Mississippi Public Service Commission, L. Steven Grasz, Deputy Attorney General, Nebraska, Lincoln, NE, Frank Spencer, Special Assistant Attorney General, Mississippi, Jackson, MS, Wynn E. Arnold, Assistant Attorney General, New Hampshire, Concord, NH, Ben Stead, Iowa, Des Moines, IA, Carl Josephson, Assistant

Attorney General, Virginia, Richmond, VA, F. David Butler, General Counsel, Public Service Commission of South Carolina, Columbia, SC, Thomas D. Warren, State Solicitor, Maine, Augusta, ME, Charles E. Johnson, Special Assistant Attorney General, North Dakota Public Service Commission, Bismarck, ND, Daniel B. Dovenbarger, Deputy Attorney General, Indiana, Indianapolis, IN, Sammy R. Kirby, Deputy General Counsel, North Carolina Utilities Commission, Raleigh, NC, Duane W. Luckey and Steven T. Nourse, Assistant Attorneys General, Public Utilities Commission of Ohio, Columbus, OH, Joel H. Peck, Senior Counsel, and C. Meade Browder, Jr., Attorney, Virginia State Corporation Commission, Richmond, VA, Gary J. Newell and Frances E. Francis, Public Systems Group, Washington, DC, Michael R. Fontham, New Orleans, LA, and Noel J. Darce, Louisiana Public Service Commission, Jennings, LA, Charles D. Gray, General Counsel, and James Bradford Ramsay, Assistant General Counsel, National Association of Regulatory Utility Commissioners, Washington, DC, and Eric A. Eisen, Arizona Corporation Commission, Bethesda, MD, were on the briefs.

Jerry Stouck and Robert L. Shapiro, Washington, DC, were on the briefs for petitioner Yankee Atomic Electric Company.

John A. Bryson, Attorney, U.S. Department of Justice, Washington, DC, argued the cause and filed the brief for respondents. Martin W. Matzen, Attorney, entered an appearance.

William H. Chambliss, Senior Counsel, and C. Meade Browder, Jr., Attorney, Richmond, VA, were on the brief for intervenor Virginia State Corporation Commission.

Michael A. Bauser, Washington, DC, was on the brief for

intervenor Northeast Utilities Service Company.

Before: WILLIAMS, GINSBURG and SENTELLE, Circuit Judges.

Opinion for the Court filed by Circuit Judge SENTELLE.

SENTELLE, Circuit Judge:

In Indiana Michigan Power Co. v. Department of Energy, 88 F.3d 1272 (D.C.Cir.1996), we held that the Nuclear Waste Policy Act ("NWPA") imposes on the Department of Energy ("DOE") an unconditional obligation to begin disposing of high-level radioactive waste and spent nuclear fuel (collectively, "SNF") by January 31, 1998. After we issued our decision, DOE nonetheless informed various utilities and state commissions ("petitioners") that it would not accept the SNF *756 **22 for disposal by the 1998 deadline. Petitioners now seek a writ of mandamus requiring DOE to comply with Indiana Michigan and begin disposing of the SNF by the statutory deadline. We hold that the Standard Contract between DOE and the utilities provides a potentially adequate remedy if DOE fails to fulfill its obligations by the deadline, and thus do not grant in full the writ requested by petitioners. We do agree, however, that DOE's current approach toward contractual remedies is inconsistent with the NWPA and with our prior decision in Indiana Michigan. We thus grant the petition in part, and issue a writ of mandamus precluding DOE from advancing any construction of the Standard Contract that would excuse its delinquency on the ground that it has not yet established a permanent repository or an interim storage program.

I. Background

In the NWPA, Congress, confronting the "national problem" posed by the accumulation of spent nuclear fuel and radioactive waste produced by various domestic sources, 42 U.S.C. § 10131(a)(2), created a scheme whereby the federal government would have the responsibility to provide for the permanent disposal of the SNF, and the costs of such disposal would be borne by the owners and generators of the waste and spent fuel. 42 U.S.C. § 10131(a)(4). The plan provided that the owners and generators of the SNF would have the primary responsibility to provide and pay for its interim storage until the Secretary of Energy accepts the material "in accordance with the provisions of this chapter." 42 U.S.C. § 10131(a)(5).

