No. 99-766

# In the Supreme Court of the United States

CONSOLIDATED EDISON COMPANY OF NEW YORK, ET AL., PETITIONERS

*v.*

UNITED STATES DEPARTMENT OF ENERGY, ET AL.

*ON PETITION FOR A WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT*

## BRIEF FOR THE RESPONDENTS IN OPPOSITION

SETH P. WAXMAN
*Solicitor General*
*Counsel of Record*
LOIS J. SCHIFFER
*Assistant Attorney General*
JOHN A. BRYSON
*Attorney*
*Department of Justice*
*Washington, D.C. 20530-0001*
*(202) 514-2217*

## QUESTIONS PRESENTED

1. Whether the court of appeals correctly dismissed claims brought by petitioners under the Nuclear Waste Policy Act of 1982 (NWPA), 42 U.S.C. 10101 *et seq.*, on the ground that those claims were precluded by the court's prior decision in *Northern States Power Co.* v. *United States Department of Energy*, 128 F.3d 754 (D.C. Cir. 1997), cert. denied, 525 U.S. 1015 and 1016 (1998), and the court's order on denial of rehearing in that case.

2. Whether the court of appeals correctly dismissed petitioners' claims for breach of contracts entered into pursuant to the NWPA.

TABLE OF CONTENTS


| | Page |
|---|---|
| Opinions below | 1 |
| Jurisdiction | 1 |
| Statutory provisions involved | 2 |
| Statement | 2 |
| Argument | 11 |
| Conclusion | 17 |


TABLE OF AUTHORITIES


Cases:

| | |
|---|---|
| *DOE* v. *Northern States Power Co.*, 525 U.S. 1016 (1998) | 10 |
| *Indiana Mich. Power Co.* v. *DOE*, 88 F.3d 1272 (D.C. Cir. 1996) | 5, 6, 7 |
| *Megapulse, Inc.* v. *Lewis*, 672 F.2d 959 (D.C. Cir. 1982) | 16 |
| *Michigan* v. *DOE*, 525 U.S. 1015 (1998) | 10 |
| *Northern States Power Co.* v. *United States Dep't of Energy*, 128 F.3d 754 (D.C. Cir. 1997), cert. denied, 525 U.S. 1015 and 1016 (1998) | 7, 8 |
| *Radzanower* v. *Touche Ross & Co.*, 426 U.S. 148 (1976) | 16 |
| *Sharp* v. *Weinberger*, 798 F.2d 1521 (D.C. Cir. 1986) | 16 |
| *Transohio Sav. Bank* v. *OTS*, 967 F.2d 598 (D.C. Cir. 1992) | 16 |

Constitution, statutes and regulation:

| | |
|---|---|
| U.S. Const.: | 10 |
| Amend. V | 11 |
| Due Process Clause | 11 |
| Just Compensation Clause | |
| Nuclear Waste Policy Act of 1982, 42 U.S.C. 10101 *et seq.* | 2 |
| § 111, 42 U.S.C. 10131 | 2 |
| § 111(a)(4), 42 U.S.C. 10131(a)(4) | 2 |
| §§ 113-115, 42 U.S.C. 10133-10135 | 2 |

