IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

No. 98-1358

---

CONSOLIDATED EDISON COMPANY OF NEW YORK, INC., ET AL.

Petitioners,

v.

UNITED STATES DEPARTMENT OF ENERGY, ET AL.,

Respondents.

---

# RESPONDENTS' MOTION TO DISMISS PETITION

---

## STATEMENT

The five petitioners are generators and owners of spent nuclear fuel who have entered into the Standard Contract for Disposal of Spent Nuclear Fuel and/or High-Level Radioactive Waste (10 C.F.R. Part 961) ("Standard Contract"), created under Section 302(a) of the Nuclear Waste Policy Act ("NWPA"), 42 U.S.C. 10222(a). The five petitioners were also petitioners in Northern States Power Company, et al. v. United States Department of Energy, No. 97-1064 and consolidated cases, 128 F.3d 754, rehearing denied, May 5, 1998, cert. denied, 119 S.Ct. 538 (1998). In that proceeding,

the petitioners here, along with other holders of spent fuel disposal contracts, filed a petition for review and a petition for a writ of mandamus to enforce the mandate of this Court in Indiana Michigan Power Co. v. U.S. Department of Energy, 88 F.3d 1272 (1996). In its 1996 decision, this Court held that the Department of Energy has an unconditional obligation to begin disposal of spent nuclear fuel under the NWPA by January 31, 1998. After DOE gave notice on December 17, 1996, under the Standard Contract, that it would not be able to begin performance by that date and invoked the Delays Clause of the Standard Contract, the present petitioners and others petitioned for review and sought mandamus in Northern States to compel DOE to begin performance and to allow petitioners to escrow their payment of the fees required under the Standard Contract. In addition, various states and state public utility commissions who had been parties to Indiana Michigan requested similar relief.

This Court denied the broad relief requested by the petitioners, holding that they had a potentially adequate remedy under the Delays Clause of the Standard Contract for DOE's inability to begin disposal on January 31, 1998. 128 F.3d at 759. The Court did, however, issue a partial writ prohibiting DOE from relying on the Unavoidable Delays Clause of the Standard Contract. 128 F.3d at 760.

Upon consideration of post-judgment motions to enforce the mandate, in which the five petitioners here joined, this Court rejected a renewed request to compel performance of the obligation to begin disposal and to allow escrow of fee payments. The Court

declared that this relief sought contractual remedies that the Court could not provide. Order, dated May 5, 1998. The Court declared that while Section 302(a)(5)(B) of the NWPA required DOE to undertake an unconditional obligation in the Standard Contract, that statutory provision did not itself require performance. Order, dated May 5, 1998, at 2-3. Thus, the Court had no jurisdiction under Section 119(a)(1)(B) of the NWPA, 42 U.S.C. 10139(a)(1)(B), to order compliance. Ibid. The Court reiterated that it had "remitted the utilities to their remedies under the Standard Contract" (p. 3).

The petitioners here did not adhere to that directive.[1] Instead, hard on the heels of the Court's May 5, 1998, Order, the petitioners filed on July 30, 1998, this new petition for review, together with a motion for leave to file a proposed complaint attached to the motion. Petitioners, purporting to invoke this Court's authority under 42 U.S.C. 10139, seek review of various alleged failures of the respondent Department of Energy to act.

In their "Petition," petitioners seek review of an alleged failure of DOE to perform, under Section 302(a)(4) of the NWPA, 42 U.S.C. 10222(a)(4), a proper evaluation of the adequacy of the fee paid by petitioners under the statute and the Standard Contract (Petition, pages 5-6, 19-26). Petitioners contend that the January 1, 1998, deadline found

---

[1] Nor did petitioners seek further review of this judgment. Both DOE and the state petitioners petitioned for writs of certiorari, but those petitions were denied on November 30, 1998. 119 S.Ct. 538. Nor have petitioners filed actions in the United States Court of Federal Claims under the Tucker Act, 28 U.S.C. 1491, as have some of their co-petitioners in Northern States. See e.g., Yankee Atomic Electric Co. v. United States, CFC No. 98-126.

in Section 302(a)(5)(B) bound DOE to collect by that date all of the money necessary to site, license, construct and open a repository by that date and that therefore DOE should now propose to reduce the fee to zero (Petition, pages 12-15, 19-23). Petitioners allege that DOE's failure to so reduce the fee has deprived them of property without substantive due process and constitutes an unauthorized taking in violation of the Fifth Amendment (Petition, pages 23-26). Petitioners also contend that DOE's use of the fees for any purpose but a "NWPA-compliant" repository constitutes a misuse of Nuclear Waste Funds (Petition, pages 27-29).

