# In the United States Court of Federal Claims

**No. 04-1496C**

**Filed: May 12, 2005**

* * * * * * * * * * * * * * * * * *

**BRUCE E. ZOELLER,**

**Plaintiff,** ** **Motion to Dismiss; Lease of Government Land; Breach of Contract; Fifth Amendment Taking; Election of Forum; Res Judicata.**

**v.**

**UNITED STATES,**

**Defendant.**

* * * * * * * * * * * * * * * * * *

**BRUCE E. ZOELLER**, Hiawatha, KS, pro se.

**JAMES D. COLT**, Trial Attorney; **BRYANT G. SNEE**, Assistant Director; **DAVID M. COHEN**, Director, Commercial Litigation Branch, Civil Division; **PETER D. KEISLER**, Assistant Attorney General, United States Department of Justice, Washington, D.C., for the defendant.

## O P I N I O N

**HORN, J.**

## FINDINGS OF FACT

According to his first amended complaint, plaintiff Bruce Zoeller calls himself a "Native Perennial Plant farmer and seedsman," with his principal place of business in NE Kansas/SE Nebraska. According to the plaintiff, his activities include "native plant production for seed, forage, fiber, fuel and charitable research purposes."

In 1999, the United States Army opened parcels of land at Fort Leavenworth, Kansas for lease and advertised for leasing based on competitive bidding. On June 22, 1999, the Army leased three parcels of land to plaintiff, designated lease units FE, FW and AA, containing a total of approximately 558.31 acres, for a total annual rent of $247.18. The

Lease was for a term of five years, expiring December 31, 2003. Plaintiff, however, had the option of renewing the Lease on parcel AA without competition under certain circumstances. According to the terms of the Lease, the Lease was "revocable at will by the Secretary." The parties executed a supplemental agreement on August 5, 1999, modifying the Lease to provide a five-year renewal option on all the parcels. Sometime after September 11, 2001, the Army took over several acres of parcel FE for construction related to base security and other projects. According to the plaintiff, the Army forced him to vacate immediately and did not give him ninety days advance notice, in violation of the Uniform Relocation Assistance and Real Property Acquisition Policies Act, 42 U.S.C. § 4601, et seq. (2000).

On October 4, 2002, the plaintiff proposed returning full control of the whole of parcel FE to the government for the sum of $17,550.42. According to the Joint Supplemental Submission, on January 7, 2003, the contracting officer mailed to the plaintiff a final decision, dated December 17, 2002, in which the contracting officer declined the plaintiff's proposal, but awarded $1920.00 as the complete adjustment for the plaintiff's claim for damages for lost seed crop production on the five acres. The contracting officer's final decision was received by the plaintiff on January 9, 2003. The plaintiff timely appealed the contracting officer's final decision to the Armed Services Board of Contract Appeals (ASBCA). In a bench ruling and brief opinion incorporating that ruling, Case Number 54160, dated September 30, 2003, the ASBCA determined that the plaintiff was entitled to a total recovery of $10,483.00 for the lost seed crop production for the remaining period of the Lease on the five acres of parcel FE, with respect to three harvesting seasons. Bruce E. Zoeller, ASBCA No. 54160, slip op. at 2-43 (Sept. 30, 2003) (unpub.).

In a letter dated February 21, 2003, Gary Dye, Chief of the Military Branch, Real Estate Division, Army Corps of Engineers, Kansas City, Missouri, informed the plaintiff that the Army had terminated the Lease on the remaining portion of parcel FE and parcel FW (as noted above, the Army had previously removed five acres of parcel FE from the Lease). The plaintiff also alleges that the Army destroyed his "native perennial" plants that remained on the parcels. The plaintiff appealed the partial termination to the ASBCA (Case No. 54205), contending that the Army's termination of the Lease with respect to the remaining portion of FE and parcel FW was improper, that partial termination was not authorized under the terms of the Lease and that only the Secretary of the Army had the authority to terminate the Lease. The ASBCA, however, held that the Lease was properly terminated, reasoning that terms of the Lease permitted the Army to partially terminate the Lease and that Mr. Dye, of the Real Estate Division, who exercised the termination, had the authority to partially terminate the Lease. Bruce E. Zoeller, ASBCA No. 54205, 04-1 BCA ¶ 32,486 at 160,697, aff'd on recons., ASBCA No. 54205 slip op., at 5 (Mar. 10, 2004). In its decision in Case No. 54205, the ASBCA found that the plaintiff's claim for "just compensation for seizure of its leased crops" was not before the Board because the plaintiff had elected to challenge only the propriety of the termination. Id. at 160, 697.

On April 29, 2004, the plaintiff appealed the ASBCA decision on the issue of the

partial termination of the Lease, ASBCA Case No. 54205, to the United States Court of Appeals for the Federal Circuit. The plaintiff did not appeal the decision of the ASBCA on the issue of lost seed crop production on the removed five acres of parcel FE, ASBCA Case No. 54160, to the Federal Circuit. On September 27, 2004, the plaintiff filed the instant action and filed a first amended complaint in this court on October 14, 2004. On October 25, 2004, the Federal Circuit upheld the decision of the Board in ASBCA Case No. 54205, concluding that the Army's partial termination of the Lease was proper because the terms of the Lease allowed the Army to execute a partial termination of the Lease and that Mr. Dye, of the Real Estate Division, had the authority to partially terminate the Lease. Zoeller v. Brownlee, 113 Fed. Appx. 390, 392-93 (Fed. Cir. 2004).

