IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| CONSOLIDATED EDISON COMPANY OF NEW YORK, INC. Plaintiff, | ) | |
| v. | ) | No. 04-0033C (Judge Lettow) |
| UNITED STATES OF AMERICA, Defendant. | ) | |

DEFENDANT'S RENEWED MOTION TO CONSOLIDATE OR, IN THE ALTERNATIVE, FOR ISSUANCE OF A SUMMONS PURSUANT TO RCFC 14(a) AND NOTICE PURSUANT TO RCFC 14(b)

Pursuant to Rules 42 and 42.1 of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, respectfully renews its request that the Court consolidate two cases, Consolidated Edison Company of New York, v. United States, No. 04-0033C (Fed. Cl.), and Entergy Nuclear Indian Point 2 v. United States, No. 03-2622C (Fed. Cl.). Both of these cases are currently pending before the same judge and involve the assignor and assignee of the same contract with the Department of Energy ("DOE"). Further, both cases currently are in the same procedural posture. Consolidation will promote the efficient administration of justice and prevent the potential for inconsistent rulings between the two cases.[1] If the Court declines to consolidate the Consolidated Edison and Entergy Nuclear Indian Point 2 cases, we respectfully request that the Court: (1) issue a summons pursuant to RCFC 14(a) to join Entergy Nuclear Indian Point 2 ("ENIP") as a third-party defendant upon a contingent claim in Consolidated Edison; and (2) issue binding notice pursuant to RCFC 14(b)

[1/] The Government is filing this motion in both the Consolidated Edison and Entergy Nuclear Indian Point 2 cases.

and the Contract Settlement Act, 41 U.S.C. § 114(b), to ENIP in Consolidated Edison and to Consolidated Edison Company of New York ("ConEd") in Entergy Nuclear Indian Point 2.

BACKGROUND

ConEd was the sole owner and operator of the Indian Point nuclear electric generating facilities ("Indian Point") from the 1960s through September 6, 2001. ConEd Compl. ¶ 2. On June 17, 1983, ConEd and DOE entered into the Standard Contract for Disposal Of Spent Nuclear Fuel And/Or High-Level Radioactive Waste ("Standard Contract"), 10 C.F.R. § 961.11 (1983). ConEd Compl. ¶ 32. The Standard Contract required DOE to begin "[t]he services to be provided by DOE" under the Standard Contract "not later than January 31, 1998." 10 C.F.R. Part 961, Art. II. Although the Standard Contract provided that the Government would begin its program of accepting spent nuclear fuel ("SNF") from the commercial industry by January 31, 1998, 10 C.F.R. § 961.11, Art. II, the Standard Contract did not specify any mandatory minimum "rate" at which DOE would be required to accept the industry's SNF. Rather, the Standard Contract contained a contractual mechanism by which DOE would develop a queue for SNF acceptance that would determine the particular time DOE would accept SNF from each Standard Contract holder.[2]

ConEd sold Indian Point to Entergy Nuclear Indian Point 2, LLC ("ENIP") on September 6, 2001. ConEd Compl. ¶ 4; ENIP Compl. ¶ 2. As part of the sale, ConEd assigned its contract with DOE to ENIP, "subject to a reservation of certain rights and claims." ConEd Compl. ¶ 4; ENIP Compl. ¶ 2. Indeed, the letter ConEd provided to DOE notifying it of the assignment

[2] All commercial nuclear power reactor owners entered into a Standard Contract with DOE, and the basic terms of each Standard Contract are virtually identical.

states: "Con Edison has, effective September 6, 2001, assigned Con Edison's rights and obligations under the Contract to Entergy, with the exception of all claims and causes of action in respect of damages to property or economic loss related to or pertaining to the Department of Energy's breaches or defaults under the Contract accrued as of September 6, 2001, whether relating to periods prior to or following September 6, 2001." Exhibit 1 (emphasis supplied).

On November 5, 2003, ENIP filed a three-count complaint in the Court of Federal Claims. ENIP claimed that DOE breached the Standard Contract, and sought damages for the costs it allegedly incurred to provide for on-site storage of SNF as a result of the breach. ENIP Compl. ¶ 21. ENIP also claimed that it had, and continues to incur, damages, "including but not limited to regulatory costs associated with efforts to ensure sufficient on-site storage capacity or alternatively off-site storage capacity to permit continued operation of its operating nuclear plant." Id. Based upon DOE's alleged breach of the Standard Contract, ENIP also claimed breach of the implied covenant of good faith and fair dealing and a taking without just compensation. Id. at ¶¶ 26-34.

