**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **CONSOLIDATED EDISON COMPANY OF NEW YORK, INC.,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **No. 04-0033C (Judge Lettow)** |
| **UNITED STATES OF AMERICA,** | ) | |
| **Defendant.** | ) | |

**PLAINTIFF CONSOLIDATED EDISON COMPANY OF NEW YORK, INC.'S RESPONSE TO DEFENDANT'S RENEWED MOTION TO CONSOLIDATE OR, IN THE ALTERNATIVE, FOR ISSUANCE OF A SUMMONS PURSUANT TO RCFC 14(a) AND NOTICE PURSUANT TO RCFC 14(b)**

David A. Churchill
JENNER & BLOCK, LLP
601 Thirteenth Street, NW, Suite 1200
Washington, DC 20005
(202) 639-6000

*Counsel of Record for*
*Consolidated Edison Company of New York, Inc.*

Of Counsel:

Cynthia J. Robertson
JENNER & BLOCK, LLP
601 Thirteenth Street, NW, Suite 1200
Washington, DC 20005
(202) 639-6000

Brent L. Brandenburg, Esq.
Assistant General Counsel
Consolidated Edison Company of New York, Inc.
4 Irving Place, Suite 1830
New York, NY 10003
(212) 460-4333

# TABLE OF CONTENTS

INTRODUCTION .......... 1

BACKGROUND .......... 2

ARGUMENT .......... 4

I. CONSOLIDATION SHOULD BE DENIED BECAUSE OF THE DISSIMILARITY BETWEEN THE ISSUES PENDING IN *CON EDISON* AND *ENIP* .......... 6

A. Con Edison's Damages Are Fixed By Past Events .......... 9

B. ENIP's Damages Pertain to Forward-Looking Costs Associated With DOE's Ongoing Breach That Do Not Overlap With Con Edison's Damages .......... 11

C. *Con Edison* and *ENIP* Remain Procedurally Different .......... 12

D. Even Limited Consolidation Is Unnecessary .......... 13

II. CON EDISON WOULD SUFFER PREJUDICE IF CONSOLIDATION, OR EVEN LIMITED CONSOLIDATION, WERE GRANTED .......... 15

III. SUMMONS PURSUANT TO RCFC 14(A) AND NOTICE PURSUANT TO RCFC 14(B) DO NOT APPLY AND MUST BE DENIED .......... 16

CONCLUSION .......... 18

## TABLE OF AUTHORITIES

### CASES

*Allfirst Bank v. Progress Rail Services Corp.*, 178 F. Supp. 2d 513 (D. Md. 2001) .......................7

*Applegate v. United States*, 35 Fed. Cl. 406 (1996).........................................................................14

*Boston Edison Co. v. United States*, 67 Fed. Cl. 63 (2005) .............................................2, 6, 7, 13

*Continental Bank & Trust Co. v. 0ls. E. D. Platzer*, 304 F. Supp. 228 (S.D. Tex. 1969) ...............8

*Creppel v. United States*, 33 Fed. Cl. 590 (1995) ..........................................................................14

*Del-Rio Drilling Programs, Inc. v. United States*, 17 Cl. Ct. 844 (1989) ....................................17

*Entergy Nuclear Indian Point 2, LLC v. United States*, 62 Fed. Cl. 798 (2004) .......................1, 12

*Entergy Nuclear Indian Point 2, LLC v. United States*, 64 Fed. Cl. 515 (2005) ......................... 14

*Hasman v. G.D. Searle & Co.*, 106 F.R.D. 459 (E.D. Mich. 1985) ...............................................6

*Karuk Tribe v. United States*, 27 Fed. Cl. 429 (1993) .....................................................................7

*Mills v. Beech Aircraft Corp.*, 886 F.2d 758 (5th Cir. 1989).........................................................12

*Philadelphia Suburban Corp. v. United States*, 211 Ct. Cl. 354, (1976)......................................17

*Prudential Insurance Co. of America v. Marine National Exchange Bank*, 55 F.R.D. 436 (E.D. Wis. 1972) ..........................................................................................................8

*Public Water Supply District No. 3 v. United States*, 135 F. Supp. 887 (Ct. C1. 1955)................14

*Shump v. Balka*, 574 F.2d 1341 (10th Cir. 1978) .............................................................................8

*United States v. Dow*, 357 U.S. 17 (1958) .......................................................................................14

*Yankee Atomic Electric Co. v. United States*, No. 98-126C (Fed. Cl. filed Apr. 16, 2003) ............6

*Yankee Atomic Electric Co. v. United States*, No. 98-126C (Fed. Cl. filed Jan. 30, 2004) .........6, 8

### STATUTES AND REGULATIONS

31 U.S.C. § 3727..........................................................................................................................14

41 U.S.C. § 114(b) ....................................................................................................3, 17

42 U.S.C. § 10101 *et seq*..................................................................................................3

42 U.S.C. § 10222 ........................................................................................................ 13-14

10 C.F.R. § 961.11 art. VIII.A.4 ........................................................................................10

**MISCELLANEOUS**

9 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* (2d ed. 1995) ..........................................................................................................................8

**INTRODUCTION**

Plaintiff Consolidated Edison Company of New York, Inc. ("Con Edison"), opposes the Government's Renewed Motion To Consolidate this case with *Entergy Nuclear Indian Point 2, LLC v. United States*, No. 03-2622C (Fed. Cl. filed Nov. 5, 2003) ("*ENIP*"). Both this case and *ENIP* are among the more than sixty (60) cases currently pending in this Court arising from the Department of Energy's ("DOE's") failure to comply with the requirements of the Nuclear Waste Policy Act and related contracts to commence disposal of spent nuclear fuel ("SNF") by January 1998, from more than one hundred nuclear electric power plants.

