IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| CONSOLIDATED EDISON COMPANY OF NEW YORK, INC. Plaintiff, | |
| v. | No. 04-0033C (Judge Wheeler) |
| UNITED STATES OF AMERICA, Defendant. | |

DEFENDANT'S MOTION FOR RECONSIDERATION
OF THAT PORTION OF THE COURT'S AUGUST 24, 2005 ORDER DENYING
DEFENDANT'S MOTION TO DISMISS COUNT III OF PLAINTIFF'S COMPLAINT

Pursuant to Rule 54(b) of the Rules of the Court of Federal Claims ("RCFC"), defendant, the United States, respectfully requests that the Court reconsider that portion of its August 24, 2005 order denying the Government's motion to dismiss Count III of the complaint that plaintiff, Consolidated Edison Company of New York, Inc. ("ConEd"), filed.

BACKGROUND

On January 13, 2004, ConEd filed a three-count complaint in this Court. Count I alleged a breach of the Standard Contract for the Disposal of Spent Nuclear Fuel And/Or High Level Radioactive Waste ("Standard Contract"); Count II alleged a breach of the implied covenant of good faith and fair dealing; and Count III alleged a takings claim. Each of these counts was based upon the Government's delay in the acceptance of spent nuclear fuel ("SNF") pursuant to the Standard Contract. With respect to damages, ConEd claimed that the Government's "breach of the Standard Contract severely diminished the market value of Con Edison's nuclear electric generating facilities as reflected in the purchase price," and that "Con Edison also incurred additional pre-closing costs, as well as other damages associated with efforts to provide for

additional storage of SNF." ConEd Compl. ¶ 82. Concerning its takings claim, ConEd asserted that the Nuclear Waste Policy Act ("NWPA") "conferred upon Con Edison a right to have DOE dispose of Con Edison's SNF in a manner and at a cost consistent with the intent of Congress." Id. at ¶ 88. ConEd claimed that DOE's failure to begin acceptance of SNF by January 31, 1998, as well as DOE's fee collection practices associated with the Nuclear Waste Fund ("NWF"), "deprived Con Edison of the full use and value of its nuclear electric generating facilities" and "severely diminished the value of these facilities." Id. at ¶ 89. ConEd contended that the Government's failure to begin SNF acceptance constituted a taking of ConEd's "vested property rights without just compensation." Id.

On December 27, 2004, the Government moved to dismiss Counts I and II of ConEd's complaint with respect to its claim for diminution in value based upon the Government's delay in SNF acceptance under the Standard Contract and, further, moved to dismiss Count III in its entirety. With respect to Counts I and II, the Government contended that ConEd's claim for diminution in value constituted an impermissible consequential damage that was an independent and collateral undertaking from the Standard Contract. With respect to ConEd's takings claim, the Government asserted that ConEd may not claim a protected property interest in the NWPA and that any right ConEd had to the removal of SNF flowed exclusively from the Standard Contract. Consequently, because the Government had not taken any of ConEd's contractual remedies, ConEd could not maintain a takings claim based upon an alleged breach of the Standard Contract. Further, the Government maintained that the Court does not possess jurisdiction to adjudicate ConEd's challenge to the Secretary of Energy fee collection practices, given that the NWPA's judicial review provision grants exclusive and original jurisdiction over

such maters to the United States courts of appeals, and that such a claim failed to state a takings claims as a matter of law.

On August 24, 2005, the Court denied the Government's motion to dismiss. With respect to the diminution in value claim associated with the breach of the Standard Contract, the Court held that, based upon the assignment clause of the Standard Contract, "it is also fair to infer that failure to adhere to the Standard Contract might result in the diminution of the value obtained from a sale," and, consequently, such damages may be foreseeable. Consolidated Edison Co.. v. United States, 67 Fed. Cl. 285, 290 (2005). With respect to ConEd's takings claim, the Court concluded that "[t]he source and nature of Consolidated Edison's property rights, if any, is a disputed matter to be decided after trial." Id. at 291. The Court also held that, "[a]t this point, however, Consolidated Edison may proceed with both its takings and breach-of-contract claims concurrently. . . . Eventually, if both claims remain viable, recovery of damages under the contract would take precedence." Id. (citing Cienega Gardens v. United States, 331 F.3d 1319, 1334 (Fed. Cir. 2003) & Prudential Ins. Co. of Am. v. United States, 801 F.2d 1295, 1300 n.13 (Fed. Cir. 1986)). Finally, although the Court apparently concluded that it possessed jurisdiction to adjudicate ConEd's takings claim concerning the Secretary of Energy's fee collection practices under the NWF, Consolidated Edison, 67 Fed. Cl. at 289 n.3, the Court did not address the merits of the Government's motion to dismiss that aspect of ConEd's takings claim.

