**No. 04-0033C**
**(Judge Wheeler)**

---

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**CONSOLIDATED EDISON COMPANY OF NEW YORK, INC.,**
**Plaintiff,**

**v.**

**UNITED STATES OF AMERICA,**
**Defendant.**

---

# CONSOLIDATED EDISON COMPANY OF NEW YORK, INC.'S OPPOSITION TO DEFENDANT'S MOTION TO RECONSIDER THIS COURT'S ORDER DENYING DISMISSAL OF CON EDISON'S TAKINGS CLAIM

David A. Churchill, Esq.
Jenner & Block, LLP
601 Thirteenth Street, NW, Suite 1200
Washington, DC 20005
(202) 639-6000

*Counsel of Record for*
*Consolidated Edison Company of New York, Inc.*

February 16, 2006

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| CONSOLIDATED EDISON COMPANY OF NEW YORK, INC., Plaintiff, | ) | |
| v. | ) | No. 04-0033C (Judge Wheeler) |
| UNITED STATES OF AMERICA, Defendant. | ) | |

CONSOLIDATED EDISON COMPANY OF NEW YORK, INC.'S
OPPOSITION TO DEFENDANT'S MOTION TO RECONSIDER THIS COURT'S ORDER
DENYING DISMISSAL OF CON EDISON'S TAKINGS CLAIM

Pursuant to Rules 7.2(c) and 12(b) of the Rules of the U.S. Court of Federal Claims, Consolidated Edison Company of New York, Inc. ("Con Edison") hereby submits its brief in opposition to the Motion for Reconsideration of That Portion of the Court's August 24, 2005 Order Denying Defendant's Motion to Dismiss Count III [Taking Claim] of Plaintiff's Complaint ("Reconsideration Motion") filed by Defendant United States (the "Government") on January 19, 2006.

Because the Government's Reconsideration Motion represents little more than re-argument of settled matters following the transfer of this case from Judge Lettow to Judge Wheeler, Con Edison attaches herewith its initial opposition brief – which persuaded the Court less than six months ago to uphold its taking claim at the same stage of litigation.[1] *Consolidated Edison Company of New York, Inc. v. United States*, 67 Fed. Cl. 285, 292 (2005).

---

[1] Pursuant to RCFC 5.2 (b)(3)(B), Con Edison relies upon Consolidated Edison Company of New York, Inc.'s Opposition to Defendant's Motion to Dismiss, filed on January 27, 2005, at pages 22 through 43, reproduced in its entirety at Exhibit A.

The Government's purported basis for reconsideration – "intervening Federal Circuit precedent"[2] – is a thinly-veiled attempt to rehash already-rejected arguments. The Government's newly-cited cases merely reinforce well-established contours of takings law that underlie the Court's initial decision. It is hardly surprising that, in another SNF case, the Court required only seven days to deny a similar motion to reconsider the viability of a taking claim that relied on the very same new cases cited in Government's motion filed here. *See System Fuels, Inc. and Arkansas Entergy, Inc. v. United States*, No. 03-2623C, slip op. at 1 (Fed. Cl. Feb. 1, 2006) (unpublished opinion) and Defendant's Motion for Reconsideration of Certain Aspects of the Court's April 20, 2005 Opinion, filed January 25, 2006.

Just as in *System Fuels*, the Government's Reconsideration Motion of Con Edison's taking claim should be promptly denied. The Government's pattern of attempting to disrupt orderly and efficient case administration by motions practice must be curtailed. This Court recently denied consolidation with *Entergy Nuclear Indian Point 2, LLC v. United States*, No. 04-3622C – an issue that was twice denied by Judge Lettow before the Government raised the issue for a third time during the Court's recent scheduling conference on January 20, 2006. *Con Edison,* No. 04-0033C, slip op. at 2 (Fed. Cl. Jan. 23, 2006). Like the tired consolidation motion, this Reconsideration Motion repeats the same arguments, framed in the same way, that preceded denial of the Government's motion to dismiss Con Edison's taking claim by Judge Lettow in August 2005. Those arguments failed to persuade the Court then, and are no more persuasive now.

