No. 04-0033C
(Judge Wheeler)

IN THE UNITED STATES COURT OF THE FEDERAL CLAIMS

CONSOLIDATED EDISON COMPANY OF NEW YORK, INC.,

Plaintiff,

v.

THE UNITED STATES OF AMERICA,

Defendant.

# DEFENDANT'S REPLY TO CONSOLIDATED EDISON COMPANY OF NEW YORK, INC.'S OPPOSITION TO DEFENDANT'S MOTION FOR RECONSIDERATION

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

HAROLD D. LESTER, JR.
Assistant Director

JOSHUA E. GARDNER
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street N.W.
Washington, DC 20530
Tele: (202) 305-7583
Fax: (202) 307-2503

Attorneys for Defendant

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

March 2, 2006

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . ii

SUMMARY OF ARGUMENT . . . . . . . . . . 1

DISCUSSION . . . . . . . . . . 3

I. RECONSIDERATION OF THE COURT'S ORDER IS APPROPRIATE . . . . . . . . . . 2

A. Because ConEd Concedes That The Nature Of Its Property Interest Is A Legal Issue, Reconsideration On This Issue Is Appropriate . . . . . . . 2

B. ConEd Cannot Identify A Single Case In Which A Federal Statute Has Been Deemed To Create A Property Right Compensable Under The Takings Clause Of The Fifth Amendment . . . . . . . . . . 5

II. RECONSIDERATION OF THE COURT'S DECISION REGARDING PLAINTIFF'S CHALLENGE TO THE SECRETARY OF ENERGY'S FEE COLLECTION PRACTICES IS APPROPRIATE . . . . . . . . . . 12

A. The Government Is Not Precluded From Challenging This Court's Jurisdiction To Adjudicate ConEd's Claim Regarding The Secretary Of Energy's Fee Collection Practices . . . . . . . . . . 12

B. Reconsideration Of The Dismissal Of ConEd's Takings Claim Is Appropriate Because ConEd Has Failed To State A Cognizable Claim . . . . . . . . . . 14

CONCLUSION . . . . . . . . . . 18

## TABLE OF AUTHORITIES

### CASES

Aerolineas Argentinas v. United States,
77 F.3d 1564 (Fed. Cir. 1996) ............................................................ 15, 16, 17

Amen v. City of Dearborn,
718 F.2d 789 (6th Cir. 1983), cert. denied, 465 U.S. 1101 (1984) ................................ 14

Canal Electric Co. v. United States,
65 Fed. Cl. 650 (2005) ............................................................................ 4, 9

Castle v. United States,
48 Fed. Cl. 187 (2000), rev'd on other grounds, 301 F.3d 1328
(Fed. Cir. 2002) .................................................................................... 11, 12

Christianson v. Colt Industries,
486 U.S. 800 (1988) ................................................................................ 14

Commonwealth Edison Co. v. United States,
56 Fed. Cl. 652 (2003) .............................................................................. 4

Commonwealth Edison Co. v. United States Department of Energy,
877 F.2d 1042 (D.C. Cir. 1989) ................................................................ 13

Consolidated Edison Co. v. United States,
67 Fed. Cl. 285 (2005) .............................................................................. 3

Consolidated Edison Co. v. U.S. Department of Energy,
870 F.2d 694 (D.C. Cir. 1989) .................................................................. 13

Consumers Energy Company v. United States,
57 Fed. Cl. 278 (2003) ........................................................................ 17, 18

Detroit Edison Co. v. United States,
56 Fed. Cl. 299 (2003) ............................................................................ 10

Granite Management Corp. v. United States,
55 Fed. Cl. 164 (2003) ............................................................................ 12

Home Savings of America v. United States,
51 Fed. Cl. 487 (2002) ............................................................................ 12

Klamath Irrigation District v. United States,
67 Fed. Cl. 504 (2005) .......................................................................................... 4, 10

Lion Raisins, Inc. v. United States,
416 F.3d 1356 (Fed. Cir. 2005) ........................................................................... 15

Members of the Peanut Quota Holders Association, Inc. v. United States,
421 F.3d 1323 (Fed. Cir. 2005) ........................................................................... 5, 7

Sacramento Municipal Utility District v. United States,
61 Fed. Cl. 438 (2004) .......................................................................................... 9, 10

Southern Nuclear Operating Co. v. United States,
No. 98-614C (Fed. Cl. Apr. 7, 2004) ..................................................................... 4

System Fuels, Inc. v. United States,
65 Fed. Cl. 163 (2005) .......................................................................................... 5, 6

Texas State Bank v. United States,
423 F.3d 1370 (Fed. Cir. 2005), reh'g denied (Dec. 13, 2005) ................................. 2, 3

