**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| CONSOLIDATED EDISON COMPANY OF NEW YORK, INC., Plaintiff, | ) | |
| v. | ) | No. 04-0033C (Judge Wheeler) |
| UNITED STATES OF AMERICA, Defendant. | ) | |

**PLAINTIFF'S MOTION FOR ENTRY OF SUPPLEMENTAL PROTECTIVE ORDER AND ORDER COMPELLING PRODUCTION OF DOCUMENTS**

Pursuant to RCFC 7, 35(a), and the May 18, 2004 Agreement and Protective Order ("Protective Order") ¶¶ 6 and 7 in this case,[1] Plaintiff Consolidated Edison Company of New York, Inc. ("Con Edison") respectfully submits this motion for entry of a Supplemental Protective Order and an Order compelling the Government to provide documents that Con Edison has been actively seeking since the initiation of discovery in 2004. Con Edison seeks entry of this Supplemental Protective Order to gain access to third party documents critical to its preparation for trial. The documents relate to valuation models, model outputs, asset assessment, bid and transactional documents used and generated by various nuclear utilities in connection with the possible (or actual) purchase (or sale) of nuclear power plants. Con Edison seeks these documents to prove that the Department of Energy's ("DOE's") failure to dispose of spent nuclear fuel ("SNF") depressed the marketplace for nuclear power plants, and required excess

[1] Attached as Exhibit A.

post-retirement decommissioning funding, which in turn dramatically affected the value of Con Edison's Indian Point 1 and 2 nuclear units when they were sold after DOE's breach.

Defendant has made clear its intention to use in this case any and all documents produced by any SNF plaintiff, or by third parties involved in the nuclear industry, that relate to the purchase and sale of nuclear plants or other aspects of Con Edison's case. Defendant, through its discovery efforts in the various SNF cases pending in the Court, has already obtained from other SNF plaintiffs many or even most of the documents sought by Con Edison. Accordingly, fairness dictates that Con Edison be permitted equal access to these documents through discovery, and that this access occur essentially simultaneously with these third parties' productions to the Government.

Counsel have made repeated efforts to resolve this matter without the Court's intervention. Defendant invited third party SNF buyer/seller plaintiffs to negotiate with Con Edison additional restrictions on the release of proprietary information implicated by Con Edison's discovery requests of the Government. Defendant now objects to the limited additional restrictions to which Con Edison and these companies have agreed. Given the substantial time already consumed with this aspect of Con Edison's necessary discovery and what appears (from Con Edison's perspective) to be Defendant's infinite ability to interpose objections to document production, Con Edison respectfully requests that final resolution of the Government's discovery obligations and the terms of the requested Supplemental Protective Order be determined under the supervision of the Court, along with entry of an Order compelling production of the Government's documents. Should Con Edison fail to receive the third-party documents it seeks, Con Edison will request the Court to enter a further Order precluding the Government from directly or indirectly using the information received from those documents in this litigation.

**Procedural History**

Con Edison initially requested materials from the Government through discovery requests issued on November 30, 2004. In Request No. 23, Con Edison made a continuing request of the Government to:

> Provide all responses which you have propounded or which you have received to discovery requests, including, but not limited to interrogatories, document requests and requests for admissions, for any case to which you have been a party and the Plaintiff has alleged your breach of the Standard Contract.

The Government responded to this request, among others, on September 23, 2005, after several months of stayed discovery. Con Edison and the Government met to discuss the Government's responses to Con Edison's requests in January 2006, during which Con Edison understood the Government to represent that many responsive documents would be found in the Government's "SNF production website." Plaintiff's counsel immediately sought and were granted access to this website. The SNF production website contains millions of pages of documents produced by the Department of Energy and various other governmental agencies in response to roughly 58 SNF cases, as well as discovery the Government has received in response to its own discovery requests of the various SNF plaintiffs. Con Edison agreed to search the Government's production website for the full range of requested documents. After a substantial review of the website, Con Edison determined, and the Government subsequently confirmed, that the various valuation and transactional assessment documents that have been supplied by other SNF plaintiffs to the Government in discovery were *not* among the documents available to Con Edison via this website.

