# Exhibit D

U.S. Department of Justice

Civil Division

PDK:DMC:HDL
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

Telephone:
(202) 305-7562

Washington, D.C. 20530

April 12, 2006

VIA TELECOPY AND UNITED STATES MAIL

David A. Churchill
Jenner & Block LLP
601 Thirteenth Street, N.W.
Suite 1200 South
Washington, D.C. 20005-3823

Re: *Consolidated Edison Co. of New York v. United States*, No. 04-0033C (Fed. Cl.)

Dear Mr. Churchill:

This letter is in response to your letter to Joshua E. Gardner dated March 10, 2006, and Cynthia Robertson's letter to Mr. Gardner dated April 10, 2006. Those letters seek information regarding various document production matters.

Written Discovery In Other Spent Nuclear Fuel Cases

In your March 10, 2006 letter, you represent that I had indicated during our meeting at your offices on January 13, 2006, that the Government's production website "would likely contain the documents and interrogatory responses produced by other utility plaintiffs, as well as third party discovery and the Government's own interrogatory responses which have been prepared in the context of SNF litigation." Letter, at 1-2. As an initial matter, we need to clarify your understanding of my representation at that January 13, 2006 meeting. As you recognize in your March 10, 2006 letter, and as we indicated in response to Request No. 23 of ConEd's first request for the production of documents, we have objected to ConEd's request that we produce to ConEd copies of all of the documents that any of the plaintiffs in other spent nuclear fuel ("SNF") cases and other third parties have produced as part of the SNF litigation. Accordingly, to the extent that your March 10, 2006 letter implies that we represented that our production website "would likely contain the documents . . . produced by other utility plaintiffs," we do not recall making any such representation. To the contrary, we specifically discussed at the March

10, 2006 meeting the fact that the Government had not included on its production website those documents received from the other utility plaintiffs.

Nevertheless, at the March 10, 2006 meeting, we informed you that we were willing to make available on the production website, to the extent that they were not already available there, copies of all of the written discovery that the Government had received and had sent, as well as the written discovery responses that the Government had received and had sent, in the SNF litigation, except to the extent that a nuclear utility had requested that the written discovery be protected from distribution to third parties. Our representation was consistent with our response to Request No. 23 of ConEd's first request for the production of documents. It continues to be our intent to load any additional written discovery – both interrogatories and written document production requests, along with their responses – to the production website, to the extent identified in our response to Request No. 23. We expect to complete the copying and loading of these documents to the production website within the next few days.

You also request in your March 10, 2006 letter that we identify for you that written discovery material which is "not already on the Government's production website" so that you can make arrangements to inspect and copy it. To the extent that we do not post some of the written discovery, we will notify you of that fact and will identify the entity whose written discovery we have not posted and the reason that it was not posted.

Copies of Documents Produced By Other SNF Plaintiffs And Other Third Parties

ConEd also requests that we produce to ConEd copies of all of the documents that any SNF plaintiff or other third party has produced to the Government in any of the SNF cases. It is far from clear that documents not produced from the files of any agency related to the factual matters underlying this litigation, but instead obtained by attorneys for the Government from outside entities during and because of the litigation, are encompassed by RCFC 34. Nevertheless, without addressing the scope of RCFC 34, ConEd's request is incredibly burdensome. We have received more than three million pages of documents from various SNF plaintiffs and other third parties in the course of discovery in other SNF cases. These documents have been produced in varying forms and formats: in paper copies, in various forms of electronic media, and in Concordance databases. ConEd's unsupported assertion that "[i]t should be an easy matter for the Government to provide a copy of" the more than three million pages "requested by Con Edison . . . in the form it was initially produced to the Government by the originating source" is completely unsupported. Based upon the limited budget that we have for litigation support activities, the cost to the Government associated with complying with ConEd's request would require us to eliminate the performance of other necessary tasks, given the number of hours that we would have to pay our litigation support contractor to attempt to locate and organize all of the past document productions and, further, to make copies of all of those past productions, including the paper productions. ConEd's request that we simply produce the entirety of these past productions and provide copies to ConEd is unduly burdensome.

