# Exhibit E

JENNER&BLOCK

April 18, 2006

Jenner & Block LLP
601 Thirteenth Street, NW
Suite 1200 South
Washington, DC 20005-3823
Tel 202 639-6000
www.jenner.com

Chicago
Dallas
New York
Washington, DC

David A. Churchill
Tel 202 639-6056
Fax 202 637-6370
dchurchill@jenner.com

***VIA FACSIMILE AND REGULAR MAIL***

Harold D. Lester, Jr.
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
National Courts Section
1100 L Street, N.W.
Washington DC 20530

**Re:** ***Consolidated Edison Company of New York v. United States***
***Case No.* 04-0033**

Dear Harv:

I write to respond to your letter dated April 12, 2006, which addressed several discovery issues we have been attempting to resolve. Without ignoring the other issues in your letter (which I will address at a later time), I would like to focus on a key issue that appears under your heading titled, "Copies of Documents Produced By Other SNF Plaintiffs And Other Third Parties," appearing initially on page 3.

We have expressed an immediate need "to review discovery materials the Government has received or submitted in relation to the sale or purchase of the Pilgrim, Indian Point Unit 3, Fitzpatrick, Vermont Yankee, and Indian Point 1 and 2 nuclear plants and the associated Standard Contracts for SNF disposal." March 10, 2006 Letter, at 3. Without these documents, our ability to develop our affirmative case is substantially impaired, and will certainly hinder our ability to meet the approaching deadlines established by the Court.

Despite the obvious relevance of these materials, you object to production on several grounds, none of which is persuasive.

First, you claim that producing more than "three million pages of documents from various SNF plaintiffs and other third parties" is "unduly burdensome." April 12 Letter, at 2. To be clear, we are not interested in the three million documents collectively produced by Plaintiffs in other SNF cases, only those involving the purchase or sale of a nuclear plant. Of the narrowed group of documents we have requested, you state that only Boston Edison Company, Entergy Nuclear Generation Company, and to a limited extent, the Power Authority of the State of New York, have produced documents to the Government thus far.[1] We assume the Government has tracked the source of the documents it has received in discovery, and is able to produce a subset of documents related to particular cases or parties. There is thus no burden in this production.

---

[1] To the extent the Government has not received discovery in the other cases addressed by Con Edison's letter, we request that you identify when discovery is anticipated and supplement buyer/seller document productions to Con Edison when those documents are received.

Second, you object that even producing such a limited subset of documents will not be performed until Con Edison makes clear "the relevance of the entirety of the third-party document production." April 12 Letter, at 4 & n.1. Con Edison has underscored its focus on other SNF buyer/seller industry documents at every stage of this litigation. Since the day that Con Edison filed its complaint, it has consistently maintained that "DOE's failure to perform its statutory and contractual obligations to remove SNF caused a number of potential purchasers for nuclear generating facilities such as Indian Point to be artificially and improperly constrained, thereby reducing the beneficial effects of a competitive auction for these assets." Complaint, at 24 (filed Jan. 13, 2004) (emphasis added).

The relevance of these documents is hardly confusing, contrary to your letter. As I made clear during a recent teleconference with Judge Wheeler and Joshua Gardner, "the factual underpinnings [of our diminished value claim] will come from the various evaluation methodologies that were used throughout the industry, not just by our buyer but throughout the industry at about the time our sale took place." Transcript, at 4 (March 9, 2006). I further indicated that we would be looking for those valuation models from the Government:

> What I do believe [to be] the case, however, is that many of the potential buyers and seller did create valuation methodologies for these various plants that were bought and sold in the timeframe in which we are interested, and the Justice Department, through discovery in these cases, has obtained through discovery of other plaintiffs -- buyers and sellers -- all of these valuation models."

The very quotations you cite from our January 20, 2006 hearing before Judge Wheeler in your April 12 letter make my point. There, I explained that our "theory of the case is not that ENIP paid less, but that the market was depressed in general." I further explained that, "our testimony will be to the effect that the entire market was depressed to the point that whether it was ENIP that ultimately bought this plant or some other company that bought this plant, the entire value of the plant was hugely diminished because of the government's breach of contract in 1998." Transcript, at 45-46 (Jan. 20, 2006). To show that market depression, we need access to buyer/seller valuation models and other documents pertaining to the sale of the nuclear facilities at issue in each case.

