No. 04-0033C
(Judge Wheeler)

IN THE UNITED STATES COURT OF THE FEDERAL CLAIMS

CONSOLIDATED EDISON COMPANY OF NEW YORK, INC.,

Plaintiff,

v.

THE UNITED STATES OF AMERICA,

Defendant.

# DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR ENTRY OF SUPPLEMENTAL PROTECTIVE ORDER AND ORDER COMPELLING PRODUCTION OF DOCUMENTS

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

HAROLD D. LESTER, JR.
Assistant Director

JOSHUA E. GARDNER
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street N.W.
Washington, DC 20530
Tele: (202) 305-7583
Fax: (202) 307-2503

Attorneys for Defendant

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

August 25, 2006

**TABLE OF CONTENTS**

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

DISCUSSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

I. PLAINTIFF'S EFFORTS TO INSINUATE GOVERNMENT DELAY IN THIS MATTER ARE WHOLLY UNFOUNDED AND UNSUPPORTED . . . . . . . . . 3

II. ALTHOUGH UNNECESSARY TO THIS MOTION, PLAINTIFF APPEARS TO MISUNDERSTAND THE CONTENTS OF THE GOVERNMENT'S PRODUCTION WEBSITE AND THE DOCUMENTS THAT THE GOVERNMENT HAS OBTAINED THROUGH DISCOVERY . . . . . . . . . . . . 7

III. THE GOVERNMENT REQUESTS THAT THE COURT ENTER THE ATTACHED REVISED PROTECTIVE ORDER, TO REPLACE THE EXISTING MAY 18, 2004 PROTECTIVE ORDER . . . . . . . . . . . . . . . . . . . . . . 9

IV. THE COURT SHOULD ENTER, IN ADDITION TO THE REVISED PROTECTIVE ORDER, THE SUPPLEMENTAL PROTECTIVE ORDER THAT WE HAVE PROPOSED_ . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

V. TO THE EXTENT THAT THE COURT ORDERS PRODUCTION OF DOCUMENTS PRODUCED BY SNF PLAINTIFFS IN OTHER CASES, PLAINTIFF'S REQUEST THAT THE GOVERNMENT IDENTIFY VALUATION DOCUMENTS WITHIN THOSE PRODUCTIONS IS BEYOND THE PERMISSIBLE SCOPE OF DISCOVERY . . . . . . . . . . . . . . . 18

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

# TABLE OF AUTHORITIES

## CASES

Cipollone v. Liggett Group, Inc.,
785 F.2d 1108 (3rd Cir. 1986) ........................................................................... 17

Forest Prods. Northwest v. United States,
No. 05-5007, 2006 WL 1817073 (Fed. Cir. July 5, 2006) .............................................. 17

Miles v. Boeing Co.,
154 F.R.D. 112 (E.D. Pa. 1994) ........................................................................... 17

THK America, Inc. v. NSK Co.,
157 F.R.D. 637 (N.D. Ill. 1993) ........................................................................... 13

## MISCELLANEOUS

Restatement (Second) of Contracts § 211 (1981) ........................................................... 10

# INDEX TO APPENDIX

Letter from Alex D. Tomaszczuk to Harold D. Lester, dated May 5, 2006 . . . . . . . . . . . . . . . . . . 1

Letter from J. William Boland to Joshua E. Gardner, dated July 31, 2006 . . . . . . . . . . . . . . . . . . . 4

Attachment A . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Attachment B . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| CONSOLIDATED EDISON COMPANY OF NEW YORK, INC. | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 04-0033C |
| | ) | (Judge Wheeler) |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION
FOR ENTRY OF SUPPLEMENTAL PROTECTIVE ORDER
AND ORDER COMPELLING PRODUCTION OF DOCUMENTS

Defendant, the United States, respectfully responds to the motion that plaintiff, Consolidated Edison Company of New York, Inc. ("ConEd"), filed, seeking entry of a supplemental protective order and an order compelling the Government's production of documents that are subject to protective orders in other spent nuclear fuel ("SNF") cases and that were produced to the Department of Justice by other SNF plaintiffs as part of the litigation in those cases.

