**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| **CONSOLIDATED EDISON COMPANY OF NEW YORK, INC.,** | |
| **Plaintiff,** | |
| **v.** | **No. 04-0033C** **(Judge Wheeler)** |
| **UNITED STATES OF AMERICA,** | |
| **Defendant.** | |

**PLAINTIFF'S MOTION FOR ENLARGEMENT OF TIME**

Pursuant to Rules 6(b) and 6.1 of the Rules of the United States Court of Federal Claims ("RCFC"), Plaintiff Consolidated Edison Company of New York, Inc. ("Con Edison") respectfully requests an enlargement of time for the deadlines for expert reports and cutoff of discovery established in the Court's January 23, 2006 Scheduling Order. Con Edison and Defendant the United States of America (the "Government") have conferred regarding an enlargement of time and although both are in agreement that an extension is required, cannot reach complete agreement as to the best method and schedule.

Discovery has proven to be complex and slow for both parties in this case, principally because the case necessarily involves discovery from multiple plaintiffs in other spent nuclear fuel ("SNF") cases currently pending in this court. Con Edison first sought discovery of materials produced to the government by various SNF plaintiffs in this and in other SNF cases. That production has proven incomplete, and accordingly Con Edison has recently issued third party subpoenas to relevant SNF case plaintiffs for their responsive documents. It is at this time

unclear when Con Edison will receive the requested materials, which are vital to both its affirmative and defensive case preparation.

The Government had indicated that it has experienced generally longer than anticipated discovery periods in "buyer-seller" SNF cases, like this one, because documents originating with multiple SNF claimants are involved, because possession of relevant documents is often transferred to the buyer upon the sale of a nuclear facility, and because candidate deponents with knowledge about SNF matters (sometimes occurring decades ago) are frequently no longer employed by the buyer or seller as a result of the sale of the facility. These witnesses must be located and deposed at far-flung locations. Accordingly, the parties in other buyer-seller cases have been required to settle successive extensions of discovery schedules.

Given the inherent uncertainty associated with discovery issues in buyer-seller SNF cases, in which third party documents play such a compelling role, Con Edison respectfully requests that the Court adopt an "event-based" schedule for certain aspects of discovery and pretrial milestones in this case. In the alternative, Con Edison respectfully requests a five-month enlargement to the existing deadlines, in which Con Edison believes the Government concurs. A trial date has not yet been established by the Court.

## BACKGROUND

Con Edison seeks documents relating to valuation models, model outputs, asset assessment, bid and transactional documents used and generated by various nuclear utilities in connection with the purchase of nuclear power plants. Con Edison seeks these documents to establish that the Department of Energy's ("DOE's") failure to dispose of spent nuclear fuel ("SNF") depressed the marketplace for nuclear power plants, and required excessive post-

retirement decommissioning funding, which in turn dramatically affected the value of Con Edison's Indian Point 1 and 2 nuclear units when they were sold after DOE's breach.[1]

Con Edison initially requested materials from the Government through discovery requests issued on November 20, 2004. Following a several month stay, the Government responded to Con Edison's request in September 2005, whereupon the parties engaged in extended discussions about the completeness of the Government's production. (These events are recounted in Plaintiff's Motion For Entry of Supplemental Protective Order and Order Compelling Production of Documents, dated August 16, 2006).

In April 2006, the Government issued subpoenas to third party nuclear utilities, including Constellation Energy Group, Florida Power & Light Energy, LLC, Duke Energy Corporation, Edison Mission Energy, Dominion Resources, Inc., and AmerGen Energy Company. In these subpoenas, the Government requested from all these third party nuclear utilities:

> All documents related to sales comparable to Indian Point or other sales and/or purchases of interest in nuclear power plants, including, but not limited to, a description of the assets, details on the sale mechanism (*i.e.*, whether the sale was effected through an auction, the number of bidders, the number of bids, and the type of auction, among other things), and transaction price.

The Government's April 2006 subpoenas encompass exactly the type of valuation documents Con Edison now seeks from the Government.

