# EXHIBIT A

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| CONSOLIDATED EDISON COMPANY OF NEW YORK, | ) | |
| Plaintiff, | ) | No. 04-0033C |
| v. | ) | (Judge Wheeler) |
| UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

**AMENDED AGREEMENT AND PROTECTIVE ORDER**

Discovery and other proceedings in this case and the other cases pending before the Court concerning the Standard Contract, 10 C.F.R. Part 961 (hereinafter referred to as the "spent nuclear fuel cases") may require the parties to disclose confidential information (as defined herein) of the parties. Accordingly, it is hereby AGREED BETWEEN THE PARTIES AND THEIR COUNSEL, AND ORDERED BY THE COURT:

1. The term "Confidential Material" shall refer to confidential, financial, trade secret, privileged, competitively-sensitive information or records falling with the scope of the Privacy Act, 5 U.S.C. § 552a, disclosed in discovery or other proceedings in this case. Subject to the provisions of Paragraph 8 below, material shall be deemed Confidential Material when so designated in the manner described in Paragraph 2 below. After disclosure of any "Confidential Material," all copies made of that material, and all notes made therefrom and all references made thereto, of any kind whatsoever, shall also constitute "Confidential Material."

2. From the date of this Amended Agreement and Protective Order going forward, the designation of Confidential Material shall be made by the disclosing party by placing or affixing on documents disclosed the words "PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH U.S. COURT OF FEDERAL CLAIMS PROTECTIVE ORDERS IN SPENT NUCLEAR FUEL LITIGATION." For any materials that were produced to the Government as "protected material" in other spent nuclear fuel cases in this Court and that the Government reproduces to the plaintiff in this case, the Government, in lieu of individually marking each page of the protected documents with the legend previously identified in this paragraph, may identify those documents as protected by letter or, to the extent that documents are produced electronically, by affixing to a disk on which the electronic documents are being produced, or the cover to such disk, the protective order language identified previously in this paragraph or substantially similar language.

3. Each person receiving Confidential Material shall maintain such Confidential Material in his or her possession in a manner sufficient to protect such material against unauthorized disclosure.

4. Confidential Material shall be used by the receiving party solely for the purpose of conducting the spent nuclear fuel litigation in this Court and not for any business or other purpose whatsoever, except as provided in this agreement and protective order. Confidential Material shall be disclosed only to attorneys for plaintiffs, attorneys for the United States, persons regularly employed in such attorneys' offices, or, subject to the provisions of Paragraph 5 below, other persons as reasonably necessary for the litigation of this action. Nothing contained in this agreement and protective order shall prevent or in any way limit or impair the right of counsel for the United States to disclose to any agency of the United States (including other divisions and branches of the Department of Justice) any document or information regarding any potential violation of law or regulation or, subject to procedures that maintain the confidentiality of Confidential Material consistent with this agreement and protective order, prevent or limit in any way the use of such documents and information by any agency in any proceeding regarding any potential violation of law or regulation.

5. With the exception of attorneys for plaintiffs in the spent nuclear fuel cases, attorneys for the United States, and persons regularly employed in such attorneys' offices, any person to whom Confidential Material is to be disclosed by the receiving party shall first be advised by an attorney for the receiving party or parties that pursuant to this agreement and protective order such person may not divulge any such Confidential Material to any other person not authorized under Paragraph 4 above to have access to such Confidential Material. The attorney shall secure from each person a declaration in the form attached hereto, stating that such person has read this agreement and protective order and agrees to be bound by it. Such declaration shall be maintained in the possession of the attorney securing the declaration until further order of the Court.

6. Subject to order of the Court, that portion of any pleading, motion, deposition transcript or other document submitted or presented to or filed with the Court containing Confidential Material shall be placed under seal and shall not be available to persons other than the Court and authorized employees of the Court, the attorneys of record for the parties to the spent nuclear fuel cases, and persons authorized by this agreement and protective order. In the event that any Confidential Material is used in any deposition or Court proceeding herein, the parties shall attempt to further stipulate as to the procedures for use of Confidential Material in such proceedings. If necessary, any dispute regarding the procedures for use of Confidential Material in deposition or Court proceedings shall be submitted to the Court for resolution.

