IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| CONSOLIDATED EDISON COMPANY OF NEW YORK, INC. | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 04-0033C (Judge Wheeler) |
| UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR ENLARGEMENT OF TIME

Pursuant to Rule 6(b) of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, respectfully responds to the "Motion for Enlargement of Time" that Consolidated Edison Company of New York ("ConEd") filed on January 19, 2007. In its motion, ConEd requests that the Court adopt an "events based" schedule in which ConEd unilaterally determines when it has sufficient documentation from third parties to trigger the timing of the pre-trial schedule. Pl. Mot. 13-14.[1] Alternatively, ConEd requests that the Court enter a five-month enlargement to the currently established schedule, providing ConEd with almost three years in which to prepare its expert reports, while then leaving the Government with only three months to respond to ConEd's expert reports. Pl. Mot. 15. As explained below, although the Government is not opposed to a reasonable enlargement of time for ConEd to prepare its expert reports, we disagree with certain of the claimed reasons for ConEd's request, and we respectfully request that any enlargement granted allow the Government at least six

[1] "Pl. Mot. __" refers to plaintiff's motion for an enlargement of time filed January 19, 2007.

months from the receipt of ConEd's expert reports in which it may conduct adequate discovery and submit its own expert reports.

## DISCUSSION

### I. PLAINTIFF'S CLAIM THAT THE GOVERNMENT HAS FAILED TO PRODUCE CERTAIN REQUESTED DOCUMENTS IS INCORRECT

ConEd first claims that an enlargement of time is necessary because the Government has not timely or completely produced documents to ConEd. Pl. Mot. 5-6. ConEd is mistaken.

ConEd complains that it has discovered "extensive shortcomings in the Government's production." Pl. Mot. 5. Specifically, ConEd suggests that: (1) the Government has provided ConEd with incomplete productions from the purchaser of the Indian Point facilities, Entergy Nuclear Indian Point 2 ("ENIP"); (2) ConEd has had difficulty using the documents produced by the Government from Entergy Nuclear Generating Company ("ENGC"), the purchaser of the Pilgrim Generating Nuclear Station; (3) the Government has refused to produce the expert reports of another spent fuel plaintiff, Boston Edison Company, over that utility's objections, as well as all of the depositions taken in that case; (4) the Government has refused to produce unredacted copies of documents provided by Dominion Resources in connection with the Government's third-party subpoena in this case; and (5) the Government "has not shared with ConEdison, despite numerous requests, the extent of the Government's discovery efforts to obtain nuclear plant valuation materials from the various buyers of nuclear facilities like Indian Point." Pl. Mot. 5-6.

As we have recently explained to ConEd, the Government has produced to ConEd all of the documents that it has received from ENGC, as well as all other third parties that ConEd identified in its discovery requests, in the manner in which we received the documents from

those third parties.[2] To the extent that ConEd is not satisfied with ENGC's or any other third party's production to the Government, or the format in which that third party made that production to us, that is an issue between ConEd and the third party. Indeed, it appears that ConEd would force the Government to take and obtain the discovery in the manner that ConEd believes is appropriate. To the extent that ConEd believes that these third parties have not complied with the Government's discovery requests, it appears that ConEd is requesting that the Government further pursue production from these third parties. However, as we recently explained to ConEd, the Government has no obligation to demand a level of production from its third-party discovery requests that ConEd thinks is appropriate. Rather, as ConEd has done in this case, ConEd can seek its own third-party discovery and endeavor to cure any perceived deficiencies that it believes these third-party productions to the Government may possess. Simply put, the Government has fully complied with ConEd's request for the production of third party documents that it has received to date.

Further, with respect to Boston Edison Company's expert reports, ConEd claims, in a footnote, that we "mistakenly assert[] that Con Edison was aware of and did not inform the Government of third parties' objection to production of these materials." Pl. Mot. 6 n.3. Contrary to ConEd's claim, with respect to the expert reports submitted upon behalf of Boston Edison Company, when counsel for ConEd requested these reports, counsel for the Government contacted counsel for Boston Edison, Mr. Brad Wine, to determine whether Boston Edison

[2] Dominion Resources produced to the Government certain redacted documents. We reproduced those documents to ConEd in the same format that we received the documents from Dominion Resources. Although ConEd asserts in its motion that we have refused to produce unredacted copies, we do not have unredacted copies. ConEd's complaint that we somehow have not satisfied our production obligation is ridiculous.

