**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **CONSOLIDATED EDISON COMPANY OF NEW YORK, INC.,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **No. 04-0033C** |
| | ) | **(Judge Wheeler)** |
| **UNITED STATES OF AMERICA,** | ) | |
| **Defendant.** | ) | |

**PLAINTIFF'S REPLY ON MOTION FOR ENLARGEMENT OF TIME**

The parties agree that a minimum of a five-month schedule extension of all key pretrial milestones is needed. The only true area of disagreement is the Government's request for six months to complete its expert reports rather than the 90 days currently allocated in the Court's schedule.

## I. The Government's Request To Alter The Court's Time Period Between The Parties' Submission Of Expert Reports Is Premature

The Government – not Con Edison – proposed the initial schedule deadlines at a time when it was aware that Con Edison's theory relies upon a diminution in value claim implicating the marketplace as a whole. The only changed circumstance since then is Con Edison's unforeseen difficulty in obtaining the valuation documents of other spent nuclear fuel ("SNF") case plaintiffs that are needed to prepare Con Edison's experts' reports. All of these documents will be available to the Government in other SNF cases. The delays that Con Edison has faced in obtaining these documents are tangible, concrete, and uncontested by the Government.

The Government's need for an extension for its own expert report deadlines is currently speculative, since Con Edison's expert reports have not yet been created or submitted. Granting

the Government's request at this stage is premature and may work more harm to the existing schedule than necessary. Should the Government, upon receiving Con Edison's expert reports, conclude that 90 days is inadequate for its review, Con Edison will not object to an appropriate extension to the schedule at that time.

## II. The SNF Documents Sought By Con Edison Are Plainly Relevant

The Government argues that the discovery Con Edison seeks concerning sales of nuclear power plants other than Indian Point is irrelevant. (Gov't Response at 4-6). Since the parties are in discovery, Con Edison is entitled to "obtain discovery regarding any matter, not privileged, that is relevant to the claim." Fed. Cl. R. 26. "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. Pro. 26(b)(1).

While claiming sales documents for nuclear plants other than Indian Point are irrelevant, the Government simultaneously seeks the same information from other SNF plaintiffs for this case. In April 2006, the Government issued subpoenas to six power companies in the market for nuclear facilities,[1] which specifically requested "[a]ll documents related to sales comparable to Indian Point or other sales and/or purchases of interest in nuclear power plants . . . " *See, e.g.*, Government Subpoena to Constellation Energy Group, *Con Edison v. United States*, No. 04-0033C (Fed. Cl. Issued Apr. 13, 2006) at 9 (Attached as Exh. 1). Having collected these materials in this or other buyer/seller cases, the Government fully intends to use them across all cases implicating buyer/seller issues. Moreover, the Government's relevance argument has already been rejected by this Court as a means for the Government to avoid its obligation to

[1] Con Edison has now issued subpoenas to five of those six, including AmerGen Energy Company, Constellation Energy Group, Dominion Resources, Inc., Duke Energy Corporation, and Florida Power & Light Energy, LLC. Con Edison has also issued a subpoena to Entergy Corporation.

share data from other cases ("Whether they prove to be ultimately relevant or irrelevant, fairness would say that each party should have the same information"). Transcript of Discovery Conference, at 21-22, *Con Edison v. United States*, No. 04-0033C (Fed. Cl. Aug. 28, 2006).

These materials are not merely relevant, but central to assessing diminished value of the Indian Point facility. The Government's failure to dispose of spent nuclear fuel affected all nuclear facilities, not just Indian Point. The only way to determine its profound influence in diminishing the value of Con Edison's units is to examine the market as a whole, not simply the single bidder that happened to submit the winning bid. The nuclear plant transactions currently being litigated in other SNF cases relate to the same contract, the same Government failure to dispose of SNF, the same set of potential bidders that formed the market for nuclear plant sales (including Indian Point), in the same time frame as the sale of Indian Point. All such transactions were directly affected by the common denominator of the government's failure to dispose of SNF from these facilities, and all such transactions involved asset valuations conducted by the same parties who had expressed interest in acquiring Con Edison's Indian Point plants.

