# Exhibit 3

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| BOSTON EDISON COMPANY<br><br>Plaintiff,<br><br>v.<br>UNITED STATES,<br><br>Defendant. | |
| ENTERGY NUCLEAR GENERATION CO.,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | No. 99-447C<br>No. 03-2626C<br>(Judge Lettow) |

DEFENDANT'S SECOND REQUEST FOR PRODUCTION OF DOCUMENTS

Pursuant to Rule 34 of the Rules of the United States Court of Federal Claims, defendant, the United States, hereby requests that plaintiffs, Boston Edison Company ("Boston Edison") and Entergy Nuclear Generation Company ("Entergy"), produce all documents in their possession, custody, and/or control, or otherwise available to plaintiffs, that are responsive to the requests in the numbered paragraphs below and that plaintiffs produce them within 30 days after service of these requests. Because these requests for production are continuing, they require supplemental response if plaintiffs obtain additional information and/or discover additional documents after service of their original response. Such supplemental responses shall be served from time to time, but not later than 10 days after such additional information has been obtained.

## DEFINITIONS AND INSTRUCTIONS

A. The following definitions apply in responding to these document production requests:

1. "Plaintiffs," "Boston Edison," "Entergy," "you," "your," and "yourselves" shall refer to the plaintiffs in these actions, as well as their present or former officers, employees, agents, attorneys, or representatives and every person acting upon their behalf and/or connected with plaintiffs in the context of the matters at issue in this action.

2. "Person" and "individual" shall include any natural person, corporation (private or governmental), subsidiaries, syndicate, trust, partnership, proprietorship, firm, group, association, joint venture, governmental or other public entity or agency, or any other form of organization or legal entity, and all respective officials, directors, officers, employees, representatives, independent contractors, investigators, consultants, agencies, or agents, whether or not still alive or in existence.

3. "Official," "director," "officer," "employee," "representative," "agency," or "agent" shall include any person, natural, corporate, or otherwise, including any attorney, serving or acting in such capacity (by contract or otherwise) at any relevant time even though such person no longer serves or acts in such capacity.

4. "Document" shall be construed in the broadest sense possible under RCFC 34 and shall include the original and any copy of any and all writings as that term is defined in Federal Rule of Evidence 1001, and all written, typed, printed, recorded, graphic, computer-generated, or other matter of any kind from which information can be derived, whether produced, reproduced, or stored on paper, cards, tape, film, electronic facsimile, computer

storage devices, or any other medium in your possession, custody, or control, or whose existence is or was ever known to you, including but not limited to: correspondence, letters, notes (whether of visits, meetings, telephone calls, or otherwise), memoranda (whether of visits, meetings, telephone calls, or otherwise), appointment calendars, schedules, telegrams, telexes, facsimiles, electronic mail, press releases, notices, brochures, pamphlets, guidelines, manuals, instructions, summaries or abstracts, diaries, notebooks, minutes, computer printouts or information stored in a computer-readable form, tests, reports, files, file jackets, analyses, studies, testimony, speeches, worksheets, invoices, bills, written estimates, contracts, agreements of any kind, purchase orders, change orders, proposed changes, schedules, plans, charts, diagrams, drawings, graphs, designs, blueprints, tables, photographs, books, articles, or extracts from any of the foregoing, and any other writings or documentary materials of any nature whatsoever, whether or not divulged to other parties, together with any attachments thereto and enclosures therewith. These requests encompass all forms and manifestations of electronically or optically coded, stored, and/or retrievable information, including, but not limited to, digital images and graphics, digital or analog audio tapes and files, and digital or analog video tapes and files. The term "document" or "documents" also shall include each copy that is not identical to the original or to any other produced copy, and any preliminary drafts of any documents or any working papers related thereto, and specifically includes internal memoranda.

5. "Relating to" means containing, constituting, discussing, describing, identifying, referring to, supporting, explaining, contradicting, and/or in any way pertaining to the subject specified.

6. "DOE" refers to the United States Department of Energy.

7. The term "Standard Contract" refers to the "Standard Contract For Disposal Of Spent Nuclear Fuel And/Or High-Level Radioactive Waste," the terms of which are published at 10 C.F.R. § 961.11.

8. "HLW" refers to high-level radioactive waste as defined in Article I, clause 12, of the Standard Contract.

9. "SNF" refers to spent nuclear fuel as defined in Article I, clause 18, of the Standard Contract.

10. "GTCC" refers to Greater-Than-Class-C radioactive waste, which is radioactive waste that exceeds the concentration limits of radionuclides established for Class C waste in 10 C.F.R. § 61.55.

