**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **CONSOLIDATED EDISON COMPANY OF NEW YORK, INC.,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **No. 04-0033C** **(Judge Wheeler)** |
| **UNITED STATES OF AMERICA,** | ) | |
| **Defendant.** | ) | |

**PLAINTIFF'S MOTION TO COMPEL THE GOVERNMENT TO PRODUCE DOCUMENTS OBTAINED IN RELATED SNF CASE DISCOVERY**

Pursuant to Rules of the Court of Federal Claims ("RCFC") 7 and 37(a), Plaintiff Consolidated Edison Company of New York, Inc. ("Con Edison"), respectfully requests this Court to enter an Order compelling the Government to produce nuclear plant valuation and transactional documents, as well as expert reports, deposition transcripts, and exhibits related to the partially consolidated spent nuclear fuel ("SNF") plant sale case involving the Pilgrim Nuclear Power Plant ("Pilgrim") located in Massachusetts. The parallel case is styled *Boston Edison Company v. United States*, Nos. 99-447C and 03-2626C (Fed. Cl. consol. June 29, 2005) ("*Boston Edison*"). Con Edison initially sought discovery of these materials from the Government in November 2004.

These documents are highly relevant to Con Edison's SNF case involving the sale of its Indian Point 1 and 2 Nuclear Units ("Indian Point"), which were purchased by Entergy slightly over a year after Entergy purchased Pilgrim. While Con Edison's immediate need is for an Order compelling production of these Pilgrim documents, Con Edison has longer-term concerns regarding the fairness of discovery and respectfully seeks an Order ensuring that Con Edison has

and will continue to have access to discovery in all buyer-seller SNF cases presenting similar legal issues, subject to an appropriate protective order.[1] Alternatively, Con Edison respectfully requests this Court to enter an Order precluding the Government from using in any part of its case against Con Edison any such materials or information derived from these other cases that have not been produced to Con Edison.

## I. BACKGROUND

Following the Government's breach of the Standard Contract for disposal of SNF in January 1998, several nuclear facilities were sold in connection with the deregulation of the utility industry. Pilgrim was the first of these sales. Entergy purchased Pilgrim in July 1999, and sixteen months later, following a competitive auction, Entergy agreed to purchase Indian Point from Con Edison in November 2000.

One of Con Edison's central claims in this case is that the Government's breach diminished the value of Indian Point for the purposes of its sale. Con Edison asserts that the Government's breach caused heightened investor risk, imposed substantial and foreseeable costs that would otherwise have been avoided, and resulted in fewer buyers interested in buying nuclear facilities -- all of which in turn depressed the entire marketplace for these facilities, and caused Con Edison to sell Indian Point at a distressed price. To complete its discovery and represent the "non-breach world" market for divesting nuclear plants, Con Edison requires buyer valuation materials from proximate nuclear facility acquisitions successfully concluded by parties, such as Entergy, who had also expressed at least preliminary interest in acquiring Indian Point.

[1] On December 21, 2006, Con Edison issued a subpoena to Entergy Corporation seeking from Entergy similar documents related to the Pilgrim transaction. Con Edison is also moving to compel Entergy to produce these documents in Con Edison's contemporaneously filed Motion to Compel Documents from Entergy Corporation and Florida Power & Light, LLC.

In August 2005, the Court affirmed the legal sufficiency of Con Edison's diminished value damages claim. *Consolidated Edison Co. of New York, Inc. v. United States*, 67 Fed. Cl. 285, 290 (Fed. Cl. 2005) (Lettow, J.). In its opinion, the Court found that the diminished value of Indian Point was "not only foreseeable but also appears to be the proximate result of the Government's breach of contract." Con Edison is entitled to discovery of materials relevant to its diminished value claim, including documents related to other affected nuclear plant sales, such as Pilgrim, in order to demonstrate the effect that the Government's breach had on the market for nuclear facilities.

