# Exhibit A

March 10, 2006

**VIA E-MAIL AND U.S. MAIL**

Joshua E. Gardner
Trial Attorney, Commercial Litigation Branch,
Civil Division
U.S. Department of Justice
ATTN: Classification Unit
8th Floor
1100 L Street, N.W.
Washington DC 20530

David A. Churchill
Tel 202 639-6056
Fax 202 637-6370
dchurchill@jenner.com

**Re:** ***Consolidated Edison Company of New York v. United States***
***Case No.* 04-0033**

Dear Josh:

I write regarding our efforts to work cooperatively to obtain the documents and other information sought by Consolidated Edison Company of New York, Inc.'s ("Con Edison's") First Set of Interrogatories and First Request for Production of Documents served on November 30, 2004. The Government responded to Con Edison's first round of discovery on September 23, 2005, and met with Con Edison on January 13, 2006 to discuss those responses. Our particular area of concern for purposes of this letter is the Government's practices in disclosing discovery materials in other spent nuclear fuel cases, and I propose to address other discovery issues separately. It is our hope that we can quickly resolve all such discovery issues and focus our efforts on advancing this case to resolution.

Document Request No. 23 in Con Edison's November 30, 2004 First Request for Production of Documents sought production of the following:

> "Provide all responses which you have propounded or which you have received to discovery requests, including, but not limited to interrogatories, document requests and requests for admissions, for any case to which you have been a party and the Plaintiff has alleged your breach of the Standard Contract."

*First*, at our January 13, 2006 discovery conference, Harv Lester indicated that the Government's production website would likely contain the documents and interrogatory

responses produced by other utility plaintiffs, as well as third party discovery and the Government's own interrogatory responses which have been prepared in the context of SNF litigation. All such materials would be responsive to our document request 23. Based on our review of the website, we have determined that hardly any of this material has been posted. In particular, the website contains only selected written discovery material (CD-ROMs YA 190 and YA654) and some utility-specific material (CD-ROMs YA117, YA118r1, YA123, YA125r1, YA128, YA129, YA131, YA158 and YA462).

We are aware that in response to our document request 23 the Government objected to production of materials produced by other utilities, citing the expense the Government would incur to extract those documents from its databases and to strike privileged information. We do not believe any such objection is well founded given that the Government received this material from the utilities and third parties, free of any basis for Government work product or privilege claims.

It should therefore be an easy matter for the Government to provide a copy of the material requested by Con Edison in 2004 in the form it was initially produced to the Government by the originating source. Con Edison's 2004 discovery request was expressly of a continuing nature, and thus calls for disclosure of requested materials received or generated to date and in the future on an ongoing basis. Based on our understanding of how litigation discovery databases work, it should also be a simple process for your vendor to export and extract this data from your internal databases free of any work product. Furthermore, we note that to the extent the Government expects to rely on such material to support its defense of this lawsuit, it is obligated to provide this material to Con Edison pursuant to Rule 26(a)(1)(B) of the Rules of the Court of Federal Claims ("RCFC").

In light of the fact that this discovery was propounded many months ago, we urge production of this material as expeditiously as possible. While in request 23 we have requested all written discovery and documents received by the Government in SNF cases, our immediate need is to review discovery materials the Government has received or submitted in relation to the

sale or purchase of the Pilgrim, Indian Point Unit 3, Fitzpatrick, Vermont Yankee, and Indian Point 1 and 2 nuclear plants and the associated Standard Contracts for SNF disposal. This request also includes plant purchase and sale materials we understand the Government has received in discovery from Navigant Consulting related to its work on the sale or potential sale of a number of nuclear plants.

*Second*, in its January 16, 2006 initial disclosures, the Government represented that the Government had or would promptly post electronic versions of the depositions of Government employees on its website. We have still not been able to locate that material on the Government's website. Please provide that material as soon as possible.

