# Exhibit G

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| BOSTON EDISON COMPANY<br><br>Plaintiff,<br><br>v.<br>UNITED STATES,<br><br>Defendant. | ) | |
| | ) | No. 99-447C<br>No. 03-2626C<br>(Judge Lettow) |
| ENTERGY NUCLEAR GENERATION CO.,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | ) | |

DEFENDANT'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS

Pursuant to Rule 34 of the Rules of the United States Court of Federal Claims, defendant, the United States, hereby requests that plaintiffs, Boston Edison Company ("Boston Edison") and Entergy Nuclear Generation Company ("Entergy"), produce all documents in their possession, custody, and/or control, or otherwise available to plaintiffs, that are responsive to the requests in the numbered paragraphs below and that plaintiffs produce them within 30 days after service of these requests. Because these requests for production are continuing, they require supplemental response if plaintiffs obtain additional information and/or discover additional documents after service of their original response. Such supplemental responses shall be served from time to time, but not later than 10 days after such additional information has been obtained.

**DEFINITIONS AND INSTRUCTIONS**

A. The following definitions apply in responding to these document production requests:

1. "Plaintiffs," "Boston Edison," "Entergy," "you," "your," and "yourselves" shall refer to the plaintiffs in these actions, as well as their present or former officers, employees, agents, attorneys, or representatives and every person acting upon their behalf and/or connected with plaintiffs in the context of the matters at issue in this action.

2. "Person" and "individual" shall include any natural person, corporation (private or governmental), subsidiaries, syndicate, trust, partnership, proprietorship, firm, group, association, joint venture, governmental or other public entity or agency, or any other form of organization or legal entity, and all respective officials, directors, officers, employees, representatives, independent contractors, investigators, consultants, agencies, or agents, whether or not still alive or in existence.

3. "Official," "director," "officer," "employee," "representative," "agency," or "agent" shall include any person, natural, corporate, or otherwise, including any attorney, serving or acting in such capacity (by contract or otherwise) at any relevant time even though such person no longer serves or acts in such capacity.

4. "Document" shall be construed in the broadest sense possible under RCFC 34 and shall include the original and any copy of any and all writings as that term is defined in Federal Rule of Evidence 1001, and all written, typed, printed, recorded, graphic, computer-generated, or other matter of any kind from which information can be derived, whether produced, reproduced, or stored on paper, cards, tape, film, electronic facsimile, computer

storage devices, or any other medium in your possession, custody, or control, or whose existence is or was ever known to you, including but not limited to: correspondence, letters, notes (whether of visits, meetings, telephone calls, or otherwise), memoranda (whether of visits, meetings, telephone calls, or otherwise), appointment calendars, schedules, telegrams, telexes, facsimiles, electronic mail, press releases, notices, brochures, pamphlets, guidelines, manuals, instructions, summaries or abstracts, diaries, notebooks, minutes, computer printouts or information stored in a computer-readable form, tests, reports, files, file jackets, analyses, studies, testimony, speeches, worksheets, invoices, bills, written estimates, contracts, agreements of any kind, purchase orders, change orders, proposed changes, schedules, plans, charts, diagrams, drawings, graphs, designs, blueprints, tables, photographs, books, articles, or extracts from any of the foregoing, and any other writings or documentary materials of any nature whatsoever, whether or not divulged to other parties, together with any attachments thereto and enclosures therewith. These requests encompass all forms and manifestations of electronically or optically coded, stored, and/or retrievable information, including, but not limited to, digital images and graphics, digital or analog audio tapes and files, and digital or analog video tapes and files. The term "document" or "documents" also shall include each copy that is not identical to the original or to any other produced copy, and any preliminary drafts of any documents or any working papers related thereto, and specifically includes internal memoranda.

5. "Relating to" means containing, constituting, discussing, describing, identifying, referring to, supporting, explaining, contradicting, and/or in any way pertaining to the subject specified.

6. "DOE" refers to the United States Department of Energy.

7. The term "Standard Contract" refers to the "Standard Contract For Disposal Of Spent Nuclear Fuel And/Or High-Level Radioactive Waste," the terms of which are published at 10 C.F.R. § 961.11.

