# Exhibit A

**FORM 6**
**SUBPOENA**

# United States Court of Federal Claims

Consolidated Edison Company of
New York, Inc.

*vs.* *No.* 04-0033C

*THE UNITED STATES*

**SUBPOENA**

To: Entergy Corporation
c/o Alex Tomaszczuk
1650 Tysons Boulevard
McLean, VA 22102-4859

1. YOU ARE COMMANDED to appear at the place, date, and time specified below to testify in the above-captioned case.
*Place of Testimony*:
*Date and Time*:
2. YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above-captioned case.
*Place of Deposition*:
*Date and Time*:
3. YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects): See Attachment A.
*Place*: Jenner & Block, 601 13th Street, N.W., Suite 1200S, Washington, DC 20005
*Date and Time*: January 22, 2007
4. YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.
*Premises*:
*Date and Time*:

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.

Attorney for the Plaintiff 12/21/06
ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) DATE

David Churchill, 601 13th Street, N.W., Suite 1200 South,
Washington, DC 20005 (202) 639-6056
ISSUING OFFICER'S NAME, ADDRESS, AND PHONE NUMBER

NOTE - If the place of travel is more than 100 miles (by the shortest usual means of travel) from the place where the subpoena is served, or if the place of the deposition is more than 100 miles from the place where the deponent resides, is employed, or transacts business in person, the person served may regard the command as optional unless there is attached to the subpoena an order of the court requiring his/her appearance notwithstanding the distance of travel. In any event, response to the subpoena will entitle the person to the fees and mileage allowed by law. (28 U.S.C. §1821)

PROOF OF SERVICE

SERVED DATE PLACE

SERVED ON (PRINT NAME) MANNER OF SERVICE

☐ Fees tendered for one day's attendance and mileage allowed by law. (Fees and mileage need not be tendered when the subpoena is issued on behalf of the United States or an officer or agency thereof.)

DECLARATION OF SERVICE

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on: ______________________
DATE

______________________
SIGNATURE OF SERVER

______________________
ADDRESS OF SERVER

RCFC 45.

**(c) Protection of Persons Subject to Subpoenas.**

**(1)** A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

**(2)(A)** A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

**(B)** Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

**(3)(A)** On timely motion, the court shall quash or modify the subpoena if it

**(i)** fails to allow reasonable time for compliance;

**(ii)** requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place, or

**(iii)** requires disclosure of privileged or other protected matter and no exception or waiver applies, or

**(iv)** subjects a person to undue burden.

**(B)** If a subpoena

**(i)** requires disclosure of a trade secret or other confidential research, development, or commercial information, or

**(ii)** requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

**(iii)** requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

**(d) Duties in Responding to Subpoena.**

**(1)** A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

**(2)** When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim

ATTACHMENT A

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **CONSOLIDATED EDISON COMPANY OF NEW YORK, INC.,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **No. 04-0033C** **(Judge Wheeler)** |
| **UNITED STATES OF AMERICA,** | ) | |
| **Defendant.** | ) | |

PLAINTIFF'S REQUEST FOR PRODUCTION OF DOCUMENTS

Consolidated Edison Company of New York, Inc. ("Con Edison") requests that Entergy Corporation (the "Company") produce documents for inspection and copying at the offices of Jenner & Block, as described in the attached subpoena.

DEFINITIONS

As used herein:

1. "Document" means any document in the possession, custody or control of the Company, or its counsel, or known to the Company, and includes, but is not limited to, "writings, drawings, graphs, charts, photographs, phonorecords, and other data compilations from which information can be obtained, translated, and if necessary, by the respondent through data detection devices into reasonable usable form," as defined by Rule 34 of the Rules of the United States Court of Federal Claims ("RCFC"), and this includes all electronically stored, formatted, or scanned materials, such as electronic mail, data, and files. The definition of "document" shall also include all copies of every such writing or record whenever a copy of a document is not an identical copy of the original or where such copy contains any commentary,

notes, or markings whatsoever that do not appear on the original. This definition is applicable in complying with this subpoena and should be construed in the broadest sense possible.

