# Exhibit D

JENNER&BLOCK

Jenner & Block LLP
601 Thirteenth Street, NW
Suite 1200 South
Washington, DC 20005-3823
Tel 202 639-6000
www.jenner.com

Chicago
Dallas
New York
Washington, DC

David A. Churchill
Tel 202 639-6056
Fax 202 637-6370
dchurchill@jenner.com

April 18, 2006

***VIA FACSIMILE AND REGULAR MAIL***

Harold D. Lester, Jr.
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
National Courts Section
1100 L Street, N.W.
Washington DC 20530

**Re:** ***Consolidated Edison Company of New York v. United States***
***Case No. 04-0033***

Dear Harv:

I write to respond to your letter dated April 12, 2006, which addressed several discovery issues we have been attempting to resolve. Without ignoring the other issues in your letter (which I will address at a later time), I would like to focus on a key issue that appears under your heading titled, "Copies of Documents Produced By Other SNF Plaintiffs And Other Third Parties," appearing initially on page 3.

We have expressed an immediate need "to review discovery materials the Government has received or submitted in relation to the sale or purchase of the Pilgrim, Indian Point Unit 3, Fitzpatrick, Vermont Yankee, and Indian Point 1 and 2 nuclear plants and the associated Standard Contracts for SNF disposal." March 10, 2006 Letter, at 3. Without these documents, our ability to develop our affirmative case is substantially impaired, and will certainly hinder our ability to meet the approaching deadlines established by the Court.

Despite the obvious relevance of these materials, you object to production on several grounds, none of which is persuasive.

First, you claim that producing more than "three million pages of documents from various SNF plaintiffs and other third parties" is "unduly burdensome." April 12 Letter, at 2. To be clear, we are not interested in the three million documents collectively produced by Plaintiffs in other SNF cases, only those involving the purchase or sale of a nuclear plant. Of the narrowed group of documents we have requested, you state that only Boston Edison Company, Entergy Nuclear Generation Company, and to a limited extent, the Power Authority of the State of New York, have produced documents to the Government thus far.[1] We assume the Government has tracked the source of the documents it has received in discovery, and is able to produce a subset of documents related to particular cases or parties. There is thus no burden in this production.

---

[1] To the extent the Government has not received discovery in the other cases addressed by Con Edison's letter, we request that you identify when discovery is anticipated and supplement buyer/seller document productions to Con Edison when those documents are received.

Second, you object that even producing such a limited subset of documents will not be performed until Con Edison makes clear "the relevance of the entirety of the third-party document production." April 12 Letter, at 4 & n.1. Con Edison has underscored its focus on other SNF buyer/seller industry documents at every stage of this litigation. Since the day that Con Edison filed its complaint, it has consistently maintained that "DOE's failure to perform its statutory and contractual obligations to remove SNF caused a number of potential purchasers for nuclear generating facilities such as Indian Point to be artificially and improperly constrained, thereby reducing the beneficial effects of a competitive auction for these assets." Complaint, at 24 (filed Jan. 13, 2004) (emphasis added).

The relevance of these documents is hardly confusing, contrary to your letter. As I made clear during a recent teleconference with Judge Wheeler and Joshua Gardner, "the factual underpinnings [of our diminished value claim] will come from the various evaluation methodologies that were used throughout the industry, not just by our buyer but throughout the industry at about the time our sale took place." Transcript, at 4 (March 9, 2006). I further indicated that we would be looking for those valuation models from the Government:

> What I do believe [to be] the case, however, is that many of the potential buyers and seller did create valuation methodologies for these various plants that were bought and sold in the timeframe in which we are interested, and the Justice Department, through discovery in these cases, has obtained through discovery of other plaintiffs -- buyers and sellers -- all of these valuation models."

The very quotations you cite from our January 20, 2006 hearing before Judge Wheeler in your April 12 letter make my point. There, I explained that our "theory of the case is not that ENIP paid less, but that the market was depressed in general." I further explained that, "our testimony will be to the effect that the entire market was depressed to the point that whether it was ENIP that ultimately bought this plant or some other company that bought this plant, the entire value of the plant was hugely diminished because of the government's breach of contract in 1998." Transcript, at 45-46 (Jan. 20, 2006). To show that market depression, we need access to buyer/seller valuation models and other documents pertaining to the sale of the nuclear facilities at issue in each case.

We believe that this letter, our previous representations to the Court, our complaint, and our initial disclosures,[2] have made our interest in these documents, and their relevance, abundantly clear. Moreover, the Government's own interest in such documents is manifest by

---

2 Contrary to your representation that Con Edison's initial disclosures were due on Tuesday, April 11, 2006, they were timely submitted on April 12, 2006. *Consolidated Edison Company of New York, Inc., v. United States*, No. 04-0033C, Order, at 1 ("Plaintiff has represented that it will transmit its initial disclosures to Defendant on April 12, 2006.") (unpublished opinion). This is at least the third time that the Government has misstated a due date in correspondence to Con Edison. I am sympathetic to the fact that you have many ongoing cases, but please call me before representing that we have missed a deadline so that I may confirm with you the correct deadline.

the fact that they were sought out in discovery. Since the Government will no doubt attempt to use those documents to test, question and quantify the extent to which its conduct did or did not affect the value of nuclear assets, in Con Edison's case, it would be unfair for the Government to attempt to shield those critical documents from Con Edison's legitimate requests to review them well in advance of trial.

