# Exhibit H

Pillsbury
Winthrop
Shaw
Pittman LLP

1650 Tysons Boulevard
McLean, VA 22102-4859

Tel 703.770.7900
Fax 703.770.7901
www.pillsburylaw.com

**Alex D. Tomaszczuk**
703.770.7940
alex.tomaszczuk@pillsburylaw.com

August 30, 2006

**By Facsimile and U.S. Mail**

David A. Churchill, Esq.
Jenner & Block LLP
601 Thirteenth Street, N.W.
Suite 1200 South
Washington, D.C. 20005-3823

Re: **Consolidated Edison Co. of New York v. United States, No. 04-0033C**

Dear Mr. Churchill:

I write regarding the proposed Amended and Supplemental "Agreement and Protective Order" that your client Consolidated Edison Company of New York ("ConEd") and the Government have apparently agreed upon in principle in the above-referenced case. As you are aware, my associate Jack Chu had a telephone conversation with your colleague Cynthia Robertson on the afternoon of August 29, 2006, during which Mr. Chu expressed some of our plaintiff utility clients' concerns about these proposed agreements and protective orders. In particular, we object to the language in paragraph 9 of the "Amended Agreement and Protective Order" that appears to place on our clients the burden of showing that proprietary documents they had produced to the Government in their own spent fuel damages cases warrant designation as "Confidential Material" in ConEd's case, in the event that ConEd or the Government objects to such a designation for particular documents. While there may be reasons to levy on a party the burden of establishing good cause for a document's protection under a protective order, that assignment of burdens does not make sense as applied to third parties with at most a tangential connection to the case. Simply put, our clients object to being placed in a position where they must bear the burden of defending a myriad of collateral actions in other spent fuel cases simply to keep their highly confidential business documents from becoming publicly available.

We are also concerned about the practicalities of how the parties in ConEd's case intend to comply with the protective order regarding confidential material that our clients have already produced to the Government in their own cases – documents that do not necessarily contain the protective order legend specified in paragraph 2 of the proposed "Amended Agreement and Protective Order." Although Ms. Robertson explained to Mr. Chu that any of our clients' proprietary documents that the Government plans to produce to ConEd would implicitly be treated as confidential material under the amended and supplemental agreements and protective orders, we believe that the amended protective order in ConEd's case should explicitly designate

400448253v1

Pillsbury
Winthrop
Shaw
Pittman LLP

David A. Churchill, Esq.
August 30, 2006
Page 2

documents that our clients have already produced to the Government as confidential material, in order to avoid the unnecessary burden and cost of re-stamping these documents as confidential material in the case.

In summary, as has been true for some time, our clients are amenable to ConEd's litigation counsel having access to their proprietary documents under appropriate circumstances, but we do not believe that the amended and supplemental agreements and protective orders that ConEd and the Government have agreed upon adequately protect our clients' interests. Nonetheless, we remain hopeful that a mutually acceptable solution for all parties can be reached without any further involvement by Judge Wheeler. We appreciate your continued understanding in this matter, and welcome any comments or questions you may have regarding this matter.

Sincerely,

Alex D. Tomaszczuk

Counsel for System Fuels, Inc., Entergy Nuclear Generation Company, Entergy Nuclear Operations, Inc., Entergy Nuclear Indian Point 2, LLC, Entergy Nuclear Indian Point 3, LLC, Entergy Nuclear Fitzpatrick, LLC, Entergy Nuclear Vermont Yankee LLC, Power Authority of New York, Vermont Yankee Nuclear Power Corporation, PSEG Nuclear LLC, Public Service Electric and Gas Company, and Florida Power & Light Company

cc: Harold D. Lester, Jr., Esq.
L. Jager Smith, Jr., Esq.
Mitch Ross, Esq.
Jeffrie Keenan, Esq.
John J. Boguslawski
Gerald Goldstein, Esq.

