**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
(Electronically Filed on April 2, 2007)

| | |
|---|---|
| **CONSOLIDATED EDISON COMPANY OF NEW YORK, INC.**, Plaintiff, | |
| v. | No. 04-0033C (Judge Wheeler) |
| **THE UNITED STATES**, Defendant. | |

**THIRD-PARTY ENTERGY CORPORATION'S RESPONSE TO PLAINTIFF'S MOTION TO COMPEL DOCUMENTS AND CROSS-MOTION FOR A PROTECTIVE ORDER**

Third-Party Entergy Corporation ("Entergy"), by and through the undersigned counsel, respectfully submits this response in opposition to Plaintiff Consolidated Edison Company of New York, Inc.'s ("ConEd") Motion To Compel Documents dated March 16, 2007 ("Motion to Compel"). In particular, the motion seeks the production of documents allegedly responsive to the subpoena *duces tecum* that ConEd served on Entergy in December 2006. Motion to Compel at Exhibit A. For reasons explained below, however, the vast majority of documents that ConEd seeks are irrelevant to establishing any alleged "diminution in value" damages from Defendant's (the "Government") partial breach of contract and takings in the instant action. Entergy has already produced to ConEd valuation documents pertaining to the Indian Point 1 & 2 nuclear plants ("Indian Point"). Thus, ConEd's motion to compel should be denied.

Pursuant to RCFC 26(c), Entergy also respectfully requests and hereby cross-moves for a protective order limiting the scope of ConEd's discovery of Entergy to documents specifically pertaining to Indian Point. As demonstrated in Exhibits G and H attached to the motion to compel, the undersigned counsel for Entergy has attempted in good faith to confer with counsel for ConEd to resolve the instant discovery dispute without this Court's intervention. Such

colloquy has resulted in the production of voluminous documents. Nonetheless, ConEd's unwillingness to narrow the scope of its overbroad requests continues to place an undue burden on Entergy and requires Entergy to defend against the potential production of highly proprietary and business-sensitive information that would be detrimental to Entergy if used by ConEd for purposes beyond the spent nuclear fuel ("SNF") litigation before this Court. In other words, apart from the irrelevance of the documents that ConEd seeks from Entergy, the production of such documents would place Entergy (a third party) at an unnecessary risk of competitive harm which cannot be mitigated. ConEd has also failed to establish any *bona fide* need for the broad range of documents it now seeks. Hence, Entergy's cross-motion for a protective order should be granted.

## DISCUSSION

Entergy is not a party to the instant action and has no direct interest in the damages claims pertaining to the alleged diminution in value of Indian Point at issue.[1] Nonetheless, ConEd appears to seek an order from the Court compelling Entergy's production of several

[1] The Government has sought on multiple occasions, however, the consolidation of the instant action with Entergy Nuclear Indian Point 2, LLC v. United States, No. 03-2622C ("ENIP2"), which has been assigned to the same presiding judge (and where the plaintiff is one of Entergy's subsidiaries). See, e.g., ENIP2, 62 Fed. Cl. 798 (2004). The Government has maintained that consolidation of these two cases would prevent inconsistent damages awards. Id. at 803. Alternatively, the Government has suggested in many SNF cases involving the buyer and seller of the same plant that any diminution in value damages awarded to the seller should be offset against the buyer's damages to avoid an alleged double recovery. See, e.g., Boston Edison Co. v. United States, 67 Fed. Cl. 63, 66 (2005) ("The government contends that any diminution in value for the sale of Pilgrim recovered in Boston Edison would amount to a judicial determination that Entergy paid a reduced sale price for Pilgrim, and in that circumstance the government suggests it would seek an offset against Entergy for any such damages recovered by Boston Edison"). Thus, under the Government's theory (with which Entergy disagrees), Entergy would have an interest in the instant action if the Court sought to offset any diminution in value damages awarded to ConEd against the plaintiff's damages in ENIP2. Other than the circumstance alleged by the Government, Entergy respectfully submits that it is an uninterested third party here.

categories of documents: (1) valuation and transactional documents related to plants other than Indian Point; (2) expert reports and deposition transcripts filed in another SNF damages case before this Court (and involving a plant other than Indian Point); (3) valuation documents related to sales of fossil fuel electric generation facilities; and (4) valuation documents assessing the future profitability of Indian Point or other nuclear plants. Entergy respectfully submits that none of the documents listed above would establish or assist in establishing damages under ConEd's diminution theory. These documents are not relevant in this case and need not be produced to ConEd. Moreover, many of the documents sought from Entergy are highly proprietary or business-sensitive in nature. Although ConEd alleges that it "is no longer in the business of buying, selling, or operating nuclear generation facilities," much of the information contained in these documents could potentially be used for many other purposes that would cause Entergy competitive harm in the energy industry. Thus, to the extent that the Court finds any probative value in the documents that ConEd seeks from Entergy, the potential burden and harm to Entergy greatly outweighs any such value. For this reason also, Entergy should not be compelled to produce any further documents to ConEd in this case.

