IN THE UNITED STATES COURT OF FEDERAL CLAIMS

-----------------------------------x

SYSTEM FUELS, INC., on its own behalf :
and as agent for SYSTEM ENERGY :
RESOURCES, INC., and SOUTH : No. 03-2624C
MISSISSIPPI ELECTRIC :
POWER ASSOCIATION, :
Plaintiff, :
vs. :
THE UNITED STATES, :
Defendant. :

-----------------------------------x

Courtroom 5
National Courts Building
717 Madison Place NW
Washington, D.C.

Friday, September 22, 2006

VOLUME 5

The parties met, pursuant to the notice of the Judge at 9:06 a.m.

BEFORE THE HONORABLE SUSAN G. BRADEN

not going to get into that. We've heard witnesses talk about that. I think it was Mr. Warren talked about that. Now, we're hearing the expert talk about that.

Again, as we've said before, if they want to ride that horse, if that's their choice, so be it, but they do it at their peril. If they don't prove that this but-for world, this incremental world that we believe the Federal Circuit requires under a series of cases, including Bluebonnet, if they don't include that incremental world here, that is a failure of proof, and they lose.

It is not our burden to show what the world would have been. It is their burden, not only with respect to rate, but with respect to what I refer to as the hardware of building the ISFSI, the haul path, all the things that go along with that.

THE COURT: Counsel, go ahead.

MR. EKMAN: Thank you, Your Honor. May I approach?

MR. TOMASZCZUK: Your Honor, I just have to note for the record, we don't agree with the representation of counsel that

Mr. Metcalfe's approach is necessarily different. It would seem to me, before they could make that argument, they would need to pin down what his approach here is in the first --

THE COURT: That's what I was thinking, and so that was where I began, but I'm not going to micromanage how they want to approach their defense. But I was just surprised because it seemed to me what -- this is, I'm sure, compellingly interesting to someone, but right now, it's not interesting to me. I don't understand why it's relevant in this case. That's why I asked the question.

MR. TOMASZCZUK: Just for the record, note our relevance objection.

MR. EKMAN: Again, Your Honor, I struggled with this in preparing.

BY MR. EKMAN:

Q. Let's talk about your approach in this case. Paragraph 48 represents your six-step approach in your direct testimony, correct?

THE COURT: Where were we going now?

MR. EKMAN: This is in this case. I'm sorry, Your Honor, I'm taking Your Honor's

O P E N   S E S S I O N

THE COURT: All right. Let's move along.

BY MR. EKMAN:

Q. You mentioned full life cycle analysis, and that was Indiana Michigan, right?

A. That is correct.

Q. And by full life cycle analysis, Indiana Michigan actually started -- I think damages were in like '94, I think they started '94, '95?

A. You're testing my memory.

THE COURT: Can we focus on his report?

MR. EKMAN: Well, we can. I'm going to address his explanation. I can move on, if Your Honor would prefer.

THE COURT: It's not about moving on. I mean, he's given direct testimony in this case, and I'd like to know what you think is wrong about that, rather than what he did in other cases.

MR. EKMAN: Right. And, Your Honor, our position is that, again, it is the testimony in Southern, which was a past damages

case at the time that Mr. Metcalfe testified, it is that testimony and that presentation of damages that demonstrates what he's, why what he's doing here is not the proper methodology. This doesn't just relate to DOE loading costs.

THE COURT: Surely, you can make that case. I mean, do you have something else to say about that it was inconsistent --

MR. EKMAN: Well --

THE COURT: -- what he did before, so therefore, there's a question about which was the right one, which was the wrong one.

MR. EKMAN: Two points, really. One is that it's inconsistent, it's inconsistent both in the treatment of loading costs, as well as in the treatment of actual site and plant modifications.

THE COURT: We saw that when the government's damages experts in the Winstar cases, the same person would change, morph as time went on. I mean, you know, that's not uncommon. I would think under these circumstances, they learn more, there are probably differences in the cases and differences in the inputs.