No. 04-0033C
(Judge Wheeler)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

CONSOLIDATED EDISON COMPANY
OF NEW YORK, INC.

Plaintiff,

v.

THE UNITED STATES,

Defendant.

---

DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION
TO COMPEL THE GOVERNMENT TO PRODUCE
DOCUMENTS OBTAINED IN RELATED SNF CASE DISCOVERY

---

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

HAROLD D. LESTER, JR.
Assistant Director

JOSHUA E. GARDNER
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 305-7583
Fax: (202) 307-2503

Attorneys for Defendant

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

April 9, 2007

# TABLE OF CONTENTS

PAGE

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

DISCUSSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I. THE GOVERNMENT HAS PRODUCED TO PLAINTIFF VALUATION AND TRANSACTION DOCUMENTS RELATED TO THE SALE OF THE PILGRIM NUCLEAR POWER PLANT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II. PLAINTIFF MAY OBTAIN DEPOSITION TRANSCRIPTS AND DEPOSITION EXHIBITS IN THE *BOSTON EDISON* CASE DIRECTLY FROM THE COURT REPORTING COMPANIES . . . . . . . . . . . . . . . . . . . . . . 4

III. PLAINTIFF'S MOTION TO COMPEL THE GOVERNMENT TO PRODUCE BOSTON EDISON'S EXPERT REPORTS IS INAPPROPRIATE . . . . . . . . . . . 5

IV. PLAINTIFF'S REQUEST THAT THE GOVERNMENT PRODUCE VALUATION MODELS OF OTHER NUCLEAR SALES IS INAPPROPRIATE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

A. As An Initial Matter, Despite The Lack Of Relevance, The Government Has Produced Numerous Documents Related To Other Nuclear Sales . . 7

B. Sales Of Other Nuclear Plants Are Irrelevant To The Determination Of The Price That ENIP Would Have Paid In The Absence Of DOE's Partial Breach . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

C. To The Extent That ConEd Has Served Third-Party Subpoenas Upon Buyers And Sellers Of Other Nuclear Power Plants, ConEd Should Seek To Enforce Those Subpoenas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

V. PLAINTIFF'S REQUEST THAT THE COURT ORDER THE GOVERNMENT TO PRODUCE ANY DOCUMENT FROM ANOTHER CASE THAT IT INTENDS TO INTRODUCE INTO EVIDENCE 60 DAYS BEFORE THE GOVERNMENT USES THE DOCUMENT IS INCONSISTENT WITH THE RULES OF THE COURT OF FEDERAL CLAIMS . . . . . . . . . . . . . . . . . . . . . 13

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

# TABLE OF AUTHORITIES

CASES PAGE(s)

Ferko v. National Association for Stock Care Auto Racing, Inc.,
218 F.R.D. 125 (E.D. Tex. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Gentile v. SinglePoint Financial, Inc.,
2003 WL 1240504 (Del. Ch. March 5, 2003) (unpublished) . . . . . . . . . . . . . . . . . . . . . . . . 12

Kinan v. City of Brockton, Massachusetts,
112 F.R.D. 206 (D. Mass. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Seaview Terrace v. Diaz,
Nos. CIV. 92-00003, CV944-90, 1992 WL 365805 (D. Guam Apr. 16, 1992) . . . . . . . . . . 5

## SECONDARY SOURCES

Restatement (Second) of Contracts § 211 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

## INDEX TO APPENDIX

Letter from J. Gardner to C. Tompkins, dated July 20, 2006 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Letter from J. Gardner to C. Tompkins, dated July 21, 2006 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Letter from J. Gardner to D. Churchill, dated August 25, 2006 . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Letter from H. Lester to C. Robertson, dated September 20, 2006 . . . . . . . . . . . . . . . . . . . . . . . . 4

Letter from H. Lester to C. Robertson, dated September 22, 2006 . . . . . . . . . . . . . . . . . . . . . . . . 7

Letter from H. Lester to D. Churchill, dated January 11, 2007 . . . . . . . . . . . . . . . . . . . . . . . . . 12

