**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **CONSOLIDATED EDISON COMPANY OF NEW YORK, INC.,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **No. 04-0033C (Judge Wheeler)** |
| **UNITED STATES OF AMERICA,** | ) | |
| **Defendant.** | ) | |

**PLAINTIFF'S REPLY ON ITS MOTION TO COMPEL DOCUMENTS AND RESPONSE TO ENTERGY CORPORATION'S AND FLORIDA POWER & LIGHT ENTERGY, LLC'S MOTIONS FOR A PROTECTIVE ORDER**

Entergy and FP&L refuse to comply with the subpoena *duces tecum* Con Edison served on December 21, 2006, based on claims of competitive harm and a lack of relevance of the subpoenaed documents to this proceeding. Both companies move for this Court to enter a protective order limiting Con Edison's discovery to only documents related to Indian Point.

Con Edison's need for discovery of the subpoenaed materials outweighs any alleged risk of competitive harm. In August 2006, this Court entered a Supplemental Protective Order, to which both Entergy and FP&L consented, specifically to deal with similar concerns both companies raised about production of such documents by the Government to Con Edison. The materials are also plainly relevant under the broad rules governing discovery. Therefore, this Court should grant Con Edison's Motion to Compel and deny Entergy's and FP&L's motions for an additional and unduly restrictive protective order.

## I. The Protective Orders Entered In This Case Already Protect Entergy and FP&L From Suffering Any Potential Competitive Harm.

Any concerns Entergy and FP&L may have had over the disclosure of confidential information have already been addressed by this Court when it entered the Supplemental Protective to which both Entergy and FP&L agreed. Over a year ago, Con Edison began actively seeking the same types of valuation and transactional documents that have been produced in related buyer-seller spent nuclear fuel ("SNF") cases from the Government. Motion Exh. C & D.[1] The Government, Entergy, and FP&L objected to the Government producing these documents relating to Indian Point and other transactions based in part on the confidential information contained in the documents. Motion Exh. E & G. On August 16, 2006, Con Edison moved for this Court to enter a Supplemental Protective Order to allow Con Edison to discover valuation and transactional documents related to other SNF case plaintiffs, including Entergy and FP&L, in other transactions beyond Con Edison's sale of Indian Point. Counsel for Entergy and FP&L participated in negotiations over the terms of the Supplemental Protective Order to ensure that any confidential information contained in their documents pertaining to any of their nuclear acquisitions would be adequately protected. Prior to the entry of the Supplemental Protective Order, counsel for Entergy and FP&L stated: "as has been true for some time, our clients are amenable to Con Ed's litigation counsel having access to their proprietary documents under appropriate circumstances." Motion Exh. H.

When this Court entered the Supplemental Protective Order, to which both Entergy and FP&L consented, Con Edison began obtaining from the Government the same types of documents that it now seeks directly from Entergy and FP&L. Con Edison initially sought to

[1] "Motion Exh. __" refers to the exhibits attached to Plaintiffs' Motion to Compel Documents from Entergy Corporation and Florida Power & Light, LLC. "Reply Exh. __" refers to exhibits that are attached to this Reply.

conduct all discovery of nuclear plant acquisition valuation and transactional documents from the Government, because the Government had in this case subpoenaed similar materials from FP&L in April 2006, and was also obtaining such documents from Entergy through discovery in the consolidated *Boston Edison v. United States* case. *See* Plaintiff's Motion for Entry of Supplemental Protective Order and Order Compelling Production of Documents, *Consol. Edison v. United States*, No. 04-0033C (Fed. Cl. filed August 16, 2006).[2]

Because of the continuing difficulties Con Edison has experienced in obtaining complete discovery in this manner, Con Edison issued subpoenas to these other SNF case plaintiffs directly. After agreeing that the Court's August 2006 Supplemental Protective Order addressed their confidentiality concerns, Entergy and FP&L may not now reargue the issue and create further delays and obstacles to the production of these documents to Con Edison.

