# EXHIBIT L

# *United States Claims Court*

Consolidated Edison Company of New York, Inc.,

No. 04-0033C

VS.

THE UNITED STATES

## SUBPOENA

To FPL Energy, LLC, c/o Corporation Trust Company
1209 Orange Street
Wilmington, DE 19801

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify in the above case.

PLACE OF TESTIMONY

COURTROOM

DATE AND TIME

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the the above case.

PLACE OF DEPOSITION

DATE AND TIME

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See Attachment A.

PLACE
Office of the United States Attorney for the Southern District of FLorida
500 Australian Ave, 4th Floor, West Palm Beach, FL 33401

DATE AND TIME
05/15/2006 4:00 pm

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

PREMISES

DATE AND TIME

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. RULE 32 (b) (6).

ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT)
Attorney for the Defendant

DATE
04/13/2006

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Joshua Gardner, 1100 L. Street N.W., Room 12022, Washington, DC 20005, (202) 305-7583

NOTE - If the place of travel is more than 100 miles (by the shortest usual means of travel) from the place where the subpoena is served, or if the place of deposition is more than 100 miles from the place where the deponent resides, is employed or transacts business in person, the person served may regard the command as optional unless there is attached to the subpoena an order of the Court requiring his/her appearance, notwithstanding the distance of travel. In any event, response to the subpoena will entitle the person to the fees and mileage allowed by law.

PROOF OF SERVICE

| DATE | PLACE |
|---|---|
| SERVED | |
| SERVED ON (PRINT NAME) | MANNER OF SERVICE |

☐ Fees tendered for one day's attendance and mileage allowed by law.
(Fees and mileage need not be tendered when the subpoena is issued on behalf of the United States or an officer or agency thereof.)

DECLARATION OF SERVICE

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the proof of Service is true and correct.

Executed on ______________
DATE

______________________________
SIGNATURE OF SERVER

______________________________
ADDRESS OF SERVER

______________________________

RULE 45.

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and reasonable attorney's fees.

(2)(A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)(A) On timely motion, the court shall quash or modify the subpoena if it
(i) fails to allow reasonable time for compliance; or
(ii) requires disclosure of privileged or other protected matter and no exception or waiver

(B) If a subpoena
(i) requires disclosure of a trade secret or other confidential research, development, or commercial information;
or
(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of the party, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party on whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to content the claim

ATTACHMENT A

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| CONSOLIDATED EDISON COMPANY OF NEW YORK, | ) | |
| Plaintiff, | ) | No. 04-0033C |
| v. | ) | (Judge Wheeler) |
| UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

DEFENDANT'S REQUEST FOR PRODUCTION OF DOCUMENTS

The United States requests that FPL Energy, LLC ("FPL"), produce documents for inspection and copying at the offices of the United States Attorney, as described in the attached subpoena.

I. DEFINITIONS AND INSTRUCTIONS

A. The following definitions apply in responding to these document production requests:

1. The term "document" as used in this production request means any document in the possession, custody, or control of FPL, or its counsel, or known to FPL, or its counsel, and is defined under Rule 34 of the Rules of the United States Court of Federal Claims ("RCFC") to include "writings, drawings, graphs, charts, photographs, phonorecords, and other data compilations from which information can be obtained, translated, if necessary, . . . through data detection devices into reasonably usable form." That definition is applicable in complying with this subpoena, and should be construed in its broadest sense possible, and shall include any and all originals or duplicates of materials containing letters,

