# ATTACHMENT B

FORM 6
SUBPOENA

# United States Court of Federal Claims

Consolidated Edison Company of New York

vs. No. 04-0033C

THE UNITED STATES

## SUBPOENA

To: Jager Smith, Esq.
Entergy Nuclear Headquarters
1340 Echelon Parkway
Jackson, MS 39213

1. YOU ARE COMMANDED to appear at the place, date, and time specified below to testify in the above-captioned case.
   *Place of Testimony:*
   *Date and Time:*
2. YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above-captioned case.
   *Place of Deposition:* Entergy Nuclear Headquarters, 1340 Echelon Parkway, Jackson, MS 39213
   *Date and Time:* January 22, 2008 at 9:00 a.m.
3. YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):
   *Place:*
   *Date and Time:*
4. YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.
   *Premises:*
   *Date and Time:*

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. See RCFC 30(b)(6) topics in attached Schedule A. The deposition will be recorded by videotape and stenographic means.

ISSUING OFFICER SIGNATURE, AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) DATE

Attorney for Plaintiff 1/10/08

ISSUING OFFICER'S NAME, ADDRESS, AND PHONE NUMBER

David A. Churchill, 601 13th Street, N.W., Suite 1200 South, Washington, D.C. 20005
(202) 639-6056

NOTE - If the place of travel is more than 100 miles (by the shortest usual means of travel) from the place where the subpoena is served, or if the place of the deposition is more than 100 miles from the place where the deponent resides, is employed, or transacts business in person, the person served may regard the command as optional unless there is attached to the subpoena an order of the court requiring his/her appearance notwithstanding the distance of travel. In any event, response to the subpoena will entitle the person to the fees and mileage allowed by law. (28 U.S.C. §1821)

PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | 1/10/08 | 1340 Echelon Parkway, Jackson, MS 39213 |
| SERVED ON (PRINT NAME) | Jager Smith, Esq. | MANNER OF SERVICE: email and overnight mail (UPS) |

☐ Fees tendered for one day's attendance and mileage allowed by law. (Fees and mileage need not be tendered when the subpoena is issued on behalf of the United States or an officer or agency thereof.)

DECLARATION OF SERVICE

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on: Jan. 10, 2008
DATE

SIGNATURE OF SERVER

601 13th Street, N.W., Suite 1200 South
Washington, D.C. 20005
ADDRESS OF SERVER

RCFC 45.

**(c) Protection of Persons Subject to Subpoenas.**

**(1)** A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

**(2)(A)** A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

**(B)** Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

**(3)(A)** On timely motion, the court shall quash or modify the subpoena if it

**(i)** fails to allow reasonable time for compliance;

**(ii)** requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place, or

**(iii)** requires disclosure of privileged or other protected matter and no exception or waiver applies, or

**(iv)** subjects a person to undue burden.

**(B)** If a subpoena

**(i)** requires disclosure of a trade secret or other confidential research, development, or commercial information, or

**(ii)** requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

**(iii)** requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

**(d) Duties in Responding to Subpoena.**

**(1)** A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

**(2)** When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim

**Schedule A**

DEFINITIONS

1. The definitions set forth in Plaintiff's Request for Production of Documents, served upon Entergy in December 2006, are incorporated herein.

2. "Asset Purchase and Sale Agreement" means the Generating Plant and Gas Turbine Asset Purchase and Sale Agreement entered into by and between Con Edison and the Company, dated November 9, 2000.

3. "Model 1" means the Microsoft Excel file entitled, "Indian Point2 Base 2013_WBC_000906@1700 ($600M - PPA).xls."

4. "Model 2" means the Microsoft Excel file entitled, "Indian Point2 Base 2013_WBC_000911@1400 ($507M - No PPA).xls."

5. "Model 3" means the Microsoft Excel file entitled, "Indian Point2-LE-2033_WBC_000906@1700 ($600M - PP.xls."

6. "Model 4" means the Microsoft Excel file entitled, "Indian Point2-LE-2033_WBC_000911@1400 ($507M - No.xls."

7. "Model 5" means the Microsoft Excel file entitled, "Indian Point2-LE-2033_WBC_000906@1700 ($600M - PP Post Neg.xls."

8. "Decommissioning Model" means the Microsoft Excel file entitled, "Decommissioning 090500 LBT1520.xls."