As part of this regulatory program, Congress authorized the Secretary to enter into contracts with the owners and generators for the acceptance, transportation, and ultimate disposal of the SNF. 42 U.S.C. § 10222(a)(1). Congress left open many of the terms of the contracts, but specifically dictated, inter alia, the deadline by which DOE must begin disposing of the SNF. In the language of the statute, the "[c]ontracts entered into under this section shall provide that ... in return for the payment of fees established by this section, the Secretary, beginning not later than January 31, 1998, will dispose of the high-level radioactive waste or spent nuclear fuel involved as provided in this subchapter." 42 U.S.C. § 10222(a)(5)(B). "Payment of fees" referred to hefty contributions into a so-called Nuclear Waste Fund by owners and generators of the SNF.

In accordance with the NWPA, DOE adopted the final Standard Contract after notice and comment. The language of the Standard Contract is slightly different than that of the statute, but does include the requirement that disposal begin by January 31, 1998: "[t]he services to be provided by DOE

under this contract shall begin, after commencement of facility operations, not later than January 31, 1998 and shall continue until such time as all SNF and/or HLW [high-level radioactive waste] from the civilian nuclear power reactors ... has been disposed of." 10 C.F.R. § 961.11, Art. II (1996).

In 1993, various utilities and state agencies became concerned about DOE's ability to meet the 1998 deadline, and thus asked the Department to address how it would go about performing its responsibilities. The Department, apparently anticipating that it would not be ready to take the SNF by the deadline, took the position that it did not have a clear legal obligation to accept the SNF absent an operational repository or other facility. In its Final Interpretation of Nuclear Waste Acceptance Issues, issued in 1995, DOE announced that it "does not have an unconditional statutory or contractual obligation to accept high level waste and spent nuclear fuel beginning January 31, 1998 in the absence of a repository or interim storage facility constructed under the [NWPA]." 60 Fed.Reg. 21,793-94. The Department also took the position that "it lacks statutory authority under the Act to provide interim storage." 60 Fed.Reg. at 21,794.

- The utilities and the states promptly filed petitions for review. The question before us in Indiana Michigan was whether the legal obligation of DOE to accept SNF by January 31, 1998, was conditioned on the presence of an operational repository or interim storage facility. Reviewing DOE's construction of *757 **23 the NWPA under the two-step analysis of Chevron U.S.A. Inc. v. Natural Resources Defense Council, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), we concluded that DOE's interpretation was contrary to the unambiguously expressed intent of Congress. We reached this conclusion after analyzing the plain language of the statute, which mandates

that DOE assume a contractual obligation to start disposing of the SNF by January 31, 1998. We took special care to emphasize the reciprocal nature of the obligations. DOE's duty to dispose of the SNF in a timely manner is "in return for" the payment of fees into the Nuclear Waste Fund. 42 U.S.C. § 10222(a)(5)(B). We held that DOE's obligation to meet the 1998 deadline is "without qualification or condition," and identified DOE's duty to "perform its part of the contractual bargain." 88 F.3d at 1273. We therefore remanded the matter to DOE for "further proceedings consistent with" our opinion. Id. at 1277. DOE neither sought rehearing of that decision nor petitioned the Supreme Court for further review.