| | Page |
|---|---|
| Statutes and regulation—Continued: | |
| § 119, 42 U.S.C. 10139 | 2, 5, 6, 10, 15 |
| § 119(a), 42 U.S.C. 10139(a) | 16 |
| § 119(a)(1), 42 U.S.C. 10139(a)(1) | 6, 16 |
| § 119(a)(1)(A), 42 U.S.C. 10139(a)(1)(A) | 6 |
| § 119(a)(1)(A)-(F), 42 U.S.C. 10139(a)(1)(A)-(F) | 16 |
| § 119(a)(1)(B), 42 U.S.C. 10139(a)(1)(B) | 6, 12 |
| § 119(c), 42 U.S.C. 10139(c) | 6, 14 |
| § 302, 42 U.S.C. 10222 | 2 |
| § 302(a)(1), 42 U.S.C. 10222(a)(1) | 8 |
| § 302(a)(2), 42 U.S.C. 10222(a)(2) | 2 |
| § 302(a)(3), 42 U.S.C. 10222(a)(3) | 2 |
| § 302(a)(5), 42 U.S.C. 10222(a)(5) | 12, 17 |
| § 302(a)(5)(B), 42 U.S.C. 10222(a)(5)(B) | 10, 11 |
| § 302(a)(6), 42 U.S.C. 10222(a)(6) | 14, 17 |
| § 302(b), 42 U.S.C. 10222(b) | 3 |
| § 302(c), 42 U.S.C. 10222(c) | 3 |
| 10 C.F.R. 961.11 | 3, 4, 5, 7 |
| Miscellaneous: | |
| 48 Fed. Reg. (1983): | |
| p. 5458 | 3 |
| p. 16,590 | 3 |
| 59 Fed. Reg. (1994): | |
| p. 27,007 | 5 |
| p. 27,008 | 5 |
| 60 Fed. Reg. (1995): | |
| p. 21,793 | 5 |
| pp. 21,794-21,795 | 5 |
| p. 21,797 | 6 |

# In the Supreme Court of the United States

No. 99-766

CONSOLIDATED EDISON COMPANY OF NEW YORK, ET AL., PETITIONERS

*v.*

UNITED STATES DEPARTMENT OF ENERGY, ET AL.

*ON PETITION FOR A WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT*

## BRIEF FOR THE RESPONDENTS IN OPPOSITION

### OPINIONS BELOW

The order of the court of appeals (Pet. App. 1a-2a) is unreported. The court of appeals' prior opinion in *Northern States Power Co.* v. *United States Dep't of Energy* (Pet. App. 1c-18c) is reported at 128 F.3d 754. The court of appeals' order denying rehearing in *Northern States* (Pet. App. 19c-24c) is unreported.

### JURISDICTION

The judgment of the court of appeals was entered on April 16, 1999. A petition for rehearing was denied on August 2, 1999 (Pet. App. 5a). The petition for a writ of certiorari was filed on November 1, 1999 (a Monday). The jurisdiction of this Court is invoked under 28 U.S.C. 1254(1).

## STATUTORY PROVISIONS INVOLVED

Sections 111, 119, and 302 of the Nuclear Waste Policy Act of 1982, 42 U.S.C. 10131, 10139, and 10222, are set forth at Pet. App. 1b-14b.

## STATEMENT

1. The Nuclear Waste Policy Act of 1982 (NWPA or Act), 42 U.S.C. 10101 *et seq.*, establishes a program for disposing of high-level radioactive waste and spent nuclear fuel (SNF). The major long-term objective of the Act is the siting, construction, and operation of a deep-mined geologic repository that will safely isolate SNF from the human environment for at least 10,000 years. The Department of Energy (DOE) is charged with evaluating a site at Yucca Mountain in Nevada, and if the site is found suitable for such a repository and approved in accordance with the statutory procedures, obtaining a license from the Nuclear Regulatory Commission and then constructing and operating the facility. 42 U.S.C. 10133-10135.

The program is financed in large measure by fees paid by past and present generators of nuclear power, primarily electric utilities. Congress determined that "while the Federal Government has the responsibility to provide for the permanent disposal of high-level radioactive waste and * * * spent nuclear fuel * * *, the costs of such disposal should be the responsibility of the generators and owners of such waste and spent fuel." 42 U.S.C. 10131(a)(4). Under Section 302 of the NWPA, those parties were assessed a "1 time" fee based on the amount of power generated prior to the effective date of the NWPA, and are assessed an ongoing fee based on the amount of power generated thereafter. 42 U.S.C. 10222(a)(2) and (3). That money is deposited into a Treasury account called the Nuclear

Waste Fund, from which Congress makes annual appropriations to fund the program. 42 U.S.C. 10222(c).