Second, petitioners seek review of an alleged failure of DOE to establish a schedule for a repository and to set the terms and conditions for disposal of spent nuclear fuel (Petition, pages 29-32). Petitioners allege this failure violates Sections 111(b)(1) and 302(a)(6) of the NWPA, 42 U.S.C. 10131(b)(1) and 10222(a)(6).[2]

---

[2] In their proposed complaint, these parties allege that Section 302(a)(5)(B) and the Standard Contract are enforceable directly by this Court in an action brought under Section 119, and that this Court can also award specific performance and damages for alleged breach of contract (Complaint for Relief of Consolidated Edison Company of New York, et al., pages 5-6, 15-23; Complaint for Relief of Illinois Power Company, pages 3-4, 11-16). The petitioners also contend that the alleged obligations to begin disposal of their spent fuel create property interests which have been adversely affected in violation of the Due Process and Takings provisions of the Fifth Amendment, and that continued storage of spent fuel at petitioners' facilities constitutes an unauthorized constructive condemnation of that property (ibid.). For relief, petitioners seek a declaration that DOE has violated these requirements, an order requiring DOE to provide storage for petitioners' spent fuel, and to accept and to take title to the fuel at a rate consistent with congressional intent, an order requiring DOE to pay all past and future costs of delay in performance, and, with the exception of the Illinois Power Company,

(continued...)

ARGUMENT

The petition for review should be dismissed. First, petitioners, having failed three times to obtain leave from this Court to escrow their fee payments because of DOE's failure to meet the January 31, 1998, deadline, now present alternative theories for achieving essentially the same relief. The Court's prior judgment, however, is binding on petitioners and prevents them from presenting their claims that the fee should be reduced or adjusted to nothing.

Second, even if petitioners may seek review of DOE's responsibility under Section 302(a)(4) to review and adjust the fee, as appropriate, the challenge does not meet the 180-day statute of limitations in Section 119(c). The petition, filed on July 30, 1998, was too late to challenge DOE's previous fee adequacy assessment issued in October 1996, and was too soon to challenge the new assessment issued in December 1998.

Third, petitioners' claims regarding the adequacy of the fee are based on its contention that DOE was required to collect, by January 31, 1998, all of the money necessary to site, license, construct and open a repository by that date. The NWPA does not contain such a requirement, however. For that reason there is no jurisdiction under Section 119 to review the allegation that DOE has failed to comply with such a mandate. Nor have petitioners presented any colorable claims of violations of the Fifth

(...continued)
damages for material breach of contract (Compl. pp. 21-23). DOE has this date filed its Opposition to Motion for Leave to File Complaint.

Amendment's due process or taking clauses arising out of the alleged failure of DOE to adhere to such requirement.

Lastly, DOE satisfied the requirement of Section 302(a)(6) to establish in writing the terms and conditions for disposal services when it promulgated the Standard Contract more than 15 years prior to the filing of the petition here. Petitioners' claim under Section 302(a)(6), therefore, is barred by the 180-day statute of limitations found in Section 119(c). *Moreover*, contrary to petitioners' contention, nothing in the statute mandates that DOE establish a precise schedule for the acceptance of petitioners' spent fuel. Accordingly, there is no jurisdiction under Section 119 to enforce such an obligation.