The nature of each of the plaintiff's claims as articulated in the complaint, and amended complaint, filed in this court are not entirely clear. The plaintiff, however, is proceeding pro se, and as discussed more fully below, the court has afforded the plaintiff some leeway regarding review of the plaintiff's claims. Upon a liberal reading of the plaintiff's first amended complaint and subsequent submissions, the plaintiff appears to be making the following claims: (1) the government's partial termination of the Lease constitutes a material breach of contract and breach of warranty, entitling the plaintiff to expectation damages equal to the value of the "native perennial" crops he would have harvested if the government had not partially terminated the Lease, or entitles him to reliance damages in the amount of the rental paid, and the value of labor and capital spent preparing the parcels for "native perennial" plant production; (2) the government's partial termination of the Lease and the destruction of the plaintiff's "native perennial" plants constitute compensable takings, entitling the plaintiff to just compensation under the Fifth Amendment to the United States Constitution, U.S. Const. amend. V; and (3) the plaintiff suffered a compensable taking when the government did not follow certain guidelines outlined in section 4651 of the Uniform Relocation Assistance and Real Property Acquisitions Policies Act, 42 U.S.C. § 4651.

The defendant moves to dismiss the plaintiff's complaint claiming lost seed crop production on the five acres of parcel FE and losses related to the partial termination of the Lease for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims (RCFC), and to dismiss the takings claim for failure to state a claim upon which relief can be granted, pursuant to RCFC 12(b)(6). The defendant argues that this court lacks subject matter jurisdiction over the plaintiff's claims because: (1) the plaintiff's claim for lost seed crops is untimely, not having been filed within twelve months of the contracting officer's final decision, as required by the Contract Disputes Act (CDA), 41 U.S.C. § 609(a) (2000); (2) the plaintiff has not made a written claim for a sum certain regarding the losses related to the partial termination of the Lease to the contracting officer as required by CDA, 41 U.S.C. § 605(a);and (3) the claims for the lost seed crops on the five acres and the propriety of the partial termination of the Lease are barred by the election doctrine, as well as the doctrine of res judicata, having been previously ruled on in Case No. 54160 (lost seed crops) by the ASBCA and in Case No. 54205 (partial termination) by the ASBCA and the United States Court of Appeals for the Federal Circuit (partial termination).

With respect to the takings claim, the defendant argues that the plaintiff has not stated a takings claim because the agency's alleged breach of a contract does not constitute a taking of a private party's property rights.

## DISCUSSION

### I. Lack of Subject Matter Jurisdiction

Defendant has filed a motion requesting dismissal of the plaintiff's first amended complaint for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1). Subject matter jurisdiction may be challenged at any time by the parties, by the court sua sponte, and even on appeal. Fanning, Phillips, Molnar v. West, 160 F.3d 717, 720 (Fed. Cir. 1998) (quoting Booth v. United States, 990 F.2d 617, 620 (Fed. Cir.), reh'g denied (1993)); United States v. Newport News Shipbuilding and Dry Dock Co., 933 F.2d 996, 998 n.1 (Fed. Cir. 1991). A plaintiff must establish jurisdiction by a preponderance of the evidence. Reynolds v. Army and Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988); Thomas v. United States, 56 Fed. Cl. 112, 115 (2003); Martinez v. United States, 48 Fed. Cl. 851, 857 (2001), aff'd in part, 281 F.3d 1376 (Fed. Cir.), reh'g denied (2002); Bowen v. United States, 49 Fed. Cl. at 675; Vanalco, Inc. v. United States, 48 Fed. Cl. 68, 73 (2000); Alaska v. United States, 32 Fed. Cl. 689, 695 (1995), appeal dismissed, 86 F.3d 1178 (Fed. Cir. 1996) (table). When construing the pleadings pursuant to a motion to dismiss, the court should grant the motion only if "it appears beyond doubt that [the plaintiff] can prove no set of facts in support of [the] claim which would entitle [the plaintiff] to relief." Davis v. Monroe County Bd. of Educ., 526 U.S. 629, 654 (1999) (quoting Conley v. Gibson, 355 U.S. 41, 46 (1957)); Brubaker Amusement Co. v. United States, 304 F.3d 1349, 1355 (Fed. Cir. 2002), cert. denied sub nom. Penn Triple S v. United States, 538 U.S. 921 (2003); Leider v. United States, 301 F.3d 1290, 1295 (Fed. Cir.), reh'g denied, reh'g en banc declined (2002), cert. denied, 538 U.S. 978 (2003); Conti v. United States, 291 F.3d 1334, 1338 (Fed. Cir. 2002), cert. denied, 537 U.S. 1112 (2003); Consol. Edison Co. v. O'Leary, 117 F.3d 538, 542 (Fed. Cir. 1997), cert. denied sub nom. Consol. Edison Co. v. Pena, 522 U.S. 1108 (1998); see also New Valley Corp. v. United States, 119 F.3d 1576, 1579 (Fed. Cir.), reh'g denied, reh'g en banc declined (1997); Highland Falls-Fort Montgomery Cent. School Dist. v. United States, 48 F.3d 1166, 1169 (Fed. Cir.), cert. denied, 516 U.S. 820 (1995); Hamlet v. United States, 873 F.2d 1414, 1416 (Fed. Cir. 1989), cert. denied, 517 U.S. 1155 (1996); W.R. Cooper Gen. Contractor, Inc. v. United States, 843 F.2d 1362, 1364 (Fed. Cir. 1988) ("When the facts alleged in the complaint reveal 'any possible basis on which the non-movant might prevail, the motion must be denied.'"); RCS Enters., Inc. v. United States, 46 Fed. Cl. 509, 513 (2000).

Pursuant to RCFC 8(a)(1) and Rule 8(a)(1) of the Federal Rules of Civil Procedure, a plaintiff need only state in the complaint "a short and plain statement of the grounds upon which the court's jurisdiction depends." RCFC 8(a)(1). However, "[d]etermination of jurisdiction starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be

interposed." Holley v. United States, 124 F.3d 1462, 1465 (Fed. Cir.), reh'g denied (1997) (citing Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1 (1983)). Nevertheless, "conclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss." Briscoe v. LaHue, 663 F.2d 713, 723 (7th Cir. 1981), aff'd, 460 U.S. 325 (1983); Bradley v. Chiron Corp., 136 F.3d 1317, 1322 (Fed. Cir. 1998) ("Conclusory allegations of law and unwarranted inferences of fact do not suffice to support a claim.").