On January 13, 2004, almost six years after DOE allegedly breached its Standard Contract with ConEd, ConEd filed a three-count complaint in the Court of Federal Claims. Like ENIP, ConEd asserted that DOE breached the Standard Contract, and sought damages based upon the breach. ConEd's alleged damages as a result of the breach included capital and operation and maintenance costs associated with SNF storage, as well as a diminution in the value of Indian Point at the time of the sale to ENIP. ConEd Compl. ¶ 69; 77-78. Also, like ENIP, ConEd asserted a breach of the implied covenant of good faith and fair dealing and an uncompensated taking. Id. at ¶¶ 83-93.

On August 5, 2004, the Government filed a motion to reassign ConEd and ENIP to a single judge and to consolidate the two cases. Although the Court granted the Government's motion to reassign ConEd and ENIP to a single judge, it denied the Government's motion to consolidate the two cases without prejudice, and explained:

> Overall, the balance of factors currently tips against consolidation, largely because the ENIP case is procedurally at a significantly more advanced stage. Judicial efficiency would not be served by consolidation at this time, and ENIP might be prejudiced by the delay that would ensure from consolidation. The court is nonetheless cognizant of the facts that further development of both cases may reduce the procedural disparity and that consolidation may be appropriate at some future time. Accordingly, consolidation will be denied without prejudice.

Entergy Nuclear Indian Point 2 v. United States, 62 Fed. Cl. 798, 803 (2004).

On March 9, 2005, the Court granted ENIP's motion for partial summary judgment on liability for partial breach of the Standard Contract. Entergy Nuclear Indian Point 2 v. United States, 64 Fed. Cl. 515, 526 (2005). On August 24, 2005, the Court denied the Government's motion to dismiss ConEd's complaint. Consolidated Edison Co. of New York v. United States, No.04-0033C, 2005 WL 2036246 (Fed. Cl. Aug. 24, 2005). On September 19, 2005, the Government filed an answer in Consolidated Edison.[3]

---

[3/] The Government previously had filed an answer in ENIP on February 23, 2004. Entergy Nuclear Indian Point, 62 Fed. Cl. at 800.

## DISCUSSION

### I. CONSOLIDATION IS APPROPRIATE UNDER THE CIRCUMSTANCES BECAUSE BOTH CASES INVOLVE MULTIPLE COMMON FACTUAL AND LEGAL ISSUES, AND, IN THE ABSENCE OF CONSOLIDATION, THERE IS A SUBSTANTIAL RISK OF INCONSISTENT JUDGMENTS BETWEEN THE CASES

#### A. Standards For Consolidation

Motions to consolidate are governed by RCFC 42, which provides the following when actions involve a common question of law or fact:

> When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all matters in issue in the actions; it may order all the actions consolidated; and it may make any such orders concerning proceedings therein as may tend to avoid unnecessary costs or delays.

RCFC 42(a).

In determining whether consolidation is appropriate, the Court must weigh the interest of judicial economy against the potential for delay, confusion, and prejudice that may result from consolidation. See Karuk Tribe of California v. United States, 27 Fed. Cl. 429, 433 (1993). Indeed, "[o]ne of the primary objectives of consolidation is to prevent separate actions from producing conflicting results, which can occur when both cases require judicial determinations of the same facts." Id. (quoting Bank of Montreal v. Eagle Assocs., 117 F.R.D. 530, 532 (S.D.N.Y. 1987); see Cable Belt Conveyors, Inc. v. Alumina Partners of Jamaica, 669 F. Supp. 577, 581 (S.D.N.Y. 1987) (consolidation was appropriate where different factual findings between the two cases could result in inconsistent damages awards).

Courts have held that, where two plaintiffs have sued the same defendant, alleging the same misconduct, and answered with the same defenses, the two cases share "common issues of

law and fact," justifying consolidation. Harris v. L&L Wings, Inc., 132 F.3d 978, 981 n.2 (4th Cir. 1997); see Allfirst Bank v. Progress Rail Serv. Corp., 178 F. Supp. 2d 513, 520 (D. Md. 2001) (where the parties are the same, the claims and defenses are identical, and the same contract must be construed in each case, that consolidation is appropriate).