Of those sixty-plus cases, most were filed by *the existing owner/operators* of nuclear facilities (like ENIP) that seek damages related to on-going SNF storage costs. By contrast, as a *seller* of the Indian Point 1 and 2 nuclear facilities ("Indian Point"), Con Edison is seeking damages associated with the diminished value it realized in the sale of its facilities, as well as other related costs incurred up to the closing date of the sale. Unlike the existing owner/operator cases, Con Edison's damages are fixed and readily ascertainable as of the closing date of its sales transaction on September 6, 2001.

The same reasons that motivated this court to deny the Government's first consolidation motion less than one year ago are still true today. *Energy Nuclear Indian Point 2, LLC v. United States,* 62 Fed. Cl. 798, 803 (2004). Namely, *ENIP* is still procedurally at a more advanced stage than *Con Edison*. *Id*. Likewise, although the two cases share some basic facts in common, the vast majority of legal and factual issues do not overlap, and would lead to confusion and delay if litigated together. Far from conserving judicial resources or promoting the efficient administration of justice, consolidating these cases would prejudice Con Edison by forcing it to litigate complex issues that have nothing whatsoever to do with its own case, as a seller of a nuclear facility (whose damages were fixed by the date of sale), yet central to ENIP's, as a buyer

of a nuclear facility (whose damages will continue to accrue). For this reason, the Government's contention that full consolidation is warranted due to the potential for inconsistent outcomes between the two cases is vastly overstated.

Cognizant that this Court has recently granted limited consolidation of two cases involving another SNF buyer/seller, *Boston Edison Co. v. United States*, 67 Fed. Cl. 63 (2005), Con Edison respectfully opposes even limited consolidation. With both cases before the same judge, and the parties fully able to coordinate and cooperate in discovery, each case will proceed more expeditiously if left unconsolidated. Thus, just as this Court initially found that "judicial efficiency would not be served by consolidation," when asked to do so a year ago, *id.*, this Court should continue to maintain separate tracks for these cases. Accordingly, Con Edison respectfully requests that the Court deny the Government's Renewed Motion to Consolidate.

The Government's request for the issuance of a summons pursuant to RCFC 14(a) and notice pursuant to RCFC 14(b) should also be denied. The Government's unorthodox use of Rule 14 makes no sense here, and it recently conceded as much in *Boston Edison*. *See* Reply Brief, *Boston Edison Co. v. United States*, No. 09-447C, at 7 n.6 (Fed. Cl. filed May 16, 2005), attached as Exhibit 1, and Hearing Transcript at 20-21, June 14, 2005, attached as Exhibit 2. With respect to 14(b) and 41 U.S.C. § 114(b), these rules typically apply to alert a third party to a case in which that third party may have an interest, enabling intervention should that third party so desire. Here, it is unnecessary for the Court to issue notice given that all parties are already before the Court pursuing their distinct interests. Thus, Con Edison respectfully requests that the Court deny the Government's Renewed Motion with respect to RCFC 14(a) and (b) as well.

## **BACKGROUND**

Con Edison was the sole owner and operator of the Indian Point Unit I and 2 nuclear electric generating facilities ("Indian Point") from the 1960s through September 6, 2001. The

Nuclear Waste Policy Act of 1982 ("NWPA" or "Act") as amended, 42 U.S.C. § 10101 *et seq.*, required DOE to enter into a Standard Contract with each of the nation's commercial nuclear power plant owners, including Con Edison. The Act also required DOE to commence the acceptance of spent nuclear fuel ("SNF") from these nuclear facilities by January 31, 1998, in return for payments of substantial fees by the owners into a Nuclear Waste Fund created by the NWPA.

Despite collecting in excess of $19 billion directly and through earned interest from the nation's nuclear utilities, and more than $115 million from Con Edison alone, DOE did not commence SNF disposal by the statutory deadline mandated by the NWPA. To this day, DOE is unable to say when if ever such disposal will actually begin.

On September 6, 2001, more than three years after DOE repudiated its SNF disposal obligations, Con Edison sold Indian Point to ENIP as part of a broad utility industry restructuring mandated by the Federal Energy Regulatory Commission. In connection with the sales transaction for Indian Point, Con Edison assigned its DOE Standard Contract (as to which DOE was then in breach) to ENIP, specifically reserving all claims against DOE related to DOE's breaches of the Standard Contract which had accrued up to the closing date of the sale. The claims retained by Con Edison specifically included: "all claims or causes of action in respect of damages to property or economic loss related to or pertaining to the Department of Energy's breach or default under the DOE Standard Contract accrued prior to Closing." *See* Exhibit 1 of Renewed Consolidation Motion. The claims reservation language and the assignment of the Standard Contract on the terms specified were approved by the Government (per the Nuclear Regulatory Commission) on August 27, 2001, and were thereafter accepted by the Government (per the Department of Energy) following a September 6, 2001 written notice.

As a direct and proximate result of DOE's failure to perform its statutory and contractual obligations, Con Edison, as the seller of Indian Point, suffered significant damages. These damages fall into three general categories: (a) significant diminution in the value of Con Edison's Standard Contract, as well as the value of the Indian Point nuclear assets with which the contract was inextricably linked; (b) unlawful fee collection practices by DOE occurring prior to the sale of Indian Point; and (c) increased costs incurred by Con Edison to store and maintain SNF up to the date of Con Edison's sale of Indian Point.