## SUMMARY OF ARGUMENT

In the Court's August 25, 2005 order denying the Government's motion to dismiss Count III of ConEd's complaint, the Court concluded that the determination of ConEd's property interests constitutes a factual dispute and necessarily assumed that ConEd could have a property

interest in the Nuclear Waste Policy Act. However, since the Court issued its decision in this case, the United States Court of Appeals for the Federal Circuit has explained that the determination of a property interest is a matter of law and that statutes generally may not form the basis of a property interest compensable under the Takings Clause of the Fifth Amendment.

In addition, the Court's decision relating to Count III appears to rely upon the proposition that contract and takings claims may be pled as alternatives, but that, if a contract claim is deemed viable, only at that point may the takings claim be dismissed. With all due respect, this notion of alternative claims represents a misapplication of the Federal Circuit's precedent. Additionally, this Court recently explained why a takings claim may not be plead as an alternative to a breach of contract claim where the Government does not take the plaintiff's contractual remedies.

Finally, we respectfully request that the Court reconsider its ruling regarding its ability to review the Secretary of Energy's fee collection practices. Although the Court appears to have concluded that it possesses jurisdiction to adjudicate such a claim, this conclusion appears inconsistent with decisions by the United States Court of Appeals for the District of Columbia Circuit. Further, the Court did not rule upon the merits of this aspect of ConEd's takings claim. As explained in the Government's motion to dismiss, and as discussed below, ConEd has failed to state a cognizable claim with respect to the Secretary of Energy's fee collection practices.

## DISCUSSION

### I. STANDARD FOR RECONSIDERATION

RCFC 54(b) provides in pertinent part:

> In the absence of any such determination or direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all claims and the rights and liabilities of all the parties.

The United States Court of Appeals for the Federal Circuit has recognized the inherent authority that this Court possesses to revisit its own decisions prior to entry of final judgment:

> The law of the case doctrine is a judicially created doctrine, the purposes of which are to prevent the relitigation of issues that have been decided and to ensure that trial courts follow the decisions of appellate courts. The doctrine requires a court to follow the decision on a question made previously during the case . . . . When a judgment of a trial court has been appealed, the decision of the appellate court determines the law of the case, and the trial court cannot depart from it on remand . . . . Orderly and efficient case administration suggests that questions once decided not be subject to continued argument, but the court has the power to reconsider its decisions until a judgment is entered.

Exxon Corp. v. United States, 931 F.2d 874, 877 (Fed. Cir. 1991) (emphasis added) (quoting Jamesbury Corp. v. Litton Indus. Prod., Inc., 839 F.2d 1544 (Fed. Cir. 1988)); see Florida Power & Light Co. v. United States, 66 Fed. Cl. 93, 96 (2005) (holding in SNF case that the Court "possesses inherent power to modify [its] interlocutory orders before entering a final judgment").[1]

---

[1] The denial of a motion to dismiss is an interlocutory order that is generally not subject to immediate appeal. Texas Health Choice v. Office of Personnel Mgmt, 400 F.3d 895, 898 (Fed. Cir. 2005)

Because the law of the case "merely requires a trial court to follow rulings of an appellate court," it "does *not* constrain the trial court with respect to issues not actually considered by an appellate court . . . ." Id. (emphasis in original). Accordingly, the trial judge "always has the power to change a ruling; further reflection may allow a better informed ruling in accordance with the conscience of the court." Jamesbury, 839 F.2d at 1551; see Chui v. United States, 948 F.2d 711, 717 (Fed. Cir. 1991).