---

2 Reconsideration Motion at 7.

DISCUSSION

I. STANDARD OF REVIEW

Under RCFC 54(b), the Court has discretion to reconsider his own as well as his predecessor's rulings before a final judgment is entered. This discretion is not without limit. *See, e.g., U.S. Gypsum Co. v. Schiavo Bros., Inc*. 668 F.2d 172, 176 (3d Cir. 1981). A successor judge generally should not overrule the earlier order or judgment of a predecessor, although he or she has discretion to do so in the interest of justice. *Abshire v. Seacoast Prods., Inc*., 668 F.2d 832, 837-38 (5th Cir. 1982) "'The second judge may alter previous rulings if new information convinces him that they are incorrect, but he is not free to do so . . . merely because he has a different view of the law or facts from the first judge.'" *PSEG Nuclear LLC v. United States*, No. 01-551C, slip op. at 4 (Fed. Cl. April 22, 2005) (unpublished opinion), quoting *Williams v. Comm'r of Internal Revenue*, 1 F.3d 502, 503 (7th Cir. 1993). "Litigants . . . have the right to expect that, when judges are 'changed in midstream,' the change 'will not mean going back to square one.'" *Id.*

Although perhaps "less exacting" than a motion to reconsider a final judgment made under Rules 59 or 60, courts are guided by the general principles underlying those rules. *See, e.g., Livingston Downs Racing Association, Inc. v. Jefferson Downs Corporation*, 259 F.Supp.2d 471, 475 (M.D. La 2002); *Bragg v. Robertson*, 183 F.R.D. 494, 495-96 (S.D. W. Va. 1998). A motion for reconsideration under RCFC 59(a) will only be granted "upon demonstration of a 'manifest error of law, or mistake of fact, and is not intended to give an unhappy litigant an additional chance to sway the court.'" *Citizens Federal Bank v. United States*, 53 Fed. Cl. 793, (Fed. Cl. 2002), quoting *Bishop v. United States*, 26 Cl. Ct. 281, 286 (1992) (other citation omitted). "A movant must show either that: (a) an intervening change

in the controlling law has occurred; (b) evidence not previously available has become available, or (c) that the motion is necessary to prevent manifest injustice." *Id.* A court should not allow a party to use a motion for reconsideration "for the purposes of rearguing positions that have already been rejected." *Citizens Federal Bank*, 53 Fed. Cl. at 794, citing *Stelco Holding v. United States*, 45 Fed. Cl. 541, 542 (2000).

The same principles underlying the standard for motions to reconsider also historically framed the law of the case doctrine. Although a narrower principle now, the law of the case doctrine once applied with equal force to interlocutory decisions that had not been appealed as well as to those that had been appealed. *See, e.g., International Electronics Corp. v. United States*, 2 Cl. Ct. 570, 574 (1983). Although RCFC 54(b) allows the Court discretion to reconsider its prior rulings, the principles underlying the law of the case apply equally here. "Judicial decisions must at some point be final so that litigation will not continue indefinitely because a party is dissatisfied." *Id.,* citing *United States v. Turtle Mountain Band of Chippewa Indians*, 612 F.2d 517, 520 (1979). Indeed, "[p]arties cannot relitigate settled points in the hope that passage of time or changes in the composition of a court will lead to more favorable results." *Id*. Thus, although a judge has the discretion to revisit interlocutory decisions, the party requesting reconsideration bears the heavy burden of showing that an alteration of the prior ruling is in the interest of justice. *Id.*

Finally, given the underlying motion to be reconsidered is for dismissal under RCFC 12(b)(6), a motion to dismiss should not be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

## II. THE COURT'S PREVIOUS REJECTION OF DEFENDANT'S MOTION TO DISMISS CON EDISON'S TAKINGS CLAIM

On August 24, 2005 – a mere five months ago – Judge Lettow denied the Government's first motion to dismiss Con Edison's takings claim in a lengthy, well-reasoned opinion based on settled law. *Consolidated Edison*, 67 Fed. Cl. at 291-92. The Court correctly concluded that "both the contractual and the takings claim are currently viable grounds upon which relief can be granted, assuming Consolidated Edison proves the circumstances being alleged. To do so, a more complete record is necessary." *Id.* at 292. Underlying this decision were two important principles. The first was the Court's full understanding that Con Edison's takings claim arose not solely from the Standard Contract, but also "stemmed from, among other things, the NWPA [Nuclear Waste Policy Act of 1982, 42 U.S.C. § 10101 et seq.] and the Atomic Energy Act of 1954, 42 U.S.C. §§ 2011-2297g-4." *Id.* at 391 (citation omitted). The second was the Court's recognition that "[g]iven that the standard for determining whether a regulatory taking has occurred is both fact-intensive and case-specific, developing a more comprehensive record is appropriate." 67 Fed. Cl. at 392, citing *System Fuels*, 65 Fed. Cl. 163, 172-73 (2005); *see also Tahoe-Sierra Preservation Council, Inc. v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 336-37 (2002). The Court was properly mindful that the issue is "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." 67 Fed. Cl. at 289.