United States v. Cook County,
170 F.3d 1084 (Fed. Cir. 1999) ........................................................................... 14

Yankee Atomic Electric Co. v. United States,
42 Fed. Cl. 223 (1998) .......................................................................................... 18

Zoeller v. United States,
65 Fed. Cl. 449 (2005) .......................................................................................... 4

**STATUTES**

10 C.F.R. 961.11, Art. XIV ........................................................................... passim

42 U.S.C. §§ 10101, et seq. ................................................................................... 2

42 U.S.C. § 10222(a)(1) ......................................................................................... 6

42 U.S.C. § 10222(a)(2) ......................................................................................... 16

42 U.S.C. § 10222(a)(4) ......................................................................................... 16, 17

42 U.S.C. § 10222(b)(2) ......................................................................................... 6

42 U.S.C. § 10222(b)(3) ......................................................................................... 6

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| CONSOLIDATED EDISON COMPANY OF NEW YORK, INC. Plaintiff, | ) | |
| v. | ) | No. 04-0033C (Judge Wheeler) |
| UNITED STATES OF AMERICA, Defendant. | ) | |

DEFENDANT'S REPLY TO CONSOLIDATED EDISON COMPANY OF NEW YORK, INC.'S OPPOSITION TO DEFENDANT'S MOTION FOR RECONSIDERATION

Defendant, the United States, respectfully submits this reply to "Plaintiff Consolidated Edison Company of New York, Inc.'s Opposition To Defendant's Motion To Reconsider This Court's Order Denying Dismissal Of Con Edison's Takings Claim," dated February 16, 2006.

SUMMARY OF ARGUMENT

In our motion for reconsideration, we explained that, based upon recent decisions from the United States Court of Appeals for the Federal Circuit, the Court should reconsider its decision that the nature of the property interest claimed by Consolidated Edison Company of New York, Inc. ("ConEd") is an issue of fact to be resolved at trial. Further, we explained that, when the Court makes a legal determination of the nature of ConEd's property interest, it should conclude that the Standard Contract is the sole basis of any rights claimed by ConEd. In addition, we explained that, once the Court determines that the Standard Contract is the sole basis of any rights that ConEd may claim, the Court should reconsider its determination that ConEd may claim a takings claim as an "alternative" to its breach of contract claim.

It is telling that, in response to the Government's motion for reconsideration, ConEd either expressly concedes or does not dispute that:

- the nature of ConEd's property interest is a question of law, and the Court erred in concluding that it was an issue of fact to be resolved at trial;
- the Nuclear Waste Policy Act ("NWPA"), 42 U.S.C. §§ 10101-10270, is not self-executing;
- absent the Standard Contract, ConEd would have been solely responsible for the storage and disposition of its spent nuclear fuel ("SNF");
- to the extent that ConEd's right to the Government's acceptance and disposal of SNF derives solely from the Standard Contract, ConEd is limited to the recovery of contract damages and may not allege a takings claim as a matter of law; and
- ConEd has failed to allege a physical invasion takings claim as a matter of law.

Further, in our motion, we requested that the Court reconsider whether it possesses jurisdiction to adjudicate ConEd's challenge to the Secretary of Energy's fee collection practices and, to the extent that the Court possesses jurisdiction, whether ConEd has stated a cognizable takings claim as a matter of law. In its opposition, ConEd fails to address why this Court possesses jurisdiction. Rather, ConEd contends that the Government is somehow precluded by res judicata from challenging this Court's jurisdiction to adjudicate such issues. However, as we discussed in our motion to dismiss, as well as below, ConEd's contention is fundamentally flawed. Consequently, reconsideration of the denial of the Government's motion to dismiss ConEd's takings claims is appropriate.

## DISCUSSION

### I. RECONSIDERATION OF THE COURT'S ORDER IS APPROPRIATE

#### A. Because ConEd Concedes That The Nature Of Its Property Interest Is A Legal Issue, Reconsideration On This Issue Is Appropriate

In our motion for reconsideration, we explained that, under the United States Court of Appeals for the Federal Circuit's decision in Texas State Bank v. United States, 423 F.3d 1370

(Fed. Cir. 2005), reh'g denied (Dec. 13, 2005), the determination of the nature of a property interest is a question of law rather than a question of fact. Id. at 1379 (citing Webbs Fabulous Pharmacies, Inc. v. Beckwith, 449 U.S. 155, 161 (1980); Cermak v. Babbitt, 234 F.3d 1356, 1361 (Fed. Cir. 2000); Coast Indian Cmty. v. United States, 213 Ct. Cl.129, 550 F.2d 639, 649 (1977)). Notably, ConEd agrees with the Government's interpretation of Texas State Bank. See Pl. Opp. 6 ("the Circuit in Texas Bank was concerning not with *whether* a taking had occurred, but instead, the *nature* of the property interest") (italics in original).[1] However, in denying the Government's motion to dismiss ConEd's takings claim, the Court held that "[t]he source and nature of Consolidated Edison's property rights, if any, is a disputed matter to be decided at trial." Consolidated Edison Co. v. United States, 67 Fed. Cl. 285, 291 (2005). Consequently, reconsideration of this aspect of the Court's decision is appropriate, particularly given that both parties agree that the determination of the nature of ConEd's property interest is a question of law, rather than an issue of fact.