Con Edison raised its pending request for third party valuation and transactional assessment documents (including asset assessments, bid decisional documents, valuation models, methodologies, and model output) in a March 9, 2006 telephonic hearing before the Court

(attached as Exhibit B) regarding entry of the Court's Pretrial Order on damages. During the March 9 hearing, counsel for Con Edison stated that "many of the potential buyers and sellers did create valuation methodologies for these various plants that were bought and sold in the timeframe in which we are interested, and the Justice Department, through discovery in these cases, has obtained through discovery of the other plaintiffs -- buyers and sellers -- all of these valuation models." March 9, 2006 telephonic hearing, at 8 (attached as Exhibit B). During the March 9 hearing, the Court requested the Government to address Con Edison's pending request for these documents "earlier rather than later so that Mr. Churchill is not surprised in some way closer to the time when he is supposed to submit his schedules." See March 9 hearing, at 9.

Con Edison restated its request for these documents in a March 10, 2006 letter to the Government regarding Con Edison's discovery requests (attached as Exhibit C). Con Edison stated, "While in request 23 we have requested all written discovery and documents received by the Government in SNF cases, our immediate need is to review discovery materials the Government has received or submitted in relation to the sale or purchase of [various nuclear plants]." *Id.* at 2-3. After further inquiries by Con Edison, the Government wrote to Con Edison on April 12, 2006, continuing to raise objections to production of the valuation documents produced by other SNF buyer/seller plaintiffs, including undue burden, relevance, and concerns regarding the proprietary and confidential information contained in other SNF plaintiffs' documents (attached as Exhibit D).

By letter dated April 18, 2006, Con Edison again confirmed the relevance of these documents, and again narrowed its request to the subset of transaction and valuation documents in those SNF cases that involve the post-breach sale of a nuclear power plant (attached as Exhibit E). Con Edison also restated its view that the existing Protective Order in this case and others

was sufficient to protect any third party proprietary information that might be contained in these documents.

On April 27, 2006, the Government sent a letter to several attorneys representing SNF buyer/seller plaintiffs, informing them of Con Edison's discovery request, and inviting them to contact the Government if they objected to such production (attached as Exhibit F). The Government also invited the SNF buyer/seller plaintiffs to contact Con Edison directly to negotiate additional safeguards for their documents that Con Edison had requested. *Id.* at 3.[2]

In response to the Government's April 27 letter, a single counsel for several affected SNF buyer/seller plaintiffs, including Entergy Nuclear Generation Company, Florida Power & Light Company, and their various affiliates, objected to production of those companies' documents to Con Edison without expanded protective order provisions. Addressing this objection, Con Edison negotiated the attached Supplemental Protective Order with counsel for those companies. The Order would limit the scope of distribution of those documents deemed confidential within Con Edison and among its counsel, but creates no additional burdens for other SNF buyer/seller plaintiffs, or for the Defendant, beyond those in the existing Protective Order in this case. *See* Proposed Supplemental Protective Order, at ¶ 4(a) - (d). Even where other buyer/seller SNF plaintiffs did not object to production of their documents to Con Edison, Con Edison has still not received these documents from the Government, nor has it been able to locate them on the Government's SNF production website.

Defendant was apprised of the outcome of Con Edison's Supplemental Protective Order negotiations by E-mail on July 19, and requested to provide any comments. Defendant

[2] At about the same time, the Government issued eight third party subpoenas in this case to companies that were actual or potential bidders in the sale of Con Edison's Indian Point 1 and 2 nuclear units. The Government has agreed to provide documents produced by these companies under those subpoenas to Con Edison, so those documents are not at issue in this Motion.

responded with silence until August 3, 2006, when without notice it sent a 6-page objection not only to the terms of the proposed Supplemental Protective Order it had itself invited, but also proposing changes to the original Protective Order entered in this case on May 18, 2004 (Aug. 3, 2006 letter attached as Exhibit G).

In view of the protracted history of this aspect of discovery and its potential impact on important milestones in the case already set by the Court, Con Edison respectfully requests the Court's supervision and assistance in concluding this process. Con Edison also respectfully requests an Order to produce these critical third-party documents to Con Edison. In the event Con Edison fails to receive third-party documents, Con Edison will seek an Order precluding the Government from using any such documents in this litigation, pursuant to RCFC 37 (c)(1) ("A party that without substantial justification fails to disclose information required by RCFC 26(a) or 26(e)(1), or to amend a prior response to discovery as required by RCFC 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at trial, at a hearing, or on a motion any witness or information not so disclosed.")