In addition, ConEd cannot make any credible argument that the entirety of every other nuclear utility's document production in the SNF litigation – each of the more than three million pages of documents – is somehow relevant to ConEd's case. The documents produced by the other nuclear utilities involve numerous issues and matters, including site-specific issues and costs related to particular nuclear facilities. In any event, ConEd has certainly not attempted to make any showing that every document produced by another nuclear utility in the SNF litigation is somehow relevant to ConEd's case.

In your March 10, 2006 letter, you indicate that your "immediate need is to review discovery materials the Government has received or submitted in relation to the sale or purchase of the Pilgrim, Indian Point Unit 3, Fitzpatrick, Vermont Yankee, and Indian Point I and 2 nuclear plants and the associated Standard Contracts for SNF disposal." Letter, at 3 (March 10, 2006). As an initial matter, we are confused by this representation regarding ConEd's need for such documents, as it directly conflicts with ConEd's representations to the Court of Federal Claims in opposing the Government's motion to consolidate this case with Entergy Nuclear Indian Point 2, LLC v. United States, No. 03-2622C (Fed. Cl.). During the parties' hearing before the Court on January 20, 2006, ConEd represented that the understanding of witnesses from Entergy Nuclear Indian Point 2 ("ENIP") regarding the value of ConEd's reactor was essentially irrelevant to ConEd's case:

> . . . [O]ur theory of the case is not that ENIP paid less, but that the market was depressed in general. And our testimony will be to the effect that the entire market was depressed to the point that whether it was ENIP that ultimately bought this plant or some other company that bought this plant, the entire value of the plant was hugely diminished because of the government's breach of contract in 1998. So ENIP's views on the subject, while perhaps of interest to Mr. Gardner, are of very little concern to us.

Transcript, at 45-46 (Jan. 20, 2006) (emphasis added). To the extent that ConEd now believes that the views and documents of other nuclear utilities, including ENIP, are relevant and necessary to its case, please notify us of that fact so that we can ask the Court to revisit its decision not to consolidate this case with ENIP. In any event, ConEd has not identified the reasons that document productions from any of the nuclear utilities associated with the identified nuclear reactors are somehow relevant to ConEd's case.[1]

---

[1] In her letter dated April 10, 2006, Ms. Robertson requested that we identify in our response to your March 10, 2006 letter the extent of discovery that we have received in these "buyer/seller SNF cases." With regard to the Indian Point Unit 3, Fitzpatrick, Vermont Yankee, and Indian Point I and 2 nuclear plants identified in your March 10, 2006 letter, we have not received document productions from the plaintiffs associated with those cases, except to the limited extent that the Power Authority of the State of New York, in 2001 and 2002, participated in the coordinated discovery proceedings and produced documents relating to the formation of

Further, many of the documents have been produced to us subject to protective orders in other cases and, in some instances, with requests that we provide additional protections to the documents so as to preclude their release to any other parties or entities. One of the utilities that made such a request was Exelon Generation Company, LLC ("Exelon"), which, during the settlement negotiations between the parties, provided documents to the United States that it deemed highly sensitive and proprietary. As you may be aware, one of the partners in your own law firm, Norman Hirsch, represented Exelon before the Court of Federal Claims, although another attorney, Brad Fagg from Morgan Lewis & Bockius LLP, represented Exelon in the settlement negotiations. In essence, you are requesting that we disregard the request that your firm's client made regarding the handling of its documents. Particularly since ConEd has not identified any basis upon which to find that the documents that Exelon, and other utilities, have provided to us are relevant to ConEd's litigation, we cannot identify a reason simply to produce documents containing proprietary information to ConEd and its counsel.

Before we make any of the third party productions available to ConEd, ConEd needs to identify the relevance of the entirety of the third-party document production clear. Particularly in light of the burdens associated with producing more than three million pages of documents, our request for a detailed explanation of the relevance of these documents is more than appropriate.

Further, to deal with the requests for protection of documents that we received from many plaintiffs, we anticipate that, within the next few days, we will send a letter to each of the attorneys who represent any SNF plaintiffs, past and present, to notify them of ConEd's request that we produce their clients' documents to ConEd. To the extent that any of these other SNF plaintiffs or third parties object to ConEd's request, they will have an opportunity to notify us of their objection and, potentially, to intervene before the Court to defend their request for non-disclosure of their document productions.