We believe that this letter, our previous representations to the Court, our complaint, and our initial disclosures,[2] have made our interest in these documents, and their relevance, abundantly clear. Moreover, the Government's own interest in such documents is manifest by

---

2 Contrary to your representation that Con Edison's initial disclosures were due on Tuesday, April 11, 2006, they were timely submitted on April 12, 2006. *Consolidated Edison Company of New York, Inc., v. United States*, No. 04-0033C, Order, at 1 ("Plaintiff has represented that it will transmit its initial disclosures to Defendant on April 12, 2006.") (unpublished opinion). This is at least the third time that the Government has misstated a due date in correspondence to Con Edison. I am sympathetic to the fact that you have many ongoing cases, but please call me before representing that we have missed a deadline so that I may confirm with you the correct deadline.

JENNER&BLOCK

the fact that they were sought out in discovery. Since the Government will no doubt attempt to use those documents to test, question and quantify the extent to which its conduct did or did not affect the value of nuclear assets, in Con Edison's case, it would be unfair for the Government to attempt to shield those critical documents from Con Edison's legitimate requests to review them well in advance of trial.

Third, you object that you are constrained in sharing the documents you have received from other SNF plaintiffs because of concerns regarding the proprietary and confidential information contained in other SNF plaintiffs' documents. The parties have had a protective order on file in this case since May 18, 2004, which to our knowledge is a standard form of protective order that has been used in SNF cases. That order expressly proscribes disclosures to non-spent fuel litigants, and hence supplies no basis for objecting to our discovery. To the extent the provisions of this protective order have been superceded, expanded or affected by collateral agreements, we request copies of such other agreements so we can determine whether Con Edison is able to make reasonable accommodations in order to protect the proprietary information in these materials.

We request production of the documents you have received from Boston Edison Company and Entergy Nuclear Generation Company by April 26, 2006. As for the preferred mode of production, we would appreciate continuing to receive productions electronically, as the Government has recognized it has done in the past. April 13 Letter, at 4.

If the Government is unable to meet our proposed deadline, we plan to address this issue with Judge Wheeler, who indicated that questions surrounding our ability to obtain this information from the Government should be resolved "earlier rather than later," Transcript, at 9 (March 9, 2006), given the other deadlines looming in this case.

Thank you for your attention in this matter. Please call me if you have any questions.

Sincerely,

David A. Churchill

DAC

# Exhibit F

**U.S. Department of Justice**

Civil Division

*Washington, D.C. 20530*

**DATE:** April 27, 2006

**TO:** **DAVID A. CHURCHILL**, Jenner & Block
Fax No. (202) 637-6370

**M. STANFORD BLANTON**, Balch & Bingham
Fax No. (205) 226-8798

**RICHARD J. CONWAY,** Dickstein Shapiro & Morin
Fax No. (202) 887-0689

**BRAD FAGG**, Morgan Lewis & Bockius LLP
Fax No. (202) 739-3001

**NORMAN M. HIRSCH**, Jenner & Block
Fax No. (312) 840-7782

**ALEX D. TOMASZCZUK**, Pillsbury Winthrop Shaw Pittman LLP
Fax No. (703) 770-7901

**FROM:** **HAROLD D. LESTER, JR.**
Department of Justice
Civil Division
Commercial Litigation Branch
National Courts Section
1100 L Street, N.W.
Washington, D.C. 20530
Fax No. 202-307-2503
Voice No. 202-305-7562

**PAGES SENT (INCLUDING COVER SHEET):** 8

**COMMENTS:** Consolidated Edison Co. of New York v. United States, No. 04-0033C (Court of Federal Claims)

U.S. Department of Justice

Civil Division

PDK:DMC:HDL
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

Telephone:
(202) 305-7562

Washington, D.C. 20530

April 27, 2006

VIA TELECOPY AND UNITED STATES MAIL

Richard J. Conway
Dickstein Shapiro Morin & Oshinsky LLP
2101 L Street, N.W.
Washington, D.C. 20037

Brad Fagg
Morgan Lewis & Bockius LLP
1111 Pennsylvania Avenue, N.W.
Washington, D.C. 20004

Alex D. Tomaszczuk
Pillsbury Winthrop Shaw Pittman LLP
1650 Tysons Blvd.
McLean, Virginia 22102-4859

M. Stanford Blanton
Balch & Bingham LLP
1710 Sixth Avenue North
Birmingham, Alabama 35203

Norman M. Hirsch
Jenner & Block
One IBM Plaza
Chicago, Illinois 60611-7603

Re: *Consolidated Edison Co. of New York v. United States*, No. 04-0033C (Fed. Cl.)