## SUMMARY OF ARGUMENT

In its motion, ConEd seeks entry of a supplemental protective order, allegedly not to supplant but only to supplement the existing protective order, so that it can obtain documents previously produced to the Department of Justice by other SNF plaintiffs in other SNF cases pending in this Court, all of which are subject to protective orders in those SNF cases. We do not object to the entry of a supplemental protective order. However, the supplemental order that ConEd has proposed, despite ConEd's representations to the contrary, is not "supplemental," but, instead, would effectively replace the existing protective order. Any document subject to the "supplemental" order is to be identified by the marking "Confidential Material," while any

document subject to the original protective order is to be identified by the marking "Confidential Material." As we informed ConEd after it proposed its supplemental protective order, since documents subject to the original and the supplemental protective orders would be identified by the very same language, the Government would have no way of knowing which protective order restrictions the Government would be required to apply.

Further, even though ConEd suggests that this supplemental protective order places no additional restrictions on the Government beyond those in the existing protective order, it seems clear from its plain language that it limits the Government's use of these documents to this case. Particularly since one of the third parties upon which we served a subpoena in this case has refused to produce certain documents to us because of the possibility that an employee of another nuclear utility may see them, ConEd's representations about the scope of the supplemental protective order and the Government's right under that order to use documents subject to it in other SNF cases that do not have a supplemental protective order, if true, seem not to appreciate the third parties' concerns.

More fundamentally, the documents that ConEd seeks are not from the Government's files. To the extent that they even exist, the Department of Justice obtained them through document productions in other cases, and the plaintiffs in the other SNF cases identified them as protected material in those other cases. We have informed counsel for the objecting third parties of the hearing that the Court has scheduled for August 28, 2006, and will let them address the objections that they raised to us about providing ConEd with copies of the documents that they had previously produced to us. In many ways, ConEd's motion places the Government in the middle of a dispute between ConEd and these objecting parties. Nevertheless, although we do

not oppose entry of a supplemental protective order to provide additional protections to third parties that are producing extremely sensitive information, the supplemental protective order that ConEd has proposed does not appear to address the full range of concerns that third parties and the Government have raised. For the reasons explained below, we request that the Court enter a supplemental protective order, but ask that the Court adopt the draft supplemental order that we have attached to this response.

## DISCUSSION

### I. PLAINTIFF'S EFFORTS TO INSINUATE GOVERNMENT DELAY IN THIS MATTER ARE WHOLLY UNFOUNDED AND UNSUPPORTED

ConEd, in its motion, appears to insinuate that we have tried to delay ConEd's receipt of these documents for some inappropriate purpose. We cannot understand ConEd's unsupported effort to twist the history of the parties' communications in this case to suit its purposes.

ConEd initially made a discovery request that we thought broad, but manageable: that the Government produce "all responses which you have propounded or which you have received to discovery requests, including, but not limited to interrogatories, document requests and requests for admissions, for any case to which you have been a party and the Plaintiff has alleged your breach of the Standard Contract." Given ConEd's use of the word "propounded" and its reference to interrogatories, document requests, and requests for admission, we initially interpreted this request as relating to all of the written discovery responses that the Government had either prepared itself or received from plaintiffs in other SNF cases. We undertook an effort to locate every written discovery response that we had sent to an SNF plaintiff, or that an SNF plaintiff had sent to us, and produced those written discovery responses. However, we later learned that ConEd interpreted its request to include not only the written discovery responses,

but also every single document that any entity has produced to the Government in any SNF case. When ConEd identified that interpretation of its document production request, we informed ConEd that we were unwilling to become an uncompensated clearing house for all SNF plaintiff document productions and, based upon the overbreadth of ConEd's request and the cost to the Government of reproducing millions of pages of documents that did not originally come from the Government's files, could not acquiesce in ConEd's demand.