---

[1] Con Edison's claim has already withstood the Government's efforts at dismissal. *See Consolidated Edison Company of New York, Inc.*, 67 Fed. Cl. 285, 290 (Fed. Cl. 2005) (Lettow, J.):

> Because DOE had to have contemplated that some facilities would be sold, it is also fair to infer that failure to adhere to the Standard Contract might result in the diminution of the value obtained from a sale. If the facts exist as plaintiff alleges, such diminution was not only foreseeable but also appears to be the proximate result of the government's breach of contract.

On August 16, 2006, Con Edison filed a motion for the Entry of Supplemental Protective Order and Order Compelling Production of Documents ("Motion") to gain access to the third party valuation and transactional assessment documents subpoenaed and presumably possessed by the Government. In its affirmative case, Con Edison will use nuclear power plant valuation data relating both to its own Indian Point sale and other comparable post-breach sales of nuclear power plants to establish, through a model created by its expert witness, the monetary diminution in value of its Indian Point nuclear facilities at the time of sale in September 2001.

Defensively, Con Edison requires these documents because the Government has repeatedly contended that it will use such valuation data to support its entitlement to an "offset" for SNF-caused diminution in value in cases before this Court where the buyer of a particular facility (such as Indian Point) is also seeking post-acquisition damages caused by the Government's breach. The Government has repeatedly stated its intent to use materials produced by <u>any</u> SNF plaintiff in <u>any</u> SNF case.[2] Basic fairness dictates that Con Edison have access to such third party materials the Government either has or will subpoena or otherwise obtain in pending cases that it will use to oppose Con Edison's proofs at trial.

After argument on Con Edison's August 2006 Motion to Compel and after extensive discussions with several affected third party companies that had objected to either the Government's third party subpoenas or to Con Edison's requests related to their nuclear plant valuation materials, this Court entered an Amended Agreement and Protective Order ("Amended

---

[2] In briefing regarding a protective order in another SNF case, the Government stated that it "expects that, in presenting its defenses in this case as well as other cases, it will need to rely upon materials produced by [that SNF plaintiff] and other utility plaintiffs regarding the industry's understandings of the contract's terms and the industry's views of the implementation of the contract." Defendant's Response to Plaintiff's Emergency Motion for Entry of Protective Order and Stay of the Parties' Exchange of Confidential Materials, *Dairyland and Power Cooperative v. United States*, No. 03-2663C (Fed. Cl. filed Aug. 4, 2006).

Agreement") (Exh. A) and a Supplemental Agreement and Protective Order ("Supplemental Protective Order") (Exh. B) on August 31, 2006. The combined protective orders address specific concerns raised by Government and by certain third party companies relating to protection and use of sensitive company materials.

The Government then started producing some responsive third party valuation documents to Con Edison. As discussed below, despite Con Edison's assumption that all impediments to production of all relevant documents had been removed, complete production has not yet occurred.

**GOVERNMENT'S PRODUCTION OF**
**NUCLEAR PLANT BUYERS' SNF DOCUMENTS**

To date, the Government has produced approximately 217,000 pages of third party documents. Based on a review of these documents, Con Edison discovered extensive shortcomings in the Government's production. By letter dated November 30, 2006, Con Edison outlined several specific deficiencies in the Government's production. (Exh. C). The deficiencies included:

- With respect to the specific Indian Point transaction at issue here, Con Edison could locate no documents created by the buyer, Entergy Nuclear Indian Point, Inc. (ENIP), amounting to a valuation of the facility before the purchase. That no responsive documents exist is highly unlikely. Moreover, ENIP is listed on the Court's Supplemental Protective Order entered in this case on August 31, 2006, so there can be no argument as to whether responsive documents must be produced.

- With respect to the purchase of the Pilgrim nuclear facility by Entergy, Con Edison had extreme difficultly and undertook considerable expense to attempt to match documents identified by Entergy as having been produced to the Government with those actually produced by the Government to Con Edison. Con Edison remains unable to discern any logical pattern of the Government's production.