7. Nothing in the foregoing provisions of this agreement and protective order shall be deemed to preclude plaintiffs, the United States, or third parties from seeking and obtaining, on an appropriate showing, additional protection with respect to the confidentiality of documents or other discovery material or from seeking and obtaining leave to disclose documents or other discovery material beyond the terms of this agreement and protective order.

8. If a party determines that a previously produced document inadvertently was not identified as containing protected information, the producing party shall give notice in writing that the document is to be treated as containing protected information, and thereafter the designated document shall be treated in accordance with this order or returned to the producing party if the material is identified as privileged.

9. Nothing in the foregoing provisions of this agreement and protective order shall be deemed to preclude plaintiff or the United States from objecting to the designation of documents or other discovery material as Confidential Material, except that material which has been designated as Confidential Material in another spent nuclear fuel case remains Confidential Material absent agreement of the parties or Order of the Court in that other case. For documents designated as Confidential Material in this case, the party designating the documents or other discovery materials as Confidential Material shall have the burden to file a motion for a protective order with the Court demonstrating that there is good cause to designate the documents or materials as such and that they are properly are subject to treatment under this agreement and protective order.

10. Within ninety (90) days after the conclusion of the spent nuclear fuel litigation in this Court, the parties shall undertake reasonable and prudent efforts to return all original Confidential Material to the disclosing party and to destroy all copies of any all notes, summaries, and references relating to such Confidential Material and, further, the parties shall certify to the Court that such reasonable and prudent efforts have been undertaken; EXCEPT THAT each party may maintain one copy of any Confidential Material in its master file for this case, including one copy of any notes or summaries relating to such Confidential Material, provided that any copies of any Confidential Material or notes or summaries relating to such Confidential Material are clearly stamped "Confidential" or affixed with a similar legend indicating that the materials are subject to this agreement and protective order.

11. For information sought that is or may be covered by the Privacy Act, defendant, in response to any discovery properly propounded pursuant to the Rules of the United States Court of Federal Claims, is hereby authorized, pursuant to 5 U.S.C. § 552a(b)(11), to release to opposing counsel in these cases records which are relevant to this action, and which may be subject to the Privacy Act, without obtaining prior written consent of the individual to whom such records pertain. Such disclosures shall be deemed authorized by law.

ORDERED:

Thomas C. Wheeler

Judge Thomas C. Wheeler

Dated: Sept. 1, 2006

# EXHIBIT B

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| CONSOLIDATED EDISON COMPANY OF NEW YORK, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 04-0033C (Judge Wheeler) |
| UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

**SUPPLEMENTAL AGREEMENT AND PROTECTIVE ORDER**

Pursuant to Paragraph 7 of the May 18, 2004 Agreement and Protective Order, and any amendments thereto, which authorizes plaintiffs, the United States, or third parties, to seek "additional protection with respect to the confidentiality of documents or other discovery material" beyond the terms of that original agreement, it is hereby agreed between Consolidated Edison Company of New York, Inc. ("Con Edison") and Entergy Nuclear Generation Company, Entergy Nuclear Operations, Inc., Entergy Nuclear Indian Point 2, LLC, Entergy Nuclear Indian Point 3, LLC, Entergy Nuclear Fitzpatrick, LLC, Entergy Nuclear Vermont Yankee (collectively "Entergy"), Power Authority of New York, ("Power Authority"), Vermont Yankee Nuclear Power Corporation ("Vermont Yankee"), PSEG Nuclear LLC, Public Service Electric and Gas Company (collectively "PSEG"), and Florida Power & Light Company ("FPLC"), and the United States of America (the "Government"), collectively referred to herein as "the parties," and ordered by the Court:

To the extent that Confidential Material is received by Con Edison, Con Edison shall disclose that material only to attorneys for parties when such attorneys are not involved in the acquisition or divestiture of electric power plants, attorneys for the United States, persons regularly employed in such attorneys' offices, or, subject to the provisions of Paragraph 5 of the Amended Agreement and Protective Order, other persons who are necessary to the litigation of this action, such as outside consultants and experts retained for purposes of this action. Any Con Edison in-house attorney or other employee who seeks access to Confidential Material shall submit an application for approval by the parties whose data are sought to be disclosed. Each such party shall have five (5) days to object to the application.

ORDERED:

Thomas C. Wheeler

Judge Thomas C. Wheeler

Dated: Sept. 1, 2006

# EXHIBIT C

JENNER&BLOCK

November 30, 2006

Jenner & Block LLP
601 Thirteenth Street, NW
Suite 1200 South
Washington, DC 20005-3823
Tel 202 639-6000
www.jenner.com

Chicago
Dallas
New York
Washington, DC

David A. Churchill
Tel 202 639-6056
Fax 202 637-6370
dchurchill@jenner.com

***VIA FACSIMILE AND REGULAR MAIL***

Harold D. Lester, Jr.
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
National Courts Section
1100 L Street, N.W.
Washington DC 20530

**Re:** ***Consolidated Edison Company of New York v. United States***
***Case No. 04-0033***

Dear Harv:

Per our discussions last week, it appears from several indicators that the Government's production of third-party valuation documents, initiated after entry of the Court's Supplemental Protective Order in late August, remains substantially incomplete. I will relate several examples of apparent gaps in production which, following our conversation, I understand you have agreed to investigate with the assistance of your document management staff.

First, with respect to the buyer of the Indian Point facility in question in this case, Entergy Nuclear Indian Point (ENIP), we have received from you no documents at all amounting to a valuation of the facility before the purchase. We understand that ENIP had agreed to produce documents to the Government relating to the sale of Indian Point in the July/August time frame of this year, and we assumed that the valuation documents would have been part of this production. Such a valuation must have been conducted by the buyer of this plant, if for no other reason than it had to develop its bid amount and obtain internal corporate approvals at the Board of Directors level for such an investment.

Second, with respect to the sale of the Pilgrim facility, we have from you a detailed listing, by box number, of documents Entergy apparently provided to the Government in response to discovery (attachment 1). We have been unable to match the documents we have received from the Government with Entergy's listing of documents it provided to you. Our attempts to match these documents to Entergy's listing have been complicated by the fact that it appears that the Government did not produce the documents in the same order they were received from Entergy. In fact, it appears that the Government has produced the documents to us using its internal own bates numbering system rather than Entergy's. We would appreciate a copy of the documents in the form they were received, and/or confirmation that each document listed by Entergy has in turn been provided to Con Edison.

Third, we have not been provided with the filed expert reports and related deposition transcripts and exhibits dealing with the partially-consolidated cases relating to the Pilgrim transaction, to which Boston Edison and Entergy are parties. If, in the case of the relevant depositions, this is an issue of compensating the reporters who produced the deposition, we are happy to provide appropriate compensation to them directly. You stated you are not willing to produce these documents to us because of the objection of one or both plaintiffs in those cases, on the basis that you do not want "to be caught in the middle" between and among plaintiffs in these cases. Given the Court's entry of a Supplemental Protective Order in this case in August dealing with the concerns of other plaintiffs, the Government has an affirmative obligation to provide all such materials to Con Edison directly so long as they are relevant. And because these reports and depositions deal with the sale of a similarly-situated nuclear plant to the same buyer in the same approximate time frame as Con Edison's sale of Indian Point, the relevance of these documents to our efforts is beyond serious dispute. We again renew our request for these materials.