opposed such production. Mr. Wine represented that counsel for ConEd had requested copies of the Boston Edison expert reports from Boston Edison and that Mr. Wine had objected to their production. On December 12, 2006, Mr. Wine renewed Boston Edison's objection to the Government's production of Boston Edison's expert reports to ConEd, stating that "Boston Edison continues to object to the production of those documents, all of which contain and rely upon numerous documents that have been designated as protected in this proceedings." Ex. 1.[3] Simply put, ConEd is attempting to place the Government in the middle of a discovery dispute between ConEd and third parties concerning transactions entirely unrelated to the sale of Indian Point. To the extent that Boston Edison Company and Entergy have objected to the disclosure of Boston Edison Company's expert reports, we are currently abiding by those objections until ConEd and those plaintiffs can resolve their dispute.[4]

## II. PLAINTIFF'S ASSERTED NEED FOR THIRD PARTY DISCOVERY UNRELATED TO THE INDIAN POINT TRANSACTION IS WITHOUT MERIT

ConEd also claims as a basis for its motion for an enlargement its inability to secure directly from third parties documents that ConEd believes are necessary to develop its damages claim. Pl. Mot. 6-7. To the extent that ConEd is seeking third party discovery concerning sales

---

[3] "Ex. __" refers to the exhibits attached to this response.

[4] ConEd also states that it requested from the Government "related depositions generated by both sides in the Pilgrim buyer/seller cases." Pl. Mot. 5. However, we have explained to ConEd, see Ex. 2; Exhibit D to Pl. Mot., that, to the extent that ConEd seeks deposition transcripts of unrelated proceedings, it should contract the court reporting companies that conducted the transcriptions (a list of which we provided to ConEd, along with their contact information, the deponents names, and dates of testimony) and properly compensate those court reporting services. See Kinan v. City of Brockton, Massachusetts, 112 F.R.D. 206 (D. Mass. 1986); Seaview Terrace v. Diaz, Nos. CIV. 92-00003, CV944-90, 1992 WL 365805, at *4 (D. Guam Apr. 16, 1992).

of nuclear power plants unrelated to Indian Point, the Government believes that such documents are irrelevant to any issue in this case. As ConEd states in its motion, the "issue in this litigation is the extent to which the Government's failure to begin SNF disposal in 1998 . . . caused the sales price of the Indian Point facility to decrease." Pl. Mot. 11. The Government agrees with ConEd that this is the key issue in this case. The determination of damages, if any, in this case necessarily turns on whether, and to what extent, ENIP, as the purchaser of Indian Point, factored into its sales price DOE's delay in spent nuclear fuel ("SNF") acceptance. Indeed, ENIP has stated, in response to the Government's interrogatories, that "the price which [ENIP] paid for Indian Point was not reduced as a result of the Government's delay in SNF acceptance under the Standard Contract."

Ex. 3. Given its apparent inability to establish that ConEd paid less or otherwise factored DOE's delay into its purchase price, ConEd appears to press an extraordinarily broad damages theory, in which the entire marketplace for nuclear assets was depressed. In reality, ConEd is engaging in a fishing expedition.

ConEd's damages theory appears to rest upon the premise that DOE's delay in SNF acceptance affected the purchase price for all nuclear transactions and that the effect would be manifested in the same manner in each sale. However, it is beyond dispute that different nuclear plants have different operating and physical characteristics and that each sale of a nuclear plant contains unique terms and conditions. For example, some nuclear plants have large spent fuel pools that are capable of holding sufficient spent fuel for the life of the plant operating license, whereas other plants have smaller pools that would have to have been expanded prior to the date of DOE's first SNF acceptance in 1998. Consequently, the effect of DOE's delay, if any, upon

the acquiror of a particular nuclear assert will necessarily be site-specific. Further, nuclear plants have different operation and maintenance costs and different levels of performance, each of which drive the amounts that a prospective purchaser may be willing to pay for the plant. Simply put, ConEd's broad theory of liability attempts to ignore the key issue in this case: namely, the basis for the amounts that ENIP was willing to pay for Indian Point. The resolution of that issue cannot come from third party discovery but, rather, will necessarily come from ENGC.