Con Edison's task, in the context of establishing diminished value, is to determine and then demonstrate what the results of the Indian Point auction would have been under "non-breach world" conditions. Had Indian Point not been burdened with SNF issues, the marketplace for purchase of nuclear facilities would have been entirely more robust, as it was for non-nuclear electric generating facilities. Had Entergy for whatever reason failed to recognize the differences in the marketplace, then some other buyer would have submitted the higher, winning bid for Indian Point. Under the broad relevance standards applicable to discovery, Con Edison is

entitled to review each of the five or more participating companies' valuation models and evaluate what each of their bids would have been absent the government-induced SNF burden.

This need for context has already been recognized, even by the Government. In another SNF case, the Government has sought to exclude testimony regarding the effect of SNF on a plant sale because the testimony was based on a single asset valuation. The Government contended that even a fact witness should not be allowed to offer testimony regarding the effect of SNF on a plant sale absent an examination of other plant valuation models. *Boston Edison v. United States*, 64 Fed. Cl. 167, 182 (2005). ("The government's argument relies principally on claims that [the affiant] Lubbock fails the first requirement [under Fed.R.Evid. 701] because he lacks personal knowledge of the valuation models used by potential bidders.")

The Government has thus effectively admitted that valuations by bidders other than the actual buyer are a necessary predicate to offering opinions on the effect of SNF on a nuclear plant's value. The Government's current argument that Con Edison has no need for, or even entitlement to review, these materials is totally at odds with its position in *Boston Edison*.

The Government claims Con Edison's approach is an "extraordinarily broad damages theory." Gov't Response at 5. To the contrary, Con Edison damage theory is orthodox and is born of the circumstances of this sale. In valuing property claimed to be of diminished value, such as property burdened with environmental cleanup liability for example, the courts reject simplistic cost-based methods focusing only on the single property and single buyer at issue, in favor of valuation methods focused on comparable properties. *See, e.g., Inmar Assocs., Inc. v. Borough of Carlstadt*, 112 N.J. 593 (1988).

Likewise, Con Edison's damages go beyond the mere cost of storing SNF that the Government failed to dispose of at the time of Con Edison's sale of Indian Point. The damages

include the diminished value of the facility, calculated by way of understanding the uncertainties and risks stemming from delayed and potentially permanent SNF presence at Indian Point (and elsewhere) that was undoubtedly factored into bids submitted by various potential competitors in the marketplace for nuclear plants.

A "non-breach world" determination of the market value of Indian Point does not depend at all on the bases of a single bid made by a single bidder, without any regard to marketplace conditions, but must take into account the contemporaneous valuation approaches of all potential bidders, some of whom ultimately decided to opt out of the auction. This is especially true where the actual buyers of nuclear facilities have been given every incentive to disclaim that SNF played any role in plant valuations, so they can reduce the chances of a claimed "setoff" against their own damages.[2]

Contrary to the fishing expedition alleged by the Government, Con Edison's targeted third-party discovery requests seek only those documents that are essential to any well-constructed diminution of value proof. Con Edison is not interested in comprehensive discovery about each facility that was bought or sold in the relevant time frame – to do so would obviously further stall Con Edison's efforts to find the relevant data. The categories of information that Con Edison seeks include valuation models, bid workups, backup worksheets, input data, and

[2] The Government has stated its intention to seek set offs against the buyers of nuclear plants. For instance, at the Preliminary Scheduling Conference held in this case on January 20, 2006, the Government stated:

> "[W]e are prepared to go to trial in 2007 in Con Ed . . . and to the extent that Con Ed recovers, on a diminished value theory, <u>then that is offset from ENIP's damages claim</u> . . . And so simply put, Your Honor, we want ENIP to be bound by this Court's determinations of what the but-for world would have look like, vis-à-vis the government's contractual obligations." Transcript of Preliminary Scheduling Conference at 35, *Con Edison v. United States*, No. 04-0033C (Jan. 20, 2006) (J. Gardener speaking) (emphasis added).

evaluations of breach-driven factors. Con Edison also seeks the expert reports[3] and depositions[4] that have been and will be filed in buyer/seller SNF cases. While these topics are a small subset of documents generated in Government discovery of other SNF case plaintiffs, Con Edison has faced substantial difficulty in finding these documents due to the confused manner in which they have been produced to date. As Con Edison indicated in its opening brief, it has recently issued more targeted subpoenas to expedite production of the documents it needs.