11. "Re-racking" means the process by which additional and/or space-conserving racks are added to the spent fuel pool as a means of increasing SNF storage capacity.

12. "Nuclear Station" refers to Pilgrim Nuclear Power Station.

13. "Pilgrim Assets" refers to any assets relating to Pilgrim Nuclear Power Station.

14. "Entergy" refers to Entergy Nuclear Generation Co., and any of its predecessors or successors in interest.

B. To bring within the scope of these requests all information and documents that might otherwise be construed to be outside their scope:

1. The singular of each word shall be construed to include its plural and vice versa, and the root word and all forms thereof (*i.e.*, participles and infinitives, *etc.*) shall be construed to include each other;

2. "And" as well as "or" shall be construed both conjunctively as well as disjunctively;

3. "Each" shall be construed to include "all," and vice versa;

4. "Any" shall be construed to include "all," and vice versa;

5. The present tense shall be construed to include the past tense, and vice versa;

6. The masculine shall be construed to include the feminine, and vice versa;

7. "Knowledge," "information," "possession," "custody," and "control" possessed or exercised by a person shall be construed to include "knowledge," "information," "possession," "custody," and "control" possessed or exercised by such person's agents, representatives, and attorneys;

8. "Include" and "including" shall have their ordinary meaning and shall mean "including, but not limited to;"

9. In general, all terms used herein shall be construed in an ordinary, common-sense manner, and not in a technical, strained, overly literal, or otherwise restrictive manner.

C. If plaintiffs cannot answer the following document requests in full after exercising due diligence to secure the information, so state, and answer to the extent possible. Explain in detail the reasons for plaintiffs' inability to answer the remainder, and identify whatever information or knowledge plaintiffs have concerning the unanswered portion.

D. Where exact statistical or numerical information, including dates or times, cannot be furnished, estimated or approximate information shall be supplied. Where an estimate or

approximation is supplied, it should be so indicated, and an explanation provided as to the basis upon which the estimate or approximation was made. State the reason(s) why exact statistical or numerical information cannot be furnished.

E. Each request herein constitutes a request that each document referred to, or a true, complete, and legible copy thereof, be produced, during business hours and upon appropriate notice, to defendant's undersigned counsel, at the offices of the Department of Justice, 1100 L Street, N.W., Washington, D.C. 20530, within the time provided in RCFC 34, or at such other time or place as may be agreed upon by plaintiffs and the United States, for the purpose of inspection and copying in accordance with RCFC 34. Each document request seeks documents that are in any way in your possession, custody, or control, including the possession, custody, or control of your attorneys, or to which any of your attorneys have, or have had, access. If a requested document was, but no longer is, in your possession, custody, or control, identify the document and identify the present location and custodian of the document, or if such information is unavailable, identify the last known location and custodian of the document, and explain the circumstances under which the document left your possession, custody, or control.

F. If you believe that any of the following requests for production calls for the production of documents that you claim contain privileged material, produce so much of the document(s) as is not objected to, and set forth, with respect to each such document as to which a claim of privilege is asserted, the nature of the privilege claimed (*e.g.*, attorney-client and/or work product privileges) and all the reasons upon which you base the claim of privilege. For each document or part of a document as to which you claim privilege, state:

1. The date thereof;

2. The type, title, and subject matter of the document, sufficient to assess whether the assertion of privilege is valid;

3. The name of the person or persons who prepared or signed the document;

4. The name and positions of all intended and actual recipients of the document;

5. Each person now in possession of the original or a copy of the document;

6. If not previously identified, the nature of the privilege being claimed and all facts relevant to the claim; and

7. The number of the document request to which the document is responsive.

G. Notwithstanding a claim that a document is privileged, any document so withheld must be produced with the portion claimed to be protected excised. If, for reasons other than a claim of privilege, you refuse to produce any documents described herein, state the grounds upon which the refusal is based with sufficient specificity to permit a determination of the propriety of such refusal. In the event that you object to any document production request upon the ground that it is too broad (*i.e.*, that it calls both for information which is relevant to the subject matter of the action and information which is not relevant), provide the information that is relevant. If you object to a document production request upon the ground that to provide the document(s) would constitute an undue burden, provide all requested documents that can be supplied without undertaking an undue burden.

H. Unless indicated otherwise in the specific document request, these requests call for information and documents beginning in 1980 up to the present.

I. To the extent you believe information or documents responsive to these document

requests has already been produced to the Government by plaintiffs, identify with specificity where in the prior production the information or documents may be found.