In November 2004, Con Edison initially sought plant valuation and transactional documents from the Government in its First Request for Production of Documents. In a discovery meeting of counsel in January 2006, and again in March and April 2006, Con Edison requested the valuation materials produced by other SNF-plaintiffs in buyer-seller cases. Transcript of Telephonic Hearing, *Con Edison v. United States,* No. 04-0033, at 8 (Fed. Cl. March 9, 2006); March 10, 2006 Letter from D. Churchill to H. Lester, at 2-3 (attached as Exh. A); April 18, 2006 Letter from D. Churchill to H. Lester (attached as Exh. B). The Government objected to Con Edison's requests based on relevance, undue burden, and the proprietary nature of the information. Even after Con Edison limited the scope of its requests and explained that the protective orders entered in this case and other SNF cases adequately protected any confidential information, the Government refused to make these documents available to Con Edison. *See* Exh. B. The history of Con Edison's many discovery efforts are set forth in Plaintiffs Motion for Entry of Supplemental Protective Order and Order Compelling the Production of Documents filed on August 16, 2006.

Despite the Government's claims that valuation and transactional documents related to other nuclear sales are irrelevant, the Government has sought the same type of information from third parties in this case and from Entergy in the *Boston Edison* case. In April 2006, the Government issued subpoenas in the Con Edison case to several SNF plaintiffs, in which the Government requested:

> All documents related to sales comparable to Indian Point or other sales and/or purchases of interests in nuclear power plants, including, but not limited to, a description of the assets, details on the sale mechanism (*i.e.*, whether the sale was effected through an auction, the number of bidders, the number of bids, and the type of auction, among other things), and transaction price.

*See, e.g.*, Gov't Subpoena Issued to Florida Power & Light Energy, at 9 (attached as Exh. C). In *Boston Edison*, the Government requested that Entergy produce "[a]ll electronic versions of *any plant valuation models prepared by or for any entity* . . ." Def.'s Second Request for Prod. of Docs., at 9, *Boston Edison v. United States*, Nos. 99-447C and 03-2626C (Fed. Cl., filed Apr. 4, 2006) (emphasis added) (attached as Exh. D).

After refusing to produce valuation and transactional documents to Con Edison in this case, in August 2006, the Government sought from Entergy "all documents discussing Entergy's financing of the *purchase of other generation assets*, including documents regarding the consideration of alternative financing options, valuation models, decision making criteria . . ." and "all documents describing Entergy's methodology for valuing nuclear generating assets" without limiting the request to Pilgrim. Def.'s Third Request for Prod. of Docs., Request 8 & 9, *Boston Edison v. United States*, Nos. 99-447C and 03-2626C (Fed. Cl., filed Aug. 8, 2006) (emphasis added) (attached as Exh. E).

In August 2006, the Government also reiterated its intention to use materials produced by any SNF plaintiff in any SNF case. In a briefing regarding a protective order in another SNF

case, the Government stated that it "expects that, in presenting its defenses in this case as well as other cases, it will need to rely upon materials produced by [that SNF plaintiff] and other utility plaintiffs regarding the industry's understandings of the contract's terms and the industry's views of the implementation of the contract." Def.'s Resp. to Pl.'s Emergency Mot. of Prot. Order and Stay of the Parties' Exchange of Conf. Materials, *Dairyland and Power Cooperative v. United States*, No. 03-2663C (Fed. Cl. filed Aug. 4, 2006).

In light of the Government's assertions in *Dairyland* and its repeated refusals to provide Con Edison with the very same valuation and transactional documents the Government sought from Entergy and other SNF plaintiffs, on August 16, 2006, Con Edison filed a Motion for Entry of Supplemental Protective Order and Order Compelling the Production of Documents. In response to this motion, the Court entered a revised protective order and a new Supplemental Agreement and Protective Order ("Supplemental Protective Order") on August 31, 2006, for the purpose of permitting the production of these long-sought documents.

After the Court entered the Supplemental Protective Order, the Government did begin producing some documents to Con Edison. Based on Con Edison's review of these documents, the Government's production was incomplete with respect to Con Edison's discovery needs. While the Government claims that it produced everything it received from Entergy in relation to Pilgrim, important written discovery materials have surfaced that had not been produced to Con Edison.