*Third,* the structure of the production website does not allow us to identify which CD-ROMs have been posted in response to a discovery request from Con Edison, and which documents have been posted in response to a request received from another utility. Con Edison's 2004 request requires that the requested discovery materials be identified by SNF case and party. I am also informed that we have not been receiving notice when new material is added to the website. We ask that you identify which CD-ROMs have been posted in response to Con Edison's document requests, and also notify us when new material is posted so that we both can track and evaluate the progress and completeness of the Government's document production.

*Finally,* the Government's response to document requests 22 and 23 indicates that written discovery material not already on the Government production website will be made available for inspection and copying. Please let us know what materials are covered but not website-posted so that we can promptly inspect and copy that material.

As I have indicated, our ultimate goal is to advance this case toward resolution and to avoid getting bogged down in discovery disputes which do not further that objective. We are under the impression that the Government shares the desire for efficient and productive case development. We are therefore continuing to work diligently to find responsive documents on the Government websites, request your concurrence and cooperation in making this structure

efficient, complete and effective, and reserve the right to raise additional issues should they arise. Please call me if you have any questions.

Sincerely,

David A. Churchill

DAC:

cc: Harold D. Lester, Jr.
Brent L. Brandenburg

# Exhibit B

JENNER&BLOCK

April 18, 2006

Jenner & Block LLP
601 Thirteenth Street, NW
Suite 1200 South
Washington, DC 20005-3823
Tel 202 639-6000
www.jenner.com

Chicago
Dallas
New York
Washington, DC

David A. Churchill
Tel 202 639-6056
Fax 202 637-6370
dchurchill@jenner.com

***VIA FACSIMILE AND REGULAR MAIL***

Harold D. Lester, Jr.
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
National Courts Section
1100 L Street, N.W.
Washington DC 20530

**Re:** ***Consolidated Edison Company of New York v. United States***
***Case No.* 04-0033**

Dear Harv:

I write to respond to your letter dated April 12, 2006, which addressed several discovery issues we have been attempting to resolve. Without ignoring the other issues in your letter (which I will address at a later time), I would like to focus on a key issue that appears under your heading titled, "Copies of Documents Produced By Other SNF Plaintiffs And Other Third Parties," appearing initially on page 3.

We have expressed an immediate need "to review discovery materials the Government has received or submitted in relation to the sale or purchase of the Pilgrim, Indian Point Unit 3, Fitzpatrick, Vermont Yankee, and Indian Point 1 and 2 nuclear plants and the associated Standard Contracts for SNF disposal." March 10, 2006 Letter, at 3. Without these documents, our ability to develop our affirmative case is substantially impaired, and will certainly hinder our ability to meet the approaching deadlines established by the Court.

Despite the obvious relevance of these materials, you object to production on several grounds, none of which is persuasive.

First, you claim that producing more than "three million pages of documents from various SNF plaintiffs and other third parties" is "unduly burdensome." April 12 Letter, at 2. To be clear, we are not interested in the three million documents collectively produced by Plaintiffs in other SNF cases, only those involving the purchase or sale of a nuclear plant. Of the narrowed group of documents we have requested, you state that only Boston Edison Company, Entergy Nuclear Generation Company, and to a limited extent, the Power Authority of the State of New York, have produced documents to the Government thus far.[1] We assume the Government has tracked the source of the documents it has received in discovery, and is able to produce a subset of documents related to particular cases or parties. There is thus no burden in this production.

---

[1] To the extent the Government has not received discovery in the other cases addressed by Con Edison's letter, we request that you identify when discovery is anticipated and supplement buyer/seller document productions to Con Edison when those documents are received.

Second, you object that even producing such a limited subset of documents will not be performed until Con Edison makes clear "the relevance of the entirety of the third-party document production." April 12 Letter, at 4 & n.1. Con Edison has underscored its focus on other SNF buyer/seller industry documents at every stage of this litigation. Since the day that Con Edison filed its complaint, it has consistently maintained that "DOE's failure to perform its statutory and contractual obligations to remove SNF caused a number of potential purchasers for nuclear generating facilities such as Indian Point to be artificially and improperly constrained, thereby reducing the beneficial effects of a competitive auction for these assets." Complaint, at 24 (filed Jan. 13, 2004) (emphasis added).