8. "HLW" refers to high-level radioactive waste as defined in Article I, clause 12, of the Standard Contract.

9. "SNF" refers to spent nuclear fuel as defined in Article I, clause 18, of the Standard Contract.

10. "GTCC" refers to Greater-Than-Class-C waste, which is radioactive waste that exceeds the concentration limits of radionuclides established for Class C waste in 10 C.F.R. § 61.55.

11. "Re-racking" means the process by which additional and/or space-conserving racks are added to the spent fuel pool as a means of increasing SNF storage capacity.

12. "Nuclear Station" refers to Pilgrim Nuclear Power Station.

13. "Entergy" refers to Entergy Nuclear Generation Co., and any of its predecessors or successors in interest.

B. To bring within the scope of these requests all information and documents that might otherwise be construed to be outside their scope:

1. The singular of each word shall be construed to include its plural and vice versa, and the root word and all forms thereof (*i.e.*, participles and infinitives, *etc.*) shall be construed to include each other;

2. "And" as well as "or" shall be construed both conjunctively as well as disjunctively;




WDM0020018

3. "Each" shall be construed to include "all," and vice versa;

4. "Any" shall be construed to include "all," and vice versa;

5. The present tense shall be construed to include the past tense, and vice versa;

6. The masculine shall be construed to include the feminine, and vice versa;

7. "Knowledge," "information," "possession," "custody," and "control" possessed or exercised by a person shall be construed to include "knowledge," "information," "possession," "custody," and "control" possessed or exercised by such person's agents, representatives, and attorneys;

8. "Include" and "including" shall have their ordinary meaning and shall mean "including, but not limited to;"

9. In general, all terms used herein shall be construed in an ordinary, common-sense manner, and not in a technical, strained, overly literal, or otherwise restrictive manner.

C. If plaintiffs cannot answer the following document requests in full after exercising due diligence to secure the information, so state, and answer to the extent possible. Explain in detail the reasons for plaintiffs' inability to answer the remainder, and identify whatever information or knowledge plaintiffs have concerning the unanswered portion.

D. Where exact statistical or numerical information, including dates or times, cannot be furnished, estimated or approximate information shall be supplied. Where an estimate or approximation is supplied, it should be so indicated, and an explanation provided as to the basis

upon which the estimate or approximation was made. State the reason(s) why exact statistical or numerical information cannot be furnished.

E. Each request herein constitutes a request that each document referred to, or a true, complete, and legible copy thereof, be produced, during business hours and upon appropriate notice, to defendant's undersigned counsel, at the offices of the Department of Justice, 1100 L Street, N.W., Washington, D.C. 20530, within the time provided in RCFC 34, or at such other time or place as may be agreed upon by plaintiffs and the United States, for the purpose of inspection and copying in accordance with RCFC 34. Each document request seeks documents that are in any way in your possession, custody, or control, including the possession, custody, or control of your attorneys, or to which any of your attorneys have, or have had, access. If a requested document was, but no longer is, in your possession, custody, or control, identify the document and identify the present location and custodian of the document, or if such information is unavailable, identify the last known location and custodian of the document, and explain the circumstances under which the document left your possession, custody, or control.

F. If you believe that any of the following requests for production calls for the production of documents that you claim contain privileged material, produce so much of the document(s) as is not objected to, and set forth, with respect to each such document as to which a claim of privilege is asserted, the nature of the privilege claimed (*e.g.*, attorney-client and/or work product privileges) and all the reasons upon which you base the claim of privilege. For each document or part of a document as to which you claim privilege, state:

1. The date thereof;

2. The type, title, and subject matter of the document, sufficient to assess whether the assertion of privilege is valid;

3. The name of the person or persons who prepared or signed the document;

4. The name and positions of all intended and actual recipients of the document;

5. Each person now in possession of the original or a copy of the document;

6. If not previously identified, the nature of the privilege being claimed and all facts relevant to the claim; and

7. The number of the document request to which the document is responsive.

G. Notwithstanding a claim that a document is privileged, any document so withheld must be produced with the portion claimed to be protected excised. If, for reasons other than a claim of privilege, you refuse to produce any documents described herein, state the grounds upon which the refusal is based with sufficient specificity to permit a determination of the propriety of such refusal. In the event that you object to any document production request upon the ground that it is too broad (*i.e.*, that it calls both for information which is relevant to the subject matter of the action and information which is not relevant), provide the information that is relevant. If you object to a document production request upon the ground that to provide the document(s) would constitute an undue burden, provide all requested documents that can be supplied without undertaking an undue burden.