2. The "Company" means Entergy Corporation and any other former or current affiliated entity, including, but not limited to:

a) Entergy Nuclear, Inc.;

b) Entergy Nuclear Generation Company;

c) Entergy Nuclear Operations, Inc.;

d) Entergy Nuclear FitzPatrick, LLC;

e) Entergy Nuclear Indian Point 2, LLC;

f) Entergy Nuclear Indian Point 3, LLC; and

g) Entergy Nuclear Vermont Yankee, LLC.

Unless otherwise stated, the "Company" also includes all present and past employees, agents, partners, and/or representatives of the Company, including counsel, who could reasonably be expected to have personal knowledge that would affect the completeness and accuracy of responses made to this request, as well as, where applicable in context, its parent, subsidiary, or other related or affiliated organizations, and its officers, directors, employees, consultants, representatives, and agents, and all other persons acting or purporting to act upon the Company's behalf.

3. "Con Edison" means Consolidated Edison Company of New York, Inc., the Plaintiff herein, and its parent, subsidiary, or other former or current related affiliated organizations. This definition includes officers, directors, agents, employees, attorneys, any other person acting on the behalf of Con Edison or working on the behalf on any of Con Edison's parent, subsidiary, or other former or current related or affiliated organizations.

4. "DOE" means the United States Department of Energy.

5. "NRC" means the Nuclear Regulatory Commission.

6. "Standard Contract" means the "Standard Contract For Disposal Of Spent Nuclear Fuel And/Or High-Level Radioactive Waste," the terms of which are published at 10 C.F.R. § 961.11.

7. "HLW" means high-level radioactive waste as defined in Article I, clause 12, of the Standard Contract.

8. "SNF" means spent nuclear fuel as defined in Article I, clause 18, of the Standard Contract.

9. "Indian Point" means Indian Point 1 and 2 Nuclear Power Stations.

10. "Nuclear facility" means any nuclear generation plant.

11. "Fossil Fuel facility" means any generation plant using fossil fuel.

12. "Valuation Document" means any document related to an assessment of a Nuclear facility's worth that was prepared either prior to its acquisition by the Company or prior to a decision by the Company whether or not to pursue that facility's acquisition, including the methods, analyses, forms, models, inputs, data, and assessments, and any other document that would aid in the determination of the present or future value of a nuclear facility. Valuation Documents include any and all of the following:

a) any estimates of potential costs of continued on-site storage of SNF, including potential costs of constructing additional on-site SNF storage;

b) any assessment of potential regulatory requirements, including construction permits, licenses, and environmental requirements, related to additional on-site storage;

c) any estimates of potential decommissioning cost required for a Nuclear facility, including any estimates supplied by the seller of the Nuclear facility, and any evaluation of seller-supplier estimates;

d) any estimate of the service life of a Nuclear facility and any extension thereof, including any documents related to uncertainties of those estimates;

e) any documents related to bid determinations, including data sheets and input files, used or relied upon to develop a bid amount for a Nuclear facility, or to obtain internal or external Company approvals to make a bid;

f) all net present value models and discounted cash flow models related to a Nuclear facility.

g) any estimates of financing costs related to a Nuclear facility;

h) any estimates of prospective insurance cost related to a Nuclear facility;

i) any estimates of post-acquisition property taxes related to a Nuclear facility, including any estimates of property taxes during the decommissioning period;

j) any estimate of the cost of ongoing charges to be paid into DOE's Nuclear Waste Fund related to a Nuclear facility, including any evaluation of the factors or circumstances that could affect said on-going charges or the period during which such charges could be assessed;

k) any estimates of the cost of labor agreement terminations and staff reductions;

l) any estimates of the prospective revenues to be generated by a Nuclear facility;

m) any estimates related to post-acquisition electric sales, including forward price curves, and unit capacity factors, related to a Nuclear facility;

n) any estimate of prospective revenue related to particular Power Purchase Agreement terms that were considered for a Nuclear facility, including whether any such prospective revenue was expected to be at, above, or below the prevailing market price of electric energy during the commensurate period;

o) any estimate of the prospective costs likely to offset the expected revenues generated by a Nuclear facility;

p) any discount rate, capital cost, return on investment, or any other investment risk analysis used to evaluate potential risks to the projected revenue stream for a Nuclear facility; and

q) any estimates of post-acquisition capital expenditures potentially necessary or desirable for the operation of a Nuclear facility.