Third, you object that you are constrained in sharing the documents you have received from other SNF plaintiffs because of concerns regarding the proprietary and confidential information contained in other SNF plaintiffs' documents. The parties have had a protective order on file in this case since May 18, 2004, which to our knowledge is a standard form of protective order that has been used in SNF cases. That order expressly proscribes disclosures to non-spent fuel litigants, and hence supplies no basis for objecting to our discovery. To the extent the provisions of this protective order have been superceded, expanded or affected by collateral agreements, we request copies of such other agreements so we can determine whether Con Edison is able to make reasonable accommodations in order to protect the proprietary information in these materials.

We request production of the documents you have received from Boston Edison Company and Entergy Nuclear Generation Company by April 26, 2006. As for the preferred mode of production, we would appreciate continuing to receive productions electronically, as the Government has recognized it has done in the past. April 13 Letter, at 4.

If the Government is unable to meet our proposed deadline, we plan to address this issue with Judge Wheeler, who indicated that questions surrounding our ability to obtain this information from the Government should be resolved "earlier rather than later," Transcript, at 9 (March 9, 2006), given the other deadlines looming in this case.

Thank you for your attention in this matter. Please call me if you have any questions.

Sincerely,

David A. Churchill

DAC

# Exhibit E

U.S. Department of Justice

Civil Division

PDK:DMC:HDL
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

Telephone:
(202) 305-7562

Washington, D.C. 20530

April 12, 2006

VIA TELECOPY AND UNITED STATES MAIL

David A. Churchill
Jenner & Block LLP
601 Thirteenth Street, N.W.
Suite 1200 South
Washington, D.C. 20005-3823

Re: *Consolidated Edison Co. of New York v. United States*, No. 04-0033C (Fed. Cl.)

Dear Mr. Churchill:

This letter is in response to your letter to Joshua E. Gardner dated March 10, 2006, and Cynthia Robertson's letter to Mr. Gardner dated April 10, 2006. Those letters seek information regarding various document production matters.

Written Discovery In Other Spent Nuclear Fuel Cases

In your March 10, 2006 letter, you represent that I had indicated during our meeting at your offices on January 13, 2006, that the Government's production website "would likely contain the documents and interrogatory responses produced by other utility plaintiffs, as well as third party discovery and the Government's own interrogatory responses which have been prepared in the context of SNF litigation." Letter, at 1-2. As an initial matter, we need to clarify your understanding of my representation at that January 13, 2006 meeting. As you recognize in your March 10, 2006 letter, and as we indicated in response to Request No. 23 of ConEd's first request for the production of documents, we have objected to ConEd's request that we produce to ConEd copies of all of the documents that any of the plaintiffs in other spent nuclear fuel ("SNF") cases and other third parties have produced as part of the SNF litigation. Accordingly, to the extent that your March 10, 2006 letter implies that we represented that our production website "would likely contain the documents . . . produced by other utility plaintiffs," we do not recall making any such representation. To the contrary, we specifically discussed at the March

10, 2006 meeting the fact that the Government had not included on its production website those documents received from the other utility plaintiffs.

Nevertheless, at the March 10, 2006 meeting, we informed you that we were willing to make available on the production website, to the extent that they were not already available there, copies of all of the written discovery that the Government had received and had sent, as well as the written discovery responses that the Government had received and had sent, in the SNF litigation, except to the extent that a nuclear utility had requested that the written discovery be protected from distribution to third parties. Our representation was consistent with our response to Request No. 23 of ConEd's first request for the production of documents. It continues to be our intent to load any additional written discovery – both interrogatories and written document production requests, along with their responses – to the production website, to the extent identified in our response to Request No. 23. We expect to complete the copying and loading of these documents to the production website within the next few days.

You also request in your March 10, 2006 letter that we identify for you that written discovery material which is "not already on the Government's production website" so that you can make arrangements to inspect and copy it. To the extent that we do not post some of the written discovery, we will notify you of that fact and will identify the entity whose written discovery we have not posted and the reason that it was not posted.

Copies of Documents Produced By Other SNF Plaintiffs And Other Third Parties

ConEd also requests that we produce to ConEd copies of all of the documents that any SNF plaintiff or other third party has produced to the Government in any of the SNF cases. It is far from clear that documents not produced from the files of any agency related to the factual matters underlying this litigation, but instead obtained by attorneys for the Government from outside entities during and because of the litigation, are encompassed by RCFC 34. Nevertheless, without addressing the scope of RCFC 34, ConEd's request is incredibly burdensome. We have received more than three million pages of documents from various SNF plaintiffs and other third parties in the course of discovery in other SNF cases. These documents have been produced in varying forms and formats: in paper copies, in various forms of electronic media, and in Concordance databases. ConEd's unsupported assertion that "[i]t should be an easy matter for the Government to provide a copy of" the more than three million pages "requested by Con Edison . . . in the form it was initially produced to the Government by the originating source" is completely unsupported. Based upon the limited budget that we have for litigation support activities, the cost to the Government associated with complying with ConEd's request would require us to eliminate the performance of other necessary tasks, given the number of hours that we would have to pay our litigation support contractor to attempt to locate and organize all of the past document productions and, further, to make copies of all of those past productions, including the paper productions. ConEd's request that we simply produce the entirety of these past productions and provide copies to ConEd is unduly burdensome.