# Exhibit I

JENNER&BLOCK

November 30, 2006

Jenner & Block LLP
601 Thirteenth Street, NW
Suite 1200 South
Washington, DC 20005-3823
Tel 202 639-6000
www.jenner.com

Chicago
Dallas
New York
Washington, DC

David A. Churchill
Tel 202 639-6056
Fax 202 637-6370
dchurchill@jenner.com

***VIA FACSIMILE AND REGULAR MAIL***

Harold D. Lester, Jr.
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
National Courts Section
1100 L Street, N.W.
Washington DC 20530

**Re:** ***Consolidated Edison Company of New York v. United States***
***Case No. 04-0033***

Dear Harv:

Per our discussions last week, it appears from several indicators that the Government's production of third-party valuation documents, initiated after entry of the Court's Supplemental Protective Order in late August, remains substantially incomplete. I will relate several examples of apparent gaps in production which, following our conversation, I understand you have agreed to investigate with the assistance of your document management staff.

First, with respect to the buyer of the Indian Point facility in question in this case, Entergy Nuclear Indian Point (ENIP), we have received from you no documents at all amounting to a valuation of the facility before the purchase. We understand that ENIP had agreed to produce documents to the Government relating to the sale of Indian Point in the July/August time frame of this year, and we assumed that the valuation documents would have been part of this production. Such a valuation must have been conducted by the buyer of this plant, if for no other reason than it had to develop its bid amount and obtain internal corporate approvals at the Board of Directors level for such an investment.

Second, with respect to the sale of the Pilgrim facility, we have from you a detailed listing, by box number, of documents Entergy apparently provided to the Government in response to discovery (attachment 1). We have been unable to match the documents we have received from the Government with Entergy's listing of documents it provided to you. Our attempts to match these documents to Entergy's listing have been complicated by the fact that it appears that the Government did not produce the documents in the same order they were received from Entergy. In fact, it appears that the Government has produced the documents to us using its internal own bates numbering system rather than Entergy's. We would appreciate a copy of the documents in the form they were received, and/or confirmation that each document listed by Entergy has in turn been provided to Con Edison.

Third, we have not been provided with the filed expert reports and related deposition transcripts and exhibits dealing with the partially-consolidated cases relating to the Pilgrim transaction, to which Boston Edison and Entergy are parties. If, in the case of the relevant depositions, this is an issue of compensating the reporters who produced the deposition, we are happy to provide appropriate compensation to them directly. You stated you are not willing to produce these documents to us because of the objection of one or both plaintiffs in those cases, on the basis that you do not want "to be caught in the middle" between and among plaintiffs in these cases. Given the Court's entry of a Supplemental Protective Order in this case in August dealing with the concerns of other plaintiffs, the Government has an affirmative obligation to provide all such materials to Con Edison directly so long as they are relevant. And because these reports and depositions deal with the sale of a similarly-situated nuclear plant to the same buyer in the same approximate time frame as Con Edison's sale of Indian Point, the relevance of these documents to our efforts is beyond serious dispute. We again renew our request for these materials.

Fourth, we have in the discovery you provided two documents from Dominion Resources that appear to relate to that company's evaluation of a potential bid for purchase of Con Edison's Indian Point 2 facility (attachments 2 and 3). Both have been entirely redacted except for the headings that identify the documents to Indian Point. There is no explanation as to why the copies of the documents as provided to Con Edison should be so heavily redacted, although we have received early correspondence between the Government and Dominion where Dominion refused to make production of valuation materials in response to the Government's April 2006 third party subpoena. We presume that you have undertaken further communications with Dominion to eliminate whatever concerns it may have as to the production of these and other relevant documents. We have meanwhile undertaken to provide Dominion with copies of the Court's revised Protective Order and Supplemental Protective Order issued in this case on August 31, 2006.