## I. DISCOVERY OF PROPRIETARY INFORMATION FROM THIRD PARTIES REQUIRES A GREATER SHOWING OF NEED THAN CON ED HAS DEMONSTRATED

Although ConEd's motion to compel appears to rely on the principle that relevancy under RCFC 26 is construed broadly, the rules governing discovery are not without limitations. See Hickman v. Taylor, 329 U.S. 495, 507-08 (1947). The rules are designed to authorize courts to limit discovery to that which is proper and warranted in the circumstances of the case. Micro Motion, Inc. v. Kane Steel Co., Inc., 894 F.2d 1318, 1322-23 (Fed. Cir. 1990). In particular, this Court has the discretion to limit or preclude pre-trial discovery if it is determined that "justice requires . . . [the] protection of a party or person from annoyance, embarrassment, oppression, or

undue burden or expense . . . ." RCFC 26(c). Good cause for a protective order exists if the discovery request is "considered likely to oppress an adversary or might otherwise impose an undue burden." Capital Properties, Inc. v. United States, 49 Fed. Cl. 607, 611 (2001). Indeed, this Court has noted in another SNF damages case that the resolution of discovery disputes involves balancing the discovering party's need for the information sought against the burden on the interrogated party. Pacific Gas & Elec. Co. v. United States, 69 Fed. Cl. 323, 326 (2005). Furthermore, the fact of Entergy's nonparty status may and should be considered by this Court in weighing the burdens imposed in these circumstances. See American Standard, Inc. v. Pfizer, Inc., 828 F.2d 734 (Fed. Cir. 1987) (affirming district court's restriction of discovery where nonparty status "weigh[ed] against disclosure").

As an operating utility and owner of several plants in the southern and northeastern United States – two of which are the subject of damages trials currently pending[2] before this Court – Entergy has day-to-day obligations to its customers and shareholders and limited resources to devote further time and money to the litigation pursuits of ConEd, which is apparently not involved today in either generating nuclear energy or in having to address at its facilities the ongoing cost of storing SNF due to the Government's breach of contract. Allowing ConEd to seek the broad discovery from Entergy it now seeks would set an unfortunate and potentially dangerous precedent in the "sellers'" SNF cases before this Court. Virtually unfettered access by potential competitors to confidential business records puts Entergy at risk of having to expend vast resources defending itself against collateral actions simply to prevent the

[2] The damages trial in System Fuels, Inc. v. United States, No. 03-2624C (Braden, J.) ("Entergy Mississippi"), took place in September 2006 and January 2007. The parties are currently in post-trial briefing in that case. The damages trial in System Fuels, Inc. v. United States, No. 03-2623C (Lettow, J.) ("Entergy Arkansas"), lasted for approximately three weeks in February 2007, and is currently scheduled to resume in April 2007. Entergy's subsidiaries own the Grand Gulf and Arkansas Nuclear One plants at issue in those two respective cases.

wholesale disclosure of proprietary documents. Such expenditure of resources on peripheral issues would compromise Entergy's ability to litigate its own SNF damages actions in this Court as well. In other words, justice requires the protection of Entergy from such undue burden and expense.

Although a supplemental protective order has been entered in this case to prevent access to confidential material by any personnel (including attorneys) involved in the acquisition or divestiture of electric power plants, the information that ConEd seeks may potentially be used in ways that would harm Entergy in other competitive aspects of the utility industry. For example, the proprietary valuation models that ConEd seeks from Entergy could be used by ConEd for insight into how its competitors approach valuation of energy assets generally. Similarly, access to Entergy documents assessing the future profitability of nuclear facilities would allow ConEd to understand how one of its competitors decides whether to bid on or purchase any asset. Simply put, the harm to Entergy of disclosing how it "thinks" to a potential competitor would essentially defeat the purpose of developing proprietary models and confidential reports in the first place. ConEd cannot establish any kind of need that would warrant such a fundamental intrusion into the business operations of a competitor. See RCFC 26(c)(7) (authorizing protective orders where justice requires protection from discovery of "a trade secret or other confidential research, development, or commercial information"). Similarly, the protection of confidential information and trade secrets is so crucial that this Court's rules explicitly recognize, for example, that a subpoena requiring the disclosure of such information may be quashed unless the party serving it shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship.[3] See Katz v. Batavia Marine & Sporting Supplies, Inc.,