Letter from H. Lester to C. Robertson, dated January 12, 2007 . . . . . . . . . . . . . . . . . . . . . . . . 18

Letter from H. Lester to C. Robertson, dated February 14, 2007 . . . . . . . . . . . . . . . . . . . . . . . . 20

Letter from H. Lester to D. Churchill, dated April 12, 2006 . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| CONSOLIDATED EDISON COMPANY OF NEW YORK, INC. | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 04-0033C |
| | ) | (Judge Wheeler) |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION
TO COMPEL THE GOVERNMENT TO PRODUCE
DOCUMENTS OBTAINED IN RELATED SNF CASE DISCOVERY

Defendant, the United States, respectfully responds to the motion that plaintiff, Consolidated Edison Company of New York, Inc. ("ConEd"), filed, seeking entry of an order compelling the Government's production of "Documents Obtained In Related SNF Case Discovery."

SUMMARY OF ARGUMENT

ConEd's motion to compel is largely predicated upon an inaccurate assumption. Specifically, ConEd contends that the Government has not been forthcoming in producing valuation and other transactional documents related to the sale of the Pilgrim Nuclear Power Station ("Pilgrim") plant, as well as nuclear plants involved in other sales. Putting to one side the questionable relevance of these materials, the Government, well before ConEd filed its motion to compel, had produced all of the documents related to the Pilgrim transaction that are in its position, as well as documents that it has received from third parties covered by the Court's August 31, 2006 amended and supplemental protective order. Consequently, a significant portion of ConEd's motion is moot.

With regard to ConEd's request for the expert reports prepared by one of the plaintiffs in the Boston Edison case, that request is inappropriate, particularly because both of the plaintiffs in that case, Boston Edison Company ("BECO") and Entergy Nuclear Generation Company ("ENGC"), have objected to the Government's production of this proprietary information. Indeed, as discussed below, ConEd seeks this motion to compel from the Government Boston Edison's expert reports only after Boston Edison expressly refused to produce those reports to ConEd. Simply put, ConEd's motion places the Government in the middle of a discovery dispute that properly should be between ConEd and Boston Edison.

Finally, ConEd's request that the Government produce deposition transcripts and exhibits from discovery taken in the Boston Edison case should be denied. To the extent that ConEd wishes to obtain these transcripts, ConEd should purchase them from the appropriate court reporting company, just as each of the parties has done in the Boston Edison case.

## DISCUSSION

### I. THE GOVERNMENT HAS PRODUCED TO PLAINTIFF VALUATION AND TRANSACTION DOCUMENTS RELATED TO THE SALE OF THE PILGRIM NUCLEAR POWER PLANT

In its motion to compel, ConEd requests that the Government produce "valuation and transactional documents" related to the July 1999 sale of the Pilgrim plant – a sale that occurred over two years before the September 12, 2001, sale of the Indian Point facility by ConEd to Entergy Nuclear Indian Point 2 ("ENIP"). Pl. Mot. 7-14. Putting to one side the questionable relevance of valuation and transaction documents related to a different nuclear power plant, the Government has produced to ConEd all documents that it has received from both the buyer and

the seller of the Pilgrim plant. Consequently, ConEd's request that the Government be compelled to produce these documents is moot.

ConEd's suggestion that we have somehow failed to produce documents related to the Pilgrim transaction is incorrect. On July 20, 2006, the Government produced to ConEd all documents produced to us pursuant to third party subpoenas that the Government served on bidders and prospective bidders that ConEd identified in its response to the Government's interrogatories. A.1.[1] On August 25, 2006, the Government produced documents that it had received from Boston Edison in this case. A.3. On September 20, 2006, the Government produced the documents that it had received from ENGC, the purchaser of the Pilgrim plant. A.4. Further, on January 12, 2007, we produced additional documents that ENGC had subsequently produced related to the Pilgrim plant. A.18. Consequently, the Government has satisfied its production obligations to ConEd related to the Pilgrim acquisition.