Entergy and FP&L reargue, as they did before, that granting Con Edison access to these materials could cause the companies competitive harm. (Entergy Resp., at 5; FP&L Resp., at 4-5). Entergy and FP&L will not suffer any competitive harm by disclosing confidential information to Con Edison under the terms of the protective orders entered in this case. Not only does the Supplemental Protective Order limit disclosure of Entergy's and FP&L's confidential information "only to attorneys for parties when such attorneys are not involved in the acquisition

[2] *See also* Gov't Subpoena issued to FP&L, at 9 (Request No. 3 is for "[a]ll documents related to sales comparable to Indian Point or other sales and/or purchases of interests in nuclear power plants") (attached as Reply Exh. L); Def.'s First Request For Prod. of Docs., at 13, *Boston Edison*, at 13 (Fed. Cl., filed Aug. 9, 2005) (Request No. 26 is for "[a]ll documents assessing the effect of energy market restructuring on the value or prospects of the [Pilgrim] Nuclear Station or the nuclear industry as a whole") (attached at Reply Exh. M); Def.'s Second Request for Prod. of Docs., at 9, *Boston Edison v. United States*, Nos. 99-447C and 03-2626C, at 9 (Fed. Cl., filed Apr. 4, 2006) (Request No. 3 is for "[a]ll electronic versions of any plant valuation models prepared by or for any entity . . .") (attached as Reply Exh. N).

or divesture of electric power plants," but in order for any Con Edison in-house attorney or employee to gain access to Entergy's or FP&L's confidential information, the attorney or employee must "submit an application for approval by the parties whose data are sought to be disclosed."

Both Entergy and FP&L argue that they risk competitive harm because their valuation materials could be used by Con Edison "for insight into how its competitors approach valuation of energy assets" and "to understand how one of its competitors decides whether to bid on or purchase an asset." (Entergy Resp., at 5; FP&L Resp., at 4). The short answer is that all of these concerns over the risk of competitive harm were addressed over seven months ago when this Court entered the Supplemental Protective Order governing the Government's production of similar types of documents to Con Edison. Since the Supplemental Protective Order strictly limits the use of confidential materials to the purposes of this litigation, provides for the return of such materials upon the conclusion of the case, and allows Entergy and FP&L to determine who at Con Edison may review these materials, there is simply no realistic basis upon which either company risks suffering any competitive harm.

## II. Valuation And Transactional Documents For Facilities Other Than Indian Point Are Highly Relevant To Both Con Edison's Damages Analysis And Rebuttal Of The Government's Defenses.

Entergy and FP&L both acquired other nuclear facilities within roughly two years of the Indian Point transaction. These facilities are all located in the Northeastern region of the United States, are all subject to the same SNF-related regulatory restrictions, all entered into identical contracts with the Government concerning the disposal of spent nuclear fuel, and all suffered the similar consequences of heightened risk and increased costs stemming from the Government's breach of the contract. All of these transactions are at issue in other "buyer-seller" SNF cases

pending in this Court, and one of them, dealing with the Pilgrim nuclear facility in Massachusetts, is scheduled for trial June 4-20, 2007. Despite the obvious similarities of these transactions, both Entergy and FP&L contend that their acquisitions of nuclear and fossil facilities other than Indian Point are "sufficiently different" from Indian Point that "this Court would not be able to extrapolate any useful information from [Entergy's or FP&L's] valuation or assessment." (Entergy Resp., at 7; FP&L Resp., at 6). To the contrary, under RCFC 26, Con Edison is entitled to discover all non-privileged information that "appears reasonably calculated to lead to the discovery of admissible evidence." Thus, Con Edison is allowed to cast a broader net for discovery than the materials that may ultimately be presented at trial.

In a "non-breach" world presentation of the marketplace for divesting nuclear units unfettered by SNF, Con Edison is surely entitled to discover the treatment of SNF issues in candidate acquisitions by other companies, each of whom at least preliminarily expressed an interest in acquiring Indian Point. For companies, such as FP&L, that lost interest in acquiring Indian Point early in the sales process, their valuations of Indian Point are unlikely to fully reveal how these prospective purchasers addressed SNF issues. FP&L's treatment of SNF issues will likely be revealed more fully in valuation and transactional documents related to the Seabrook nuclear facility it successfully acquired. Because of the proximity in time of all such nuclear acquisitions and the common feature of the DOE breach, it is virtually certain that this discovery will yield useful and relevant information that will shed light on the nuclear marketplace and the way that the Government's breach affected the value of Indian Point.