words, numbers, or images, or their equivalent, set down by handwriting, typewriting, printing, photostating, magnetic impulse, mechanical or electronic recording, or other form of data compilation. The definition of "document" applicable to this subpoena shall include all writings, tapes, recordings, graphic representations, drawings or printed materials of any kind whatsoever, specifically including electronic media of any kind, however produced or reproduced, and, for the purpose of illustration, is meant to include the following items: correspondence; letters; electronic messages or mail; any form of non-verbal communications (including the internal and external communications of persons employed by or acting on behalf of a particular entity, such as intra- or inter-departmental communications, or intra- or inter-company communications); notes (whether of visits, meetings, telephone calls, or otherwise); memoranda (whether of visits, meetings, telephone calls, or otherwise); appointment calendars; schedules; telegrams; telexes; facsimiles; electronic mail; files; file jackets; press releases; notices; circulars; brochures; pamphlets; guidelines; manuals; instructions; expressions or statements of policy; summaries or abstracts; diaries; notebooks; minutes or other records of meetings or conferences; lists of persons attending meetings or conferences; computer printouts or information stored in a computer-readable form; tests; reports; analyses; studies; working papers; forecasts; statistical statements; testimony; speeches; worksheets; invoices; bills; commercial or negotiable instruments; accounts; written estimates; contracts; agreements of any kind; shipping or receiving documents; purchase orders;

change orders; proposed changes; schedules; plans; charts; diagrams; drawings; graphs; designs; blueprints; tables; conclusions, opinions or reports of consultants or experts, or notes made in or for the preparation of any such conclusions, opinions or reports; opinions of counsel; reports or summaries of interviews, investigations, or negotiations, or notes made in or for the preparation of any such reports or summaries; digital images and graphics; digital or analog audio tapes and files; and digital or analog video tapes and files; photographs; books; articles; any drafts of or extracts from any of the foregoing; and any other tangible things containing information. (The definition of "document" also shall include each copy that is not identical to the original or to any other produced copy, and any preliminary drafts of any documents.)

2. "FPL" means FPL Energy, LLC, and any other former or current affiliated entity and, unless otherwise stated, all present and past employees, agents, partners, and/or representatives of FPL, including counsel, who could reasonably be expected to have personal knowledge that would affect the completeness and accuracy of responses made to this request, as well as, where applicable in context, its parent, subsidiary, or other related or affiliated organizations, and its officers, directors, employees, consultants, representatives and agents, and all other persons acting or purporting to act upon FPL's behalf.

3. "ConEd" means Consolidated Edison Company of New York and any other former or current affiliated entity, and, unless otherwise stated, all present and past employees, agents, partners, and/or representatives of ConEd, including

counsel, who could reasonably be expected to have personal knowledge that would affect the completeness and accuracy of responses made to this request, as well as, where applicable in context, its parent, subsidiary, or other related or affiliated organizations, and its officers, directors, employees, consultants, representatives and agents, and all other persons acting or purporting to act upon ConEd's behalf.

4. "ENIP" means Entergy Nuclear Indian Point 2 and any other former or current affiliated entity, and, unless otherwise stated, all present and past employees, agents, partners, and/or representatives of ENIP, including counsel, who could reasonably be expected to have personal knowledge that would affect the completeness and accuracy of responses made to this request, as well as, where applicable in context, its parent, subsidiary, or other related or affiliated organizations, and its officers, directors, employees, consultants, representatives and agents, and all other persons acting or purporting to act upon ENIP's behalf.

5. "Official," "director," "officer," "employee," "representative," "agency," or "agent" shall include any person, natural, corporate, or otherwise, including any attorney, serving or acting in such capacity (by contract or otherwise) at any relevant time even though such person no longer serves or acts in such capacity.

6. "Relating to" means containing, constituting, discussing, describing, identifying, referring to, supporting, explaining, contradicting, and/or in any way pertaining to the subject specified.

7. "Plaintiffs," "ConEd," and "ENIP," shall refer to the plaintiffs in Consolidated Edison Company of New York v. United States, No. 04-0033C (Fed. Cl.), and Entergy Nuclear Indian Point 2, LLC v. United States, No. 03-2622C (Fed. Cl.), as well as their present or former officers, employees, agents, attorneys, or representatives and every person acting upon their behalf and/or connected with plaintiffs in the context of the matters at issue in this action.