PROTECTED MATERIALS TO BE DISCLOSED ONLY IN ACCORDANCE WITH
U.S. CFC PROTECTIVE ORDERS IN SPENT NUCLEAR FUELS LITIGATION

TOPICS FOR RULE 30(b)(6) DEPOSITION

Pursuant to RCFC 30(b)(6), please designate the most knowledgeable individual(s) prepared to testify on behalf of Entergy concerning the following matters:

1. Assumptions and decisions upon which the Company's Board of Directors relied in granting approval for the Company's bid for Indian Point 2, including whether the Company's Board of Directors relied upon the document entitled, "Entergy Corporation Investment Proposal, Bid Proposal for Indian Point 2 Nuclear Power Station, September 25, 2000" (the "Investment Proposal," IP/CON ED CO 7-3 through 7-66), in granting such approval.

2. Valuation Documents, including Models 1 through 5 and the Decommissioning Model, used to prepare, calculate or develop the figures and assumptions contained in the Investment Proposal or in any other document upon which the Company's Board of Directors relied in granting approval for the Company's bid for Indian Point 2, including:

a) the process by which each such Valuation Document was developed; the calculations and methodology reflected in each such Valuation Document;

b) the purpose of various worksheets or tabs in each such Valuation Document;

c) the source of inputs in each such Valuation Document;

d) the source of and reasoning for assumptions contained in each such Valuation Document; and

e) the relationship between each such Valuation Document and the Investment Proposal or any other document upon which the Company's Board of Directors relied in granting approval for the Company's bid for Indian Point 2.



PROTECTED MATERIALS TO BE DISCLOSED ONLY IN ACCORDANCE WITH
U.S. CFC PROTECTIVE ORDERS IN SPENT NUCLEAR FUELS LITIGATION

3. With respect to Models 1 through 5, the assumptions underlying, inputs to, and calculations for the figures in the following tabs and rows:

a) In Models 1 through 5, tab "IP2 Model," rows 18 through 37 ("Operating Expenses"), row 177 ("Investment and Construction"), rows 210 through 230 ("Determination of WACC"), and rows 649 through 740 ("Financial Assumptions");

b) In Models 1 and 2, tab "IP2 Model," rows 741 through 797 ("Operating Assumptions"), including the figures in row 780 ("Investment D"), row 781 ("Purchase Price Assigned to Plant"), row 782 ("Investment E"), row 784 ("Price") and the relationship between the figures in row 784 ("Price") and the purchase price offered by Entergy for Indian Point 2;

c) In Models 3 and 4, tab "IP2 Model," rows 741 through 796 ("Operating Assumptions"), including the figures in row 779 ("Purchase Price Assigned to Plant"), row 780 ("Investment E"), row 782 ("Price") and the relationship between the figures in row 782 ("Price") and the purchase price offered by Entergy for Indian Point 2;

d) In Model 5, tab "IP2 Model," rows 741 through 795 ("Operating Assumptions"), including the figures in row 782 ("Price"), row 778 ("Investment D"), row 779 ("Purchase Price Assigned to Plant"), and row 780 ("Investment E") and the relationship between the figures in row 782 ("Price") and the purchase price offered by Entergy for Indian Point 2;

e) In Models 1 through 5, tab "Purchase Price Allocation."

4. Whether the Decommissioning Model was used to prepare, calculate or develop the figures and assumptions in Table 17 on page 21 of the Investment Proposal and the relationship between this file and Table 17.



PROTECTED MATERIALS TO BE DISCLOSED ONLY IN ACCORDANCE WITH
U.S. CFC PROTECTIVE ORDERS IN SPENT NUCLEAR FUELS LITIGATION

5. In the Decommissioning Model, the purpose for and derivation of the following line items:

a) "Assumptions — Input Area" (rows 11 through 18 in tabs "IP2," "IP2 Life 20 Yr Life Ext.," "IP1," and "IP1 Life 20 Yr Life Ext. (2)");

b) Various earnings rate calculations (rows 20 through 24 in tabs "IP2," "IP2 Life 20 Yr Life Ext.," "IP1," and "IP1 Life 20 Yr Life Ext. (2)");

c) "Discounted End Balance" (row 70 in tabs "IP2" and "IP2 Life 20 Yr Life Ext.," row 58 in tabs "IP1" and "IP1 Life 20 Yr Life Ext. (2)");

d) "Initial Asset Acquisition Adjustment" (row 76 in tabs "IP2" and "IP2 Life 20 Yr Life Ext.," row 64 in tabs "IP1" and "IP1 Life 20 Yr Life Ext. (2)");

e) "Earnings Impact on Income Statement" (rows 82 through 96 in tabs "IP2" and "IP2 Life 20 Yr Life Ext.," rows 70 through 84 in tabs "IP1" and "IP1 Life 20 Yr Life Ext. (2)");

f) "Purchase Price Allocation" and basis calculations (rows 98 through 100 in tabs "IP2" and "IP2 Life 20 Yr Life Ext.," rows 86 through 88 in tabs "IP1" and "IP1 Life 20 Yr Life Ext. (2)");