After issuing our decision in Indiana Michigan, we would have expected that the Department would proceed as if it had just been told that it had an unconditional obligation to take the nuclear materials by the January 31, 1998, deadline. Not so. Quite to the contrary, the Department informed the utilities and the states that it would be unable to comply with the statutory deadline that this court had just reaffirmed. In late 1996, the utilities and the states initiated discussions with DOE and asked about the procedure and schedule that the Department would follow to comply with the court's decision. DOE responded to the utilities by announcing that it "will be unable to begin acceptance of spent nuclear fuel for disposal in a repository or interim storage facility by January 31, 1998." Utility Petitioners' Pet. at Tab 1; see also Tab 2. The Department recognized that the delay would affect "large number[s]" of contract holders, but nonetheless expressed "uncertainty as to when DOE will be able to begin spent fuel acceptance." Id. The letter ended by cordially inviting "the views of all contract holders on how the delay can best be accommodated." Id.

In a similar letter to the states, DOE wrote that it "understands that states are concerned about the Department's delay," and expressed an interest in talking with the states about how to mitigate the harm caused by the delay. State Petitioners' Pet., Att. D. DOE's letter also revealed one of its asserted reasons for the delay: "The Administration continues to believe that interim storage siting should not proceed until the Department has the benefit of the information resulting from the Yucca Mountain Project Viability Assessment." Id. By the Department's own estimates, this Yucca Mountain facility will not be operational until the year 2010. Exhibits to Resp. Response, Tab 6, at 8.

On January 31, 1997, the utilities and state agencies separately petitioned for a writ of mandamus, seeking to compel DOE to comply with Indiana Michigan and begin disposal of the nuclear materials by January 31, 1998. Petitioners also requested that their payments to the Nuclear Waste Fund be placed in escrow unless and until DOE meets its obligations to dispose of SNF, and asked that the court prohibit DOE from taking any punitive action toward those who suspend payments to the Fund.

On June 3, 1997, DOE responded to comments submitted by contract holders regarding the anticipated delay. The Department began by recognizing that "Section 302 [of the NWPA] specifies that the contracts shall provide for the Department to begin to dispose of spent fuel not later than January 31, 1998." Exhibits to Resp. Response, Tab 6, at 4. DOE then expressed its belief that "the Standard Contract adopted by the Department pursuant to Section 302 and entered into by the contract holders specifies the available remedies in the event the Department is unable to meet the January 31, 1998 date." Id. Under Article IX of the contract,

the Department asserted, the Department was "not obligated to provide a financial remedy for the delay," because the delay, in the Department's estimation, was "unavoidable." Id. at 2. After conceding that the delay may result in "hardship" to contract holders, DOE expressed its willingness "to consider amendments to individual contracts that would mitigate the impacts of the delay *758 **24 particular contract holders will experience in the acceptance of their spent fuel." Id.

II. Discussion

[1] Petitioners assert that a writ of mandamus is necessary to force DOE to comply with Indiana Michigan and begin acceptance of the SNF by the 1998 deadline. Their argument rests on our prior conclusion that "section 302(a)(5)(B) [of the NWPA] creates an obligation in DOE, reciprocal to the utilities' obligation to pay, to start disposing of the SNF no later than January 31, 1998." 88 F.3d at 1277. DOE has not only failed to undertake "further proceedings consistent with" the court's opinion, petitioners argue, but has informed them of its plans to default on its obligations. Petitioners draw special attention to the fact that the Department currently accepts SNF from 41 foreign countries, from which they conclude that DOE is not unable but is simply unwilling to meet the 1998 deadline. They submit that a writ of mandamus is an appropriate remedy for the Department's refusal to comply with Indiana Michigan and perform its duties by the deadline set by Congress. [FN1]

FN1. The state petitioners also contend that a writ of mandamus is warranted, wholly apart from our decision in Indiana Michigan, under Telecommunications Research & Action Center v. F.C.C., 750 F.2d 70 (D.C.Cir.1984) ("TRAC"). State

> Petitioners' Pet. at 9-12. Because we issue a writ of mandamus to effectuate our decision in Indiana Michigan, we decline to reach the additional question of whether issuance of the writ would have been proper under TRAC.