2. The NWPA requires each generator owning spent fuel to have a contract with DOE for the disposal of the fuel. 42 U.S.C. 10222(b). In addition, Section 302(a)(5) provides:

> (5) Contracts entered into under this section shall provide that—
>
> > (A) following commencement of operation of a repository, the Secretary shall take title to the high-level radioactive waste or spent nuclear fuel involved as expeditiously as practicable upon the request of the generator or owner of such waste or spent fuel; and
> >
> > (B) in return for the payment of fees established by this section, the Secretary, beginning not later than January 31, 1998, will dispose of the high-level radioactive waste or spent nuclear fuel involved as provided in this subchapter.

42 U.S.C. 10222(a)(5).

DOE established the terms of the Standard Contract for Disposal of Spent Nuclear Fuel and/or High Level Radioactive Waste (Standard Contract) by rulemaking. See 48 Fed. Reg. 5458 (1983) (proposed Standard Contract); 48 Fed. Reg. at 16,590 (final Standard Contract). The Standard Contract is published at 10 C.F.R. 961.11. Each utility that generates SNF has signed an individual contract that conforms to the terms and conditions of the Standard Contract. In accordance with 42 U.S.C. 10222(a)(5), Article II of the Standard Contract states that "[t]he services to be provided by DOE under this contract shall begin, after commence-

ment of facility operations, not later than January 31, 1998 and shall continue until such time as all SNF * * * has been disposed of." 10 C.F.R. 961.11.

Article IX of the Standard Contract addresses potential delays in contract performance. Article IX states:

A. *Unavoidable Delays by Purchaser or DOE*

> Neither the Government nor the Purchaser shall be liable under this contract for damages caused by failure to perform its obligations hereunder, if such failure arises out of causes beyond the control and without the fault or negligence of the party failing to perform. In the event circumstances beyond the reasonable control of the Purchaser or DOE—such as acts of God, or of the public enemy, acts of Government in either its sovereign or contractual capacity, fires, floods, epidemics, quarantine restrictions, strikes, freight embargoes and unusually severe weather—cause delay in scheduled delivery, acceptance or transport of [spent nuclear fuel], the party experiencing the delay will notify the other party as soon as possible after such delay is ascertained and the parties will readjust their schedules, as appropriate, to accommodate such delay.

B. *Avoidable Delays by Purchaser or DOE*

> In the event of any delay in the delivery, acceptance or transport of SNF * * * to or by DOE caused by circumstances within the reasonable control of either the Purchaser or DOE or their respective contractors or suppliers, the charges and schedules specified by this contract will be equitably adjusted to reflect any estimated additional costs

incurred by the party not responsible for or contributing to the delay.

10 C.F.R. 961.11.

3. When the NWPA was enacted, "Congress anticipated the existence of a repository by 1998." *Indiana Mich. Power Co.* v. *DOE*, 88 F.3d 1272, 1277 (D.C. Cir. 1996). By 1993, however, it had become apparent both that DOE would not have a repository in operation by 1998, and that an interim storage facility would not be available by that time. In response to inquiries about DOE's plans and its view of the government's obligations under the statute, DOE published in the *Federal Register* a request for comment on a preliminary interpretation of Section 302(a)(5) of the NWPA. 59 Fed. Reg. 27,007 (1994). DOE's preliminary view was that the January 31, 1998, deadline specified in that Section was implicitly conditioned on the availability of a repository or other facility licensed under the NWPA. *Ibid.*; see *id.* at 27,008. After consideration of comments from the public, DOE concluded, in accordance with the preliminary views expressed in the earlier *Federal Register* notice, that the NWPA "does not impose a statutory obligation to begin nuclear waste disposal in 1998 in the absence of a disposal or interim storage facility constructed under the Act." 60 Fed. Reg. 21,793, 21,794-21,795 (1995). DOE also stated that if the obligation to accept SNF no later than January 31, 1998, was determined to be unconditional, as some commenters contended, the Delays Clause (Art. IX, 10 C.F.R. 961.11; see pages 3-4, *supra*) of the contract would supply the appropriate remedy. 60 Fed. Reg. at 21,797.