**A. Petitioners may not relitigate whether they must continue to pay fees after the failure of DOE to begin disposal services on January 31, 1998**

In Counts I through III of their petition, petitioners present alternative theories to support their claim that the fee must be reduced or eliminated: an alleged violation of statutory provision (Count I), an alleged deprivation of substantive due process (Count II), and an alleged taking (Count III). For all their artful pleading, however, petitioners are simply presenting again their claim that DOE's failure to begin disposal on January 31, 1998, permits them to escrow their fee payments. The foundation for each of these counts is the allegation that Section 302(a)(5)(B) required DOE to begin disposal by that date (Pet. pp. 19, 23, 25-26). Petitioners further claim the right to have the fee payment

reduced or eliminated because of DOE's alleged violation of this requirement (ibid.). But this Court has already ruled that Section 302(a)(5)(B) itself does not require DOE to perform the obligation to begin disposal by January 31, 1998, and that permission to suspend the payment of fees as a result of the delay in performance of the contractual obligation may not be granted to petitioners in a lawsuit under Section 119.

In its Order dated May 5, 1998, the Court declared (p. 3):

> [w]hile the statute requires the DOE to include an unconditional obligation in the Standard Contract, it does not itself require performance. Breach by the DOE does not violate a statutory duty, thus, our jurisdiction to hear allegations of failure to take an action required under the NWPA, see 42 U.S.C. § 10139(a)(1)(B), does not provide a basis for a move-fuel order.

Further, the Court twice rejected the request of petitioners here for an order requiring compliance with the obligation to begin disposal and allowing escrow of the fee payments, first in its opinion, 128 F.3d at 759, and then again in its May 5, 1998 Order at p.3. In the latter order, the Court recognized that such an

> order constitute[s] equitable contract remedies against DOE and fall[s] outside the scope of the Northern States mandate. Northern States describes the nature of the DOE's obligation, which was created by the NWPA and undertaken by the DOE under the Standard Contract. It does not place the question of contract remedies in this Court, nor set up this court as a source of remedies outside the Standard Contract.[3]

---

[3] This language disposed of the State petitioners' motion to enforce the mandate, but the Court also denied the petitioners' "essentially" similar request "for the same reasons" (Order, p. 3).

The Court's judgment in Northern States is now final, and under the principles of claim and issue preclusion, petitioners are bound by that judgment. See Yamaha Corp. of America v. United States, 961 F.2d 245, 254 (D.C. Cir. 1992), cert. denied, 506 U.S. 1079 (1993); Securities Industries Ass'n v. Board of Governors, 900 F.2d 360, 363-364 (D.C. Cir. 1990); Restatement 2d, Judgments, §§ 17, 19, 27. They cannot relitigate the scope of this Court's authority to provide other remedies for the alleged failure to comply with Section 302(a)(5)(B). Petitioners could have contended in Northern States that other provisions of the NWPA, such as Section 302(a)(4), or the due process clause and taking clause of the Fifth Amendment, support the claim that petitioners could enforce Section 302(a)(5)(B) through suspension or withholding of their fee payments. Their failure to do so bars litigation of Counts I through III of this petition. See Yamaha, 961 F.2d at 254.

B. **This Court lacks jurisdiction over the claims asserted in the petition**

Even if petitioners are not barred from relitigating their claims, the petition must be dismissed for lack of jurisdiction. The only basis for subject matter jurisdiction alleged by petitioners is Section 119 of the NWPA, 42 U.S.C. 10139 (¶ 8). That section, entitled "Judicial review of agency actions," provides in pertinent part:

(a) Jurisdiction of United States courts of appeals

> (1) Except for review in the Supreme court of the United States, the United States courts of appeals shall have original and exclusive jurisdiction over any civil action--

> (A) for review of any final decision or action of the Secretary, the President, or the [Nuclear Regulatory] under this part;
>
> (B) alleging the failure of the Secretary, the President, or the [Nuclear Regulatory] Commission to make any decision, or take any action, required under this part;
>
> (C) challenging the constitutionality of any decision made, or action taken, under any provision of this part;
>
> * * * *

(c) Deadline for commencing action

> A civil action for judicial review described under subsection (a)(1) of this section may be brought not later than the 180th day after the date of the decision or action or failure to act involved, as the case may be, except that if a party shows that he did not know of the decision or action complained of (or of the failure to act), and that a reasonable person acting under the circumstances would not have known, such party may bring a civil action not later than the 180th day after the date such party acquired actual or constructive knowledge of such decision, action, or failure to act.