When deciding a motion to dismiss based on a lack of subject matter jurisdiction, this court must assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the non-movant's favor. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Conley v. Gibson, 355 U.S. at 45-46; Boise Cascade Corp. v. United States, 296 F.3d 1339, 1343 (Fed. Cir. 2002), cert. denied, 538 U.S. 906 (2003); Pixton v. B & B Plastics, Inc., 291 F.3d 1324, 1326 (Fed. Cir. 2002); Commonwealth Edison Co. v. United States, 271 F.3d 1327, 1338 (Fed. Cir. 2001) (quoting New Valley Corp. v. United States, 119 F.3d at 1580), cert. denied, 535 U.S. 1096 (2002); Boyle v. United States, 200 F.3d 1369, 1372 (Fed. Cir. 2000); Perez v. United States, 156 F.3d 1366, 1370 (Fed. Cir. 1998); Highland Falls-Fort Montgomery Cent. School Dist. v. United States, 48 F.3d at 1167 (citing Gould, Inc. v. United States, 935 F.2d 1271, 1274 (Fed. Cir. 1991)); Henke v. United States, 60 F.3d 795, 797 (Fed. Cir. 1995); Hamlet v. United States, 873 F.2d at 1416; Ho v. United States, 49 Fed. Cl. 96, 100 (2001), aff'd, 30 Fed. Appx. 964 (Fed. Cir. 2002); Alaska v. United States, 32 Fed. Cl. at 695. If a defendant or the court challenges jurisdiction or the plaintiff's claim for relief, however, the plaintiff cannot rely merely on allegations in the complaint, but must instead bring forth relevant, competent proof to establish jurisdiction. McNutt v. Gen. Motors Acceptance Corp. of Ind., 298 U.S. at 189; see also Land v. Dollar, 330 U.S. 731, 735 n.4 (1947); Reynolds v. Army and Air Force Exch. Serv., 846 F.2d at 747; Catellus Dev. Corp. v. United States, 31 Fed. Cl. at 404-05. When considering a motion to dismiss for lack of subject matter jurisdiction, the court may examine relevant evidence in order to resolve any factual disputes. See Moyer v. United States, 190 F.3d 1314, 1318 (Fed. Cir. 1999); Reynolds v. Army and Air Force Exch. Serv., 846 F.2d at 747; see also Cedars-Sinai Med. Ctr. v. Watkins, 11 F.3d 1573, 1584 (Fed. Cir. 1993) ("In establishing predicate jurisdictional facts, a court is not restricted to the face of the pleadings, but may review evidence extrinsic to the pleadings, including affidavits and deposition testimony."), cert. denied, 512 U.S. 1235 (1994); Vanalco v. United States, 48 Fed. Cl. at 73 ("If the truth of the alleged jurisdictional facts is challenged in a motion to dismiss, the court may consider relevant evidence to resolve the factual dispute.").

In order for this court to have jurisdiction over a plaintiff's complaint, the Tucker Act requires that the plaintiff identify an independent substantive right enforceable against the United States for money damages. The Tucker Act states:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive

department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1) (2000). As interpreted by the United States Supreme Court, this Act waives sovereign immunity to allow jurisdiction over claims (1) founded on an express or implied contract with the United States, (2) seeking a refund from a prior payment made to the government or (3) based on federal constitutional, statutory, or regulatory law mandating compensation by the federal government for damages sustained. See United States v. Testan, 424 U.S. 392, 400, reh'g denied, 425 U.S. 957 (1976) (citing Eastport Steamship Corp. v. United States, 178 Ct. Cl. 599, 605-06, 372 F.2d 1002, 1009 (1967)); see also Palmer v. United States, 168 F.3d 1310, 1314 (Fed. Cir. 1999); Stinson, Lyons & Bustamante, P.A. v. United States, 33 Fed. Cl. 474, 478 (1995), aff'd, 79 F.3d 136 (Fed. Cir. 1996). A waiver of traditional sovereign immunity cannot be implied but must be "unequivocally expressed." INS v. St. Cyr, 533 U.S. 289, 299 n.10 (2001); United States v. Nordic Village, Inc., 503 U.S. 30, 33 (1992); Ins. Co. of the West v. United States, 243 F.3d 1367, 1372 (Fed. Cir.), reh'g denied, reh'g en banc declined (2001); Saraco v. United States, 61 F.3d 863, 864 (Fed. Cir. 1995) (quoting United States v. King, 395 U.S. 1, 4 (1969)), cert. denied, 517 U.S. 1166 (1996).

The Tucker Act, however, merely confers jurisdiction on the United States Court of Federal Claims; "'it does not create any substantive right enforceable against the United States for money damages.'" United States v. Mitchell, 445 U.S. 535, 538 (quoting United States v. Testan, 424 U.S. at 398-99), reh'g denied, 446 U.S. 992 (1980); White Mountain Apache Tribe v. United States, 249 F.3d 1364, 1372 (Fed. Cir.), reh'g denied, reh'g en banc declined (2001), aff'd, 537 U.S. 465 (2003); Cyprus Amax Coal Co. v. United States, 205 F.3d 1369, 1373 (Fed. Cir. 2000), cert. denied, 532 U.S. 1065 (2001); New York Life Ins. Co. v. United States, 118 F.3d 1553, 1555-56 (Fed. Cir. 1997), cert. denied, 523 U.S. 1094 (1998); United States v. Connolly, 716 F.2d 882, 885 (Fed. Cir. 1983) (en banc), cert. denied, 465 U.S. 1065 (1984). Individual claimants, therefore, must look beyond the jurisdictional statute for a waiver of sovereign immunity. United States v. Mitchell, 445 U.S. at 538. In order for a claim to be successful, the plaintiff "must also demonstrate that the source of law relied upon 'can fairly be interpreted as mandating compensation by the federal government for the damages sustained.'" White Mountain Apache Tribe v. United States, 249 F.3d at 1372 (quoting United States v. Mitchell, 463 U.S. 206, 216-17 (1983)); United States v. Testan, 424 U.S. at 400; Tippett v. United States, 185 F.3d 1250, 1254 (Fed. Cir. 1999) ("[T]he plaintiff must assert a claim under a separate money-mandating constitutional provision, statute, or regulation, the violation of which supports a claim for damages against the United States.") (quoting James v. Caldera, 159 F.3d 573, 580 (Fed. Cir. 1998), reh'g denied (1999)); Doe v. United States, 100 F.3d 1576, 1579 (Fed. Cir. 1996), reh'g denied, reh'g en banc declined (1997); Eastport Steamship Corp. v. United States, 178 Ct. Cl. at 607, 372 F.2d at 1009.