The decision whether to consolidate two cases is within the discretion of the Court. Karuk Tribe, 27 Fed. Cl. at 433; see Entergy Nuclear Indian Point 2, LLC v. United States, 62 Fed. Cl. 798, 802 (2004). Moreover, the Court may order consolidation despite the opposition of the parties. See St. Bernard Gen. Hosp., Inc. v. Hospital Serv. Assoc., 712 F.2d 978, 989 (5th Cir. 1983); see Entergy Nuclear Indian, 62 Fed. Cl. at 802. "The court should take the positions of the parties into account in its analysis but need not accord the parties' views dispositive weight." Boston Edison Co. v. United States, Nos. 99-447C, 03-2626C, 2005 WL 1793410, at *2 (Fed. Cl. July 29, 2005) (citing Entergy Nuclear Indian, 62 Fed. Cl. at 802).

### B. ConEd And ENIP's Cases Satisfy The Criteria For Consolidation

#### 1. ConEd And ENIP's Cases Share Common Issues Of Fact And Law

It is beyond dispute that ConEd's and ENIP's cases share common issues of fact and law. Indeed, these two cases involve the same contract, the same nuclear power facility, and the same alleged breach of contract. As noted above, ConEd originally held the Standard Contract at issue in this case, but assigned that contract to ENIP on September 6, 2001. Now, both ConEd and ENIP are suing the Government for damages allegedly resulting from the same partial breach of that single contract.

ConEd and ENIP may claim that their individual damages theories are different and distinct and that, therefore, the Court should not consolidate the two cases. Any such assertion

would be untrue. In its complaint, ConEd asserts that ENIP's recognition that significant on-site SNF storage costs would be imminently necessary at Indian Point lowered the perceived value of the asset. Id. ¶¶ 63-67. ConEd alleges that, "[o]n information and belief, Entergy factored into its valuation and reduced the price for Indian Point to reflect all known and anticipated additional expenses associated with on-site storage of SNF and future Nuclear Waste Fund fees announced by DOE in the 1998 DOE Plan." Id. ¶ 75. ConEd then asserts that it should recover the diminished value that it received upon its sale of Indian Point as damages in this case.

Conversely, ENIP is seeking to recover as damages in its litigation all of the costs that it allegedly incurred and will incur in storing SNF as a result of DOE's delays. That is, even though (according to ConEd) ENIP has received compensation from ConEd – in the form of a reduced purchase price – for DOE's delay in beginning SNF acceptance and was allegedly able to compensate itself, at least in part, for continuing additional SNF storage costs through that reduced purchase price, ENIP is seeking to recover all of those same costs from DOE in its litigation. As a result, ConEd and ENIP are both claiming extensive damages from the United States based upon conflicting theories of recovery. If the Court granted both plaintiffs' claims, the United States would pay damages twice for the same partial breach of contract under the same Standard Contract, based upon inconsistent theories of recovery. That type of double liability would be inappropriate, and the possibility of that result is eliminated if the Court consolidates these cases. Indeed, as this Court recently recognized in granting the Government’s motion for consolidation under identical circumstances in Boston Edison Co., Nos. 99-447C, 03-2626C, 2005 WL 1793410, at *3, “[t]he possibility of an overlapping recovery deserves serious attention.”

Even if ConEd or ENIP could validly assert that their cases are somehow not seeking inconsistent or duplicative damages recoveries, the fact that the plaintiffs assert different legal theories based upon the same facts does not justify the denial of a motion to consolidate. See Boston Edison, Nos. 99-447C, 03-2626C, 2005 WL 1793410, at *4; Farrell v. American Flyers Airline Corp., 42 F.R.D. 341, 342 (S.D.N.Y. 1967). In Mylan Pharmaceuticals Inc. v. Henney, 94 F. Supp. 2d 36 (D.D.C. 2000), rev'd on other grounds sub nom. Pharmachemie B.V. v. Barr Laboratories, Inc., 276 F.3d 627 (D.C. Cir. 2002), two generic drug manufacturers brought separate lawsuits challenging the Food and Drug Administration's ("FDA") exclusivity determination in favor of another generic drug manufacturer. One manufacturer sought to enjoin the FDA from imposing an "indefinite delay" on the effective date of a particular drug, while the other manufacturer, in addition to seeking to enjoin the FDA, also sought entitlement to an exclusivity incentive for marketing its drug. The FDA sought to consolidate the two drug manufacturers' cases into a single lawsuit, and the manufacturers opposed the consolidation motion upon the grounds that they demanded different forms of relief. The court rejected this argument, concluding that consolidation was appropriate and noting that "plaintiffs' request for different forms of relief does not vitiate the propriety of consolidation, but rather, consolidation is proper to any or all matters in issue which are common." Id. at 44 (emphasis in original).