Con Edison has pled damages that were caused both by breaches of its Standard Contract as well as just compensation arising from the Government's taking of its property occurring up to the date of the sale of the plant. These can be readily measured by the difference between the value Con Edison received when it assigned its Standard Contract and other nuclear assets and what it would have received had DOE not breached the Standard Contract and violated the NWPA.

ENIP, on the other hand, as the buyer of Indian Point, seeks recovery for separate and additional claims accruing *after* the sale of the facility, which have been and will continue to be caused by the Government's ongoing breach of the contract. ENIP Complaint ¶ 25.

## ARGUMENT

The Government's Renewed Consolidation Motion proceeds on a series of erroneous assumptions. First, the Government contends that a dollar of the diminished value recovery by Con Edison as seller is a dollar that Entergy discounted its bid for Indian Point. To the contrary, the plant was sold at an auction of comparatively few bidders willing to take on the enormous spent fuel problems wrought by DOE's 1998 breach. Determining what ENIP's (or, indeed, any other particular company's) top dollar bid would have been in a "non-breach world" is by no

means synonymous with the fair market value of the assets absent the DOE default. What is decisive is the market, not ENIP's particular offering price.

Second, the Government repeats its argument that consolidation is necessary because both Con Edison's and ENIP's claims involve the same contract, the same nuclear plant, and the same breach of that contract. Although these two cases (and indeed *all* of the SNF cases) share some basic facts in common, the shared facts are uncontested and merely *incidental* to the entirely different – and separate – damage claims that will predominate in *Con Edison* and *ENIP*. The Government likewise ignores the critical fact that Con Edison's and ENIP's claims are separated by the bright line of a September 6, 2001 closing date set forth in the plant sales contract. Consolidation would substantially prolong resolution of the distinct pre-closing accrued claims which were retained by Con Edison by linking them with the entirely different claims accruing post-closing which were assigned to ENIP.

Third, the Government argues it must preserve the right to try to set off some portion of Con Edison's recovery against any recovery by ENIP. Consolidation would be a blunt tool to achieve this end. The date of closing is the bright line that separates the two owner's claims. To the extent there is any doubt as to the effect of that bright line, the government's interests would be fully protected by trying the *Con Edison* case first.

In light of the serious prejudice to both Con Edison and ENIP arising out of consolidation, consolidation should be denied. Consolidation would only increase the litigation costs of all parties, misspend judicial resources, and delay the efficient and prompt resolution of these cases.

## I. CONSOLIDATION SHOULD BE DENIED BECAUSE OF THE DISSIMILARITY BETWEEN THE ISSUES PENDING IN *CON EDISON* AND *ENIP*

Under Rule 42(a), the threshold inquiry is whether common questions of law or fact exist that warrant consolidation of the actions. *See Hasman v. G.D. Searle & Co.*, 106 F.R.D. 459, 460 (E.D. Mich. 1985) (where the court denied defendant's motion to consolidate because cases involved predominantly individual issues). The Government does not identify any common questions of law or fact that were not also present when Chief Judge Damich twice denied the Government's prior motions to consolidate all of the SNF cases.[1] Ignoring this Court's recent rulings, the Government asserts that full consolidation of *Con Edison* and *ENIP* is warranted because they purportedly share "the exact same factual basis" as well as "many of the same issues of law." Renewed Motion to Consolidate at 9.

To the contrary, although these two cases – and indeed *all* of the SNF cases – do share some obvious underlying factual similarities, the multiple, evolving damages issues central to ENIP's claims are manifestly different from those presented by Con Edison, whose claims are fixed by the date and circumstances when it sold its nuclear facilities. Indeed, this Court recently denied the Government's request for full consolidation of two cases much like those presented here based on the Court's recognition that combining a buyer's and seller's different damage theories within one case would only lead to potential confusion and delay, rather than efficiency. *Boston Edison Co. v. United States*, 67 Fed. Cl. 63, 66-67 (2005) (finding such concerns had "merit"). As a result, the Court concluded that full consolidation of the cases was unwarranted,

---

[1] *Yankee Atomic Electronic Co. v. United States*, No. 98-126C (Fed. Cl. filed Apr. 16, 2003) and *Yankee Atomic Electronic Co. v. United States*, No. 98-126C (Fed. Cl. filed Jan. 30, 2004). As noted elsewhere in this brief, the overwhelming majority of these cases involve current owners of nuclear facilities and present common issues of rate and schedule of acceptance, as well as having practically identical Standard Contracts with the DOE. The fact that Con Edison's case – as one involving damages accruing from its sale of a nuclear facility, rather than current ownership of a nuclear facility – is even less like the others should be more than adequate to defeat consolidation.

and granted a limited consolidation of "only those issues that are undeniably common to both cases and will have to be addressed by all parties fairly early in the discovery proceedings." *Id.* at 67. Yet even this limited consolidation is unwarranted here given the lack of "undeniably common" issues between Con Edison and ENIP, as discussed below.

Despite the Court's rulings in both *Boston Edison* and in this case, the Government seeks *full* consolidation yet again. The Government raises no new arguments that full consolidation is now appropriate. Although it provides numerous citations for the common sense proposition that cases which present substantially identical issues may be consolidated, those cases are inapposite here.