Further, "[a] successor judge steps into the shoes of his or her predecessor, and is thus bound by the same rulings and given the same freedom, as the first judge." Exxon Corp., 931 F.2d at 878. "To the extent that a trial judge can alter a previous ruling, so too can a successor judge." Id.; see Chui, 948 F.2d at 717 (stating that, in Exxon, "successor judge assigned to take over a case after remand from [appellate court] was not required by law of the case, [Rule] 52, or any other authority, to give any particular deference to a predecessor judge's findings of ultimate fact which were not examined in, relied on, or otherwise necessary to the decision in a prior appeal"); Jamesbury, 839 F.2d at 1551 ("if the first judge can . . . change his ruling, a second judge should have and does have the power to do so as well").[2]

[2/] A somewhat different rule may apply with regard to review of findings of fact that the first judge had made based upon the first judge's credibility determinations. See Chui, 948 F.2d at 717-18; Exxon, 931 F.2d at 878. In this case, however, the Court did not make any credibility determinations in denying the Government's motion to dismiss.

## II. THE COURT SHOULD RECONSIDER ISSUES RELATED TO THE NATURE OF PLAINTIFF'S PROPERTY INTEREST BASED UPON INTERVENING FEDERAL CIRCUIT PRECEDENT

### A. The Federal Circuit Has Held That The Determination Of The Nature Of A Property Interest Is A Matter of Law Rather Than An Issue of Fact

In our motion to dismiss, we explained that ConEd's only right to the removal of SNF derives from the Standard Contract, and, consequently, it may not base a takings claim upon a breach of the Standard Contract. In response to the Government's motion, ConEd claimed that it has a protected property interest in the NWPA. In denying the Government's motion to dismiss ConEd's takings claim, the Court held that "[t]he source and nature of Consolidated Edison's property rights, if any, is a disputed matter to be decided at trial." Consolidated Edison, 67 Fed. Cl. at 291. However, as explained below, the nature of a plaintiff's property interest is a question of law rather than a question of fact, and the Federal Circuit has recently explained that a plaintiff does not possess a protected property interest in statutes for purposes of compensation under the Takings Clause of the Fifth Amendment.

One month after the Court's decision denying the Government's motion, the Federal Circuit issued its decision in Texas State Bank v. United States, 423 F.3d 1370 (Fed. Cir. 2005), reh'g denied (Dec. 13, 2005), and reaffirmed the proposition that the determination of the nature of a property interest is a question of law rather than a question of fact. Id. at 1379 (citing Webbs Fabulous Pharmacies, Inc. v. Beckwith, 449 U.S. 155, 161 (1980); Cermak v. Babbitt, 234 F.3d 1356, 1361 (Fed. Cir. 2000); Coast Indian Cmty. v. United States, 213 Ct. Cl.129, 550 F.2d 639, 649 (1977)). Of course, the Federal Circuit's decisions are binding upon this Court. Strickland v. United States, 423 F.3d 1335, 1338 n.3 (Fed. Cir. 2005).

Indeed, such a rule makes perfect sense. Under the Court's current holding in this case, the Government would be forced to engage in timely and expensive discovery over the nature of ConEd's alleged property interest. Indeed, the Government would presumably have to ask ConEd's witnesses what the nature of ConEd's property interests are, and whether ConEd has a protected property interest in the NWPA. We would fully expect that counsel for ConEd would object to such questions as calling for a legal conclusion. Consequently, we respectfully request that the Court reconsider that aspect of its decision holding that the determination of a property interest is a matter of fact and, further, decide the nature of ConEd's property interest as a matter of law.

B. The Federal Circuit Has Held That Statutes Generally May Not Form The Basis For A Protected Property Interest For Purposes Of A Takings Claim

In reconsidering the nature of ConEd's property interest, the Court should also consider that the Federal Circuit recently has rejected the notion that statutes like the NWPA may form the basis of a protected property interest that is compensable under the Fifth Amendment. In our motion to dismiss, we referred to numerous cases, including cases from the Federal Circuit, that support the conclusion that statutes may not form the basis for a property interest for purposes of the Fifth Amendment. Gov't Mot. at 23-24.[3] In a decision issued the day after this Court's decision, the Federal Circuit explicitly rejected the notion that a statute may form the basis for a protected property interest that is compensable by the Government under the Fifth Amendment. In Members of the Peanut Quota Holders Association, Inc. v. United States, 421 F.3d 1323 (Fed. Cir. 2005), the Federal Circuit held that the Government was not responsible for paying the

[3] "Gov't Mot. at __" refers to the Government's motion to dismiss filed on December 27, 2004.

holders of peanut quotas just compensation when the Government made the quotas less valuable. Id. at 1334.[4] The Federal Circuit explained that the plaintiffs were not entitled to compensation

> because the property interest represented by the peanut quota is entirely the product of a government program unilaterally extending benefits to the quota holders, and nothing in the terms of the statute indicated that the benefits could not be altered or extinguished at the government's election.