## III. THE GOVERNMENT'S CITATION TO NEW CASELAW DOES NOT ALTER EXISTING TAKINGS LAW AND ONLY BOLSTERS THE COURT'S INITIAL DETERMINATION THAT CON EDISON'S TAKING CLAIM IS VIABLE

### A. *Texas State Bank v. United States* Reaffirms Settled Takings Law That The Court Considered In Upholding Con Edison's Taking Claim

The Government first argues that the Court was wrong to determine that Con Edison's taking claim involved disputed matters that precluded dismissal. To justify its position, the Government cites *Texas State Bank v. United States*, which "reaffirmed that the determination of the nature of a property interest is a question of law rather than a question of fact." Reconsideration Motion at 7, citing *Texas State Bank*, 423 F.3d at 1379.

The Government's argument fails for several reasons. First, *Texas State Bank* is entirely distinguishable given that the Federal Circuit determined that "the relevant facts [we]re not in dispute" and thus turned solely on a legal question. *Texas State Bank*, 423 F.3d at 1378. Second, the Circuit in *Texas Bank* was concerned not with *whether* a taking had occurred, but instead, the *nature* of the property interest. *Id.* As the Supreme Court and this Circuit have made clear, *whether* a taking has occurred is a question of law based on factual underpinnings. *See, e.g., Bass Enterprises Production Company v. United States*, 133 F.3d 893, 895 (Fed. Cir. 1998), citing *Penn Central Transp. Co. v. City of New York*, 438 U.S. 104, 124 (1978) (establishing legal criterial to guide the 'essentially ad hoc, factual inquiries'); *see also Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1030-31 (1992); *Branch v. United States*, 69 F.3d 1571, 1583 (Fed. Cir. 1995); *Stearns Company, Ltd. v. United States*, 34 Fed. Cl. 264, 272 (1995). Following these principles, the Federal Circuit has reversed the dismissal of a takings claim because it was "not a legal impossibility" that the claimant "might establish facts constituting a taking." *Whitney Benefits, Inc. v. United States*, 752 F.

2d 1554, 1555, 1558-60 (Fed. Cir. 1986) (whether or not there has been a taking . . . is normally a fact issue that cannot be resolved except on a 'complete record,' or at trial").

To follow the Government's argument to its logical conclusion would mean that *any* case implicating a question of law, be it a taking or contract interpretation,[3] should *never* proceed beyond a motion to dismiss even where there are facts in dispute. This cannot be. In fact, it may explain why the Government chose to completely drop this line of argument six days after filing its Reconsideration Motion here, when it filed before Judge Lettow a similar motion in the *System Fuels* case.[4] *See System Fuels, Inc. and Arkansas Entergy, Inc. v. United States*, No. 03-2623C, Defendant's Motion for Reconsideration of Certain Aspects of the Court's April 20, 2005 Opinion, filed January 25, 2006. This omission alone speaks volumes on the merit of applying this "intervening precedent" to the case presented here.

B. *Members of the Peanut Quota Holders Association, Inc. v. United States*, Further Supports Con Edison's Takings Claim

The Government wrongly insists that *Peanut Quota* supports its argument that statutes may not form the basis for a property interest for purposes of a taking claim. *See* Reconsideration Motion at 8. To the contrary, the Federal Circuit found just the opposite when it *reversed* the Court of Federal Claims' initial determination and upheld the claimed property right. *Peanut Quota*, 421 F.3d at 1331. Specifically, the Federal Circuit reaffirmed the parameters of a protected property interest. These parameters are delimited by the law

[3] *See, e.g., Southern California Federal Savings & Loan Association v. United States*, 422 F.3d 1319, 1328 (Fed. Cir. 2005), finding "[t]he existence or non-existence of a contract is a mixed question of law and fact; contract interpretation is a question of law." This case required a two-month trial to resolve factual issues.