Rather than dispute that the nature of its property interest is a question of law that is appropriate for immediate resolution, ConEd devotes the majority of its discussion of Texas Bank to contending that the determination of whether a taking has occurred is a fact-intensive issue. Pl. Opp. 6-7. However, this argument puts the cart before the horse. If, as a matter of law, ConEd may not pursue a takings claim because its rights derive from the Standard Contract and the Government has not taken ConEd's contractual remedies, the Court need not reach the

---

[1/] "Pl. Opp. __" refers to plaintiff's response to the Government's motion for reconsideration, filed February 16, 2006.

otherwise fact-intensive and case-specific regulatory takings analysis.[2] This analysis is precisely the same that other courts have utilized in dismissing legally deficient takings claims based upon alleged breaches of contractual rights. See Canal Electric Co. v. United States, 65 Fed. Cl. 650, 655-56 (2005) (dismissing identical takings claim to ConEd); Southern Nuclear Operating Co. v. United States, No. 98-614C, slip op. at 5 (Fed. Cl. Apr. 7, 2004) (unpublished opinion) (dismissing SNF plaintiff's takings claim because it "is grounded on the SNF contracts that [the two plaintiffs] executed with the United States"); Commonwealth Edison Co. v. United States, 56 Fed. Cl. 652 (2003) (dismissing SNF takings claim). Indeed, this well-established analysis is not limited to SNF cases. See Klamath Irrigation District v. United States, 67 Fed. Cl. 504 (2005) (granting Government's motion for summary judgment on takings claim where nature of property interest derived from Government contract); Zoeller v. United States, 65 Fed. Cl. 449, 460 (2005) (granting Government's motion to dismiss takings claim where rights at issue derived from Government contract).

ConEd suggests in its opposition that the Government has somehow implicitly recognized that Texas State Bank does not control the outcome in this case because we did not raise this issue in our motion for reconsideration in another SNF case, System Fuels, Inc. v. United States, No. 03-2623C (Fed. Cl.). Pl. Opp. 7. We did not raise this issue in our motion for reconsideration in System Fuels because the Court did not deny the Government's motion to dismiss that plaintiff's takings claim based upon the nature of the property interest. Rather, the

---

2/ Notably, ConEd does not address, much less dispute, the legal deficiencies in its physical invasion takings claim discussed in both our motion to dismiss and our motion for reconsideration. For this reason alone, ConEd's physical invasion takings claim should be dismissed.

Court in System Fuels based its decision solely upon its belief that a takings claim may be brought as an alternative to a breach of contract claim and that "[o]nly after the contract claim has been fully litigated will it be possible to determine if the contract claim is viable." System Fuels, Inc. v. United States, 65 Fed. Cl. 163, 172 (2005). Indeed, the Government has sought reconsideration of that aspect of the Court's decision in System Fuels, just as it has sought reconsideration of that aspect of the Court's decision in this case. ConEd's suggestion that the Government has somehow made inconsistent arguments in this case and System Fuels is without merit.

B. ConEd Cannot Identify A Single Case In Which A Federal Statute Has Been Deemed To Create A Property Right Compensable Under The Takings Clause Of The Fifth Amendment

In our motion for reconsideration, we explained that, when the Court reconsiders the nature of ConEd's property interest, it should conclude that ConEd may not claim a cognizable property interest in the NWPA compensable under the Takings Clause of the Fifth Amendment of the Constitution. In support of this assertion, we cited to the Federal Circuit's recent decision in Members of the Peanut Quota Holders Association, Inc. v. United States, 421 F.3d 1323 (Fed. Cir. 2005), which rejected the contention, similar to the one made by ConEd, that a Federal statute may form the basis of a property interest that is compensable under the Fifth Amendment of the United States Constitution. Id. at 1334. In its opposition, ConEd conflates two different issues – the existence of a property interest, on the one hand, with the issue of whether such an interest may be compensable under the Takings Clause of the Fifth Amendment, on the other hand. Pl. Opp. 7-8.