**The Government's Claimed Right to Use All**
**<u>SNF Plaintiffs' Documents in Any SNF Case</u>**

The Government has clearly stated its intent to use materials produced by any SNF plaintiff in any SNF case. As the Government stated in its August 3, 2006 letter to Con Edison, "information sharing between spent nuclear fuel cases" . . . . "was our original intent." Aug. 3 letter, at 2 (Exhibit G). And, further, "our original intent was that the Court of Federal Claims would issue a single protective order that governed all of the spent nuclear fuel cases and would permit information sharing between the cases . . ." *Id.* at 5.

Specifically, in recent briefing regarding a protective order in another SNF case, the Government stated that it "expects that, in presenting its defenses in this case as well as other

cases, it will need to rely upon materials produced by Dairyland [the SNF plaintiff] and other utility plaintiffs regarding the industry's understandings of the contract's terms and the industry's views of the implementation of the contract." Defendant's Response to Plaintiff's Emergency Motion for Entry of Protective Order and Stay of the Parties' Exchange of Confidential Material, *Dairyland Power Cooperative v. United States*, No. 03-2663C, filed Aug. 4, 2006 in Ct. of Fed. Cl. Indeed, it is no surprise that the Government, given its stated intent with respect to sharing information between SNF cases, established a common discovery website with co-mingled materials that it has received in discovery from all or virtually all parties to the SNF litigation.

**The SNF Case Protective Orders**
**Expressly Provide For Discovery Sharing Among Cases**

Con Edison's Protective Order is practically identical to the protective order that was issued by Judge Sypolt on May 9, 2002 ("Sypolt Order") (attached as Exhibit H) in the coordinated discovery proceedings that took place early in the spent nuclear fuel litigation. The Sypolt Order was entered in the SNF cases then pending before the Court and allows protected information to be shared among SNF cases. In the Sypolt Order, the Court provided for controlled distribution of protected materials in "the above-entitled litigation," listing all of the cases pending at that time. Since the issuance of the coordinated discovery protective order, more than 40 new SNF cases were filed, and in many of these cases substantially identical coordinated discovery protective orderswere issued. Con Edison's existing Protective Order language tracks the language in the Sypolt coordinated discovery proceedings Order. Compare Exhibits A and H at ¶¶ 4, 6, and 9.

Con Edison shares the Government's stated objective of avoiding autonomous and separate treatment of discovery materials in each of the SNF cases. However, unlike the Government, Con Edison submits that the terms of the Protective Order in this and other SNF

cases gives the Government that right, and Con Edison and other SNF plaintiffs the reciprocal right to obtain all such documents from the Government. The Government argues that a technical reading of Con Edison's Protective Order might not allow for sharing of documents received in this case across all SNF cases because the "above-entitled litigation" could be read to refer only to Con Edison's case and not any others. *See* Aug. 3 letter, at 2. This ignores the text of Paragraphs 4 and 5. Since an economical and efficient discovery protocol has already been provided for under existing protective orders, no alterations are desirable or necessary. Amending the various protective orders would only serve the purpose of delay in production of the requested documents and the efficient administration of this and other SNF cases.

The existing Protective Order explicitly states that "[d]iscovery and other proceedings in this case *and the other cases pending before the Court concerning the Standard Contract* . . . may require the parties to disclose confidential information (as defined herein) of the parties." (Protective Order, at 1, introductory paragraph (emphasis added), Exhibit A). At Paragraph 5 the existing Order expressly contemplates disclosure of Confidential Material to "attorneys for *plaintiffs* in the spent nuclear fuel *cases*" (emphasis supplied, i.e. not just Con Edison's case), and again in Paragraph 4, refers to disclosure of Confidential Materials to "attorneys for *plaintiffs*." It is also clear that Paragraphs 4 and 5 are to be read together, each paragraph cross-referencing the other. Thus the plain language of the protective orders clearly contemplates and provides for the sharing of documents, including Confidential Material, between the SNF cases.