Finally, even if we were to produce any or all of the third-party productions to ConEd, we would have no obligation to provide copies of documents that we have received from other nuclear utilities or third parties to ConEd. Instead, when we produce documents pursuant to RCFC 34, we are obligated only to make those documents available to ConEd for inspection and to permit ConEd to copy them at its own expense. Although we typically have provided plaintiffs with copies of the documents being produced as a courtesy, we cannot voluntarily provide copies of more than three million pages of documents, most of which would appear irrelevant to ConEd's case, at the Government's expense. Accordingly, to the extent that the Government is required to make these documents available to ConEd, it will do so at the offices

---

the Standard Contract, the rate of SNF acceptance under the Standard Contract, and/or DOE's obligation to accept or dispose of Greater-Than-Class-C radioactive waste. With regard to the Pilgrim reactor identified in your March 10, 2006 letter, we have received productions of documents from Boston Edison Company and from Entergy Nuclear Generation Company. Nevertheless, we do not understand the relevance of their document productions to ConEd's case.

of its litigation support contractor in the format that they were received from the plaintiffs. It will be ConEd's obligation to make arrangements for reviewing and copying those documents. We cannot bear that expense or burden.

Copies of Deposition Transcripts From Other SNF Cases

ConEd also requests that we produce copies of all of the deposition transcripts that we have purchased in this litigation of other utilities' depositions of potential Government witnesses. Although we represented in our initial disclosures that we would be posting copies of past deposition transcripts of Government employees on the production website, this representation was made in error, and we will be amending our initial disclosures to correct this error.

As you certainly can understand, we have paid significant sums of money to purchase copies of these transcripts. Further, the issues surrounding the court reporters' rights to control the sale and distribution of the transcripts that they generated appear complicated. Nevertheless, pursuant to the Court's rules, one party in a case is not entitled to require another party to produce, at no cost, copies of deposition transcripts that the first party would otherwise need to purchase from the court reporter who transcribed the depositions. In Kinan v. City of Brockton, Massachusetts, 112 F.R.D. 206 (D. Mass. 1986), the district court considered a plaintiff's motion to compel the defendant to produce copies of deposition transcripts taken in the litigation. Although the plaintiff had purchased a copy of the transcript of the first day of his own deposition, he did not order copies of the second day or of any of three other depositions taken in the case. The district court denied the plaintiff's request, finding that Rule 30(f)(2) of the Federal Rules of Civil Procedure, which has been adopted by the Court of Federal Claims, contains "an explicit provision governing the obtaining of copies of depositions." Id. at 207. That rule provides that, "[u]pon payment of reasonable charges therefor, the officer shall furnish a copy of the deposition to any party or to the deponent." The district court opined that "this provision precludes a party from employing the procedures of Rules 34 and 37, F. R. Civ. P., to obtain copies of depositions in the case from another party who has ordered transcripts and received them upon payment of the applicable fee." Id.; see Seaview Terrace v. Diaz, Nos. CIV. 92-00003, CV944-90, 1992 WL 365805, at *4 (D. Guam Apr. 16, 1992) ("[i]n view of the provision in Rule 30(f)(2) mandating payment, . . . [t]he court was correct in ensuring that Seaview did not attempt to obtain a free copy of the transcript").

We cannot agree to produce to ConEd all of the deposition transcripts of Government employees that have been taken as part of the SNF litigation. Nevertheless, although we are not required to do so pursuant to RCFC 30 or 34, we previously made copies of the electronic versions of some deposition transcripts, in ASCII format, available to the plaintiff in Consumers Energy Corp. v. United States, No. 02-1894C (Fed. Cl.). Before we made those ASCII disks available to the plaintiff in Consumers, we contacted each of the court reporting companies involved to obtain their non-opposition to that production. Based upon the representations made at that time, we are willing to provide you with the same production of transcripts that we made available to the plaintiff in Consumers, in the ASCII electronic format that we provided there.