Dear Sirs:

Recently, Consolidated Edison Company of New York ("ConEd"), the plaintiff in Consolidated Edison Co. of New York v. United States, No. 04-0033C (Fed. Cl.), informed us that it wants the Government immediately to produce to it all documents that the Government has received through discovery "in relation to the sale or purchase of the Pilgrim, Indian Point Unit 3, Fitzpatrick, Vermont Yankee, and Indian Point 1 and 2 nuclear plants and the associated Standard Contracts for disposal" and, apparently, in relation to the sale or purchase of any other nuclear reactor. Although we have objected to the relevance of this request to the matters at issue in the ConEd case and to the burden of ConEd's request, ConEd, by letter dated April 18, 2006, has insisted that we produce all responsive documents.

From our records, it appears that those plaintiffs which have produced documents in cases involving the reactors identified in ConEd's letter, and in which discovery has included matters relating to the purchase and sale of nuclear assets, are those filed by Boston Edison Company ("Boston"), Entergy Nuclear Generation Company ("ENGC"), Entergy Nuclear Vermont Yankee ("ENVY"), and Vermont Yankee Nuclear Power Corporation ("Vermont").[1] In addition to the reactors to which ConEd referred, the cases that Delmarva Power & Light Company ("Delmarva") and Atlantic City Electric Company ("Atlantic City") filed also involve diminished value claims resulting from the sale of nuclear assets, and both the plaintiffs in those now-consolidated cases and the purchasers of those plaintiffs' interests, PSEG Nuclear, L.L.C. ("PSEG"), and Exelon Generation Company, LLC ("Exelon"), have also produced documents in that litigation.[2] We have also obtained an extremely limited production of documents – mainly a copy of the purchase and sale agreement – in Rochester Gas & Electric Co. v. United States, No. 04-118C (Fed. Cl.).[3]

Because of limitations upon our funding and attorney time, we do not have the resources to review all of the plaintiffs' productions to identify which, if any, of the documents that they have produced to us relate to the sale or purchase of nuclear assets. As a result, to respond to ConEd's current demand for production, we would have to provide ConEd with access to all of the documents that have been produced by Boston, ENGC, ENVY, Vermont, Delmarva, Atlantic City, and the plaintiffs in Rochester. In addition, to respond to ConEd's production request, we would anticipate that we would need to produce the documents provided to us by PSEG and Exelon in response to discovery requests in the Delmarva litigation.

---

[1] Although we obtained an extremely limited amount of discovery from Power Authority of the State of New York (the former owner of the Fitzpatrick reactor) during the coordinated discovery proceedings, it does not appear that the discovery there included any sale or purchase information.

[2] In its document production requests, ConEd sought production of "all responses . . . which [the Government] ha[s] received to discovery requests, including, but not limited to . . . document requests . . ., for any case in which [the Government] ha[s] been a party and the Plaintiff has alleged [the Government's] breach of the Standard Contract." ConEd Document Production Request No. 23. In response to our objection to that request as overly broad and unduly burdensome, ConEd appeared initially to insist that we produce all such documents. However, in its April 18, 2006 letter, it indicated that it was interested only in documents relating to the sale or purchase of nuclear reactors.

[3] Although we obtained discovery from the plaintiff in Commonwealth Edison Co. v. United States, No. 98-621C (Fed. Cl.), which has sold its nuclear assets to Exelon, we do not believe that any of the document production in that case related to any sale of the plaintiff's nuclear assets. To the extent that other spent nuclear fuel cases involve plaintiffs who sold or purchased nuclear assets, we are currently unaware of any production specifically related to those transactions.

The Court of Federal Claims has entered a protective order in the ConEd case, a copy of which is available on the Court's PACER site, that is similar to those issued in other spent nuclear fuel cases pending before the Court, and, to the extent that any plaintiff designated particular documents as protected, we can produce the plaintiffs' information subject to that order. However, we understand that several plaintiffs in these cases have expressed concern about confidential or proprietary information that they may have produced to us and desire to ensure that distribution of the confidential or proprietary information is restricted. Although we certainly have an obligation to comply strictly with the stated requirements of the existing protective orders in these cases, the existing protective orders, as you may be aware, do not limit distribution of protected documents to attorneys, experts, and consultants, but may permit distribution of documents to company personnel to at least some degree. Although we depend upon documents produced to us from the plaintiffs in developing litigation strategies in response to plaintiffs' damages claims, we cannot know the extent to which the plaintiffs in various cases may be damaged or concerned about disclosures of their documents, even under the existing protective orders, to plaintiffs in other spent nuclear fuel cases or specifically to ConEd.