Subsequently, by letter dated April 18, 2006, ConEd informed us that it was not interested in all of the documents that any SNF plaintiff had produced, but only in "those involving the purchase or sale of a nuclear plant." ConEd Exhibit E.[1] Although ConEd identified the SNF plaintiffs whose documents it wanted us to produce, all of the documents from some of those plaintiffs are subject to protective orders in other SNF cases, and, given that we do not have any knowledge regarding the harm that would result from production of these documents to other entities, we believed it appropriate to notify the relevant SNF plaintiffs about ConEd's request and to let them identify any objections or concerns about production of their documents to ConEd. We sent a letter to the concerned plaintiffs' counsel on April 27, 2006, asking for responses by May 5, 2006. ConEd Exhibit F.

In response to that letter, a copy of which is attached to this response brief, we received objections to any production of protected documents that had been produced to us by Entergy Nuclear Generation Company; Entergy Nuclear Indian Point 2, LLC; Entergy Nuclear Fitzpatrick, LLC; Entergy Nuclear Indian Point 3, LLC; Entergy Nuclear Operations, Inc.;

---

[1/] "ConEd Exhibit ___" refers to the exhibits to ConEd's August 16, 2006 motion for entry of a supplemental protective order and motion to compel. "ConEd Mtn. ___" refers to ConEd's August 16, 2006 motion. "App. ___" refers to the appendix to this response brief.

Entergy Nuclear Vermont Yankee; Florida Power & Light Company; PSEG Nuclear, LLC; and Vermont Yankee Nuclear Power Corporation. App. 1-3. Subsequently, we came to understand that counsel for ConEd was working with counsel for the objecting plaintiffs to develop a supplemental protective order that would alleviate those plaintiffs' concerns about document production. Between May 5 and July 19, 2006, we received little if any information about the discussions between counsel for ConEd and counsel for the objecting plaintiffs. However, on July 19, 2006, we received, by e-mail, a draft supplemental protective order to which ConEd asked us to agree and to which ConEd asked us to respond.

We responded to ConEd's 15 days later, on August 3, 2006. Although ConEd asserts that its July 19, 2006 e-mail was met "with silence" until August 3, 2006, at which point, "without notice," it received a detailed response, ConEd had specifically asked us to evaluate the proposed supplemental order that it had developed over a ten-and-a-half week period and to respond to it. In light of the complexities that its proposed order appeared to create for us, and the Government's exclusion from ConEd's negotiations with counsel for the objecting parties, we do not understand the basis upon which ConEd has attempted to "spin" the Government's two-week response time into some kind of inappropriate delay. In the 15-day period during which we evaluated the proposed protective order, we reviewed ConEd's proposed supplemental order and identified concerns about it, a review which caused us then to review <u>all</u> of the existing protective orders in the various SNF cases and to identify problems in those orders and which raised questions about the existing protective order language.[2] Following our study of all of the

---

[2] As the Court may be aware, we originally had suggested that the Court enter a single protective order that would govern all of the SNF cases. The Court did not adopt that suggestion. As a result, outside of the protective order that was entered in the coordinated

existing protective orders, we provided a detailed response in which we proposed changes to the existing protective order to ensure the ability to share information learned in this case in other cases and, further, proposed concrete changes to the draft supplemental protective order.

After we sent our August 3, 2006 letter to ConEd, we heard nothing from ConEd until 13 days later, on August 16, 2006, when, a short time before ConEd filed its motion to compel, counsel for ConEd left a voicemail for counsel for the Government in this case, informing us of ConEd's intent to file a motion to compel and entry of the supplemental protective order as ConEd had originally drafted it. Later that day, ConEd filed that motion to compel, but did not address any of the concerns that we raised in our August 3, 2006 letter. It is unfortunate that ConEd elected not to discuss this matter with us between the time that we sent our August 3, 2006 letter and the filing of its motion to compel. Nevertheless, its insinuations that the Government was somehow responsible for delaying the resolution of this matter is simply unfounded.