- The Government has refused to produce expert reports and related depositions generated by both sides in the Pilgrim buyer/seller cases, *Boston Edison Company v. United States*, Nos. 99-447C and 03-2626C (Fed. Cl. consol. July 29, 2005),

much, if not all, of which surely relate to the extent the value of nuclear plants diminished due to the Government's breach. Again, the buyer in that case, Entergy, is listed in the Court's Supplemental Protective Order entered in this case and the materials are plainly relevant to Con Edison's sale of Indian Point to the same purchaser.

- The Government has refused to produce unredacted copies of two heavily redacted documents created by Dominion Resources relating to its nuclear power plant valuation methodologies in the specific context of the Indian Point facility.
- The Government has not shared with Con Edison, despite numerous requests, the extent of the Government's discovery efforts to obtain nuclear plant valuation materials from the various buyers of nuclear facilities like Indian Point.

By letter dated January 11, 2007, the Government finally responded to Con Edison's discovery inquiry of November 30, 2006. (Exh. D). With respect to ENIP valuation documents, the Government provided Con Edison with additional information from ENIP's written discovery responses (to which Con Edison did not have access), which aided Con Edison's ability to search for relevant documents. With respect to most of the other open discovery issues raised by Con Edison, the Government simply responded that "at this time, we have produced all documents that ENIP [and other SNF plaintiffs] ha[ve] provided to us in response to our document production requests." (Exh. D, at 2). And, with respect to the requested expert reports and related depositions in BECO, the Government refused to produce them in light of Entergy's objection to production of these materials to Con Edison.[3]

**<u>CON EDISON'S THIRD PARTY SUBPOENAS</u>**

Because of the ongoing difficulties Con Edison has experienced in obtaining from the Government the nuclear plant acquisition documents of SNF case plaintiffs in other cases, and because of the central importance of these documents to Con Edison's case preparation, Con

---

[3] The Government mistakenly asserts that Con Edison was aware of and did not inform the Government of third parties' objection to production of these materials. In fact, upon inquiry, counsel for BECO did not object to production of these materials to Con Edison, and counsel for Entergy had not yet responded to Con Edison's inquiry at the time Con Edison requested the materials for the Government.

Edison has recently determined that it had no choice but to serve third party subpoenas directly upon other SNF case plaintiffs likely to have the same valuation materials Con Edison requested from the Government.[4] Con Edison is hopeful that through subpoena responses from other SNF case plaintiffs it may finally obtain the documents it needs, while simultaneously affording to all these third parties the negotiated safeguards of this Court's Supplemental Protective Order. Con Edison is now in discussions with some of the recipients of its third party subpoenas to determine whether an agreement on the production of responsive documents may be reached.

By letter dated December 20, 2006, Entergy objected to the Government disclosing to Con Edison expert reports and related expert witness deposition transcripts and exhibits filed in *Boston Edison Company v. United States* cases pending in this Court. (Exh. E). Both Entergy and Florida Power & Light have objected to producing valuation documents pertaining to nuclear acquisitions other than Con Edison's Indian Point facility on relevance grounds. (Exh. E). Because the preliminary objections to discovery recently voiced by these SNF plaintiffs in other cases have apparently been adopted by the Government as a shield against production of the requested documents to Con Edison here, they are discussed below.

**RELEVANCY OF REQUESTED DOCUMENTS**
**<u>TO CON EDISON'S DAMAGES ANALYSIS</u>**

Con Edison has the right to "obtain discovery regarding any matter, not privileged, that is relevant to the claim." Fed. Cl. R. 26. "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. Pro. 26(b)(1). Relevancy, under Rule 26, is construed broadly to include "any matter that bears on . . . any issue that is or may be in the case." *Oppenheimer Fund, Inc. v.*

[4] Con Edison has issued subpoenas to Entergy Corporation, Constellation Energy Group, Inc., Dominion Resources, Inc., Florida Power & Light Energy Company, and AmerGen Energy Company, LLC.