Fourth, we have in the discovery you provided two documents from Dominion Resources that appear to relate to that company's evaluation of a potential bid for purchase of Con Edison's Indian Point 2 facility (attachments 2 and 3). Both have been entirely redacted except for the headings that identify the documents to Indian Point. There is no explanation as to why the copies of the documents as provided to Con Edison should be so heavily redacted, although we have received early correspondence between the Government and Dominion where Dominion refused to make production of valuation materials in response to the Government's April 2006 third party subpoena. We presume that you have undertaken further communications with Dominion to eliminate whatever concerns it may have as to the production of these and other relevant documents. We have meanwhile undertaken to provide Dominion with copies of the Court's revised Protective Order and Supplemental Protective Order issued in this case on August 31, 2006.

Fifth, our review of the materials produced in discovery to Con Edison by the Government does not reveal comprehensive plant valuation materials emanating from Constellation, Florida Power & Light, or AmerGen, all of whom successfully acquired divested nuclear units and received subpoenas from you in April 2006 specifically calling forth "all documents related to sales comparable to Indian Point or other sales and/or purchases of interests in nuclear power plants." We request specific information as to plant sale-related discovery materials sought and received by the Government from all such entities in this and all other SNF cases.

Sixth, our efforts to locate the Government's written discovery requests to other SNF plaintiffs, which you indicated would be found on the Government's SNF website, have been in vain. We have several times inquired as to whether the Government is posting these documents, and we have yet to receive a definitive response.

With these illustrations, it seems clear that either the Government has not concluded the discovery it has stated it intends to pursue with parties to the various sales of nuclear plants at issue in these SNF cases, or that such discovery as the Government has obtained has not been provided to Con Edison. Please get back to us at your earliest convenience with a complete status report as to the documents we are seeking, and provide us with assurance that relevant discovery materials from these entities, including documents pertaining to other transactions, will be timely provided to us. Our continuing inability to obtain access to these key materials will adversely affect our ability to satisfy the Court's schedule for this case, beginning with our filing deadline for expert reports in early March 2007.

Please give me a call if you have questions about any of the above.

Sincerely,

David Churchill by C. Robertson

David A. Churchill

# EXHIBIT D

**U.S. Department of Justice**

Civil Division

*Washington, D.C. 20530*

IMPORTANT: This facsimile is intended only for the use of the individual or entity to which it is addressed. It may contain information that is privileged, confidential, or otherwise protected from disclosure under applicable law. If the reader of this transmission is not the intended recipient or the employee or agent responsible for delivering the transmission to the intended recipient, you are hereby notified that any dissemination, distribution, copying or use of this transmission or its contents is strictly prohibited. If you have received this transmission in error, please notify us by telephone and return the original transmission to us at the address given below.

**DATE:** January 11, 2007

**TO:** **DAVID A. CHURCHILL**
**CYNTHIA J. ROBERTSON**
Fax No. (202) 637-6370

**FROM:** **HAROLD D. LESTER, JR.**
Department of Justice
Civil Division
Commercial Litigation Branch
National Courts Section
1100 L Street, N.W.
Washington, D.C. 20530
Fax No. 202-307-2503
Voice No. 202-616-0478

**PAGES SENT (INCLUDING COVER SHEET):** 7

**COMMENTS:** Consolidated Edison Co. of New York v. United States, No. 04-0033C (Court of Federal Claims)

**U.S. Department of Justice**

Civil Division

PDK:DMC:HDL
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

Telephone:
(202) 616-0478

*Washington, D.C. 20530*

January 11, 2007

VIA TELECOPY AND FIRST CLASS MAIL

David A. Churchill
Jenner & Block LLP
601 Thirteenth Street, N.W.
Suite 1200 South
Washington, D.C. 20005-3823

Re: *Consolidated Edison Co. of New York v. United States*, No. 04-0033C (Fed. Cl.)