ConEd further asserts that its need for third-party valuation documents unrelated to the Indian Point sale is necessitated by the Government's purported use of these documents to support its entitlement to an "offset" against ENIP. Pl. Mot. 4. ConEd is mistaken. To the extent that the Government seeks an offset against ENIP of any "diminished value" damages award to ConEd, it will be based upon the fact that ConEd has compensated ENIP for ENIP's increased storage costs – either because of the alleged diminished purchase price that ENIP paid for Indian Point or because of the alleged amounts that ConEd transferred to ENIP in the decommissioning trust fund that covered incremental spent fuel storage costs caused by DOE's delay in SNF acceptance.[5] Simply put, the Government does not intend to use third-party valuation documents related to other nuclear transactions to prove the extent to which ENIP has

[5] ConEd states, without any support or citation, that "[t]he Government intends to place [materials related to other nuclear sales] in issue in the various SNF 'buyer-seller' cases pending before this Court." Pl. Mot. 9. Contrary to ConEd's suggestion, the Government only intends to place at issue valuation materials received from other nuclear sales if ConEd asserts that the entire marketplace for nuclear assets has been affected by DOE's breach.

been compensated through the amounts that it paid for Indian Point or the amounts that ConEd transferred through the decommissioning trust fund.[6]

ConEd also suggests that the Government intends to use documents that it has obtained in other spent fuel cases in presenting defenses "regarding the industry's understandings of the contract's terms and the industry's views of the implementation of the contract." Pl. Mot. 4 n.2. ConEd is correct that, because of the manner in which the Standard Contract terms were promulgated (through notice and comment rulemaking), and because of the uniform nature of the contract terms, the understanding of each of the contract holders may be relevant in interpreting the contract's terms. See Restatement (Second) of Contracts § 211 (1981) (standardized contract terms are "interpreted whenever reasonable as treating alike all those similarly situated, without regard to their knowledge or understanding of the standard terms of the writing"). However, the documents that ConEd seeks have nothing to do with contract formation or implementation. Rather, as ConEd clearly has stated in its motion, it is seeking third-party valuation documents about other nuclear reactor sales transactions. Notably, we still have not received from ConEd any documentation concerning contract formation or contract implementation, despite the Government's requests for production from January 2006.

---

[6] Indeed, we do not understand why ConEd would be concerned about any offset that the Government would seek from ENIP.

## III. PLAINTIFF'S REQUESTED MOTION FOR AN ENLARGEMENT OF TIME

### A. Plaintiff's Request For An "Event Based" Schedule Is Inappropriate

In its requested motion, ConEd proposes an "event based" schedule, in which ConEd unilaterally determines when it has sufficient information to trigger its obligations to submit expert reports to the Government. Pl. Mot. 13-14. Such a schedule is inappropriate for several reasons. First, as ConEd acknowledges, Court of Federal Claims Rule 6.1 requires that it set forth a "specific number of additional days requested" in any motion for an enlargement. ConEd's request contravenes this requirement. Second, ConEd's request would, in effect, provide ConEd with the unilateral ability to determine when it must provide the Government with ConEd's expert reports. Under ConEd's proposal, only when ConEd is satisfied with the productions that it receives from third parties and the Government is its obligation to provide the Government its expert reports triggered. Indeed, under ConEd's proposal, it has the unfettered ability to dictate when the rest of the discovery schedule commences. ConEd has provided no reason why an enlargement of the discovery schedule by a specified amount of time would be inappropriate in this case. Absent a compelling showing by ConEd as to why it should have the unilateral right to determine when the discovery schedule in this case commences, the Court should deny ConEd's request.

### B. The Government Does Not Oppose ConEd's Request For An Additional Five-Month Enlargement, Conditioned Upon An Appropriate Enlargement Of Time For The Government's Expert Reports

Although the Government opposes an "event based" schedule, we agree that an additional five-month enlargement to the existing schedule, with one modification discussed below, is appropriate. In its motion requesting an enlargement of time, ConEd states that

"[d]iscovery has proven to be complex and slow for both parties in this case." Pl. Mot. 1. Although we agree that discovery has been slow for the Government, the reason has nothing to do with third-party productions, but, rather, is the direct result of ConEd's delay in producing responsive documents to the Government.