## III. Information Exchange Will Be Unequal, And The Government Will Gain An Unfair Advantage, If Con Edison Is Not Permitted Access To Relevant Documents In Buyer-Seller SNF Transactions

Relevance issues aside, fundamental fairness requires that Con Edison be given time to access and review documents that the Government is assembling in its defense of other SNF cases and has available to use in defending Con Edison's case. The simple fact is that in pursuing set offs against all post-breach buyers of nuclear facilities, on the basis that SNF-induced costs were known and anticipated in bidding, the Government will learn the plant valuation methodology of every company that expressed interest in acquiring Indian Point. Although the Government now states that it "does not intend to use [in this case] third-party valuation documents related to <u>other</u> nuclear transactions" Gov't Response at 6-7, this position is

---

3 Con Edison was informed by lead counsel for Boston Edison before October 31, 2006 that Boston Edison did not object to producing the expert reports generated in that case, provided there were no objections by the buyer or the Government. It was under this assumption that Con Edison made initial inquiries of the Government and the buyer in that case. Sometime between October 31, 2006 and December 12, 2006, when queried by the Government, Boston Edison apparently did object, but Con Edison is not aware of when this occurred or why.

4 Con Edison would be willing to obtain and pay for relevant deposition transcripts and deposition exhibits by way of contacting court reporters directly as the Government suggests, Gov't Response at 4 n.4, provided the Government supplies Con Edison with a list of deponents and court reporters for the Boston Edison case, as well as any other buyer/seller case where depositions have occurred. However, given the objections now raised by other SNF plaintiffs implicated in those depositions, Con Edison sincerely doubts its ability to obtain such documents in this manner without a Court order.

linked to its claim that Con Edison should not be able to establish marketplace diminution of value, but must instead confine its proofs to the conduct of but a single bidder in an auction.

The Government's stated intentions with respect to other buyer/seller documents are also plainly inconsistent with its own third party subpoenas issued in this case and its discovery requests both here and in other buyer/seller cases. *See, e.g.,* Defendant's First Request For Production of Documents at 13, *Boston Edison v. United States*, Nos. 99-447C and 03-2626C (Fed. Cl., filed Aug. 9, 2005) (Request No. 26 is for "[a]ll documents assessing the effect of energy market restructuring on the value or prospects of the [Pilgrim] Nuclear Station or the nuclear industry as a whole.") (Attached as Exh. 2); Defendant's Second Request for Production of Documents at 9, *Boston Edison v. United States*, Nos. 99-447C and 03-2626C (Fed. Cl., filed Apr. 4, 2006) (Request No. 3 is for "[a]ll electronic versions of any plant valuation models prepared by or for any entity . . .") (Attached as Exh. 3) (emphasis added).[5]

The Government's citation, Gov't Response at 5, to ENIP's contention that "the price which [ENIP] paid for Indian Point was not reduced as a result of the Government's delay in SNF acceptance under the Standard Contract" is a telling example of this fairness principle. Before the Government attached this document to its Response to the pending Motion, Con Edison was not aware of ENIP's position because Con Edison was not given access to this discovery obtained by the Government. Although the Government claims to routinely update its discovery web site with the written discovery materials filed in all SNF cases, the web site does not contain ENIP's filed admission – only the Government's request for that admission filed in January 2006. The unavailability of this document to Con Edison did not stop the Government

[5] Con Edison has been unable to locate the written responses to the Government's Second Request For Production of Documents filed in the *Boston Edison* case and concludes they are not available on the Government discovery web site, despite Government assurances that it continues to update such information regularly.

from attempting to use the information to its advantage here, in much the same manner that Con Edison anticipates the Government will use other third-party information for its own purposes at trial.