## REQUESTS FOR PRODUCTION

REQUEST NO. 1

All documents relating to the negotiation strategy or strategies to purchase or sell the Pilgrim assets, including but not limited to, reservation values, bidding strategies, and bidding ground-rules or parameters.

REQUEST NO. 2

All documents relating to any post-purchase evaluation of the Pilgrim assets prepared by any entity, including but not limited to, financial analyses, evaluation models and financial forecasts.

REQUEST NO. 3

All electronic versions of any plant valuation models prepared by or for any entity, including but not limited to, the documents entitled "Plant Valuation" produced in PDF format at ENGC/BECO DOE 1st RPP-21-2656-61; 21-2705-13; 21-7240-41 by plaintiff Entergy on September 26, 2005, in response to request number 21 of Defendant's First Request For Production Of Documents dated August 9, 2005.

REQUEST NO. 4

All documents prepared by Jack Harrington, BECON Services (Clinton, M.S.); McKinsey & Co. (D.C.); and Wise Carter Child & Caraway (Jackson, M.S.) in support of, or relating to, the sale of the Pilgrim assets by plaintiff Boston Edison.

REQUEST NO. 5

All documents relating to any stranded costs proceedings pertaining in any way to the sale of the Pilgrim assets by plaintiff Boston Edison.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

HAROLD D. LESTER, JR.
Assistant Director

(by T. Cochran)

ALAN J. LO RE
Senior Trial Counsel
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
1100 L Street, N.W.
ATTN: Classification Unit, 8th Floor
Washington, D.C. 20530
Tel: 202-307-0226
Fax: 202-307-2503

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

April 4, 2006

CERTIFICATE OF SERVICE

I certify under penalty of perjury that on this 4th day of April, 2006, I caused to be served by hand delivery "DEFENDANT'S SECOND REQUEST FOR PRODUCTION OF DOCUMENTS," addressed as follows:

RICHARD J. CONWAY
Dickstein Shapiro Morin & Oshinsky LLP
2101 L Street, N.W.
Washington, D.C. 20037

ALEX D. TOMASZCZUK
Pillsbury Winthrop Shaw Pittman LLP
1650 Tysons Blvd
McLean, VA 22102-4859

# Exhibit 4

U.S. Department of Justice

Civil Division

PDK:DMC:HDL
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

Telephone:
(202) 305-7562

Washington, D.C. 20530

August 3, 2006

VIA TELECOPY AND UNITED STATES MAIL

David A. Churchill
Cynthia J. Robertson
Jenner & Block LLP
601 Thirteenth Street, N.W.
Suite 1200 South
Washington, D.C. 20005-3823

Re: *Consolidated Edison Co. of New York v. United States*, No. 04-0033C (Fed. Cl.)

Dear Mr. Churchill and Ms. Robertson:

In response to Ms. Robertson's e-mails dated July 19 and August 2, 2006, we have reviewed the draft "supplemental" protective order that Consolidated Edison Company of New York ("ConEd") has proposed for entry in this case.[1] ConEd's request for a supplemental protective order has caused us to review all of the protective orders that have been issued in the spent nuclear fuel litigation to assist us in considering some of the difficulties posed by ConEd's draft supplemental protective order. Based upon that broader review of the existing protective orders, we have identified the need for a slight modification to the existing protective order in this case. In addition, we must object to many of the provisions that ConEd proposes for a supplement to the existing protective order.

---

[1] The draft supplemental protective order upon which we focused is the draft that was attached to Ms. Robertson's July 19, 2006 e-mail. To the extent that the draft attached to the August 2, 2006 e-mail differs from the July 19, 2006 draft, please identify those differences for us, and we will attempt to respond to them. We assume for purposes of this letter that the draft supplemental protective order attached to Ms. Robertson's August 2, 2006 e-mail is the same as the draft attached to her July 19, 2006 e-mail.

Existing Protective Order:

One of the purposes of the original protective order that the Court of Federal Claims entered in the coordinated discovery proceedings early in the spent nuclear fuel litigation[2] was to permit the sharing of protected documents between the various spent nuclear fuel cases. We attached a copy of that May 9, 2002 order to a April 23, 2004 status report in this and other more recently filed spent nuclear fuel cases, which Judge Sypolt had requested prior to a comprehensive status conference that the Court held on April 30, 2004, with all of the newer spent nuclear fuel plaintiffs. We anticipated that the Court would issue a new order that, essentially, added the newer spent nuclear fuel plaintiffs to the existing coordinated discovery proceedings protective order. Instead, several judges individually issued that order in their individual cases, rather than a comprehensive court-wide protective order applicable to all of the spent nuclear fuel cases. Because the judge in this case issued the order as submitted for use in the April 30, 2004 status conference, the protective order here does not, as technically written, appear to allow for information sharing between spent nuclear fuel cases, which was our original intent. To allow for sharing of protected information that is not subject to any "supplemental" order that further limits distribution of documents, we intend to propose the following changes to the existing protective order, which was issued on May 18, 2004:[3]