First, in recent motions practice between Con Edison and the Government, Con Edison learned for the first time from a document attached to the Government's motion papers that in Entergy's Responses to the Government's First Set of Interrogatories and Requests for Admission filed in the consolidated *Boston Edison* case, Entergy contended that "the price which

[Entergy] paid for Indian Point was not reduced as a result of the Government's delay in SNF acceptance under the Standard Contract." (Def.'s Resp. to Pl.'s Mot. for Enlargement of Time, at 5, filed Jan. 29, 2007.) Although the Government claims to routinely update its discovery website with the written discovery materials filed in all SNF cases, the website does not contain Entergy's filed admission, even though the admission is dated August 3, 2006. The unavailability of this response to Con Edison did not deter the Government from attempting to use the information to its advantage against Con Edison, in much the same manner that Con Edison anticipates the Government will use any and all other third-party information for its own purposes in this case.

Second, Con Edison recently discovered that the Government failed to produce supplemental valuation materials that Entergy provided in the *Boston Edison* case with Bates Range [ENGC BECO 1st RFP-21-Suppl-1 through 65]. These valuation materials could potentially affect Con Edison's expert's analysis of damages. Without this Court's assistance, Con Edison will have no way of knowing whether the Government has actually produced all the documents that it claims to have produced.

Additionally, the Government continues to refuse to provide Con Edison with many of the valuation materials received from other SNF plaintiffs in discovery concerning sales of nuclear facilities <u>other</u> than Indian Point. Here, the Government appears to have adopted the arguments of these companies that such materials are irrelevant to Con Edison's case. *Compare* Def.'s Resp. to Pl.'s Mot. for Enlargement of Time, at 4-5 *with* May 5, 2006 Letter from A. Tomaszczuk to H. Lester, at 2 (attached as Exh. F). To the contrary, valuation and transactional documents, expert reports, and deposition materials concerning Pilgrim and other nuclear plants that were sold post-breach are highly relevant to Con Edison's affirmative and defensive case

preparation, and Con Edison is entitled to these materials under the broad standards governing the discovery process.

For these reasons, Con Edison seeks a broad Order compelling the Government to produce these and other similar relevant documents to ensure the fairness of the process, such that Con Edison has access to all documents the Government will use, either directly or indirectly, in preparing its case against Con Edison.

## II. ARGUMENT

### A. Third Party Discovery Concerning The Sale And Valuation Of Pilgrim Is Plainly Relevant To Con Edison's Damages Analysis

Con Edison has the right to "obtain discovery regarding any matter, not privileged, that is relevant to the claim." Fed. Cl. R. 26. "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. Pro. 26(b)(1). Relevancy, under Rule 26, is construed broadly to include "any matter that bears on . . . any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). Indeed, even if "there is doubt over relevance, Rule 26(b)(1) indicates that the court should be permissive." *Speller v. United States*, 14 Cl. Ct. 170, 172 (Cl. Ct. 1988) (allowing plaintiff to discover third party documents where there was at least "some relationship" between the discovery requested and an issue at trial).

Here, the valuation and transactional documents, as well as expert witness and deposition materials related to Pilgrim that are in the Government's possession are unquestionably relevant to Con Edison's damages in this case. All nuclear plants suffered similar consequences of prolonged storage of SNF for an indefinite period due to the Government's breach of the Standard Contract. Con Edison contends that the entire marketplace for the sale of nuclear

generating facilities was depressed by the Government's breach. Because the entire marketplace was devalued, the sale price for Con Edison's Indian Point facility was necessarily reduced. Thus, Pilgrim valuation materials that were produced to the Government in another similar SNF case are plainly relevant to Con Edison's own damages claim.

First, Entergy bought both Indian Point and Pilgrim. Access to Entergy's valuation methodology for Pilgrim, along with the valuation methodologies used in connection with the acquisition of Indian Point and other nuclear facilities, should disclose SNF-related effects on acquisition terms that are common among all nuclear plants, such as the heightened costs associated with continued on-site storage of SNF. Because these factors are common to all nuclear acquisitions and cut across all transactions, they are probative of how the market value of those nuclear units which were divested was determined under breach conditions, and also how the Government's breach affected the value of Indian Point when Con Edison sold the facility in 2001.