The relevance of these documents is hardly confusing, contrary to your letter. As I made clear during a recent teleconference with Judge Wheeler and Joshua Gardner, "the factual underpinnings [of our diminished value claim] will come from the various evaluation methodologies that were used throughout the industry, not just by our buyer but throughout the industry at about the time our sale took place." Transcript, at 4 (March 9, 2006). I further indicated that we would be looking for those valuation models from the Government:

> What I do believe [to be] the case, however, is that many of the potential buyers and seller did create valuation methodologies for these various plants that were bought and sold in the timeframe in which we are interested, and the Justice Department, through discovery in these cases, has obtained through discovery of other plaintiffs -- buyers and sellers -- all of these valuation models."

The very quotations you cite from our January 20, 2006 hearing before Judge Wheeler in your April 12 letter make my point. There, I explained that our "theory of the case is not that ENIP paid less, but that the market was depressed in general." I further explained that, "our testimony will be to the effect that the entire market was depressed to the point that whether it was ENIP that ultimately bought this plant or some other company that bought this plant, the entire value of the plant was hugely diminished because of the government's breach of contract in 1998." Transcript, at 45-46 (Jan. 20, 2006). To show that market depression, we need access to buyer/seller valuation models and other documents pertaining to the sale of the nuclear facilities at issue in each case.

We believe that this letter, our previous representations to the Court, our complaint, and our initial disclosures,[2] have made our interest in these documents, and their relevance, abundantly clear. Moreover, the Government's own interest in such documents is manifest by

---

2 Contrary to your representation that Con Edison's initial disclosures were due on Tuesday, April 11, 2006, they were timely submitted on April 12, 2006. *Consolidated Edison Company of New York, Inc., v. United States*, No. 04-0033C, Order, at 1 ("Plaintiff has represented that it will transmit its initial disclosures to Defendant on April 12, 2006.") (unpublished opinion). This is at least the third time that the Government has misstated a due date in correspondence to Con Edison. I am sympathetic to the fact that you have many ongoing cases, but please call me before representing that we have missed a deadline so that I may confirm with you the correct deadline.

the fact that they were sought out in discovery. Since the Government will no doubt attempt to use those documents to test, question and quantify the extent to which its conduct did or did not affect the value of nuclear assets, in Con Edison's case, it would be unfair for the Government to attempt to shield those critical documents from Con Edison's legitimate requests to review them well in advance of trial.

Third, you object that you are constrained in sharing the documents you have received from other SNF plaintiffs because of concerns regarding the proprietary and confidential information contained in other SNF plaintiffs' documents. The parties have had a protective order on file in this case since May 18, 2004, which to our knowledge is a standard form of protective order that has been used in SNF cases. That order expressly proscribes disclosures to non-spent fuel litigants, and hence supplies no basis for objecting to our discovery. To the extent the provisions of this protective order have been superceded, expanded or affected by collateral agreements, we request copies of such other agreements so we can determine whether Con Edison is able to make reasonable accommodations in order to protect the proprietary information in these materials.

We request production of the documents you have received from Boston Edison Company and Entergy Nuclear Generation Company by April 26, 2006. As for the preferred mode of production, we would appreciate continuing to receive productions electronically, as the Government has recognized it has done in the past. April 13 Letter, at 4.

If the Government is unable to meet our proposed deadline, we plan to address this issue with Judge Wheeler, who indicated that questions surrounding our ability to obtain this information from the Government should be resolved "earlier rather than later," Transcript, at 9 (March 9, 2006), given the other deadlines looming in this case.

Thank you for your attention in this matter. Please call me if you have any questions.

Sincerely,

David A. Churchill

DAC

# Exhibit C

# United States Claims Court

Consolidated Edison Company of New York, Inc.,

No. 04-0033C

vs.