H. Unless indicated otherwise in the specific document request, these requests call for information and documents beginning in 1980 up to the present.

I. To the extent you believe information or documents responsive to these document requests has already been produced to the Government by plaintiffs, identify with specificity where in the prior production the information or documents may be found.

**REQUESTS FOR PRODUCTION**

REQUEST NO. 1

All documents relating to the operations and maintenance associated with wet storage at the Nuclear Station, including all documents relating to personnel and staffing for wet pool operations and the costs associated with wet pool operations at the Nuclear Station

REQUEST NO. 2

All documents relating to the presence of high burn-up fuel, failed fuel, non-standard fuel, other than standard fuel, and/or GTCC radioactive waste at the Nuclear Station.

REQUEST NO. 3

All documents relating to decommissioning of the Nuclear Station, including all decommissioning studies, regardless of whether they were developed by plaintiffs or outside contractors.

REQUEST NO. 4

All investigations, analyses, and/or studies of additional or alternative storage options for SNF and/or HLW at the Nuclear Station.

REQUEST NO. 5

All spent fuel management studies produced by or upon behalf of plaintiffs.

REQUEST NO. 6

All documents relating to the following areas of information regarding the spent fuel pool at the Nuclear Station: capacity, including license capacity; historical changes in capacity; current inventory (including data relating to the type and composition of the material in the spent fuel pool, as well as details about burn-up and enrichment of the material in the pool); and

specific identification (both in type and amount) of materials other than SNF that are stored in the pool.

REQUEST NO. 7

All documents relating to any studies or analyses relating to the total storage capacity of the pool at the Nuclear Station and when that capacity would be reached.

REQUEST NO. 8

All documents relating to any re-racking at the Nuclear Station including, but not limited to, memoranda, notes, letters, or printed e-mails relating to any decisions concerning re-racking and the extent of any actual or potential re-racking.

REQUEST NO. 9

All documents relating to whether the pool at the Nuclear Station could have been re-racked and any estimates as to the costs of any re-racking efforts.

REQUEST NO. 10

All documents identifying plaintiffs' understanding of the term full core reserve as it relates to the pool at the Nuclear Station, and/or plaintiffs' policies regarding the full core reserve.

REQUEST NO. 11

All documents supporting, refuting, or otherwise relating to plaintiffs' alleged damages.

REQUEST NO. 12

All documents relating to assignments or purported assignments of the Standard Contracts relating to the Nuclear Station, of SNF and/or HLW at the Nuclear Station, and/or of any claims arising out of the Standard Contract to any third parties.

REQUEST NO. 13

All documents, including all documents submitted to the Federal Energy Regulatory Commission, the Nuclear Regulatory Commission, state regulatory commissions, other utilities, and any other third parties, that relate to proposed, submitted, approved, or disapproved delivery commitment schedules for SNF and/or HLW at the Nuclear Station.

REQUEST NO. 14

All documents relating to the exchange of delivery commitment schedules among utilities.

REQUEST NO. 15

All documents relating to DOE's obligation to accept GTCC radioactive waste.

REQUEST NO. 16

All documents relating to DOE's responsibilities with respect to the timing, rate, and scheduling of acceptance of SNF and/or HLW from utilities under the Standard Contract and the Nuclear Waste Policy Act.

REQUEST NO. 17

All documents relating to, referring to, or associated with the promulgation and/or formation of the Standard Contract, including all documents prepared by or upon behalf of Boston Edison concerning the promulgation and/or formation of the Standard Contract.

REQUEST NO. 18

All drafts of the Standard Contract.

REQUEST NO. 19

All comments regarding the Standard Contract or proposed changes to the Standard Contract to or from nuclear industry groups or other third parties.