13. "NRC Licensing Documents" means all documents related to communications with the Nuclear Regulatory Commission concerning approval of the transfer of the operating license for a Nuclear facility. This includes any and all of the following:

a) any document related to the development of the five-year pro forma budget and cost-revenue projections presented to the NRC in aid of the license transfer application, including all worksheets, source documents used in preparing the budget and projections, and amendments thereto;

b) any document related to the Company's evaluation of whether the decommissioning funding amount derived from the NRC's formula set forth in its regulations and the amount of decommissioning funds proposed to be transferred by the seller would or would not be adequate;

c) any document related to the seller's site-specific decommissioning study or studies; and

d) any document related to the Company's preparation or participation in the preparation of responses to "Requests for Additional Information" posed by the NRC during the license transfer process.

14. "Hurdle Rate" means the Company's minimal acceptable rate of return or weighted cost of capital (including any risk premium) for an investment.

15. "Related to" means containing, constituting, discussing, describing, identifying, referring to, supporting, explaining, relied upon or consulted while preparing, contradicting, or in any way pertaining to the subject specified.

16. The singular of each word shall be construed to include its plural and vice versa, and the root word and all forms thereof shall be construed to include each other.

17. "And" as well as "or" shall be construed both conjunctively as well as disjunctively.

18. "Each" shall be construed to include "all," and vice versa.

19. "Any" shall be construed to include "all," and vice versa.

20. The present tense shall be construed to include the past tense, and vice versa.

21. "Knowledge," "information," "possession," "custody," and "control" possessed or exercised by a person shall be construed to include "knowledge," "information," "possession," "custody," and "control" possessed or exercised by such person's agents, representatives, and attorneys.

22. "Include" and "including" shall have their ordinary meaning and shall mean "including, but not limited to."

23. In general, all terms used herein shall be construed in an ordinary, common-sense manner, and not in a technical, strained, overly-literal, or otherwise restrictive manner.

INSTRUCTIONS

1. In responding to these document requests, furnish all documents, however obtained, including hearsay, that are within your possession, custody, or control, including documents in the possession, custody, or control of any of your officials, directors, officers, employees, agents, investigators, consultants, or attorneys.

2. If you cannot respond to the following document production requests in full after exercising due diligence to secure the documents, so state, and respond to the extent possible. Explain in detail the reasons for your inability to fully respond, and identify whatever responsive documents you may have.

3. Provide separate responses for each document production request.

4. To the extent that you consider any of the following discovery requests, or their subparts, to be objectionable, answer that portion of the request, or subpart, to which you have no objection and separately state the portion of the document request, or subpart, to which you object and specifically state all grounds for your objection. If you object to a request upon the ground that to provide the requested documents would constitute an undue burden, provide all requested documents that can be supplied without undertaking an undue burden and indicate which documents you are withholding due to undue burden. For those portions of the request to which you object or otherwise decline to answer, state the reason for such objection or declination.

5. Each request herein constitutes a request that each document referred to, or a true, complete, and legible copy thereof, be produced for inspection and copying, upon appropriate notice to plaintiff's undersigned counsel, at the offices of Jenner & Block:

David A. Churchill
Jenner & Block LLP
601 13th Street, NW
Suite 1200 South
Washington, DC 20005

within thirty (30) days of service of this request, unless otherwise directed by the Court, or at such time and place as may be agreed upon by the Company and Con Edison for the purpose of inspecting and copying in accordance with RCFC 34.

6. Each document request seeks documents that are in any way in your possession, custody, or control, including the possession, custody, or control of your attorneys, or to which any of your attorneys have, or have had, access. If a requested document was, but no longer is, in your possession, custody, or control, identify the document and identify the present location and custodian of the document, or if such information is unavailable, identify the last known location and custodian of the document, and explain the circumstances under which the document left your possession, custody, or control.

PLAINTIFF'S DOCUMENT REQUESTS

1. All documents related to the Company's evaluation of whether to purchase Indian Point.

2. All Valuation Documents related to Indian Point's assets, both in the context of the competitive auction through which Indian Point was sold and at any other point in time.