In addition, ConEd cannot make any credible argument that the entirety of every other nuclear utility's document production in the SNF litigation – each of the more than three million pages of documents – is somehow relevant to ConEd's case. The documents produced by the other nuclear utilities involve numerous issues and matters, including site-specific issues and costs related to particular nuclear facilities. In any event, ConEd has certainly not attempted to make any showing that every document produced by another nuclear utility in the SNF litigation is somehow relevant to ConEd's case.

In your March 10, 2006 letter, you indicate that your "immediate need is to review discovery materials the Government has received or submitted in relation to the sale or purchase of the Pilgrim, Indian Point Unit 3, Fitzpatrick, Vermont Yankee, and Indian Point I and 2 nuclear plants and the associated Standard Contracts for SNF disposal." Letter, at 3 (March 10, 2006). As an initial matter, we are confused by this representation regarding ConEd's need for such documents, as it directly conflicts with ConEd's representations to the Court of Federal Claims in opposing the Government's motion to consolidate this case with Entergy Nuclear Indian Point 2, LLC v. United States, No. 03-2622C (Fed. Cl.). During the parties' hearing before the Court on January 20, 2006, ConEd represented that the understanding of witnesses from Entergy Nuclear Indian Point 2 ("ENIP") regarding the value of ConEd's reactor was essentially irrelevant to ConEd's case:

> . . . [O]ur theory of the case is not that ENIP paid less, but that the market was depressed in general. And our testimony will be to the effect that the entire market was depressed to the point that whether it was ENIP that ultimately bought this plant or some other company that bought this plant, the entire value of the plant was hugely diminished because of the government's breach of contract in 1998. So ENIP's views on the subject, while perhaps of interest to Mr. Gardner, are of very little concern to us.

Transcript, at 45-46 (Jan. 20, 2006) (emphasis added). To the extent that ConEd now believes that the views and documents of other nuclear utilities, including ENIP, are relevant and necessary to its case, please notify us of that fact so that we can ask the Court to revisit its decision not to consolidate this case with ENIP. In any event, ConEd has not identified the reasons that document productions from any of the nuclear utilities associated with the identified nuclear reactors are somehow relevant to ConEd's case.[1]

---

[1] In her letter dated April 10, 2006, Ms. Robertson requested that we identify in our response to your March 10, 2006 letter the extent of discovery that we have received in these "buyer/seller SNF cases." With regard to the Indian Point Unit 3, Fitzpatrick, Vermont Yankee, and Indian Point I and 2 nuclear plants identified in your March 10, 2006 letter, we have not received document productions from the plaintiffs associated with those cases, except to the limited extent that the Power Authority of the State of New York, in 2001 and 2002, participated in the coordinated discovery proceedings and produced documents relating to the formation of

Further, many of the documents have been produced to us subject to protective orders in other cases and, in some instances, with requests that we provide additional protections to the documents so as to preclude their release to any other parties or entities. One of the utilities that made such a request was Exelon Generation Company, LLC ("Exelon"), which, during the settlement negotiations between the parties, provided documents to the United States that it deemed highly sensitive and proprietary. As you may be aware, one of the partners in your own law firm, Norman Hirsch, represented Exelon before the Court of Federal Claims, although another attorney, Brad Fagg from Morgan Lewis & Bockius LLP, represented Exelon in the settlement negotiations. In essence, you are requesting that we disregard the request that your firm's client made regarding the handling of its documents. Particularly since ConEd has not identified any basis upon which to find that the documents that Exelon, and other utilities, have provided to us are relevant to ConEd's litigation, we cannot identify a reason simply to produce documents containing proprietary information to ConEd and its counsel.

Before we make any of the third party productions available to ConEd, ConEd needs to identify the relevance of the entirety of the third-party document production clear. Particularly in light of the burdens associated with producing more than three million pages of documents, our request for a detailed explanation of the relevance of these documents is more than appropriate.

Further, to deal with the requests for protection of documents that we received from many plaintiffs, we anticipate that, within the next few days, we will send a letter to each of the attorneys who represent any SNF plaintiffs, past and present, to notify them of ConEd's request that we produce their clients' documents to ConEd. To the extent that any of these other SNF plaintiffs or third parties object to ConEd's request, they will have an opportunity to notify us of their objection and, potentially, to intervene before the Court to defend their request for non-disclosure of their document productions.

Finally, even if we were to produce any or all of the third-party productions to ConEd, we would have no obligation to provide copies of documents that we have received from other nuclear utilities or third parties to ConEd. Instead, when we produce documents pursuant to RCFC 34, we are obligated only to make those documents available to ConEd for inspection and to permit ConEd to copy them at its own expense. Although we typically have provided plaintiffs with copies of the documents being produced as a courtesy, we cannot voluntarily provide copies of more than three million pages of documents, most of which would appear irrelevant to ConEd's case, at the Government's expense. Accordingly, to the extent that the Government is required to make these documents available to ConEd, it will do so at the offices

---

the Standard Contract, the rate of SNF acceptance under the Standard Contract, and/or DOE's obligation to accept or dispose of Greater-Than-Class-C radioactive waste. With regard to the Pilgrim reactor identified in your March 10, 2006 letter, we have received productions of documents from Boston Edison Company and from Entergy Nuclear Generation Company. Nevertheless, we do not understand the relevance of their document productions to ConEd's case.

of its litigation support contractor in the format that they were received from the plaintiffs. It will be ConEd's obligation to make arrangements for reviewing and copying those documents. We cannot bear that expense or burden.