Fifth, our review of the materials produced in discovery to Con Edison by the Government does not reveal comprehensive plant valuation materials emanating from Constellation, Florida Power & Light, or AmerGen, all of whom successfully acquired divested nuclear units and received subpoenas from you in April 2006 specifically calling forth "all documents related to sales comparable to Indian Point or other sales and/or purchases of interests in nuclear power plants." We request specific information as to plant sale-related discovery materials sought and received by the Government from all such entities in this and all other SNF cases.

Sixth, our efforts to locate the Government's written discovery requests to other SNF plaintiffs, which you indicated would be found on the Government's SNF website, have been in vain. We have several times inquired as to whether the Government is posting these documents, and we have yet to receive a definitive response.

With these illustrations, it seems clear that either the Government has not concluded the discovery it has stated it intends to pursue with parties to the various sales of nuclear plants at issue in these SNF cases, or that such discovery as the Government has obtained has not been provided to Con Edison. Please get back to us at your earliest convenience with a complete status report as to the documents we are seeking, and provide us with assurance that relevant discovery materials from these entities, including documents pertaining to other transactions, will be timely provided to us. Our continuing inability to obtain access to these key materials will adversely affect our ability to satisfy the Court's schedule for this case, beginning with our filing deadline for expert reports in early March 2007.

Please give me a call if you have questions about any of the above.

Sincerely,

David Churchill by [signature]

David A. Churchill

# Exhibit J

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| **CONSOLIDATED EDISON COMPANY OF NEW YORK, INC.,**<br><br>Plaintiff,<br><br>v.<br><br>**THE UNITED STATES,**<br><br>Defendant. | No. 04-0033C<br>(Judge Wheeler) |

**OBJECTIONS OF THIRD PARTY ENTERGY CORPORATION**
**TO PLAINTIFF'S SUBPOENA *DUCES TECUM***

Pursuant to RCFC 45(c)(2)(B), Entergy Corporation ("Entergy"), acting by and through the undersigned counsel, makes the following written objections to the inspection and copying of documents identified by Plaintiff Consolidated Edison Company of New York, Inc. ("ConEd") in its subpoena *duces tecum* dated December 21, 2006:

**GENERAL OBJECTIONS**

1. Entergy objects to Plaintiff's document requests to the extent that they are overly broad and/or not reasonably calculated to lead to the production of information that is relevant to ConEd's claim or a defense thereto. RCFC 26(b)(1).

2. Entergy objects to Plaintiff's instructions or requests to the extent that they impose or seek to impose obligations inconsistent with or greater than those imposed by the Rules of the Court of Federal Claims. In particular, Entergy objects to the definition of "the Company" to include all of its subsidiaries and affiliates.

3. Entergy objects to Plaintiff's document requests to the extent that they seek

information that is protected by the attorney-client privilege and/or work-product doctrine.

4. Entergy reserves the right to raise any additional objections to Plaintiff's document requests based on relevance, materiality, burdensomeness or other grounds as may be directed or permitted by the Court.

5. Entergy reserves the right to raise any objections concerning the admissibility of any information or documents ultimately provided, including objections with respect to the relevance or materiality of such information or documents.

**PLAINTIFF'S DOCUMENT REQUESTS**

1. All documents related to the Company's evaluation of whether to purchase Indian Point.

**RESPONSE:** Entergy objects to this request on grounds that it is overbroad and unduly burdensome. Because of the breadth of the definition of "related to" in this request, this request calls for any documents that mention Entergy's decision to purchase Indian Point. Subject to this objection, Entergy will make available for inspection within 30 days (or as otherwise agreed) the documents it relied upon in evaluating its purchase of Indian Point.

2. All Valuation Documents related to Indian Point's assets, both in the context of the competitive auction through which Indian Point was sold and at any other point in time.

**RESPONSE:** Entergy objects to this request on grounds that Valuation Documents prepared after the sale of Indian Point are irrelevant to the instant action. Subject to this objection, Entergy will make available for inspection within 30 days (or as otherwise agreed) the Valuation Documents prepared in connection with the competitive auction pursuant to which

Entergy acquired Indian Point.