[3] Although Entergy does not seek to quash ConEd's December 2006 subpoena, the point remains that without a showing of substantial need by ConEd, the balance of competing interests

984 F.2d 422 (Fed. Cir. 1993) (quoting FED. R. CIV. P. 45(c)(3)(B), which is substantively identical to RCFC 45(c)(3)(B)).

In summary, ConEd has failed to show the substantial need that would warrant Entergy's disclosure of models and reports that form the underpinnings of its energy asset valuation to a business competitor. Even assuming *arguendo* that the documents that ConEd seeks from Entergy are relevant to the diminution in value claim in this case (as demonstrated below, any documents not related to Indian Point cannot be relevant here), the balance of interests warrants the protection of Entergy's proprietary information. Thus, for these reasons alone, ConEd's motion to compel should be denied and Entergy's motion for a protective order should be granted.

## II. DOCUMENTS PERTAINING TO THE VALUATION OF PLANTS OTHER THAN INDIAN POINT ARE IRRELEVANT TO ITS ALLEGED DIMINUTION IN VALUE

The instant case is one of several dozen SNF damages actions pending before this Court. Each of these SNF cases deals with the same Government breach of the Standard Contract. See Maine Yankee Atomic Power Co. v. United States, 225 F.3d 1336, 1342 (Fed. Cir. 2000) ("The breach involved all utilities that had signed the contract – the entire nuclear electric industry"). Nonetheless, this Court has correctly rejected any efforts by the Government to consolidate the SNF cases as a whole because, *inter alia*, the nuclear plants at issue and the way in which the plaintiff utilities have mitigated the effects of the Government's breach are vastly different from case to case. Thus, the judges in this Court have generally resisted the consideration of how a plaintiff utility acted for one plant in the adjudication of another plaintiff utility's damages claim.

weighs heavily against ConEd for the disclosure of Entergy's proprietary business records and models.

See Entergy Mississippi Trial Transcript at 1566, 1576-77 (attached hereto as Tab A); Entergy Arkansas Trial Transcript at 3168-69 (attached hereto as Tab B).

For similar reasons, the "marketplace" for nuclear generating facilities that ConEd alleges became "depressed" due to the Government's breach sheds no light on how much the value of Indian Point diminished specifically. Cf. Boston Edison Co. v. United States, No. 99-447C et al., 2007 WL 610885, at *13 (Fed. Cl. Feb. 26, 2007) (declining on relevance grounds to allow a plaintiff seller's-utility to depose the Government regarding potential liability for nuclear plants other than the plaintiff's plant). In other words, even if ConEd were correct that the Government's breach affected Entergy's perceived value of Pilgrim, Fitzpatrick, or Vermont Yankee, these plants are sufficiently different from each other (and from Indian Point) physically, geographically, and operationally that the magnitude of diminution in value at each plant would likely depend on the unique circumstances on-site including, *inter alia*, the usable capacity of the spent fuel pool and the available options for additional at-reactor storage (e.g., impending need for dry fuel storage). Thus, in adjudicating ConEd's damages, this Court would not be able to extrapolate any useful information from Entergy's valuation or assessment of non-Indian Point facilities.

Indeed, in denying the Government's motion to dismiss ConEd's diminution in value claim, this Court drew an analogy to construction contracts where a breach occurred due to defective or unfinished construction. Consol. Edison of New York v. United States, 67 Fed. Cl. 285, 290 (2005) (citation omitted). The damages in this case upon which relief may be granted would pertain to the "diminished value of the Indian Point facilities, and '[t]he option of getting another contractor to repair the damage is unavailable . . . because there is no other approved provider of disposal services in this highly regulated industry.'" Id. This use of a defective construction analogy demonstrates that this Court's characterization of ConEd's diminution

claim is based on the effects of the Government's breach on the value of Indian Point only. Just as the defective construction of other properties would have no relevance to the diminution in value of a particular property, the diminution in value of other plants, even if established, would not be any more probative of how much the Government's breach caused Indian Point to diminish in value.[4] See Boston Edison, 2007 WL 610885, at *13 ("[A]ny estimates of liability to owners and operators of facilities other than Boston Edison arguably would not be relevant, and even Boston Edison's relevant interest in the government's estimates ended upon the sale of Pilgrim in 1999. Therefore, Boston Edison may conduct depositions on this topic under RCFC 30(b)(6) but only regarding the government's estimates of its potential liability up to July 13, 1999, and not related to facilities other than the Pilgrim nuclear power generating station.") (emphasis added).