In its motion, it states that "Con Edison recently discovered that the Government failed to produce supplemental valuation materials that Entergy provided in the *Boston Edison* case with Bates Range [ENGC BECO 1st RFP-21-Suppl-1 through 65]." Pl. Mot. 6. However, the Government produced these documents on January 12, 2007 – over two months before ConEd filed the instant motion. A.18.[2] Simply put, ConEd's contention that the Government has failed

---

1/ "A.___" refers to the appendix attached to this response.

2/ ConEd also complains that about the Government's use of ENIP's interrogatory responses in connection with our January 29, 2007, response to plaintiff's motion for an enlargement of time. Pl. Mot. 5-6. However, upon notification by ConEd that it did not possess ENIP's interrogatory responses, the Government promptly provided a copy to ConEd. A.20. Further, the Government posted ENIP's discovery responses to the Government's production website on February 21, 2007.

to produce valuation and transactional documents in its possession related to the Pilgrim sale is misplaced, and ConEd's motion to compel these documents should be denied as moot.

## II. PLAINTIFF MAY OBTAIN DEPOSITION TRANSCRIPTS AND DEPOSITION EXHIBITS IN THE *BOSTON EDISON* CASE DIRECTLY FROM THE COURT REPORTING COMPANIES

In addition to seeking valuation and transactional documents related to the Pilgrim sale, ConEd also requests that the Court compel the Government to produce copies of depositions and associated deposition exhibits in the Boston Edison case. The Court should deny ConEd's request for several reasons.

First, ConEd has not articulated how depositions related to a different nuclear plant are relevant to the issues in this case. Indeed, the dozens of depositions that have taken place in the Boston Edison case have focused upon the basis for the purchaser's bid in that case, including how ENGC ascribed value to the Pilgrim nuclear plant, and have nothing to do with sales of other nuclear power plants. Consequently, deposition transcripts related to a different nuclear plant sale – over two years before the sale of Indian Point – are simply irrelevant to determining potential damages in this case.

Second, the Government repeatedly has told ConEd that, to the extent that it wants depositions from other cases, it should contact the appropriate court reporting service and obtain the depositions that it seeks directly from those companies. A.26. As we have explained to ConEd, the Government has paid significant amounts of money to purchase copies of these transcripts, and we informed ConEd about issues surrounding the court reporters' rights to control the sale and distribution of the transcripts that they generated. Indeed, courts have construed the Rules of Civil Procedure as precluding the ability of a party to obtain deposition

transcripts for free by requesting transcripts from the opposing party. See Kinan v. City of Brockton, Massachusetts, 112 F.R.D. 206, 207 (D. Mass. 1986); Seaview Terrace v. Diaz, Nos. CIV. 92-00003, CV944-90, 1992 WL 365805, at *4 (D. Guam Apr. 16, 1992) ("[i]n view of the provision in Rule 30(f)(2) mandating payment, . . . [t]he court was correct in ensuring that Seaview did not attempt to obtain a free copy of the transcript."). Consequently, the Court should deny ConEd's motion to compel the Government to produce the deposition transcripts and associated exhibits in the Boston Edison case and, instead, require ConEd to contact the court reporting companies and pay these companies for the transcripts that it desires to obtain.

## III. PLAINTIFF'S MOTION TO COMPEL THE GOVERNMENT TO PRODUCE BOSTON EDISON'S EXPERT REPORTS IS INAPPROPRIATE

In addition to seeking documents and deposition transcripts in the Boston Edison case, ConEd also seeks to compel the Government to produce expert reports prepared by one of the plaintiffs in that case. ConEd's motion to compel with respect to BECO's expert reports should be denied for several reasons.

First, ConEd has provided absolutely no support for the proposition that a party is obligated to produce expert reports that were prepared for purposes of litigation in a different case involving a different company prepared a different litigant. Indeed, the Government is aware of no such authority or entitlement to BECO's expert reports.

Second, as ConEd acknowledges in its motion, both BECO and ENGC have strongly objected to the Government's production of BECO's expert reports to ConEd. Pl. Mot. 15 (citing Exh. H to plaintiff's motion). Indeed, only after BECO rejected ConEd's request for Boston Edison's expert reports did ConEd request that the Government produce these same materials. ConEd's motion places the Government in the middle of a discovery dispute

regarding another plaintiff's proprietary material that rightfully should be between ConEd and BECO. To the extent that BECO and ENGC continue to object to the production of BECO's expert reports, it is inappropriate to compel the Government to produce these reports.