Entergy and FP&L make no effort to distinguish their relevance arguments from the cases cited in Con Edison's main brief. The "similar transactions" sought by Con Edison are no different from the merger valuations in *Gentile v. Single Point Financial, Inc.*, 2003 WL

1240504, at *4 (Del. Ch. March 5, 2003), the other NASCAR races in *Ferko v. National Association for Stock Car Auto Racing Inc.*, 218 F.R.D. 125, 137 (E.D. Tex. 2003), the other accredited law schools in *Massachusetts School of Law at Andover v. American Bar* Association, 857 F. Supp. 455, 456 (E.D. Pa. 1994), or indeed in any of the comparables authorities cited by Con Edison, where discovery of other transactions was allowed.

The valuation and transactional documents related to other nuclear facilities are relevant because they will enable Con Edison to accurately construct the non-breach world marketplace for divesting nuclear units in order to support its diminished value damages claim, which has already survived a government motion to dismiss. *Consol. Edison Co. of New York, Inc. v. United States*, 67 Fed. Cl. 285, 291 (Fed. Cl. 2005). These documents are likely to address the consequences of the Government's breach in some identifiable manner, giving Con Edison further insight into the extent the Government's breach diminished the market value of Indian Point.

Fossil fuel valuation and transactional materials are also relevant to establishing a "non-breach" world's model. As seller Boston Edison contends in the Pilgrim case, "other non-nuclear comparable forms of baseload electric generating assets can provide a useful and commonly utilized benchmark as to the range of value that otherwise would have been attributed to Pilgrim in the absence of the DOE's breach." Plaintiff Boston Edison Company's Memorandum of Contentions of Fact and Law, *Boston Edison*, at 29 (Fed. Cl. filed March 30, 2007). Like Boston Edison, Con Edison will use fossil fuel valuation materials in constructing a "but-for," non-breach world in order to determine the diminution in value that the Indian Point facility suffered due to the Government's breach. Accordingly, Con Edison should be allowed to discover such materials under the permissible discovery standards of Rule 26(b).

Expert reports, deposition transcripts, and exhibits from the earlier Entergy acquisition of the Pilgrim facility at issue in *Boston Edison* are also highly relevant to Con Edison's case because they inform both Entergy's and the Government's views of the role of SNF in nuclear sale transactions, and thus the defenses Con Edison will face at trial. Contrary to Entergy's contentions, Con Edison is not looking for a "free ride on other plaintiffs' work product" because Con Edison is preparing its own expert case to establish a valuation analysis specifically for the Indian Point transaction. (Entergy Resp., at 8). Further, "[t]here is nothing inherently culpable about sharing information obtained through discovery. The availability of the discovery information may reduce time and money which must be expended in similar proceedings, and may allow for effective, speedy, and efficient representation." *Federal Trade Comm'n v. Digital Interactive Associates, Inc.*, 1996 WL 912156, at *3 (D. Colo. Nov. 18, 1996) (quoting *Patterson v. Ford Motor Co.*, 85 F.R.D. 152, 154 (W.D. Tex. 1980)).

In *Digital Interactive*, 1996 WL 912156, at *1, plaintiffs in pending cases sought ten deposition transcripts and accompanying deposition exhibits from related proceeding involving Digital Interactive, and Digital Interactive brought a motion for a protective order to prohibit production of these materials. The court denied Digital Interactive's motion. The court found that because "the three other pending cases share similar defendants or critical witnesses, share similar issues, and share some similar facts, … the plaintiffs in other pending cases have an interest in obtaining discovery materials generated in this case so as to possibly avoid duplicative discovery efforts in their own cases." *Id.* at *3. *See also Hussey v. State Farm Lloyds Insurance*, 216 F.R.D. 591, 596 (E.D. Tex. 2003) (denying motion to quash subpoena seeking from defendant's expert the reports he prepared in the last five years for other cases involving the defendant); *Jobin v. Resolution Trust Corp.*, 156 B.R. 834, 837-38 (D. Colo. 1993) (denying

bank's motion to quash subpoena request seeking deposition transcripts generated in earlier litigation between the bank and any party related to trustee, finding such materials were relevant, not privileged, and producing them would not create an undue burden).