8. "DOE" refers to the United States Department of Energy.

9. The term "Standard Contract" refers to the "Standard Contract For Disposal Of Spent Nuclear Fuel And/Or High-Level Radioactive Waste," the terms of which are published at 10 C.F.R. § 961.11.

10. "HLW" refers to high-level radioactive waste as defined in Article I, clause 12, of the Standard Contract.

11. "SNF" refers to spent nuclear fuel as defined in Article I, clause 18, of the Standard Contract.

12. "Indian Point" refers to Indian Point 1 Nuclear Power Station and Indian Point 2 Nuclear Power Station.

B. To bring within the scope of these discovery requests all information and documents that might otherwise be construed to be outside their scope:

1. The singular of each word shall be construed to include its plural and vice versa, and the root word and all forms thereof (*i.e.*, participles and infinitives, etc.) shall be construed to include each other;

2. "And" as well as "or" shall be construed both conjunctively as well as disjunctively;

3. "Each" shall be construed to include "all," and vice versa;

4. "Any" shall be construed to include "all," and vice versa;

5. The present tense shall be construed to include the past tense, and vice versa;

6. "Knowledge," "information," "possession," "custody," and "control" possessed or exercised by a person shall be construed to include "knowledge," "information," "possession," "custody," and "control" possessed or exercised by such person's agents, representatives, and attorneys;

7. "Include" and "including" shall have their ordinary meaning and shall mean "including, but not limited to;"

8. In general, all terms used herein shall be construed in an ordinary, common-sense manner, and not in a technical, strained, overly-literal, or otherwise restrictive manner.

C. In responding to these document requests, furnish all documents, however obtained, including hearsay, that are within your possession, custody, and/or control, including documents in the possession, custody, or control of, yourself, or any of your officials, directors, officers, employees, agents, investigators, consultants, or attorneys.

D. If you cannot respond to the following document production requests in full after exercising due diligence to secure the documents, so state, and respond to the extent possible.

Explain in detail the reasons for your inability to fully respond, and identify whatever responsive documents you may have.

E. Provide separate responses for each document production request.

F. To the extent that you consider any of the following discovery requests, or their subparts, to be objectionable, answer that portion of the request, or subpart, to which you have no objection and separately state the portion of the document request, or subpart, to which you object and state with specificity all grounds for your objection. If you object to a request upon the ground that to provide the requested documents would constitute an undue burden, provide all requested documents that can be supplied without undertaking an undue burden. For those portions of a request to which you object or otherwise decline to answer, state the reason for such objection or declination.

G. Each request herein constitutes a request that each document referred to, or a true, complete, and legible copy thereof, be produced, on the designated date and at the designated time, to defendant's undersigned counsel, at the offices of the United States Attorney for the Southern District of Florida, 500 Australian Avenue, Fourth Floor, West Palm Beach, Florida 33401, for the purpose of inspection and copying in accordance with RCFC 45. Each document request seeks documents that are in any way in your possession, custody, or control, including the possession, custody, or control of your attorneys, or to which any of your attorneys have, or have had, access. If a requested document was, but no longer is, in your possession, custody, or control, identify the document and identify the present location and custodian of the document, or if such information is unavailable, identify the last known location and custodian of the

document, and explain the circumstances under which the document left your possession, custody, or control.

DEFENDANT'S DOCUMENT REQUESTS

REQUEST NO. 1

All financial valuation models concerning the Indian Point assets, including, but not limited to, supporting analyses and inputs to the model such as historical and projected financial data and business plans.

REQUEST NO. 2

All valuations, both those conducted by FPL and those conducted by third parties, related to the assessment of the operating life of Indian Point, including all analyses of license extensions.

REQUEST NO. 3

All documents related to sales comparable to Indian Point or other sales and/or purchases of interests in nuclear power plants, including, but not limited to, a description of the assets, details on the sale mechanism (*i.e.*, whether the sale was effected through an auction, the number of bidders, the number of bids, and the type of auction, among other things), and transaction price.