g) "WACC" (row 102 in tabs "IP2" and "IP2 Life 20 Yr Life Ext.," row 90 in tabs "IP1" and "IP1 Life 20 Yr Life Ext. (2)");

h) "NPV of NQ Expenditures" (row 107 in tabs "IP2" and "IP2 Life 20 Yr Life Ext.," row 95 in tabs "IP1" and "IP1 Life 20 Yr Life Ext. (2)");

i) "NPV of Gain of NQ" (rows 109 through 112 in tabs "IP2" and "IP2 Life 20 Yr Life Ext.," rows 97 through 100 in tabs "IP1" and "IP1 Life 20 Yr Life Ext. (2)");

j) "NPV of Gain of Q" (rows 114 through 118 in tabs "IP2" and "IP2 Life 20 Yr Life Ext.," rows 102 through 106 in tabs "IP1" and "IP1 Life 20 Yr Life Ext. (2)");

k) "Total NPV impact of decommissioning" (rows 120 and 121 in tabs "IP2" and "IP2 Life 20 Yr Life Ext.," rows 108 and 109 in tabs "IP1" and "IP1 Life 20 Yr Life Ext. (2)").



PROTECTED MATERIALS TO BE DISCLOSED ONLY IN ACCORDANCE WITH
U.S. CFC PROTECTIVE ORDERS IN SPENT NUCLEAR FUELS LITIGATION

6. Valuation Documents, including Models 1 through 5 and the Decommissioning Model, used or relied upon by the Company in developing its final binding bid for Indian Point 2, including:

a) the process by which each such Valuation Document was developed;

b) the calculations and methodology reflected in each such Valuation Document;

c) the purpose of various worksheets or tabs in each such Valuation Document;

d) the source of inputs in each such Valuation Document;

e) the source of and reasoning for assumptions contained in the each such Valuation Document; and

f) the relationship between each such Valuation Document and the Company's final binding bid for Indian Point 2.

7. The terms offered by the Company in its final binding bid for Indian Point 2, and the development and determination of such terms, including but not limited to terms relating to:

a) The purchase price for Indian Point 2;

b) The decommissioning funds transfer and any other terms relating to decommissioning;

c) Transferred assets other than the nuclear plant and the decommissioning funds, such as nuclear fuel, inventory and fuel contracts;

d) Assumed liabilities other than decommissioning, such as environmental liabilities and labor-related liabilities.

8. Any modifications made to the Company's final binding resulting from communications with Con Edison after the Company submitted its final binding bid.



PROTECTED MATERIALS TO BE DISCLOSED ONLY IN ACCORDANCE WITH
U.S. CFC PROTECTIVE ORDERS IN SPENT NUCLEAR FUELS LITIGATION

9. The nature and substance of communications between the Company, including officers and advisors of the Company, and Con Edison, including officers and advisors of Con Edison, between the date the Company submitted its final binding bid and the date the Asset Purchase and Sale Agreement was executed.

10. The purpose and content of the document entitled, "Entergy Valuation Manual," (one copy of which is bates numbered IP CON ED CO 8-319 through 8-395), including but not limited to:

a) the reasons for the creation and development of the Entergy Valuation Manual;

b) the use of the Entergy Valuation Manual by Entergy's due diligence teams and investment analysts;

c) the assumptions underlying the tables and figures in the Entergy Valuation Manual;

d) the data contained in the tables in the chapter of the Entergy Valuation Manuel entitled, "Free Cash Flow Based Valuations."

11. The Company's understanding with respect to any claims, causes of action, rights or obligations under the Standard Contract assigned to the Company by Con Edison pursuant to the Asset Purchase and Sale Agreement, including but not limited to the Company's view or estimation of the present or future value of such claims, causes of action, rights or obligations and the impact, if any, of the assignment of such claims, causes of action, rights or obligations on the Company's assessment or determination of the present or future value of Indian Point 2.



PROTECTED MATERIALS TO BE DISCLOSED ONLY IN ACCORDANCE WITH
U.S. CFC PROTECTIVE ORDERS IN SPENT NUCLEAR FUELS LITIGATION

12. The Company's assumptions and estimates relating to the financing of the Company's purchase of Indian Point 2, including but not limited to assumptions and estimates relating to the cost of such financing, the capital structure of such financing, and the actual or anticipated availability or unavailability of debt financing.



PROTECTED MATERIALS TO BE DISCLOSED ONLY IN ACCORDANCE WITH
U.S. CFC PROTECTIVE ORDERS IN SPENT NUCLEAR FUELS LITIGATION