[2][3][4] We start our consideration of the petition with the observation that "[t]he remedy of mandamus is a drastic one, to be invoked only in extraordinary situations." Allied Chemical Corp. v. Daiflon, Inc., 449 U.S. 33, 34, 101 S.Ct. 188, 190, 66 L.Ed.2d 193 (1980). Mandamus is proper only if "(1) the plaintiff has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to plaintiff." Council of and for the Blind of Delaware County Valley v. Regan, 709 F.2d 1521, 1533 (D.C.Cir.1983) (en banc). The party seeking mandamus has the burden of showing that "its right to issuance of the writ is clear and indisputable." Gulfstream Aerospace Corp. v. Mayacamas Corp., 485 U.S. 271, 289, 108 S.Ct. 1133, 1143, 99 L.Ed.2d 296 (1988) (internal quotations and citations omitted).

Petitioners have established that they have a clear right to relief, and thus have satisfied the first requirement for a writ of mandamus. As we explained in Indiana Michigan, the NWPA requires DOE, "in return for the payment of fees," to begin disposing of the materials "not later than January 31, 1998." 42 U.S.C. § 10222(a)(5)(B). We specifically noted that the payment of fees into the Nuclear Waste Fund is the "only limitation placed on the Secretary's duties" found in the text of the statute. 88 F.3d at 1276. The owners and generators have dutifully complied with the NWPA, pouring billions of dollars of payments into the Fund with the expectation that DOE would live up to its end of the bargain. The Department, on the other hand, has tersely informed the

parties that it "will be unable to begin acceptance of spent nuclear fuel for disposal in a repository or interim storage facility by January 31, 1998." Utility Petitioners' Pet. at Tab 1. Petitioners' full compliance with the requirements of the NWPA, taken in conjunction with DOE's refusal to perform its reciprocal duties, compels the conclusion that petitioners have established a clear right to relief in this case.

The second requirement is also satisfied. DOE's duty to act could hardly be more clear. DOE argued in Indiana Michigan that its obligations under the NWPA were contingent on the existence of a repository or interim storage facility. We held that DOE's interpretation was inconsistent with the text of the NWPA, which clearly demonstrates a congressional intent that the Department assume a contractual obligation to perform by the 1998 deadline, "without qualification or condition." 88 F.3d at 1276. DOE's duty to take the materials by the 1998 deadline is also an integral part of the Standard Contract, which provides that the Department "shall begin" disposing of the SNF by January 31, 1998. 10 C.F.R. § 961.11, Art. II. The contractual obligations created consistently with the statutory contemplation leave no room for DOE to argue that it does not *759 **25 have a clear duty to take the SNF from the owners and generators by the deadline imposed by Congress.

Although petitioners have a clear right to relief, and the Department has a clear duty to act, we decline to issue the broad writ of mandamus sought by petitioners because they are presented with another potentially adequate remedy. Although the statute does not prescribe a particular remedy in the event that the Department fails to perform on time, the Standard Contract does provide a scheme for dealing with delayed performance. 10 C.F.R. § 961.11, Art. IX. Specifically, Article IX of the Standard Contract outlines

how the parties are to proceed if one party is unable to fulfill its obligations in a timely manner. Under Article IX, unavoidable delays are to be treated differently than avoidable delays. A failure to perform is considered "unavoidable" only if such failure "arises out of causes beyond the control and without the fault or negligence of the party failing to perform." Id. at Art. IX.A. If a party's delay is determined to be unavoidable, that party is not liable for damages caused by the failure to perform in a timely manner. Id. An avoidable delay, in contrast, is caused by "circumstances within the reasonable control" of the delinquent party. Id. at Art. IX. B. If a party's delay is avoidable, the charges and schedules in the contract must be equitably adjusted to reflect additional costs incurred by the other party. Id. The contract also provides a mechanism for resolving disputes of fact that the parties may encounter along the way. See id. at Art. XVI.