Petitioners in this case are utilities that generate nuclear power. Pursuant to Section 119 of the NWPA, 42 U.S.C. 10139, they and other utilities filed petitions

for review in the United States Court of Appeals for the District of Columbia Circuit challenging DOE's view of its obligations under the Act.[1] The petitions for review asked the court to set aside DOE's interpretation, to permit the utilities to escrow their fee payments after January 31, 1998, and to order DOE to develop a plan for beginning disposal services as soon as possible after that date. A group of States and state utility commissions, together with a national association of state regulatory commissions, filed a similar petition for review.

The court of appeals vacated DOE's interpretation. *Indiana Mich.*, *supra*. The court held that the NWPA "creates an obligation in DOE, reciprocal to the utilities' obligation to pay, to start disposing of the SNF no later than January 31, 1998." 88 F.3d at 1277. The court stated that the absence of any suitable facility for the disposal of nuclear waste "simply affects the remedy we can provide." *Ibid.* The court concluded, however, that it was "premature to determine the appropriate remedy, particularly as to the interaction between Article XI and Article XVI of the Standard Contracts, as DOE has not yet defaulted upon either its statutory or contractual obligation. We will therefore remand this

[1] Section 10139 vests the courts of appeals with "original and exclusive jurisdiction" (42 U.S.C. 10139(a)(1)) over any suit "for review of any final decision or action of the Secretary" (42 U.S.C. 10139(a)(1)(A)) or "alleging the failure of the Secretary * * * to make any decision, or take any action, required under this part" (42 U.S.C. 10139(a)(1)(B)). Section 10139 further provides that "[a] civil action for judicial review described under subsection (a)(1) of this section may be brought not later than the 180th day after the date of the decision or action or failure to act involved." 42 U.S.C. 10139(c).

matter for further proceedings consistent with this opinion." *Ibid.*

4. After the court of appeals issued its decision in *Indiana Michigan*, DOE issued the required notice of a delay under the Delays Clause (Art. IX, 10 C.F.R. 961.11) of the Standard Contract, and gave contract holders an opportunity to submit their views on how that delay should be addressed. See *Northern States Power Co.* v. *United States Dep't of Energy*, 128 F.3d 754, 757 (D.C. Cir. 1997), cert. denied, 525 U.S. 1015 and 1016 (1998) (Pet. App. 9c). Following review of the comments, DOE concluded that the Disputes Clause (Art. XVI, 10 C.F.R. 961.11) of the contract governed resolution of whether the delay was "[u]navoidable" or "[a]voidable." DOE also made a preliminary determination that the delay was unavoidable. See *Northern States*, 128 F.3d at 757 (Pet. App. 10c-11c).

Petitioners and other utility companies had in the meantime filed in the court of appeals a petition for a writ of mandamus alleging that DOE had failed to comply with the court's mandate in *Indiana Michigan*. See *Northern States*, 128 F.3d at 757 (Pet. App. 10c). They renewed their request for an order requiring DOE to begin disposal services on January 31, 1998, and for a declaration that the utilities could escrow the payment of their fees if DOE failed to perform its obligation by that date. *Ibid.*

5. The court of appeals granted limited mandamus relief. See *Northern States*, *supra* (Pet. App. 1c-18c). The court declined to issue a writ of mandamus directing DOE to begin accepting SNF by January 31, 1998, explaining that the utilities had a potentially adequate remedy under the Delays Clause of the Standard Contract. 128 F.3d at 759 (Pet. App. 13c-14c). The court concluded, however, that "DOE's current ap-

proach toward contractual remedies"—*i.e.*, the Department's preliminary determination that the expected delay in its acceptance of SNF would be "[u]navoidable" within the meaning of Article IX—was inconsistent with the *Indiana Michigan* mandate. 128 F.3d at 759 (Pet. App. 15c). The effect of the court's ruling was to require the utilities to exhaust their remedies under Article IX.B of the Standard Contract, which provides for an equitable adjustment of fees in cases involving "[a]voidable [d]elays."