This section thus creates subject matter jurisdiction in the courts of appeals for the specified proceedings so long as they are brought within the statute of limitations. See Public Citizen v. NRC, 845 F.2d 1105, 1109 (D.C. Cir. 1988). In addition, contrary to petitioners' belief (Pet. 5), Section 119 does not waive the sovereign immunity of the United States. See General Electric Uranium, 764 F.2d 896, 900-904 (D.C. Cir. 1985) (characterizing Section 119 as raising a question of subject matter jurisdiction); Wisconsin Elec. Power Co. v. Dep't of Energy, 778 F.2d 1, 2-3 (D.C. Cir. 1985) (applying General Electric Uranium). Compare Whittle v. United States, 7 F.3d 1259,

1262 (6th Cir. 1993) (grant of subject matter jurisdiction in 28 U.S.C. 1331 was not waiver of sovereign immunity); Coggeshall Development Corp. v. Diamond, 884 F.2d 1, 4 (1st Cir. 1989) (same); Voluntary Purchasing Groups, Inc. v. Reilly, 889 F.2d 1380, (5th Cir. 1989) (neither jurisdictional grant in Section 113 of the Comprehensive Environmental Response Compensation and Liability Act, 42 U.S.C. 9613(b), nor 28 U.S.C. 1331 was waiver of sovereign immunity). As the Supreme Court has held, "' [t]he fact that Congress grants *jurisdiction* to hear a claim does not suffice to show Congress has abrogated all *defenses* to that claim. The issues are wholly distinct." United States v. Nordic Village, Inc., 503 U.S. 30, 38 (1992), quoting Blatchford v. Native Village of Noatak, 501 U.S. 775, 786 (1991) (emphasis in original). The only possible waiver of sovereign immunity applicable here is that found in the Administrative Procedure Act ("APA"), 5 U.S.C. 702 & 704. We show below that the court lacks jurisdiction as to each count of the petition.

1. **Count I (Alleged violation of statutory duty to reduce or eliminate the petitioners fee obligation)**

For Count I, petitioners allege that DOE was required by Section 302(a)(5)(B) to begin disposal by January 31, 1998, and to have collected by that date from petitioners sufficient fees to satisfy that obligation (Pet. 13, 19). Petitioners allege that DOE had by that date collected sufficient fees to site, construct, license and initiate operation of a repository by that date (Pet. 19). Petitioners contend that under those circumstances,

Section 302(a)(4) of the NWPA, 42 U.S.C. 1022(a)(4), required DOE to reduce the fee and that the continued collection of the fee at the existing rate violates that provision (Pet. 20-22).

Section 302(a)(4) provides in pertinent part:

> The Secretary shall annually review the amount of the fees established by [Sections 302(a)(2) & (a)(3)] to evaluate whether collection of the fee will provide sufficient revenues to offset the costs as defined in subsection (d) of this section [42 U.S.C. 10222(d)]. In the event the Secretary determines that either insufficient or excess revenues are being collected, in order to recover the costs incurred by the Federal Government that are specified in subsection (d) of this section [42 U.S.C. 10222(d)], the Secretary shall propose an adjustment to the fee to insure full cost recovery.

At the time the petition was filed, DOE had issued such reviews in July 1984, February 1985, March 1986, June 1987, November 1990, and October 1996, each of which had concluded that no adjustment was necessary (Ex. 2 to Pet.). See National Association of Regulatory Commissioners v. U.S. Dep't of Energy, 851 F.2d 1424, 1427 (D.C. Cir. 1988). In December 1998, after the petition was filed, DOE issued its most recent assessment, which again concluded, based on the latest estimate of program costs through the year 2116, that no adjustment of the fee was warranted (Ex. 1, attached to this motion).