The court recognizes that the plaintiff is proceeding pro se and, accordingly, the plaintiff is entitled to liberal construction of his pleadings. See Haines v. Kerner, 404 U.S. 519, 520-

21 (1972) (requiring that allegations contained in a pro se complaint be held to "less stringent standards than formal pleadings drafted by lawyers"), reh'g denied, 405 U.S. 948 (1972); see also Estelle v. Gamble, 429 U.S. 97, 106 (1976), reh'g denied, 429 U.S. 1066 (1977); and in Hughes v. Rowe, 449 U.S. 5, 9-10 (1980). The United States Court of Appeals for the Federal Circuit has similarly stated: "the pleadings of pro se litigants should be held to a lesser standard than those drafted by lawyers when determining whether the complaint should be dismissed for failure to state a claim because '[a]n unrepresented litigant should not be punished for his failure to recognize subtle factual or legal deficiencies in his claims.'" Forshey v. Principi, 284 F.3d 1335, 1357 (Fed. Cir. 2002) (quoting Hughes v. Rowe, 449 U.S. 5 (1980)), cert. denied, 123 S. Ct. 110 (2002). However, "there is no duty on the part of the trial court to create a claim which [the plaintiff] has not spelled out in his pleading. 'A complaint that is . . . confusing makes it difficult for the defendant to file a responsive pleading and makes it difficult for the trial court to conduct orderly litigation . . . .'" Scogin v. United States, 33 Fed. Cl. 285, 293 (1995) (quoting Viacom, Inc. v. Harbridge Merch. Servs., Inc., 20 F.3d 771, 775-76 (7th Cir. 1994) (citations omitted)); see also Merritt v. United States, 267 U.S. 338, 341 (1925) ("The petition may not be so general as to leave the defendant in doubt as to what must be met.") (citations omitted). Therefore, the court has construed the plaintiff's filings liberally and has attempted to give its best efforts to extract the legal theories plaintiff appears to assert. "This latitude, however, does not relieve a pro se plaintiff from meeting jurisdictional requirements." Bernard v. United States, 59 Fed. Cl. 497, 499, aff'd, No. 04-5039, 2004 WL 842679 (Fed. Cir. Apr. 9, 2004), reh'g denied (2004).

### A. Lack of Subject Matter Jurisdiction – Election of Forum

The Contract Disputes Act (CDA) permits contractors to appeal a contracting officer's final decision to this court or to appeal such a decision to an agency Board of Contract Appeals. 41 U.S.C. § 609(a)(1). The contractor, however, is required to elect one or the other forum. According to the United States Court of Appeals for the Federal Circuit, which reviews appeals from this court as well as from the Boards of Contract Appeals:

> It is well established that, pursuant to the Contract Disputes Act, a contractor wishing to contest an adverse final decision by the contracting officer either may appeal the contracting officer's adverse decision to the appropriate board of contract appeals or may contest the contracting officer's decision directly to the Claims Court. This choice has given rise to a body of jurisprudence known as the "Election Doctrine." The Election Doctrine controls, as a matter of law the present appeal.
>
> * * *
>
> Once a contractor makes a binding election under the Election

> Doctrine to appeal the contracting officer's adverse decision to the appropriate board of contract appeals, that election must stand and the contractor can no longer pursue its claim in the alternate forum.

Nat'l Neighbors, Inc. v. United States, 839 F.2d 1539, 1541-42 (Fed. Cir. 1988) (citing Tuttle/White Constructors, Inc. v. United States, 228 Ct. Cl. 354, 656 F.2d 644, 647, 649 (1981)) (footnote omitted); see also Am. Telecom Corp. v. United States, 59 Fed. Cl. 467, 471 (2004) ("The 'in lieu of' language in section 609(a) clearly indicates that the contractor has a choice of forums but does not allow the contractor to pursue its claims before both forums.") (citing Tuttle/White Constructors, Inc. v. United States, 228 Ct. Cl. at 361, 656 F.2d at 649). For the election doctrine to apply, the contractor's choice of forum must be knowing, informed, and voluntary.[1] Bonneville Assocs. v. United States, 43 F.3d 649, 655 (Fed. Cir. 1994).

The plaintiff's claim for lost seed crop production on the five acres of parcel FE that the Army initially removed from the Lease is barred by the election doctrine because prior to filing a complaint in this court, the plaintiff had already elected to litigate that claim before the ASBCA in Case No. 54160. Additionally, the claim that the partial termination of the Lease constitutes a breach of contract similarly is barred by the election doctrine because the plaintiff already had litigated the issue of whether the Lease was properly terminated before the ASBCA (Case No. 54205) and the United States Court of Appeals for the Federal Circuit, Zoeller v. Brownlee, 113 Fed. Appx. 390.

The election doctrine also bars the plaintiff's claim for breach of "warranty."[2] In the

---

[1] There is no reason to believe, and the plaintiff does not argue, that his election to appeal the contracting officer's decision to the ASBCA instead of to this court was not knowing, informed and voluntary. Moreover, the contracting officer's final decision partially terminating the Lease specifically advised the plaintiff of his choice of forums. Under the heading "Right to Appeal," the contracting officer's decision states: "Instead of appealing to the agency board of contract appeals, you may bring an action directly in the United States Court of Federal Claims within 12 months of the date you receive this decision."