Similarly, in Karuk Tribe of California v. United States, 27 Fed. Cl. 429, 431 (1993), an Indian tribe and individual members of another Indian tribe each sued the Government, alleging a taking of a particular Indian reservation. The Court granted the Government's motion for consolidation, explaining that, because common issues of fact and law predominate, and because there would be no undue delay or prejudice, consolidation was appropriate. Id. at 433.

Here, not only do these two cases share the exact same factual basis, but they share many of the same issues of law. For example, the Court will have to determine the scope and validity of ConEd's assignment of the Standard Contract to ENIP. Although contractors typically are prohibited by statute from assigning contracts or claims against the Government to a third party, see 31 U.S.C. § 3727 & 41 U.S.C. § 15 (2004), the NWPA, 41 U.S.C. §§ 10101-10270, contains a specific assignment provision providing that "[t]he rights and duties of a party to a contract entered into under this section may be assignable with transfer of title to the spent nuclear fuel or high-level radioactive waste involved." 42 U.S.C. § 10222(b)(3). Although this Court has interpreted the assignment provision of the NWPA to allow the assignment of a pre-existing claim against the Government, Rochester Gas & Electric Co. v. United States, 65 Fed. Cl. 431, 440-42 (2005), the Court will still have to determine the scope and validity of the assignment in this case and, specifically, will have to determine which claims, if any, belong to ConEd and which claims, if any, belong to ENIP.

Moreover, by defining the meaning of the statutory assignment provision (which was incorporated into the Standard Contract), and by defining the scope of the assignment, the Court will be able to ensure that the two plaintiffs' damages claims do not overlap; that no duplicative damages recovery occurs; that the two plaintiffs do not prevail (to the Government's prejudice) upon conflicting interpretations of the Government's obligations under the single contract at issue here; and that any "diminution in value" award to ConEd, which ConEd seeks in its complaint, is somehow accounted for and offset against any award to ENIP, which, if it received its own damages award, would be the ultimate beneficiary of that temporary "diminution in value."

The factual overlap between the two cases is demonstrated in part by the fact that many of the witnesses in both cases will be the same. For example, with respect to ConEd's diminution in value claim, it is highly likely that it will be necessary to take discovery from ENIP and depose ENIP employees to determine whether the Government's breach played any role in the price that ENIP ultimately paid for the utility. Moreover, if discovery in the other SNF cases is any indication, it is probable that the Government witnesses will be the same in both cases. The Government's witnesses will have no knowledge concerning ConEd and ENIP's specific damages. However, Government witnesses have been deposed in the other SNF cases upon issues such as the rate and schedule of SNF acceptance, including issues related to exchanges of approved delivery commitment schedules, as well as the status of Greater Than Class C low level radioactive waste ("GTCC"), failed fuel, and SNF contained in canisters. Consequently, not only is there a factual overlap between the two cases, but it also is anticipated that many of the witnesses will be the same in both cases.

Moreover, many of the legal defenses raised by the Government apply with equal force to both ConEd and ENIP. For example, as noted above, both ConEd and ENIP are claiming damages for the costs associated with storing SNF. However, whether either of the plaintiffs have incurred damages associated with the cost of storing SNF turns in part upon the determination of the rate and schedule of SNF acceptance. Absent consolidation, there is the potential that the Court could determine different rates of acceptance, even though the same contract is at issue in both cases, leading to inconsistent judgments in the two cases.