For example, in *Karuk Tribe v. United States*, 27 Fed. Cl. 429, 433 (1993), the Court consolidated two actions involving identical legal claims surrounding entitlement to an Indian reservation because the only discernable difference between these claims was the identity of the plaintiffs (two individual Indians as opposed to an Indian tribe). *Id.* Indeed, unlike this case, where the Government will be defending two *different* theories of damages presented by the plaintiffs (one fixed in the past, and the other forward-looking), *Karuk Tribe* would have involved "almost total duplication of effort if the cases [were] not consolidated." *Id.* The Government's citation to *Allfirst Bank v. Progress Rail Services Corp.*, 178 F. Supp. 2d 513, 520 (D. Md. 2001), fares no better, as the cases consolidated there were the "mirror image" of one another, relieving the judge of the necessity of even holding a hearing on the matter.

The *Con Ed* and *ENIP* cases are anything but mirror images of one another. To the contrary, the cases present sequential and discrete issues, with Con Edison seeking damages for claims that had already accrued as of the date it sold its facility, and ENIP asserting claims

accruing thereafter. The only facts *shared* by Con Edison and ENIP – namely, the same contract and same nuclear facilities – do not present contested factual issues in either case.

When separate legal and/or factual issues predominate, consolidation should be denied. *See Shump v. Balka*, 574 F.2d 1341 (10th Cir. 1978) (consolidation denied because parties sought different types of damages). Consolidation is not required simply because the actions include some common facts, or even some common questions of fact or law. *See Prudential Ins. Co. of Am. v. Marine Nat'l Exch. Bank*, 55 F.R.D. 436, 437 (E.D. Wis. 1972) ("the fact that a common question of law exists does not alone justify consolidation in the absence of other factors which would promote 'trial convenience and economy in administration.'"); *see also Cont'l Bank & Trust Co. v. 0ls. E. D. Platzer*, 304 F. Supp. 228, 229 (S.D. Tex. 1969) (holding the mere presence of a common question of law or fact does not require consolidation); and 9 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2383, at 439-40 (2d ed. 1995) (same).

The Government's argument that consolidation is warranted because the Con Edison and ENIP claims stem from the same contract proves too much: *all* of the Standard Contracts executed by some 60-odd nuclear utilities are virtually identical. If similarity between contracts was determinative, the Government would have prevailed in its prior numerous attempts to consolidate all SNF cases. *See, e.g., Yankee Atomic Elec. Co. v. United States*, No. 98-126C (Fed. Cl. filed Jan. 30, 2004).

**A. Con Edison's Damages Are Fixed By Past Events**

As a post-breach seller of a nuclear facility, Con Edison's damages are readily ascertainable as of the closing date of its sales transaction in September 2001. Con Edison asserts three different types of damages, in short-hand: (1) diminution-in-value of Indian Point; (2) Nuclear Waste Fund fee overcharges; and (3) pre-September 6, 2001 storage costs. None of these damages are claimed by ENIP – nor could they be, given they accrued before ENIP acquired Indian Point in 2001.

Contrary to the Government's characterization, the measure of Con Edison's diminished value claim is *not* how much ENIP might have lowered its bid because of the Government's breach, but rather the fair market value Con Edison would have received in a fully competitive auction unencumbered by the looming presence of major SNF problems of uncertain cost and duration. This mistaken notion that a dollar of Con Edison's recovery should reduce ENIP's recovery by a like amount fundamentally misconstrues the basis underlying both Con Edison's and ENIP's damage claims. Con Edison's diminished value claim is equal to the difference between (a) the value Con Edison actually received when it assigned its Standard Contract along with its other nuclear assets, and (b) what it should have received upon the sale of those assets had DOE not breached the Standard Contract. Con Edison's case on damages will thus consist principally of utilizing economic principles to demonstrate a non-breach asset valuation, and how DOE's failure to begin disposal of SNF depressed the sales price, caused excess post-retirement decommissioning funding, and generally brought about the auction result that actually occurred. Complaint ¶¶ 56-61.

In conjunction with its diminished value claim, Con Edison will also demonstrate the lost economic value associated with SNF disposal rights that it was entitled to under the express

terms of the Standard Contract, and would have received absent DOE's breach. One of the central features of DOE's nuclear waste program was to grant Standard Contract holders tradable SNF disposal rights for each particular year after disposal was required to commence in 1998. The position a contract holder had in this "queue" of disposal rights was intended to have significant economic value, and these queue position rights were to have been traded among Standard Contract holders such that they would be acquired by those contract holders with the most pressing needs for disposal. DOE's failure to begin SNF disposal effectively nullified this component of the value of Con Edison's Standard Contract at the time of assignment. Con Edison's damages associated with its obsolete queue position and the overall diminished value of its facilities, just like its other damages, are fixed in time as of the date of sale. Because they accrued pre-sale, they are completely unrelated to ENIP's damages.

Moreover, only Con Edison has raised a claim relating to Nuclear Waste Fund fee overcharges. *See, e.g.*, Complaint ¶ 76. The NWPA contains elaborate mechanisms to assure pay-as-you-go funding for a repository that was required to be sited, designed, licensed, constructed and operational by 1998. The Standard Contract provides that DOE "will annually review the adequacy of the fees and adjust the 1 m/kwh [1 mil/kilowatt] hour fee, if necessary, in order to assure full cost recovery by the Government." 10 C.F.R. § 961.11 art. VIII.A.4. The existing unspent Nuclear Waste Fund balance in 1998 was in the billions, and then-current fee collections were more than twice the amount necessary to fully fund the entire nuclear waste program spending plan. Nonetheless, DOE not only continued to collect fees from Standard Contract holders like Con Edison after its NWPA mission was to have been completed, but DOE further announced a plan unsanctioned by the NWPA to continue fee collections at the existing 1 mil/kilowatt hour fee rate from Standard Contract holders through at least 2020. DOE's

announced fee collection practices were not only unlawful under the NWPA, but greatly exceeded the projected cost of a statutory-compliant SNF repository program, further deprived Con Edison of the value of its assets and entitlements under the Standard Contract, and improperly required Con Edison to suffer the financial consequences of DOE's unauthorized actions.