Id. The Federal Circuit further explained that, although the quotas were a form of property, they were subject to alteration or elimination by changes in the Federal program and that such changes did not give rise to a takings claim. Id.

As in Peanut Quota, ConEd may not assert a protected property interest in the NWPA, as a matter of law, for purposes of compensation under the Fifth Amendment. Indeed, ConEd has cited to no specific provision of the NWPA that would confer upon ConEd a protected property interest. As we explained in our motion to dismiss, the NWPA is not self-executing. Rather, pursuant to section 302(a) of the NWPA, the Secretary of Energy was "authorized to enter into contracts with any person who generates or holds title to [SNF] of domestic origin for the acceptance of title, subsequent transportation, and disposal of such [SNF]." 42 U.S.C. § 10222(a)(1). Further, the Secretary of Energy was barred from disposing of any SNF or HLW under the NWPA "unless the generator or owner of such [SNF] has entered into a contract with the Secretary under this section by not later than . . . June 30, 1983; or . . . the date on which such generator or owner commences generation of, or takes title to, such [SNF]; whichever occurs later." 42 U.S.C. § 10222(b)(2). As a result, DOE's obligation to dispose of a generator's or

---

[4/] The Government cited to the trial court's decision in Peanut Quota in its motion to dismiss. Gov't Mot. at 24.

owner's SNF was conditioned upon the existence of a contract between the generator (or owner) and DOE.

Our position here is entirely consistent with the Court's decision in Commonwealth Edison v. United States, 56 Fed. Cl. 652 (2003), granting the Government's motion to dismiss an SNF plaintiff's taking claim:

> [P]rior to the Standard Contract DOE did not have an obligation to accept or dispose of plaintiff's SNF or HLW. Plaintiff alone was responsible for the storage and dispsoal of its SNF and HLW prior to the Standard Contract. Therefore, absent the contract, plaintiff would have been obligated to conduct the same or similar storage activities that it now asserts creates a takings claim. The court finds that plaintiff's claim for a taking is dependent upon the existence of the Standard Contract and therefore plaintiff's rights are enforceable through a contract remedy.

Id. at 656 (footnote omitted); see Canal Electric Co. v. United States, 65 Fed. Cl. 650, 655-56 (2005) (dismissing identical takings claim to ConEd based upon the reasoning of the Federal Circuit in Castle and the Court's decision in Commonwealth Edison); Southern Nuclear Operating Co. v. United States, No. 98-614C, slip op. at 5 (Fed. Cl. Apr. 7, 2004) (unpublished opinion) (dismissing SNF plaintiff's takings claim because it "is grounded on the SNF contracts that [the two plaintiffs] executed with the United States").

Consequently, we respectfully request that the Court reconsider this aspect of its decision denying the Government's motion to dismiss the takings claim in ConEd's complaint and hold that the only protected property interest in the removal of its SNF that ConEd may possess derives solely from the Standard Contract.[5]

---

[5] The Government does not dispute that ConEd may have a protected property interest in its real property. However, as the Court in Commonwealth Edison explained in rejecting a takings claim based upon "real property" interests, "[a]lthough plaintiff may have real property interests

## III. THE COURT SHOULD RECONSIDER WHETHER PLAINTIFF MAY PLEAD A TAKINGS CLAIM AS AN ALTERNATIVE TO A BREACH OF CONTRACT CLAIM