[4] As in this case, Judge Lettow denied the Government's motion to dismiss in *System Fuels* because he found that the standard for determining whether a regulatory taking has occurred is fact intensive and case specific. *System Fuels, Inc. v. United States*, 65 Fed.Cl. 163, 172 (2005), citing *Tahoe-Sierra Preservation Council*, 535 U.S. at 336-37.

that creates the interest and by "existing rules and understandings" and "background principles" derived from independent sources, such as state, federal, or common law. *Id*. at 1331. In turn, these rules and principles focus on the nature of the citizen's relationship to the alleged property, such as whether the citizen had the rights to exclude, use, transfer, or dispose of the property. *Id*. at 1330, citing *United States v. Gen. Motors*, 323 U.S. 373, 378 (1945). The Court further clarified that to have a property interest in a benefit, "a person . . . must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Id.*, citing *Bd. of Regents of State Colls v. Rothe*, 408 U.S. 564, 577 (1972). Ultimately, the Court found that the 1996 FAIR Act and state case law established that a peanut quota allotment was transferable and exclusive and thus constituted a sufficient property interest under takings law. *Peanut Quota*, 421 F.3d at 1331.

Con Edison's claim squarely fits within the parameters outlined by *Peanut Quota*. With respect to transferability, the NWPA clearly allows the rights and duties of Standard Contract holders to be assigned and transferred. 42 U.S.C. § 10222(b)(3). With respect to excludability, the Circuit clarified that "[a] property right accrues when the government has seen fit to take a limited resource and secure it for the benefit of an individual or a predetermined group of individuals." 421 F.3d at 1334. In this case, that limited resource was access to a functioning repository for the permanent disposal of Con Edison's SNF.

Even though the Federal Circuit found the existence of a property interest in *Peanut Quota*, it ultimately denied the taking claim. The critical question hinged on whether the peanut quota was compensable. *Id*. at 1334. The Circuit found the answer to be no because "the property interest represented by the peanut quota is entirely the product of a government

program *unilaterally* extending benefits to the quota holders, and nothing in the terms of the statute indicated that the benefits could not be altered or extinguished at the government's election." *Id.* (emphasis added).

Con Edison's taking claim more than meets the compensability test enunciated in *Peanut Quota*. Unlike holders of peanut quotas, or food stamps, or other social welfare programs, *id*. at 1334-35, Con Edison was induced since the early 1950's to invest substantial amounts in nuclear-generated electric power production. In return for that investment, the Government promised that it – not Con Edison – would ultimately be responsible for disposal of SNF. At the time Con Edison filed its complaint, it had paid more than $115 million to the Government to perfect its property rights in SNF disposal. Thus, unlike statutes that grant a form of gratuity, or that do not create an investment-backed expectation, Con Edison was required to pay fees in return for the Government's promise to take title to and dispose of SNF beginning no later than January 31, 1998.

Finally, Con Edison, unlike the *Peanut Quota* claimants, does not complain that its property rights in SNF disposal were ever withdrawn, and indeed they never have been. The obligation of the Government to begin disposal of SNF at a repository no later than January 31, 1998 remains enshrined to this day in the NWPA, 42 U.S.C. § 10222(a)(5)(B). This meaning has been confirmed by multiple appellate court decisions[5] and this obligation has never been modified or repealed.

---

5 *Indiana Michigan Power Co. v. Department of Energy*, 88 F.3d 1272 (D.C. Cir. 1996) ("Indian Michigan"); *Northern States Power Company v. United States Department of Energy*, 128 F.3d 754 (D.C. Cir. 1997) (Finding "In [*Indian Michigan*], we held that the Nuclear Waste Policy Act ("NWPA") imposes on the Department of Energy ("DOE") an unconditional obligation to begin disposing of high-level radioactive waste and spent nuclear fuel ("SNF") by January 31, 1998); *Maine Yankee Atomic Power Company v. United States*, 225 F.3d 1336 (Fed. Cir. 2000).