With respect to whether ConEd has asserted a cognizable property interest, we do not dispute that the Standard Contract may constitute a cognizable property interest. Nor do we dispute that ConEd had, until the time that it sold its interest in Indian Point Nuclear Stations 1 and 2, a cognizable interest in its real property. Yet, the interest that ConEd asserts was taken in this case was its "property rights in SNF disposal." Pl. Opp. 9. This purported "right" to a Government service derives solely from the Standard Contract that ConEd and the Department of Energy ("DOE") entered into in 1983. As we explained in both our motion to dismiss and motion for reconsideration, the NWPA is not self-executing. Rather, pursuant to section 302(a) of the NWPA, the Secretary of Energy was "<u>authorized</u> to enter into contracts with any person who generates or holds title to [SNF] of domestic origin for the acceptance of title, subsequent transportation, and disposal of such [SNF]." 42 U.S.C. § 10222(a)(1) (emphasis added). Further, the Secretary of Energy was expressly <u>barred</u> from disposing of any SNF or high-level waste ("HLW") under the NWPA "<u>unless</u> the generator or owner of such [SNF] has entered into a contract with the Secretary under this section by not later than . . . June 30, 1983; or . . . the date on which such generator or owner commences generation of, or takes title to, such [SNF]; whichever occurs later." 42 U.S.C. § 10222(b)(2) (emphasis added).

ConEd suggests that it has some statutory right to assign its rights and duties under the Standard Contract and that such a right demonstrates a property interest in the Government's disposal of SNF deriving from the NWPA. Pl. Opp. 8. However, 42 U.S.C. § 10222(b)(3) specifically provides for the assignment of the "rights and duties of a party <u>to a contract entered into</u> under this section" and that same provision was promulgated in the Standard Contract. <u>See</u> 10 C.F.R. 961.11, Art. XIV (emphasis added). Consequently, rather than demonstrating that

ConEd has some protected property interest in SNF disposal deriving from the NWPA, the assignment provision of the NWPA supports the conclusion that any rights which ConEd may claim derive solely from the Standard Contract. Indeed, the Court need look no further than ConEd's own complaint for the source of its property interest, as ConEd asserts that "[t]he Standard Contract creates unconditional obligations on DOE to begin accepting Con Edison's SNF by January 31, 1998." Pl. Compl. ¶ 80. Simply put, ConEd does not address, much less explain, how it possesses some "property" interest in the Government's disposal of SNF that is separate from ConEd's rights under the Standard Contract.[3]

Under ConEd's theory, the Standard Contract is rendered entirely superfluous, as it creates no rights, obligations, or duties independent of the NWPA. Of course, such a result is absurd, particularly given that ConEd, as well as other SNF plaintiffs, have paid DOE money pursuant to the Standard Contract for the acceptance of the utilities' SNF. If utilities such as ConEd have a right to SNF acceptance outside of the Standard Contract, there would have been no need for them to pay fees for that same right under a contract.

With respect to whether ConEd's "property rights in SNF disposal" are compensable under the Takings Clause, although we cited to numerous cases rejecting the notion that Federal statute may create a property interest compensable under the Fifth Amendment in both our motions to dismiss and for reconsideration, ConEd has failed to cite to a single case in which a

---

[3] Notably, the NWPA contains no reference to the order or timing of DOE's acceptance of any particular utility's SNF. Rather, the schedule upon which DOE would accept SNF from commercial utilities is based solely upon the Standard Contract and its "oldest fuel first" provision. 10 C.F.R. § 961.11, Art. VI, B.1(a). Consequently, even if ConEd could somehow allege some statutory right in "SNF disposal," such a right is indefinite at best and plainly is not compensable under Peanut Quota.

court has held that a Federal statute creates a property right that is compensable under the Takings Clause. Indeed, it is telling that the basis for ConEd's contention that its property interest in SNF disposal is compensable – the payment of fees into the Nuclear Waste Fund, Pl. Opp. 9 – is a right that derives solely from the Standard Contract rather than from the NWPA. See 10 C.F.R. § 961.11, Art. VIII. In other words, absent the Standard Contract, commercial utilities would have no obligation to pay DOE for the acceptance and disposal of their SNF. This fact further demonstrates that, contrary to ConEd's contention, the NWPA does not provide any sort of cognizable, protected property interest compensable under the Fifth Amendment.

Indeed, ConEd appears to allege that its takings theory is predicated upon the proposition that the NWPA created "property rights in SNF disposal" that were later "taken" when the Government did not timely perform under the Standard Contract in 1998. This theory fails to state a cognizable takings claim as a matter of law. Indeed, ConEd's theory is the mirror image of the takings claims alleged in the Winstar and Housing and Urban Development ("HUD") cases. Unlike in the Winstar and the HUD cases, in which Congress passed legislation that allegedly took the plaintiffs' contract rights, here, ConEd appears to allege that it had a protected property interest in the NWPA that was taken when the Government failed to perform under the later-signed Standard Contract. The Government is unaware of any legal basis for such a novel theory, and ConEd has failed to identify any case in support of this theory. Indeed, this argument simply highlights the fact that what ConEd is really alleging is the Government's breach of a contractual obligation to dispose of its SNF – a theory that cannot, as a matter of law, constitute a cognizable takings claim under the Fifth Amendment.