In the analogous context of interpreting contracts, it is established that contracts must be interpreted as a whole to discern the intent of the parties. *Westinghouse Hanford Co. v. U*.S. 47 Fed. Cl. 665, 670 (2000), quoting *McAbee Construction, Inc. v. United States,* 97 F.3d 1431, 1435 (Fed. Cir.1996). The different portions of a contract should be read as whole to give

meaning to all of its parts, with fidelity to the plain language of the contract. *Southern California Edison v. U.S.*, 58 Fed. Cl. 313, 323 (2003); *Veit & Co. v. United States*, 56 Fed. Cl. 30, 35 (2003) ("The Court is to attempt to avoid an interpretation that leaves a portion of the contract 'useless, inexplicable, inoperative, void, insignificant, meaningless, superfluous, or achieves a weird and whimsical result.'") (quoting *Gould, Inc. v. United States,* 935 F.2d 1271, 1274 (Fed.Cir.1991)). Con Edison submits that the content of these protective orders should receive no lesser credence.

For the existing Protective Order to make sense as a whole, express references to "plaintiffs" and "spent nuclear fuel cases" must mean what they say, and refer to discovery both in this case and the other cases pending before the Court concerning the Standard Contract. Given Con Edison's Protective Order is but a carbon copy of the Sypolt Order, and expressly contemplates sharing Confidential Material with *attorneys* in all SNF *cases*, it should be read to have the same meaning as the Sypolt Order. Indeed, until the Government's belated August 3 change of position, this is how both the Government and Con Edison understood the Protective Order in this case would operate. This is the only reading of the Protective Order that gives meaning to all of its terms. Thus, no alterations to the existing Protective Order are needed either for Con Edison to obtain (or for the Government to use as it intends) documents obtained in this case for purposes of other SNF cases and vice versa.

What is needed, however, is some guarantee that Con Edison will promptly gain equal access to the documents that the Government has already obtained and will obtain in this and other SNF cases, and is already using to inform its litigation strategies and case development. All of these materials directly bear on Con Edison's ability to prove that the nuclear utility market was depressed by the Government's failure to dispose of SNF. Not only does Con

Edison need these documents for its own affirmative case, but also to anticipate and respond to the Government's use of these documents at trial, as it has stated its intention to do.

**Con Edison's Proposed Supplemental Protective Order Merely Constrains**
**<u>Con Edison's Dissemination of Materials and Does Not Burden the Government</u>**

The sole purpose of Con Edison's proposed Supplemental Protective Order, which after all was negotiated at the Government's invitation, was to create additional constraints on the dissemination of discovery materials received by Con Edison from the Government in fulfillment of its long-standing discovery requests – more specifically setting forth who among the Con Edison litigation team should be entitled to review Confidential Material.

The Government's August 3, 2006 letter misconstrues the intent and effect of Con Edison's proposed Supplemental Protective Order, despite the Government's awareness of its underlying purpose. The Government states that "to the extent that ConEd or some other party wants to place documents under this heightened protective order, that party should be required to justify that heightened protection." Aug. 3, 2006 Letter, at 3. After wrongly assuming that Con Edison seeks some "heightened" level of protection, the Government then proceeds to fault Con Edison for failing to establish a second tier of more highly confidential documents than the "Confidential Material" level established by the existing Protective Order. *Id.* at 3.

Con Edison's Supplemental Protective Order purposefully does *not* designate a "heightened" category of protected documents because Con Edison agreed to be constrained (in terms of to whom it may disclose proprietary documents) with respect to even those documents that are simply "Confidential Material" to any SNF plaintiff. The Supplemental Protective Order changes *only* the number of Con Edison Representatives entitled to view proprietary information. *See* Paragraph 4(c). It does not place any restriction or burden on the Government beyond those already in the existing Protective Order. *Id.* The entire purpose of the Supplemental Protective

Order is to assuage the concerns of other SNF plaintiffs that may have considered buying or selling nuclear plants, or any of their consultants, that their sensitive proprietary data produced in discovery initiated by the Government might be disclosed to potential competitors. Thus, Defendant's convoluted objections to the Supplemental Protective Order in its August 3 letter both misread the protective orders themselves, and are also entirely misplaced.