We anticipate that we will post that disk to the document production website no later than Tuesday, April 18, 2006. That disk should contain ASCII versions of all of the depositions of Government employees taken up to the time of the production. For deposition transcripts of Government employees taken since that date, we have attached, as Attachment A, a list of those depositions and the names, addresses, and phone numbers of the court reporting companies involved in transcribing them. With that list, ConEd should be able to purchase any of those transcripts that it wishes.

Tying Past Document Productions To Other Plaintiffs' Discovery Requests

In your letter, you complain that the production website "does not allow [ConEd] to identify which CD-ROMs have been posted in response to a discovery request from Con Edison, and which documents have been posted in response to a request received from another utility." Letter, at 3. You also state that "Con Edison's 2004 request requires that the requested discovery materials be identified by SNF case and party." Id. As you may be aware, we objected to the instructions and definitions contained in ConEd's written discovery requests "to the extent that such instructions and definitions attempt to impose obligations on defendant other than those imposed by RCFC 26 and 34 and the Court's prior orders." With regard to ConEd's request that the Government identify each "SNF case and party" to which any documents previously produced were responsive to previously produced document production requests, ConEd's request exceeds the permissible limits of RCFC 34. Further, the majority of the documents posted to the production website were originally produced long before ConEd filed its lawsuit. ConEd's request that we review the entirety of the Government's past document productions and tie them to other nuclear utility plaintiffs' document production requests is unduly burdensome. Nevertheless, to the extent that ConEd is seeking specific information about specific requests or specific productions, we are willing to attempt to research those requests, if reasonable in number and scope, to assist ConEd in locating documents within the production website of interest to it.

However, we also continue to believe that, to the extent that it has not done so, it would benefit ConEd to consult with one of the partners at Jenner & Block, Norman Hirsch. In his role as the attorney of record in Commonwealth Edison Co. v. United States, No. 98-621C (Fed. Cl.), the three Exelon Nuclear Generation cases, and South Carolina Gas & Electric Co. v. United States, No. 04-101C (Fed. Cl.), all previously active but now amicably resolved cases, we presume that Mr. Hirsch and the attorneys working with him developed a database of the documents that the Government previously produced and organized them in a manner conducive to their use. We are confused by ConEd's requests that we provide it with information that would seem to allow it to begin the document organization process anew, as though it lacked any information about past document productions. When your firm already has had significant access to the database of the documents that the Government has previously produced, it would appear most efficient to take advantage of your firm's past organization of documents from those past productions. To the extent that ConEd is requesting that we engage in extensive yet unnecessary efforts simply because ConEd would prefer not to utilize Jenner & Block's previously created document organization system or database, such a request is wholly

unwarranted. Again, we encourage ConEd to take advantage of Mr. Hirsch's past experience in this litigation and maximize its use of previously created databases.

Notice Of New Document Production Postings

You also assert in your letter that you have been "informed that [you] have not been receiving notice when new material is added to the website." Letter, at 3 (March 10, 2006). However, our records indicate that you and Ms. Cynthia Robertson have been receiving e-mail notices each time a new production is posted onto the website since you and Ms. Robertson obtained access to that site on January 19, 2006. To allow you to study this matter, we have attached as Attachment B to this letter copies of the two e-mails that have been sent since January 19, 2006, announcing that additional documents have been loaded to the production website.[2] To the extent that you did not receive these e-mails, please notify us of that fact and, further, confirm that the e-mail addresses that we have for you, which are identified on the attached e-mails, are correct.

ConEd's Initial Disclosures

As you are aware, the Government provided its initial disclosures to ConEd on January 17, 2006. We had understood, pursuant to the parties' agreement and ConEd's representations to the Court, that ConEd would be providing its initial disclosures to us by Tuesday, April 11, 2006. We have not yet received those disclosures and cannot effectively begin any serious case analysis without knowledge of the specific claims that ConEd will raise here. To the extent that ConEd mailed its disclosures yesterday, we ask that we be provided with a copy by fascimile so that we can begin our analysis of the claims identified there. To the extent that ConEd has not yet served its disclosures, please identify for us the reason for the delay and the date that ConEd will provide us with its disclosures.