Because the plaintiffs that produced documents to us are in a far better position than we are to identify whether production of these documents to ConEd and, potentially, to other plaintiffs would harm their interests, we are notifying you of ConEd's request and have attached to this letter a copy of ConEd's most recent explanation of the types of documents that it is seeking. To the extent that your client believes that we should not produce the documents that your client produced to us to ConEd, we need you to notify us of that fact by Friday, May 5, 2006, and identify for us the basis upon which we should withhold those documents. Further, to the extent that you want to negotiate some additional restrictions upon ConEd's distribution of any documents that your client produced to us, we would ask that you contact counsel for ConEd to attempt to resolve that issue directly with ConEd. Alternatively, you may be able to negotiate another solution with ConEd to a wholesale production of an individual plaintiff's documents to ConEd by the Government, such as an agreement by an individual plaintiff with ConEd for the plaintiff to cull and produce itself those documents responsive to ConEd's request from that plaintiff's total production.

Given that the requested documents did not come from the Government's files, and given that we have them only because they were produced in this litigation, we are in a difficult position in attempting to respond to ConEd's demands while attempting to honor any concerns that other plaintiffs have expressed in the past about distribution of their documents. Nevertheless, we feel it necessary to provide those plaintiffs whose documents we may have to produce an opportunity to intervene in and attempt to resolve any concerns about this matter themselves, before we have produced any potentially confidential or proprietary information to ConEd. If we do not hear from any particular plaintiff or entity that we have identified above as one whose documents we would have to produce to respond to ConEd's document production requests, we will assume that the particular plaintiff does not object to our production of its documents, subject where appropriate to the existing protective order, and we will make

available to ConEd those documents for its review and copying at a mutually agreeable date and time.

Thank you in advance for your attention to this matter. To the extent that your client is able to resolve this matter directly with ConEd, or to the extent that your client elects not to challenge the Government's response to ConEd's production request, we would appreciate it if you would notify us of that fact.

Very truly yours,

HAROLD D. LESTER, JR.
Assistant Director
Commercial Litigation Branch
Civil Division

Attachment

cc: David A. Churchill
Jenner & Block LLP
601 Thirteenth Street, N.W.
Suite 1200 South
Washington, D.C. 20005-3823

JENNER&BLOCK

April 18, 2006

Jenner & Block LLP
601 Thirteenth Street, NW
Suite 1200 South
Washington, DC 20005-3823
Tel 202 639-6000
www.jenner.com

Chicago
Dallas
New York
Washington, DC

David A. Churchill
Tel 202 639-6056
Fax 202 637-6370
dchurchill@jenner.com

***VIA FACSIMILE AND REGULAR MAIL***

Harold D. Lester, Jr.
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
National Courts Section
1100 L Street, N.W.
Washington DC 20530

Re: ***Consolidated Edison Company of New York v. United States***
***Case No.*** **04-0033**

Dear Harv:

I write to respond to your letter dated April 12, 2006, which addressed several discovery issues we have been attempting to resolve. Without ignoring the other issues in your letter (which I will address at a later time), I would like to focus on a key issue that appears under your heading titled, "Copies of Documents Produced By Other SNF Plaintiffs And Other Third Parties," appearing initially on page 3.

We have expressed an immediate need "to review discovery materials the Government has received or submitted in relation to the sale or purchase of the Pilgrim, Indian Point Unit 3, Fitzpatrick, Vermont Yankee, and Indian Point 1 and 2 nuclear plants and the associated Standard Contracts for SNF disposal." March 10, 2006 Letter, at 3. Without these documents, our ability to develop our affirmative case is substantially impaired, and will certainly hinder our ability to meet the approaching deadlines established by the Court.

Despite the obvious relevance of these materials, you object to production on several grounds, none of which is persuasive.

First, you claim that producing more than "three million pages of documents from various SNF plaintiffs and other third parties" is "unduly burdensome." April 12 Letter, at 2. To be clear, we are not interested in the three million documents collectively produced by Plaintiffs in other SNF cases, only those involving the purchase or sale of a nuclear plant. Of the narrowed group of documents we have requested, you state that only Boston Edison Company, Entergy Nuclear Generation Company, and to a limited extent, the Power Authority of the State of New York, have produced documents to the Government thus far.[1] We assume the Government has tracked the source of the documents it has received in discovery, and is able to produce a subset of documents related to particular cases or parties. There is thus no burden in this production.