Finally, ConEd is in no position to complain about timely document productions, given that <u>ConEd</u> has failed to produce <u>any</u> documents related to the vast majority of the Government's document production requests. For example, the first 16 of the Government's document production requests relate to a variety of issues, including the operation and maintenance of the wet pool at Indian Point, documents related to the presence of Greater Than Class C low-level radioactive waste, spent fuel management studies, and documents related to the Standard Contract. At least as of August 23, 2006, we had received few, if any, documents related to

---

discovery proceedings that applied to the first 17 SNF cases that were filed in this Court, individual protective orders have been filed in some, but not all, of the SNF cases.

these issues.[3] Indeed, despite ConEd's demand for other utilities' valuation models, ConEd, at least as of August 23, 2006, had not yet produced its own valuation model. Simply put, it is ConEd, rather than the Government, who has failed to meet its discovery obligations.

II. ALTHOUGH UNNECESSARY TO THIS MOTION, PLAINTIFF APPEARS TO MISUNDERSTAND THE CONTENTS OF THE GOVERNMENT'S PRODUCTION WEBSITE AND THE DOCUMENTS THAT THE GOVERNMENT HAS OBTAINED THROUGH DISCOVERY

In its motion, ConEd has made several representations that, although possibly unnecessary to the resolution of its motion, we believe appropriate to correct or clarify. First, we want to make clear, in response to ConEd's statement that it is only fair that it obtain copies of third parties' document productions "essentially simultaneously" with the Government's receipt of them, see ConEd Mtn. 2, that ConEd has been provided, and will continue to be provided, with copies of all documents that we obtain in response to subpoenas that we serve upon third parties in this case. ConEd's concern, apparently, is not about those documents. Instead, ConEd apparently wants the Government to be obligated to produce to ConEd, on a continuing basis, every document production that the Government receives in other SNF cases as they are received. Essentially, ConEd wants the Government to become a clearing house for all document productions in every SNF case, with an obligation to fund document productions from all SNF plaintiffs to ConEd. As the Court may be aware, we previously sought to consolidated all of these cases, a scenario in which ConEd's concerns about receipt of document productions would be eliminated. However, ConEd, like other SNF plaintiffs, opposed that request. To the extent that ConEd, having opposed consolidation of this case with all other SNF cases, wants the

[3] ConEd produced additional documents to us on August 24, 2006. We have not have an opportunity to review the contents of those files.

Government now to be obligated to provide ConEd with every document produced in every SNF case, its request is wholly inappropriate. Nevertheless, ConEd's representation about its need for third party documents should not be taken to mean that the Government is not providing ConEd with documents produced to us in this case. Our objections to ConEd's overly broad production requests related to its demand that we produce all documents produced in other SNF cases.

ConEd has also represented that the Government has "established a common discovery website with co-mingled materials that it has received in discovery from all or virtually all parties to the SNF litigation." ConEd Mtn. 7. ConEd appears to misunderstand the contents of the production website that we created. On that website, we have loaded the bulk of documents that we have produced to the SNF plaintiffs. In addition, we have loaded documents that were produced to the Government from third parties during the coordinated discovery proceedings. However, beyond those limited third-party productions, we have not loaded the approximately three million pages of documents that other nuclear utilities have produced to us. ConEd's belief that we have selected certain plaintiff-produced documents to load to the website, but not others, is simply unfounded. The costs associated with reproducing all documents that various SNF plaintiffs have previously produced to the Government would be staggering. We see no reason that the Government, and only the Government, should fund a website through which the various SNF plaintiffs can share documents with one another.