*Sanders*, 437 U.S. 340, 351 (1978). Indeed, even if "there is doubt over relevance, Rule 26(b)(1) indicates that the court should be permissive." *Speller v. United States*, 14 Cl. Ct. 170, 172 (Cl. Ct. 1988) (allowing plaintiff to discover third party documents where there was at least "some relationship" between the discovery requested and an issue at trial).

Here, the valuation documents and expert witness materials that Con Edison seeks from the Government are unquestionably relevant to Con Edison's damages in this case. Con Edison contends that the entire marketplace for the sale of nuclear power generation facilities was depressed by the DOE's breach of its obligations to dispose of SNF. Because the entire marketplace was devalued, the sale price for Con Edison's Indian Point facility was necessarily reduced. Thus, third party valuation materials from other SNF case plaintiffs covering several transactions are plainly relevant to Con Edison's theory of the case.

First, as part of the Indian Point sales transaction, Con Edison provided its offering memorandum to certain companies in response to their request and expression of interest in purchasing the Indian Point facility. Seven companies requested the offering memorandum – Amer Gen Energy Company, Constellation Energy Group, Dominion Resources, Inc., Duke Energy Company, Edison Mission Energy, Entergy Corporation, and Florida Power and Light Energy, LLC. As the sale process went forward, some of these companies submitted indicative bids for the Indian Point facility. Each of the companies that requested the offering memorandum may be expected to have generated some form of internal valuation of the Indian Point facility, as each of them determined whether and in what amount to submit a bid for purchase of this nuclear facility. These valuation materials will show what factors, discounts and other variables these companies used to reach a decision on a specific bid, or a decision not to bid. These materials are unquestionably relevant to Con Edison's efforts to determine whether,

and to what extent, the bidding for Indian Point was undermined by DOE's breach of its SNF contract relating to the spent fuel located at the Indian Point facility.

Second, Con Edison's discovery requests to the Government (and now to several third parties) include requests for nuclear plant valuation materials relating to the nearly contemporaneous purchases of other nuclear power generating facilities by these same companies. These facilities, and their buyers, include:

- Entergy (Pilgrim, Indian Point 3 (a unit adjacent to Indian Point 2 on the same site and which was owned by the New York Power Authority), FitzPatrick and Vermont Yankee facilities)
- Dominion (Millstone facility)
- AmerGen (Clinton, Oyster Creek, and Three Mile Island Unit 1)
- Florida Power & Light (Seabrook facility)
- Constellation (Nine Mile Point and Ginna facilities)

Valuation materials relating to these nearly contemporaneous sales are highly relevant for several reasons.

First, there is a nearly complete overlap in the identity of companies that participated in the Indian Point sales process and those that successfully completed the purchase of one or more nuclear facilities in the relevant timeframe (generally 1998 to 2003). Access to their valuation methodologies should disclose SNF-related factors that are common to all nuclear plants, like DOE's failure to commence disposal of SNF in accordance with its contract. Because these factors are common to all nuclear acquisitions and cut across all transactions, they are thus probative of how the market value of the nuclear units was determined under breach conditions, and also, the diminution in value suffered by Con Edison upon the sale of Indian Point. The Government intends to place these materials in issue in the various SNF "buyer-seller" cases pending before this Court.

Second, Con Edison's contention is that the entire marketplace for nuclear generating facilities was depressed in the wake of DOE's failure to honor its contractual obligations to dispose of SNF at the Nation's nuclear power plants. It is highly likely that this SNF component of any potential bidder's interest or participation in the market will be treated in some identifiable manner in the contemporaneous transactions relating to a nuclear generating facility. The potential bidder's view of SNF's effect on any nuclear facility's value (including Indian Point) may be more explicitly stated in documents relating to other contemporaneous transactions. Thus, Con Edison's search for relevant material is legitimately broader than the single Indian Point transaction to which it was a party.