Dear Mr. Churchill:

This letter is in response to your letter dated November 30, 2006, in which you indicate your belief that the Government's reproduction to Consolidated Edison Company ("ConEd") of documents that the Department of Justice obtained from other plaintiffs in other spent nuclear fuel ("SNF") cases during discovery is somehow incomplete. After having asked our litigation support contractor to investigate some of the more technical issues identified in your letter, as well as the complaints about possibly incomplete past productions, we address below the concerns that you identified in the same order in which you identified them.

First, you complain that the Government, through discovery in Entergy Nuclear Indian Point 2 v. United States, No. 03-2622C (Fed. Cl.), should have obtained valuation documents from Entergy Nuclear Indian Point 2 ("ENIP") regarding ENIP's purchase of the Indian Point facility and that we have not provided those documents to you. Contrary to your understanding, on September 19, 2006, we provided to you single-page tiff images, endorsed with the protective order legend, representing the entirety of the documents that ENIP provided to us with its August 3, 2006 response to our first request for production of documents. The images were Bates-stamp numbered as ENP001 0001 through ENP 001 9714. In its response to Document Production Request Nos. 19, 21-23, 29-30, and 33-34, ENIP represented that it had included valuation documents related to the Indian Point 2 site, stated that we should also "see plaintiff's response to request no. 17." ENIP's response to Document Production Request No. 17 appears to include six .pdf files labeled SFL-ACQS-0017 through SFL-ACQS-0022, and those documents are found

on the production CD that we provided to you at ENP001 1082 through ENP001 1126. As part of its response to Document Production Request Nos. 19, 21-23, 29-30, and 33-34, ENIP stated that it would also "make available for on-site inspection in Jackson, MS, several linear feet of due diligence documentation that may support the purchase and sale agreement." However, we have not yet traveled to Jackson, Mississippi, to review those documents. Accordingly, at this time, we have produced all documents that ENIP has provided to us in response to our document production requests. As a result, your concerns that we have not done so are misplaced.

Second, you represent that, with regard to a detailed listing of documents that Entergy Nuclear Generation Company ("ENGC") provided to the Government in response to discovery (a copy of which is attached to your November 30, 2006 letter as Attachment 1), you have been unable to match ENGC's listing of documents that ENGC provided to us with the documents that we received from Entergy and reproduced to you. However, we, too, have had great difficulty in matching the list to which you refer with the documents that ENGC produced to us. In any event, we provided to you all of the information that we have that could assist in matching the documents identified in ENGC's detailed listing with the documents that ENGC produced.

On September 18, 2006, we produced to you single-page tiff images, endorsed with a protective order legend, representing ENGC's September 27, 2005 response to our document production requests in Entergy Nuclear Generation Co. v. United States, No. 03-2626C (Fed. Cl.). ENGC provided 30,316 images to us, with a unique "code" or Bates-stamp number at the bottom corner of each document.[1] That ENGC-supplied Bates-stamp number is in the same format as that in the lower right-hand corner of the list to which you referred (Attachment 1 to your November 30, 2006 letter), which, on the first page of that document, reads "ENGC/BECO DOE 1ST RFP-21-1." However, in its written responses and on the detailed listing, ENGC did not identify documents by reference to this Bates-stamp number, but instead identified its responses by .pdf file name and assigned a .pdf document number to each response document in its production. To complicate matters, ENGC grouped its documents within single .pdf files not endorsed with the .pdf file name or number, but with the ENGC-supplied Bates-stamp number. For example, a Pilgrim facility valuation document endorsed as "ENGC/BECO DOE 1st RFP-21-100 through ENGC/BECO DOE 1st RFP-21-117" is identified at the first entry on the list in Attachment 1 of your November 30, 2006 letter as "Box 1 Internal Correspondence DOC2.pdf - Valuation." The actual .pdf file is found on ENGC's production disc labeled "Disk 3B," and the file is named "Internal Correspondence_B."