On January 17, 2006, the Government served requests for production of documents and interrogatory and requests for admissions upon ConEd. On March 24, 2006, ConEd provided written responses to the Government's request for production of documents. On April 3, 2006, ConEd produced eight CD Rom disks containing 1,710 documents purporting to contain the "Divestiture Library" or "Data Room" documents – which purport to represent documents that ConEd provided to prospective bidders concerning the sale of Indian Point. In the transmittal letter, ConEd stated, "[o]ur current belief is that the eight CD Rom disks you have received today contain the vast majority of responsive documents that Con Edison has retained since the sale of Indian Point 1 and 2."

On June 23, 2006, the Government wrote a letter to ConEd expressing its concerns with the speed and responsiveness of the documents that ConEd had produced to date. ConEd responded to the Government's letter on June 30, 2006, stating that "our client is still in the process of searching ConEd's files. Once our client has located any responsive documents and we have had an opportunity to review them, we will produce them in accordance with the written responses and objections we served on March 24, 2006. We will contact you upon determining an approximate schedule of the production of the remaining documents."

On July 14, 2006, ConEd provided the Government with its second production of documents pertaining to the "Divestiture Library," and it indicated that "[w]e cannot guarantee

that these maintenance rule documents were the actual documents presented in the divestiture library . . . because the versions thus far located by Con Edison are missing the 'Divestiture Document Tracking Sheet' that accompanied the other documents in the divestiture library." On July 20, 2006, ConEd produced approximately 765 pages of board meeting minutes responsive to the Government's request for production of documents. On August 23, 2006, ConEd produced another CD-Rom containing approximately 7,323 pages related to the Indian Point divestiture.

On December 27, 2006 – almost one year after the Government served its discovery requests, ConEd produced approximately 1,466 pages of documents and indicated that "[w]e are still in the process of reviewing the remaining electronic documents for privilege, and will produce responsive, non-privileged documents on a rolling basis." To date, the Government still has not received responses to the majority of its document requests.

Absent receiving complete responsive documents from ConEd, the plaintiff in this case, the Government will be unable fully to prepare for pre-trial activities, such as depositions of ConEd's witnesses and the preparation of expert reports. In fact, ConEd proposes in its motion that its obligation to respond completely to the Government's January 2006 discovery requests be extended until August 31, 2007 – over a year-and-a-half after the Government served its discovery requests in this case.

Further, although ConEd filed its complaint in this case on January 13, 2004, it proposes a modification to the discovery schedule that would allow it, in the alternative, either 120 days after it is satisfied that it has the materials which it believes are necessary to prepare its expert reports, or until August 2, 2007. Pl. Mot. 14-15. Indeed, ConEd served documents requests

upon the Government on November 20, 2004, and also served requests for documents pursuant to the Freedom of Information Act ("FOIA"). In other words, ConEd apparently needs over three-and-one-half years to complete its expert reports, but believes the Government needs only three months for the preparation of its own responsive expert reports.

Given the breadth of ConEd's theory of damages – in which it endeavors to show that the entire marketplace was affected by DOE's delay – we anticipate that the discovery necessary for the Government's experts to prepare their reports will be time-consuming. For example, to the extent that ConEd intends to claim that other unrelated sales of nuclear power plants were affected by DOE's delay in spent nuclear fuel acceptance, we anticipate that we would need to depose individuals involved in those sales to understand the basis for the price received for those plants. In addition, because we still have not received a complete production from ConEd, we need time to review and analyze those documents, as well as any documents that ConEd receives based upon its third-party requests for production. Consequently, to the extent that the Court grants ConEd's motion for an enlargement, the Government respectfully requests that any modification to the discovery schedule should provide the Government with at least six months from the receipt of ConEd's expert reports in which to prepare the Government's responsive reports.

## CONCLUSION

For the following reasons, we respectfully request that the Court deny plaintiff's motion for an enlargement based upon an "events based" schedule. Further, although the Government does not oppose ConEd's request for a five-month enlargement of its obligations to submit expert reports, we respectfully request that the current schedule be modified to provide the

Government with at least six months in which to submit any responsive expert reports from the date of receipt of ConEd's expert reports.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director

s/ Joshua E. Gardner
JOSHUA E. GARDNER
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 305-7583
Fax: (202) 307-2503

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

ALAN LO RE
Senior Trial Counsel

PATRICK B. BRYAN
SCOTT R. DAMELIN
SHARON A. SNYDER
Department of Justice
Washington, D.C. 20530

January 29, 2007

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that on this 29th day of January 2007, a copy of foregoing "DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR ENLARGEMENT OF TIME" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Joshua E. Gardner