Sharing of information between the SNF cases was also a major premise of the Government's argument for amendment of the Amended and Supplemental Protective Orders issued in this case and others.[6] The Government cannot deny that its strategy in defending Con Edison's case will undoubtedly be informed by all the documents, including the vital valuation documents, it will simultaneously be relying on in other nuclear plant buyer-seller cases to seek to establish a damage setoff. As this Court has already stated in this context, "I want to be sure that both parties have access to the same information when it comes time for trial." Transcript of Discovery Conference, at 35, *Con Edison v. United States*, No. 04-0033C (Fed. Cl. Aug. 28, 2006). This fairness principle enunciated by the Court then is no less true today, and requires that Con Edison be given the same documents as the Government.

## IV. Con Edison's Request For An Event-based Schedule Or Five Additional Months Within Which To File Its Expert Reports Is Reasonable

Con Edison's request to enlarge the existing discovery schedule according to an event-based schedule is reasonable given the current unpredictability associated with discovery from the Government and other SNF plaintiffs. In the alternative, five additional months is also reasonable, though uncertain because of the unknowns associated with this discovery. Con

---

[6] In discussions concerning the entry of a Supplemental Protective Order, the Government stated:

> One of the purposes of the original protective order that the Court of Federal Claims entered in the coordinated discovery proceedings early in the spent nuclear fuel litigation was to permit the sharing of protected documents between the various spent nuclear fuel cases.

(Aug. 3, 2006 Letter from H. Lester to D. Churchill) (Attached as Exh. 4, at 2.)

Edison very reluctantly requests any extension at all, given the Government's position that no prejudgment interest is available on this breach of contract claim.

With respect to Con Edison's own production of documents to the Government, Con Edison has produced documents on a rolling basis, consistent with an early agreement with the Government. Con Edison has produced over 150,000 pages of documents at regular increments, despite numerous obstacles associated with locating documents for plants that it no longer owns, and despite having transferred the great majority of documents related to its nuclear plants to the buyer in 2001 as required by the purchase and sale agreement. Con Edison is in the process now of reviewing and producing on a rolling basis documents reflecting internal correspondence of the Con Edison sales team, a great percentage of which include privileged correspondence with both in-house and outside counsel. Con Edison must review these documents for privilege and create a privilege log during this review. Despite these obstacles, Con Edison has already produced a subset of these documents, and will continue to produce the documents in a manner that will allow the Government ample time to review and digest them in advance of Con Edison's submittal of its expert reports.

## V. CONCLUSION

For the following reasons, Con Edison respectfully requests that the Court grant Con Edison's motion for an enlargement of time in which to file its expert reports, based either on an event-based schedule or, in the alternative, on a five-month enlargement of Con Edison's obligation to submit expert reports, and a corresponding extension of later milestones.

Dated: February 6, 2007

Respectfully submitted,

/s/ David A. Churchill
DAVID A. CHURCHILL
Jenner & Block LLP
601 Thirteenth Street, N.W.
Suite 1200 South
Washington, DC 20005
(202) 639-6056
(202) 639-6066 (fax)
COUNSEL FOR PLAINTIFF

Of Counsel:

Brent L. Brandenburg, Esq.
Assistant General Counsel
Consolidated Edison Company
of New York, Inc.
4 Irving Place, Suite 1830
New York, NY 10003
(212) 460-4333

Daniel F. Stenger, Esq.
Hogan & Hartson LLP
Columbia Square
555 Thirteenth Street, N.W.
Washington, DC 20004
(202) 637-5691

Cynthia J. Robertson, Esq.
Jenner & Block LLP
601 Thirteenth Street, N.W.
Suite 1200 South
Washington, DC 20005
(202) 639-6000

CERTIFICATE OF FILING

I hereby certify that on February 6, 2007, a copy of the foregoing "Plaintiff's Reply On Motion For Enlargement Of Time" was filed electronically. I also understand and certify that notice of this filing will be sent to all parties by operation of the Court's electronic filing system and that parties may access this filing through this system.

s/ David A. Churchill

David A. Churchill
JENNER & BLOCK, LLP
601 Thirteenth Street, NW, Suite 1200
Washington, DC 20005
(202) 639-6000

*Counsel of Record for*
*Consolidated Edison Company of New York, Inc.*