> (a) the language in paragraph 4 that currently reads "the above-entitled litigation" should be changed to "the spent nuclear fuel litigation in this Court;"
>
> (b) the language in paragraph 6 that currently reads "the attorneys of record for the parties to the spent nuclear fuel case" should be changed to "the attorneys of record for the parties to the spent nuclear fuel cases;" and
>
> (c) the language in paragraph 10 that currently reads "[w]ithin ninety (90) days after the conclusion of this litigation" should be changed to "[w]ithin ninety (90) days after the conclusion of the spent nuclear fuel litigation in this Court."

In addition, given difficulties that we have had in other cases with vague designations of categories of documents as protected, we propose to change paragraph 2 to identify specific language that must be placed on each page of any protected document, as follows: "PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH U.S.

---

[2] That order is dated May 9, 2002.

[3] We intend to make this proposal without prejudice to our right to renew our request that the Court to implement a court-wide protective order applicable to all of the spent nuclear fuel cases.

COURT OF FEDERAL CLAIMS PROTECTIVE ORDERS IN SPENT NUCLEAR FUEL LITIGATION." We have been forced to incur substantial costs in other cases in which plaintiffs have merely identified, often without great specificity, categories of documents that they want protected and to endorse those documents with protective legends to ensure that they are not inadvertently provided to other parties. With a requirement that protected documents being produced actually contain a protective legend, we can eliminate much of this expense.

Objections To ConEd's Proposed "Supplemental" Protective <u>Order (In Addition To The Necessary Changes Noted Above)</u>:

We cannot agree to the language of the "supplemental" protective order that ConEd has proposed. As an initial matter, we understand that there may be particular documents that are so highly sensitive or proprietary that an entity may desire further restrictions than the standard protective order provides. Nevertheless, the need for this heightened level of protection should be rare, as the existing protective order already provides for restrictions upon access to and the use of documents subject to that order. To the extent that ConEd or some other party wants to place documents under this heightened protective order, that party should be required to justify that heightened protection. For each document subjected to this heightened protection, that party should be required to provide some type of log that identifies with specificity the harm that would result from disclosure of that specific document to counsel for the other nuclear utility plaintiffs. Any burden associated with such an effort should be small, given that the number of documents that fall into this heightened level of protection should be relatively small. <u>See</u> <u>THK America, Inc. v. NSK Co.</u>, 157 F.R.D. 637, 643-44 (N.D. Ill. 1993).

Further, ConEd's proposed "supplemental" order appears to replace, in its entirety, the original protective order, given that both the original and supplemental orders impose restrictions upon apparently the same "Confidential Material." That is, in paragraph 1 of the proposed supplemental protective order, the term "Confidential Material" is exactly the same as that in the original protective order. If a document was identified as "Confidential," the United States would have no basis for knowing whether the document's distribution is limited in the manner required by the original protective order or in the manner required by the supplement. Further, the replacement of the original protective order in its entirety with the proposed "supplement" would preclude the use of <u>any</u> protected documents produced in this particular spent nuclear fuel case in any other spent nuclear fuel case. We cannot agree to this proposal. Any supplemental protection should apply only to particular categories of documents for which this additional and heightened level of protection is absolutely necessary, and the scope of those documents should be identified here. We cannot agree to permit ConEd and other nuclear utilities to apply a heightened level of protection to every document that they choose to designate as needing some level of protection, particularly without some significant justification for the application of heightened protection.

With regard to the proposed paragraph 2 of the draft supplemental protective order, we need any documents produced to us clearly to identify the fact that each document is protected by

the supplemental protective order restrictions. Accordingly, each page of any document that is to be limited in distribution only to this particular spent nuclear fuel case needs to have the following legend endorsed upon it: "SPECIALLY PROTECTED MATERIAL TO BE DISCLOSED ONLY IN ACCORDANCE WITH U.S. COURT OF FEDERAL CLAIMS SUPPLEMENTAL PROTECTIVE ORDER IN CONSOLIDATED EDISION CO. OF N.Y. V. US, NO. 04-33C, DATED ___________, 2006."