Second, Con Edison's contention is that the entire marketplace for nuclear generating facilities was depressed in the wake of the Government's failure in January 1998 to honor its contractual obligations to dispose of SNF at the Nation's nuclear power plants. There can be no doubt that the role of SNF in influencing Entergy's interest and participation in the market will be revealed in the contemporaneous documents leading to Entergy's acquisition of Pilgrim. Entergy's view of the effects of SNF on its acquisition of Indian Point, Pilgrim, or any other nuclear facility may be more explicitly stated in documents pertaining to any of these essentially contemporaneous transactions. Thus, Con Edison's search for relevant material is legitimately market-based, and thus broader than the single Indian Point transaction to which it was a party.

Furthermore, the fact that these valuation and transactional documents relate to Entergy's purchase of Pilgrim rather than Indian Point by no means diminishes their relevance in this litigation. Courts allow parties to introduce evidence at trial of similar transactions to establish damages, and under Rule 26, the standard for discovery is even more liberal. In *Gentile v. SinglePoint Financial, Inc.*, 2003 WL 1240504, at *4 (Del. Ch. March 5, 2003), minority shareholders of non-public corporation dissented to a merger and sought to recover the fair market value of their shares of the company. To determine the fair value of plaintiffs' shares, the court found that it needed to construct a non-merger valuation world "exclusive of any element of value arising from the accomplishment or expectation of the merger or consolidation." *Id.* at *4. In order to establish this but-for world to be used for determining the value of plaintiffs' shares, the court allowed shareholders to introduce evidence of similar transactions involving public companies. *Id.* at *6. Here, Con Edison seeks to establish what the fair market value of Indian Point would have been in a non-breach world. Just like the shareholders in *Gentile*, Con Edison needs access to valuation materials from related buyer-seller SNF transactions in order to establish this but-for world.

Even when the relevance of similar events in establishing damages is challenged, courts have allowed discovery. In *Ferko v. National Association for Stock Car Auto Racing Inc.*, 218 F.R.D. 125, 137 (E.D. Tex. 2003), plaintiffs brought breach of contract and antitrust claims against defendant, seeking to recover lost profits they would have received from operating a premier NASCAR race. To establish plaintiffs' damages claim, the court found that profits and revenues from other NASCAR races were relevant. *Id.* "Where, as here, the damages alleged are lost profits from a NASCAR race that never occurred, profits and revenues at other NASCAR races that did occur is pertinent information." *Id.*

Similarly, in *Massachusetts School of Law at Andover v. American Bar Association*, 857 F. Supp. 455, 456 (E.D. Pa. 1994), the plaintiff sued the ABA for antitrust violations stemming from its failure to accredit the law school. The plaintiff was allowed to discover information about how accreditation affected other law schools' competitiveness in the market in order to establish the damages the law school suffered from its own lack of accreditation. *Id.* at 461.

Here, the Pilgrim transaction is comparable to the Indian Point transactions because it shares the same characteristics as those directly at issue in this litigation. In *Potomac Electric Power Co. v. California Union Ins. Co.*, 136 F.R. 1 (D.D.C. 1990), plaintiff sought to recover environmental cleanup costs from its insurance company, and the court found that documents related to the insurance claims for other contaminations were relevant because they involved similar insurance policies, similar breaches of those policies, and the same insurer. Likewise, in the Pilgrim transaction, Boston Edison had entered into an identical SNF contract with the Government, the Government failed to begin disposal of SNF as promised on January 31, 1998, and Entergy purchased the facility after this date with the same certainty that unknown, but significant, costs and risks were to be incurred because of the Government's breach.