THE UNITED STATES

## SUBPOENA

To FPL Energy, LLC, c/o Corporation Trust Company
1209 Orange Street
Wilmington, DE 19801

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):
See Attachment A.

| PLACE | DATE AND TIME |
|---|---|
| Office of the United States Attorney for the Southern District of FLorida<br>500 Australian Ave, 4th Floor, West Palm Beach, FL 33401 | 05/15/2006 4:00 pm |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. RULE 32 (b) (6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| [signature] Attorney for the Defendant | 04/13/2006 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Joshua Gardner, 1100 L. Street N.W., Room 12022, Washington, DC 20005, (202) 305-7583

NOTE - If the place of travel is more than 100 miles (by the shortest usual means of travel) from the place where the subpoena is served, or if the place of deposition is more than 100 miles from the place where the deponent resides, is employed or transacts business in person, the person served may regard the command as optional unless there is attached to the subpoena an order of the Court requiring his/her appearance, notwithstanding the distance of travel. In any event, response to the subpoena will entitle the person to the fees and mileage allowed by law.

PROOF OF SERVICE

| DATE | PLACE |
| --- | --- |
| SERVED | |
| SERVED ON (PRINT NAME) | MANNER OF SERVICE |

☐ Fees tendered for one day's attendance and mileage allowed by law.
(Fees and mileage need not be tendered when the subpoena is issued on behalf of the United States or an officer or agency thereof.)

DECLARATION OF SERVICE

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the proof of Service is true and correct.

Executed on ________________ ______________________________
DATE SIGNATURE OF SERVER

______________________________
ADDRESS OF SERVER

______________________________

RULE 45.

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and reasonable attorney's fees.

(2)(A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)(A) On timely motion, the court shall quash or modify the subpoena if it
(i) fails to allow reasonable time for compliance; or
(ii) requires disclosure of privileged or other protected matter and no exception or waiver

(B) If a subpoena
(i) requires disclosure of a trade secret or other confidential research, development, or commercial information;
or
(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of the party, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party on whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to content the claim

ATTACHMENT A

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| CONSOLIDATED EDISON COMPANY OF NEW YORK, Plaintiff, | ) | |
| v. | ) | No. 04-0033C (Judge Wheeler) |
| UNITED STATES OF AMERICA, Defendant. | ) | |

DEFENDANT'S REQUEST FOR PRODUCTION OF DOCUMENTS

The United States requests that FPL Energy, LLC ("FPL"), produce documents for inspection and copying at the offices of the United States Attorney, as described in the attached subpoena.

I. DEFINITIONS AND INSTRUCTIONS

A. The following definitions apply in responding to these document production requests:

1. The term "document" as used in this production request means any document in the possession, custody, or control of FPL, or its counsel, or known to FPL, or its counsel, and is defined under Rule 34 of the Rules of the United States Court of Federal Claims ("RCFC") to include "writings, drawings, graphs, charts, photographs, phonorecords, and other data compilations from which information can be obtained, translated, if necessary, . . . through data detection devices into reasonably usable form." That definition is applicable in complying with this subpoena, and should be construed in its broadest sense possible, and shall include any and all originals or duplicates of materials containing letters,

words, numbers, or images, or their equivalent, set down by handwriting, typewriting, printing, photostating, magnetic impulse, mechanical or electronic recording, or other form of data compilation. The definition of "document" applicable to this subpoena shall include all writings, tapes, recordings, graphic representations, drawings or printed materials of any kind whatsoever, specifically including electronic media of any kind, however produced or reproduced, and, for the purpose of illustration, is meant to include the following items: correspondence; letters; electronic messages or mail; any form of non-verbal communications (including the internal and external communications of persons employed by or acting on behalf of a particular entity, such as intra- or inter-departmental communications, or intra- or inter-company communications); notes (whether of visits, meetings, telephone calls, or otherwise); memoranda (whether of visits, meetings, telephone calls, or otherwise); appointment calendars; schedules; telegrams; telexes; facsimiles; electronic mail; files; file jackets; press releases; notices; circulars; brochures; pamphlets; guidelines; manuals; instructions; expressions or statements of policy; summaries or abstracts; diaries; notebooks; minutes or other records of meetings or conferences; lists of persons attending meetings or conferences; computer printouts or information stored in a computer-readable form; tests; reports; analyses; studies; working papers; forecasts; statistical statements; testimony; speeches; worksheets; invoices; bills; commercial or negotiable instruments; accounts; written estimates; contracts; agreements of any kind; shipping or receiving documents; purchase orders;