REQUEST NO. 20

All asset purchase and sale agreements relating to Boston Edison's sale of its interests in the Nuclear Station to Entergy.

REQUEST NO. 21

All documents related to the negotiation and/or sale of the Nuclear Station.

REQUEST NO. 22

All documents related to the public auctions for Boston Edison's generating assets, such as Boston Edison's fossil fuel generating assets, including but not limited to the sale of fossil assets described in paragraph 8 of the July 6, 2004 affidavit of Geoffrey O. Lubbock.

REQUEST NO. 23

All due diligence and/or valuation documents related to the Nuclear Station's assets in general, and Boston Edison's assets in particular, both in the context of the competitive auction through which Boston Edison's interests in the Nuclear Station were sold, and at any other point in time.

REQUEST NO. 24

All documents assessing the prospects of the Nuclear Station or the nuclear industry in general between 1990 and 2005, including discussions of the competitiveness of nuclear energy relative to other sources of power generation, the regulatory environment, safety issues, and Government subsidies to the nuclear industry.

REQUEST NO. 25

All valuations, both those conducted internally and by third parties, related to the assessment of the operating life of the Nuclear Station, including all analyses of license extensions.

REQUEST NO. 26

All documents assessing the effect of energy market restructuring on the value or prospects of the Nuclear Station or the nuclear industry in general.

REQUEST NO. 27

All documents assessing the effect of DOE's delay in the acceptance of SNF and/or HLW on the value of the Nuclear Station.

REQUEST NO. 28

All documents related to Boston Edison's contention that potential bidders were discouraged from bidding on the Nuclear Station because of the Government's delay in the acceptance of SNF and/or HLW, including but not limited to assertions made in paragraphs 10-11 of the July 6, 2004 affidavit of Geoffrey O. Lubbock.

REQUEST NO. 29

All documents produced in the normal course of business related to the plaintiffs' business plans concerning the sale and/or purchase of Boston Edison's interest in the Nuclear Station.

REQUEST NO. 30

All documents related to comparable or other sales and/or purchases of interests in nuclear power plants, including a description of the assets, details on the sale mechanism (i.e., if

an auction, the number of bidders, number of bids, the type of auction, the presence of a "matching clause" for majority interest owners), and transaction price.

REQUEST NO. 31

All documents related to the auction by which Boston Edison's interest in the Nuclear Station were sold, including the structure of the auction, its rules, the expressions of interests by prospective purchasers, the auction participants' identities, their actual bids, and the timing of the bids, including but not limited to, the auction process described in paragraphs 8-11 of the July 6, 2004 affidavit of Geoffrey O. Lubbock.

REQUEST NO. 32

All documents related to the sale of Boston Edison's interest in the Nuclear Station and the characteristics of the transaction, including the terms of the transaction and the type of payment.

REQUEST NO. 33

All communications between plaintiffs related to the sale of Boston Edison's interests in the Nuclear Station.

REQUEST NO. 34

All documents related to plaintiffs' estimated market value of the Nuclear Station, whether prior to or subsequent to the dates of the sale of Boston Edison's interests in the Nuclear Station.

REQUEST NO. 35

All documents related to the discussion of matters and issues raised by prospective buyers of the Nuclear Station referenced in paragraphs 11-12 of the July 6, 2004 affidavit of Geoffrey Lubbock.

REQUEST NO. 36

All documents related to the payment of fees to the Nuclear Waste Fund by Boston Edison to DOE, referenced in paragraph number 6 of the July 6, 2004 affidavit of Geoffrey Lubbock.

REQUEST NO. 37

All documents supporting Boston Edison's contention that the fees paid by commercial utilities pursuant to the Nuclear Waste Policy Act would either terminate or be reduced significantly after a permanent Federal repository was constructed.

REQUEST NO. 38

All documents relating to the value of the land upon which the SNF generated at the Nuclear Station was located, both before and after Boston Edison's sale of its interest in the Nuclear Station, including any rents received and any property taxes paid upon that land.