3. All documents assessing the business prospects or future profitability of Indian Point or any other Nuclear facility purchased by the Company after January 31, 1998 and before January 1, 2003, including discussion of the competitiveness of nuclear energy relative to other sources of power generation, spent fuel disposal options, safety issues, and energy market restructuring.

4. All Valuation Documents related to the Indian Point 3 Nuclear Power Station ("Indian Point 3").

5. All Valuation Documents related to the James A. FitzPatrick Nuclear Power Station ("FitzPatrick").

6. All Valuation Documents related to the Pilgrim Nuclear Power Station ("Pilgrim").

7. All Valuation Documents related to the Vermont Yankee Nuclear Power Station ("Vermont Yankee").

8. All documents assessing the effect, including incremental costs and risks, of the DOE's failure to transport or delay in the acceptance of SNF or HLW on the value of Indian Point and/or any other Nuclear facility bought by the Company after January 31, 1998 and before January 1, 2003.

9. All documents related to the estimated market value of Indian Point and/or any other nuclear facility bought by the Company after January 31, 1998 and before January 1, 2003.

10. All NRC Licensing Documents related to Indian Point.

11. All NRC Licensing Documents related to Indian Point 3.

12. All NRC Licensing Documents related to FitzPatrick.

13. All NRC Licensing Documents related to Pilgrim.

14. All NRC Licensing Documents related to Vermont Yankee.

15. All documents related to the Company's submission of testimony or comments on the fairness or prudence of the proposed sales transaction to state rate regulatory authorities or in connection with state proceedings to approve the sale of a Nuclear facility bought by the Company after January 31, 1998 and before January 1, 2003.

16. All documents related to expert reports filed by either the Plaintiffs or Defendant in *Boston Edison Company v. United States*, Nos. 99-447C and 03-2626C (Fed. Cl. consolidated on July 29, 2005).

17. All documents related to expert witness deposition transcripts and exhibits filed by either Plaintiffs or Defendant in *Boston Edison Company v. United States*, Nos. 99-447C and 03-2626C (Fed. Cl. consolidated on July 29, 2005).

18. All documents related to Hurdle Rates or other criteria (quantitative and qualitative) guiding the Company's investment and acquisition decisions related to Nuclear facilities and Fossil Fuel facilities.

19. All documents related to estimates of financing costs for Fossil Fuel facilities.

20. All documents related to net present value models and discounted cash flow models run for Fossil Fuel facilities.

# Exhibit B

**FORM 6**
**SUBPOENA**

# United States Court of Federal Claims

Consolidated Edison Company of New York, Inc.

*vs.* *No.* 04-0033C

*THE UNITED STATES*

**SUBPOENA**

To: Florida Power & Light Energy, LLC
c/o Alex Tomaszczuk
1650 Tysons Boulevard
McLean, VA 22102-4859

1. YOU ARE COMMANDED to appear at the place, date, and time specified below to testify in the above-captioned case.
   *Place of Testimony*: __________
   *Date and Time*: __________
2. YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above-captioned case.
   *Place of Deposition:* __________
   *Date and Time:* __________
3. YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects): See Attachment A.
   *Place:* Jenner & Block, 601 13th Street, N.W., Suite 1200S, Washington, DC 20005
   *Date and Time:* January 22, 2007
4. YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.
   *Premises:* __________
   *Date and Time:* __________

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.

[signature] Attorney for the Plaintiff 12/21/06
ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) DATE

David Churchill, 601 13th Street, N.W., Suite 1200 South, Washington, DC 20005 (202) 639-6056
ISSUING OFFICER'S NAME, ADDRESS, AND PHONE NUMBER

NOTE - If the place of travel is more than 100 miles (by the shortest usual means of travel) from the place where the subpoena is served, or if the place of the deposition is more than 100 miles from the place where the deponent resides, is employed, or transacts business in person, the person served may regard the command as optional unless there is attached to the subpoena an order of the court requiring his/her appearance notwithstanding the distance of travel. In any event, response to the subpoena will entitle the person to the fees and mileage allowed by law. (28 U.S.C. §1821)

PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

SERVED ON (PRINT NAME) MANNER OF SERVICE

☐ Fees tendered for one day's attendance and mileage allowed by law. (Fees and mileage need not be tendered when the subpoena is issued on behalf of the United States or an officer or agency thereof.)