Copies of Deposition Transcripts From Other SNF Cases

ConEd also requests that we produce copies of all of the deposition transcripts that we have purchased in this litigation of other utilities' depositions of potential Government witnesses. Although we represented in our initial disclosures that we would be posting copies of past deposition transcripts of Government employees on the production website, this representation was made in error, and we will be amending our initial disclosures to correct this error.

As you certainly can understand, we have paid significant sums of money to purchase copies of these transcripts. Further, the issues surrounding the court reporters' rights to control the sale and distribution of the transcripts that they generated appear complicated. Nevertheless, pursuant to the Court's rules, one party in a case is not entitled to require another party to produce, at no cost, copies of deposition transcripts that the first party would otherwise need to purchase from the court reporter who transcribed the depositions. In Kinan v. City of Brockton, Massachusetts, 112 F.R.D. 206 (D. Mass. 1986), the district court considered a plaintiff's motion to compel the defendant to produce copies of deposition transcripts taken in the litigation. Although the plaintiff had purchased a copy of the transcript of the first day of his own deposition, he did not order copies of the second day or of any of three other depositions taken in the case. The district court denied the plaintiff's request, finding that Rule 30(f)(2) of the Federal Rules of Civil Procedure, which has been adopted by the Court of Federal Claims, contains "an explicit provision governing the obtaining of copies of depositions." Id. at 207. That rule provides that, "[u]pon payment of reasonable charges therefor, the officer shall furnish a copy of the deposition to any party or to the deponent." The district court opined that "this provision precludes a party from employing the procedures of Rules 34 and 37, F. R. Civ. P., to obtain copies of depositions in the case from another party who has ordered transcripts and received them upon payment of the applicable fee." Id.; see Seaview Terrace v. Diaz, Nos. CIV. 92-00003, CV944-90, 1992 WL 365805, at *4 (D. Guam Apr. 16, 1992) ("[i]n view of the provision in Rule 30(f)(2) mandating payment, . . . [t]he court was correct in ensuring that Seaview did not attempt to obtain a free copy of the transcript").

We cannot agree to produce to ConEd all of the deposition transcripts of Government employees that have been taken as part of the SNF litigation. Nevertheless, although we are not required to do so pursuant to RCFC 30 or 34, we previously made copies of the electronic versions of some deposition transcripts, in ASCII format, available to the plaintiff in Consumers Energy Corp. v. United States, No. 02-1894C (Fed. Cl.). Before we made those ASCII disks available to the plaintiff in Consumers, we contacted each of the court reporting companies involved to obtain their non-opposition to that production. Based upon the representations made at that time, we are willing to provide you with the same production of transcripts that we made available to the plaintiff in Consumers, in the ASCII electronic format that we provided there.

We anticipate that we will post that disk to the document production website no later than Tuesday, April 18, 2006. That disk should contain ASCII versions of all of the depositions of Government employees taken up to the time of the production. For deposition transcripts of Government employees taken since that date, we have attached, as Attachment A, a list of those depositions and the names, addresses, and phone numbers of the court reporting companies involved in transcribing them. With that list, ConEd should be able to purchase any of those transcripts that it wishes.

Tying Past Document Productions To Other Plaintiffs' Discovery Requests

In your letter, you complain that the production website "does not allow [ConEd] to identify which CD-ROMs have been posted in response to a discovery request from Con Edison, and which documents have been posted in response to a request received from another utility." Letter, at 3. You also state that "Con Edison's 2004 request requires that the requested discovery materials be identified by SNF case and party." Id. As you may be aware, we objected to the instructions and definitions contained in ConEd's written discovery requests "to the extent that such instructions and definitions attempt to impose obligations on defendant other than those imposed by RCFC 26 and 34 and the Court's prior orders." With regard to ConEd's request that the Government identify each "SNF case and party" to which any documents previously produced were responsive to previously produced document production requests, ConEd's request exceeds the permissible limits of RCFC 34. Further, the majority of the documents posted to the production website were originally produced long before ConEd filed its lawsuit. ConEd's request that we review the entirety of the Government's past document productions and tie them to other nuclear utility plaintiffs' document production requests is unduly burdensome. Nevertheless, to the extent that ConEd is seeking specific information about specific requests or specific productions, we are willing to attempt to research those requests, if reasonable in number and scope, to assist ConEd in locating documents within the production website of interest to it.

However, we also continue to believe that, to the extent that it has not done so, it would benefit ConEd to consult with one of the partners at Jenner & Block, Norman Hirsch. In his role as the attorney of record in Commonwealth Edison Co. v. United States, No. 98-621C (Fed. Cl.), the three Exelon Nuclear Generation cases, and South Carolina Gas & Electric Co. v. United States, No. 04-101C (Fed. Cl.), all previously active but now amicably resolved cases, we presume that Mr. Hirsch and the attorneys working with him developed a database of the documents that the Government previously produced and organized them in a manner conducive to their use. We are confused by ConEd's requests that we provide it with information that would seem to allow it to begin the document organization process anew, as though it lacked any information about past document productions. When your firm already has had significant access to the database of the documents that the Government has previously produced, it would appear most efficient to take advantage of your firm's past organization of documents from those past productions. To the extent that ConEd is requesting that we engage in extensive yet unnecessary efforts simply because ConEd would prefer not to utilize Jenner & Block's previously created document organization system or database, such a request is wholly

unwarranted. Again, we encourage ConEd to take advantage of Mr. Hirsch's past experience in this litigation and maximize its use of previously created databases.