3. All documents assessing the business prospects or future profitability of Indian Point or any other Nuclear facility purchased by the Company after January 31, 1998 and before January 1, 2003, including discussion of the competitiveness of nuclear energy relative to other sources of power generation, spent fuel disposal options, safety issues, and energy market restructuring.

**RESPONSE:** Entergy objects to this request on grounds that it is overbroad and unduly burdensome. Documents related to the business prospects or future profitability of plants that Entergy purchased other than Indian Point, and documents concerning Indian Point that were created after the purchase of Indian Point by Entergy, are also irrelevant to the instant action. Furthermore, discovery concerning the "future profitability" of *any* plants is beyond the scope of permissible spent nuclear fuel damages claims, based on the decision of the Federal Circuit in Indiana Michigan Power Co. v. United States, 422 F.3d 1369 (Fed. Cir. 2005). Subject to these objections, Entergy will make available for inspection within 30 days (or as otherwise agreed) the documents related to the business prospects of Indian Point that were prepared prior to its acquisition by Entergy.

4. All Valuation Documents related to the Indian Point 3 Nuclear Power Station ("Indian Point 3").

**RESPONSE:** Entergy objects to this request on grounds that Valuation Documents pertaining to a plant other than Indian Point (defined in ConEd's subpoena as referring only to

Indian Point 1 and 2) are irrelevant to the instant action. Such a request is also overbroad and unduly burdensome.

5. All Valuation Documents related to the James A. FitzPatrick Nuclear Power Station ("FitzPatrick").

**RESPONSE:** Entergy objects to this request on grounds that Valuation Documents pertaining to a plant other than Indian Point are irrelevant to the instant action. Such a request is also overbroad and unduly burdensome.

6. All Valuation Documents related to the Pilgrim Nuclear Power Station ("Pilgrim").

**RESPONSE:** Entergy objects to this request on grounds that Valuation Documents pertaining to a plant other than Indian Point are irrelevant to the instant action. Such a request is also overbroad and unduly burdensome.

7. All Valuation Documents related to the Vermont Yankee Nuclear Power Station ("Vermont Yankee").

**RESPONSE:** Entergy objects to this request on grounds that Valuation Documents pertaining to a plant other than Indian Point are irrelevant to the instant action. Such a request is also overbroad and unduly burdensome.

8. All documents assessing the effect, including incremental costs and risks, of the

DOE's failure to transport or delay in the acceptance of SNF or HLW on the value of Indian Point and/or any other Nuclear facility bought by the Company after January 31, 1998 and before January 1, 2003.

**RESPONSE:** Entergy objects to this request on grounds that it is overbroad and unduly burdensome. Documents related to the value of plants that Entergy purchased other than Indian Point are also irrelevant to the instant action. Subject to these objections, Entergy will make available for inspection within 30 days (or as otherwise agreed) all documents assessing the effect of the DOE's failure to transport or delay in the acceptance of SNF or HLW on the value of Indian Point that were prepared prior to its acquisition by Entergy.

9. All documents related to the estimated market value of Indian Point and/or any other nuclear facility bought by the Company after January 31, 1998 and before January 1, 2003.

**RESPONSE:** Entergy objects to this request on grounds that it is overbroad and unduly burdensome. Documents related to the value of plants that Entergy purchased other than Indian Point are also irrelevant to the instant action. Subject to these objections, Entergy will make available for inspection within 30 days (or as otherwise agreed) the documents related to the estimated market value of Indian Point that were prepared prior to its acquisition by Entergy.

10. All NRC Licensing Documents related to Indian Point.

**RESPONSE:** Entergy objects to this request on grounds that it is overbroad and unduly burdensome. Because of the breadth of the definition of "related to" in this request, this request calls for any NRC Licensing Documents that may in any way mention Indian Point.