ConEd has also sought production of expert reports and deposition transcripts from Boston Edison Co. v. United States, No. 99-447C (Lettow, J.), with which the case of an Entergy subsidiary, Entergy Nuclear Generation Co. v. United States, No. 03-2626C (Lettow, J.), has been consolidated for a limited purpose. According to ConEd, such materials are relevant "because they will allow Con Edison to understand the Government's defensive strategies in this case." Motion to Compel at 13. That explanation does not, however, justify permitting ConEd a "free ride" on other plaintiffs' work product, as opposed to the Government's expert report. Assuming ConEd's asserted justification applied to both plaintiffs' and Government expert work product, this rationale, on its face, is insufficient to warrant production. The purpose of discovery is to obtain information that appears "reasonably calculated to lead to the discovery of

---

[4] ConEd has also sought production of documents assessing the "future profitability" of Indian Point and other plants that were prepared before the date of sale of a facility. Motion to Compel at 14-15. Such documents are highly proprietary and should not be produced absent a demonstration of substantial need by ConEd. Moreover, for reasons explained above, Entergy's views regarding the future profitability of other plants remain irrelevant.

admissible evidence." RCFC 26(b)(1). An understanding of other plaintiffs' litigation strategy from other cases involving different facts, while potentially helpful to ConEd's development of its own litigation strategy, is not itself "evidence" or likely to lead to the discovery of admissible evidence. Thus, obtaining the work of third parties from other cases (that is not relevant in any event, for reasons stated above) under the guise of "discovery" is simply inappropriate.

Furthermore, ConEd seeks valuation documents from Entergy related to fossil fuel power plants, which are allegedly relevant because ConEd "must compare the market for nuclear electric generation comparable fossil fuel and hydropower electric generation as a means of establishing what the value of Indian Point would have been absent the Government's breach." Motion to Compel at 14. Entergy submits that there are far too many variables that affect valuation between nuclear and other types of plants to make ConEd's proposed comparison of any value (e.g., Three Mile Island-type event risks, unique nuclear licensing issues, nuclear versus fossil fuel cost and availability). How Entergy itself valued fossil fuel plants, however, provides no insight whatsoever in ConEd's effort to establish Indian Point's value absent the Government's breach. Such valuation of non-nuclear electric generating assets merely reflects Entergy's subjective view. It may be that ConEd's theory could be established through an expert on the valuation of non-nuclear generating assets and their markets. However, that is ConEd's burden, not Entergy's. In any event, the documents that Entergy produces regarding fossil fuel valuation would provide no assistance to the Court in determining diminution in value damages here.

## CONCLUSION

Because the balance of interests weighs towards the protection of Entergy's proprietary information and because ConEd seeks information that would have dubious value in establishing the extent of diminution in value of Indian Point, Entergy respectfully requests that the Court deny ConEd's motion to compel and grant Entergy's cross-motion for a protective order.

Dated: April 2, 2007

Respectfully submitted,

s/ Alex D. Tomaszczuk by s/ Jack Y. Chu

Alex D. Tomaszczuk
**PILLSBURY WINTHROP**
**SHAW PITTMAN LLP**
1650 Tysons Boulevard
McLean, Virginia 22102-4859
(703) 770-7940
(703) 770-7901 (fax)

Counsel for Third-Party
Entergy Corporation

Of Counsel:
Jay E. Silberg
Daniel S. Herzfeld
Jack Y. Chu
**PILLSBURY WINTHROP**
**SHAW PITTMAN LLP**
2300 N Street, N.W.
Washington, D.C. 20037-1128
(202) 663-8000
(202) 663-8007 (fax)

L. Jager Smith, Jr.
**WISE CARTER CHILD**
**& CARAWAY, P.A.**
1340 Echelon Parkway
Jackson, MS 39213
(601) 368-5572
(601) 368-5816 (fax)