Third, ConEd has failed to explain why BECO's expert reports – which purport to evaluate the facts and circumstances of the Pilgrim transaction – are relevant in informing ConEd of the potential damages that ConEd has suffered as a result of DOE's delay in SNF acceptance. ConEd's desire to "piggyback" on the expert analysis conducted for another plaintiff does not serve as a justifiable basis to order the Government to produce BECO's expert reports.

Finally, ConEd requests that the Government be precluded from relying on BECO's expert reports in defense of ConEd's claims to the extent that ConEd is unable to gain access to these materials. Pl. Mot. 15. The Government has no intention of relying upon expert reports from BECO's expert witnesses in formulating its defense to ConEd's claims. Consequently, ConEd's concern that the Government would somehow use plaintiff's expert reports from another case is unwarranted.[3]

---

[3/] The only exception to this present intention would arise if ConEd elects to identify testifying experts from other SNF cases as its own testifying experts. One of BECO's expert witness, Eileen Supko, has been retained by the plaintiffs in several other SNF cases, including South Carolina Electric & Gas v. United States, No. 04-101C (Lettow, J.); Commonwealth Edison v. United States, No.03-04C (Hewitt, J.); and Energy Northwest v. United States, No. 04-10C (Damich, C.J.). South Carolina and Commonwealth Edison have been amicably resolved. To the extent that ConEd identifies Ms. Supko or any other expert witnesses from another SNF case as one of ConEd's testifying witnesses, ConEd has not explained why it should not be required to obtain those reports directly from ConEd's testifying experts themselves or why the Government should be precluded from using an expert's prior report for impeachment purposes with that expert.

## IV. PLAINTIFF'S REQUEST THAT THE GOVERNMENT PRODUCE VALUATION MODELS OF OTHER NUCLEAR SALES IS INAPPROPRIATE

### A. As An Initial Matter, Despite The Lack Of Relevance, The Government Has Produced Numerous Documents Related To Other Nuclear Sales

Although its motion to compel, at first glance, appears focused upon documents in the Boston Edison case, ConEd makes an unsupported statement that the Government has refused to produce valuation documents from other plaintiffs and seeks a broad production order for those documents. Pl. Mot. 6-7 & draft order. Regardless of the relevance of these documents, which we will address below, ConEd concedes that the Government has produced documents related to other nuclear sales, Pl. Mot. 5, but it suggests that the Government's production is incomplete. ConEd's contention is not well taken. Indeed, shortly after the Court entered the amended and supplemental protective order in this case on August 31, 2006, ConEd identified to us which SNF plaintiffs' productions it wanted us to provide, and we produced to ConEd these documents. A.4, 7. These documents included productions that we received from Entergy Nuclear Generation Company, Entergy Nuclear Vermont Yankee LLC, Vermont Yankee Nuclear Power Corporation, Entergy Nuclear Indian Point 2, Power Authority for the State of New York, and PSEG Nuclear, LLC. A.4. Further, we explained to ConEd that, with respect to AmerGen, to the extent that ConEd wished to seek leave of this Court to add AmerGen to the amended and supplemental protective order in this case, we would produce the small number of documents that we had received from AmerGen. A.15. Further, we noted that ConEd had sought these same documents directly from AmerGen through a third-party subpoena. Id. However, ConEd never sought leave of Court to amend, for a second time, the amended and supplemental protective order. In short, the Government has satisfied any obligation to produce to ConEd

documents related to other nuclear sales, consistent with the August 31, 2006 protective order, and ConEd's motion should be denied as moot.[4]

### B. Sales Of Other Nuclear Plants Are Irrelevant To The Determination Of The Price That ENIP Would Have Paid In The Absence Of DOE's Partial Breach