Likewise, the *Boston Edison* case involves same nuclear plant purchaser and the same defendant as Con Edison. Further, *Boston Edison* deals with many of the same issues as this case. The *Boston Edison* case not only involves the seller's claims against the Government, but apparently the buyer's claim against the seller. *See* Entergy's Motion for Leave to File Documents under Seal Supporting Its Motion for Partial Summary Judgment on Plaintiff Boston Edison Company's Diminution in Value Claims, *Boston Edison* (Fed. Cl. filed April 6, 2007). The issues in *Boston Edison* are likely to closely parallel upcoming issues Con Edison will face in its own case. These documents are likely to give Con Edison invaluable insight into the Government's defenses, as well as avoid duplication and allow Con Edison to economically proceed with discovery in this case. Therefore, like the valuation and transactional documents, the expert reports, deposition transcripts, and exhibits in the *Boston Edison* are also reasonably likely to lead to the discovery of admissible evidence, and thus are plainly discoverable.

In their Responses, Entergy and FP&L distort this Court's previous analogy of Con Edison's diminished damages claim to construction contract cases, by arguing: "Just as the defective construction of other properties would have no relevance to the diminution in value of a particular property, the diminution in value of other plants, even if established, would not be any more probative of how much the Government's breach caused Indian Point to diminish in value." (Entergy Resp., at 8; FP&L Resp., at 7). This Court did not use the construction case analogy as a way of limiting the scope of Con Edison's discovery, but rather used the analogy in upholding the validity of Con Edison's manner of establishing diminished value against the

Government's motion to dismiss. *Consolidated Edison Co. of New York v. United States*, 67 Fed. Cl. 285, 290 (Fed. Cl. 2005) ("In the case at hand, the government's failure to collect SNF has allegedly resulted in a diminished value of the Indian Point facilities, and '[t]he option of getting another contractor to repair the damages unavailable … because there is no other approved provider of disposal services in this highly regulated industry'") (quoting *Boston Edison Co. v. United States*, 64 Fed. Cl. 167, 183 (Fed. Cl. 2005)).

Neither Entergy nor FP&L cite a single case, let alone a construction case, that stands for the proposition that "other properties would have no relevance to the diminution in value of a particular property." (Entergy Resp., at 8; FP&L Resp. at 7). Con Edison has already cited numerous cases in which courts allow discovery of similar transactions, and neither Entergy nor FP&L even attempt to distinguish any of these cases. It is hornbook law that when valuing the diminished value suffered by real property due environmental contamination, "[t]he appraiser identifies and evaluates comparable sale transactions as a basis of estimating value." Roman L. WEIL, ET AL., LITIGATION SERVICES HANDBOOK: THE ROLE OF THE FINANCIAL EXPERT, *Chapter 32: The Financial Consultant's Role in the Proof of Environmental Damages*, 7 (3d. ed. 2001). If appraisers are routinely using comparable properties to determine the diminished value of land, then valuation and transactional documents of other similar nuclear acquisitions -- affected by the same Government breach -- are clearly relevant to Con Edison's diminished value claim.

The obvious differences among nuclear facilities that Entergy and FP&L point out -- differences in "the usable capacity of the spent fuel pool and the available options for additional at-reactor storage" -- in fact will show Con Edison how a particular buyer valued these specific aspects of the nuclear facility, which were undoubtedly affected by the Government's breach. (Entergy Resp., at 7; FP&L Resp., at 6). These issues are the *drivers* of the difference between

breach world and non-breach world circumstances, and thus highly relevant to establishing Con Edison's diminished value damages claim.

In both of their Responses, Entergy and FP&L cite a recent opinion issued by Judge Lettow in the *Boston Edison* Pilgrim transaction case for the proposition that other similar nuclear facility sales are irrelevant to Con Edison's diminution in value claim. (Entergy Resp., at 8; FP&L Resp., at 7). This decision simply does not stand for this proposition, but rather supports Con Edison's entitlement to discovery of SNF-related data from other nuclear plant divestitures. Entergy and FP&L rely on a portion of the *Boston Edison* opinion in which the court found that information from the Government concerning its estimated liability for the Pilgrim facility was relevant to Boston Edison's good faith and fair dealing claims, but estimates related to other facilities were not relevant. *Boston Edison v. United States*, 75 Fed. Cl. at 557, 569 (Fed. Cl. 2007). Here, Con Edison does not seek to use the subpoenaed documents to establish good faith and fair dealing claim, but rather Con Edison intends to use these documents to establish its diminution of value damages claim based on establishing a "but-for," non-breach world to show the extent to which the Government's breach affected the value of the Indian Point. In the same decision, the court allowed Boston Edison discovery regarding "the government's understanding of the costs incurred by nuclear utilities for temporary fuel storage as a result of the DOE's failure to begin accepting SNF on January 31, 1998 . . . because part of the utility's damages theory is that the anticipated capital expenses associated with storing SNF indefinitely created uncertainty in the market that limited the price Boston Edison could demand for Pilgrim." *Id.* at 568 (citations and quotations omitted). Just as Boston Edison was found to be entitled to the discovery related to other nuclear facilities to establish its market-based damages claim, a consistent application of that rationale here should allow Con Edison to obtain