REQUEST NO. 4

In relation to the auction by which ConEd's interest in Indian Point was sold, all documents related to the decision to submit a bid, the actual bids submitted, documents discussing bidding strategy and approval of bids and supporting analyses.

REQUEST NO. 5

All documents assessing the effect of DOE's delay in the acceptance of SNF and/or HLW on the value of Indian Point.

REQUEST NO. 6

In connection with documents related to the expression of interest in the Indian Point facilities, all documents related to the inclusion or non-inclusion of costs and risks associated with adding additional SNF storage at the Indian Point facility.

REQUEST NO. 7

All documents assessing the outcome of ConEd's auction concerning the sale of the Indian Point facilities, including, but not limited to, comparisons between the successful bid and FPL's valuation or bid.

# EXHIBIT M

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| BOSTON EDISON COMPANY<br><br>Plaintiff,<br><br>v.<br>UNITED STATES,<br><br>Defendant. | |
| ENTERGY NUCLEAR GENERATION CO.,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | No. 99-447C<br>No. 03-2626C<br>(Judge Lettow) |

DEFENDANT'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS

Pursuant to Rule 34 of the Rules of the United States Court of Federal Claims, defendant, the United States, hereby requests that plaintiffs, Boston Edison Company ("Boston Edison") and Entergy Nuclear Generation Company ("Entergy"), produce all documents in their possession, custody, and/or control, or otherwise available to plaintiffs, that are responsive to the requests in the numbered paragraphs below and that plaintiffs produce them within 30 days after service of these requests. Because these requests for production are continuing, they require supplemental response if plaintiffs obtain additional information and/or discover additional documents after service of their original response. Such supplemental responses shall be served from time to time, but not later than 10 days after such additional information has been obtained.

**DEFINITIONS AND INSTRUCTIONS**

A. The following definitions apply in responding to these document production requests:

1. "Plaintiffs," "Boston Edison," "Entergy," "you," "your," and "yourselves" shall refer to the plaintiffs in these actions, as well as their present or former officers, employees, agents, attorneys, or representatives and every person acting upon their behalf and/or connected with plaintiffs in the context of the matters at issue in this action.

2. "Person" and "individual" shall include any natural person, corporation (private or governmental), subsidiaries, syndicate, trust, partnership, proprietorship, firm, group, association, joint venture, governmental or other public entity or agency, or any other form of organization or legal entity, and all respective officials, directors, officers, employees, representatives, independent contractors, investigators, consultants, agencies, or agents, whether or not still alive or in existence.

3. "Official," "director," "officer," "employee," "representative," "agency," or "agent" shall include any person, natural, corporate, or otherwise, including any attorney, serving or acting in such capacity (by contract or otherwise) at any relevant time even though such person no longer serves or acts in such capacity.

4. "Document" shall be construed in the broadest sense possible under RCFC 34 and shall include the original and any copy of any and all writings as that term is defined in Federal Rule of Evidence 1001, and all written, typed, printed, recorded, graphic, computer-generated, or other matter of any kind from which information can be derived, whether produced, reproduced, or stored on paper, cards, tape, film, electronic facsimile, computer

storage devices, or any other medium in your possession, custody, or control, or whose existence is or was ever known to you, including but not limited to: correspondence, letters, notes (whether of visits, meetings, telephone calls, or otherwise), memoranda (whether of visits, meetings, telephone calls, or otherwise), appointment calendars, schedules, telegrams, telexes, facsimiles, electronic mail, press releases, notices, brochures, pamphlets, guidelines, manuals, instructions, summaries or abstracts, diaries, notebooks, minutes, computer printouts or information stored in a computer-readable form, tests, reports, files, file jackets, analyses, studies, testimony, speeches, worksheets, invoices, bills, written estimates, contracts, agreements of any kind, purchase orders, change orders, proposed changes, schedules, plans, charts, diagrams, drawings, graphs, designs, blueprints, tables, photographs, books, articles, or extracts from any of the foregoing, and any other writings or documentary materials of any nature whatsoever, whether or not divulged to other parties, together with any attachments thereto and enclosures therewith. These requests encompass all forms and manifestations of electronically or optically coded, stored, and/or retrievable information, including, but not limited to, digital images and graphics, digital or analog audio tapes and files, and digital or analog video tapes and files. The term "document" or "documents" also shall include each copy that is not identical to the original or to any other produced copy, and any preliminary drafts of any documents or any working papers related thereto, and specifically includes internal memoranda.