Petitioners have not convinced us that this contractual scheme is inadequate to deal with DOE's anticipated delay in accepting the SNF. Petitioners have suggested that the contractual processes are inadequate, claiming that they will "suffer additional billions of dollars in additional costs if DOE fails to meet its January 1998 obligation," Utility Petitioners' Pet. at 4, and that they will not be able to recover these costs in the contract proceedings because the Department is excusing its own default. See Utility Petitioners' Reply at 2. Such costs may in fact ensue if DOE fails to perform on time, but there is no reason to believe that these additional expenses will not be taken into account if the contractual processes operate as Congress intended. See infra at 11-13. Accordingly, we conclude that petitioners must pursue the remedies provided in the Standard Contract in the event that DOE does not perform its duty to dispose of the SNF by January 31, 1998. This conclusion, we should

note, comports with our decision in Indiana Michigan. Even though we did not enter a remedy at that time, we suggested that the provisions of the Standard Contract would determine the appropriate remedy for the Department's failure to perform its obligations. 88 F.3d at 1277.

A writ of mandamus is required, however, to compel DOE to comply with our prior mandate in Indiana Michigan. See Office of Consumers' Counsel v. FERC, 826 F.2d 1136, 1140 ("A federal appellate court has the authority, through the process of mandamus, to correct any misconception of its mandate by a lower court or administrative agency subject to its authority."); see also Potomac Electric Power Co. v. Interstate Commerce Comm., 702 F.2d 1026, 1032 (D.C.Cir.1983). We held in Indiana Michigan that the NWPA imposes an unconditional obligation, memorialized in the Standard Contract, to begin disposing of the materials by January 31, 1998. We rejected the Department's attempt to water-down its obligations, finding that DOE's interpretation would "destroy[ ] the quid pro quo created by Congress" and would mean that the payment of fees into the Nuclear Waste Fund "was for nothing." 88 F.3d at 1276. To effectuate DOE's duty, as we recognized in Indiana Michigan, petitioners must be able to enforce the terms of the contract in a meaningful way. Petitioners' ability to enforce the contract would be frustrated if DOE were allowed to operate under a construction of the contract inconsistent with our prior conclusion that the NWPA imposes an obligation on DOE "without qualification or condition." Id.

Viewed in this light, DOE's current approach toward contractual remedies violates our directives in Indiana Michigan. As explained above, the Department has endeavored to proceed according to Article IX of *760 **26 the Standard Contract, by first informing the parties of its

anticipated delay, and then evaluating whether its own delay is "unavoidable." Article IX describes an unavoidable delay as a party's " failure to perform its obligations ... aris[ing] out of causes beyond the control and without the fault or negligence of the party failing to perform." 10 C.F.R. § 961.11, Art. IX.A. The contract goes on to list a few examples of circumstances "beyond the reasonable control" of the delayed party: "acts of God, or of the public enemy, acts of Government in either its sovereign or contractual capacity, fires, floods, epidemics, quarantine restrictions, strikes, freight embargoes and unusually severe weather." Id. The Contracting Officer isolated six factors that, taken together, supposedly support the conclusion that DOE experienced an unavoidable delay in this case: technical problems; regulatory delays; roadblocks to implementation of interim or monitored retrievable storage; funding restrictions; litigation delays; and consultation requirements. Exhibits to Resp. Response, Tab 6. Reaching the preliminary conclusion that the delay was unavoidable, the Department's Contracting Officer let DOE off the hook for monetary damages.

The most glaring problem with DOE's position is that it is answering the wrong question: it is attempting to explain why it will not have a "state-of- the-art, deep geologic facility for the permanent disposal of the Nation's spent nuclear fuel and high-level waste" ready by 1998. Id. Put another way, DOE's position is that its delayed performance is unavoidable because it does not have an operational repository, and does not have the authority to provide storage in the interim. DOE is simply recycling the arguments rejected by this court in Indiana Michigan. DOE unsuccessfully argued in that case that it does not have an obligation to take the SNF in the absence of an operational repository or other facility; here, DOE recycles that same argument in the slightly different

form that it does not have responsibility for the costs resulting from its failure to perform that duty because it does not have an operational repository or other facility. As we pointed out in Indiana Michigan, the NWPA directs DOE to undertake the duty to begin taking the SNF by January 31, 1998, whether or not it has a repository or interim storage facility. DOE cannot now render its obligation contingent, and free itself of the costs caused by its delay, by advancing the same failed position that we rejected before.