6. DOE filed a petition for rehearing, arguing that the court of appeals lacked jurisdiction to determine the applicability of the "unavoidable delays" provision of the Standard Contract. See Pet. App. 23c. One of the utilities, Yankee Atomic Company (Yankee), also filed a rehearing petition, requesting an order requiring DOE to begin disposal of Yankee's SNF. See *id.* at 22c. The petitioners in the instant case, as well as the remaining utilities, filed motions to enforce or expand the mandate. Petitioners contended that the equitable adjustment of fees was not an appropriate remedy since under the statutory requirement that DOE collect fees sufficient to ensure full program cost recovery, equitable adjustments would simply redistribute the burden of the program's costs from some utilities to other utilities. See 42 U.S.C. 10222(a)(1) (contracts shall provide for payment of fees sufficient to offset the costs of the program). They requested an order barring DOE from using fee collections to pay any costs or damages due to the delay, and they renewed their request for specific relief that would order DOE to develop a plan for disposing of their spent fuel. See Pet. App. 20c-23c.

The court of appeals denied the petitions for rehearing and the motions to enforce the mandate. Pet. App. 19c-24c. In rejecting Yankee's request for a

move-fuel order (*i.e.*, an order requiring DOE to accept SNF for disposal), the court explained (*id.* at 22c-23c) that

> enforcement of our mandate does not extend to requiring the DOE to perform under the Standard Contract. While the statute requires the DOE to include an unconditional obligation in the Standard Contract, it does not itself require performance. Breach by the DOE does not violate a statutory duty; thus, our jurisdiction to hear allegations of failure to take an action required under the NWPA, see 42 U.S.C. § 1[0]139(a)(1)(B), does not provide a basis for a move-fuel order.

The court also rejected DOE's contention that the court's grant of mandamus relief impermissibly intruded on the jurisdiction of the Court of Federal Claims, stating (Pet. App. 23c-24c):

> The DOE * * * suggest[s] that this Court has erroneously designated itself as the proper forum for adjudication of disputes arising under the Standard Contract. As the above should make clear, we did not; we merely prohibited the DOE from implementing an interpretation that would place it in violation of its duty under the NWPA to assume an unconditional obligation to begin disposal by January 31, 1998. The statutory duty to include an unconditional obligation in the contract is independent of any rights under the contract. The Tucker Act does not prevent us from exercising jurisdiction over * * * an action to enforce compliance with the NWPA.

This Court denied two petitions for a writ of certiorari–one filed by a group of state entities and one filed

by DOE—seeking review of the court of appeals' decision. See *Michigan* v. *DOE*, 525 U.S. 1015 (1998) (No. 98-225); *DOE* v. *Northern States Power Co.*, 525 U.S. 1016 (1998) (No. 98-384).[2] Neither petitioners nor any of the other utilities sought further review.[3]

7. In July 1998, petitioners filed a petition for review and a motion for leave to file a complaint in the court of appeals, invoking the court's jurisdiction under Section 119 of the NWPA, 42 U.S.C. 10139. The petition for review raised claims under the NWPA and the Fifth Amendment. The general thrust of those claims was that in calculating the fees exacted from utilities, DOE should exclude its costs resulting from the failure to develop a permanent repository and accept SNF for disposal by January 31, 1998. See Petition for Review 32-35, No. 98-1358 (D.C. Cir.).