**a. Count I is barred by the statute of limitations.** -- In order to invoke this Court's jurisdiction under Section 119(a)(1)(A) or (B), the petitioners must identify a final decision or action of DOE under the NWPA or a failure to take action required under the

NWPA. As discussed above, reliance on Section 302(a)(5)(B)'s obligation to begin disposal cannot satisfy that requirement. The only DOE action identified by petitioners is the agency's prior fee assessment, issued in October 1996. And the only other provision of the NWPA identified by petitioners is Section 302(a)(4).

This Court held in Public Citizen v. NRC, 845 F.2d 1105, 1109 (D.C. Cir. 1988), that the limitations period established in the judicial review provision of the NWPA is a "window," i.e., actions are untimely whether filed after the running of the 180-day period for filing suit or filed before that period begins to run. In that case, a public interest group petitioned the Nuclear Regulatory Commission to conduct a rulemaking on training of nuclear power plant operators to comply with Section 306 of the NWPA, 42 U.S.C. 10226, alleging that the Commission's previously issued Policy Statement on the subject did not satisfy the NWPA. Before the NRC acted on the request, the petitioners sought a writ of mandamus to compel the NRC to correct its "on-going" failure to initiate rulemaking. This Court held that Section 119 would not afford jurisdiction for this claim because to the extent it was a challenge to the Policy Statement, it was filed after the 180-day period allowed in Section 119(c). 845 F.2d at 1107-1108. The Court expressly rejected the argument that the time had not run because petitioners challenged an "on-going" failure to comply with Section 306. Ibid.

In addition, the Court also rejected the proposition that when the NRC eventually denied the petition for rulemaking, the court of appeals could assume jurisdiction to

review that denial. 845 F.2d at 1108-1109. Because the agency action sought to be reviewed had not yet occurred when the petitioners went to court, the law suit was filed prematurely and had to be dismissed. 845 F.2d at 1109-1110. This Court held that the statute did not allow the filing of petitions for review "of a suspected or future decision or action." 845 F.2d at 1109 (emphasis supplied).

The same result should be reached here. Count I attacks DOE's assessment of the fee, but at the time the petition was filed, the only agency action that would fall within Section 119 had been taken in October 1996, more than 180 days previously. Under Public Citizen, an allegation of "on-going" failure to assess the fee does not satisfy the jurisdictional prerequisite. Furthermore, in response to the petitioners' request for a revised fee assessment, DOE informed petitioners that a new assessment was in progress and would be completed by the end of 1998 (Ex. 2 to Pet.). Under Public Citizen, petitioners' window for challenging that new assessment would not open until it was issued, which occurred in December 1998, and the defect cannot be deemed cured by that event. As in Public Citizen, petitioners' attempt to seek review of DOE's implementation of Section 302(a)(4) was filed both too late and too soon.

b. **There is no statutory requirement to fix the fee based on the January 31, 1998 deadline.** -- The premise of Count I is petitioners' claim that the statute requires DOE to have collected by January 31, 1998, all the fees necessary to begin repository operations by that date. Petitioners are incorrect, and consequently, Section 119(a)(1)(B)

does not provide jurisdiction for this claim. See Nevada v. Watkins, 914 F.2d 1545, 1563-1564 (9th Cir. 1990), cert. denied, 499 U.S. 906 (1991). Petitioners can point to no express statement of such a requirement, but rely on inference built on Section 302(a)(5)(B)'s provision of a January 31, 1998, deadline for commencement of disposal services. The actual statutory provisions setting the fee, 42 U.S.C. 10222(a)(2) & (3), gauge the fee by the amount of electric power petitioners produce. Section 302(a)(4) also requires DOE to set the fee so as to insure full cost recovery for the program's costs. 42 U.S.C. 10222(a)(4). This provision implements Congress' express finding that "the costs of such disposal should be the responsibility of the generators and owners" of spent fuel. 42 U.S.C. 10131(a)(4).