[2] The plaintiff's complaint includes a copy of the Army's "Notice of Availability to Lease Government Property," which contains the following provision under the heading "Terms and Conditions of Leasing":

> g. Warranty The property described herein will be leased subject to the provisions and conditions of the Notice of Availability and the attached lease form. . . . The Government makes no guaranty or warranty, either expressed or implied, with respect to the property. **IT IS TO BE UNDERSTOOD AND AGREED THAT THERE IS NO WARRANTY OF ANY CHARACTER OTHER THAN THAT EXPRESSLY STATED IN THIS NOTICE OF**

complaint filed in this court, the plaintiff's characterization of a breach of "warranty" to continue utilizing government property appears to be simply another way of stating his claim that the Army breached its Lease with the plaintiff through partial termination of the Lease. The plaintiff has already presented this issue to the ASBCA in Board Case No. 54205, and to the Federal Circuit in Zoeller v. Brownlee, 113 Fed. Appx. 390. Under the election doctrine, the plaintiff is barred from re-litigating in this court claims previously litigated at the Board and in the Federal Circuit.

**B. Lack of Subject Matter Jurisdiction – Res Judicata**

In the alternative, the plaintiff's suit in this court is barred pursuant to the doctrine of res judicata. Under the doctrine of res judicata, a suit is barred "if there has been previous litigation: (1) involving the same claim, (2) between the same parties or their privies, and (3) which resulted in a final judgment on the merits by a court of competent jurisdiction." Schickler, Tmd, U.S.A., Inc. v. United States, 54 Fed. Cl. 264, 270 (2002) (citing Blonder-Tongue Lab., Inc. v. University of Ill. Found., 402 U.S. 313, 323-24 (1971)); see also Jet, Inc. v. Sewage Aeration Sys., 223 F.3d 1360, 1362 (Fed. Cir.), reh'g en banc denied (2000). The application of res judicata "extends beyond those causes of action expressly included by the plaintiff in his claim to cover causes of action which were not but should have been raised in the prior litigation." Brown v. United States, 3 Cl. Ct. 31, 41 (1983), aff'd, 741 F.2d 1374 (Fed. Cir. 1984); see also United Tech. Corp. v. Chromalloy Gas Turbine Corp., 189 F.3d 1338, 1344 (Fed. Cir. 1999). Moreover, if certain requirements are met, the final determination of an administrative agency on a plaintiff's claims is accorded res judicata. "When an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply res judicata to enforce repose." Astoria Fed. Sav. & Loan Ass'n Solimono, 501 U.S. 104, 107 (1991) (quoting United States v. Utah Constr. & Mining Co., 384 U.S. 394, 422 (1966)).

The plaintiff's claims that the partial termination of the Lease constitutes a breach of contract and breach of the government's warranty that the plaintiff could renew the Lease are barred by res judicata because the plaintiff had already elected to litigate the issue of whether the Lease was properly terminated before the ASBCA and in United States Court of Appeals for the Federal Circuit. As to the plaintiff's claim for compensation for loss of seed crop production on the five acres of parcel FE that were initially removed from the Lease, the plaintiff chose to pursue the claim with the ASBCA, which has already rendered a final determination. Therefore, both of these claims for wrongful partial termination of the Lease and compensation for lost seed crops are barred in this court because those claims have been the subject of judgments on the merits by competent fora.

---

**AVAILABILITY.**

**C. Lack of Jurisdiction - Untimely Claim For Lost Seed-Crop Production**

Under the Tucker Act and Contract Disputes Act (CDA), this court has jurisdiction to adjudicate contractor claims against the government. See 28 U.S.C. § 1491(a), 41 U.S.C. § 601, et seq. (2000). A contractor, however, must first file a written claim with a contracting officer before invoking this court's jurisdiction to review the claim. See 41 U.S.C. §§ 605(a), 609(a)(1). Additionally, an appeal of a contracting officer's final decision to this court must be filed within twelve months of the receipt of the contracting officer's final decision. See 41 U.S.C. § 609(a)(3); Borough of Alphine v. United States, 923 F.2d 170, 172 (Fed. Cir. 1991).

Not only was the plaintiff's claim for lost seed crop production on the removed five acres of parcel FE barred by election and res judicata, but, alternatively, the plaintiff's claim in this regard, in this court, also is untimely. In the plaintiff's response to the government's motion to dismiss, the plaintiff does not respond to the government's argument of untimeliness. According to the plaintiff's first amended complaint, the plaintiff filed a claim with the contracting officer for the lost seed crops on October 4, 2002, and the contracting officer mailed a final decision covering this claim, dated December 17, 2002, to the plaintiff on January 7, 2003, which was received by the plaintiff on January 9, 2003. The plaintiff then appealed this issue to the ASBCA in Case No. 54160 and the Board rendered a decision on the plaintiff's claim granting the plaintiff $10,483.00 for the lost seed production. Bruce E. Zoeller, ASBCA No. 54160, slip op. at 2-43 (Sept. 30, 2003) (unpub.). The twelve-month period to file an appeal in this court began to run upon receipt of the contracting officer's final decision and the plaintiff's appeal, should have been filed no later than January, 2004. The plaintiff's complaint for lost seed crop production on the five acres, filed in the United States Court of Federal Claims on September 24, 2004, even if not barred on other grounds, would have been untimely, since it was filed more than a year after the contracting officer's final decision, received by the plaintiff on January 9, 2003.