Similarly, it is anticipated that the Government will assert as a defense that the Standard Contract does not cover the disposal of GTCC and, consequently, that any costs associated with

SNF storage would have been incurred anyway. Similarly, because DOE is not necessarily obligated to accept failed fuel under the same schedule as standard SNF, see 10 C.F.R. § 961.11, Art. VI.A.2(b), the plaintiffs cannot recover as damages costs that they would have incurred for storing failed fuel regardless of DOE's breach. Another likely defense that the Government will raise involves the canistering of the SNF. Canisters are not covered by the Standard Contract, and, so long as a utility places its SNF into such canisters, DOE will not accept that utility's SNF absent a contract modification and appropriate compensation. See 10 C.F.R. § 961.11, Art. VI.A.2(b) & App. E. Consequently, the Court's resolution of the status of canisters could affect the schedule upon which DOE was obligated to accept ConEd/ENIP's SNF. Again, different assumptions and findings would create a risk of inconsistent judgments. All of these issues directly affect both the SNF storage activities in which the contract holder would have to engage regardless of DOE's delay in beginning SNF acceptance. Accordingly, whether the claim is one for additional on-site storage costs or for the effect upon sales price resulting from the potential future need to incur additional on-site storage costs, the issues in these cases are highly duplicative and require a consistent resolution. Therefore, based upon the numerous common issues of fact and law, consolidation of these two cases would greatly promote judicial efficiency.

2. Neither ConEd Nor ENIP Would Be Prejudiced By Consolidation

Not only would consolidation promote judicial efficiency under the circumstances, but neither ConEd nor ENIP would be prejudiced if the Court consolidates these cases. As discussed above, both cases are in the same phase of pretrial procedure, and there is little, if any, risk of delay in either case should they be consolidated. The Court issued its decision upon the

Government's dispositive motion in ConEd on August 24, 2005, and it issued its decision upon the parties' motions in Entergy Nuclear Indian Point 2 on March 9, 2005. In response to the Government's previous motion to consolidate these two cases, this Court found that "[t]he strongest factor weighing against consolidation at this juncture is the divergent procedural posture of the cases." Entergy Nuclear Indian, 62 Fed. Cl. at 803. However, the current procedural posture of the ConEd and ENIP cases is identical. In fact, the procedural posture in this case is identical to the procedural posture of the parties in Boston Edison, in which the Court consolidated for the purpose of resolving common legal issues such as contract formation and implementation up to the date of the utility's sale, as well as Boston Edison's diminution in value theory and any potential offset to Entergy Nuclear's claim. Boston Edison, Nos. 99-447C, 03-2626C, 2005 WL 1793410, at *4. Accordingly, the Court's previous concerns in considering the Government's consolidation motion in this case are no longer present.

Moreover, consolidation of these two cases would not result in any confusion. Indeed, consolidation would minimize potential confusion by allowing consideration of the entire factual background of this contract in a single proceeding. As mentioned above, it is anticipated that many of the same witnesses would be utilized in both cases. In fact, most of the discovery relating to ConEd's diminished value claim – that is, its claim that ENIP paid less than it would have paid had DOE not breached the contract – will involve ENIP, including records regarding ENIP's belief as to whether it was paying a reduced price for ConEd's facility as a result of DOE's breach. Therefore, there would be no prejudice to either ConEd or ENIP if consolidation is granted.

3. The Government Will Be Heavily Prejudiced If The Two Cases Are Not Consolidated

If the Court does not grant the Government's renewed motion for consolidation, the Government would be prejudiced, as consolidation would force the Government to expend significant resources trying separately two substantially similar cases with identical facts and conflicting damages theories and to risk the possibility of inconsistent judgments based upon two cases that share the same factual predicate and the same legal issues. Consolidation would require the Government to attempt to take third-party discovery from ENIP in ConEd's case and from ConEd in ENIPs case. It would require the Government to attempt to account for ConEd's diminished value arguments in presenting its evidence in ENIP's case and ENIPs apparent denial that it paid a reduced price for ConEd's assets in ConEd's case. The Government should not have to risk the possibility of inconsistent and duplicative damages awards. Under these circumstances, consolidation of these two cases is appropriate.