Finally, Con Edison's costs associated with storing SNF at Indian Point are necessarily different than ENIP's. Even though the SNF storage for both Con Edison and ENIP takes place at the same facility, Con Edison's incurred storage costs were clearly known and measurable as of the date of sale. ENIP's costs of storage occur subsequently, and as a practical matter cannot be completely resolved until DOE actually commences performance.

**B. ENIP's Damages Pertain to Forward-Looking Costs Associated With DOE's Ongoing Breach That Do Not Overlap With Con Edison's Damages**

The underlying issues fundamental to the Court's damages determinations in these two cases do not overlap. ENIP seeks recovery for ongoing SNF storage costs related to its ownership of Indian Point facility, which began on September 6, 2001. There are no assertions as to these matters in Con Edison's complaint. Instead, Con Edison seeks damages for the injury to its Standard Contract rights and its nuclear enterprise, including lost profits and diminished value, caused by the DOE breach and its fee collection practices. Since these injuries had already transpired upon the sale of those assets in 2001, DOE's performance following that sale, which forms the core of ENIP's case, is simply not relevant to Con Edison.

By contrast, ENIP, as the current owner of Indian Point, is necessarily dealing with post-September 6, 2001 issues linked to DOE's performance, its own mitigation costs, and associated damages resulting from DOE's breach. ENIP, like the great majority of other SNF litigants, is seeking to measure its damages based on events related to the starting date when DOE begins to

accept SNF for disposal, and the acceptance rate with which disposal occurs. The Government's arguments in ENIP concern the applicable rate of acceptance for SNF as a means of quantifying ENIP's existing damages, which will continue. As a result, the rate of acceptance issues in *ENIP* (and most of the other SNF cases) will not be duplicated in *Con Edison* because those issues are not relevant to damages sought by Con Edison.

**C. Con Edison and ENIP Remain Procedurally Different**

As this Court correctly noted less than one year ago, consolidation is inappropriate where procedural disparities exist. *Energy Nuclear*, 62 Fed. Cl. at 803; s*ee also Mills v. Beech Aircraft Corp*., 886 F.2d 758, 762 (5th Cir. 1989) ("Consolidation may properly be denied in instances where the cases are at different stages of preparedness for trial."). Contrary to the Government's allegation that these cases are now procedurally "identical," *see* Renewed Motion to Consolidate at 12, Con Edison's case remains procedurally distinct from ENIP's – a case previously described by this Court as having "moved steadily through the preliminary stages of litigation." *Entergy Nuclear*, 62 Fed. Cl. at 800. ENIP has already established liability through summary judgment and exchanged proposed findings of fact – a process that took roughly ten months to complete.[2] Likewise, the parties in the ENIP case have already submitted their Joint Preliminary Status Report ("JPSR") and begun discovery. By contrast, neither summary judgment papers nor findings of fact have been filed in Con Edison's case, nor has the JPSR been filed.

Even should these procedural dissimilarities eventually be removed, it is doubtful that the cases will ever synchronize sufficiently to merit consolidation. This is because Con Edison, with

---

[2] Following eight months of briefing the liability issue beginning in May, 2004, a hearing was held in February 2005. This Court issued its decision on March 9, 2005, granting ENIP's motion for summary judgment on liability and denying the Government's cross-motion for summary judgment. *Entergy Nuclear Indian Point 2, LLC v. United States*, 64 Fed. Cl. 515 (2005).

a finite, fixed case, is unencumbered by the numerous complex issues that must be resolved by the claims of current Standard Contract holders such as ENIP. Issues that are vital to a buyer's case, like rate of acceptance of SNF, will have no application to Con Edison's case. Such fundamental differences will perpetuate the likelihood of alternate paths each case will follow. The different issues presented by each of these cases will press each plaintiff in different directions from the outset of discovery, and will also cause entirely different defensive strategies by the Government,[3] leaving the Court and the parties to gain nothing by consolidation. Because the distinct procedural postures of each case will endure, this Court should continue to maintain the cases' independence.

**D. Even Limited Consolidation Is Unnecessary**

On July 29, 2005, this Court granted a limited consolidation of "only . . . those issues that are undeniably common to both cases and will have to be addressed by all parties fairly early in the discovery proceedings." *Boston Edison Co.*, 67 Fed. Cl. at 66-67. The issues that the Court ultimately consolidated in *Boston Edison* were those "concerning contract formation and implementation up through the date of [the facilities'] sale as well as Boston Edison's diminution-in-value claim and the government's attendant offset claim against Entergy." *Id.*

Consolidated Edison respectfully submits that contract formation and implementation up through the date of sale are issues that will *solely* relate to Consolidated Edison, as the *initial* party to the Standard Contract. ENIP's claims arise only following Con Edison's assignment. Contract formation was at best a formality, as it was required by the NWPA as a condition of nuclear plant licensure, and each Standard Contract is essentially the same. *See* 42 U.S.C. §

[3] The Government makes sweeping assertions as to raising the same defenses in these cases, *see* Renewed Consolidation Motion at 10, that have no grounding. For example, the Government claims the status of Greater than Class C Waste ("GTCC") will be relevant and involve the duplication of witnesses, yet Con Edison has made no claims relating to GTCC.

10222. Contract implementation up through the date of sale supplies the foundation upon which Con Edison's – not ENIP's – claims rest. ENIP's claims, by contrast, begin on the date it acquired Indian Point.