In the Government's motion to dismiss ConEd's takings claim, the Government contended that, where a plaintiff has rights emanating from a contract with the Government and the Government has not taken the plaintiff's contract remedies, the plaintiff may not maintain a takings claim based upon the breach of that contract. In the Court's order denying the Government's motion to dismiss, the Court held that, "[a]t this point, however, Consolidated Edison may proceed with both its takings and breach-of-contract claims concurrently. . . . Eventually, if both claims remain viable, recovery of damages under the contract would take precedence." Consolidated Edison, 67 Fed. Cl. at 291 (citing Cienega Gardens, 331 F.3d at 1334 & Prudential Ins. Co. of Am. v. United States, 801 F.2d 1295, 1300 n.13 (Fed. Cir. 1986)). The Court stated that, "[o]nce the breach-of-contract claim has been fully litigated, it will become possible to determine its viability," and that "claims of a breach of contract and a taking may be brought concurrently and may proceed at least until the contract claim becomes viable and trumps the takings claim." Consolidated Edison, 67 Fed. Cl. at 292. With all due respect, this conclusion is in contradiction to the Federal Circuit's decisions regarding takings claims and breaches of contract, and is in conflict with a recent decision by this Court.

that are separate from its interests under the Standard Contract, plaintiff does not have a takings claim absent the rights and obligations granted to the parties by the Standard Contract." 56 Fed. Cl. at 656. Although ConEd may attempt to characterize its complaint as based upon a taking of its real property, it is actually complaining that DOE has not removed ConEd's SNF from ConEd's property pursuant to the terms of the Standard Contract.

In concluding that takings and contract claims may be brought simultaneously, the Court relies primarily upon the Federal Circuit's decisions in Cienega Gardens and Prudential. However, neither of these decisions support the conclusion that takings claims may be brought as alternatives to contract claims. The Federal Circuit's decision in Cienega Gardens v. United States, 331 F.3d 1319 (Fed. Cir. 2003), has no relevance to the resolution of ConEd's takings claim. Indeed, if anything, Cienega Gardens supports the proposition that, where the Government enters into a contract with a plaintiff and breaches that contract, plaintiff's remedies lay in breach of contract rather than the Takings Clause of the Fifth Amendment. Cienega Gardens involved the implementation of regulations that interfered with the plaintiffs' investment-backed expectations in contracts that it had with third parties. Because the Government was not a party to the contracts, no contract remedy existed and, thus, the court found a regulatory taking had occurred. Id. at 1325; see Allegra Villa v. United States, 60 Fed. Cl. 11, 19 (2004) (explaining rationale of taking in Cienega). Conversely, because the plaintiff in Allegre Villa had a contract with the Government and was in privity of contract with the Government, this Court required it to pursue the breach of contract claim and dismissed its takings claims:

> Because their contracts were with private lenders, plaintiffs in Cienega Gardens and Chancellor Manor were not in privity with the Government; thus, no contract claim against the Government was available to address the subsequent prepayment limitations by the Government. The present action, in contrast, involves plaintiffs that entered into contracts directly with the Government, and such contracts provide a remedy for the later prepayment restrictions.

Allegre Villa, 60 Fed. Cl. at 19. Consequently, there was no issue concerning alternative claims in Cienega because the plaintiff in that case did not have a contract claim against the Government.

Further, the basis for the notion that breach of contract and takings claims may be brought in the alternative is based upon a misapplication of the Federal Circuit's decision in Prudential Insurance Co. of America v. United States, 801 F.2d 1295 (Fed. Cir. 1986). In Prudential, the issue before the Court was whether foreseeability of damages for breach of a lease agreement should be measured as of the date of contract execution or the date that the lease was breached. Id. at 1300. Concluding that foreseeability of damages for breach of a lease agreement should be measured as of the date of contract execution, the Court noted in dicta that, "[a]lthough this may place a more difficult burden on a lessor seeking consequential damages against the government as a holdover tenant, lessors may have an alternative avenue of relief under the Takings Clause of the Fifth Amendment." Id. at 1300, n.13. Indeed, the plaintiff in Prudential had not brought a takings claim based upon the Government's hold-over of the lease.

Any doubt as to the viability of the Federal Circuit's dicta in Prudential has been laid to rest in its more recent decision in Castle v. United States, 301 F.3d 1328 (Fed. Cir. 2002), a decision that the Court did not address in its decision denying the Government's motion to dismiss. In Castle, the Federal Circuit expressly rejected the notion that a takings claim may be brought as an alternative to a breach of contract claim, holding that, where a plaintiff retains its contractual remedies, it may not maintain a takings claim based upon a breach of a Government contract. Id. at 1341-42. Further, in a decision issued the week after the Court's decision in this case, the Court in Klamath Irrigation District v. United States, 67 Fed. Cl. 504 (2005), rejected

the notion of "alternative" breach of contract and takings claims, explaining that it was inconsistent with the nature of rights created by a contract with the Government:

> To be sure, some cases suggest that, under this rule, a takings claim is resurrected if a breach of contract is not found, see Systems Fuels, Inc. v. United States, 65 Fed. Cl. 163, 172-73 (2005). But such suggestions reflect a misunderstanding of the rationale for this rule. At least as described in Winstar and Castle, the rule favoring contract remedies depends upon there being symmetry between the contract rights to be enforced and the contract damages that are potentially available. Once this symmetry is established, a finding on the merits that no breach occurred does not break that relationship, but merely reflects that the contract rights that were asserted either never existed or were not adversely affected by the government's actions. Under either scenario, those same contract rights cannot provide the predicate for a takings because the government cannot take what the claimant does not have.

Id. at 432 n.31 (citations omitted).

Consequently, we respectfully request that the Court reconsider that aspect of its decision denying the Government's motion to dismiss on the grounds that ConEd may plead a takings claim as an alternative to a breach of contract claim, and dismiss Count III of ConEd's complaint.

## IV. THE COURT SHOULD RECONSIDER THAT ASPECT OF PLAINTIFF'S TAKINGS CLAIM ASSOCIATED WITH THE SECRETARY OF ENERGY'S FEE COLLECTION PRACTICES

Finally, we respectfully request that the Court reconsider that aspect of its decision regarding ConEd's claim in connection with its assertion that the Secretary of Energy has engaged in an overcollection of fees from utilities under the Nuclear Waste Fund. In our motion to dismiss this aspect of ConEd's takings claim, we asserted that (1) the Court lacked jurisdiction to adjudicate this aspect of ConEd's takings claim based upon the original and

exclusive jurisdiction provision contained in Section 119 of the NWPA, 42 U.S.C. § 10139; and (2) the mere obligation to pay money does not constitute a cognizable takings claim.

In General Electric Uranium Management Corporation v. United States Department of Energy, 764 F.2d 896 (D.C. Cir. 1985), the D.C. Circuit held that the courts of appeals have original and exclusive jurisdiction pursuant to 42 U.S.C. § 10139(a)(1)(A) to review a challenge to DOE's collection of the one-time fee mandated by the Standard Contract and the NWPA. Id. at 901; see also Midwest Indep. Transmission Sys. Operator, Inc. v. Federal Energy Regulatory Comm'n, 388 F.3d 903, 909 (D.C. Cir. 2004) (citing the General Electric decision with approval concerning its analysis of original and exclusive jurisdiction pursuant to 42 U.S.C. § 10139(a)(1)(A)).

In its August 25, 2005 order, the Court stated that it possessed subject matter jurisdiction over this claim, noting that "[t]his Court acknowledges and accepts the rulings of the D.C. Circuit that court has original and exclusive jurisdiction to review DOE's actions in setting the fees due under the NWPA and the Standard Contract." Consolidated Edison, 67 Fed. Cl. at 289 & n.3. With all due respect, by accepting the D.C. Circuit's decision regarding its original and exclusive jurisdiction to adjudicate the Secretary of Energy's fee collection practices, it necessarily follows that this Court does not possess jurisdiction to adjudicate such claims. We respectfully request that the Court reconsider this aspect of its denial of the Government's motion to dismiss Count III of ConEd's complaint, as the Court's decision results in significant

uncertainty concerning the scope of this Court's jurisdiction vis a vis the courts of appeals to resolve issues arising under the NWPA.[6]

Further, even assuming this Court possesses jurisdiction to adjudicate this aspect of ConEd's takings claim, this Court should dismiss Count III of ConEd's complaint for failure to state a claim upon which relief can be granted.[7] First, as we explained in our motion to dismiss, "while a taking may occur when a specific fund of money [in a private party's possession] is involved, the mere imposition of an obligation to pay money . . . does not give rise to a claim under the Takings Clause of the Fifth Amendment." Gov't Mot. at 32 (citing Commonwealth Edison Co. v. United States, 271 F.3d 1327, 1340 (Fed. Cir. 2001); United States Shoe Corp. v. United States, 296 F.3d 1378, 1383 (Fed. Cir. 2002)). "Unlike real or personal property, money is fungible." United States v. Sperry Corp., 493 U.S. 52, 62 n.9 (1989), quoted in Commonwealth, 271 F.3d at 1338. Accordingly, "[r]equiring money to be spent is not a taking of property." Atlas Corp. v. United States, 895 F.2d 745, 756, cert. denied, 498 U.S. 811 (1990). Indeed, in Adams v. United States, 391 F.3d 1212 (Fed. Cir. 2004), the Federal Circuit reaffirmed its previous decision in Commonwealth Edison and held that "no statutory obligation to pay money . . . can create a property interest within the meaning of the Takings Clause." Id. at 1225.