The Government again argues that SNF taking claims relying *exclusively* upon rights created by the Standard Contract should be dismissed. *See* Reconsideration Motion at 10, citing *Commonwealth Edison v. United States*, 56 Fed. Cl. 652 (2003), *Southern Nuclear Operating Co. v. United States*, No. 98-614C, slip op. at 5 (Fed. Cl. April 7, 2004) (unpublished opinion), and *Canal Electric Co. v. United States*, 65 Fed. Cl. 650, 655-56 (2005).[6] Causes of action in different cases are, of course, drafted differently, rely on different, situation-specific allegations and legal premises, and are thus subject to varied outcomes when tested**.** But as the Court here has itself noted, Con Edison's complaint sets out that Con Edison's taking claim arose not from the Standard Contract, but "stemmed from, among other things, the NWPA [Nuclear Waste Policy Act of 1982, 42 U.S.C. § 10101 et seq.] and the Atomic Energy Act of 1954, 42 U.S.C. §§ 2011-2297g-4." *Id.* at 391, citing Plaintiff's Jan. 27, 2005 Opposition at 23-24.

Excluding the contract-based takings claims cited by the Government in the Reconsideration Motion, the Court of Federal Claims has consistently upheld taking claims for reasons identical to those underlying the Court's initial ruling. *See Omaha Public Power District v. United States*, 69 Fed. Cl. 237, 243 (2005); *System Fuels, Inc. v. United States*, 65 Fed.Cl. 163, 172-73 (2005); *Boston Edison Co. v. United States*, 64 Fed. Cl. 167, 179-86 (2005); *Del Marva Power & Light Co. v. United States and Atlantic City Electric Co.* v. United States, No. 04-34C and 04-36C, slip op. at 4-5 (Fed. Cl. July 1, 2005); *Sacramento*

---

6 *Klamath Irrigation District v. United States*, 67 Fed. Cl. 504 (2005), the last of the three "new" cases cited by the Government, likewise has no bearing on the issues raised here. *Klamath* dealt entirely with interests found to be "based on contracts," *see* 67 Fed. Cl. at 531, and thus in Judge Allegra's words, "remedies arise from the contracts themselves, rather than property rights." *Id.* (citation omitted.).

*Mun. Util. Dist. v. United States*, 61 Fed. Cl. 438, 442-43 (2004); *Detroit Edison Co. v. United States*, 56 Fed. Cl. 299, 302-03 (2003).

IV. IT IS NOW SETTLED THAT THIS COURT HAS JURISDICTION OVER CON EDISON'S TAKINGS CLAIM

The Government attempts to reargue that the Court lacks jurisdiction to adjudicate that portion of Con Edison's taking claim related to the Secretary of Energy's overcollection of fees under the Nuclear Waste Policy Act, 42 U.S.C. § 10101 et seq. Reconsideration Motion at 14. The Government admits that the Court has already concluded it possesses subject matter jurisdiction over this claim. *Id.* As between these two litigants, that question was finally determined in 1999.

More than five years ago, Con Edison pursued essentially identical claims before the D.C. Circuit Court of Appeals. Con Edison's complaint asserted that the Government's conduct constituted a continuing violation of NWPA, a breach of the statutory contract, and a violation of the takings and due process clauses of the Fifth Amendment. The complaint also asserted that DOE's failure to dispose of SNF caused a diminution in the value of Con Edison's property and assets. The Government argued before the D.C. Circuit that those claims could not be brought before the D.C. Circuit, but should instead be brought before the U.S. Court of Federal Claims. The D.C. Circuit agreed with the Government and dismissed Con Edison's claims, *Consolidated Edison Company of New York, Inc. v. Department of Energy*, 1999 WL 325517 (D.C. Cir. April 16, 1999), finding them precluded by its holding in *Northern States Power Co. v. Dep't of Energy*, 128 F.3d 754 (D.C. Cir. 1997) (*Northern I*). *Northern I* deferred to the Court of Federal Claims' jurisdiction, finding "that petitioners must pursue the remedies provided in the Standard Contract in the event that DOE does not perform its duty to dispose of the SNF by January 31, 1998." *Id.* at 759. Ignoring res

judicata principles, the Government now argues that the Court of Federal Claims has no jurisdiction over these matters. Upholding the Government's argument would result in Con Edison having no forum at all where it may pursue its claims – an absurd result not sanctioned by due process or equitable considerations.[7]