Notably, ConEd does not even try to dispute that, if the Court concludes that ConEd's takings claims is predicated upon rights stemming from the Standard Contract, its takings claim fails as a matter of law. Pl. Opp. 10. Instead, ConEd argues that, "[e]xcluding the contract-based takings claims cited by the Government in the Reconsideration Motion, the Court of Federal Claims has consistently upheld takings claims for reasons identical to those underlying the Court's initial ruling." Id. (emphasis added). This argument is misplaced for several reasons.

**First**, ConEd has provided no reason why this Court should ignore the "contract-based" takings claims cited in both the Government's motion for reconsideration and motion to dismiss. Indeed, as mentioned above, absent the Standard Contract, ConEd has no right to SNF disposal by the Government. Consequently, reference to those Court decisions that have rejected "contract-based" takings claims is not only appropriate, but is absolutely critical to the determination of the issues in this case.[4]

**Second**, although ConEd cites to several Court of Federal Claims cases that it claims are not "contract-based" takings claims, ConEd is mistaken. In Sacramento Municipal Utility

---

4/ ConEd suggests that its case is somehow different from other SNF cases that have dismissed takings claims, asserting that "[c]auses of action in different cases are, of course, drafted differently, rely on different, situation-specific allegations and legal premises, and thus are subject to varied outcomes when tested." Pl. Opp. 10. As much as ConEd tries to couch its claim in factual robes, the underlying question for this Court is plainly legal: whether ConEd has "property rights in SNF disposal" that derive from a source other than the Standard Contract, and whether such rights are otherwise compensable under the Takings Clause. Notably, the Court in Canal Electric Co. v. United States, 65 Fed. Cl. 650 (2005), had before it virtually identical briefs as the Court in this case, as both cases involved the same counsel for the plaintiffs and virtually identical complaints. ConEd has not, and indeed cannot, explain why the Court's decision in Canal, which dismissed identical takings claims as those raised by ConEd, was incorrect or should not be followed by the Court in this case.

District v. United States, 61 Fed. Cl. 438 (2004) ("SMUD"), the Court expressly recognized that the plaintiff's takings claim was predicated upon the Government's breach of contract and concluded that, "where the Government has forced storage on another's private property, the Just Compensation Clause is implicated." Id. at 442. Although we disagree with the Court's conclusion that a utility's storage of its own SNF on its own property longer than it expected based upon the Government's failure to perform under a contract can constitute a cognizable takings claim, the Court in SMUD clearly analyzed the takings claim in that case as one arising under the Standard Contract.

Similarly, in Detroit Edison Co. v. United States, 56 Fed. Cl. 299 (2003), the plaintiff's takings claim was expressly predicated upon rights arising under the Standard Contract. Id. at 301 ("the complaint presents two takings theories: 1) The Government's failure to comply with the January 31, 1998 deadline in the Standard Contract constitutes a takings of plaintiff's vested contract rights; and 2) the Government's failure to remove plaintiff's SNF and HLW has forced plaintiff to house the substances on its real property, thereby depriving plaintiff of the full economic value of that property"). In Detroit Edison, the Court viewed the plaintiff's takings theory as an alternative to its contract claim and therefore allowed the plaintiff to proceed on its takings theory, "assuming that plaintiff cannot recover under the Standard Contract." Id. at 303. Yet, as we explained in our motion for reconsideration, takings claims may not be brought as "alternatives" to breach of contract claims. Klamath Irrigation, 67 Fed. Cl. at 432 n.31.

ConEd does not dispute that takings claims may not be alleged as "alternatives" to breach of contract claims where the Government has not taken the plaintiff's contractual remedies. Instead, ConEd claims that, by enacting the NWPA, the Government has somehow deprived

ConEd of its full range of contractual remedies by preventing ConEd from declaring a total breach of contract and seeking restitution. Pl. Opp. 13. This argument is curious, at best. ConEd cannot explain how the NWPA, which Congress enacted in January 1983, can deprive it of rights arising under a contract into which it entered months after the NWPA was enacted.