Nor is there any language in the Supplemental Protective Order that, as the Government argues, "would preclude the use of any protected documents produced in this particular spent nuclear fuel case in any other spent nuclear fuel case." *Id*. at 3. First, the language of the existing Protective Order would remain unaffected by the Supplemental Protective Order, which "supplements," not supplants, the original language. As already shown above, the existing Protective Order contemplates sharing among all SNF cases.

Second, the great majority of the discovery materials that Con Edison has sought from the Government since November 2004 would have initially been produced in other spent nuclear fuel cases, and their use in those cases would be completely unaffected by production to Con Edison in this docket. Thus the Defendant would not be limited in using documents produced in this case in other cases (particularly those in which the third party is a plaintiff), or vice versa, as the Government argues. *Id*. at 4.

Finally, Defendant appears to suggest that counsel who produce nuclear plant valuation documents to the Government might not themselves be permitted to see or use those documents in their own cases by virtue of their production to Con Edison under Con Edison's Protective Order. *Id*. at 4. We submit that the Government's stated concern is absurd and not supported by any language found within the Supplemental Protective Order, nor by common sense.

At bottom, Defendant's objections to Con Edison's negotiated Supplemental Protective Order appear to be straw men erected to further delay Con Edison's receipt of other SNF buyer/seller documents already in Defendant's possession or soon to be received.

**Requested Relief**

Con Edison respectfully requests that the Court enter the attached Supplemental Protective Order, and also the attached proposed Order compelling production of the third-party documents Con Edison has requested from the Government. Con Edison's ability to proceed with its affirmative case has already been hindered by the delay – now consisting of many months – required by the unexpected detour of negotiating a Supplemental Protective Order in this case which already had a Protective Order in place. The delay already encountered is now threatening to jeopardize Con Edison's ability to meet certain aspects of the Court's milestones in its Pre-trial Order on Damages, such as reporting Con Edison's diminished value claim that is dependent on these very documents.

For these reasons, Con Edison respectfully requests the Court's assistance in concluding the terms of the Supplemental Protective Order and assuring the production of these documents.

Dated: August 16, 2006

Respectfully submitted,

s/ David A. Churchill
DAVID A. CHURCHILL
Jenner & Block, LLC
601 Thirteenth Street, N.W.
Suite 1200 South
Washington, D.C. 20005
(202) 639-6056
(202) 639-6066 fax
COUNSEL FOR PLAINTIFF

Of Counsel:

Brent L. Brandenburg, Esq.
Assistant General Counsel
Consolidated Edison Company
of New York, Inc.
4 Irving Place, Suite 1830
New York, NY 10003
(212) 460-4333

Daniel F. Stenger, Esq.
Hogan & Hartson LLP
Columbia Square
555 Thirteenth Street, N.W.
Washington, D.C. 20004-1109
(202) 637-5691

Cynthia J. Robertson, Esq.
Jenner & Block, LLP
601 Thirteenth Street, NW, Suite 1200
Washington, DC 20005
(202) 639-6000

CERTIFICATE OF FILING

I hereby certify that on August 16, 2006, a copy of the foregoing "Motion For Entry of Supplemental Protective Order" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system and that parties may access this filing through this system.

s/ David A. Churchill

David A. Churchill
JENNER & BLOCK, LLP
601 Thirteenth Street, NW, Suite 1200
Washington, DC 20005
(202) 639-6000

*Counsel of Record for*
*Consolidated Edison Company of New York, Inc.*

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| CONSOLIDATED EDISON COMPANY OF NEW YORK, | ) | |
| Plaintiff, | ) | No. 04-0033C |
| v. | ) | (Judge Wheeler) |
| UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