If you have any further questions regarding these matters, please feel free to contact me.

Very truly yours,

HAROLD D. LESTER, JR.
Assistant Director
Commercial Litigation Branch
Civil Division

Attachments

---

[2] These e-mails were dated February 15 and 17, 2006.

# ATTACHMENT A

# Government Witness Depositions Since the Production to Consumers Energy

Table1

| LAST NAME | FIRST NAME | DEPOSITION DATE | PLAINTIFF | COURT REPORTER |
|---|---|---|---|---|
| Arthur, III | W. John | 9/22/2005 | PG&E | CAPITAL COURT REPORTING |
| Bajwa | Christopher | 2/18/2004 | ComEd | ESQUIRE DEPOSITION SERVICES |
| Benz | Edward | 12/15/2003 | IM | CAPITAL COURT REPORTING |
| Blair | Kenneth | 5/3/2004 | Yankee | OVERNITE COURT REPORTERS |
| Bubar | Patrice | 5/20/2004 | Yankee | OVERNITE COURT REPORTERS |
| Burgoyne | Robert | 7/8/2004 | SMUD | L.A.D. REPORTING COMPANY |
| Campbell | Robert | 5/6/2004 | Yankee | OVERNITE COURT REPORTERS |
| Carlson | James | 2/12/2004 | ComEd | ESQUIRE DEPOSITION SERVICES |
| Carlson | James | 4/23/2004 | Yankee | ALDERSON REPORTING COMPANY, INC. |
| Garrish | Theodore | 9/23/2005 | PG&E | CAPITAL COURT REPORTING |
| Hoffman | Stephen | 2/23/2004 | IM | JABS REPORTING, INC. |
| Huizenga | David | 4/30/2004 | Yankee | ALDERSON REPORTING COMPANY, INC. |
| Kennedy | James | 5/11/2004 | Yankee | OVERNITE COURT REPORTERS |

| LAST NAME | FIRST NAME | DEPOSITION DATE | PLAINTIFF | COURT REPORTER |
|---|---|---|---|---|
| Knoll | William | 1/4/2005 | SMUD | L.A.D. REPORTING COMPANY |
| Kouts | Christopher | 4/11/2005 | SoNuc & SCE&G | L.A.D. REPORTING COMPANY |
| Kouts | Christopher | 3/12/2004 | ComEd | ESQUIRE DEPOSITION SERVICES |
| Kouts | Christopher | 1/30/2004 | IM & ComEd | CAPITAL COURT REPORTING |
| Kouts | Christopher | 2/19/2004 | IM & ComEd | CAPITAL COURT REPORTING |
| Langstaff | David | 11/4/2004 | SMUD | L.A.D REPORTING COMPANY |
| O'Connor | Steve | 2/18/2004 | ComEd | ESQUIRE DEPOSITION SERVICES |
| Picha, Jr. | Kenneth | 7/7/2004 | SMUD | L.A.D REPORTING COMPANY |
| Pollog | Thomas | 11/1/2005 | PG&E | CAPITAL COURT REPORTING |
| Pollog | Thomas | 2/24/2004 | ComEd | ESQUIRE DEPOSITION SERVICES |
| Pollog | Thomas | 2/25/2004 | ComEd | ESQUIRE DEPOSITION SERVICES |
| Pollog | Thomas | 2/25/2004 | ComEd | ESQUIRE DEPOSITION SERVICES |
| Pollog | Thomas | 12/17/2003 | IM | CAPITAL COURT REPORTING |
| Stewart | Leroy | 7/1/2004 | SMUD | L.A.D REPORTING COMPANY |
| Williams | Jeffrey | 12/12/2003 | IM | CAPITAL COURT REPORTING |