[1] To the extent the Government has not received discovery in the other cases addressed by Con Edison's letter, we request that you identify when discovery is anticipated and supplement buyer/seller document productions to Con Edison when those documents are received.

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
CB

JENNER&BLOCK

Second, you object that even producing such a limited subset of documents will not be performed until Con Edison makes clear "the relevance of the entirety of the third-party document production." April 12 Letter, at 4 & n.1. Con Edison has underscored its focus on other SNF buyer/seller industry documents at every stage of this litigation. Since the day that Con Edison filed its complaint, it has consistently maintained that "DOE's failure to perform its statutory and contractual obligations to remove SNF caused a number of potential purchasers for nuclear generating facilities such as Indian Point to be artificially and improperly constrained, thereby reducing the beneficial effects of a competitive auction for these assets." Complaint, at 24 (filed Jan. 13, 2004) (emphasis added).

The relevance of these documents is hardly confusing, contrary to your letter. As I made clear during a recent teleconference with Judge Wheeler and Joshua Gardner, "the factual underpinnings [of our diminished value claim] will come from the various evaluation methodologies that were used throughout the industry, not just by our buyer but throughout the industry at about the time our sale took place." Transcript, at 4 (March 9, 2006). I further indicated that we would be looking for those valuation models from the Government:

> What I do believe [to be] the case, however, is that many of the potential buyers and seller did create valuation methodologies for these various plants that were bought and sold in the timeframe in which we are interested, and the Justice Department, through discovery in these cases, has obtained through discovery of other plaintiffs -- buyers and sellers -- all of these valuation models."

The very quotations you cite from our January 20, 2006 hearing before Judge Wheeler in your April 12 letter make my point. There, I explained that our "theory of the case is not that ENIP paid less, but that the market was depressed in general." I further explained that, "our testimony will be to the effect that the entire market was depressed to the point that whether it was ENIP that ultimately bought this plant or some other company that bought this plant, the entire value of the plant was hugely diminished because of the government's breach of contract in 1998." Transcript, at 45-46 (Jan. 20, 2006). To show that market depression, we need access to buyer/seller valuation models and other documents pertaining to the sale of the nuclear facilities at issue in each case.

We believe that this letter, our previous representations to the Court, our complaint, and our initial disclosures,[2] have made our interest in these documents, and their relevance, abundantly clear. Moreover, the Government's own interest in such documents is manifest by

[2] Contrary to your representation that Con Edison's initial disclosures were due on Tuesday, April 11, 2006, they were timely submitted on April 12, 2006. *Consolidated Edison Company of New York, Inc., v. United States*, No. 04-0033C, Order, at 1 ("Plaintiff has represented that it will transmit its initial disclosures to Defendant on April 12, 2006.") (unpublished opinion). This is at least the third time that the Government has misstated a due date in correspondence to Con Edison. I am sympathetic to the fact that you have many ongoing cases, but please call me before representing that we have missed a deadline so that I may confirm with you the correct deadline.

JENNER&BLOCK

the fact that they were sought out in discovery. Since the Government will no doubt attempt to use those documents to test, question and quantify the extent to which its conduct did or did not affect the value of nuclear assets, in Con Edison's case, it would be unfair for the Government to attempt to shield those critical documents from Con Edison's legitimate requests to review them well in advance of trial.

Third, you object that you are constrained in sharing the documents you have received from other SNF plaintiffs because of concerns regarding the proprietary and confidential information contained in other SNF plaintiffs' documents. The parties have had a protective order on file in this case since May 18, 2004, which to our knowledge is a standard form of protective order that has been used in SNF cases. That order expressly proscribes disclosures to non-spent fuel litigants, and hence supplies no basis for objecting to our discovery. To the extent the provisions of this protective order have been superceded, expanded or affected by collateral agreements, we request copies of such other agreements so we can determine whether Con Edison is able to make reasonable accommodations in order to protect the proprietary information in these materials.

We request production of the documents you have received from Boston Edison Company and Entergy Nuclear Generation Company by April 26, 2006. As for the preferred mode of production, we would appreciate continuing to receive productions electronically, as the Government has recognized it has done in the past. April 13 Letter, at 4.

If the Government is unable to meet our proposed deadline, we plan to address this issue with Judge Wheeler, who indicated that questions surrounding our ability to obtain this information from the Government should be resolved "earlier rather than later," Transcript, at 9 (March 9, 2006), given the other deadlines looming in this case.

Thank you for your attention in this matter. Please call me if you have any questions.

Sincerely,

David A. Churchill

DAC