Further, ConEd asserts that the Government has obtained, and that we have confirmed receipt of, "various valuation and transactional assessment documents that have been supplied other SNF plaintiffs . . . in discovery . . . ." ConEd Mtn. 3. To the extent that ConEd is assuming that the Government has received an extensive number of valuation or "transactional

assessment" documents, ConEd is likely to be very disappointed. Although we have not completed reviews of all documents that have been produced to us in the SNF litigation, there appear to be few, if any, documents (outside of, possibly, document productions in response to the subpoenas that we served on third parties in this particular case (copies of which have already been provided to ConEd)) that fall into the category that ConEd has identified. To the contrary, it does not appear that even ConEd has produced valuation and "transactional assessment" documents in this litigation, raising questions about the scope of documentation that ConEd is likely to find from other nuclear utilities.

## III. THE GOVERNMENT REQUESTS THAT THE COURT ENTER THE ATTACHED REVISED PROTECTIVE ORDER, TO REPLACE THE EXISTING MAY 18, 2004 PROTECTIVE ORDER

As an initial matter, we address concerns that we identified through our review of all of the existing protective orders in this and other SNF cases. Based upon that review, we respectfully request that the Court modify the existing protective order, entered in this case on May 18, 2004, to resolve these concerns.

The Court's May 18, 2004 protective order, which provides, in part, "[c]onfidential information shall be used by the receiving party solely for the purpose of conducting the above-referenced litigation and not for any business or other purpose whatsoever . . . ." Protective Order ¶ 4 (May 18, 2004). This language was taken directly from the protective order that Judge Sypolt entered in the coordinated discovery proceedings that occurred in 2001 and 2002. See ConEd Exhibit H. However, the coordinated discovery protective order is captioned with the names of all the spent nuclear fuel cases then pending before the Court. See ConEd Exhibit H. Accordingly, any information designated as subject to the protective order could be used in any

of the cases then pending. The current protective order in this case bears only the case caption. Although ConEd has asserted in its motion that it does not believe that this language limits the use of any information designated as subject to the protective order to this case exclusively, see ConEd Mtn. 6-10, it is far from clear to us that the existing protective order, on its face, permits such sharing of protected materials, even though we believe that the Court intended to permit such sharing of information. Because ConEd's case arises from the same Standard Contract at issue in all of the SNF cases pending before the Court, 10 C.F.R. § 961.11, this limitation, to the extent that an individual judge interpreted it that way, could affect the Government's ability to present its case. To the extent that parol evidence is necessary to interpret DOE's obligations under the Standard Contract, the understanding and views of other utilities and the industry as a whole are relevant to the Court's interpretation of the Standard Contract. Restatement (Second) of Contracts § 211 (1981). To present this evidence, the Government expects that it will need to rely upon materials produced by various SNF plaintiffs that may be designated as subject to the protective orders in those respective cases. Absent a change to the existing protective order, the Government will be unable to use any materials that ConEd produces here in other cases and may be precluded from using materials that other SNF plaintiffs produce in their respective cases because the protection of the protective orders are not coextensive.

To attempt to standardize the protective orders in the SNF cases to the greatest extent possible[4] and to correct other identified problems, the Government requests that the Court enter

---

4/ Recently, in Dairyland Power Cooperative v. United States, No. 04-106C (Fed. Cl.), the Court revised the protective order, in response to a concern that the plaintiff there raised, that limits the Government's distribution of protected documents to the Dairyland case. Because of the interrelated nature of these cases, we believe that such limitations will unfairly limit the Government's ability to identify inconsistencies in different SNF cases and to use relevant

the attached revised protective order. The proposed protective order differs from the current protective order in three ways: (1) in paragraph 4 of the standard protective order, we have changed the language "the above-entitled litigation" to "litigation in the spent nuclear fuel cases pending in the United States Court of Federal Claims" to ensure that documents protected under the basic protective order may be used in spent nuclear fuel cases in which protective orders have been entered; (2) in paragraph 10 of the standard protective order, we have modified the language that previously read "[w]ithin ninety (90) days after the conclusion of this litigation" to "[w]ithin ninety (90) days after the conclusion of the spent nuclear fuel litigation in this Court" to ensure that, when plaintiff files subsequent suits for damages allegedly incurred in the future as a result of DOE's delay in accepting SNF, the Government will still have copies of the documents that plaintiff previously produced and will not have to seek reproduction of those documents; and (3) in paragraph 2 of the standard protective order, we ask that the plaintiff endorse the pages of documents that it deems confidential with an appropriate protective order legend, rather than, as currently allowed by the standard protective order, merely stamping them as "confidential" or designating them as subject to the protective order in a letter. This last change is necessary because the manner of designating documents and materials as "confidential" under the existing protective order has resulted in sometimes vague descriptions of what documents and materials are actually protected and, further, has required the Government to incur sometimes significant expense to emboss a protective order legend on documents that the plaintiffs have produced to us. Because, as previously mentioned, ConEd has indicated that it believes information sharing between cases is generally appropriate, ConEd