Con Edison's position that valuation documents related to other post-breach similar nuclear facility divestures are relevant is fully supported by case law. The mere fact that these valuation documents involve nuclear facilities that are not identical to the facilities at issue in this litigation does not make these documents any less relevant for discovery purposes. In *Potomac Electric Power Co. v. California Union Ins. Co.*, 136 F.R. 1 (D.D.C. 1990), plaintiff sued its insurance company to recover costs for cleaning up PCB contaminations. The court ordered the insurance company to provide plaintiff with third party insurance claims for other contaminations that were either litigated or ultimately paid under similar policies. *Id.* at 3. Even though these third party documents did not arise out of the same transaction, they involved similar insurance policies, similar breaches of those policies, and the same insurance company, and the court found these documents relevant for discovery purposes. Likewise, Con Edison seeks discovery of valuation documents related to similar sales of nuclear facilities. In all of these transactions, the seller had entered into identical SNF contracts with the Government, the Government failed to begin disposal of SNF as promised on January 31, 1998, and the buyer

purchased the facility after this date with the same lack of knowledge as to when the Government would actually perform, but the same certainty that unknown, but significant, costs and risks were to be incurred.

The fact that these valuation documents relate to sales of nuclear facilities other than the Indian Point sale by no means diminishes their relevance in this litigation. In products liability cases, different models of a product are generally relevant if they share the same characteristic at issue in the litigation. *See, e.g., United Oil Co., Inc. v. Parts Assocs., Inc.*, 227 F.R.D. 404, 413 (D. Md. 2005) (in litigation involving chemicals contained in dyes and brake cleaning fluids, plaintiff entitled to discovery of other products containing the same injury-causing chemical compounds at issue in the litigation); *Tucker v. Ohtsu Tire & Rubber Co., Ltd.*, 191 F.R.D. 495, 497 (D. Md. 2000) (holding documents related to separate litigation against the same defendant were relevant even though that case involved a light truck tire rather than a passenger tire); *Uitts v. General Motors Corp.*, 58 F.R.D. 450, 452 (E.D. Pa. 1972) (in litigation involving failure of left front spring main leaf on vehicle, plaintiff allowed to obtain discovery regarding all types of vehicles with that component).

At issue in this litigation is the extent to which the Government's failure to begin SNF disposal in 1998, and to defer that obligation indefinitely while simultaneously continuing to collect millions of dollars in annual fees, caused the sale price of the Indian Point facility to decrease. Con Edison only seeks discovery of valuation documents related to nuclear facility sales occurring after the Government failed to meet identical contractual obligations in identical SNF contracts. Therefore, these valuation documents are relevant because they share the same characteristics, and the underlying assets that suffered the same consequences of delayed performance, as those directly at issue in this litigation.

**CON EDISON HAS GOOD CAUSE TO REQUEST THIS DISCOVERY**

Under Rule 26(b)(1),"[f]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." As explained above, the valuation documents Con Edison seeks are unquestionably relevant to its damage analysis.

In addition, denying Con Edison equal access to relevant third party materials possessed by the Government gives the Government an unfair advantage in litigation. "Mutual knowledge of all relevant facts gathered by both parties is essential to proper litigation." *United States v. Lever Bros. Co.*, 193 F. Supp. 254, 257 (S.D.N.Y. 1961) (granting defendant access to third party materials produced to the government).[5]

The Government, in response to Con Edison concerning the incompleteness of its production of third party materials, asserts that "[w]e are not obligated to take that [third party] discovery for Con Ed." (Exh. D, at 5.) To the contrary, where the Government itself has sought the same materials (by discovery in other SNF cases and by third party subpoena), and has represented its intention to use these materials to reduce the recoveries of buyers and/or sellers in SNF cases, fairness dictates that plaintiffs also have access to these materials.

Finally, allowing Con Edison access to these materials is unlikely to cause any competitive harm. "A claim that disclosure might result in a competitive advantage or disadvantage also is contingent upon whether the information or material sought to be protected

---

[5] This very Court articulated the same principle at the August 28, 2006 hearing on Con Edison's initial motion to compel:

> [A]lthough there's always going to be some degree of work involved the Court's concern is to make sure that both parties have access to the same sets of materials when it comes time for trial. Whether they prove to be ultimately relevant or irrelevant, fairness would say that each party should have the same information. That's what we're trying to achieve.