We have included all of the information that we have relating to the production disc label and file name associated with each document in a footer that we added at the bottom of each

[1] There was one corrupt file on one of their original production CDs: "Pilgrim BX 2 Data Requests_B." We have not been able to obtain a copy of that document.

page produced to you.[2] Accordingly, you have all of the same information that we have to assist in attempting to correlate the list in Attachment 1 to your November 30, 2006 letter and the actual documents that have been produced to you.

Third, you request that we provide you with copies of the expert reports that we received from the plaintiffs in Boston Edison Co. v. United States, No. 99-447C (Fed. Cl.), and Entergy Nuclear Generation Co. v. United States, No. 03-2626C (Fed. Cl.), as well as related deposition transcripts. After you made your initial request to us for these documents, we learned that you previously had attempted to obtain these documents from the other plaintiffs, but that the other plaintiffs had refused. In your request to us for these documents, you did not mention that the other plaintiffs had strongly objected to any such production. Since that time, we were made aware of these objections by the objecting nuclear utility plaintiffs. ConEd's effort to place the Government in the middle of ConEd's disputes with other plaintiffs regarding access to other plaintiffs' proprietary materials, over the objections of those other plaintiffs and without notice to the Government of those objections, is unfair. As you know, both Boston Edison Company and Entergy have strongly objected, in writing, to our production to ConEd of any expert reports that were produced by any plaintiff in their cases. Because of these objections, because the materials that you seek were obtained by the Department of Justice only through discovery in litigation in other cases rather than as a part of the Department of Energy's contract activities and communications, and because of the seeming lack of relevance of this information to ConEd's case, it seems appropriate to continue to involve these other plaintiffs in any resolution of this dispute and, in fact, for the separate nuclear utility plaintiffs to attempt to reach agreement and resolve this dispute among themselves. Further, with regard to deposition transcripts of experts in those cases, to the extent that the objecting plaintiffs permit ConEd's access to those materials, ConEd can purchase those documents from the court reporting services who took those depositions, just as the United States purchased them.

Fourth, you express a concern about two documents that we obtained from Dominion Resources, Inc. ("DRI"), in a heavily redacted form. However, we produced to you the documents in the same form that we received them from DRI: that is, we were provided with heavily redacted documents, and we provided you with copies of the same heavily redacted documents that we received. To the extent that you believe that DRI should not have redacted its documents, ConEd is more than able to serve a third-party subpoena upon DRI and to complain to the Court if DRI does not respond in a manner that ConEd deems appropriate. However, ConEd has no basis for attempting to require the Government to obtain additional documents from DRI through discovery for ConEd's use.

Fifth, you assert that, based upon your review of the third-party material that we obtained from other plaintiffs in litigation and reproduced to you, you could not locate "comprehensive

---

[2] In that footer, we also added our own unique Bates-stamp number for each document and the protective order legend that ENGC had informed us, by letter sent with the original document production, should apply to all of the documents.

plant valuation materials emanating from Constellation, Florida Power & Light, or AmerGen, all of whom successfully acquired divested nuclear units and received subpoenas from [us] in April 2006" in Boston Edison Co. v. United States, No. 99-447C (Fed. Cl.). With regard to your complaints about Constellation and Florida Power & Light, we have provided to you the documents that we received from Constellation and from Florida Power & Light. If ConEd does not believe that these documents are sufficiently or fully responsive to the Government's subpoenas, ConEd has no basis to complain or seek to force the Government to challenge those entities' responses. Nevertheless, ConEd has already served its own subpoenas on these two entities and, if it does not believe that it has obtained sufficient responses, can challenge the responses' completeness.

With regard to AmerGen, in producing third-party documents to ConEd, we based our production on the list of entities identified in the protective order that ConEd submitted to the Court and that the Court entered on September 1, 2006. Unfortunately, because AmerGen is not identified in that list, we did not identify the AmerGen documents when we were responding to ConEd's requests for production of documents. We do not have a great deal of information from AmerGen, having been provided with 1,339 pages that AmerGen produced to Boston Edison Company in response to the plaintiff's third-party subpoena in the Boston Edison case. Assuming your agreement to seek leave to add AmerGen to the supplemental protective order in this case, we can make those pages available to you. Nevertheless, we note that ConEd has served a third-party subpoena upon AmerGen encompassing documents relating to AmerGen's bidding upon the Pilgrim facility, which are presumably the same documents that were provided to us, and, presumably, ConEd can take appropriate action if it believes that AmerGen has not appropriately responded to its subpoena.