With regard to the proposed paragraph 4(a), this paragraph would allow third parties, most if not all of which have filed their own cases in the Court of Federal Claims, to produce documents here but would preclude the United States from using those documents in the cases in which the third parties are plaintiffs. We should not be in a position where we are required to destroy the documents that we obtain in this case and then attempt to seek production of the documents again in the third parties' cases.

With regard to the proposed paragraph 4(b), we do not understand the scope or meaning of this paragraph. The implications upon the use of documents produced subject to this "supplemental" protective order are unclear. We cannot agree to a paragraph under which we cannot identify the extent of the burden or prejudice that it will impose upon the United States.

With regard to the proposed paragraph 5, the limitation upon access to "Con Ed's attorneys" is too restricted, as we should be entitled, at the very minimum, to share these documents with counsel for the third parties producing these documents and use them in litigation where the third parties are plaintiffs.

With regard to the proposed paragraph 7, ConEd has added a portion of a sentence that provides as follows: "except that in accordance with the provisions of Paragraph 4 above plaintiff shall be entitled promptly to receive from the United States Confidential Material disclosed to the United States by the parties." We cannot agree to this provision. In fact, as previously mentioned, in response to your request for a supplemental protective order, we have undertaken a review of all of the existing protective orders in the spent nuclear fuel litigation. Some judges have changed a few words in varying paragraphs, creating different obligations upon the United States in different cases. Although our intent was that all documents produced in the spent nuclear fuel cases, including those subject to a protective order, could be shared among the spent nuclear fuel cases, we have recently realized that, pursuant to the express language of the existing protective orders, we cannot provide ConEd with any protected documents other than those produced in the Detroit Edison, Entergy Gulf States, Entergy Nuclear Generation, Entergy Nuclear Indian Point 2, Entergy Nuclear Vermont Yankee, Pacific Gas & Electric, South Carolina Gas & Electric, System Fuels, and Vermont Yankee cases.[4] In any other

[4] In these particular cases identified here, the trial court modified paragraph 4 of the coordinated discovery proceedings protective order to ensure that it allowed for use of the protected documents in the "spent nuclear fuel cases." In other cases, that language was not used, instead limiting distribution to "the above-entitled litigation," the phrase that was used in

cases, the plain language of the existing protective orders, from a technical standpoint, precludes us from sharing protected documents produced in that litigation with you. Although our original intent was that the Court of Federal Claims would issue a single protective order that governed all of the spent nuclear fuel cases and would permit information sharing between the cases, the manner in which the trial court has actually implemented our request, through piecemeal issuance of the originally requested protective order in individual cases (sometimes without modifying the language to permit information sharing) has not, from a technical standpoint based upon the plain language of the various protective orders, implemented our original intent.

With regard to the proposed paragraph 9, ConEd has attempted to reverse the burden of proof imposed by the original protective order and place the burden of establishing that documents should be removed from the restrictions imposed by the supplemental protective order upon the United States. Under well-established case law, it is the burden of the party seeking to protect documents and to limit their distribution to establish good cause for that protection. See, e.g., Forest Prods. Northwest v. United States, No. 05-5007, 2006 WL 1817073, at *5 (Fed. Cir. July 5, 2006); Miles v. Boeing Co., 154 F.R.D. 112, 114 (E.D. Pa. 1994). "To overcome the presumption" that documents should be publicly available and establish "good cause" for subjecting documents to a protective order, "the party seeking the protective order must . . . demonstrat[e] a particular need for protection." Cipollone v. Liggett Group, Inc., 785 F.2d 1108, 1121 (3rd Cir. 1986). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." Id. "Moreover, harm must be significant, not a mere trifle." Id. We will not agree to a change in this well-established precedent.

The deficiencies and problematic provisions identified here are those that we have been able to identify to date as a result of our review of ConEd's proposed supplemental protective

---

the original coordinated discovery proceedings applicable to multiple cases. Because ConEd is not a party to the coordinated discovery proceedings protective order, we do not see how, given a technical reading of that protective order and despite our intentions with regard to protective orders, we can share any protected material from the coordinated discovery proceedings with ConEd. To the extent that we have previously provided ConEd with access to some documents subject to the protective orders in spent nuclear fuel cases other than those identified above (based upon our misreading of these other protective orders), we invoke the claw-back provision in paragraph 8 of the May 18, 2004 protective order and ask that ConEd immediately return any such documents to us.

order. To the extent that we identify additional problems based upon a further review of ConEd's draft, we will notify you.

Very truly yours,

HAROLD D. LESTER, JR.
Assistant Director
Commercial Litigation Branch
Civil Division