The confidential nature of any valuation or transactional document supplies no basis for preventing Con Edison from gaining access to these documents because Entergy is a named party in the Supplemental Protective Order. Courts allow parties access to information related transactions, even when the information is proprietary or confidential, as long as the production of these documents is subject to a protective order. *See, e.g., Marks v. Global Mortgage Group, Inc.* 218 F.R.D. 492, 497 (S.D. Va.. 2003) (finding documents related to similar loan transactions relevant to plaintiff's fraud claim and ordering production pursuant to the terms of a protective order adequate to protect personal financial information contained in documents); *Mercer v.*

*Allegheny Lundlum Corp.*, 125 F.R.D. 43, 44 (S.D. N.Y. 1989) (finding third party documents related to other transactions concerning defendant corporation relevant to plaintiff's establishment of damages and ordering production pursuant to the terms of a protective order that would to protect the proprietary nature of information).

While the Government claims here that such valuation and transactional documents related to other transactions are irrelevant when Con Edison is requesting them, *the Government has actively sought the* <u>*same*</u> *information* from other SNF plaintiffs. By issuing subpoenas in this case to other SNF plaintiffs requesting "[a]ll documents related to sales comparable to Indian Point or other sales and/or purchases of interests in nuclear power plants . . ." and proceeding similarly in *Boston Edison*, the Government cannot seriously contest the relevance of valuation and transactional documents related to other nuclear sales that Con Edison seeks. *See, e.g.*, Gov't Subpoena Issued to Florida Power & Light Energy, Exh. C, at 9.

**B. Fundamental Fairness Dictates That The Government Should Produce Pilgrim's Discovery Materials To Con Edison.**

Fundamental fairness requires that Con Edison be granted access to all the documents the Government is assembling in its defense of SNF cases that it may use in this case. During the August 28, 2006 discovery conference, where Con Edison sought to revise the protective order to gain access to the very same valuation materials it now seeks in this Motion, this Court made clear that "[w]hether [the documents] prove to be ultimately relevant or irrelevant, fairness would say that each party should have the same information." Transcript of Discovery Conf., *Con Edison v. United States*, No. 04-0033C, at 22 (Fed. Cl. Aug. 28, 2006).

The purpose of the broad discovery allowed under Rule 26(b)(1) is "to allow parties essentially equal access to operative facts." *Scott v. Edinburg*, 101 F. Supp. 2d 1017, 1021 (N.D. Ill. 2000) (ordering defendant to produce psychological evaluation subject to protective order).

The Government has stated its intent to use materials produced by any SNF plaintiff in any SNF case. Def.'s Resp. to Pl.'s Emergency Mot. of Prot. Order and Stay of the Parties' Exchange of Conf. Materials, *Dairyland and Power Cooperative v. United States*, No. 03-2663C (Fed. Cl. filed Aug. 4, 2006). Even in this case, the Government has stated that it "expects that it will need to rely upon materials produced by various SNF plaintiffs that may be designated as subject to the protective order in those respective cases." Def.'s Resp. to Pl.'s Motion for Entry of Supplemental Protective Order and Order Compelling Production of Documents, *Con Edison v, United States*, No. 04-0033, at 10 (Fed Cl. filed Aug. 25, 2006). The Government even insisted the protective order be revised so that there was no question that it allowed for the sharing of documents among all the SNF cases, stating "I believe the intent of everyone was there would be document sharing." Transcript of Discovery Conf., *Con Edison v. United States*, No. 04-0033C, at 24 (Fed. Cl. Aug. 28, 2006).

The Government has repeatedly contended that in SNF cases brought by the buyers of nuclear units sold following the Government's breach, it will use the buyer's own valuation data related to that nuclear facility acquisition to support its entitlement to an "offset" for SNF damages claimed by that buyer. The Government's allegation is apparently that SNF damages anticipated by buyers were imbedded in the transaction terms, "pre-collected" from the sellers, and thus not actually incurred by the buyer.

The Government's argument will recur frequently, since in *every instance* of a post-breach acquisition of a nuclear plant, the buyer has sought SNF damages against the Government in this Court. In pursuing these set-off claims against all of the post-breach buyers of nuclear facilities, the Government has or will discover the plant valuation methodology of every SNF

plaintiff that successfully acquired one or more nuclear units -- which includes five of the companies that expressed interest in acquiring Indian Point.