change orders; proposed changes; schedules; plans; charts; diagrams; drawings; graphs; designs; blueprints; tables; conclusions, opinions or reports of consultants or experts, or notes made in or for the preparation of any such conclusions, opinions or reports; opinions of counsel; reports or summaries of interviews, investigations, or negotiations, or notes made in or for the preparation of any such reports or summaries; digital images and graphics; digital or analog audio tapes and files; and digital or analog video tapes and files; photographs; books; articles; any drafts of or extracts from any of the foregoing; and any other tangible things containing information. (The definition of "document" also shall include each copy that is not identical to the original or to any other produced copy, and any preliminary drafts of any documents.)

2. "FPL" means FPL Energy, LLC, and any other former or current affiliated entity and, unless otherwise stated, all present and past employees, agents, partners, and/or representatives of FPL, including counsel, who could reasonably be expected to have personal knowledge that would affect the completeness and accuracy of responses made to this request, as well as, where applicable in context, its parent, subsidiary, or other related or affiliated organizations, and its officers, directors, employees, consultants, representatives and agents, and all other persons acting or purporting to act upon FPL's behalf.

3. "ConEd" means Consolidated Edison Company of New York and any other former or current affiliated entity, and, unless otherwise stated, all present and past employees, agents, partners, and/or representatives of ConEd, including

counsel, who could reasonably be expected to have personal knowledge that would affect the completeness and accuracy of responses made to this request, as well as, where applicable in context, its parent, subsidiary, or other related or affiliated organizations, and its officers, directors, employees, consultants, representatives and agents, and all other persons acting or purporting to act upon ConEd's behalf.

4. "ENIP" means Entergy Nuclear Indian Point 2 and any other former or current affiliated entity, and, unless otherwise stated, all present and past employees, agents, partners, and/or representatives of ENIP, including counsel, who could reasonably be expected to have personal knowledge that would affect the completeness and accuracy of responses made to this request, as well as, where applicable in context, its parent, subsidiary, or other related or affiliated organizations, and its officers, directors, employees, consultants, representatives and agents, and all other persons acting or purporting to act upon ENIP's behalf.

5. "Official," "director," "officer," "employee," "representative," "agency," or "agent" shall include any person, natural, corporate, or otherwise, including any attorney, serving or acting in such capacity (by contract or otherwise) at any relevant time even though such person no longer serves or acts in such capacity.

6. "Relating to" means containing, constituting, discussing, describing, identifying, referring to, supporting, explaining, contradicting, and/or in any way pertaining to the subject specified.

7. "Plaintiffs," "ConEd," and "ENIP," shall refer to the plaintiffs in Consolidated Edison Company of New York v. United States, No. 04-0033C (Fed. Cl.), and Entergy Nuclear Indian Point 2, LLC v. United States, No. 03-2622C (Fed. Cl.), as well as their present or former officers, employees, agents, attorneys, or representatives and every person acting upon their behalf and/or connected with plaintiffs in the context of the matters at issue in this action.

8. "DOE" refers to the United States Department of Energy.

9. The term "Standard Contract" refers to the "Standard Contract For Disposal Of Spent Nuclear Fuel And/Or High-Level Radioactive Waste," the terms of which are published at 10 C.F.R. § 961.11.

10. "HLW" refers to high-level radioactive waste as defined in Article I, clause 12, of the Standard Contract.

11. "SNF" refers to spent nuclear fuel as defined in Article I, clause 18, of the Standard Contract.

12. "Indian Point" refers to Indian Point 1 Nuclear Power Station and Indian Point 2 Nuclear Power Station.