REQUEST NO. 39

All documents analyzing the costs that would have been incurred by Boston Edison and/or Entergy for SNF and/or HLW storage or transfer of SNF to DOE if DOE had commenced SNF acceptance from nuclear utilities and/or from Boston Edison in 1998.

REQUEST NO. 40

All documents relating to meetings held by plaintiffs' governing boards and committees, including minutes and transcripts of minutes related to the Nuclear Station, from January 1995 to January 2002.

REQUEST NO. 41

All documents, including all documents submitted to the Federal Energy Regulatory Commission, the Nuclear Regulatory Commission, state regulatory commissions, other utilities, and any other third parties, relating to extensions of the operating licenses for the Nuclear Station.

REQUEST NO. 42

All documents relating to Boston Edison's contention that the costs and risks associated with installing dry cask storage facilities at the Nuclear Station was included in Entergy's valuation(s) of the Nuclear Station.

REQUEST NO. 43

All documents relating to Entergy's expectations or assumptions for future dry storage or re-racking at the time it purchased the Nuclear Station from Boston Edison.

REQUEST NO. 44

All cost studies and other documents reflecting the values of the Nuclear Station absent the Government's inability to begin acceptance of SNF and/or HLW by January 31, 1998.

REQUEST NO. 45

All documents relating to the alleged increased costs and expenditures incurred by Boston Edison to store SNF and/or HLW up to the closing date of the sale of its interests in the Nuclear Station.

REQUEST NO. 46

All financial statements and other financial information related to the operation of the Nuclear Station between 1995 and 2005.


WDM0020031

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

HAROLD D. LESTER, JR.
Assistant Director

ALAN J. LO RE
Senior Trial Counsel
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
1100 L Street, N.W.
ATTN: Classification Unit, 8th Floor
Washington, D.C. 20530
Tel: 202-307-0226
Fax: 202-307-2503

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

August 9, 2005

CERTIFICATE OF SERVICE

I certify under penalty of perjury that on this 9th day of August, 2005, I caused to be served by federal express "DEFENDANT'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS," addressed as follows:

RICHARD J. CONWAY
Dickstein Shapiro Morin & Oshinsky LLP
2101 L Street, N.W.
Washington, D.C. 20037

ALEX D. TOMASZCZUK
Pillsbury Winthrop Shaw Pittman LLP
1650 Tysons Blvd
McLean, VA 22102-4859

# Exhibit H

**U.S. Department of Justice**

Civil Division

*Washington, D.C. 20530*

**IMPORTANT**: This facsimile is intended only for the use of the individual or entity to which it is addressed. It may contain information that is privileged, confidential, or otherwise protected from disclosure under applicable law. If the reader of this transmission is not the intended recipient or the employee or agent responsible for delivering the transmission to the intended recipient, you are hereby notified that any dissemination, distribution, copying or use of this transmission or its contents is strictly prohibited. If you have received this transmission in error, please notify us by telephone and return the original transmission to us at the address given below.

**DATE:** January 11, 2007

**TO:** **DAVID A. CHURCHILL**
**CYNTHIA J. ROBERTSON**
Fax No. (202) 637-6370

**FROM:** **HAROLD D. LESTER, JR.**
Department of Justice
Civil Division
Commercial Litigation Branch
National Courts Section
1100 L Street, N.W.
Washington, D.C. 20530
Fax No. 202-307-2503
Voice No. 202-616-0478

**PAGES SENT (INCLUDING COVER SHEET):** 7

**COMMENTS:** Consolidated Edison Co. of New York v. United States, No. 04-0033C (Court of Federal Claims)

U.S. Department of Justice

Civil Division

PDK:DMC:HDL
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

Telephone:
(202) 616-0478

Washington, D.C. 20530

January 11, 2007

VIA TELECOPY AND FIRST CLASS MAIL

David A. Churchill
Jenner & Block LLP
601 Thirteenth Street, N.W.
Suite 1200 South
Washington, D.C. 20005-3823

Re: *Consolidated Edison Co. of New York v. United States*, No. 04-0033C (Fed. Cl.)