DECLARATION OF SERVICE

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on: ______________________
DATE

______________________
SIGNATURE OF SERVER

______________________
ADDRESS OF SERVER

RCFC 45.

**(c) Protection of Persons Subject to Subpoenas.**

**(1)** A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

**(2)(A)** A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

**(B)** Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

**(3)(A)** On timely motion, the court shall quash or modify the subpoena if it

**(i)** fails to allow reasonable time for compliance;

**(ii)** requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place, or

**(iii)** requires disclosure of privileged or other protected matter and no exception or waiver applies, or

**(iv)** subjects a person to undue burden.

**(B)** If a subpoena

**(i)** requires disclosure of a trade secret or other confidential research, development, or commercial information, or

**(ii)** requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

**(iii)** requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

**(d) Duties in Responding to Subpoena.**

**(1)** A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

**(2)** When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim

ATTACHMENT A

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **CONSOLIDATED EDISON COMPANY OF NEW YORK, INC.,** | ) | |
| **Plaintiff,** | ) | **No. 04-0033C** |
| **v.** | ) | **(Judge Wheeler)** |
| **UNITED STATES OF AMERICA,** | ) | |
| **Defendant.** | ) | |

PLAINTIFF'S REQUEST FOR PRODUCTION OF DOCUMENTS

Consolidated Edison Company of New York, Inc. ("Con Edison") requests that Florida Power & Light Energy, LLC (the "Company") produce documents for inspection and copying at the offices of Jenner & Block, as described in the attached subpoena.

DEFINITIONS

As used herein:

1. "Document" means any document in the possession, custody or control of the Company, or its counsel, or known to the Company, and includes, but is not limited to, "writings, drawings, graphs, charts, photographs, phonorecords, and other data compilations from which information can be obtained, translated, and if necessary, by the respondent through data detection devices into reasonable usable form," as defined by Rule 34 of the Rules of the United States Court of Federal Claims ("RCFC"), and this includes all electronically stored, formatted, or scanned materials, such as electronic mail, data, and files. The definition of "document" shall also include all copies of every such writing or record whenever a copy of a document is not an identical copy of the original or where such copy contains any commentary,

notes, or markings whatsoever that do not appear on the original. This definition is applicable in complying with this subpoena and should be construed in the broadest sense possible.

2. The "Company" means Florida Power & Light Energy, LLC and any other former or current affiliated entity, including, but not limited to:

a) Florida Power & Light Company; and

b) Florida Power & Light Energy Seabrook, LLC.

Unless otherwise stated, all present and past employees, agents, partners, and/or representatives of the Company, including counsel, who could reasonably be expected to have personal knowledge that would affect the completeness and accuracy of responses made to this request, as well as, where applicable in context, its parent, subsidiary, or other related or affiliated organizations, and its officers, directors, employees, consultants, representatives, and agents, and all other persons acting or purporting to act upon the Company's behalf.

3. "Con Edison" means Consolidated Edison Company of New York, Inc., the Plaintiff herein, and its parent, subsidiary, or other former or current related affiliated organizations. This definition includes officers, directors, agents, employees, attorneys, any other person acting on the behalf of Con Edison or working on the behalf on any of Con Edison's parent, subsidiary, or other former or current related or affiliated organizations.

4. "DOE" means the United States Department of Energy.

5. "NRC" means Nuclear Regulatory Commission.

6. "Standard Contract" means the "Standard Contract For Disposal Of Spent Nuclear Fuel And/Or High-Level Radioactive Waste," the terms of which are published at 10 C.F.R. § 961.11.

7. "HLW" means high-level radioactive waste as defined in Article I, clause 12, of the Standard Contract.

8. "SNF" means spent nuclear fuel as defined in Article I, clause 18, of the Standard Contract.

9. "Indian Point" means Indian Point 1 and 2 Nuclear Power Stations.

10. "Nuclear facility" means any nuclear generation plant.

11. "Fossil Fuel facility" means any generation plant using fossil fuel.