Notice Of New Document Production Postings

You also assert in your letter that you have been "informed that [you] have not been receiving notice when new material is added to the website." Letter, at 3 (March 10, 2006). However, our records indicate that you and Ms. Cynthia Robertson have been receiving e-mail notices each time a new production is posted onto the website since you and Ms. Robertson obtained access to that site on January 19, 2006. To allow you to study this matter, we have attached as Attachment B to this letter copies of the two e-mails that have been sent since January 19, 2006, announcing that additional documents have been loaded to the production website.[2] To the extent that you did not receive these e-mails, please notify us of that fact and, further, confirm that the e-mail addresses that we have for you, which are identified on the attached e-mails, are correct.

ConEd's Initial Disclosures

As you are aware, the Government provided its initial disclosures to ConEd on January 17, 2006. We had understood, pursuant to the parties' agreement and ConEd's representations to the Court, that ConEd would be providing its initial disclosures to us by Tuesday, April 11, 2006. We have not yet received those disclosures and cannot effectively begin any serious case analysis without knowledge of the specific claims that ConEd will raise here. To the extent that ConEd mailed its disclosures yesterday, we ask that we be provided with a copy by fascimile so that we can begin our analysis of the claims identified there. To the extent that ConEd has not yet served its disclosures, please identify for us the reason for the delay and the date that ConEd will provide us with its disclosures.

If you have any further questions regarding these matters, please feel free to contact me.

Very truly yours,

Harold D Lester, Jr.

HAROLD D. LESTER, JR.
Assistant Director
Commercial Litigation Branch
Civil Division

Attachments

---

[2] These e-mails were dated February 15 and 17, 2006.

# Exhibit F

**U.S. Department of Justice**

Civil Division

PDK:DMC:HDL
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

Telephone:
(202) 305-7562

*Washington, D.C. 20530*

April 27, 2006

VIA TELECOPY AND UNITED STATES MAIL

Richard J. Conway
Dickstein Shapiro Morin & Oshinsky LLP
2101 L Street, N.W.
Washington, D.C. 20037

Brad Fagg
Morgan Lewis & Bockius LLP
1111 Pennsylvania Avenue, N.W.
Washington, D.C. 20004

Alex D. Tomaszczuk
Pillsbury Winthrop Shaw Pittman LLP
1650 Tysons Blvd.
McLean, Virginia 22102-4859

M. Stanford Blanton
Balch & Bingham LLP
1710 Sixth Avenue North
Birmingham, Alabama 35203

Norman M. Hirsch
Jenner & Block
One IBM Plaza
Chicago, Illinois 60611-7603

Re: *Consolidated Edison Co. of New York v. United States*, No. 04-0033C (Fed. Cl.)

Dear Sirs:

Recently, Consolidated Edison Company of New York ("ConEd"), the plaintiff in Consolidated Edison Co. of New York v. United States, No. 04-0033C (Fed. Cl.), informed us that it wants the Government immediately to produce to it all documents that the Government has received through discovery "in relation to the sale or purchase of the Pilgrim, Indian Point Unit 3, Fitzpatrick, Vermont Yankee, and Indian Point 1 and 2 nuclear plants and the associated Standard Contracts for disposal" and, apparently, in relation to the sale or purchase of any other nuclear reactor. Although we have objected to the relevance of this request to the matters at issue in the ConEd case and to the burden of ConEd's request, ConEd, by letter dated April 18, 2006, has insisted that we produce all responsive documents.

From our records, it appears that those plaintiffs which have produced documents in cases involving the reactors identified in ConEd's letter, and in which discovery has included matters relating to the purchase and sale of nuclear assets, are those filed by Boston Edison Company ("Boston"), Entergy Nuclear Generation Company ("ENGC"), Entergy Nuclear Vermont Yankee ("ENVY"), and Vermont Yankee Nuclear Power Corporation ("Vermont").[1] In addition to the reactors to which ConEd referred, the cases that Delmarva Power & Light Company ("Delmarva") and Atlantic City Electric Company ("Atlantic City") filed also involve diminished value claims resulting from the sale of nuclear assets, and both the plaintiffs in those now-consolidated cases and the purchasers of those plaintiffs' interests, PSEG Nuclear, L.L.C. ("PSEG"), and Exelon Generation Company, LLC ("Exelon"), have also produced documents in that litigation.[2] We have also obtained an extremely limited production of documents – mainly a copy of the purchase and sale agreement – in Rochester Gas & Electric Co. v. United States, No. 04-118C (Fed. Cl.).[3]

Because of limitations upon our funding and attorney time, we do not have the resources to review all of the plaintiffs' productions to identify which, if any, of the documents that they have produced to us relate to the sale or purchase of nuclear assets. As a result, to respond to ConEd's current demand for production, we would have to provide ConEd with access to all of the documents that have been produced by Boston, ENGC, ENVY, Vermont, Delmarva, Atlantic City, and the plaintiffs in Rochester. In addition, to respond to ConEd's production request, we would anticipate that we would need to produce the documents provided to us by PSEG and Exelon in response to discovery requests in the Delmarva litigation.