Furthermore, Entergy objects to this request as the information sought is available, in whole or in part, to ConEd through the NRC electronic reading room (the agency-wide documents access and management system, known as "ADAMS"). To the extent that ConEd narrows this request, Entergy will produce responsive documents to ConEd at a mutually agreeable time and place.

11. All NRC Licensing Documents related to Indian Point 3.

**RESPONSE:** Entergy objects to this request on grounds that NRC Licensing Documents pertaining to a plant other than Indian Point are irrelevant to the instant action. Such a request is also overbroad and unduly burdensome. Furthermore, Entergy objects to this request as the information sought is available, in whole or in part, to ConEd through the NRC electronic reading room (the agency-wide documents access and management system, known as "ADAMS").

12. All NRC Licensing Documents related to FitzPatrick.

**RESPONSE:** Entergy objects to this request on grounds that NRC Licensing Documents pertaining to a plant other than Indian Point are irrelevant to the instant action. Such a request is also overbroad and unduly burdensome. Furthermore, Entergy objects to this request as the information sought is available, in whole or in part, to ConEd through the NRC electronic reading room (the agency-wide documents access and management system, known as "ADAMS").

13. All NRC Licensing Documents related to Pilgrim.

**RESPONSE:** Entergy objects to this request on grounds that NRC Licensing Documents pertaining to a plant other than Indian Point are irrelevant to the instant action. Such a request is also overbroad and unduly burdensome. Furthermore, Entergy objects to this request as the information sought is available, in whole or in part, to ConEd through the NRC electronic reading room (the agency-wide documents access and management system, known as "ADAMS").

14. All NRC Licensing Documents related to Vermont Yankee.

**RESPONSE:** Entergy objects to this request on grounds that NRC Licensing Documents pertaining to a plant other than Indian Point is irrelevant to the instant action. Such a request is also overbroad and unduly burdensome. Furthermore, Entergy objects to this request as the information sought is available, in whole or in part, to ConEd through the NRC electronic reading room (the agency-wide documents access and management system, known as "ADAMS").

15. All documents related to the Company's submission of testimony or comments on the fairness or prudence of the proposed sales transaction to state rate regulatory authorities or in connection with state proceedings to approve the sale of a Nuclear facility bought by the Company after January 31, 1998 and before January 1, 2003.

**RESPONSE:** Entergy objects to this request on grounds that it is overbroad and unduly burdensome. Documents related to Entergy plant purchases other than Indian Point are also irrelevant to the instant action. Subject to these objections, Entergy will make available for

inspection within 30 days (or as otherwise agreed) the testimony or comments submitted to state regulatory authorities in connection with Entergy's acquisition of Indian Point.

16. All documents related to expert reports filed by either the Plaintiffs or Defendant in Boston Edison Company v. United States, Nos. 99-447C and 03-2626C (Fed. Cl. consolidated on July 29, 2005).

**RESPONSE:** Entergy objects to this request on grounds that the expert reports in another spent nuclear fuel damages case are irrelevant to the instant action. Such a request is also overbroad and unduly burdensome, as all documents "related to" the expert reports in those cases include voluminous pleadings, orders, and a wide array of privileged material. Moreover, Entergy notes that no expert reports have been submitted on behalf of Entergy Nuclear Generation Company in the above-referenced action.

17. All documents related to expert witness deposition transcripts and exhibits filed by either the Plaintiffs or Defendant in Boston Edison Company v. United States, Nos. 99-447C and 03-2626C (Fed. Cl. consolidated on July 29, 2005).

**RESPONSE:** Entergy objects to this request on grounds that the deposition transcripts and exhibits filed in another spent nuclear fuel damages case are irrelevant to the instant action. Such a request is also overbroad and unduly burdensome, as all documents "related to" the expert reports in those cases include voluminous pleadings, orders, and a wide array of privileged material. Moreover, Entergy notes that because no expert witness retained by Entergy Nuclear Generation Company has yet been deposed in its case, no such transcripts exist.