In any event, ConEd's broad request for valuation and transactional documents associated with sales of other nuclear power plants seeks information irrelevant to this litigation. As the Court is aware, at least two companies involved in the acquisition of nuclear power plants – Entergy Corporation ("Entergy") and FPL Energy LLC ("FPL") – have strongly opposed the production of such documents. See "Third-Party FPL Entergy LLC's Response To Plaintiff's Motion To Compel Documents And Cross-Motion For A Protective Order," filed April 2, 2007 & "Third-Party Entergy Corporation's Response To Plaintiff's Motion To Compel Documents And Cross-Motion For A Protective Order," filed April 2, 2007. Indeed, these two companies, who are also parties in a number of other spent nuclear fuel ("SNF") cases,[5] including cases in

---

[4/] In any event, ConEd's request for an order requiring us to produce all valuation and transactional documents "produced in related buyer-seller SNF cases" is something with which, as we have previously explained to ConEd, we cannot easily comply. The various plaintiffs, in producing documents to us, have rarely identified to us which documents being produced to us are "valuation and transactional documents." Instead, we generally have to go through significant effort to organize and digest the SNF plaintiffs' document productions. Because we cannot be in the position of attempting to determine which documents from another party's documents are responsive to ConEd's requests, we have provided ConEd with all documents that the plaintiffs which ConEd identified have produced to us, allowing ConEd to determine which of those documents are of interest to ConEd.

[5/] Entergy Corporation has filed eight separate lawsuits in this Court alleging, among other things, partial breach of the Standard Contract. See System Fuels, Inc. v. United States, No. 03-2623C (Lettow, J.); System Fuels, Inc. v. United States, No. 03-2624C (Braden, J.); Entergy Gulf States, Inc. v. United States, No. 03-2625C (Williams, J.); System Fuels, Inc. v. United States, No. 03-2621C (Williams, J.); Entergy Nuclear Fitzpatrick v. United States, No. 03-2627C (Damich, C.J.); Entergy Nuclear Generation Company v. United States, No. 03-2626C (Lettow,

which they acquired nuclear power plants from other companies, have sought protective orders from the Court to preclude the production of documents to ConEd that they believe are commercially sensitive.

As an initial matter, the Government agrees with Entergy and FPL that documents related to other nuclear power plants are entirely irrelevant to the issue in this case: whether Entergy Nuclear Indian Point 2 ("ENIP") paid less than it otherwise would have for the Indian Point plants as a direct result of DOE's partial breach of contract. That issue can only be resolved by reference to ENIP's valuation models and the assumptions that ENIP made in valuing the Indian Point plant.

In its motion, ConEd claims that "[a]ll nuclear plants suffered similar consequences of prolonged SNF for an indefinite period due to the Government's breach of the Standard Contract." Pl. Mot. 7. ConEd's unsupported contention defies economic logic. Indeed, every nuclear power plant has different SNF storage needs, operating histories, and future projected technological requirements. Indeed, ConEd's motion presupposes that different purchasers have identical risk tolerances, make identical assumptions regarding future capital and operation and maintenance costs, and view the length of DOE's delay in SNF acceptance in an identical

---

J.); Entergy Nuclear Indian Point 2 v. United States, No. 03-2622C (Wheeler, J.); and Entergy Nuclear Vermont Yankee v. United States, No. 03-2663C (Wheeler, J.). Of these eight lawsuits, Entergy Nuclear Fitzpatrick, Entergy Nuclear Generation Company, Entergy Nuclear Indian Point 2, and Entergy Nuclear Vermont Yankee involve power plants purchased by Entergy.

FPL Energy has filed one lawsuit, FPL Energy Seabrook v. United States, No. 04-88 (Hodges, J.).

manner.[6] The inherent differences in the status of purchased nuclear power plants make any comparison for purposes of determining the extent of the harm as a result of DOE's delay in SNF acceptance irrelevant. Simply put, ConEd is engaging in a broad fishing expedition that is not reasonably calculated to lead the discovery of admissible evidence in this case.[7]

### C. To The Extent That ConEd Has Served Third-Party Subpoenas Upon Buyers And Sellers Of Other Nuclear Power Plants, ConEd Should Seek To Enforce Those Subpoenas