the subpoenaed materials related to other similar nuclear acquisitions for the purpose of establishing to establish its own market-based diminution in value damages claim.

Valuation and transactional materials, as well as expert reports, deposition transcripts, and exhibits, related to other nuclear and fossil fuel divestitures are therefore plainly relevant to Con Edison's diminished value damages claim, and will enable Con Edison to construct the non-breach world marketplace for divesting nuclear units so as to establish the extent to which the Government's breach diminished the value of Indian Point.

## CONCLUSION

Con Edison's need for the subpoenaed materials clearly outweighs any risk of competitive harm to either Entergy or FP&L, which in all events has already been addressed by the Supplemental Protective Order. Both of these SNF plaintiffs have already entered into the Supplemental Protective Order with Con Edison, which fully addresses any concern of competitive harm. Furthermore, these documents are not only relevant, but central, to Con Edison's diminished value damages claim. For these reasons, Con Edison respectfully requests that this Court deny Entergy's and FP&L's motion for a protective order and grant Con Edison's motion to compel production of documents Con Edison sought in the subpoena *duces tecum* served on both Entergy and FP&L on December 21, 2006.

Dated: April 11, 2007

Respectfully submitted,

s/ David A. Churchill
DAVID A. CHURCHILL
Jenner & Block LLP
601 Thirteenth Street, N.W.
Suite 1200 South
Washington, DC 20005

(202) 639-6056
(202) 639-6066 (fax)
COUNSEL FOR PLAINTIFF

Of Counsel:

Brent L. Brandenburg, Esq.
Assistant General Counsel
Consolidated Edison Company
of New York, Inc.
4 Irving Place, Suite 1830
New York, NY 10003
(212) 460-4333

Daniel F. Stenger, Esq.
Hogan & Hartson LLP
Columbia Square
555 Thirteenth Street, N.W.
Washington, DC 20004
(202) 637-5691

Cynthia J. Robertson, Esq.
Jenner & Block LLP
601 Thirteenth Street, N.W.
Suite 1200 South
Washington, DC 20005
(202) 639-6000

CERTIFICATE OF FILING

I hereby certify that on April 11, 2007, a copy of the foregoing "Plaintiff's Reply on Its Motion to Compel Documents and Response to Entergy Corporation's and Florida Power & Light Energy, LLC's Motions for a Protective Order" was filed electronically. I also certify that I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system and that parties may access this filing through this system.

s/ David A. Churchill

David A. Churchill
JENNER & BLOCK, LLP
601 Thirteenth Street, NW, Suite 1200
Washington, DC 20005
(202) 639-6000

*Counsel of Record for*
*Consolidated Edison Company of New York, Inc.*

CERTIFICATE OF SERVICE

I hereby certify that on April 11, 2007, a copy of the foregoing "Plaintiff's Reply on Its Motion to Compel Documents and Response to Entergy Corporation's and Florida Power & Light Energy, LLC's Motions for a Protective Order" was served via electronic mail and first-class mail, postage pre-paid, upon:

Alexander D. Tomaszczuk, Esq.
Pillsbury, Winthrop, Shaw, Pittman LLP
1650 Tysons Blvd.
McLean, VA 22102-4859
alexander.tomaszczuk@pillsburylaw.com
*Counsel for Entergy Corporation and*
*Florida Power & Light Energy, LLC*

Richard J. Conway
Dickstein Shapiro LLP
1825 Eye Street, N.W.
Washington, DC 20006-5403
conwayr@dicksteinshapiro.com
*Counsel for Boston Edison Company*

s/ David A. Churchill

David A. Churchill
JENNER & BLOCK, LLP
601 Thirteenth Street, NW, Suite 1200
Washington, DC 20005
(202) 639-6000

*Counsel of Record for*
*Consolidated Edison Company of New York, Inc.*