5. "Relating to" means containing, constituting, discussing, describing, identifying, referring to, supporting, explaining, contradicting, and/or in any way pertaining to the subject specified.

6. "DOE" refers to the United States Department of Energy.

7. The term "Standard Contract" refers to the "Standard Contract For Disposal Of Spent Nuclear Fuel And/Or High-Level Radioactive Waste," the terms of which are published at 10 C.F.R. § 961.11.

8. "HLW" refers to high-level radioactive waste as defined in Article I, clause 12, of the Standard Contract.

9. "SNF" refers to spent nuclear fuel as defined in Article I, clause 18, of the Standard Contract.

10. "GTCC" refers to Greater-Than-Class-C waste, which is radioactive waste that exceeds the concentration limits of radionuclides established for Class C waste in 10 C.F.R. § 61.55.

11. "Re-racking" means the process by which additional and/or space-conserving racks are added to the spent fuel pool as a means of increasing SNF storage capacity.

12. "Nuclear Station" refers to Pilgrim Nuclear Power Station.

13. "Entergy" refers to Entergy Nuclear Generation Co., and any of its predecessors or successors in interest.

B. To bring within the scope of these requests all information and documents that might otherwise be construed to be outside their scope:

1. The singular of each word shall be construed to include its plural and vice versa, and the root word and all forms thereof (*i.e.*, participles and infinitives, *etc.*) shall be construed to include each other;

2. "And" as well as "or" shall be construed both conjunctively as well as disjunctively;

3. "Each" shall be construed to include "all," and vice versa;

4. "Any" shall be construed to include "all," and vice versa;

5. The present tense shall be construed to include the past tense, and vice versa;

6. The masculine shall be construed to include the feminine, and vice versa;

7. "Knowledge," "information," "possession," "custody," and "control" possessed or exercised by a person shall be construed to include "knowledge," "information," "possession," "custody," and "control" possessed or exercised by such person's agents, representatives, and attorneys;

8. "Include" and "including" shall have their ordinary meaning and shall mean "including, but not limited to;"

9. In general, all terms used herein shall be construed in an ordinary, common-sense manner, and not in a technical, strained, overly literal, or otherwise restrictive manner.

C. If plaintiffs cannot answer the following document requests in full after exercising due diligence to secure the information, so state, and answer to the extent possible. Explain in detail the reasons for plaintiffs' inability to answer the remainder, and identify whatever information or knowledge plaintiffs have concerning the unanswered portion.

D. Where exact statistical or numerical information, including dates or times, cannot be furnished, estimated or approximate information shall be supplied. Where an estimate or approximation is supplied, it should be so indicated, and an explanation provided as to the basis

upon which the estimate or approximation was made. State the reason(s) why exact statistical or numerical information cannot be furnished.

E. Each request herein constitutes a request that each document referred to, or a true, complete, and legible copy thereof, be produced, during business hours and upon appropriate notice, to defendant's undersigned counsel, at the offices of the Department of Justice, 1100 L Street, N.W., Washington, D.C. 20530, within the time provided in RCFC 34, or at such other time or place as may be agreed upon by plaintiffs and the United States, for the purpose of inspection and copying in accordance with RCFC 34. Each document request seeks documents that are in any way in your possession, custody, or control, including the possession, custody, or control of your attorneys, or to which any of your attorneys have, or have had, access. If a requested document was, but no longer is, in your possession, custody, or control, identify the document and identify the present location and custodian of the document, or if such information is unavailable, identify the last known location and custodian of the document, and explain the circumstances under which the document left your possession, custody, or control.