Given DOE's repeated attempts to excuse its delay on the ground that it lacks an operational repository or interim storage facility, we find it appropriate to issue a writ of mandamus to correct the Department's misapprehension of our prior ruling. Accordingly, we order DOE to proceed with contractual remedies in a manner consistent with NWPA's command that it undertake an unconditional obligation to begin disposal of the SNF by January 31, 1998. More specifically, we preclude DOE from concluding that its delay is unavoidable on the ground that it has not yet prepared a permanent repository or that it has no authority to provide storage in the interim.

This necessarily means, of course, that DOE not implement any interpretation of the Standard Contract that excuses its failure to perform on the grounds of "acts of Government in either its sovereign or contractual capacity." 10 C.F.R. § 961.11, Art. IX.A. We held in Indiana Michigan that the NWPA imposes an unconditional duty on DOE to take the materials by 1998. Congress, in other words, directed DOE to assume an unqualified obligation to take the materials by the statutory deadline. Under the Department's interpretation of the governing contractual provisions, however, the government can always absolve itself from bearing the costs of its delay if the delay is caused by the

government's own acts. This cannot be a valid interpretation, as it would allow the Executive Branch to void an unequivocal obligation imposed by Congress. DOE has no authority to adopt a contract that violates the directives of Congress, just as it cannot implement interpretations of the contract that contravene this court's prior ruling. We hold that this provision in the Standard Contract, insofar as it is applied to DOE's failure to perform by 1998, is inconsistent with DOE's statutory obligation to assume an unconditional duty.

*761 **27 III. Conclusion

In conclusion, we do not grant petitioners' broad request for a writ of mandamus because we conclude that the remedial scheme of the Standard Contract offers a potentially adequate remedy. We do, however, grant the petition in part because DOE has not abided by our prior conclusion that the NWPA imposes an unconditional obligation on the Department to begin disposal of the SNF by January 31, 1998. We therefore issue a writ of mandamus precluding DOE from excusing its own delay on the grounds that it has not yet prepared a permanent repository or interim storage facility. We retain jurisdiction over this case pending compliance with the mandate issued herewith.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

**No. 97-1064** **September Term, 1997**

Northern States Power Company, et al.,
Petitioners

v.

United States Department of Energy and
United States of America,
Respondents

IES Utilities, Inc., et al.,
Inventors

Consolidated with Nos. 97-1065, 97-1370 and 97-1398

**No. 98-1069**
In Re:
Maine Yankee Atomic Power Co., Petitioner

**No. 98-1070**
In Re:
Southern Nuclear Operating Co., et al., Petitioners

Before: WILLIAMS, GINSBURG and SENTELLE, *Circuit Judges.*

## ORDER

Upon consideration of the Motions to Consolidate from Main Yankee and Southern Nuclear; the Motions from the Department of Energy to Dismiss the suits of Main Yankee and Southern Nuclear; the Motions for Enforcement of the Mandate from the state Petitioners, the Utility Petitioners, and Connecticut Yankee; and the Petitions for Rehearing from Yankee Atomic and the Department of Energy, and the responses thereto and the replies, it is hereby

ORDERED that the Motions to Consolidate be granted. The Petitions and Motions are otherwise denied.

I. Maine Yankee and Southern Nuclear Operating Company are parties to the Department of Energy's ("DOE"). Their suits against the DOE present issues identical to those raised by the Utility Petitioners in Northern States Power Co. v. DOE, 128 F. 3d 754 (D.C. Cir. 1997). To make clear that they are entitled to identical relief, we grant the motion to consolidate. Our disposition of the motions for enforcement and petitions for rehearing, discussed below, applies in full measure to Maine Yankee and Southern Nuclear.