The complaint asserted claims based on Section 302(a)(5)(B) of the NWPA, 42 U.S.C. 10222(a)(5)(B); Article II of the Standard Contract, which implements

---

[2] DOE's petition argued that by barring the Department from treating its delay in contract performance as "[u]navoidable" within the meaning of Article IX of the Standard Contract, the court of appeals had impermissibly intruded upon the jurisdiction of the Court of Federal Claims, which is vested with exclusive authority to adjudicate contract claims against the United States. See 98-384 Pet. at 14-22. The state petitioners argued that the court of appeals had erred in refusing to direct DOE to commence accepting SNF for disposal. See 98-225 Pet. at 7-23.

[3] To date, no contract holder has filed a certified claim for equitable adjustment of the fees under the avoidable delays provision. One utility sought nonmonetary and monetary relief from DOE through a modification of the contract, and has recently sought review of that process in the court of appeals. *Wisconsin Elec. Power Co.* v. *United States Dep't of Energy*, No. 99-1342 (D.C. Cir.). Eleven utilities have filed suits in the Court of Federal Claims, seeking damages ranging from $70 million to $1.5 billion.

Section 302(a)(5)(B) (see page 3, *supra*); and the Due Process and Just Compensation Clauses of the Fifth Amendment. As relief, petitioners sought (1) a declaration that DOE had acted unlawfully in failing to accept their SNF for disposal beginning January 31, 1998, (2) an order requiring DOE to provide storage for petitioners' spent fuel and to accept and to take title to the fuel at a rate consistent with congressional intent, (3) an order requiring DOE to pay all past and future costs of delay in performance, and (4) damages for material breach of contract. Complaint 21-23, No. 98-1358 (D.C. Cir.). DOE moved to dismiss the petition for review and opposed petitioners' motion for leave to file the complaint.

The court of appeals granted DOE's motion to dismiss the petition for review, stating that "[p]etitioners' arguments are precluded by the court's holding in *Northern States Power Co. v. Dep't. of Energy*, 128 F.3d 754 (D.C. Cir. 1997), and the unpublished order issued May 5, 1998, denying rehearing in that case." Pet. App. 1a-2a. The court further ordered that "the remaining motions"—including the motion for leave to file the complaint—should "be dismissed as moot." *Id.* at 2a.

## ARGUMENT

Petitioners seek review of the court of appeals' unpublished order determining the preclusive effect of the court's own prior decision. The court of appeals' ruling is correct and raises no legal issue of general importance warranting this Court's review. The petition for a writ of certiorari should be denied.

1. Section 302(a)(5) of the NWPA provides in relevant part:

> (5) Contracts entered into under this section shall provide that-

* * * * *

> (B) in return for the payment of fees established by this section, the Secretary, beginning not later than January 31, 1998, will dispose of the high-level radioactive waste or spent nuclear fuel involved as provided in this subchapter.

42 U.S.C. 10222(a)(5). By its plain terms, Section 10222(a)(5) requires only that contracts between DOE and generators of SNF must provide for disposal to commence no later than January 31, 1998. In its order denying rehearing in *Northern States*, the court of appeals observed that

> [w]hile the statute requires the DOE to include an * * * obligation in the Standard Contract, it does not itself require performance. Breach by the DOE does not violate a statutory duty; thus, our jurisdiction to hear allegations of failure to take an action required under the NWPA, see 42 U.S.C. § 1[0]139(a)(1)(B), does not provide a basis for a move-fuel order.

Pet. App. 22c-23c. The court of appeals thus recognized that DOE's obligation to commence SNF disposal by January 31, 1998, was contractual rather than statutory, and that the agency's inability to perform that obligation therefore was not remediable through a petition for review under 42 U.S.C. 10139(a)(1)(B).

2. Petitioners contend (Pet. 12-17) that the court of appeals erred in dismissing their petition for review. They argue that the statutory claims asserted in that petition are not precluded by the D.C. Circuit's rulings in *Northern States* because those claims were not raised in the prior litigation. That argument is without merit.