In contrast, Section 302(a)(5)(B), the section relied on by petitioners, does not purport to govern DOE's setting of the fee, but instead mandated a set of contract promises premised on the existence of the fee established under Sections 302(a)(2), (3), & (4). As the Court has ruled, the enforcement of those promises must proceed under the contract process. The language of Section 302(a)(5)(B) does not support a further implication that DOE is authorized to collect only sufficient fees to have begun repository operations by January 31, 1998. Accordingly, the jurisdictional prerequisite of Section 119(a)(1)(B) is not satisfied.

2. **Counts II and III (Alleged Deprivation of Substantive Due Process and Taking)**

In Counts II and Count III, petitioners reassert the same claim as set out in Count I but allege that DOE's actions have violated petitioners' constitutional rights under the substantive due process and taking clauses of the Fifth Amendment (Pet. 23-26). The addition of the allegation of unconstitutional action does not, however, bring either count within the jurisdictional grant of Section 119.

First, these counts identify the same failure to act as required by the NWPA that forms the foundation of Count I. For the reasons stated above, there is no jurisdiction under Section 119(a)(1)(B) for review of a failure to act.

Second, Section 119(a)(1)(C), which grants jurisdiction to challenges to the constitutionality of DOE's actions under the NWPA, does not provide an independent jurisdictional basis for these claims. Both these counts are premised on an asserted property interest in the alleged statutory right to have DOE set the fee at a lower level (Pet. 23, 25). A unilateral expectation that an agency will comply with an alleged requirement of a statute, however, does not create a property right in the potential beneficiary of that compliance. See Webb's Fabulous Pharmacies, Inc. v. Beckwith, 449 U.S. 155, 161 (1980) ("a mere unilateral expectation * * * is not a property interest entitled to protection"). Moreover, at bottom petitioners's claims rest on the contractual obligation to begin disposal, a breach of which does not give rise to a due process or taking claim. See Manila Investment Co. v. Park Trammell, 239 U.S. 31, 32 (1915); Heath v. City of Fairfax, 542 F.2d 1236, 1237-38 (4th Cir. 1976); Coastal Petroleum Co.

v. Collins, 234 F.2d 319, 320 (1956); Tyler House Apartments v. United States, 38 Fed. Cl. 1, 10 (1997). See Sun Oil Co. v. United States, 215 Ct.Cl. 716, 769-770, 572 F.2d 786, 818 (1978). The lack of a cognizable property interest means that neither Count II nor Count III present a colorable constitutional challenge to DOE's actions within the jurisdiction granted by Section 119(a)(1)(C). See Morris v. Sullivan, 897 F.2d 553, 560 (D.C. Cir. 1990) (applying Bell v. Hood, 327 U.S. 678, 681-82 (1946), to uphold dismissal of due process claim brought after dismissal of statutory claim for same conduct).

3. **Count IV (Alleged Misuse of Nuclear Waste Funds)**

In Count IV, petitioners allege that DOE's continuing to expend Nuclear Waste Funds on the repository program is a misuse of those monies (Pet. 27-28). In petitioners' view, expenditures for anything other than a "NWPA-compliant" repository, *i.e.*, one that was ready to begin operations on January 31, 1998, is improper (Pet. 28).

Once again this is a claim premised on the false notion that the NWPA required DOE to have a repository in operation by January, 31, 1998, financed entirely by collections owing as of that date. No such requirement exists in the NWPA, and consequently, there is no jurisdiction under Section 119(a)(1)(B) for such a claim.[4]

[4] Contrary to petitioners' allegation, the Nuclear Waste Fund is not a "trust fund" within the meaning of 31 U.S.C. 1321. Accordingly, the appropriate limitation on the use of the funds is found only in the NWPA, 42 U.S.C. 10222(d).

4. <u>Count V (Alleged Failure to Establish Schedule, Terms and Conditions for Acceptance of Spent Nuclear Fuel</u>

Petitioners' remaining claim is that DOE has not satisfied the direction in Section 302(a)(6) to establish terms and conditions for provision of disposal services and has not established a schedule for spent fuel acceptance (Pet. 29-32). As DOE informed petitioners prior to filing their lawsuit (Ex. 2 to Petition for Review), it is DOE's position that the Standard Contract, promulgated in 1983, and other documents prepared pursuant to the Standard Contract and issued in March 1995 fulfill any requirement of Section 302(a)(6) or obligation to establish a schedule. There is no jurisdiction to review the issuance of these documents, however, because the 180-day statute of limitations found in Section 119(c) has long run. See <u>Public Citizen, supra</u>.