**D. Lack of Subject Matter Jurisdiction - the Absence Of a Written Claim For Losses Resulting From the Partial Termination**

The Contract Disputes Act provides that "[a]ll claims by a contractor against the government relating to a contract shall be in writing and shall be submitted to the contracting officer for a decision." 41 U.S.C. § 605(a). Additionally, the Disputes Clause in the plaintiff's Lease defines a claim as "a written demand or written assertion by the Lessee seeking, as a matter of right, the payment of money in a sum certain, the adjustment of interpretation of lease terms, or other relief arising under or relating to this lease." In ASBCA Case No. 54205, only the issue of the "propriety of the partial termination" was properly raised. Bruce E. Zoeller, ASBCA No. 54205, 04-1 BCA ¶ 32,486 at 160,697. The Board noted that Mr. Zoeller reserved the right to make a future claim to the contracting officer. Id. at 160,696. Plaintiff then could return to the ASBCA should the contracting officer deny the claim. See Zoeller v. Brownlee, 113 Fed. Appx. at 393. There is no evidence in the record before the court that the plaintiff ever made such a written claim to a contracting officer for such losses

related to the partial termination of the Lease. The plaintiff has stated that his complaint to this court constitutes his claim for the related losses. These losses include lost seed crop production and the loss of his destroyed native perennial plants. However, the plaintiff's claim for these losses as a result of the partial termination is not properly before this court because the plaintiff has not made the requisite written demand for a certain sum to the appropriate agency contracting officer. See 41 U.S.C. 605(a).

## II. Failure To State A Claim

In addition, a court may dismiss a plaintiff's claims for failure to state a claim when no additional proceedings would enable the plaintiff to prove facts entitling him or her to prevail. New York Life Ins. Co v. United States, 190 F.3d 1372, 1377 (Fed. Cir. 1999); Constant v. United States, 929 F.2d 654, 657 (Fed. Cir.) ("Nor is due process violated by a dismissal, even sua sponte, for failure to state a claim. . . . [N]o additional proceedings could have enabled Constant to prove any set of facts entitling him to prevail on his claim for relief."), cert. denied, 501 U.S. 1206 (1991); see also Phonometrics, Inc. v. Hospitality Franchise Sys., Inc., 203 F.3d 790, 793-94 (Fed. Cir. 2000) (the particular facts of the case did not support a sua sponte dismissal for failure to state a claim). The court should dismiss a case for failure to state a claim only if "it appears beyond doubt that [plaintiff] can prove no set of facts in support of [its] claim which would entitle [it] to relief." Davis v. Monroe County Bd. of Educ., 526 U.S. 629, 654 (1999) (quoting Conley v. Gibson, 355 U.S. 41, 46 (1957)); see also Boyle v. United States, 200 F.3d 1369, 1372 (Fed. Cir. 2000); New Valley Corp. v. United States, 119 F.3d 1576, 1579 (Fed. Cir.), reh'g denied, en banc suggestion declined (1997); Consolidated Edison Co. v. O'Leary, 117 F.3d 538, 542 (Fed. Cir. 1997), cert. denied, 522 U.S. 1108 (1998); Gould, Inc. v. United States, 67 F.3d 925, 929-30 (Fed. Cir. 1995); Highland Falls-Fort Montgomery Cent. School Dist. v. United States, 48 F.3d 1166, 1169 (Fed. Cir.), cert. denied, 516 U.S. 820 (1995); Hamlet v. United States, 873 F.2d 1414, 1416 (Fed. Cir. 1989); W.R. Cooper Gen. Contractor, Inc. v. United States, 843 F.2d 1362, 1364 (Fed. Cir. 1988) ("When the facts alleged in the complaint reveal 'any possible basis on which the non-movant might prevail, the motion [to dismiss] must be denied.'"); RCS Enterps., Inc. v. United States, 46 Fed. Cl. 509, 513 (2000).

Pursuant to RCFC 8(a)(1), as well as Federal Rules of Civil Procedure 8(a)(1), a plaintiff need only state in the complaint "a short and plain statement of the grounds upon which the court's jurisdiction depends." RCFC 8(a)(1). However, "[d]etermination of jurisdiction starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed." Holley v. United States, 124 F.3d 1462, 1465 (Fed. Cir.), reh'g denied (1997) (citing Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1 (1983)). "[C]onclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss." Briscoe v. LaHue, 663 F.2d 713, 723 (7th Cir. 1981), aff'd, 460 U.S. 325 (1983); see also Bradley v. Chiron Corp., 136 F.3d 1317, 1322 (Fed. Cir. 1998) ("Conclusory allegations of law and unwarranted inferences of fact do not suffice to support a claim").

When deciding on a motion to dismiss based on failure to state a claim, this court must assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the non-movant's favor. See Conley v. Gibson, 355 U.S. at 45-46; Boyle v. United States, 200 F. 3d at 1372; Perez v. United States, 156 F.3d 1366, 1370 (Fed. Cir. 1998); Henke v. United States, 60 F.3d 795, 797 (Fed. Cir. 1995); Highland Falls-Fort Montgomery Cent. School Dist. v. United States, 48 F.3d at 1667 (citing Gould, Inc. v. United States, 935 F.2d 1271, 1274 (Fed. Cir. 1991)); Hamlet v. United States, 873 F.2d at 1416; Ho v. U.S., 49 Fed. Cl. 96, 100 (2001), aff'd, 30 Fed. Appx. 964 (2002); Alaska v. United States, 32 Fed. Cl. 689, 695 (1995), appeal dismissed, 86 F.3d 1178 (Fed. Cir. 1996) (table). If a defendant or the court challenges jurisdiction or plaintiff's claim for relief, however, the plaintiff cannot rely merely on allegations in the complaint, but must instead bring forth relevant, competent proof to establish jurisdiction. McNutt v. Gen. Motors Acceptance Corp. of Ind., 298 U.S. 178, 189 (1936); see also Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 747 (Fed. Cir. 1988); Catellus Dev. Corp. v. United States, 31 Fed. Cl. 399, 404-05 (1994). "A motion to dismiss under Rule [12(b)(6)] for failure to state a claim upon which relief can be granted is appropriate when the facts asserted by the claimant do not under the law entitle him to a remedy." Perez v. United States, 156 F.3d at 1370.