II. IF THE COURT DECLINES TO CONSOLIDATE THESE CASES, THE COURT SHOULD ISSUE A SUMMONS TO JOIN ENGC AS A THIRD-PARTY DEFENDANT IN BECO'S CASE AND, FURTHER, SHOULD ISSUE RCFC 14(b) NOTICES TO ENIP AND CONSOLIDATED EDISON

If the Court declines to consolidate ConEd's and ENIP's cases, defendant respectfully requests that, pursuant to RCFC 14(a), the Court issue a summons to join ENIP as a third-party defendant in Consolidated Edison. The summons is for the purpose of answering the contingent claim of the United States for the recovery of any monies that it may pay to ConEd with respect to the transaction or matter which constitutes the subject matter of the pending suit against the United States. Specifically, to the extent that the United States is required to pay any money to ConEd upon its claim that ENIP, as a means of compensating itself for the additional on-site

storage costs it might incur because of DOE's alleged breach, paid a diminished price for Indian Point, the United States should recoup that money against any damages award that the United States is required to pay to ENIP upon ENIP's claims for the costs of additional on-site storage.[4]

In addition, defendant respectfully requests that the Court issue notice to ENIP in the Consolidated Edison case, and to ConEd in the Entergy Nuclear Indian Point 2 case, pursuant to RCFC 14(b) and the Contract Settlement Act, 41 U.S.C. § 114(b). Under 41 U.S.C. § 114(b), the Court may notify any party having a possible interest in any pending suit or proceeding to appear and assert or defend its interests. Should a notified party fail to appear, "any and all claims or interests in claims of any such person against the United States, in respect to the subject matter of such suit or proceeding, shall forever be barred." 41 U.S.C. § 114(b); see Del-Rio Drilling Programs, Inc. v. United States, 17 Cl. Ct. 844, 849 (1989) ("third parties who fail to appear may nonetheless be bound in a later suit in another court by certain determinations made in this court without the third party's presence"). Notice is appropriate where third parties "hav[e] possible interests [in] any suit or proceeding of any nature." 41 U.S.C. § 114(b). "The rationale behind the issuance of a notice is the prevention of numerous proceedings and determinations on an identical set of facts." Philadelphia Suburban Corp. v. United States, 211 Ct. Cl. 354, 355 (1976). "Thus it is in furtherance of the conservation of judicial time and effort that the [Court] determines that notice shall issue where interest is apparent." Id. "Should a

[4] Because consideration of our request to join ENIP as a third-party defendant in the Consolidated Edison case will be unnecessary if the Court consolidates ConEd's and ENIP's cases, we respectfully request that the Court defer until 10 days after a decision upon this motion the Government's obligation pursuant to RCFC 14(a)(2) to provide "an appropriate pleading setting forth the claim or contingent claim which it is asserting against such third person." If the Court grants the Government's motion to consolidate, the work necessary to create such a pleading will be unnecessary.

noticed person decline to appear . . . he cannot be forced so to do, though he may nevertheless be bound, in a later suit in another court, by certain determinations of this court." Uram v. United States, 216 Ct. Cl 418, 420 (1978). Here, for the reasons previously explained, both ConEd and ENIP will involve numerous factual issues that are either identical or will substantially overlap. In the absence of consolidation, issuance of notice pursuant to RCFC 14(b) and the Contract Settlement Act will reduce the likelihood of the need for duplicative fact-finding proceedings and the possibility of conflicting factual findings.

## CONCLUSION

For the foregoing reasons, we respectfully request that the Court grant the Government's renewed motion to consolidate Consolidated Edison and Entergy Nuclear. If the Court declines to consolidate these cases, we respectfully request that the Court in Consolidated Edison issue a summons to ENIP, that the Court in Consolidated Edison issue notice pursuant to RCFC 14(b) and the Contract Settlement Act to ENIP, and that the Court in Entergy Nuclear Indian Point 2 issue notice pursuant to RCFC 14(b) and the Contract Settlement Act to ConEd.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Harold D. Lester, Jr
HAROLD D. LESTER, JR.
Assistant Director

s/ Joshua E. Gardner
JOSHUA E. GARDNER
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 305-7583
Fax: (202) 307-2503

OF COUNSEL

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585
Washington, D.C. 20585

September 23, 2005

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that on September 23, 2005, a copy of the foregoing "DEFENDANT'S RENEWED MOTION TO CONSOLIDATE OR, IN THE ALTERNATIVE, FOR ISSUANCE OF A SUMMONS PURSUANT TO RCFC 14(a) AND NOTICE PURSUANT TO RCFC 14(b)" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Joshua E. Gardner