As to the scope and validity of Con Edison's assignment of the Standard Contract to ENIP, the Government is trying to create controversy where none exists. This Court recently concluded that the assignment between Con Edison and ENIP was valid. *Entergy Nuclear Indian Point 2, LLC v. United States*, 64 Fed. Cl. 515, 523 (2005). Specifically, the Court found that "[a]ssignments of Standard Contracts are permissible under article XIV of the Standard Contract and authorized by the NWPA. The Standard Contract for the Indian Point facilities was assigned to ENIP in accordance with these provisions, and DOE received notice in accordance with the Contract, giving ENIP privity of contract with the government." (citations omitted). The Government has raised nothing new to cast doubt on this judgment, rendering consolidation on this ground unnecessary.[4]

The Government's alleged "offset" claim against ENIP in the event Con Edison recovers for the facilities' diminished value likewise provides no basis for consolidation. Con Edison's proofs as to diminution of value do not depend on the specific conduct of ENIP in the sale of Indian Point. Con Edison will offer economic proofs to determine the value of Indian Point as of

---

[4] The takings claims alleged by both Con Edison and ENIP are likewise distinguishable. Con Edison, as the owner of Indian Point at the time of the taking, retained the right to bring a claim for an uncompensated taking in violation of the Fifth Amendment to the Constitution. *Pub. Water Supply Dist. No. 3 v. United States*, 135 F. Supp. 887, 890 (Ct. C1. 1955). Those claims are personal to Con Edison and not transferable to ENIP under the Anti-Assignment Act, 31 U.S.C. § 3727; *see also United States v. Dow*, 357 U.S. 17 (1958) (Anti-Assignment Act prohibits the voluntary transfer of takings claims); *Applegate v. United States*, 35 Fed. Cl. 406 (1996) (same); *Creppel v. United States*, 33 Fed. Cl. 590 (1995) (same). As a result, there are no "overlapping" or "common" issues between the respective takings claims being asserted by Con Edison and ENIP, and the latter takings claim must obviously depend entirely upon (and be limited to) events post-dating ENIP's acquisition of Indian Point.

the date of its sale with and without DOE's breach of the Standard Contract. ENIP's damages, by contrast, relate solely to events accruing post-acquisition for costs of storing SNF caused by DOE's continuing breach. There is nothing duplicative or overlapping about these two theories. Further insurance against duplication can be obtained by first trying Con Edison's claims, which are simpler and chronologically precede ENIP's claims.

## II. CON EDISON WOULD SUFFER PREJUDICE IF CONSOLIDATION, OR EVEN LIMITED CONSOLIDATION, WERE GRANTED

Consolidation also would cause great prejudice to Con Edison's attempts to seek redress from the Government. Con Edison's discovery and claims are historically fixed as of 2001 when it sold its nuclear facilities to ENIP, whereas ENIP's case is based on events following that time frame. Consolidating the cases would severely disadvantage Con Edison by tethering its historically-defined case to ENIP's case, which will necessarily require resolution of issues that do not relate to or form the basis for Con Edison's claims.

Con Edison's pretrial phase should be much simpler than many other SNF cases like ENIP's. Were the cases to be consolidated, both Con Edison and ENIP would instead be forced to stand by while distinct and unrelated issues are litigated, incurring additional legal fees and delay. Because Con Edison is not entitled to pre-judgment interest on its breach claim, every day of delay compounds the injuries Con Edison has sustained as a result of the Government's conduct. Accordingly, consolidation for any purpose is inappropriate in this case.

As an alternative to consolidation, Con Edison respectfully suggests that efficient trial preparation can be better attained by modest efforts to coordinate discovery that are well short of even partial consolidation. Specifically, discovery ought to be shared among the parties to allow for exchanges of information. Consolidated Edison is prepared to coordinate discovery with ENIP and with the Government, subject to a reasonable plan and schedule for such discovery.

Accordingly, Con Edison respectfully requests that the Court deny the Government's Renewed Motion to Consolidate either for all purposes or limited purposes.

## III. SUMMONS PURSUANT TO RCFC 14(A) AND NOTICE PURSUANT TO RCFC 14(B) DO NOT APPLY AND MUST BE DENIED

The Government's request for the issuance of a summons pursuant to RCFC 14(a) and notice pursuant to RCFC 14(b), Renewed Consolidation Motion at 13-15, should also be denied. The Government recently conceded that its attempt to use RCFC 14(a) in a case like the one presented here was unorthodox, and in fact withdrew its request for Rule 14(a) operation. *See* Reply Brief, *Boston Edison Co. v. United States*, No. 09-447C at 7 n.6 (Fed. Cl. filed May 16, 2005), and Hearing Transcript at 20-21, June 14, 2005. The Government responded to this Court's inquiry regarding its RCFC 14(a) summons argument as follows:

> Your Honor, . . . we have, at least for now, withdrawn that particular request in response to the Plaintiffs' arguments in their response briefs. It is a little unclear at this moment whether that is something that we can actually use Rule 14(a) to -- let me start over.
>
> It's unclear at this moment whether 14(a) can be used for that purpose on a contingent claim like this. So for purposes of this motion, we're limiting the alternative to consolidation to the 14(b) and particularly coupled with the 41 U.S.C. § 114(b) request.

*Boston Edison Co. v. United States*, No. 09-447C Hearing Transcript at 20-21, June 14, 2005.