---

6/ We note that the issue of this Court's jurisdiction to adjudicate spent nuclear fuel cases generally, and to adjudicate challenges to the Secretary of Energy's fee collection practices specifically, is currently before the Federal Circuit in PSEG Nuclear, L.L.C. v. United States, No. 05-5162 (Fed. Cir.).

7/ The Court did not address the merits of this aspect of ConEd's takings claim in its August 24, 2005 decision.

Second, absent the Standard Contract, no fees need be paid into the NWF. See 10 C.F.R. § 961.11, Art. VIII. Although the amount of the fee is set by statute, based upon a "1.0 mil per kilowatt-hour" charge, 42 U.S.C. § 10222(a)(2), nothing in the NWPA itself requires any entity to pay this fee into the NWF. Instead, the NWPA provides that contracts into which the Secretary of Energy enters pursuant to the NWPA "shall provide for the payment to the Secretary of [these] fees . . . sufficient to offset expenditures . . ." and that, if an entity enters into a contract with the Secretary for disposal of its SNF, the contract will require the contract holder to pay the fees. 42 U.S.C. § 10222(a)(1). For the reasons previously explained, ConEd cannot take a fee payment required only by contract and somehow create a cognizable takings claim.

Third, at bottom, ConEd is seeking a claim for restitution of the alleged excess monies it paid into the NWF. However, as a matter of law, a party is not entitled to bring a claim for restitution based upon a partial breach of contract. Hansen Bancorp Inc. v. United States, 367 F.3d 1297, 1309 (Fed. Cir. 2004) (relief in restitution is only available if breach gives rise to claim for total breach rather than partial breach). In this case, where ConEd has continued its performance obligations up to the date of the sale of its interests, and the purchasers of ConEd's interests, Entergy Nuclear Indian Point 2, has sued the Government upon a partial breach of contract theory, ConEd is precluded as a matter of law from seeking a refund of monies that it has paid into the NWF.

"The terms total breach and partial breach are frequently used by the courts in determining the remedies available to the injured party." 9 A. Corbin, Corbin on Contracts § 946, at 717-18 (interim ed. 1979). "A total breach of contract is a non-performance of duty that is so material and important as to justify the injured party in regarding the whole transaction

as at an end." 9 A. Corbin, supra, § 946, at 718; see Restatement (Second) of Contracts § 236(1), at 214 (1981) ("[a] claim for damages for total breach is one for damages based on all of the injured party's remaining rights to performance"). As the Federal Circuit recently explained, "[w]hen a party sues for partial breach, it retains its right to sue for damages for its remaining rights to performance." Indiana Michigan Power Co. v. United States, 422 F.3d 1369, 1377 (Fed. Cir. 2005). Because ConEd has elected to treat DOE's delay in performance as a partial, rather than a total, breach, ConEd is not entitled to claim restitution damages based upon the Secretary of Energy's fee collection practices.

Consequently, we respectfully request that the Court address the merits of ConEd's takings claim concerning the Secretary of Energy's fee collection practices, and dismiss Count III for failure to state a cognizable takings claim.

## CONCLUSION

For the foregoing reasons, defendant respectfully requests that the Court reconsider portions of its August 25, 2005 order denying the Government's motion for summary judgment and dismiss Count III of ConEd's complaint.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director

s/ Joshua E. Gardner
JOSHUA E. GARDNER
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 305-7583
Fax: (202) 307-2503

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

January 19, 2006

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that on this 19th day of January 2006, a copy of foregoing "DEFENDANT'S MOTION FOR RECONSIDERATION OF THAT PORTION OF THE COURT'S AUGUST 24, 2005 ORDER DENYING DEFENDANT'S MOTION TO DISMISS COUNT III OF PLAINTIFF'S COMPLAINT" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Joshua E. Gardner