Contrary to the Government's arguments to dismiss the fee collection aspect of Con Edison's taking claim, were Con Edison to have refused payment, the licensed status of its entire nuclear investment would be put at risk. *See* 42 U.S.C. § 10222 (b)(1)(A). This represents a classic "illegal exaction" claim under *Aerolineas Argentinas v. United States*, 77 F.3d 1564 (Fed. Cir. 1996), and its progeny. The principles of *Aerolineas Argentinas* were briefed extensively to the Court during the Government's prior effort to dismiss Con Edison's taking claim. *See* Exhibit A at 22 - 27. *Aerolineas Argentinas* establishes that an improper exaction of property or money that may have occurred under color of a contractual obligation neither relegates the claimant to a contract remedy, deprives the claimant of standing to assert such a claim, nor supplies the Government with a defense to the taking or exaction itself. *Aerolineas Argentinas*, 77 F.3d at 1564.

The Government also asserts that Con Edison is improperly seeking restitution by way of its allegations regarding the NWF fee payments. The Government specifically contends that "as a matter of law, a party is not entitled to bring a claim for restitution based upon a partial breach of contract." Reconsideration Motion at 17. Finally, the Government argues that "ConEd is not entitled to claim restitution damages based upon the Secretary of Energy's fee collection practices." *Id.* at 18. The Government's argument – directed against Con Edison's breach of contract allegations – demonstrates plainly why Con Edison must be

---

[7] For a more detailed argument on this matter, please see Exhibit A, at 35-43.

permitted to proceed with its taking claim. As Con Edison has properly alleged, the NWPA's threat of license revocation essentially forced Con Edison to become a Standard Contract holder. 42 U.S.C. § 10222 (b)(1)(A). Likewise, far from "electing" to treat DOE's delay in performance as partial, Con Edison was constrained by the NWPA to do so given the NWPA's mandate that DOE bear the responsibility for ultimate disposal of SNF. No matter whether total or partial breach was alleged, DOE would remain duty bound to fulfill its statutory obligation to continue performance – a result that the Government's parsing of partial breach cannot square with the statute itself.

The Government's theory could therefore only lead to the conclusion that by enacting the NWPA, the government deprived Con Edison from a contractual remedy, i.e., total breach and restitution, which would confirm, rather than refute, that a taking has occurred. Thus, unlike the plaintiffs in *Castle v. United States*, 301 F.3d 1328, 1342 (Fed. Cir. 2002), under the Government's logic Con Edison has not in fact retained the "full range of remedies" that it would be entitled to under contract, in the absence of the statute. If this were so, then that would necessarily mean the contract remedy was inadequate, and consistent with *Castle*, that a taking has indeed occurred.

CONCLUSION

For all the foregoing reasons, Con Edison respectfully requests that the Court summarily deny the Government's motion to reconsider this Court's Order denying dismissal of Con Edison's Takings Claim, and respectfully suggests that the Court need not entertain further briefing to uphold the Court's August 24, 2005 ruling.

Dated: February 16, 2006

Respectfully submitted,

s/ David A. Churchill

David A. Churchill, Esq.
Jenner & Block, LLP
601 Thirteenth Street, NW, Suite 1200
Washington, DC 20005
(202) 639-6000

*Counsel of Record for*
*Consolidated Edison Company of New York, Inc.*

Of Counsel:

Brent L. Brandenburg, Esq.
Assistant General Counsel
Consolidated Edison Company
of New York, Inc.
4 Irving Place, Suite 1830
New York, NY 10003
(212) 460-4333

Cynthia J. Robertson, Esq.
Jenner & Block, LLP
601 Thirteenth Street, NW, Suite 1200
Washington, DC 20005
(202) 639-6000

Daniel F. Stenger, Esq.
Hogan & Hartson LLP
Columbia Square
555 Thirteenth Street, N.W.
Washington, D.C. 20004-1109
(202) 637-5691

CERTIFICATE OF FILING

I hereby certify that on February 16, 2006, a copy of the foregoing "Consolidated Edison Company Of New York, Inc.'s Opposition to Defendant's Motion to Reconsider This Court's Order Denying Dismissal Of Con Edison's Takings Claim" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system and that parties may access this filing through this system.

s/ David A. Churchill

David A. Churchill, Esq.
Jenner & Block, LLP
601 Thirteenth Street, NW, Suite 1200
Washington, DC 20005
(202) 639-6000

*Counsel of Record for*
*Consolidated Edison Company of New York, Inc.*