Even if ConEd were correct in its assertion that it could not declare a total breach and recover restitution, this fact would not somehow transform its breach of contract claim into a taking. In fact, this Court has rejected arguments similar to the one that ConEd raises here. In Castle v. United States, 48 Fed. Cl. 187 (2000), rev'd on other grounds, 301 F.3d 1328 (Fed. Cir. 2002), this Court correctly rejected the contention that the limitation upon contractual remedies gives rise to a takings claim:

> [Plaintiffs assert] that if [they] recover less than "just compensation" (*e.g.*, because the court denies lost profits or because contract damages cannot include pre-judgment interest), the Fifth Amendment requires the government to make up the difference . . . .
>
> [P]laintiffs' rule proves too much. If we were to characterize as a taking the failure to award pre-judgment interest on a contract claim, we would essentially invalidate the law's proscription against the allowance of pre-judgment interest when not specified by contract or congressional act. 28 U.S.C. § 2516(a). Further, the [limited] congressional waiver of sovereign immunity . . . means that plaintiffs have no reasonable expectation - and hence no property interest - in the money they might otherwise have earned as interest on an earlier-paid judgment.
>
> Similarly, the court's refusal to award lost profits does not transform plaintiffs' loss into a taking. As discussed earlier, the court was not reasonably convinced that profits would have existed, so the failure to award them in no way diminishes the value of plaintiffs' contract rights.

Castle, 48 Fed. Cl. at 219-20. The Court in Home Savings of America v. United States, 51 Fed. Cl. 487 (2002), squarely rejected that same argument, explaining as follows:

> [T]he lack of a "complete" contract remedy, either because it would not include interest or because the contract theory does not yield a recovery, does not give life to a takings theory. If the contract remedy does not produce a recovery, it is because the contract did not give a right to a recovery. In the absence of that contract remedy, no other property right is implicated.

Id. at 495-96, see Granite Management Corp. v. United States, 55 Fed. Cl. 164, 165 (Fed. Cl. 2003) (rejecting contention that inability to recover restitution under contract claim does not give rise to a takings claims). Similarly, in this case, ConEd's argument provides no basis for allowing it to maintain a takings claim, even as an alternative to other claims.

## II. RECONSIDERATION OF THE COURT'S DECISION REGARDING PLAINTIFF'S CHALLENGE TO THE SECRETARY OF ENERGY'S FEE COLLECTION PRACTICES IS APPROPRIATE

### A. The Government Is Not Precluded From Challenging This Court's Jurisdiction To Adjudicate ConEd's Claim Regarding The Secretary Of Energy's Fee Collection Practices

In our motion for reconsideration, we explained that, although the Court apparently concluded that it possessed jurisdiction to adjudicate ConEd's takings claim related to the Secretary of Energy's fee collection practices, this conclusion conflicts with those decisions from the courts of appeals which have concluded that issues associated with the collection of fees under the NWPA fall within the original and exclusive jurisdiction of the courts of appeals. Rather than address this issue directly, ConEd asserts that the Government is somehow precluded from raising such a challenge in this Court because the United States Court of Appeals for the District of Columbia Circuit has already resolved this issue. Pl. Opp. 11. ConEd's assertion is without merit.

**First**, ConEd's suggestion that the D.C. Circuit has held that challenges to the Secretary of Energy's fee collection practices belong in the Court of Federal Claims is directly contrary to the D.C. Circuit's decision in Commonwealth Edison Co. v. United States Department of Energy, 877 F.2d 1042 (D.C. Cir. 1989), in which the D.C. Circuit expressly held that, pursuant to 42 U.S.C. § 10139, it possesses original and exclusive jurisdiction to entertain challenges to the collection of NWF fees:

> The fee paid by utilities into the Fund resembles an assessment or tax more than it does a freely negotiated price. The size of the fee, moreover, is fixed by statute at the equivalent of 1 mil per kilowatt-hour of electricity generated, see 42 U.S.C. § 10222(a)(3). Because we interpret Commonwealth Edison's challenge as seeking review of a "final decision or action of the Secretary" in the form of a regulation promulgated under the Act, there is no question that we have jurisdiction to hear the petition, see 42 U.S.C. § 10139(a)(1); Consolidated Edison Co. v. U.S. Department of Energy, 870 F.2d 694, 695-96 (D.C. Cir. 1989); Wisconsin Electric Power Co. v. U.S. Department of Energy, 778 F.2d 1, 2-3 (D.C. Cir. 1985); General Electric Uranium Management Corp. v. U.S. Department of Energy, 764 F.2d 896, 900-04 (D.C. Cir. 1985).

Id. at 1045.