**SUPPLEMENTAL AGREEMENT AND PROTECTIVE ORDER**

Pursuant to Paragraph 7 of the May 18, 2004 Agreement and Protective Order, which authorizes plaintiffs, the United States, or third parties, to seek "additional protection with respect to the confidentiality of documents or other discovery material" beyond the terms of that original agreement, it is hereby agreed between Consolidated Edison Company of New York, Inc. ("Con Edison") and Entergy Nuclear Generation Company, Entergy Nuclear Operations, Inc., Entergy Nuclear Indian Point 2, LLC, Entergy Nuclear Indian Point 3, LLC, Entergy Nuclear Fitzpatrick, LLC, Entergy Nuclear Vermont Yankee (collectively "Entergy"), Power Authority of New York, ("Power Authority"), Vermont Yankee Nuclear Power Corporation ("Vermont Yankee"), PSEG Nuclear LLC, Public Service Electric and Gas Company (collectively "PSEG"), and Florida Power & Light Company ("FPLC"), and the United States of America (the "Government"), collectively referred to herein as "the parties," and ordered by the Court:

1. The term "Confidential Material" shall refer to confidential, financial, trade secret, privileged, competitively-sensitive information, records or testimony, and any such records falling within the scope of the Privacy Act, 5 U.S.C. § 552a, disclosed in discovery or in trial or other proceedings in SNF cases. Subject to the provisions of Paragraph 8 below, material shall be deemed Confidential Material when so designated in the manner described in Paragraph 2 below. After disclosure of any "Confidential Material," all copies made of that material, and all notes made therefrom and all references made thereto, of any kind whatsoever, shall also constitute "Confidential Material."

2. The designation of Confidential Material may be made by the disclosing party by placing or affixing on documents disclosed the word "confidential" or by stating in a letter to counsel for the receiving party or parties that all or any portion of the documents accompanying that letter are "Confidential Material" within the meaning of this agreement and order.

3. Each person receiving Confidential Material shall maintain such Confidential Material in his or her possession in a manner sufficient to protect such material against unauthorized disclosure.

4(a). Confidential Material shall be used by the receiving party solely for the purpose of conducting the above-entitled litigation and not for any business or other purpose whatsoever, except as provided in this supplemental agreement and protective order ("supplemental protective order").

4(b). This supplemental protective order limits disclosure of Confidential Material and information submitted to the United States or subsequently by the United States to plaintiff in the above-captioned case, so that no party obtaining access to protected material under this order will gain either a litigation and/or a competitive advantage as a result of the disclosure. Material to which the parties gain access under this supplemental protective order is to be used only for the litigation proceedings, absent express prior authorization from the Court. Such authorization must be requested in writing, with notice to all parties.

4(c). Confidential Material that is received by Con Edison shall be disclosed only to attorneys for parties when such attorneys are not involved in the acquisition or divestiture of electric power plants, attorneys for the United States, persons regularly employed in such attorneys' offices, or, subject to the provisions of Paragraph 5 below, other persons who are necessary to the litigation of this action, such as outside consultants and experts retained for purposes of this action. Any Con Edison in-house attorney or other employee who seeks access to Confidential Material shall submit an application for approval by the parties whose data are sought to be disclosed. Each such party shall have five (5) days to object to the application.

4(d). Nothing contained in this supplemental protective order shall prevent or in any way limit or impair the right of counsel for the United States to disclose to any agency of the United States (including other divisions and branches of the Department of Justice) any document or information regarding any potential violation of law or regulation or, subject to procedures that maintain the confidentiality of Confidential Material consistent with this supplemental protective order, prevent or limit in any way the use of such documents and information by any agency in any proceeding regarding any potential violation of law or regulation.

5. With the exception of Con Edison's attorneys in the spent nuclear fuel cases, attorneys for the United States, and persons regularly employed in such attorneys' offices, any person to whom Confidential Material is to be disclosed by the receiving party shall first be advised by an attorney for the receiving party or parties that pursuant to this supplemental protective order such person may not divulge any such Confidential Material to any other person not authorized under Paragraph 4 above to have access to such Confidential Material. The attorney shall secure from each person a declaration in the form attached hereto, stating that such person has read this supplemental protective order and agrees to be bound by it. Such declaration shall be maintained in the possession of the attorney securing the declaration until further order of the Court.

6. Subject to order of the Court, that portion of any pleading, motion, deposition transcript or other document submitted or presented to or filed with the Court containing Confidential Material shall be placed under seal and shall not be available to persons other than the Court and authorized employees of the Court, the attorneys of record for the parties to this

spent nuclear fuel case, and persons authorized by this supplemental protective order. In the event that any Confidential Material is used in any deposition or Court proceeding herein, the parties shall attempt to further stipulate as to the procedures for use of Confidential Material in such proceedings. If necessary, any dispute regarding the procedures for use of Confidential Material in deposition or Court proceedings shall be submitted to the Court for resolution.