| LAST NAME | FIRST NAME | DEPOSITION DATE | PLAINTIFF | COURT REPORTER |
|---|---|---|---|---|
| Williams | Jeffrey | 1/22/2004 | ComEd | ESQUIRE DEPOSITION SERVICES |
| Williams | Jeffrey | 11/18/2004 | SMUD | L.A.D REPORTING COMPANY |
| Young | Francis | 5/14/2004 | Yankee | OVERNITE COURT REPORTERS |
| Zabransky | David | 11/1/2005 | PG&E | CAPITAL COURT REPORTING |
| Zabransky | David | 10/20/2005 | WEPCO | MILLER REPORTING |
| Zabransky | David | 1/29/2004 | IM & ComEd | CAPITAL COURT REPORTING |
| Zabransky | David | 5/4/2004 | Yankee | OVERNITE COURT REPORTERS |
| Zabransky | David | 2/27/2004 | IM & ComEd | CAPITAL COURT REPORTING |
| Zabransky | David | 2/26/2004 | IM & ComEd | CAPITAL COURT REPORTING |
| Zabransky | David | 4/12/2005 | SoNuc | L.A.D REPORTING COMPANY |
| Zabransky (Subject to Protective Order) | David | 2/26/2004 | IM & ComEd | CAPITAL COURT REPORTING |
| Zabransky | David | 1/28/2004 | IM & ComEd | CAPITAL COURT REPORTING |
| Zabransky | David | 10/21/2005 | WEPCO | MILLER REPORTING |

# Court Reporters

ALDERSON REPORTING COMPANY, INC.
1111 14TH STREET, NW
SUITE 400
WASHINGTON DC 20005
1.800.367.3376

CAPITAL REPORTING COMPANY
1000 CONNECTICUT AVENUE
NW SUITE 505
WASHINGTON, DC 20006
202.857.3376

ESQUIRE DEPOSITION SERVICES
1020 19TH STREET, NW
WASHINGTON, DC 20036
1.800.441.3776

JABS REPORTING, INC.
1825 I STREET, NW
WASHINGTON, DC 20006
202.296.6102

L.A.D. REPORTING COMPANY
1100 CONNECTICUT AVENUE, NW
SUITE 1150
WASHINGTON, DC 20036
202.861.3410

MILLER REPORTING COMPANY
735 8TH STREET, SE
WASHINGTON, DC 20003
202.546.6666

*OVERNITE COURT REPORTING SERVICE*
P.O. BOX 2808
SILVER SPRING, MD 20915-2800
301.593.0671

# ATTACHMENT B

**Lester, Harv (CIV)**

**From:** Yocom, Thor (CIV)
**Sent:** Thursday, January 19, 2006 4:05 PM
**To:** 'crobertson@jenner.com'; 'dchurchill@jenner.com'
**Subject:** Access to the Document Production Website

Your request for access to the Spent Nuclear Fuel Document Production Website has been processed. For security reasons, we have not provided the password in this email. You will be contacted shortly by telephone with your ID and password.

Once you receive your password, you can access the site by directing your browser to http://65.242.120.195/snf.

Note that your user ID will allow only one connection at a time. Multiple simultaneous logins with the same user ID are not permitted.

Thank you.

IT Services

**Lester, Harv (CIV)**

**From:** Thor.Yocom@usdoj.gov
**Sent:** Wednesday, February 15, 2006 5:55 PM
**To:** crobertson@jenner.com
**Cc:** dchurchill@jenner.com
**Subject:** New Production Documents Available

New production documents are available for download at the SNF Document Production Website. Specifically, YA666NPR_REV2, YA697NPR, YA698NPR have been made available. The documents are available for download in their entirety, or by container, and each download will require uninterrupted connectivity to the Internet.

Note: The time necessary to download larger collections of documents may be lengthy from terminals with download speeds of less than 256KB.

Thank you,

IT Services

**Lester, Harv (CIV)**

**From:** Thor.Yocom@usdoj.gov
**Sent:** Friday, February 17, 2006 5:40 PM
**To:** crobertson@jenner.com
**Cc:** dchurchill@jenner.com
**Subject:** New Production Documents Available

New production documents are available for download at the SNF Document Production Website. Specifically, YA712NPR_REV1 and YA713_REV1 have been made available. The documents are available for download in their entirety, or by container, and each download will require uninterrupted connectivity to the Internet.

Note: The time necessary to download larger collections of documents may be lengthy from terminals with download speeds of less than 256KB.

Thank you,

IT Services