---

evidence in all SNF cases.

Mtn. 6-10, a clarification of the existing protective order should be made to ensure that no difficulties arise with regard to that issue.

## IV. THE COURT SHOULD ENTER, IN ADDITION TO THE REVISED PROTECTIVE ORDER, THE SUPPLEMENTAL PROTECTIVE ORDER THAT WE HAVE PROPOSED

With regard to ConEd's request for a supplemental protective order to address third parties' concerns that ConEd representatives will obtain information proprietary to those third parties, we do not object to the entry of a supplemental protective order, pursuant to paragraph 7 of the existing (or, as identified above, modified) protective order. We understand that third parties may be reluctant to produce documents, knowing of the possibility that ConEd employees potentially might see them. In fact, one of the third parties upon which the Government has served a subpoena in this case, Dominion Resources, Inc. (which is also a plaintiff in two cases, Dominion Resources, Inc. v. United States, Nos. 04-83C & -84C (Fed. Cl.)), has refused to produce its preliminary valuation models to us, asserting that "we do not believe that [the existing protective order] provides adequate protection for the highly confidential, proprietary and competitive information [Dominion] ha[s] withheld from [its] production in response to [our] subpoena." App. 4.

Nevertheless, we cannot agree to the language of the "supplemental" protective order that ConEd has proposed. Although we understand that there may be particular documents that are so highly sensitive or proprietary that an entity may desire further restrictions than the standard protective order provides, the need for this heightened level of protection should be rare, as the existing protective order already provides for restrictions upon access to and the use of documents subject to that order. To the extent that ConEd or some other party wants to place

documents under this heightened protective order, that party should be required to justify that heightened protection. For each document subjected to this heightened protection, that party should be required to provide some type of log that identifies with specificity the harm that would result from disclosure of that specific document to counsel for the other nuclear utility plaintiffs. Any burden associated with such an effort should be small, given that the number of documents that fall into this heightened level of protection should be relatively small. See THK America, Inc. v. NSK Co., 157 F.R.D. 637, 643-44 (N.D. Ill. 1993).

ConEd asserts that its proposed supplemental order does not impose "heightened" limitations on the Government, but only applies to ConEd. However, reading ConEd's proposed supplement, we cannot see the lack of effect upon the Government that ConEd assumes. The language that ConEd proposes is unclear to us in terms of limiting any additional restrictions to ConEd. Further, we do not understand the manner in which the supplemental protective order is meant to apply to documents that ConEd produces to the Government but designates as protected. Further, we presume that those third parties complaining about possible distribution of their documents to ConEd would be equally concerned about the Government using the documents that they produce under the "supplemental" protective order in other cases where no supplemental protective order exists. That is, if there are no additional restrictions on the Government's ability to use these documents beyond those in the original protective order, and if the Government (as ConEd argues) is already entitled to take protected documents produced in this litigation and use them in other SNF cases in which the original protective order has been issued, the Government presumably could file them in other SNF cases in which they could be distributed in the manner permitted by the original protective order. That would not seem to

address the third parties' concerns about distribution of these documents to other nuclear utilities. To the contrary, we presume that the third parties, which negotiated this supplemental protective order with counsel for ConEd, intended to preclude the Government from using these documents outside of this particular case. Our proposed supplemental protective order, a copy of which is attached, attempts to address this concern and, further, contemplates that ConEd itself will produce documents to the Government that it might view as confidential.