Transcript of Discovery Conference, at 21-22, *Con Edison v. United States*, No. 04-0033C (Fed. Cl. Aug. 28, 2006).

is stale." *Avtel Services, Inc. v. United States*, 70 Fed. Cl. 173, 191 (Fed. Cl. 2006). Con Edison only seeks discovery of valuation documents from January 31, 1998 to January 1, 2003. In *Lever Brothers*, 193 F. Supp. at 255, the defendant sought production of a competitor's past sales and production figures that had been provided to the Government. The court allowed the defendant discovery of these documents, in part, because the third party competitor was unlikely to suffer any competitive harm because the requested materials were between three and eight years old. *Id.* at 257.

Likewise, the valuation documents Con Edison seeks are at least four years old; and therefore, third parties are unlikely to suffer any competitive harm from the Government producing these documents to Con Edison, especially in light of the protective orders entered by this Court. *See also United States v. Int' Bus. Machs. Corp.*, 67 F.R.D. 40, 49 (S.D.N.Y. 1975) (denying third party's request to keep business information under seal because disclosure of three year old profit information and five year old business planning report was unlikely to cause third party any competitive harm); *Rosenblatt v. Northwest Airlines, Inc.*, 54 F.R.D. 21, 23 (S.D.N.Y. 1971) (holding that the need for the court's protection was diminished because the information sought to be protected was one year old).

Moreover, Con Edison, as a result of the divesture of its nuclear generating assets in Indian Point, is no longer in the business of buying, selling, or operating nuclear generation facilities. Thus, the disclosure of historical (1998 to 2003) valuation materials obviously can provide no competitive advantage to Con Edison.

## **REQUESTED RELIEF**

Con Edison respectfully requests that the Court adopt an "event-based" schedule for certain aspects of discovery and pretrial milestones in this case.

Specifically, Con Edison requests that:

1. The March 2, 2007 deadline for Con Edison's expert reports be extended to a date 120 days after Con Edison represents to the Court and to the Government that it has received from the Government and from other SNF claimants the materials it needs to draft its expert reports;

2. The June 1, 2007 deadline for the Government's expert reports be extended to a date 90 days after receipt of Con Edison's expert reports.

3. The August 31, 2007 deadline for the completion of discovery be extended to a date 90 days after the filing of Defendant's expert reports.

4. So that aspects of discovery not contingent on third party materials can proceed in the meantime, Con Edison agrees it will complete its pending production of documents responsive to Defendant's pending discovery requests and pursuant to the Court's Pretrial Order on Damages, by August 31, 2007.

5. The parties submit joint status reports apprising the Court of their discovery progress every 60 days from the date this schedule is adopted.

Con Edison notes that all requested extensions carry forth the same time frames expressed within the Court's January 23, 2006 Scheduling Order. While Con Edison is mindful that RCFC 6.1 requires them to set forth a "specific number of additional days requested" in this Motion, Con Edison believes that the requested enlargement of time complies with the spirit of the rule because it calls for a specific number of days following a specific triggering event. The requested enlargement of time will permit both parties sufficient time to develop adequately their damages analyses and prepare the matter for trial, and barring unforeseen events, should alleviate the need for further scheduling motions to the court. Con Edison also proposes submitting joint status reports to the Court every 60 days from the date this schedule is adopted to apprise the Court of their discovery progress and anticipated time frames. A trial date has not yet been established by the Court.

In the alternative, Con Edison respectfully requests that the Court enter a five-month enlargement to the deadlines established in the Court's January 23, 2006 Scheduling Order. This extension was proposed by the Government in prior discussions. Specifically, in the alternative, Con Edison requests that:

1. The March 2, 2007 deadline for Con Edison's expert reports be extended to August 2, 2007;

2. The June 1, 2007 deadline for the Government's expert reports be extended to November 1, 2007; and

3. The August 31, 2007 deadline for the completion of discovery be extended January 31, 2008.

Con Edison's preference, given the inherent uncertainty of the timing of the third party discovery now underway, is for the Court to establish the event-based schedule included above. We offer this alternative five-month extension in the event the Court prefers a more traditional calendar-based schedule.