Sixth, you state that you have not been able to locate the Government's written discovery requests to other spent nuclear fuel plaintiffs in other cases. The Government's written discovery materials are posted on the Government's production website in the following CDs and containers and noted as such on the posted production website index: CD YA190, Container WDM001; CD YA654, Container WDM002; and CD YA840, Container WDM003.

In your November 30, 2006 letter, you seem to suggest that the United States should be taking discovery in a manner that benefits ConEd and the development of ConEd's claims in this case. As an initial matter, we still do not understand the relevance of any of the materials that ConEd is seeking from the Government relating to other sales of other nuclear reactors unrelated to ConEd's reactor by other purchasers in other purchase and sales transactions. This case is about the sale of ConEd's reactor and the reasons that Entergy paid the amount that it paid, not about the sales of all other nuclear reactors in the United States. We have attempted to be cooperative with ConEd in reproducing to ConEd, at the Government's expense, document productions that we have obtained from other spent nuclear fuel plaintiffs in other cases, despite the seeming irrelevance of these materials and despite the fact that none of these materials came from the files of any Federal agency involved in the matters underlying this litigation. Given the

lack of relevance of these other unrelated transactions to ConEd's sale, these efforts seem wasteful.

In any event, ConEd's insistence that we must, each time we receive a document production from another spent nuclear fuel plaintiff, bear the expense to reproduce all of those documents to ConEd is simply unsupportable. ConEd has already served subpoenas on several other nuclear utility plaintiffs, seeking documents relating to the purchase and/or sale of those utilities' nuclear reactors. We do not understand the basis upon which ConEd, in addition to those subpoenas, is attempting to use the United States as an alternative outlet for any documents that it cannot successfully obtain through those subpoenas. Further, to the extent that ConEd finds the Government's discovery efforts insufficient, ConEd has no right to insist that we modify those practices and to undertake discovery challenges in a manner to ConEd's liking, so that ConEd can avoid incurring the costs to conduct its own discovery. We again suggest, as we have in the past, that ConEd undertake the discovery that it believes necessary from the entities that generated the information that ConEd believes relevant. We are not obligated to take that discovery for ConEd.

Finally, we continue to have serious concerns about ConEd's production, to date, of documents to the Government. On January 17, 2006, we served our first requests for production of documents upon ConEd. On February 10, 2006, we agreed to a 30-day enlargement in which ConEd could produce documents, with the explicit understanding that the majority of documents would be produced on March 16, 2006. On March 24, 2006, ConEd provided written responses to the Government's request, and, on April 3, 2006, ConEd transmitted eight CD-ROMs from ConEd's "Divestiture Library." In the transmittal accompanying the April 3, 2006 letter, you indicated that your office was in the process of locating "approximately 10% of the documents made available to bidders during the auction process" and that you "need additional time to produce them in a similar electronic format" to the documents provided on April 3, 2006. Further, you indicated in your letter that ConEd was "still in the process of reviewing the Indian Point archived files to determine whether there are any additional documents that are responsive" to the Government's production requests. In its April 3, 2006 production, ConEd did not produce any valuation models or contract formation documents – two of the key issues in this case. On December 27, 2006, ConEd produced approximately 1,466 pages of documents and indicated that "[w]e are still in the process of reviewing the remaining electronic documents for privilege, and will produce responsive, non-privileged documents on a rolling basis."