The Government has recently stated that it no longer "intend[s] to use [in this case] third-party valuation documents related to other nuclear transactions," (Def.'s Resp. to Pl.'s Mot. for Enlargement of Time, filed Jan. 29, 2007). Even if this statement is accepted at face value, there can be no doubt that the Government's understanding of the valuation techniques of various prospective buyers of divested nuclear units will enhance its understanding of these transactions and substantially assist its defense of buyer-seller cases. The Government's position is also plainly inconsistent with the numerous third party Government subpoenas issued in this very case, and the Government's discovery requests both here and in other buyer-seller cases. *See, e.g.,* Gov't Subpoena Issued to Florida Power & Light Entergy, Exh. C, at 9 (Request No. 3 is for "[a]ll documents related to sales comparable to Indian Point or other sales and/or purchases of interests in nuclear power plants . . ."); Def.'s First Request For Prod. of Docs., at 13, *Boston Edison v. United States*, Nos. 99-447C and 03-2626C (Fed. Cl., filed Aug. 9, 2005) (Request No. 26 is for "[a]ll documents assessing the effect of energy market restructuring on the value or prospects of the [Pilgrim] Nuclear Station or the nuclear industry as a whole") (attached as Exh. G); Def.'s Second Request for Prod. of Docs., at 9, *Boston Edison v. United States*, Nos. 99-447C and 03-2626C (Fed. Cl., filed Apr. 4, 2006) (Request No. 3 is for "[a]ll electronic versions of *any plant valuation models prepared by or for any entity* . . .") (attached at Exh. D) (emphasis added).

Although the Government has not yet given Con Edison full access to discovery materials in other buyer-seller SNF cases, this has by no means stopped the Government from relying on documents that Con Edison does not have when it suits the Government's purposes.

In opposing a motion filed by Con Edison, the Government used an Entergy admission, concerning the effect of the Government's breach on the price it paid for Indian Point. This admission goes to the heart of Con Edison's claim, and prior to the Government attaching this document as an exhibit to its January 29, 2007 Response to Plaintiff's Motion for Enlargement of Time, Con Edison had never been given access to this document. The Government's failure to provide Entergy's admission to Con Edison did not stop the Government from using it against Con Edison, and Con Edison needs this Court to ensure that Con Edison has access to the same set of documents as the Government, so something like this will not happen in the future as this case proceeds to trial.

The Government's strategy in defending Con Edison's case will undoubtedly be informed by all the documents it will also rely on in other nuclear plant buyer-seller cases, like *Boston Edison*, including the valuation and transactional documents and expert report and deposition materials. This Court has already stated: "I want to be sure that both parties have access to the same information when it comes time for trial." Transcript of Discovery Conf. *Con Edison v. United States*, No. 04-0033C, at 35 (Fed. Cl. Aug. 28, 2006). This fairness principle requires that Con Edison be given the same documents as the Government, including Pilgrim valuation and transactional documents and expert report and deposition materials in connection with the *Boston Edison* case.

### C. The Government Should Be Precluded From Relying On Any Document Or Information From Any Related SNF Case That Has Not Been Timely Made Available To Con Edison.

If for any reason Con Edison is not granted access to materials from other related buyer-seller SNF cases, this Court should preclude the Government from using, either directly or indirectly, any document or information not previously provided to Con Edison. Pursuant to

RCFC 37(c)(1), "A party that without substantial justification fails to disclose information required by RCFC 26(a) or 26(e)(1), or to amend a prior response to discovery as required by RCFC 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at trial, at a hearing, or on a motion any witness or information not so disclosed." *See, e.g., Sunroof de Mexico v. Webasto Roof Systems*, 2006 WL 1042072, at *1 (E.D. Mich. April 19, 2006) (precluding valuation documents, expert report, or any expert testimony relying on documents from trial where plaintiff failed to produce such documents by the discovery deadline set by court).