B. To bring within the scope of these discovery requests all information and documents that might otherwise be construed to be outside their scope:

1. The singular of each word shall be construed to include its plural and vice versa, and the root word and all forms thereof (i.e., participles and infinitives, etc.) shall be construed to include each other;

2. "And" as well as "or" shall be construed both conjunctively as well as disjunctively;

3. "Each" shall be construed to include "all," and vice versa;

4. "Any" shall be construed to include "all," and vice versa;

5. The present tense shall be construed to include the past tense, and vice versa;

6. "Knowledge," "information," "possession," "custody," and "control" possessed or exercised by a person shall be construed to include "knowledge," "information," "possession," "custody," and "control" possessed or exercised by such person's agents, representatives, and attorneys;

7. "Include" and "including" shall have their ordinary meaning and shall mean "including, but not limited to;"

8. In general, all terms used herein shall be construed in an ordinary, common-sense manner, and not in a technical, strained, overly-literal, or otherwise restrictive manner.

C. In responding to these document requests, furnish all documents, however obtained, including hearsay, that are within your possession, custody, and/or control, including documents in the possession, custody, or control of, yourself, or any of your officials, directors, officers, employees, agents, investigators, consultants, or attorneys.

D. If you cannot respond to the following document production requests in full after exercising due diligence to secure the documents, so state, and respond to the extent possible.

Explain in detail the reasons for your inability to fully respond, and identify whatever responsive documents you may have.

E. Provide separate responses for each document production request.

F. To the extent that you consider any of the following discovery requests, or their subparts, to be objectionable, answer that portion of the request, or subpart, to which you have no objection and separately state the portion of the document request, or subpart, to which you object and state with specificity all grounds for your objection. If you object to a request upon the ground that to provide the requested documents would constitute an undue burden, provide all requested documents that can be supplied without undertaking an undue burden. For those portions of a request to which you object or otherwise decline to answer, state the reason for such objection or declination.

G. Each request herein constitutes a request that each document referred to, or a true, complete, and legible copy thereof, be produced, on the designated date and at the designated time, to defendant's undersigned counsel, at the offices of the United States Attorney for the Southern District of Florida, 500 Australian Avenue, Fourth Floor, West Palm Beach, Florida 33401, for the purpose of inspection and copying in accordance with RCFC 45. Each document request seeks documents that are in any way in your possession, custody, or control, including the possession, custody, or control of your attorneys, or to which any of your attorneys have, or have had, access. If a requested document was, but no longer is, in your possession, custody, or control, identify the document and identify the present location and custodian of the document, or if such information is unavailable, identify the last known location and custodian of the

document, and explain the circumstances under which the document left your possession, custody, or control.

DEFENDANT'S DOCUMENT REQUESTS

REQUEST NO. 1

All financial valuation models concerning the Indian Point assets, including, but not limited to, supporting analyses and inputs to the model such as historical and projected financial data and business plans.

REQUEST NO. 2

All valuations, both those conducted by FPL and those conducted by third parties, related to the assessment of the operating life of Indian Point, including all analyses of license extensions.

REQUEST NO. 3

All documents related to sales comparable to Indian Point or other sales and/or purchases of interests in nuclear power plants, including, but not limited to, a description of the assets, details on the sale mechanism (*i.e.*, whether the sale was effected through an auction, the number of bidders, the number of bids, and the type of auction, among other things), and transaction price.

REQUEST NO. 4

In relation to the auction by which ConEd's interest in Indian Point was sold, all documents related to the decision to submit a bid, the actual bids submitted, documents discussing bidding strategy and approval of bids and supporting analyses.

REQUEST NO. 5

All documents assessing the effect of DOE's delay in the acceptance of SNF and/or HLW on the value of Indian Point.

REQUEST NO. 6

In connection with documents related to the expression of interest in the Indian Point facilities, all documents related to the inclusion or non-inclusion of costs and risks associated with adding additional SNF storage at the Indian Point facility.

REQUEST NO. 7

All documents assessing the outcome of ConEd's auction concerning the sale of the Indian Point facilities, including, but not limited to, comparisons between the successful bid and FPL's valuation or bid.