Dear Mr. Churchill:

This letter is in response to your letter dated November 30, 2006, in which you indicate your belief that the Government's reproduction to Consolidated Edison Company ("ConEd") of documents that the Department of Justice obtained from other plaintiffs in other spent nuclear fuel ("SNF") cases during discovery is somehow incomplete. After having asked our litigation support contractor to investigate some of the more technical issues identified in your letter, as well as the complaints about possibly incomplete past productions, we address below the concerns that you identified in the same order in which you identified them.

First, you complain that the Government, through discovery in Entergy Nuclear Indian Point 2 v. United States, No. 03-2622C (Fed. Cl.), should have obtained valuation documents from Entergy Nuclear Indian Point 2 ("ENIP") regarding ENIP's purchase of the Indian Point facility and that we have not provided those documents to you. Contrary to your understanding, on September 19, 2006, we provided to you single-page tiff images, endorsed with the protective order legend, representing the entirety of the documents that ENIP provided to us with its August 3, 2006 response to our first request for production of documents. The images were Bates-stamp numbered as ENP001 0001 through ENP 001 9714. In its response to Document Production Request Nos. 19, 21-23, 29-30, and 33-34, ENIP represented that it had included valuation documents related to the Indian Point 2 site, stated that we should also "see plaintiff's response to request no. 17." ENIP's response to Document Production Request No. 17 appears to include six .pdf files labeled SFL-ACQS-0017 through SFL-ACQS-0022, and those documents are found

on the production CD that we provided to you at ENP001 1082 through ENP001 1126. As part of its response to Document Production Request Nos. 19, 21-23, 29-30, and 33-34, ENIP stated that it would also "make available for on-site inspection in Jackson, MS, several linear feet of due diligence documentation that may support the purchase and sale agreement." However, we have not yet traveled to Jackson, Mississippi, to review those documents. Accordingly, at this time, we have produced all documents that ENIP has provided to us in response to our document production requests. As a result, your concerns that we have not done so are misplaced.

Second, you represent that, with regard to a detailed listing of documents that Entergy Nuclear Generation Company ("ENGC") provided to the Government in response to discovery (a copy of which is attached to your November 30, 2006 letter as Attachment 1), you have been unable to match ENGC's listing of documents that ENGC provided to us with the documents that we received from Entergy and reproduced to you. However, we, too, have had great difficulty in matching the list to which you refer with the documents that ENGC produced to us. In any event, we provided to you all of the information that we have that could assist in matching the documents identified in ENGC's detailed listing with the documents that ENGC produced.

On September 18, 2006, we produced to you single-page tiff images, endorsed with a protective order legend, representing ENGC's September 27, 2005 response to our document production requests in Entergy Nuclear Generation Co. v. United States, No. 03-2626C (Fed. Cl.). ENGC provided 30,316 images to us, with a unique "code" or Bates-stamp number at the bottom corner of each document.[1] That ENGC-supplied Bates-stamp number is in the same format as that in the lower right-hand corner of the list to which you referred (Attachment 1 to your November 30, 2006 letter), which, on the first page of that document, reads "ENGC/BECO DOE 1ST RFP-21-1." However, in its written responses and on the detailed listing, ENGC did not identify documents by reference to this Bates-stamp number, but instead identified its responses by .pdf file name and assigned a .pdf document number to each response document in its production. To complicate matters, ENGC grouped its documents within single .pdf files not endorsed with the .pdf file name or number, but with the ENGC-supplied Bates-stamp number. For example, a Pilgrim facility valuation document endorsed as "ENGC/BECO DOE 1st RFP-21-100 through ENGC/BECO DOE 1st RFP-21-117" is identified at the first entry on the list in Attachment 1 of your November 30, 2006 letter as "Box 1 Internal Correspondence DOC2.pdf - Valuation." The actual .pdf file is found on ENGC's production disc labeled "Disk 3B," and the file is named "Internal Correspondence_B."

We have included all of the information that we have relating to the production disc label and file name associated with each document in a footer that we added at the bottom of each

---

[1] There was one corrupt file on one of their original production CDs: "Pilgrim BX 2 Data Requests_B." We have not been able to obtain a copy of that document.

page produced to you.[2] Accordingly, you have all of the same information that we have to assist in attempting to correlate the list in Attachment 1 to your November 30, 2006 letter and the actual documents that have been produced to you.