12. "Valuation Document" means any document related to an assessment of a Nuclear facility's worth that was prepared either prior to its acquisition by the Company or prior to a decision by the Company whether or not to pursue that facility's acquisition, including the methods, analyses, forms, models, inputs, data, and assessments, and any other document that would aid in the determination of the present or future value of a nuclear facility. Valuation Documents include any and all of the following:

a) any estimates of potential costs of continued on-site storage of SNF, including potential costs of constructing additional on-site SNF storage;

b) any assessment of potential regulatory requirements, including construction permits, licenses, and environmental requirements, related to additional on-site storage;

c) any estimates of potential decommissioning cost required for a Nuclear facility, including any estimates supplied by the seller of the Nuclear facility, and any evaluation of seller-supplier estimates;

d) any estimate of the service life of a Nuclear facility and any extension thereof, including any documents related to uncertainties of those estimates;

e) any documents related to bid determinations, including data sheets and input files, used or relied upon to develop a bid amount for a Nuclear facility, or to obtain internal or external Company approvals to make a bid;

f) all net present value models and discounted cash flow models related to a Nuclear facility;

g) any estimates of financing costs related to a Nuclear facility;

h) any estimates of prospective insurance cost related to a Nuclear facility;

i) any estimates of post-acquisition property taxes related to a Nuclear facility, including any estimates of property taxes during the decommissioning period;

j) any estimate of the cost of ongoing charges to be paid into DOE's Nuclear Waste Fund related to a Nuclear facility, including any evaluation of the factors or circumstances that could affect said on-going charges or the period during which such charges could be assessed;

k) any estimates of the cost of labor agreement terminations and staff reductions;

l) any estimates of the prospective revenues to be generated by a Nuclear facility;

m) any estimates related to post-acquisition electric sales, including forward price curves, and unit capacity factors, related to a Nuclear facility;

n) any estimate of prospective revenue related to particular Power Purchase Agreement terms that were considered for a Nuclear facility, including whether any such prospective revenue was expected to be at, above, or below the prevailing market price of electric energy during the commensurate period;

o) any estimate of the prospective costs likely to offset the expected revenues generated by a Nuclear facility;

p) any discount rate, capital cost, return on investment, or any other investment risk analysis used to evaluate potential risks to the projected revenue stream for a Nuclear facility; and

q) any estimates of post-acquisition capital expenditures potentially necessary or desirable for the operation of a Nuclear facility.

13. "NRC Licensing Documents" means all documents related to communications with the Nuclear Regulatory Commission concerning approval of the transfer of the operating license for a Nuclear facility. This includes any and all of the following:

a) any document related to the development of the five-year pro forma budget and cost-revenue projections presented to the NRC in aid of the license transfer application, including all worksheets, source documents used in preparing the budget and projections, and amendments thereto;

b) any document related to the Company's evaluation of whether the decommissioning funding amount derived from the NRC's formula set forth in its regulations and the amount of decommissioning funds proposed to be transferred by the seller would or would not be adequate;

c) any document related to the seller's site-specific decommissioning study or studies; and

d) any document related to the Company's preparation or participation in preparation of responses to "Requests for Additional Information" posed by the NRC during the license transfer process.

14. "Hurdle Rate" means the Company's minimal acceptable rate of return or weighted cost of capital (including any risk premium) for an investment.

15. "Related to" means containing, constituting, discussing, describing, identifying, referring to, supporting, explaining, relied upon or consulted while preparing, contradicting, or in any way pertaining to the subject specified.

16. The singular of each word shall be construed to include its plural and vice versa, and the root word and all forms thereof shall be construed to include each other.

17. "And" as well as "or" shall be construed both conjunctively as well as disjunctively.

18. "Each" shall be construed to include "all," and vice versa.

19. "Any" shall be construed to include "all," and vice versa.

20. The present tense shall be construed to include the past tense, and vice versa.

21. "Knowledge," "information," "possession," "custody," and "control" possessed or exercised by a person shall be construed to include "knowledge," "information,"

"possession," "custody," and "control" possessed or exercised by such person's agents, representatives, and attorneys.

22. "Include" and "including" shall have their ordinary meaning and shall mean "including, but not limited to."

23. In general, all terms used herein shall be construed in an ordinary, common-sense manner, and not in a technical, strained, overly-literal, or otherwise restrictive manner.

INSTRUCTIONS

1. In responding to these document requests, furnish all documents, however obtained, including hearsay, that are within your possession, custody, or control, including documents in the possession, custody, or control of any of your officials, directors, officers, employees, agents, investigators, consultants, or attorneys.