---

[1] Although we obtained an extremely limited amount of discovery from Power Authority of the State of New York (the former owner of the Fitzpatrick reactor) during the coordinated discovery proceedings, it does not appear that the discovery there included any sale or purchase information.

[2] In its document production requests, ConEd sought production of "all responses . . . which [the Government] ha[s] received to discovery requests, including, but not limited to . . . document requests . . ., for any case in which [the Government] ha[s] been a party and the Plaintiff has alleged [the Government's] breach of the Standard Contract." ConEd Document Production Request No. 23. In response to our objection to that request as overly broad and unduly burdensome, ConEd appeared initially to insist that we produce all such documents. However, in its April 18, 2006 letter, it indicated that it was interested only in documents relating to the sale or purchase of nuclear reactors.

[3] Although we obtained discovery from the plaintiff in Commonwealth Edison Co. v. United States, No. 98-621C (Fed. Cl.), which has sold its nuclear assets to Exelon, we do not believe that any of the document production in that case related to any sale of the plaintiff's nuclear assets. To the extent that other spent nuclear fuel cases involve plaintiffs who sold or purchased nuclear assets, we are currently unaware of any production specifically related to those transactions.

The Court of Federal Claims has entered a protective order in the ConEd case, a copy of which is available on the Court's PACER site, that is similar to those issued in other spent nuclear fuel cases pending before the Court, and, to the extent that any plaintiff designated particular documents as protected, we can produce the plaintiffs' information subject to that order. However, we understand that several plaintiffs in these cases have expressed concern about confidential or proprietary information that they may have produced to us and desire to ensure that distribution of the confidential or proprietary information is restricted. Although we certainly have an obligation to comply strictly with the stated requirements of the existing protective orders in these cases, the existing protective orders, as you may be aware, do not limit distribution of protected documents to attorneys, experts, and consultants, but may permit distribution of documents to company personnel to at least some degree. Although we depend upon documents produced to us from the plaintiffs in developing litigation strategies in response to plaintiffs' damages claims, we cannot know the extent to which the plaintiffs in various cases may be damaged or concerned about disclosures of their documents, even under the existing protective orders, to plaintiffs in other spent nuclear fuel cases or specifically to ConEd.

Because the plaintiffs that produced documents to us are in a far better position than we are to identify whether production of these documents to ConEd and, potentially, to other plaintiffs would harm their interests, we are notifying you of ConEd's request and have attached to this letter a copy of ConEd's most recent explanation of the types of documents that it is seeking. To the extent that your client believes that we should not produce the documents that your client produced to us to ConEd, we need you to notify us of that fact by Friday, May 5, 2006, and identify for us the basis upon which we should withhold those documents. Further, to the extent that you want to negotiate some additional restrictions upon ConEd's distribution of any documents that your client produced to us, we would ask that you contact counsel for ConEd to attempt to resolve that issue directly with ConEd. Alternatively, you may be able to negotiate another solution with ConEd to a wholesale production of an individual plaintiff's documents to ConEd by the Government, such as an agreement by an individual plaintiff with ConEd for the plaintiff to cull and produce itself those documents responsive to ConEd's request from that plaintiff's total production.

Given that the requested documents did not come from the Government's files, and given that we have them only because they were produced in this litigation, we are in a difficult position in attempting to respond to ConEd's demands while attempting to honor any concerns that other plaintiffs have expressed in the past about distribution of their documents. Nevertheless, we feel it necessary to provide those plaintiffs whose documents we may have to produce an opportunity to intervene in and attempt to resolve any concerns about this matter themselves, before we have produced any potentially confidential or proprietary information to ConEd. If we do not hear from any particular plaintiff or entity that we have identified above as one whose documents we would have to produce to respond to ConEd's document production requests, we will assume that the particular plaintiff does not object to our production of its documents, subject where appropriate to the existing protective order, and we will make

available to ConEd those documents for its review and copying at a mutually agreeable date and time.

Thank you in advance for your attention to this matter. To the extent that your client is able to resolve this matter directly with ConEd, or to the extent that your client elects not to challenge the Government's response to ConEd's production request, we would appreciate it if you would notify us of that fact.

Very truly yours,

HAROLD D. LESTER, JR.
Assistant Director
Commercial Litigation Branch
Civil Division

Attachment

cc: David A. Churchill
Jenner & Block LLP
601 Thirteenth Street, N.W.
Suite 1200 South
Washington, D.C. 20005-3823

JENNER&BLOCK

April 18, 2006

Jenner & Block LLP
601 Thirteenth Street, NW
Suite 1200 South
Washington, DC 20005-3823
Tel 202 639-6000
www.jenner.com

Chicago
Dallas
New York
Washington, DC

David A. Churchill
Tel 202 639-6056
Fax 202 637-6370
dchurchill@jenner.com

***VIA FACSIMILE AND REGULAR MAIL***

Harold D. Lester, Jr.
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
National Courts Section
1100 L Street, N.W.
Washington DC 20530

**Re:** ***Consolidated Edison Company of New York v. United States***
***Case No.* 04-0033**

Dear Harv:

I write to respond to your letter dated April 12, 2006, which addressed several discovery issues we have been attempting to resolve. Without ignoring the other issues in your letter (which I will address at a later time), I would like to focus on a key issue that appears under your heading titled, "Copies of Documents Produced By Other SNF Plaintiffs And Other Third Parties," appearing initially on page 3.