18. All documents related to Hurdle Rates or other criteria (quantitative and qualitative) guiding the Company's investment and acquisition decisions related to Nuclear facilities and Fossil Fuel facilities.

**RESPONSE:** Entergy objects to this request on grounds that it is overbroad and unduly burdensome. Because this request is not reasonably limited in either subject matter or temporal scope, it appears to call for all documents guiding any investment and acquisition decisions that Entergy has ever undertaken for Nuclear facilities and Fossil Fuel facilities. Such a request is also objectionable to the extent it seeks thousands of documents that can have no possible relevance to the instant action.

19. All documents related to estimates of financing costs for Fossil Fuel facilities.

**RESPONSE:** Entergy objects to this request on grounds that it is overbroad and unduly burdensome. Because this request is not reasonably limited in either subject matter or temporal scope, it appears to call for all documents related to any estimates that Entergy has ever made of financing costs for Fossil Fuel facilities. Such a request is also objectionable to the extent it seeks thousands of documents that can have no possible relevance to the instant action.

20. All documents related to net present value models and discounted cash flow models run for Fossil Fuel facilities.

**RESPONSE:** Entergy objects to this request on grounds that it is overbroad and unduly burdensome. Because this request is not reasonably limited in either subject matter or temporal

scope, it appears to call for all documents related to any net present value and discounted cash flow models that Entergy has ever run for Fossil Fuel facilities. Such a request is also objectionable to the extent it seeks thousands of documents that can have no possible relevance to the instant action.

Dated: January 22, 2007

Respectfully submitted,

Alex D. Tomaszczuk /by [signature]

Alex D. Tomaszczuk
**PILLSBURY WINTHROP**
**SHAW PITTMAN LLP**
1650 Tysons Boulevard
McLean, VA 22102
(703) 770-7940
(703) 770-7901 (fax)
Counsel for Third-Party
Entergy Corporation

OF COUNSEL
Jay E. Silberg
Daniel S. Herzfeld
Jack Y. Chu
**PILLSBURY WINTHROP**
**SHAW PITTMAN LLP**
2300 N Street, N.W.
Washington, D.C. 20037
(202) 663-8000
(202) 663-8007 (fax)

L. Jager Smith, Jr.
**WISE CARTER CHILD**
**& CARAWAY, P.A.**
1340 Echelon Parkway
Jackson, MS 39213
(601) 368-5572
(601) 368-5816 (fax)

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the OBJECTIONS OF THIRD PARTY ENTERGY CORPORATION TO PLAINTIFF'S SUBPOENA DUCES TECUM was served by facsimile and U.S. Mail (first-class, postage pre-paid) this 22nd day of January, 2007, upon:

David A. Churchill, Esq.
Jenner & Block LLP
601 Thirteenth Street, NW
Suite 1200 South
Washington, D.C. 20005

Counsel for Plaintiff

Joshua E. Gardner, Esq.
Trial Attorney
Commercial Litigation Branch
Civil Division
United States Department of Justice
Washington, D.C. 20530

Attn: Classification Unit
8th Floor, 1100 L Street, N.W.

Counsel for Defendant

# Exhibit K

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| CONSOLIDATED EDISON COMPANY OF NEW YORK, INC., Plaintiff, | |
| v. | No. 04-0033C (Judge Wheeler) |
| THE UNITED STATES, Defendant. | |

**OBJECTIONS OF THIRD PARTY FLORIDA POWER AND LIGHT COMPANY TO PLAINTIFF'S SUBPOENA *DUCES TECUM***

Pursuant to RCFC 45(c)(2)(B), Florida Power and Light Company ("FPL"), acting by and through the undersigned counsel, makes the following written objections to the inspection and copying of documents identified by Plaintiff Consolidated Edison Company of New York, Inc. ("ConEd") in its subpoena *duces tecum* dated December 21, 2006:

**GENERAL OBJECTIONS**

1. FPL objects to Plaintiff's document requests to the extent that they are overly broad and/or not reasonably calculated to lead to the production of information that is relevant to ConEd's claim or a defense thereto. RCFC 26(b)(1).