More fundamentally, the concerns that Entergy and FPL express in their motions highlights the untenable position in which ConEd's motion has placed the Government. Entergy and FPL each seek a protective order based upon their views that the documents which ConEd seeks are highly proprietary. Absent the agreement by the plaintiffs in other SNF cases that have

[6] A simply hypothetical illustrates this point. If a power plant has sufficient storage space through the life of operations, a potential purchaser may value the effect of DOE's delay much differently than a power plant that needs additional storage as a result of DOE's delay. Indeed, the manner in which that purchaser anticipates handling a plants storage needs will necessarily vary – from adding addition wet pool racks to building dry storage facilities. Consequently, the manner in which any one prospective purchaser may quantify DOE's delay – to the extent that it has – will necessarily be both plant- and company-specific.

[7] In its motion, ConEd contends that the Government, in its response to a plaintiff in another SNF case, has indicated its "intention to use materials produced by any SNF plaintiff in any SNF case," Pl. Mot. 4. However, as ConEd also notes, the Government's intended use of documents in other SNF cases relate to issues associated with contract formation, such as the rate and schedule of SNF acceptance. Pl. Mot. 5. Indeed, because the Standard Contract in this case is the result of notice and comment rulemaking, the views of any and all contract holders are relevant in determining the meaning of the contract terms, to the extent these terms are determined to be ambiguous and subject to parol evidence. Restatement (Second) of Contracts § 211 (1981). However, the Government has never stated that it intends to use documents produced in other buyer or seller cases as a defense to ConEd's claim of diminished value. Because the only relevant information as to any alleged diminished value necessarily comes from ENIP, we see no need to rely upon valuation documents related to the sales of other nuclear plants, unless it becomes necessary to respond to some industry-wide model that ConEd attempts to rely upon in this case.

produced documents to the Government, the Government is in no position to determine which plaintiff has the stronger position and produce these documents to ConEd where we determine that ConEd has the better argument. Simply put, ConEd is placing the Government in the middle of what, in essence, should be a discovery dispute between ConEd and the buyers and sellers of other nuclear power plants. To the extent that ConEd seeks discovery material related to the purchase and sale of other nuclear power plants beyond that which we have already produced, ConEd should seek such materials directly from those purchasers and sellers. In fact, as ConEd acknowledged in its motion, it has attempted to do just that.

In its February 6, 2006, "Reply on Motion For Enlargement Of Time," ConEd acknowledged that it had served third-party subpoenas upon AmerGen Energy Company, Constellation Energy Group, Dominion Resources, Inc., Duke Energy Corporation, Florida Power & Light Energy LLC, and Entergy Corporation, and attached these third-party subpoenas to its reply brief. Indeed, in these third-party subpoenas, just as in its instant motion, ConEd broadly requests information related to any and all nuclear transactions. We do not understand why ConEd does not seek to enforce its third-party subpoenas rather than seek that same information from the Government. We presume the reason that ConEd seeks the production of these third-party valuation documents from the Government is that these third parties have refused to produce these documents. Again, ConEd is placing the Government in the middle of a dispute between ConEd and these third parties. To the extent that ConEd cannot obtain the documents which it seeks from these third parties, it should not be allowed to obtain this same

information from the Government, which lacks sufficient information to understand the potential harm that disclosure could cause these third parties.[8]

Further, to the extent that we are required to reproduce documents that we obtained through discovery in the SNF litigation related to other nuclear plant sales, it is not our obligation to review those document productions in their entirety and attempt to select those documents that constitute valuation or transactional assessment documents. Indeed, we have not completed our own review of all of the document productions in the SNF cases, much less focused solely on valuation and transactional assessment documents in all cases. When we receive documents from SNF plaintiffs, the plaintiffs typically produce them on disks after having converted them into an electronic form. Pursuant to RCFC 34(b), we are entitled to