F. If you believe that any of the following requests for production calls for the production of documents that you claim contain privileged material, produce so much of the document(s) as is not objected to, and set forth, with respect to each such document as to which a claim of privilege is asserted, the nature of the privilege claimed (*e.g.*, attorney-client and/or work product privileges) and all the reasons upon which you base the claim of privilege. For each document or part of a document as to which you claim privilege, state:

1. The date thereof;

2. The type, title, and subject matter of the document, sufficient to assess whether the assertion of privilege is valid;

3. The name of the person or persons who prepared or signed the document;

4. The name and positions of all intended and actual recipients of the document;

5. Each person now in possession of the original or a copy of the document;

6. If not previously identified, the nature of the privilege being claimed and all facts relevant to the claim; and

7. The number of the document request to which the document is responsive.

G. Notwithstanding a claim that a document is privileged, any document so withheld must be produced with the portion claimed to be protected excised. If, for reasons other than a claim of privilege, you refuse to produce any documents described herein, state the grounds upon which the refusal is based with sufficient specificity to permit a determination of the propriety of such refusal. In the event that you object to any document production request upon the ground that it is too broad (*i.e.*, that it calls both for information which is relevant to the subject matter of the action and information which is not relevant), provide the information that is relevant. If you object to a document production request upon the ground that to provide the document(s) would constitute an undue burden, provide all requested documents that can be supplied without undertaking an undue burden.

H. Unless indicated otherwise in the specific document request, these requests call for information and documents beginning in 1980 up to the present.


WDM0020021

I. To the extent you believe information or documents responsive to these document requests has already been produced to the Government by plaintiffs, identify with specificity where in the prior production the information or documents may be found.





WDM0020022

## REQUESTS FOR PRODUCTION

REQUEST NO. 1

All documents relating to the operations and maintenance associated with wet storage at the Nuclear Station, including all documents relating to personnel and staffing for wet pool operations and the costs associated with wet pool operations at the Nuclear Station

REQUEST NO. 2

All documents relating to the presence of high burn-up fuel, failed fuel, non-standard fuel, other than standard fuel, and/or GTCC radioactive waste at the Nuclear Station.

REQUEST NO. 3

All documents relating to decommissioning of the Nuclear Station, including all decommissioning studies, regardless of whether they were developed by plaintiffs or outside contractors.

REQUEST NO. 4

All investigations, analyses, and/or studies of additional or alternative storage options for SNF and/or HLW at the Nuclear Station.

REQUEST NO. 5

All spent fuel management studies produced by or upon behalf of plaintiffs.

REQUEST NO. 6

All documents relating to the following areas of information regarding the spent fuel pool at the Nuclear Station: capacity, including license capacity; historical changes in capacity; current inventory (including data relating to the type and composition of the material in the spent fuel pool, as well as details about burn-up and enrichment of the material in the pool); and

specific identification (both in type and amount) of materials other than SNF that are stored in the pool.

REQUEST NO. 7

All documents relating to any studies or analyses relating to the total storage capacity of the pool at the Nuclear Station and when that capacity would be reached.

REQUEST NO. 8

All documents relating to any re-racking at the Nuclear Station including, but not limited to, memoranda, notes, letters, or printed e-mails relating to any decisions concerning re-racking and the extent of any actual or potential re-racking.

REQUEST NO. 9

All documents relating to whether the pool at the Nuclear Station could have been re-racked and any estimates as to the costs of any re-racking efforts.

REQUEST NO. 10

All documents identifying plaintiffs' understanding of the term full core reserve as it relates to the pool at the Nuclear Station, and/or plaintiffs' policies regarding the full core reserve.