II. The DOE moves for dismissal of the actions of Maine Yankee and Southern Nuclear. Those utilities are entitled to the same relief as

the other Utility Petitioners; consequently, we do not dismiss their suits but instead consolidate them with Northern States. The relief awarded in that decision extends to them. To the extent that they join in the Utility Petitioners' motions, the following dispositions also apply to them. The DOE's motion is denied.

III. The State Petitioners request an order that (1) bars the Doe from using utility and ratepayer-supplied monies from the Nuclear Waste Fund ("NWF") or fee collections to pay any costs or damages awarded to utilities under the Standard Contract; (2) authorizes the payment of NWF fees into an interest-bearing escrow account; and (3) requires the DOE to file a plan for disposing of SNF before receiving any more shipments of foreign or domestic SNF at its existing facilities.

We express no opinion on the legality of the DOE's using utility or ratepayer-supplied monies to pay costs or damages, nor on the adequacy of any particular type of equitable adjustment of fees that might be awarded to utilities under the Delays Clause of the Standard Contract. Our decision in Northern States barred the DOE from interpreting the Contract as imposing only a contingent disposal obligation; such an interpretation, we ruled, would place the DOE in violation of its statutory duties under the Nuclear Waste Policy Act ("NWPA"), which required it to undertake an unconditional obligation. Beyond that clarification of the statute's requirements, we remitted the utilities to their remedies under the Standard Contract. Suits based on the

Contract may present issues of the permissible forms of equitable adjustment, and possibly the award of some forms of equitable adjustment would place the DOE in violation of the NWPA and again properly trigger our jurisdiction (as opposed to that of the Court of Federal Claims) under either the NWPA or the APA. But as the DOE has not yet taken any of these actions, the issues are not ripe for review as presented to us in these petitions.

The second and third elements of the State Petitioners' requested order constitute equitable contract remedies against the DOE and fall outside the scope of the Northern States mandate. Northern States describes the nature of the DOE's obligation, which was created by the NWPA and undertaken by the DOE under the Standard Contract. It does not place the question of contract remedies in this court, nor set up this court as a source of remedies outside the Standard Contract.

IV. The Utility Petitioners request essentially the same relief as the State Petitioners. For the same reasons, their request is denied.

V. Yankee Atomic requests an order requiring the DOE to begin to dispose of its SNF, asserting that monetary damages are inadequate. We do not address the question of the adequacy of damages or of any contract remedy. The order cannot issue because enforcement of our mandate does not extend to requiring the DOE to perform under to Standard Contract. While the statute requires the DOE to include an unconditional

obligation in the Standard Contract, it does not itself require performance. Breach by the DOE does not violate a statutory duty; thus, our jurisdiction to hear allegations of failure to take an action required under the NWPA, see 42 U.S.C. § 1.139 (a) (1) (B), does not provide a basis for a move-fuel order.

VI. Connecticut Yankee request an order prohibiting the DOE from using NWF monies to compensate utilities for delay, and requiring the DOE to move Connecticut Yankee's spent fuel. This request is covered by the discussion above: the issue of recycling NWF monies is not ripe, and the move-fuel order is beyond our mandate.

VII. The DOE petitions for rehearing, suggesting that this Court has erroneously designated itself as the proper forum for adjudication of disputes arising under the Standard Contract. As the above should make clear, we did not; we merely prohibited the DOE from implementing an interpretation that would place it in violation of its duty under the NWPA to assume an unconditional obligation to begin disposal by January 31, 1998. The Statutory duty to include an unconditional obligation in the contract is independent of any rights under the contract. The Tucker Act does not prevent us from exercising jurisdiction over and Act does not prevent us from exercising jurisdiction over an action to

enforce compliance with the NWPA. The DOE's petitions denied.

**FOR THE COURT:**
Mark J. Langer, Clerk

BY: Michael C.
McGrail Deputy Clerk

May 5, 1998