Although the specific statutory claims raised in this case are indeed new, they rest on a legal premise that the *Northern States* court unequivocally rejected.

The petition for review alleged that DOE (a) is collecting excessive fees from utilities that generate SNF and (b) is making unlawful expenditures from the Nuclear Waste Fund. The gravamen of those claims was that the agency's fees and Waste Fund expenditures are unlawful *because* they are not the fees and expenditures that would be in effect if a permanent repository had been in operation by January 31, 1998. See Petition for Review 32-35, No. 98-1358 (D.C. Cir.). Thus, with respect to the collection of fees, petitioners requested "[a]n order declaring that any increased costs of disposal resulting from the delay in developing a permanent repository for spent nuclear fuel, including increased costs of construction and operation, be borne by DOE and not be used to increase payments by petitioners to the Nuclear Waste Fund." *Id.* at 33; see also *id.* at 33-34 (requesting "[a]n order requiring the Secretary of Energy to propose to Congress a fee reduction to an amount no more than necessary to fund the nuclear waste disposal program assuming the present existence of an operational repository consistent with the NWPA's statutory framework, or alternatively, a reduction of the fee to zero"). With respect to Waste Fund expenditures, petitioners requested "[a]n order prohibiting [DOE] from * * * paying any increased costs that relate to delay in construction of the repository from the fund." *Id.* at 34.

The petition for review also contended that DOE is currently in breach of its obligation under Section 302(a)(6) of the NWPA, 42 U.S.C. 10222(a)(6), to "establish in writing criteria setting forth the terms and conditions under which [SNF] disposal services shall be

made available." In its motion to dismiss the petition, DOE argued that "the Standard Contract, promulgated in 1983, and other documents prepared pursuant to the Standard Contract and issued in March 1995 fulfill any requirement of Section 302(a)(6) or obligation to establish a schedule." Respondents' Motion to Dismiss Petition 17, No. 98-1358 (D.C. Cir.). We pointed out (see *ibid.*) that any challenge to those documents would be barred by the 180-day limitations period contained in 42 U.S.C. 10139(c). See note 1, *supra*. In opposing the motion to dismiss, petitioners argued that the terms and conditions contained in those documents, "even if formerly compliant with the NWPA, at best remained in effect only until January 31, 1998, when DOE failed to commence disposing of spent nuclear fuel pursuant to the program Congress had required." Petitioners' Response in Opposition to Motion to Dismiss Petition 18, No. 98-1358 (D.C. Cir.). Here again, an essential predicate for petitioners' claim was that DOE's failure to commence disposal of SNF by January 1, 1998, had placed it in breach of a *statutory* obligation.

Thus, the basis for the court of appeals' preclusion holding was not that the precise statutory claims raised in the petition for review had previously been litigated. Rather, petitioners' claims were precluded because they rest on a legal premise that the court of appeals had squarely rejected in *Northern States*, and particularly in its order denying rehearing in that case. See Pet. App. 22c-23c. As we explain above (see page 12, *supra*), the court of appeals made clear in that order that DOE's failure to accept SNF for disposal by January 31, 1998, may place it in breach of the Standard Contract but did *not* constitute a violation of the NWPA. See *id.* at 23c ("Breach by the DOE does not violate a statutory duty."). Because the petition for

review filed in this case was premised on a contrary view of the law, the court of appeals correctly held that its prior judgment—which rested on the contrary premise as the foundation for its holding—barred petitioners' claims.

3. Petitioners also contend (Pet. 19-25) that the court of appeals erred in declining to exercise jurisdiction over the contract claims asserted in their complaint. They argue (Pet. 19) that "[w]hen Congress granted 'original and exclusive' jurisdiction to the courts of appeals [in 42 U.S.C. 10139(a)(1)], it divested any other court, including the United States Court of Federal Claims, of jurisdiction over any action under the NWPA, including actions for breach of the statutory contract alleged in the complaint." That argument is without merit.