DOE promulgated the Standard Contract in 1983 in order to "set[] forth the contractual terms and conditions under which DOE will make available the nuclear waste disposal services." 48 Fed. Reg. 16590 (April 18, 1983). The Standard Contract does so in several of its provisions. See 10 C.F.R. 961.11: Art. IV - Responsibilities of the Parties; Art. V - Delivery of SNF and/or HLW; Art. VI - Criteria for Disposal, Art. VII - Title; Art. VIII - Fees and Terms of Payment. In addition, pursuant to Article IV.B.5, DOE has established a procedure for ranking quantities of spent fuel and allocating the projected capacity for providing services among the contract holders. The most recent Annual Priority Ranking and Annual Capacity Report was issued by DOE in March 1995

(excerpts attached hereto as Exhibit 2). These documents plainly implement the mandate of Section 302(a)(6) to establish in "writing criteria setting forth the terms and conditions under which such disposal services shall be made available." 42 U.S.C. 10222(a)(6).[5]

As the Ninth Circuit has held, a petition alleging a failure to act as required under the NWPA can only be brought if the Secretary completely fails to perform the specified action. In Nevada v. Watkins, 939 F.2d 710 (9th Cir. 1991), the court dismissed the State of Nevada's attempt to obtain review of the repository siting Guidelines issued under 42 U.S.C. 10132(a). The court concluded that issuance of the Guidelines was not a final decision or action of the Secretary subject to review under 42 U.S.C. 10139(a)(1)(A). The Court also rejected the proposition that Nevada's challenge to the Guidelines could be heard under 42 U.S.C. 10139(a)(1)(B) on the theory that they failed to conform to the requirements of the statute. 939 F.2d at 714 n.11. An action under the latter provision, the court held, would be appropriate only if DOE had failed to issue any Guidelines. "The fact that petitioners allege deficiencies in the Guidelines does not signify that the Secretary failed to act within the meaning of [42 U.S.C. 10139(a)(1)(B)]." Ibid., citing Public Citizen v. NRC, supra, 845 F.2d at 1107-1108 ("almost any objection to an agency action can be dressed up as an agency's failure to act").

---

[5] 42 U.S.C. 10131(b)(1), relied on petitioners, does not impose a direct duty on DOE to meet a specific schedule for waste acceptance. Rather, that provision states that one of the legislative purposes is to establish a schedule for development of respositories that will provide reasonable asssurance of protection for the public and the environment.

Consequently, Count V is only cognizable as a challenge under Section 119(a)(1)(A) to a *final decision or action of* DOE, *i.e.*, the promulgation of the Standard Contract and/or the issuance of the Annual Capacity Report in 1995. Petitioners' petition, however, was filed on July 30, 1998, long after the 180-day statute of limitations in 42 U.S.C. 10139(c) had run. Accordingly, Count V must be dismissed as well.

CONCLUSION

For the reasons set out above, the petition for review should be dismissed.

Respectfully submitted,

JOHN A. BRYSON
Attorney, Department of Justice
Washington, D.C. 20530
(202) 514-2740

OF COUNSEL:

MARC JOHNSTON
Deputy General Counsel
for Litigation
Department of Energy
Washington, D.C. 20585

90-5-2-3-06315
JANUARY 1999

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Respondent's Motion to Dismiss Petition was served on this 19th day of January, 1999, by first-class mail, postage prepaid, on the following counsel of record:

Tami Lyn Azorsky
McKenna & Cuneo, L.L.P.
1900 K Street, N.W.
Washington, D.C. 20006

JOHN A. BRYSON
Attorney, Department of Justice
P.O. Box 23795 (L'Enfant Plaza Station)
Washington, D.C. 20026
(202) 514-2740