**A. Uniform Relocation Assistance and Real Property Acquisitions Policies Act**

As part of his alleged takings claim, the plaintiff argues that he suffered a compensable taking when the government failed to follow certain guidelines outlined in section 4651 of the Uniform Relocation Assistance and Real Property Acquisition Policies Act (the Act), 42 U.S.C. § 4651. The plaintiff alleges that the government did not comply with the guidelines under the Act when it failed to: (1) inform the plaintiff of his rights under the Act; (2) make every effort to reacquire the parcels by negotiation with the plaintiff; and (3) provide the plaintiff with ninety (90) days notice to remove his "native perennial" plants from the parcels. Section 4651 of the Act provides that, in order "to promote public confidence in Federal land acquisition practices, heads of Federal agencies shall, to the greatest extent practicable, be guided" by certain listed policies. Two of the listed policies are: "[t]he head of a Federal agency shall make every reasonable effort to acquire expeditiously real property by negotiation" and the head of a Federal agency shall, "to the greatest extent practicable," provide at least ninety (90) days' written notice to a person the agency requires to move from real property once the property is acquired. 42 U.S.C. § 4651(1), (5).

In the first place, the Uniform Relocation Assistance and Real Property Acquisitions Policy Act is directed at acquisition by the federal government of an individual's land. In this case, no realty was acquired from the plaintiff; the plaintiff was leasing government owned property. Therefore, the provisions of the Act cited by the plaintiff appear to be inapplicable to the present facts. Furthermore, the Act does not mandate money damages for the failure of a federal agency to comply with the guidelines provided in the Act, a requirement discussed above.

In addition, judicial review of a federal agency's actions under section 4651 is foreclosed by section 4602(a), which provides that:

> (a) The provisions of section 4651 of this title create no rights or liabilities and shall not affect the validity of any property acquisitions by purchase or condemnation. (b) Nothing in this chapter shall be construed as creating in any condemnation proceedings brought under the power of eminent domain, any element of value or of damage not in existence immediately prior to January 2, 1971.

42 U.S.C. § 4602(a); see also Nat'l Passenger Corp. v. Fabel Enter., Inc., 931 F.2d 438, 443 (7th Cir. 1991) ("[F]ederal courts lack jurisdiction over actions seeking enforcement of policies outlined in 42 U.S.C. §§ 4651 et seq.") (citing Rhodes v. Chicago, 516 F.2d 1373, 1378 (7th. Cir. 1975) (concluding that section 4602 precludes judicial review of an agency's actions under section 4651)); United States v. 410.69 Acres of Land, etc., 608 F.2d 1073, 1074 n.1 (5th Cir. 1979) (Section 4651 is "no more than a statement by Congress of what it perceives to be the preferred method of dealing with landowners when the Government wants to acquire land."); Paramount Farms, Inc. v. Morton, 527 F.2d 1301, 1306 (7th Cir. 1975) (concluding that "Congress never intended to permit judicial review of agency action taken or omitted pursuant to guidelines in section 4651 of the Policy Act."). Because the Uniform Relocation Assistance and Real Property Acquisitions Policies Act involves procedures to deal with landowners and not lessees, because the Act does not mandate monetary compensation for a federal agency's failure to comply with section 4651 of the Act, and because section 4602(a) forecloses judicial review of an agency's action under section 4651, this court does not possess jurisdiction to adjudicate the plaintiff's claim that he suffered a compensable taking due to the government's failure to comply with section 4651 of the Uniform Relocation Assistance and Real Property Acquisitions Policies Act.

**B. Alleged Taking for Partial Termination of the Lease and Destruction Of Plants**

The Takings Clause of the Fifth Amendment to the United States Constitution provides in pertinent part: "nor shall private property be taken for public use without just compensation." U.S. Const. amend. V. The Fifth Amendment guarantee is "designed to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." Armstrong v. United States, 364 U.S. 40, 49 (1960). There is a "clear principle of natural equity that the individual whose property is thus sacrificed [for the public good] must be indemnified." Pumpelly v. Green Bay & Mississippi Canal Co., 80 U.S. 166, 179 (1871).

The plaintiff contends that both the government's partial termination of the Lease and destruction of his native perennial plants constitute compensable takings, entitling him to just

compensation. A beach of contract scenario does not necessarily foster a takings claim. In Hughes Communications Galaxy, Inc. v. United States, the Federal Circuit provided the following explanation:

> If, as Hughes asserts, the Government's breach of the LSA [Launch Services Agreement] was a taking under the Fifth Amendment, then nearly all Government contract breaches would give rise to compensation under the Fifth Amendment. This court's predecessor has cautioned against commingling takings compensation and contract damages. Indeed, "the concept of a taking as a compensable claim theory has limited application to the relative rights of party litigants when those rights have been voluntarily created by contract. In such instances, interference with such contractual rights generally gives rise to a breach claim not a taking claim." Sun Oil Co. v. United States, 215 Ct. Cl. 716, 572 F.2d 786, 818 (1978) (citation omitted). Taking claims rarely arise under government contracts because the Government acts in its commercial or proprietary capacity in entering contracts, rather than in its sovereign capacity. Id. Accordingly, remedies arise from the contracts themselves, rather than from the constitutional protection of private property rights. Id.

Hughes Communications Galaxy, Inc. v. United States, 271 F.3d 1060, 1070 (Fed. Cir. 2001), reh'g and reh'g en banc denied (2002).

In Sun Oil Co. v. United States, the oil companies, which had executed oil and gas leases with the United States Department of the Interior, alleged that the government unreasonably delayed their efforts to install a drilling platform on one tract, and would not approve installation of a drilling platform on another tract, constituting breach of the leases and entitling the companies to damages, and to just compensation for a taking of their leasehold rights, in violation of the Fifth Amendment to the United States Constitution. Sun Oil Co. v. United States, 215 Ct. Cl. at 725, 572 F.2d at 792-93. The United States Court of Claims found that the government's refusal to permit installation of the platform on the second tract was a breach of the lease, but not a taking. Id. at 817-19. In coming to this conclusion, the United States Court of Claims considered, at some length, the just compensation takings theory in the context of a lease:

> [I]t would seem that the taking claim is an alternate claim to the breach of lease contract claim. Therefore, recovery on one claim theory would seem to preclude recovery on the other claim theory . . . .