Despite withdrawing its Rule 14(a) request only a few months ago in *Boston Edison*, the Government reasserts it here, but presents no new arguments to justify its view that Rule 14(a) now applies. The Government's failure to plead an affirmative third-party claim against either plaintiff eliminates the viability of Rule 14(a) here, just as it did in *Boston Edison*. Indeed, the Government cannot point to any contingent claim because there are no legal grounds upon which such a claim could be brought. The Government merely asserts to a potential connection

between the damages Con Edison may recover as compared to the price ENIP paid for Indian Point, but such assertions are illusory at best.

With respect to 14(b) and 41 U.S.C. § 114(b), these rules typically apply to alert an unknowing third party to a case in which that third party may have an interest, enabling intervention should that third party so desire. *See, e.g., Del-Rio Drilling Programs, Inc. v. United States*, 17 Cl. Ct. 844 (1989) (issuing notice to plaintiffs rather than granting Government's motion to dismiss for lack of indispensable parties). Here, it is unnecessary for the Court to issue notice given that all parties indisputably have notice of each others' cases and are already before the Court pursing their interests in separate actions.

Moreover, this is not a case where the Government is being wrongfully accused of actions performed by some other party, as in *Philadelphia Suburban Corp. v. United States*, 211 Ct. Cl. 354 (1976). There, plaintiff claimed that the Coast Guard refused to pay for the foam supplied by plaintiff to fight a days-long fire that occurred when two vessels collided. The Government argued it had no contract with plaintiff, and properly requested notice to a third party (B.P. Oil) on the basis that B.P. Oil's presence at the fire may have resulted in a contract between plaintiff and B.P. Oil. In such a case, the notice was properly issued because it would prevent numerous proceedings on an identical set of facts (same fire, same foam, same performance without payment), with the only outstanding issue being who the proper defendant was. The situation here stands in stark contrast given that all the parties are already before the court, and are pursing cases involving divergent factual and legal issues properly pled against the Government. Thus, Con Edison respectfully requests that the Court deny the Government's Renewed Motion with respect to RCFC 14(b) as well.

**CONCLUSION**

For all the foregoing reasons, Con Edison respectfully requests that the Court deny the Government's Renewed Motion to Consolidate, or, in the Alternative, for Issuance of a Summons Pursuant to RCFC 14(a) and Notice Pursuant to RCFC 14(b).

Dated: October 21, 2005

Respectfully submitted,

s/ David A. Churchill

David A. Churchill
JENNER & BLOCK, LLP
601 Thirteenth Street, NW, Suite 1200
Washington, DC 20005
(202) 639-6000

*Counsel of Record for*
*Consolidated Edison Company of New York, Inc.*

Of Counsel:

Cynthia J. Robertson
JENNER & BLOCK, LLP
601 Thirteenth Street, NW, Suite 1200
Washington, DC 20005
(202) 639-6000

Brent L. Brandenburg, Esq.
Assistant General Counsel
Consolidated Edison Company of New York, Inc.
4 Irving Place, Suite 1830
New York, NY 10003
(212) 460-4333

**CERTIFICATE OF FILING**

I hereby certify that on October 21, 2005, a copy of the foregoing "Consolidated Edison Company of New York, Inc.'s Response to Defendant's Renewed Motion to Consolidate, or, in the Alternative, for Issuance of a Summons Pursuant to RCFC 14 (a) and Notice Pursuant to RCFC 14 (b)" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system and that parties may access this filing through this system.

s/ David A. Churchill

David A. Churchill
JENNER & BLOCK, LLP
601 Thirteenth Street, NW, Suite 1200
Washington, DC 20005
(202) 639-6000

*Counsel of Record for*
*Consolidated Edison Company of New York, Inc.*

# EXHIBIT 1

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| ENTERGY NUCLEAR GENERATION COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 03-2626C |
| | ) | (Judge Lettow) |
| UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S REPLY TO BOSTON EDISON COMPANY'S AND ENTERGY NUCLEAR GENERATION COMPANY'S RESPONSES TO DEFENDANT'S MOTION TO CONSOLIDATE OR, IN THE ALTERNATIVE, FOR ISSUANCE OF A SUMMONS PURSUANT TO RCFC 14(a) AND NOTICE PURSUANT TO RCFC 14(b)

Defendant, the United States, respectfully submits this reply to the separate responses that Boston Edison Company ("Boston") and Entergy Nuclear Generation Company ("ENGC") filed to defendant's April 11, 2005 motion to consolidate two cases, Boston Edison Co. v. United States, No. 99-447C (Fed. Cl.), and Entergy Nuclear Generation Co. v. United States, No. 03-2626C (Fed. Cl.). As we explained in our motion to consolidate, both of these cases involve the assignor and assignee of the same contract with the Department of Energy ("DOE") and are currently pending before the same judge. Consolidation will promote the efficient administration of justice and prevent the potential for inconsistent rulings between the two cases.[1] To the extent that the Court declines to consolidate the Boston Edison and Entergy Nuclear Generation cases, we respectfully request that the Court (1) issue a summons pursuant to RCFC 14(a) to join ENGC as a third-party defendant upon a contingent claim in Boston Edison and (2) issue binding notice pursuant to RCFC 14(b) and the Contract Settlement Act, 41 U.S.C. § 114(b), to ENGC in Boston Edison and to Boston Edison Company ("BECO") in Entergy Nuclear Generation.

[1] This reply brief is being filed in both the Boston Edison and Entergy Nuclear Generation cases.

Court could not begin to analyze whether, and the amount by which, ENGC reduced its purchase price for the Boston facility. ENGC's assertions that the Court can simply estimate Boston's diminished value without conducting any in-depth analysis of Boston's contract or anticipated activities in the "but for" world are wholly unsupported.