In fact, if any entity is barred from contesting the courts of appeals' original and exclusive jurisdiction over this issues, it is ConEd. In Consolidated Edison Co. v. United States, 870 F.2d 694 (D.C. Cir. 1989), the D.C. Circuit expressly assumed jurisdiction over a NWF challenge by ConEd. ConEd does not even mention this case in its opposition, let alone explain why it is not bound by res judicata from claiming that the Court possesses jurisdiction to adjudicate its challenge to the Secretary of Energy's fee collection practices.[5]

---

[5] As we explained in detail in our reply brief, dated March 7, 2005, even a cursory review of the previous SNF litigation in the courts of appeals indicates that the Government has

**Second**, even assuming the D.C. Circuit determined that it did not possess jurisdiction to adjudicate challenges to the Secretary of Energy's fee collection practices, the D.C. Circuit cannot decide whether this Court possesses jurisdiction to adjudicate these issues. See United States v. Cook County, 170 F.3d 1084, 1091-92 (Fed. Cir. 1999); see also Christianson v. Colt Industries, 486 U.S. 800, 815-18 (1988); Amen v. City of Dearborn, 718 F.2d 789, 793-94 (6th Cir. 1983), cert. denied, 465 U.S. 1101 (1984). Consequently, to the extent that ConEd asserts that the Court is somehow barred from considering its own jurisdiction, ConEd is incorrect.

Finally, ConEd does not address the merits of the Government's argument that this Court does not possess jurisdiction to adjudicate challenges to the Secretary of Energy's fee collection practices. As we explained in both our motion for reconsideration and our motion to dismiss, Section 119 of the NWPA expressly provides that challenges such as the one brought by ConEd in this case are within the original and exclusive jurisdiction of the courts of appeals. Consequently, reconsideration of the basis for this Court's jurisdiction to adjudicate ConEd's claims concerning the Secretary of Energy's fee collection practices is appropriate.

### B. Reconsideration Of The Dismissal Of ConEd's Takings Claim Is Appropriate Because ConEd Has Failed To State A Cognizable Claim

Finally, ConEd raises several assertions concerning the merits of its takings claim concerning the Secretary of Energy's fee collection practices. However, as explained below, none of these assertions have merit.

---

consistently taken the position that this Court has exclusive jurisdiction to adjudicate contract claims, but that the court of appeals have original and exclusive jurisdiction to adjudicate challenges to the Secretary of Energy's fee collection practices under Section 119 of the NWPA. Rather than reiterate the substantial previous litigation in the SNF cases, we respectfully refer the Court to pages 25 through 35 of our reply brief.

ConEd suggests that its claim concerning its challenge to the Secretary of Energy's fee collection practices should properly be viewed as an illegal exaction claim. This contention fails for several reasons. **First**, ConEd did not allege an illegal exaction claim in its complaint, and this claim should be rejected for that reason alone. **Second**, ConEd's newly-found illegal exaction claim is entirely inconsistent with its takings theory. As the Federal Circuit recently explained in Lion Raisins, Inc. v. United States, 416 F.3d 1356, 1369 (Fed. Cir. 2005), a claim premised on a regulatory or statutory violation is not a taking:

> We have made clear that a claim premised on a regulatory violation does not state a claim for a taking. In Rith Energy, Inc. v. United States, 247 F.3d 1355 (Fed. Cir. 2001) ("Rith I"), we took care to distinguish between the valid exercise of the Court of Federal Claims' jurisdiction over a takings claim when the claim was that "property was taken regardless of whether the agency acted consistently with its statutory and regulatory mandate" and the bar to such jurisdiction when "the plaintiff claims it is entitled to prevail because the agency acted in violation of statute or regulation." Id. at 1366 (emphasis in original). "[T]o the extent that the plaintiff claims it is entitled to prevail because the agency acted in violation of statute or regulation, [our decisions do] not give the plaintiff a right to litigate that issue in a takings action rather than in the congressionally mandated administrative review proceeding." Id.

Id. at 1369. Consequently, because a takings claim assumes "that the underlying governmental action was lawful," id. at 1370, whereas an illegal exaction presumes that the Government official acted unlawfully, to the extent that ConEd alleges that the Secretary of Energy somehow violated a particular statute or regulation in collecting fees under the NWF, its takings claim necessarily fails as a matter of law.

**Third**, ConEd's reliance upon Aerolineas Argentinas v. United States, 77 F.3d 1564 (Fed. Cir. 1996), in support of its contention that the Secretary of Energy's fee collection

practices constitutes an illegal exaction is misplaced. In Aerolineas, several airlines challenged the collection of payments by the Immigration and Naturalization Service ("INS") for the housing and guarding of certain aliens that had arrived in the United States on the plaintiffs' airlines. Id. at 1568. The plaintiffs claimed that, pursuant to statute, the INS, and not the plaintiffs, were required to bear the cost of housing and detaining the aliens. Id. The Federal Circuit held that, because the statute at issue required INS to bear the cost of housing and detaining the aliens, the INS's insistence that the airlines pay for such costs was contrary to law and, therefore, constituted an illegal exaction. Id. at 1578.