7. Nothing in the foregoing provisions of this supplemental protective order shall be deemed to preclude the parties, or third parties from seeking and obtaining, on an appropriate showing, additional protection with respect to the confidentiality of documents or other discovery material or from seeking and obtaining leave to disclose documents or other discovery material beyond the terms of this supplemental protective order, except that in accordance with the provisions of Paragraph 4 above plaintiff shall be entitled promptly to receive from the United States Confidential Material disclosed to the United States by the parties.

8. If a party determines that a previously produced document inadvertently was not identified as containing protected information, the producing party shall give notice in writing that the document is to be treated as containing protected information, and thereafter the designated document shall be treated in accordance with this order or returned to the producing party if the material is identified as privileged.

9. Nothing in the foregoing provisions of this supplemental protective order shall be deemed to preclude Con Edison or the United States from objecting to the designation of documents or other discovery material as Confidential Material. In such event, the party objecting to the designation of the documents or other discovery materials as Confidential Material shall have the burden to file a motion with the Court demonstrating that there is good cause to remove the designation of the documents or materials as such and that they properly are not subject to treatment under this supplemental protective order.

10. Within ninety (90) days after the conclusion of this litigation, the parties shall undertake reasonable and prudent efforts to return all original Confidential Material to the disclosing party and to destroy all copies of any all notes, summaries, and references relating to such Confidential Material and, further, the parties shall certify to the Court that such reasonable and prudent efforts have been undertaken; EXCEPT THAT each party may maintain one copy of any Confidential Material in its master file for this case, including one copy of any notes or summaries relating to such Confidential Material, provided that any copies of any Confidential Material or notes or summaries relating to such Confidential Material are clearly stamped "Confidential" or affixed with a similar legend indicating that the materials are subject to this supplemental protective order.

11. For information sought that is or may be covered by the Privacy Act, defendant, in response to any discovery properly propounded pursuant to the Rules of the United States Court of Federal Claims, is hereby authorized, pursuant to 5 U.S.C. § 552a(b)(11), to release to opposing counsel in these cases records which are relevant to this action, and which may be subject to the Privacy Act, without obtaining prior written consent of the individual to whom such records pertain. Such disclosures shall be deemed authorized by law.

ORDERED:

______________________________
Judge Thomas C. Wheeler

Dated: ____________________

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| CONSOLIDATED EDISON COMPANY OF NEW YORK, INC., | ) | |
| Plaintiff, | ) | No. 04-0033C |
| v. | ) | (Judge Wheeler) |
| UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

**PROPOSED ORDER COMPELLING DISCLOSURE OF DOCUMENTS**

Before the Court is Plaintiff's Motion to Compel, filed August 15, 2006. For the reasons stated therein, Plaintiff's Motion is hereby GRANTED. Defendant shall produce to Plaintiff non-redacted third party valuation and transactional assessment documents (including analyses of whether to bid, asset evaluations, asset valuation models, methodologies, and model output and worksheets) that it has received or will receive from Entergy Nuclear Generation Company, Entergy Nuclear Operations, Inc., Entergy Nuclear Indian Point 2, LLC, Entergy Nuclear Indian Point 3, LLC, Entergy Nuclear Fitzpatrick, LLC, Entergy Nuclear Vermont Yankee (collectively "Entergy"), Power Authority of New York, ("Power Authority"), Vermont Yankee Nuclear Power Corporation ("Vermont Yankee"), PSEG Nuclear LLC, Public Service Electric and Gas Company (collectively "PSEG"), and Florida Power & Light Company ("FPLC"). Defendant shall produce these documents by September 15, 2006, or within two weeks of receiving the documents from the parties listed above. Similar documents produced to the Government by other spent nuclear fuel case plaintiffs which have purchased or sold or considered the purchase or sale of nuclear plants will also be produced to Con Edison upon a showing that appropriate Protective Order terms have been agreed to.

**IT IS SO ORDERED.**

s/______________________________
THOMAS C. WHEELER
Judge

Dated ________________________