In addition, despite ConEd's assertions to the contrary, ConEd's proposed "supplemental" order appears to replace, in its entirety, the original protective order, given that both the original and supplemental orders impose restrictions upon apparently the same "Confidential Material" marking. That is, in paragraph 1 of the proposed supplemental protective order, the term "Confidential Material" is exactly the same as that in the original protective order. If a document was identified as "Confidential," the United States would have no basis for knowing whether the document's distribution is limited in the manner required by the original protective order or in the manner required by the supplement. Further, the replacement of the original protective order in its entirety with the proposed "supplement" would preclude the use of any protected documents produced in this particular spent nuclear fuel case in any other spent nuclear fuel case. We cannot agree to this proposal. Any supplemental protection should apply only to particular categories of documents for which this additional and heightened level of protection is absolutely necessary, and the scope of those documents should be identified here. We cannot agree to permit ConEd and other nuclear utilities to apply a heightened level of protection to every document that they choose to designate as needing some level of protection, particularly without some significant justification for the application of heightened protection.

With regard to the proposed paragraph 2 of the draft supplemental protective order, we need any documents produced to us clearly to identify the fact that each document is protected by the supplemental protective order restrictions. Accordingly, each page of any document that is to be limited in distribution only to this particular spent nuclear fuel case needs to have the following legend endorsed upon it: "SPECIALLY PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH U.S. COURT OF FEDERAL CLAIMS SUPPLEMENTAL PROTECTIVE ORDER IN CONSOLIDATED EDISION CO. OF N.Y. V. US, NO. 04-33C, DATED ____________, 2006."

With regard to the proposed paragraph 4(a), although ConEd argues that the phrase "the above-entitled litigation" clearly means all SNF cases, we, as previously discussed, do not believe that the language is so clear as to permit such information sharing between SNF cases. As written, this paragraph presumably would allow third parties, most if not all of which have filed their own cases in the Court of Federal Claims, to produce documents here but would preclude the United States from using those documents in the cases in which the third parties are plaintiffs. We should not be in a position where we are required to destroy the documents that we obtain in this case and then attempt to seek production of the documents again in the third parties' cases or, alternatively, of having to return to the Court to seek relief from the technical requirements of the existing protective order when this case ends.

With regard to the proposed paragraph 5, the limitation upon access to "Con Ed's attorneys" is too restricted, as we should be entitled, at the very minimum, to share these documents with counsel for the third parties producing these documents and use them in litigation where the third parties are plaintiffs.

With regard to the proposed paragraph 7, ConEd has added a portion of a sentence that provides as follows: "except that in accordance with the provisions of Paragraph 4 above plaintiff shall be entitled promptly to receive from the United States Confidential Material disclosed to the United States by the parties." We cannot agree to this provision. In fact, as previously mentioned, in response to ConEd's request for a supplemental protective order, we have undertaken a review of all of the existing protective orders in the spent nuclear fuel litigation. Some judges have changed a few words in varying paragraphs, creating different obligations upon the United States in different cases. Although our intent was that all documents produced in the spent nuclear fuel cases, including those subject to a protective order, could be shared among the spent nuclear fuel cases, we have recently realized that, pursuant to the express language of the existing protective orders, some of the existing protective orders, as written, appear to preclude information sharing between cases. We are working to resolve this issue, although, in the Dairyland case, the Court has issued an order rejecting the Government's request that confidential material be available for use in all SNF cases in which a protective order has been issued.