For the foregoing reasons, Con Edison respectfully requests that the Court grant this motion for an enlargement of time.

Dated: January 19, 2007

Respectfully submitted,

/s/ David A. Churchill
DAVID A. CHURCHILL
Jenner & Block LLP
601 Thirteenth Street, N.W.
Suite 1200 South
Washington, DC 20005
(202) 639-6056
(202) 639-6066 (fax)
COUNSEL FOR PLAINTIFF

Of Counsel:

Brent L. Brandenburg, Esq.
Assistant General Counsel
Consolidated Edison Company
of New York, Inc.
4 Irving Place, Suite 1830
New York, NY 10003
(212) 460-4333

Daniel F. Stenger, Esq.
Hogan & Hartson LLP
Columbia Square
555 Thirteenth Street, N.W.
Washington, DC 20004
(202) 637-5691

Cynthia J. Robertson, Esq.
Jenner & Block LLP
601 Thirteenth Street, N.W.
Suite 1200 South
Washington, DC 20005
(202) 639-6000

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **CONSOLIDATED EDISON COMPANY OF NEW YORK, INC.,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **No. 04-0033C (Judge Wheeler)** |
| **UNITED STATES OF AMERICA,** | ) | |
| **Defendant.** | ) | |

ORDER

THIS MATTER having come before this Court on Plaintiff's Motion For Enlargement Of Time, and the Court having reviewed the submissions of counsel and the record, it is hereby:

ORDERED, that Plaintiff's Motion For Enlargement of Time is GRANTED and the Court hereby amends the January 23, 2006 scheduling order as follows:

1. The plaintiff shall furnish copies of its expert reports to the defendant within 120 days of the plaintiff receiving from the defendant and from third parties the materials needed to draft its expert reports.
2. The defendant shall furnish copies of its expert reports to the plaintiff within 90 days of receiving the plaintiff's expert reports.
3. All fact and expert discovery, including discovery in connection with any rebuttal reports, shall be completed within 90 days of the plaintiff receiving the defendant's expert reports.
4. By August 31, 2007, the plaintiff shall complete its pending production of documents responsive to defendant's pending discovery requests and pursuant to this Court's Pretrial Order on Damages.
5. The parties shall file status reports every 60 days from the date this schedule is adopted.

ORDERED this ___ day of _________________, 2007.

____________________________________
The Honorable Judge Thomas C. Wheeler
United States Court of Federal Claims Judge

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **CONSOLIDATED EDISON COMPANY OF NEW YORK, INC.,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **No. 04-0033C** **(Judge Wheeler)** |
| **UNITED STATES OF AMERICA,** | ) | |
| **Defendant.** | ) | |

ORDER

THIS MATTER having come before this Court on Plaintiff's Motion For Enlargement of Time, and the Court having reviewed the submissions of counsel and the record, it is hereby:

ORDERED, that Plaintiff's Motion For Enlargement of Time is GRANTED and the Court hereby amends the January 23, 2006 scheduling order as follows:

1. By August 2, 2007, the plaintiff shall furnish copies of its expert reports to the defendant.
2. By November 1, 2007, the defendant shall furnish copies of its expert reports to the plaintiff.
3. By January 31, 2008, all fact and expert discovery, including discovery in connection with any rebuttal reports shall be completed.

ORDERED this ___ day of _________________, 2007.

______________________________
The Honorable Judge Thomas C. Wheeler
United States Court of Federal Claims Judge

CERTIFICATE OF FILING

I hereby certify that on January 19, 2007, a copy of the foregoing "Plaintiff's Motion For Enlargement Of Time" was filed electronically. I also understand and certify that notice of this filing will be sent to all parties by operation of the Court's electronic filing system and that parties may access this filing through this system.

s/ David A. Churchill

David A. Churchill
JENNER & BLOCK, LLP
601 Thirteenth Street, NW, Suite 1200
Washington, DC 20005
(202) 639-6000

*Counsel of Record for*
*Consolidated Edison Company of New York, Inc.*