These significant delays in the production of responsive documents from ConEd – almost a year after the Government's request – is unacceptable, particularly in light of ConEd's incredibly broad requests from both the Government and third parties concerning sales of nuclear plants unrelated to the sale of Indian Point 1 and 2. In considering any schedule adjustments in this case in the future, the Government's inability to obtain any significant valuation and contract formation documents from ConEd, among the other areas identified in our production requests to which ConEd has not yet or inadequately responded, will have to be considered and accounted

for in any proposed adjusted schedule. We look forward to a complete production of documents from ConEd in the very near future.

If you have any further questions regarding these matters, please feel free to contact Josh Gardner or me.

Very truly yours,

HAROLD D. LESTER, JR.
Assistant Director
Commercial Litigation Branch
Civil Division

# EXHIBIT E

Pillsbury
Winthrop
Shaw
Pittman LLP

725 S. Figueroa Street, Suite 2800
Los Angeles, CA 90017-5406

Tel 213.488-7100
Fax 213.629-1033
www.pillsburylaw.com

December 20, 2006

Alex D. Tomaszczuk
Phone: 213.488-7110
alex.tomaszczuk@pillsburylaw.com

**By E-Mail & U.S. Mail**

Harold D. Lester, Esq.
Assistant Director - Commercial Litigation
United States Department of Justice
Eighth Floor Mailroom
1100 L Street, N.W.
Washington, DC 20530

**Re: Request for Further Documents from *Consolidated Edison Co. of NY v. United States*, No. 04-33C**

Dear Mr. Lester:

On behalf of Entergy Nuclear Generation Company ("ENGC") and Florida Power & Light Company ("FP&L"), this letter responds to your December 6, 2006 letter (which, in turn, attaches a November 30, 2006 letter from counsel for Consolidated Edison Company of New York ("ConEd")). ENGC and FP&L generally interpose objections to the production of the requested documents.

In its November 30, 2006 letter, ConEd requests ENGC to disclose "expert reports and related deposition transcripts and exhibits" regarding the claim in *Boston Edison Company v. United States*, which claim relates to the Pilgrim nuclear plant. The reports, transcripts, and documents requested by ConEd specifically relate to the purchase and sale transaction between ENGC and Boston Edison Company ("BECO"). Any valuation documents are specific to the transaction involving Pilgrim plant and have no relation to the purchase and sale of the Indian Point 2 plant (at issue in the *ConEd* case). The key issues in *ConEd*'s case should relate to the particular facts of its case – *i.e.* the sale of the Indian Point 2 plant – and ENGC thus fails to see the relevance to the Indian Point 2 claim of materials involving the sale of a different plant by a different seller at a different point in time. Furthermore, ConEd's request for expert reports and expert depositions, in particular, is a thinly-veiled effort by ConEd to obtain (with *de minimis* expense) the expert services of witnesses retained and paid by other parties.

ConEd also requests "comprehensive plant valuation materials emanating" from FP&L, among other utilities. FP&L's various spent nuclear fuel cases have been essentially stayed for many months (including the April 2006 time period). In this regard, apart from FP&L's relevance objection (similar to that posed by ENGC above), FP&L's cases involving recently purchased nuclear facilities – *FPL Energy Seabrook, LLC v. United States*, No. 04-88C and *FPL Duane Arnold, LLC v. United States*, No. 04-67C – have not reached the discovery phase and remain stayed. Thus, no documents have been produced in these cases. Nor has FP&L otherwise produced documents to the Government regarding the issues for which ConEd seeks documents.

For the foregoing reasons, ENGC and FP&L respectfully request that the Government not produce the requested documents, which do not appear reasonably calculated to lead to the discovery of admissible evidence in the *ConEd* case. Should you have any questions, please contact me at (703) 770-7940 or alex.tomaszczuk@pillsburylaw.com. We appreciate your attention to this matter.

Sincerely,

Alex D. Tomaszczuk
Counsel for
Entergy Nuclear Generation Company
Florida Power & Light Company

cc: David A. Churchill, Esq.
L. Jager Smith, Esq.
Mitch Ross, Esq.