The Government claims that it cannot produce discovery materials, testifying expert reports, deposition transcripts, or exhibits generated in *Boston Edison* because "Boston Edison and Entergy have strongly objected, in writing, to our production to Con Ed of any expert reports that were produced by any plaintiff in their cases." (Jan. 11, 2007 letter from H. Lester to D. Churchill, attached as Exh. H, at 3.) If Con Edison is unable gain access to these materials, either through the granting this Motion to Compel or directing production by Entergy, then the Government should be precluded from relying in any way on such materials or information derived therefrom in its defense of Con Edison's claims. Similarly, to the extent that the Government fails to provide Con Edison with any documents it has or will obtain through discovery from other SNF plaintiffs, the Government should be precluded from using those documents or derived information, either directly or indirectly, in this case.

## REQUESTED RELIEF

Con Edison respectfully requests this Court to Compel the Government to provide Con Edison on a continuing basis with access to all documents it obtains through discovery in *Boston Edison*, including Pilgrim valuation and transactional documents and expert reports, deposition

transcripts, and exhibits. Con Edison further requests that this Court order the Government to timely update the SNF production website when it receives discovery materials in related SNF cases, timely notify Con Edison of such updates, and grant Con Edison access to these documents. To the extent the Government fails to provide Con Edison on a timely basis with access to discovery materials from other related SNF cases, including *Boston Edison*, Con Edison requests that this Court preclude the Government from using in any part of its case against Con Edison any such materials or derivatives thereof not produced to Con Edison.

Dated: March 16, 2007

Respectfully submitted,

s/ David A. Churchill
DAVID A. CHURCHILL
Jenner & Block LLP
601 Thirteenth Street, N.W.
Suite 1200 South
Washington, DC 20005
(202) 639-6056
(202) 639-6066 (fax)
COUNSEL FOR PLAINTIFF

Of Counsel:

Brent L. Brandenburg, Esq.
Assistant General Counsel
Consolidated Edison Company
of New York, Inc.
4 Irving Place, Suite 1830
New York, NY 10003
(212) 460-4333

Daniel F. Stenger, Esq.
Hogan & Hartson LLP
Columbia Square
555 Thirteenth Street, N.W.
Washington, DC 20004
(202) 637-5691

Cynthia J. Robertson, Esq.
Jenner & Block LLP
601 Thirteenth Street, N.W.
Suite 1200 South
Washington, DC 20005
(202) 639-6000

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **CONSOLIDATED EDISON COMPANY OF NEW YORK, INC.,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **No. 04-0033C (Judge Wheeler)** |
| **UNITED STATES OF AMERICA,** | ) | |
| **Defendant.** | ) | |

**[PROPOSED] ORDER COMPELLING THE GOVERNMENT TO PRODUCE DOCUMENTS OBTAINED IN RELATED SNF CASE DISCOVERY**

Pending before this Court is Plaintiff's Motion to Compel the Government to Produce Documents Obtained in Related SNF Case Discovery, filed on March 16, 2007. Plaintiff's Motion to Compel is hereby GRANTED.

IT IS HEREBY ORDERED:

1. Within thirty (30) days of this Order, the Government shall produce to Con Edison all valuation documents, transactional documents, expert witness materials, deposition transcripts, and exhibits related to *Boston Edison Company v. United States*, Nos. 99-447C and 03-2626C (Fed. Cl. consol. June 29, 2005).

2. Subject to the terms of the Protective Order and, to the extent requested by the producing parties, the Supplemental Protective Order entered in this case, the Government shall produce to Con Edison all valuation and transactional documents the Government receives from SNF plaintiffs through discovery in related buyer-seller SNF cases no later than sixty (60) days after receiving such materials.

3. The Government shall produce to Con Edison any document from any other SNF case the Government intends to introduce into evidence or rely on in any way in this case no later than sixty (60) days before the Government uses such document.

IT IS SO ORDERED.

THOMAS C. WHEELER
Judge

CERTIFICATE OF FILING

I hereby certify that on March 16, 2007, a copy of the foregoing "Plaintiff's Motion to Compel the Government to Produce Documents Obtained in Related SNF Case Discovery" was filed electronically. I also certify that I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system and that parties may access this filing through this system.

s/ David A. Churchill

David A. Churchill
JENNER & BLOCK, LLP
601 Thirteenth Street, NW, Suite 1200
Washington, DC 20005
(202) 639-6000

*Counsel of Record for*
*Consolidated Edison Company of New York, Inc.*