Third, you request that we provide you with copies of the expert reports that we received from the plaintiffs in Boston Edison Co. v. United States, No. 99-447C (Fed. Cl.), and Entergy Nuclear Generation Co. v. United States, No. 03-2626C (Fed. Cl.), as well as related deposition transcripts. After you made your initial request to us for these documents, we learned that you previously had attempted to obtain these documents from the other plaintiffs, but that the other plaintiffs had refused. In your request to us for these documents, you did not mention that the other plaintiffs had strongly objected to any such production. Since that time, we were made aware of these objections by the objecting nuclear utility plaintiffs. ConEd's effort to place the Government in the middle of ConEd's disputes with other plaintiffs regarding access to other plaintiffs' proprietary materials, over the objections of those other plaintiffs and without notice to the Government of those objections, is unfair. As you know, both Boston Edison Company and Entergy have strongly objected, in writing, to our production to ConEd of any expert reports that were produced by any plaintiff in their cases. Because of these objections, because the materials that you seek were obtained by the Department of Justice only through discovery in litigation in other cases rather than as a part of the Department of Energy's contract activities and communications, and because of the seeming lack of relevance of this information to ConEd's case, it seems appropriate to continue to involve these other plaintiffs in any resolution of this dispute and, in fact, for the separate nuclear utility plaintiffs to attempt to reach agreement and resolve this dispute among themselves. Further, with regard to deposition transcripts of experts in those cases, to the extent that the objecting plaintiffs permit ConEd's access to those materials, ConEd can purchase those documents from the court reporting services who took those depositions, just as the United States purchased them.

Fourth, you express a concern about two documents that we obtained from Dominion Resources, Inc. ("DRI"), in a heavily redacted form. However, we produced to you the documents in the same form that we received them from DRI; that is, we were provided with heavily redacted documents, and we provided you with copies of the same heavily redacted documents that we received. To the extent that you believe that DRI should not have redacted its documents, ConEd is more than able to serve a third-party subpoena upon DRI and to complain to the Court if DRI does not respond in a manner that ConEd deems appropriate. However, ConEd has no basis for attempting to require the Government to obtain additional documents from DRI through discovery for ConEd's use.

Fifth, you assert that, based upon your review of the third-party material that we obtained from other plaintiffs in litigation and reproduced to you, you could not locate "comprehensive

---

[2] In that footer, we also added our own unique Bates-stamp number for each document and the protective order legend that ENGC had informed us, by letter sent with the original document production, should apply to all of the documents.

plant valuation materials emanating from Constellation, Florida Power & Light, or AmerGen, all of whom successfully acquired divested nuclear units and received subpoenas from [us] in April 2006" in Boston Edison Co. v. United States, No. 99-447C (Fed. Cl.). With regard to your complaints about Constellation and Florida Power & Light, we have provided to you the documents that we received from Constellation and from Florida Power & Light. If ConEd does not believe that these documents are sufficiently or fully responsive to the Government's subpoenas, ConEd has no basis to complain or seek to force the Government to challenge those entities' responses. Nevertheless, ConEd has already served its own subpoenas on these two entities and, if it does not believe that it has obtained sufficient responses, can challenge the responses' completeness.

With regard to AmerGen, in producing third-party documents to ConEd, we based our production on the list of entities identified in the protective order that ConEd submitted to the Court and that the Court entered on September 1, 2006. Unfortunately, because AmerGen is not identified in that list, we did not identify the AmerGen documents when we were responding to ConEd's requests for production of documents. We do not have a great deal of information from AmerGen, having been provided with 1,339 pages that AmerGen produced to Boston Edison Company in response to the plaintiff's third-party subpoena in the Boston Edison case. Assuming your agreement to seek leave to add AmerGen to the supplemental protective order in this case, we can make those pages available to you. Nevertheless, we note that ConEd has served a third-party subpoena upon AmerGen encompassing documents relating to AmerGen's bidding upon the Pilgrim facility, which are presumably the same documents that were provided to us, and, presumably, ConEd can take appropriate action if it believes that AmerGen has not appropriately responded to its subpoena.