2. If you cannot respond to the following document production requests in full after exercising due diligence to secure the documents, so state, and respond to the extent possible. Explain in detail the reasons for your inability to fully respond, and identify whatever responsive documents you may have.

3. Provide separate responses for each document production request.

4. To the extent that you consider any of the following discovery requests, or their subparts, to be objectionable, answer that portion of the request, or subpart, to which you have no objection and separately state the portion of the document request, or subpart, to which you object and specifically state all grounds for your objection. If you object to a request upon the ground that to provide the requested documents would constitute an undue burden, provide all requested documents that can be supplied without undertaking an undue burden and indicate which documents you are withholding due to undue burden. For those portions of the request to which you object or otherwise decline to answer, state the reason for such objection or declination.

5. Each request herein constitutes a request that each document referred to, or a true, complete, and legible copy thereof, be produced for inspection and copying, upon appropriate notice to plaintiff's undersigned counsel, at the offices of Jenner & Block:

David A. Churchill
Jenner & Block LLP
601 13th Street, NW
Suite 1200 South
Washington, DC 20005

within thirty (30) days of service of this request, unless otherwise directed by the Court, or at such time and place as may be agreed upon by the Company and Con Edison for the purpose of inspecting and copying in accordance with RCFC 34.

6. Each document request seeks documents that are in any way in your possession, custody, or control, including the possession, custody, or control of your attorneys, or to which any of your attorneys have, or have had, access. If a requested document was, but no longer is, in your possession, custody, or control, identify the document and identify the present location and custodian of the document, or if such information is unavailable, identify the last known location and custodian of the document, and explain the circumstances under which the document left your possession, custody, or control.

PLAINTIFF'S DOCUMENT REQUESTS

1. All documents related to the Company's evaluation of whether to purchase Indian Point.

2. All Valuation Documents related to Indian Point's assets, both in the context of the competitive auction through which Indian Point was sold and at any other point in time.

3. All documents assessing the business prospects or future profitability of Indian Point or any other Nuclear facility purchased by the Company after January 31, 1998 and before January 1, 2003, including discussion of the competitiveness of nuclear energy relative to other sources of power generation, spent fuel disposal options, safety issues, and energy market restructuring.

4. All Valuation Documents related to the Seabrook Nuclear Power Station.

5. All documents assessing the effect, including incremental costs and risks, of the DOE's failure to transport or delay in the acceptance of SNF or HLW on the value of Indian Point and/or any other Nuclear facility bought by the Company after January 31, 1998 and before January 1, 2003.

6. All documents related to the estimated market value of Indian Point and/or any other nuclear facility bought by the Company after January 31, 1998 and before January 1, 2003.

7. All NRC Licensing Documents related to Seabrook Nuclear Power Station.

8. All documents related to the Company's submission of testimony or comments on the fairness or prudence of the proposed sales transaction to state rate regulatory

authorities or in connection with state proceedings to approve the sale of a Nuclear facility bought by the Company after January 31, 1998 and before January 1, 2003.

9. All documents related to Hurdle Rates or other criteria (quantitative and qualitative) guiding the Company's investment and acquisition decisions related to Nuclear facilities and Fossil Fuel facilities.

10. All documents related to estimates of financing costs for Fossil Fuel facilities.

11. All documents related to net present value models and discounted cash flow models run for Fossil Fuel facilities.

# Exhibit C

March 10, 2006

**VIA E-MAIL AND U.S. MAIL**

Joshua E. Gardner
Trial Attorney, Commercial Litigation Branch,
Civil Division
U.S. Department of Justice
ATTN: Classification Unit
8th Floor
1100 L Street, N.W.
Washington DC 20530

David A. Churchill
Tel 202 639-6056
Fax 202 637-6370
dchurchill@jenner.com

**Re:** ***Consolidated Edison Company of New York v. United States***
***Case No.* 04-0033**

Dear Josh:

I write regarding our efforts to work cooperatively to obtain the documents and other information sought by Consolidated Edison Company of New York, Inc.'s ("Con Edison's") First Set of Interrogatories and First Request for Production of Documents served on November 30, 2004. The Government responded to Con Edison's first round of discovery on September 23, 2005, and met with Con Edison on January 13, 2006 to discuss those responses. Our particular area of concern for purposes of this letter is the Government's practices in disclosing discovery materials in other spent nuclear fuel cases, and I propose to address other discovery issues separately. It is our hope that we can quickly resolve all such discovery issues and focus our efforts on advancing this case to resolution.