We have expressed an immediate need "to review discovery materials the Government has received or submitted in relation to the sale or purchase of the Pilgrim, Indian Point Unit 3, Fitzpatrick, Vermont Yankee, and Indian Point 1 and 2 nuclear plants and the associated Standard Contracts for SNF disposal." March 10, 2006 Letter, at 3. Without these documents, our ability to develop our affirmative case is substantially impaired, and will certainly hinder our ability to meet the approaching deadlines established by the Court.

Despite the obvious relevance of these materials, you object to production on several grounds, none of which is persuasive.

First, you claim that producing more than "three million pages of documents from various SNF plaintiffs and other third parties" is "unduly burdensome." April 12 Letter, at 2. To be clear, we are not interested in the three million documents collectively produced by Plaintiffs in other SNF cases, only those involving the purchase or sale of a nuclear plant. Of the narrowed group of documents we have requested, you state that only Boston Edison Company, Entergy Nuclear Generation Company, and to a limited extent, the Power Authority of the State of New York, have produced documents to the Government thus far.[1] We assume the Government has tracked the source of the documents it has received in discovery, and is able to produce a subset of documents related to particular cases or parties. There is thus no burden in this production.

[1] To the extent the Government has not received discovery in the other cases addressed by Con Edison's letter, we request that you identify when discovery is anticipated and supplement buyer/seller document productions to Con Edison when those documents are received.

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
CB

Second, you object that even producing such a limited subset of documents will not be performed until Con Edison makes clear "the relevance of the entirety of the third-party document production." April 12 Letter, at 4 & n.1. Con Edison has underscored its focus on other SNF buyer/seller industry documents at every stage of this litigation. Since the day that Con Edison filed its complaint, it has consistently maintained that "DOE's failure to perform its statutory and contractual obligations to remove SNF caused a number of potential purchasers for nuclear generating facilities such as Indian Point to be artificially and improperly constrained, thereby reducing the beneficial effects of a competitive auction for these assets." Complaint, at 24 (filed Jan. 13, 2004) (emphasis added).

The relevance of these documents is hardly confusing, contrary to your letter. As I made clear during a recent teleconference with Judge Wheeler and Joshua Gardner, "the factual underpinnings [of our diminished value claim] will come from the various evaluation methodologies that were used throughout the industry, not just by our buyer but throughout the industry at about the time our sale took place." Transcript, at 4 (March 9, 2006). I further indicated that we would be looking for those valuation models from the Government:

> What I do believe [to be] the case, however, is that many of the potential buyers and seller did create valuation methodologies for these various plants that were bought and sold in the timeframe in which we are interested, and the Justice Department, through discovery in these cases, has obtained through discovery of other plaintiffs -- buyers and sellers -- all of these valuation models."

The very quotations you cite from our January 20, 2006 hearing before Judge Wheeler in your April 12 letter make my point. There, I explained that our "theory of the case is not that ENIP paid less, but that the market was depressed in general." I further explained that, "our testimony will be to the effect that the entire market was depressed to the point that whether it was ENIP that ultimately bought this plant or some other company that bought this plant, the entire value of the plant was hugely diminished because of the government's breach of contract in 1998." Transcript, at 45-46 (Jan. 20, 2006). To show that market depression, we need access to buyer/seller valuation models and other documents pertaining to the sale of the nuclear facilities at issue in each case.

We believe that this letter, our previous representations to the Court, our complaint, and our initial disclosures,[2] have made our interest in these documents, and their relevance, abundantly clear. Moreover, the Government's own interest in such documents is manifest by

---

2 Contrary to your representation that Con Edison's initial disclosures were due on Tuesday, April 11, 2006, they were timely submitted on April 12, 2006. *Consolidated Edison Company of New York, Inc., v. United States*, No. 04-0033C, Order, at 1 ("Plaintiff has represented that it will transmit its initial disclosures to Defendant on April 12, 2006.") (unpublished opinion). This is at least the third time that the Government has misstated a due date in correspondence to Con Edison. I am sympathetic to the fact that you have many ongoing cases, but please call me before representing that we have missed a deadline so that I may confirm with you the correct deadline.

JENNER&BLOCK

the fact that they were sought out in discovery. Since the Government will no doubt attempt to use those documents to test, question and quantify the extent to which its conduct did or did not affect the value of nuclear assets, in Con Edison's case, it would be unfair for the Government to attempt to shield those critical documents from Con Edison's legitimate requests to review them well in advance of trial.

Third, you object that you are constrained in sharing the documents you have received from other SNF plaintiffs because of concerns regarding the proprietary and confidential information contained in other SNF plaintiffs' documents. The parties have had a protective order on file in this case since May 18, 2004, which to our knowledge is a standard form of protective order that has been used in SNF cases. That order expressly proscribes disclosures to non-spent fuel litigants, and hence supplies no basis for objecting to our discovery. To the extent the provisions of this protective order have been superceded, expanded or affected by collateral agreements, we request copies of such other agreements so we can determine whether Con Edison is able to make reasonable accommodations in order to protect the proprietary information in these materials.

We request production of the documents you have received from Boston Edison Company and Entergy Nuclear Generation Company by April 26, 2006. As for the preferred mode of production, we would appreciate continuing to receive productions electronically, as the Government has recognized it has done in the past. April 13 Letter, at 4.