2. FPL objects to Plaintiff's instructions or requests to the extent that they impose or seek to impose obligations inconsistent with or greater than those imposed by the Rules of the Court of Federal Claims. In particular, FPL objects to the definition of "the Company" to include all of its subsidiaries and affiliates.

3. FPL objects to Plaintiff's document requests to the extent that they seek

information that is protected by the attorney-client privilege and/or work-product doctrine.

4. FPL reserves the right to raise any additional objections to Plaintiff's document requests based on relevance, materiality, burdensomeness or other grounds as may be directed or permitted by the Court.

5. FPL reserves the right to raise any objections concerning the admissibility of any information or documents ultimately provided, including objections with respect to the relevance or materiality of such information or documents.

## PLAINTIFF'S DOCUMENT REQUESTS

1. All documents related to the Company's evaluation of whether to purchase Indian Point.

**RESPONSE:** FPL objects to this request on grounds that it is overbroad and unduly burdensome. Because of the breadth of the definition of "related to" in this request, this request calls for any documents that mention FPL's evaluation of whether to purchase Indian Point. Subject to this objection, FPL will make available for inspection within 30 days (or as otherwise agreed) the documents it relied upon in evaluating whether to purchase Indian Point.

2. All Valuation Documents related to Indian Point's assets, both in the context of the competitive auction through which Indian Point was sold and at any other point in time.

**RESPONSE:** FPL objects to this request on grounds that Valuation Documents prepared after the sale of Indian Point are irrelevant to the instant action. Subject to this objection, FPL will make available for inspection within 30 days (or as otherwise agreed) the Valuation Documents prepared in connection with the competitive auction pursuant to which FPL

considered the acquisition of Indian Point.

3. All documents assessing the business prospects or future profitability of Indian Point or any other Nuclear facility purchased by the Company after January 31, 1998 and before January 1, 2003, including discussion of the competitiveness of nuclear energy relative to other sources of power generation, spent fuel disposal options, safety issues, and energy market restructuring.

**RESPONSE:** FPL objects to this request on grounds that it is overbroad and unduly burdensome. Documents related to the business prospects or future profitability of plants that FPL purchased are also irrelevant to the instant action. Furthermore, discovery concerning the "future profitability" of *any* plants is beyond the scope of permissible spent nuclear fuel damages claims, based on the decision of the Federal Circuit in Indiana Michigan Power Co. v. United States, 422 F.3d 1369 (Fed. Cir. 2005).

4. All Valuation Documents related to the Seabrook Nuclear Power Station.

**RESPONSE:** FPL objects to this request on grounds that Valuation Documents pertaining to a plant other than Indian Point are irrelevant to the instant action. Such a request is also overbroad and unduly burdensome.

5. All documents assessing the effect, including incremental costs and risks, of the DOE's failure to transport or delay in the acceptance of SNF or HLW on the value of Indian Point and/or any other Nuclear facility bought by the Company after January 31, 1998 and before January 1, 2003.

**RESPONSE:** FPL objects to this request on grounds that it is overbroad and unduly burdensome. Documents related to the value of plants that FPL actually purchased are also irrelevant to the instant action (Entergy Corporation, not FPL, acquired Indian Point).

6. All documents related to the estimated market value of Indian Point and/or any other nuclear facility bought by the Company after January 31, 1998 and before January 1, 2003.

**RESPONSE:** FPL objects to this request on grounds that it is overbroad and unduly burdensome. Documents related to the value of plants other than Indian Point are also irrelevant to the instant action. Subject to these objections, FPL will make available for inspection within 30 days (or as otherwise agreed) the documents related to the estimated market value of Indian Point that were prepared prior to the plant's acquisition by Entergy Corporation.