---

[8] ConEd claims that it is entitled to evidence from other transactions, relying upon cases in which parties have used evidence of comparable transactions to demonstrate the value of the asset at issue. Pl. Mot. 9 (citing Gentile v. SinglePoint Financial, Inc., 2003 WL 1240504, at *4 (Del. Ch. March 5, 2003) (unpublished)). However, Gentile does not support ConEd's argument. In Gentile, minority interest holders sought to introduce evidence of comparable transactions to establish the value of their shares in a company after a merger, where the use of either an asset-based valuation or a discounted cash flow valuation would not produce an accurate result. Gentile, 2003 WL 1240504, at *6. In other words, the minority shareholders in Gentile relied upon comparable transactions to determine the value of their shares, not to isolate the effects of another party's breach of contract. Yet, that is precisely why ConEd seeks evidence related to other, unrelated transactions in this case.

Similarly, in Ferko v. National Association for Stock Care Auto Racing, Inc., 218 F.R.D. 125, 137 (E.D. Tex. 2003), the court held that information relating to defendant's revenues and profits from other NASCAR races was relevant because the plaintiff sought as damages "the profits [the defendant] would have realized from a second premier NASCAR-format stock-car race." Id. at 137. The court agreed that evidence regarding profitability of other races was relevant because plaintiff alleged as damages lost profits from a NASCAR race that never occurred. Id. at 137. In this case, the sale of Indian Point did occur, and the proper measure of damages is what ENIP would have paid in the absence of DOE's partial breach of contract. Indeed, to the extent that ConEd wishes to isolate the effects of DOE's delay on ENIP's purchase price, it is illogical to believe that this isolation could occur through the consideration of different nuclear sales.

produce documents "as they are kept in the usual course of business." We should not be obligated to devote numerous Government attorney hours to review all past document productions from the named utilities to identify the subsets of documents that ConEd desires. Instead, any order in this case should allow the Government to make available to ConEd the disks that these utilities provided to us (which, as previously described, we have already done), and it would be ConEd's obligation to search through, review, and locate any documents that it desired. The Court should not order the Government to require its attorneys to engage in that effort upon ConEd's behalf. Indeed, the Government should not be required, at the Government's cost, to engage in wholesale reproductions of all documents produced by SNF plaintiffs in the SNF litigation.

V. PLAINTIFF'S REQUEST THAT THE COURT ORDER THE GOVERNMENT TO PRODUCE ANY DOCUMENT FROM ANOTHER CASE THAT IT INTENDS TO INTRODUCE INTO EVIDENCE 60 DAYS BEFORE THE GOVERNMENT USES THE DOCUMENT IS INCONSISTENT WITH THE RULES OF THE COURT OF FEDERAL CLAIMS

In ConEd's proposed order, which is at page 18 of its motion, it requests that "[t]he Government shall produce to Con Edison any document from any other SNF case the Government intends to introduce into evidence or rely on in any way in this case no later than sixty (60) days before the Government uses such document. Pl. Mot. 18. ConEd's request appears to conflict with the Rules of this Court. Pursuant to the RCFC, the parties are required to exchange exhibits no later than 63 days before the pretrial conference, and 21 days before the pretrial conference, the Government is required to provide an exhibit list identifying the documents that we intend to use at trial. RCFC App. A, ¶¶ 13(a), 14(b) & 16. To the extent ConEd seeks to modify the parties obligation through ConEd's motion to compel, such a request

is inappropriate. Further, to the extent that the Court concludes that such an order is appropriate, we respectfully request that the order apply to both ConEd and the Government.

CONCLUSION

For the foregoing reasons, we respectfully request that the Court deny ConEd's motion to compel the Government to produce documents and other materials obtained in other SNF cases.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Harold D. Lester, Jr
HAROLD D. LESTER, JR.
Assistant Director

s/ Joshua E. Gardner
JOSHUA E. GARDNER
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, DC 20530
Tel: (202) 305-7583
Fax: (202) 307-2503

Attorneys for Defendant

OF COUNSEL

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

April 9, 2007

CERTIFICATE OF FILING

I hereby certify that on this 9th day of April, 2007, a copy of the foregoing "DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO COMPEL THE GOVERNMENT TO PRODUCE DOCUMENTS OBTAINED IN RELATED SNF CASE DISCOVERY" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Joshua E. Gardner