REQUEST NO. 11

All documents supporting, refuting, or otherwise relating to plaintiffs' alleged damages.

REQUEST NO. 12

All documents relating to assignments or purported assignments of the Standard Contracts relating to the Nuclear Station, of SNF and/or HLW at the Nuclear Station, and/or of any claims arising out of the Standard Contract to any third parties.

REQUEST NO. 13

All documents, including all documents submitted to the Federal Energy Regulatory Commission, the Nuclear Regulatory Commission, state regulatory commissions, other utilities, and any other third parties, that relate to proposed, submitted, approved, or disapproved delivery commitment schedules for SNF and/or HLW at the Nuclear Station.

REQUEST NO. 14

All documents relating to the exchange of delivery commitment schedules among utilities.

REQUEST NO. 15

All documents relating to DOE's obligation to accept GTCC radioactive waste.

REQUEST NO. 16

All documents relating to DOE's responsibilities with respect to the timing, rate, and scheduling of acceptance of SNF and/or HLW from utilities under the Standard Contract and the Nuclear Waste Policy Act.

REQUEST NO. 17

All documents relating to, referring to, or associated with the promulgation and/or formation of the Standard Contract, including all documents prepared by or upon behalf of Boston Edison concerning the promulgation and/or formation of the Standard Contract.

REQUEST NO. 18

All drafts of the Standard Contract.





WDM0020025

REQUEST NO. 19

All comments regarding the Standard Contract or proposed changes to the Standard Contract to or from nuclear industry groups or other third parties.

REQUEST NO. 20

All asset purchase and sale agreements relating to Boston Edison's sale of its interests in the Nuclear Station to Entergy.

REQUEST NO. 21

All documents related to the negotiation and/or sale of the Nuclear Station.

REQUEST NO. 22

All documents related to the public auctions for Boston Edison's generating assets, such as Boston Edison's fossil fuel generating assets, including but not limited to the sale of fossil assets described in paragraph 8 of the July 6, 2004 affidavit of Geoffrey O. Lubbock.

REQUEST NO. 23

All due diligence and/or valuation documents related to the Nuclear Station's assets in general, and Boston Edison's assets in particular, both in the context of the competitive auction through which Boston Edison's interests in the Nuclear Station were sold, and at any other point in time.

REQUEST NO. 24

All documents assessing the prospects of the Nuclear Station or the nuclear industry in general between 1990 and 2005, including discussions of the competitiveness of nuclear energy relative to other sources of power generation, the regulatory environment, safety issues, and Government subsidies to the nuclear industry.

REQUEST NO. 25

All valuations, both those conducted internally and by third parties, related to the assessment of the operating life of the Nuclear Station, including all analyses of license extensions.

REQUEST NO. 26

All documents assessing the effect of energy market restructuring on the value or prospects of the Nuclear Station or the nuclear industry in general.

REQUEST NO. 27

All documents assessing the effect of DOE's delay in the acceptance of SNF and/or HLW on the value of the Nuclear Station.

REQUEST NO. 28

All documents related to Boston Edison's contention that potential bidders were discouraged from bidding on the Nuclear Station because of the Government's delay in the acceptance of SNF and/or HLW, including but not limited to assertions made in paragraphs 10-11 of the July 6, 2004 affidavit of Geoffrey O. Lubbock.

REQUEST NO. 29

All documents produced in the normal course of business related to the plaintiffs' business plans concerning the sale and/or purchase of Boston Edison's interest in the Nuclear Station.

REQUEST NO. 30

All documents related to comparable or other sales and/or purchases of interests in nuclear power plants, including a description of the assets, details on the sale mechanism (i.e., if

an auction, the number of bidders, number of bids, the type of auction, the presence of a "matching clause" for majority interest owners), and transaction price.

REQUEST NO. 31

All documents related to the auction by which Boston Edison's interest in the Nuclear Station were sold, including the structure of the auction, its rules, the expressions of interests by prospective purchasers, the auction participants' identities, their actual bids, and the timing of the bids, including but not limited to, the auction process described in paragraphs 8-11 of the July 6, 2004 affidavit of Geoffrey O. Lubbock.