In its order denying rehearing in *Northern States*, the court of appeals recognized that its jurisdiction under 42 U.S.C. 10139 does not extend to claims for breach of the Standard Contract. Pet. App. 22c-23c. The court explained that while the NWPA requires the inclusion of certain terms within the Standard Contract, the Act "does not itself require performance. Breach by the DOE does not violate a statutory duty; thus, our jurisdiction to hear allegations of failure to take an action required under the NWPA, see 42 U.S.C. § 1[0]139(a)(1)(B), does not provide a basis for a move-fuel order." *Id.* at 23c.[4]

[4] In the concluding paragraph of its order denying rehearing in *Northern States*, the court of appeals reiterated its understanding that its jurisdiction is limited to claims of NWPA violations and does not extend to disputes arising under the Standard Contract. Pet. App. 23c-24c. There is simply no basis for petitioners' contention (Pet. 20) that "in all ongoing proceedings, one issue remains unaddressed: whether the D.C. Circuit has 'original and exclusive'

The NWPA's judicial review provision vests the courts of appeals with "original and exclusive" jurisdiction over specified categories of suits (see 42 U.S.C. 10139(a)(1)(A)-(F)), not over every challenge to DOE's implementation of the nuclear waste program. Nothing in Section 10139 suggests that the courts of appeals are authorized to entertain contractual claims. Any ambiguity in Section 10139(a)(1) should be resolved, moreover, in light of the settled background rule that "[t]he sole remedy for an alleged breach of contract by the federal government is a claim for money damages, either in the United States Claims Court [now the Court of Federal Claims] under the Tucker Act, * * * or, if damages of no more than $10,000 are sought, in district court under the Little Tucker Act." *Sharp* v. *Weinberger*, 798 F.2d 1521, 1523 (D.C. Cir. 1986) (Scalia, J.). Accord, *e.g.*, *Transohio Sav. Bank* v. *Director*, *OTS*, 967 F.2d 598, 609-610 (D.C. Cir. 1992); *Megapulse, Inc.* v. *Lewis*, 672 F.2d 959, 967 (D.C. Cir. 1982).[5]

Petitioners also contend (Pet. 21-25) that review of contract claims in the court of appeals is necessary in order to ensure that the NWPA is administered in the

---

jurisdiction over claims for breach of the statutory contract under 42 U.S.C. § 10139."

[5] If (as petitioners contend) suits for breach of the Standard Contract fall within the "original and exclusive" jurisdiction of the courts of appeals under 42 U.S.C. 10139(a), it necessarily follows that such actions may not be brought in the Court of Federal Claims. Because it is "a cardinal principle of statutory construction that repeals by implication are not favored," *Radzanower* v. *Touche Ross & Co.*, 426 U.S. 148, 154 (1976), Section 10139(a)—which contains no express reference to contract actions—should not be construed to divest the Court of Federal Claims of its jurisdiction over this category of contract suits against the federal government.

manner that Congress intended. In enacting the NWPA, however, Congress chose not to impose upon DOE a freestanding statutory obligation to accept SNF by a particular date. Rather, Congress directed DOE to enter into contracts containing specified provisions, see 42 U.S.C. 10222(a)(5), and expressly authorized DOE to establish additional contractual terms, 42 U.S.C. 10222(a)(6). In choosing that means of achieving the statutory objectives, Congress must be presumed to have intended that disputes regarding the precise nature of the parties' obligations, and the remedies for any breach thereof, would be resolved in the manner appropriate for contract claims.

## CONCLUSION

The petition for a writ of certiorari should be denied.

Respectfully submitted.

SETH P. WAXMAN
*Solicitor General*

LOIS J. SCHIFFER
*Assistant Attorney General*

JOHN A. BRYSON
*Attorney*

FEBRUARY 2000