As a general proposition, a leasehold interest is property, the taking of which entitles the leaseholder to just compensation for the value thereof. Further, authorized governmental actions can entail such an actual invasion of property rights that a constitutional taking can be implied.

* * *

It is established that not every deprivation of use, possession, or control of property is a taking. One must look to the character and extent of any interference with property rights whenever a taking claim is asserted. More importantly, the concept of a taking as a compensable claim theory has limited application to the relative rights of party litigants when those rights have been voluntarily created by contract. In such instances, interference with such contractual rights generally gives rise to a breach claim not a taking claim.

Plaintiffs and defendant entered into a lease agreement which set forth the rights and obligations of the parties . . . . It has been said that when defendant "comes down from its position of sovereignty and enters the domain of commerce, it submits itself to the same laws that govern individuals there." Defendant's lease operations in the Channel, therefore, more properly represent activity by it in a proprietary capacity rather than a sovereign capacity. Accordingly, under the lease contract with plaintiffs, defendant obtained certain rights and incurred certain responsibilities as did plaintiffs. Remedies for violation of any of their lease rights by plaintiffs must be directed at defendant in its proprietary capacity and not in its sovereign capacity.

Before a taking can be established, it must be clear that there was an intent by defendant to take private property. Such an intent can be implied from the facts. On this record, . . . it is difficult to discern an intent on the part of defendant to take temporarily plaintiffs' property. The interferences with plaintiffs' lease rights were grounded on matters that, at times material herein, bespoke an effort to operate within the framework of the lease and applicable regulations, not to take plaintiffs' property rights. If defendant's interferences were unjustified or unreasonable, plaintiffs' rights emanate from the lease agreement, not the Fifth Amendment.

> Finally, the actions of the government representative on which a taking claim is premised must be authorized either expressly or by necessary implication, by some valid enactment of Congress. . . .

Sun Oil Co. v. United States, 215 Ct. Cl. at 769-71, 572 F.2d at 818-19 (citations omitted).

The government's breach of a contract does not effect a taking of a private party's contractual rights if the government does not deprive the private party of its contractual rights stemming from the breach of a contract. See Castle v. United States, 301 F.3d 1328, 1341-1342 (Fed. Cir. 2002), reh'g and reh'g en banc denied, 64 Fed. Appx. 227 (Fed. Cir. 2003), cert. denied, 539 U.S. 925 (2003). In Castle, the United States Court of Appeals for the Federal Circuit stated:

> The government did not deprive the plaintiffs from a contractual remedy . . . . [n]or . . . remove the plaintiffs' cause of action for damages. We agree with the Court of Federal Claims that the plaintiffs retained the full range of remedies associated with any contractual property right they possessed. Consequently, we hold that even assuming the [breaching of a contract], it did not constitute a taking of the contract.

Castle v. United States, 301 F.3d at 1342.

In the case currently before this court, the government did not cause a taking or condemnation of the plaintiff's land. In fact, the Lease entered into was on government owned property. The plaintiff's claims for economic damages and a breach of his right to remove his plants, constituting an alleged taking, arose out of a termination of a Lease the defendant entered into with the plaintiff. The Lease between the plaintiff and the government prescribed the contract rights of the parties upon termination. The Lease provided in pertinent part:

> In the event the United States revokes this lease . . . the Lessee shall have the right to harvest, gather and remove such crops as may have been planted or grown on said premises, or the District Engineer may require the Lessee to vacate immediately and, if funds are available, compensation will be made to the Lessee for the value of the remaining crops.

Therefore, the parties to the Lease contemplated and provided a method of resolving damages upon termination of the Lease, by which a lessee could seek compensation under the Lease for the remaining crops. By entering into the Lease, the plaintiff agreed to be compensated under the terms of the Lease if unable to remove the crops he planted on the parcels. Moreover, both the ASBCA and the United States Court of Appeals for the Federal Circuit determined that the termination was proper.

The government has not prevented the plaintiff from seeking contractual remedies for losses related to the partial termination, including damages for the destroyed plants, pursuant to the Lease and the Contract Disputes Act. See 42 U.S.C. § 605(a). In fact, the plaintiff did pursue his breach of contract case before the ASBCA and already has obtained partial compensation for lost crops from the ASBCA in Case No. 54160. In addition, in Case No. 54205, in which the plaintiff challenged the partial termination, the ASBCA validated the partial termination, but noted that the plaintiff could return to the ASBCA once he had filed a claim for the seizure of the remainder of his crops with the contracting officer, should the contracting officer deny the claim. See discussion in Zoeller v. Brownlee, 113 Fed. Appx. at 393. The plaintiff never brought the claims to the ASBCA for redress. In these circumstances, not only has the plaintiff not been deprived of his contractual rights to possible compensation, but under the authority of Sun Oil and its progeny, a takings claim will not lie.

Pursuant to the Contract Disputes Act, 41 U.S.C. § 605(a), the plaintiff must first make a written claim for a sum certain to the contracting officer for the losses related to the partial termination of the Lease, including a claim for the plants he was unable to remove from the parcels. If dissatisfied with the contracting officer's final decision, the plaintiff has the right to file a timely appeal of the decision either to the ASBCA or to this court.

## CONCLUSION

For the foregoing reasons, the defendant's motion to dismiss all counts of the plaintiff's first amended complaint is **GRANTED**. The clerk's office shall enter **JUDGMENT** for the defendant consistent with this opinion. Costs to the defendant.

**IT IS SO ORDERED.**

**MARIAN BLANK HORN**

**Judge**