## III. ENGC AND BOSTON HAVE NOT IDENTIFIED ANY BASIS FOR PRECLUDING ACTION UNDER RCFC 14(b) AND 41 U.S.C. § 114(b)

The Government's request for issuance of notice under RCFC 14(b) and 41 U.S.C. § 114(b) is appropriate. ENGC does not expressly address the Government's request for issuance of notice under RCFC 14(b), as permitted by 41 U.S.C. § 114(b), although it asserts that it objects to it.[6] ENGC Opp. 9; see Boston Opp. 19-20. Under 41 U.S.C. § 114(b), the Court may notify any party having a possible interest in any pending suit or proceeding to appear and assert or defend its interests.[7] Should a notified party fail to appear, "any and all claims or interests in claims of any such person against the United States, in respect to the subject matter of such suit or proceeding, shall forever be barred." 41 U.S.C. § 114(b). Notice is appropriate where third

---

6/ In its opposition, ENGC addresses the Government's request for issuance of a summons under RCFC 14(a), but does not explain its opposition to the Government's request for notice pursuant to RCFC 14(b). See ENGC Opp. 9-10. Because it is unclear whether, under Southern California Edison Co. v. United States, 226 F.3d 1349 (Fed. Cir. 2000), ENGC's filing of its complaint in this Court would permit the United States to invoke RCFC 14(a)'s rule regarding a summons relating to a contingent claim, and because consolidation of Boston's and ENGC's cases is the simplest method of eliminating the possibility of duplicative recoveries by Boston and ENGC, we will not pursue our request for issuance of a summons under RCFC 14(a) at this time. However, to the extent that the Court denies consolidation of these two cases, we reserve our right to renew this request. Further, to the extent that the cases are not consolidated, the Court should issue notice in the Boston case to ENGC pursuant to RCFC 14(b).

7/ To the extent that ENGC asserts that section 114(b) only applies to "erroneously paid" parties, ENGC Opp. 10, section 114(b) refers to the Government's right to request notice to those with "interests" in others' claims, not merely those to whom the United States has made erroneous payments. See 41 U.S.C. § 114(b).

# EXHIBIT 2

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| BOSTON EDISON COMPANY and ENTERGY NUCLEAR GENERATION COMPANY, | ) | |
| Plaintiffs, | ) | |
| v. | ) | Docket Nos.: 99-447C 03-2626C |
| UNITED STATES, | ) | |
| Defendant. | ) | |

Courtroom 8, Room 512
National Courts Building
717 Madison Place N.W.
Washington, D.C.

Tuesday,
June 14, 2005

The parties met, pursuant to notice of the Court, at 10:01 a.m.

BEFORE: HONORABLE CHARLES F. LETTOW
Judge

APPEARANCES:

<u>For Plaintiff Boston Edison</u>:

RICHARD J. CONWAY, Esquire
BRADLEY WINE, Esquire
Dickstein, Shapiro, Morin & Oshinsky, LLP
2101 L Street, N.W.
Washington, D.C. 20037-1526
(202) 828-2235

<u>For Plaintiff Entergy</u>:

ALEX D. TOMASZCZUK, Esquire
JAY SILBERG, Esquire

DANIEL S. HERZFELD, Esquire
Pillsbury Winthrop Shaw Pittman, LLP
1650 Tysons Boulevard
McLean, Virginia 22102
(703) 905-2000

APPEARANCES (continued):

L. JAGER SMITH, JR., P.E.
Wise Carter Child & Caraway
600 Heritage Building
401 East Capitol
P.O. Box 651
Jackson, Mississippi 39205
(601) 768-5500

For the Defendant:

HAROLD DEWITT LESTER, JR., Esquire
ALAN J. LO RE, Esquire
JOSHUA E. GARDNER, Esquire
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
1100 L Street, N.W.
Washington, D.C. 20530
(202) 305-7562
(202) 307-0226
(202) 305-7583

THE COURT: Now, given this sale, which was after January 31, 1998, Entergy knew -- it had to know -- it was buying a lawsuit.

But let's go to your brief in support of consolidation and the fact that, on the summons, or regarding the summons, you indicate that you would like such a summons to issue for the purpose of answering the contingent claim of the United States for the recovery of any monies that may be paid by the United States to BECO, that is, Boston Edison, with respect to the transactional matter which constitutes the subject matter of the pending suit against the United States.

MR. LESTER: Your Honor, I think if you look in footnote number 6 in our reply brief, which is on page 7, we have, at least for now, withdrawn that particular request in response to the Plaintiffs' arguments in their response briefs. It is a little unclear at this moment whether that is something that we can actually use Rule 14(a) to -- let me start over.

It's unclear at this moment whether 14(a)

can be used for that purpose on a contingent claim like this. So for purposes of this motion, we're limiting the alternative to consolidation to the 14(b) and particularly coupled with the 41 U.S.C. § 114(b) request.

THE COURT: So you're not trying to, at this juncture, recover or and against Entergy what you might have to pay in a diminished value claim Boston Edison.

MR. LESTER: Well, I think our issue is that, you know, our request isn't for an affirmative recovery by the government, per se; it's for a reduction in whatever damages claim Entergy puts forth so that the government wouldn't be entitled to an affirmative payment by Entergy, but it should be entitled to a reduction or offset against any damages that are awarded to Entergy, but it becomes complicated when the cases aren't consolidated as to exactly how that would play out. Consolidation seems a much simpler mechanism for dealing with this than trying to -- into Rule 14(a) and 14(b).

THE COURT: I see what you're driving at in