In contrast to the statute at issue in Aerolineas, the NWPA does not require the payment of any fees into the Nuclear Waste Fund. Rather, the only basis for the Secretary of Energy's collection of fees derives from the Standard Contract. See 10 C.F.R. § 961.11, Art. VIII. Instead, the NWPA simply sets the amount of the fee, based upon a "1.0 mil per kilowatt-hour" charge, see 42 U.S.C. § 10222(a)(2), to be paid only by contract holders. Further, Section 302(a)(4) of the NWPA provides that the Secretary shall annually review the amount of the fee and, if he views it as insufficient or excessive, to report to Congress:

> The Secretary shall annually review the amount of the fees established by paragraphs (2) and (3) above to evaluate whether collection of the fee will provide sufficient revenues to offset the costs as defined in subsection (d) of this section. In the event the Secretary determines that either insufficient or excess revenues are being collected, in order to recover the costs incurred by the Federal Government that are specified in subsection (d) of this section, the Secretary shall propose an adjustment to the fee to insure full cost recovery. The Secretary shall immediately transmit this proposal for such an adjustment to Congress. The adjusted fee proposed by the Secretary shall be effective after a period of 90 days of continuous session have elapsed following the receipt of such transmittal.

42 U.S.C. § 10222(a)(4). Consequently, unlike the situation in Aerolineas, where INS was found to act in contravention of statute, in this case, even accepting as true the allegations in ConEd's complaint, the Secretary of Energy plainly has the statutory authority to collect fees under the NWPA.[6] Indeed, because ConEd's obligation to pay fees into the NWF derives from the Standard Contract, it may not allege a takings claim based upon what, in essence, is an allegation that the Secretary of Energy somehow breached a contractual obligation to ConEd.

Finally, the Court has rejected identical illegal exaction claims in SNF cases. For example, in Consumers Energy Company v. United States, 57 Fed. Cl. 278 (2003), the Court rejected plaintiff's illegal exaction claim, explaining that the Government's obligations to accept SNF were dependent upon execution of a contract:

> While this Court is obligated to acknowledge the Federal Circuit's recognition of the mandatory nature of the Standard Contract, nonetheless, absent the execution of the Standard Contract, there is no provision of the NWPA establishing January 31, 1998, as the deadline for the Government's assumption of the obligation to accept, store and dispose of SNF. Under the NWPA, the Government did not gratuitously take over the burden of storage and disposal of SNF, but rather assumed the responsibility for that looming national problem contractually in return for payment of fees by the nuclear utilities into the NWF sufficient to cover the Government's costs. 42 U.S.C. § 10131(4).

Id. at 282 (emphasis in original).

---

[6] Further, because INS's collection of fees was not predicated upon a contract, but rather a statute and regulations, ConEd's assertion that "Aerolineas Argentinas establishes that an improper exaction of property or money that may have occurred under color of a contractual obligation neither relegates the claimant to a contract remedy, deprives the claimant of standing to assert such a claim, nor supplies the Government with a defense to the taking or exaction itself," Pl. Opp. 12, is both factually and legally incorrect.

Similarly, the Court rejected a plaintiff's illegal exaction claim in Yankee Atomic Electric Co. v. United States, 42 Fed. Cl. 223 (1998), because its rights are based upon the Standard Contract, not a statute:

> Yankee's illegal exaction claim fails because the duty on which the claim is based is contractual, not statutory. Section 302(a)(5)(B) of the NWPA directed DOE to assume a contractual obligation to begin disposing of SNF by January 31, 1998. 42 U.S.C. § 10222(a)(5). As discussed above, DOE has done so through Article II of the Standard Contract. Therefore, while DOE's failure to begin disposing of Yankee's SNF breaches Article II, it does not violate any statutory duty.

Id. at 237 (emphasis in original). As in Consumers Energy and Yankee Atomic, ConEd's contention that it somehow has a statutory right to DOE acceptance of its SNF, outside the context of the Standard Contract, is unsupported by precedent and contrary to the express language of the NWPA. ConEd has failed to explain why the Court should not follow the well-reasoned conclusions in Consumers Energy and Yankee Atomic.

## CONCLUSION

For the foregoing reasons, we respectfully request that the Court reconsider portions of its August 25, 2005 order denying the Government's motion for summary judgment and dismiss Count III of ConEd's complaint.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director

s/ Joshua E. Gardner
JOSHUA E. GARDNER
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 305-7583
Fax: (202) 307-2503

Attorneys for Defendant

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

March 2, 2006

CERTIFICATE OF FILING

I hereby certify that on this 2nd day of March 2006, a copy of foregoing "DEFENDANT'S REPLY TO CONSOLIDATED EDISON COMPANY OF NEW YORK, INC.'S OPPOSITION TO DEFENDANT'S MOTION FOR RECONSIDERATION" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Joshua E. Gardner