With regard to the proposed paragraph 9, ConEd has attempted to reverse the burden of proof imposed by the original protective order and place the burden of establishing that documents should be removed from the restrictions imposed by the supplemental protective order upon the United States. Under well-established case law, it is the burden of the party seeking to protect documents and to limit their distribution to establish good cause for that protection. See, e.g., Forest Prods. Northwest v. United States, No. 05-5007, 2006 WL 1817073, at *5 (Fed. Cir. July 5, 2006); Miles v. Boeing Co., 154 F.R.D. 112, 114 (E.D. Pa. 1994). "To

overcome the presumption" that documents should be publicly available and establish "good cause" for subjecting documents to a protective order, "the party seeking the protective order must . . . demonstrat[e] a particular need for protection." Cipollone v. Liggett Group, Inc., 785 F.2d 1108, 1121 (3rd Cir. 1986). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." Id. "Moreover, harm must be significant, not a mere trifle." Id. We cannot agree to a change in this well-established precedent.

We have drafted a proposed supplemental protective order that we believe will address the concerns of the third parties, will limit the number and types of documents that are subject to the supplemental protective order, and will permit the Government to remove produced documents from the protections of the supplemental protective order if the Government identifies a need to use the document in other SNF cases and the third party invoking the supplemental protection cannot justify its need. We respectfully request that, in place of the protective order that ConEd suggests, the Court enter the revised protective order and the supplemental protective order that accompany this response.

## V. TO THE EXTENT THAT THE COURT ORDERS PRODUCTION OF DOCUMENTS PRODUCED BY SNF PLAINTIFFS IN OTHER CASES, PLAINTIFF'S REQUEST THAT THE GOVERNMENT IDENTIFY VALUATION DOCUMENTS WITHIN THOSE PRODUCTIONS IS BEYOND THE PERMISSIBLE SCOPE OF DISCOVERY

In its motion to compel, ConEd requests that the Court, once it enters a supplemental protective order, require the Government to produce to ConEd "non-redacted third party valuation and transactional assessment documents (including analyses of whether to bid, asset evaluations, asset valuation models, methodologies, and model output and worksheets) that it has received or will receive" from particularly identified nuclear utilities. See "Proposed Order" attached to ConEd Mtn. Because these documents are from third parties, and do not belong to and were not originated by the Government, we will allow the third parties that objected to our providing these documents to ConEd address any concerns about the production itself. However, we have a concern about being required, at the Government's cost, to engage in wholesale reproductions of all documents produced by SNF plaintiffs in the SNF litigation. To the extent that ConEd expands its requests for document production, we must object, particularly if ConEd is not willing to fund the entirety of such an effort.

Further, and importantly, to the extent that we are required to reproduce documents that we obtained through discovery in the SNF litigation from the identified nuclear utilities, it is not our obligation to review those document productions in their entirety and attempt to select those documents that constitute valuation or transactional assessment documents. We have not completed our own review of all of the document productions in the SNF cases, much less focused solely on valuation and transactional assessment documents in all cases. When we receive documents from SNF plaintiffs, the plaintiffs typically produce them on disks after

having been converted into an electronic form. Pursuant to RCFC 34(b), we are entitled to produce documents "as they are kept in the usual course of business." We should not be obligated to numerous Government attorney hours to review all past document productions from the named utilities to identify the subsets of documents that ConEd desires. Instead, we would likely make available to ConEd the disks that these utilities provided to us, and it would be ConEd's obligation to search through, review, and locate any documents that it desired. The Court should not order the Government to require its attorneys to engage in that effort upon ConEd's behalf.

CONCLUSION

For the foregoing reasons, we respectfully request that the Court deny ConEd's motion, but enter the revised and supplemental protective orders that accompany this response.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Harold D. Lester, Jr
HAROLD D. LESTER, JR.
Assistant Director

s/ Joshua E. Gardner
JOSHUA E. GARDNER
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 305-7583
Fax: (202) 307-2503

Attorneys for Defendant

OF COUNSEL

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

August 25, 2006

CERTIFICATE OF FILING

I hereby certify that on this 25th day of August, 2006, a copy of the foregoing "DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR ENTRY OF SUPPLEMENTAL PROTECTIVE ORDER AND ORDER COMPELLING PRODUCTION OF DOCUMENTS OUT OF TIME" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Joshua E. Gardner