Sixth, you state that you have not been able to locate the Government's written discovery requests to other spent nuclear fuel plaintiffs in other cases. The Government's written discovery materials are posted on the Government's production website in the following CDs and containers and noted as such on the posted production website index: CD YA190, Container WDM001; CD YA654, Container WDM002; and CD YA840, Container WDM003.

In your November 30, 2006 letter, you seem to suggest that the United States should be taking discovery in a manner that benefits ConEd and the development of ConEd's claims in this case. As an initial matter, we still do not understand the relevance of any of the materials that ConEd is seeking from the Government relating to other sales of other nuclear reactors unrelated to ConEd's reactor by other purchasers in other purchase and sales transactions. This case is about the sale of ConEd's reactor and the reasons that Entergy paid the amount that it paid, not about the sales of all other nuclear reactors in the United States. We have attempted to be cooperative with ConEd in reproducing to ConEd, at the Government's expense, document productions that we have obtained from other spent nuclear fuel plaintiffs in other cases, despite the seeming irrelevance of these materials and despite the fact that none of these materials came from the files of any Federal agency involved in the matters underlying this litigation. Given the

lack of relevance of these other unrelated transactions to ConEd's sale, these efforts seem wasteful.

In any event, ConEd's insistence that we must, each time we receive a document production from another spent nuclear fuel plaintiff, bear the expense to reproduce all of those documents to ConEd is simply unsupportable. ConEd has already served subpoenas on several other nuclear utility plaintiffs, seeking documents relating to the purchase and/or sale of those utilities' nuclear reactors. We do not understand the basis upon which ConEd, in addition to those subpoenas, is attempting to use the United States as an alternative outlet for any documents that it cannot successfully obtain through those subpoenas. Further, to the extent that ConEd finds the Government's discovery efforts insufficient, ConEd has no right to insist that we modify those practices and to undertake discovery challenges in a manner to ConEd's liking, so that ConEd can avoid incurring the costs to conduct its own discovery. We again suggest, as we have in the past, that ConEd undertake the discovery that it believes necessary from the entities that generated the information that ConEd believes relevant. We are not obligated to take that discovery for ConEd.

Finally, we continue to have serious concerns about ConEd's production, to date, of documents to the Government. On January 17, 2006, we served our first requests for production of documents upon ConEd. On February 10, 2006, we agreed to a 30-day enlargement in which ConEd could produce documents, with the explicit understanding that the majority of documents would be produced on March 16, 2006. On March 24, 2006, ConEd provided written responses to the Government's request, and, on April 3, 2006, ConEd transmitted eight CD-ROMs from ConEd's "Divestiture Library." In the transmittal accompanying the April 3, 2006 letter, you indicated that your office was in the process of locating "approximately 10% of the documents made available to bidders during the auction process" and that you "need additional time to produce them in a similar electronic format" to the documents provided on April 3, 2006. Further, you indicated in your letter that ConEd was "still in the process of reviewing the Indian Point archived files to determine whether there are any additional documents that are responsive" to the Government's production requests. In its April 3, 2006 production, ConEd did not produce any valuation models or contract formation documents – two of the key issues in this case. On December 27, 2006, ConEd produced approximately 1,466 pages of documents and indicated that "[w]e are still in the process of reviewing the remaining electronic documents for privilege, and will produce responsive, non-privileged documents on a rolling basis."

These significant delays in the production of responsive documents from ConEd – almost a year after the Government's request – is unacceptable, particularly in light of ConEd's incredibly broad requests from both the Government and third parties concerning sales of nuclear plants unrelated to the sale of Indian Point 1 and 2. In considering any schedule adjustments in this case in the future, the Government's inability to obtain any significant valuation and contract formation documents from ConEd, among the other areas identified in our production requests to which ConEd has not yet or inadequately responded, will have to be considered and accounted

for in any proposed adjusted schedule. We look forward to a complete production of documents from ConEd in the very near future.

If you have any further questions regarding these matters, please feel free to contact Josh Gardner or me.

Very truly yours,

HAROLD D. LESTER, JR.
Assistant Director
Commercial Litigation Branch
Civil Division