Document Request No. 23 in Con Edison's November 30, 2004 First Request for Production of Documents sought production of the following:

> "Provide all responses which you have propounded or which you have received to discovery requests, including, but not limited to interrogatories, document requests and requests for admissions, for any case to which you have been a party and the Plaintiff has alleged your breach of the Standard Contract."

*First*, at our January 13, 2006 discovery conference, Harv Lester indicated that the Government's production website would likely contain the documents and interrogatory

responses produced by other utility plaintiffs, as well as third party discovery and the Government's own interrogatory responses which have been prepared in the context of SNF litigation. All such materials would be responsive to our document request 23. Based on our review of the website, we have determined that hardly any of this material has been posted. In particular, the website contains only selected written discovery material (CD-ROMs YA 190 and YA654) and some utility-specific material (CD-ROMs YA117, YA118r1, YA123, YA125r1, YA128, YA129, YA131, YA158 and YA462).

We are aware that in response to our document request 23 the Government objected to production of materials produced by other utilities, citing the expense the Government would incur to extract those documents from its databases and to strike privileged information. We do not believe any such objection is well founded given that the Government received this material from the utilities and third parties, free of any basis for Government work product or privilege claims.

It should therefore be an easy matter for the Government to provide a copy of the material requested by Con Edison in 2004 in the form it was initially produced to the Government by the originating source. Con Edison's 2004 discovery request was expressly of a continuing nature, and thus calls for disclosure of requested materials received or generated to date and in the future on an ongoing basis. Based on our understanding of how litigation discovery databases work, it should also be a simple process for your vendor to export and extract this data from your internal databases free of any work product. Furthermore, we note that to the extent the Government expects to rely on such material to support its defense of this lawsuit, it is obligated to provide this material to Con Edison pursuant to Rule 26(a)(1)(B) of the Rules of the Court of Federal Claims ("RCFC").

In light of the fact that this discovery was propounded many months ago, we urge production of this material as expeditiously as possible. While in request 23 we have requested all written discovery and documents received by the Government in SNF cases, our immediate need is to review discovery materials the Government has received or submitted in relation to the

sale or purchase of the Pilgrim, Indian Point Unit 3, Fitzpatrick, Vermont Yankee, and Indian Point 1 and 2 nuclear plants and the associated Standard Contracts for SNF disposal. This request also includes plant purchase and sale materials we understand the Government has received in discovery from Navigant Consulting related to its work on the sale or potential sale of a number of nuclear plants.

*Second*, in its January 16, 2006 initial disclosures, the Government represented that the Government had or would promptly post electronic versions of the depositions of Government employees on its website. We have still not been able to locate that material on the Government's website. Please provide that material as soon as possible.

*Third,* the structure of the production website does not allow us to identify which CD-ROMs have been posted in response to a discovery request from Con Edison, and which documents have been posted in response to a request received from another utility. Con Edison's 2004 request requires that the requested discovery materials be identified by SNF case and party. I am also informed that we have not been receiving notice when new material is added to the website. We ask that you identify which CD-ROMs have been posted in response to Con Edison's document requests, and also notify us when new material is posted so that we both can track and evaluate the progress and completeness of the Government's document production.

*Finally,* the Government's response to document requests 22 and 23 indicates that written discovery material not already on the Government production website will be made available for inspection and copying. Please let us know what materials are covered but not website-posted so that we can promptly inspect and copy that material.

As I have indicated, our ultimate goal is to advance this case toward resolution and to avoid getting bogged down in discovery disputes which do not further that objective. We are under the impression that the Government shares the desire for efficient and productive case development. We are therefore continuing to work diligently to find responsive documents on the Government websites, request your concurrence and cooperation in making this structure

efficient, complete and effective, and reserve the right to raise additional issues should they arise. Please call me if you have any questions.

Sincerely,

David A. Churchill

DAC:

cc: Harold D. Lester, Jr.
Brent L. Brandenburg