If the Government is unable to meet our proposed deadline, we plan to address this issue with Judge Wheeler, who indicated that questions surrounding our ability to obtain this information from the Government should be resolved "earlier rather than later," Transcript, at 9 (March 9, 2006), given the other deadlines looming in this case.

Thank you for your attention in this matter. Please call me if you have any questions.

Sincerely,

David A. Churchill

DAC

# Exhibit G

Pillsbury
Winthrop
Shaw
Pittman LLP

725 South Figueroa Street
Suite 2800
Los Angeles, CA 90017-5406

Tel 213.488.7100
Fax 213.629.1033
www.pillsburylaw.com

May 5, 2006

Alex D. Tomaszczuk
Phone: 213.488.7110
alex.tomaszczuk@pillsburylaw.com

VIA FACSIMILE & FIRST CLASS MAIL

Harold D. Lester, Jr., Esq.
Assistant Director - Commercial Litigation
United States Department of Justice
Civil Division
Eighth Floor Mailroom
1100 L Street, N.W.
Washington, DC 20530

Re: *Consolidated Edison Co. of New York v. United States*
No. 04 0033C (Fed. Cl.)

Dear Mr. Lester:

I write in response to your letter of April 27, 2006 concerning the release to Consolidated Edison Company of New York ("Con Ed") and/or its counsel, David Churchill, Esquire, of Jenner & Block of certain documents "the Government has received through discovery 'in relation to the sale or purchase of the Pilgrim, Indian Point Unit 3, Fitzpatrick, Vermont Yankee, and Indian Point 1 and 2 nuclear plants and the associated Standard Contracts for disposal,' and apparently, in relation to the sale or purchase of any other nuclear reactor." These documents (hereinafter referred to as the "purchase and sale agreements and related documents") were submitted to the Government during the discovery process by various clients whom we are representing here, specifically including: Entergy Nuclear Generation Company, Entergy Nuclear Indian Point 2, LLC, Entergy Nuclear Fitzpatrick, LLC, Entergy Nuclear Indian Point 3, LLC, Entergy Nuclear Operations, Inc. and Entergy Nuclear Vermont Yankee (collectively "Entergy"), Florida Power & Light Company ("FP&L"),[1] PSEG Nuclear, L.L.C. and Public Service

[1] One of the FP&L entities was recently served with a subpoena by the Government in connection with the Con Ed case.

Harold D. Lester, Esq.
May 5, 2006
Page 2

Electric and Gas Company ("PSEG") and Vermont Yankee Nuclear Power Corporation ("Vermont"). Each of these utility clients objects to the plan outlined in your letter, which contemplates the wholesale release of confidential purchase and sale agreements and related documents to Con Ed and/or its counsel, subject only to the constraints of the current protective order entered in the spent nuclear fuel ("SNF") cases.

Entergy, in particular, objects to any effort by Con Ed or its counsel to obtain access to the wide range of material Entergy has produced to the Government. That material relates to a variety of different nuclear plant transactions that simply are not at issue and not relevant to the Con Ed case. Furthermore, to the extent Con Ed seeks to pursue a diminution in value claim, Entergy believes the information needed to pursue that claim is contained in the actual purchase and sale agreement for the Indian Point 2 plant, which Con Ed presumably has as a party to that agreement. Certainly the mere fact that Con Ed has a pending SNF claim at the Court does not justify release to Con Ed of all the files Entergy has produced to the Government in connection with Entergy's various pending SNF cases. In short, Entergy objects to the "fishing expedition" that Con Ed appears to be pursuing.

Apart from the fact that Con Ed's request is overbroad and not reasonably calculated to lead to the discovery of admissible evidence in its case, the proposed solution outlined in your letter is not acceptable because it would allow Con Ed and/or its counsel essentially unfettered access to sensitive business information of the utility clients I represent. As your letter recognizes (page 3), the current SNF protective order "may permit distribution of documents to company personnel to at least some degree." We agree with the Government's interpretation of the current protective order. While that may not pose a problem in terms of shared access among the utility plaintiffs to some of the documents produced by the utilities in the SNF cases, the purchase and sale agreements and related documents (which include financial models, business analyses, and accounting records) are very sensitive from both a financial and ongoing competitive standpoint. Some of the financial models themselves constitute trade secrets and are very tightly controlled. Con Ed personnel need not and should not have access to such information. The existing protective order does not provide adequate protection to ensure that the confidential material of the utilities I represent is neither disclosed to their competitors nor misused by any party.

While the utility clients I represent are sympathetic to the constraints faced by the Government in responding to Con Ed's discovery request, the solution proposed in your April 27 letter is not acceptable to them. I will contact you early next week to discuss this matter further. Pending resolution of this issue, we request that the Government not

release any of the purchase and sale agreements and related documents to Con Ed or its counsel. If the Government intends to release such documents over these objections, I would ask that you notify me of this fact so we can seek immediate relief from the Court.

Your cooperation in bringing this matter to our attention is appreciated.

Sincerely yours,

Alex D. Tomaszczuk
Counsel for Entergy, FP&L,
PSEG and Vermont

Enclosure

cc: David A. Churchill, Esq.
M. Stanford Blanton, Esq.
Richard J. Conway, Esq.
Brad Fagg, Esq.
Norman M. Hirsch, Esq.