7. All NRC Licensing Documents related to Seabrook Nuclear Power Station.

**RESPONSE:** FPL objects to this request on grounds that NRC Licensing Documents pertaining to a plant other than Indian Point are irrelevant to the instant action. Such a request is also overbroad and unduly burdensome. Furthermore, FPL objects to this request as the information sought is available, in whole or in part, to ConEd through the NRC electronic reading room (the agency-wide documents access and management system, known as "ADAMS").

8. All documents related to the Company's submission of testimony or comments on the fairness or prudence of the proposed sales transaction to state rate regulatory authorities or in connection with state proceedings to approve the sale of a Nuclear facility bought by the

Company after January 31, 1998 and before January 1, 2003.

**RESPONSE:** FPL objects to this request on grounds that it is overbroad and unduly burdensome. Documents related to plant purchases other than Indian Point are also irrelevant to the instant action.

9. All documents related to Hurdle Rates or other criteria (quantitative and qualitative) guiding the Company's investment and acquisition decisions related to Nuclear facilities and Fossil Fuel facilities.

**RESPONSE:** FPL objects to this request on grounds that it is overbroad and unduly burdensome. Because this request is not reasonably limited in either subject matter or temporal scope, it appears to call for all documents guiding any investment and acquisition decisions that FPL has ever undertaken for Nuclear facilities and Fossil Fuel facilities. Such a request is also objectionable to the extent it seeks thousands of documents that can have no possible relevance to the instant action.

10. All documents related to estimates of financing costs for Fossil Fuel facilities.

**RESPONSE:** FPL objects to this request on grounds that it is overbroad and unduly burdensome. Because this request is not reasonably limited in either subject matter or temporal scope, it appears to call for all documents related to any estimates that FPL has ever made of financing costs for Fossil Fuel facilities. Such a request is also objectionable to the extent it seeks thousands of documents that can have no possible relevance to the instant action.

11. All documents related to net present value models and discounted cash flow

models run for Fossil Fuel facilities.

**RESPONSE:** FPL objects to this request on grounds that it is overbroad and unduly burdensome. Because this request is not reasonably limited in either subject matter or temporal scope, it appears to call for all documents related to any net present value and discounted cash flow models that FPL has ever run for Fossil Fuel facilities. Such a request is also objectionable to the extent it seeks thousands of documents that can have no possible relevance to the instant action.

Dated: January 22, 2007

Respectfully submitted,

Alex D. Tomaszczuk /by [signature]

Alex D. Tomaszczuk
**PILLSBURY WINTHROP SHAW PITTMAN LLP**
1650 Tysons Boulevard
McLean, VA 22102
(703) 770-7940
(703) 770-7901 (fax)
Counsel for Third-Party
Florida Power and Light Company

OF COUNSEL
Jay E. Silberg
Daniel S. Herzfeld
Jack Y. Chu
**PILLSBURY WINTHROP SHAW PITTMAN LLP**
2300 N Street, N.W.
Washington, D.C. 20037
(202) 663-8000
(202) 663-8007 (fax)

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the OBJECTIONS OF THIRD PARTY FLORIDA POWER AND LIGHT COMPANY TO PLAINTIFF'S SUBPOENA DUCES TECUM was served by facsimile and U.S. Mail (first-class, postage pre-paid) this 22nd day of January, 2007, upon:

David A. Churchill, Esq.
Jenner & Block LLP
601 Thirteenth Street, NW
Suite 1200 South
Washington, D.C. 20005

Counsel for Plaintiff

Joshua E. Gardner, Esq.
Trial Attorney
Commercial Litigation Branch
Civil Division
United States Department of Justice
Washington, D.C. 20530

Attn: Classification Unit
8th Floor, 1100 L Street, N.W.

Counsel for Defendant