REQUEST NO. 32

All documents related to the sale of Boston Edison's interest in the Nuclear Station and the characteristics of the transaction, including the terms of the transaction and the type of payment.

REQUEST NO. 33

All communications between plaintiffs related to the sale of Boston Edison's interests in the Nuclear Station.

REQUEST NO. 34

All documents related to plaintiffs' estimated market value of the Nuclear Station, whether prior to or subsequent to the dates of the sale of Boston Edison's interests in the Nuclear Station.

REQUEST NO. 35

All documents related to the discussion of matters and issues raised by prospective buyers of the Nuclear Station referenced in paragraphs 11-12 of the July 6, 2004 affidavit of Geoffrey Lubbock.

REQUEST NO. 36

All documents related to the payment of fees to the Nuclear Waste Fund by Boston Edison to DOE, referenced in paragraph number 6 of the July 6, 2004 affidavit of Geoffrey Lubbock.

REQUEST NO. 37

All documents supporting Boston Edison's contention that the fees paid by commercial utilities pursuant to the Nuclear Waste Policy Act would either terminate or be reduced significantly after a permanent Federal repository was constructed.

REQUEST NO. 38

All documents relating to the value of the land upon which the SNF generated at the Nuclear Station was located, both before and after Boston Edison's sale of its interest in the Nuclear Station, including any rents received and any property taxes paid upon that land.

REQUEST NO. 39

All documents analyzing the costs that would have been incurred by Boston Edison and/or Entergy for SNF and/or HLW storage or transfer of SNF to DOE if DOE had commenced SNF acceptance from nuclear utilities and/or from Boston Edison in 1998.


WDM0020029

REQUEST NO. 40

All documents relating to meetings held by plaintiffs' governing boards and committees, including minutes and transcripts of minutes related to the Nuclear Station, from January 1995 to January 2002.

REQUEST NO. 41

All documents, including all documents submitted to the Federal Energy Regulatory Commission, the Nuclear Regulatory Commission, state regulatory commissions, other utilities, and any other third parties, relating to extensions of the operating licenses for the Nuclear Station.

REQUEST NO. 42

All documents relating to Boston Edison's contention that the costs and risks associated with installing dry cask storage facilities at the Nuclear Station was included in Entergy's valuation(s) of the Nuclear Station.

REQUEST NO. 43

All documents relating to Entergy's expectations or assumptions for future dry storage or re-racking at the time it purchased the Nuclear Station from Boston Edison.

REQUEST NO. 44

All cost studies and other documents reflecting the values of the Nuclear Station absent the Government's inability to begin acceptance of SNF and/or HLW by January 31, 1998.

REQUEST NO. 45

All documents relating to the alleged increased costs and expenditures incurred by Boston Edison to store SNF and/or HLW up to the closing date of the sale of its interests in the Nuclear Station.

REQUEST NO. 46

All financial statements and other financial information related to the operation of the Nuclear Station between 1995 and 2005.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

HAROLD D. LESTER, JR.
Assistant Director

ALAN J. LO RE
Senior Trial Counsel
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
1100 L Street, N.W.
ATTN: Classification Unit, 8th Floor
Washington, D.C. 20530
Tel: 202-307-0226
Fax: 202-307-2503

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

August 9, 2005

CERTIFICATE OF SERVICE

I certify under penalty of perjury that on this 9th day of August, 2005, I caused to be served by federal express "DEFENDANT'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS," addressed as follows:

RICHARD J. CONWAY
Dickstein Shapiro Morin & Oshinsky LLP
2101 L Street, N.W.
Washington, D.C. 20037

ALEX D. TOMASZCZUK
Pillsbury Winthrop Shaw Pittman LLP
1650 Tysons Blvd
McLean, VA 22102-4859